**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
**BREEDEN & ASSOCIATES, PLLC**
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LATIA ALEXANDER, individually as heir of ISAIAH T. WILLIAMS and in her capacity as Special Administrator of the Estate of ISAIAH T. WILLIAMS, <br><br> Plaintiff, <br><br> v. <br><br> LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; KERRY KUBLA, in his individual capacity; BRICE CLEMENTS, in his individual capacity; ALEX GONZALES, in his individual capacity; RUSSELL BACKMAN, in his individual capacity; JAMES ROTHENBURG, in his individual capacity; JAMES BERTUCCINI, in his individual capacity; DOES I-XX, inclusive, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, LATIA ALEXANDER, individually as heir of ISAIAH TYREE WILLIAMS and in her capacity as Special Administrator of the Estate of ISAIAH TYREE WILLIAMS, by and through her counsel, Adam J. Breeden, Esq. of BREEDEN & ASSOCIATES, PLLC, hereby alleges the following as her Complaint as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff LATIA ALEXANDER is a resident and citizen of the State of Nevada,

County of Clark, and was at all times relevant to this Complaint.

2. Plaintiff ALEXANDER is the mother of Isaiah Tyree Williams, deceased, and brings this action in her individual capacity as an heir of Williams and also as the duly appointed Special Administrator of his Estate.

3. Defendant, LAS VEGAS METROPOLITAN POLICE DEPARTMENT (hereinafter referred to as "LVMPD"), is a public agency police department organized pursuant to NRS Chapter 280, operating in the County of Clark, State of Nevada. It is a "law enforcement agency" as that term is defined in NRS § 289.010(2) and is political subdivision of Clark County, Nevada.

4. Defendant, KERRY KUBLA is, on information and belief, a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint. This Defendant at the times alleges herein was a "peace officer" in the State of Nevada as that term is defined in NRS § 289.150(1) and was working as an officer for LVMPD.

5. Defendant, BRICE CLEMENTS is, on information and belief, a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint. This Defendant at the times alleges herein was a "peace officer" in the State of Nevada as that term is defined in NRS § 289.150(1) and was working as an officer for LVMPD.

6. Defendant, ALEX GONZALES is, on information and belief, a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint. This Defendant at the times alleges herein was a "peace officer" in the State of Nevada as that term is defined in NRS § 289.150(1) and was working as an officer for LVMPD.

7. Defendant, RUSSELL BACKMAN is, on information and belief, a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint. This Defendant at the times alleges herein was a "peace officer" in the State of Nevada as that term is defined in NRS § 289.150(1) and was working as a sergeant for LVMPD.

8. Defendant, JAMES ROTHENBURG is, on information and belief, a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint. This Defendant at the times alleges herein was a "peace officer" in the State of Nevada as that term is defined in NRS § 289.150(1) and was working as an officer for LVMPD.

9. Defendant, JAMES BERTUCCINI is, on information and belief, a resident and citizen of the State of Nevada, County of Clark, and was at all times relevant to this Complaint. This Defendant at the times alleges herein was a "peace officer" in the State of Nevada as that term is defined in NRS § 289.150(1) and was working as an officer for LVMPD.

10. The true names and capacities of Defendants DOES I-XX, inclusive, are unknown to the Plaintiff, who therefore sues these Defendants by such fictitious names. Specifically, but without limitation, Plaintiff does not know the exact name of all officers involved in the events alleged herein who were responsible for service of a warrant and the shooting death of her son, Isaiah Tyree Williams. This includes the persons responsible for obtaining a warrant, the persons responsible for planning the raid, the supervisor of the named officers and the persons responsible for the training of the officers as to how to conduct search and seizure. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE Defendant is responsible in some manner for the events and happenings referred to herein, and caused injury and damages proximately thereby to Plaintiff, as herein alleged, and Plaintiff will ask leave of this Court, as may be necessary, to amend this Complaint to insert the true names and capacities of these Defendants when the same have been ascertained by Plaintiff, together with appropriate charging allegations, and join such Defendants in this action.

11. At the times alleged herein, Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and DOES I-XX, inclusive were the actual, apparent, implied, or ostensible agents of Defendant LVMPD. Therefore, Defendant LVMPD is responsible for the injuries and damages caused to the Plaintiff under the theory of respondeat superior, NRS § 41.130 and to the extent applicable NRS § 42.007.

12. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391 because the Defendants reside in the District and the events giving rise to the claim occurred in the District of Nevada.

13. The Court has personal jurisdiction over the Defendants because they have minimum contacts with the state of Nevada and under FRCP 4(k) are subject to personal jurisdiction in the Eighth Judicial District Court of Nevada.

14. This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1331 (federal question jurisdiction), 28 USC § 1343(a) (jurisdiction over civil rights claims), and 28 USC § 1367 (supplemental jurisdiction over state law claims). This case is brought, in part, under 42 USC §§ 1983, 1985, 1986, 1988 and the Fourth and Fourteenth Amendments of the United States Constitution.

15. Plaintiff alleges that the causes of action contained herein do not require exhaustion of administrative remedies. *Eggleston v. Stuart*, 495 P.3d 482, 486 (Nev. 2021) ("a party generally is not required to exhaust administrative remedies before filing a § 1983 civil rights claim"). Regardless, Plaintiff affirmatively alleges that she submitted a "claim" pursuant to NRS § 41.036 and § 41.039 to LVMPD on or about January 4, 2024 with no response from LVMPD as of the date of this filing.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

16. This lawsuit is the tragic result of LVMPD and its officers failing to reasonably execute a search and seizure and abide by the knock-and-announce rule. These failures led to an explosively dangerous and completely unnecessary situation which resulted in the death of an innocent, 19-year-old black man.

17. The United States and Nevada constitutions require that search and seizure conducted by a peace officer must be reasonable. Even if officers have a search or arrest warrant, the manner of service or execution of that warrant must also be reasonable.

18. On January 10, 2022 at approximately 5:00 a.m., Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and DOES I-XX (collectively the "officers") approached an apartment located 3050 S Nellis Blvd, Las Vegas, NV 89121.

19. The officers intended to serve a search and/or arrest warrant on a third party for a crime committed at another location two months earlier.

20. On information and belief, the officers lacked a "no-knock" warrant. In fact, Plaintiff has been unable to locate any search or arrest warrant of any kind in force on the day in question and, thus, would seek leave to amend this Complaint to assert that the officers lacked a warrant at the times alleged herein if discovery shows this to be true.

21. Prior to serving the warrant, the officers lacked probable cause or reasonable suspicion (1) that the suspect, as opposed to other individuals, was actually inside the apartment, (2) that any criminal activity was presently occurring inside the apartment, or (3) that any occupant of the apartment was actually armed. Simple research by law enforcement would have caused the officers to learn that (4) the apartment was neither rented by nor regularly occupied by the suspect for which they were searching.

22. The officers, who were part of LVMPD's S.W.A.T. team, chose to execute the warrant at approximately 5:00 a.m., a time they knew any occupants of the apartment would likely be asleep, and in darkness, a practice that LVMPD would later state is a common practice at the department ironically done because it was allegedly "safer" for officers and the community. They planned in advance to use force to enter the apartment after the second search warrant announcement was made, a process they knew would take only seconds before force was used.

23. The officers also planned in advance and later actually deployed a stun stick and a noise flash device into the apartment simultaneous with their announcements which, by their very nature, are designed to confuse persons and impair their hearing, including potentially the ability to hear the officers' required announcement of their presence and purpose.

24. More specifically, during the raid officers BERTUCCINI and ROTHENBURG were positioned by the west window of the ground floor apartment which they would break to deploy a stun stick device while officers KUBLA, CLEMENTS, GONZALES, BACKMAN were at the front door which they would forcibly knock down with a battering device.

25. The United States Constitution, Federal law, Nevada law and the State of Nevada Commission on Peace Officer Standards and Training for execution of warrants and LVMPD's own internal policies and procedures all require that officers who are not serving a no-knock warrant must (1) knock and announce to declare their presence and purpose and (2) wait to allow a reasonable opportunity for persons inside any dwelling to ascertain the identity of the officers and comply with the request for admittance prior to using any force to enter a dwelling. This is known as the knock-and-announce rule but is more accurately described as the knock-and-announce-and-wait rule.

26. The United States Supreme Court found in *Wilson v. Arkansas*, 514 U.S. 927 (1995) that this knock-and-announce rule is part of the requirements of the Fourth Amendment to the United States Constitution and that officers who are not serving a no-knock warrant must (1) knock-and-announce their presence and intent and then (2) wait a "reasonable" amount of time to determine whether the officers will be refused entry before using force to enter a dwelling to execute the warrant.

27. Federal law, 18 U.S.C. § 3109, imposes a knock-and-announce rule on officers executing a warrant and, even if this statute is applicable only to federal law enforcement officers, it sets forth an industry standard for law enforcement.

28. Nevada state law, NRS § 179.055, imposes a knock-and-announce rule on Nevada peace officers executing a warrant and states that they may use force to enter a dwelling only "after notice of authority and purpose, the officer is refused admittance."

29. Police policies and practices adopted by the State of Nevada Commission on Peace Officer Standards and Training as well as LVMPD's own policies and procedures impose a knock-and-announce rule on officers executing a warrant and states that "approximately **one minute** would be a safe period in most cases...." for the officers to wait after stating their authority and purpose to determine whether they may use force to enter the dwelling.

30. While there is no bright-line rule as to what constitutes a reasonable amount of time for officers to wait, the United States Ninth Circuit Court of Appeals has noted that there must be a lapse of "a significant amount of time" after the knock-and-announce before officers may forcibly enter the premises. *United States v. Mendonsa*, 989 F.2d 366, 370 (9th Cir. 1993). This time period must allow the occupants "a reasonable opportunity to ascertain who was at the door and to respond to [the officers'] request for admittance" and "the fact that the warrant was executed early in the morning when it was likely the occupants…would be asleep" dictates a longer reasonable amount of time the officers must wait. *United States v. Granville*, 222 F.3d 1214, 1218 (9th Cir. 2000). The Ninth Circuit has noted that "[t]he shortest wait we have upheld is **ten seconds**…[u]sually, the wait is much longer." *Id*.

31. According to LVMPD's own internal Force Investigation Team (FIT) report following the incident, the officers arrived and began to yell "police, search warrant" at 4:59:56 and began forcibly entering the property by breaking a window to deploy a stun stick distraction just **8 seconds** later, a time period by the Ninth Circuit Court of Appeals' own words it has <u>never</u> held reasonable under <u>any</u> circumstance.

32. Officers began ramming the front door just 10 seconds after announcing their presence, an amount of time that is completely unreasonable to rouse someone from their sleep and give them a reasonable opportunity to ascertain who was at the door and to respond to the officers' request for admittance.

33. At the same time, officers deployed what is known as a stun stick and a noise flash device, which by their very nature would make it difficult for a person inside the dwelling to hear officers announcing themselves and their purpose.

34. At the time the forcible entry into the apartment was executed, Williams was asleep on the living room couch of the apartment just inside the front door. He had a handgun next to him for protection.

35. Because the officers failed to allow Williams a reasonable opportunity to ascertain who was at the door and to respond to the officers' request for admittance, Williams had only seconds to assess the situation as he was roused from his sleep.

36. At this time, due to the extremely dangerous circumstances the officers created by failing to properly abide by the knock-and-announce requirement, conducting the raid at 5:00 a.m. in the dark, and deploying noise and distraction devices which sound like gunfire, Williams did not realize the armed men entering the apartment were law enforcement officers with a warrant. He made a tragic decision to grab the firearm he kept for protection and fired on the officers, mistakenly believing them to be intruders. The officers returned fire and shot Williams at least 17 times, some to the back shoulder, buttocks and back of the legs. Williams had such little reaction time he was initially still laying down on the couch as officers shot him.

37. Williams survived his injuries for a brief time. As he lay bleeding to death on the floor and coughing up his own blood with his last breaths, the officers tied his hands behind his back with a zip tie as he died at the scene. Officers attempted no emergency medical care to save his life.

38. After the death of Williams, the officers discovered (1) Williams was not the suspect the officers were looking to arrest, (2) the suspect was not even present at the apartment, and (3) there was no contraband or evidence of a crime in the apartment. There is no evidence that Williams even knew the suspect. The suspect was not even the renter of the apartment.

39. Williams' story is yet another tragic death of a young, black male who was engaged in no illegal activity at the time of his death who died simply because law enforcement did not properly perform their jobs as Constitutionally and statutorily required.

## FIRST CLAIM FOR RELIEF

**(Violation of Federal Civil Rights Under 42 U.S.C. § 1983 et. seq. – Fourth Amendment)**

40. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-39 as if fully set forth herein.

41. This cause of action is pleaded by Plaintiff ALEXANDER only against the following Defendants in their individual capacities as state actors: Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants.

42. The Fourth Amendment to the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

43. The reasonableness requirement of the Fourth Amendment extends to the manner in which police execute otherwise valid searches, and generally requires that they knock, announce their presence and purpose, and then wait a reasonable amount of time for the occupant of a dwelling to ascertain the identity of the officers and allow them inside the dwelling. *See, e.g., United States v. Banks*, 540 U.S. 31, 35, 124 S. Ct. 521, 157 L. Ed. 2d 343 (2003).

44. Unlawful entry by officers and unlawful mode of entry by use of force, both of which

Plaintiff alleges in this action by the Defendants, violate the Fourth Amendment as an unreasonable search and seizure.

45. The Fourth Amendment has been held applicable to the States and individual state actors, a process called incorporation, pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691 (1961) (incorporation of Fourth Amendment).

46. Pursuant to 42 USC § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

47. At the times alleged in the complaint on January 10, 2022, Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants were state actors of the State of Nevada or its political subdivisions, acting under color of law.

48. Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants did violate the civil rights of the Plaintiff under the Fourth Amendment by, without limitation, unlawful entry and unlawful mode of entry by failing to properly knock-and-announce and allow a reasonable time for Williams to ascertain the officer's identities and provide them admittance, shooting and killing Williams, provoking a violent confrontation, and using excessive force to conduct the search and seizure considering the totality of the circumstances.

49. The acts of Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants, which were done in concert, deprived Williams of his rights, privileges, or immunities secured by the Constitution or laws of the United States.

50. Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG,

BERTUCCINI and all other DOE Defendants lacked any valid justification or Constitutional exception for their unlawful actions.

51. At the times alleged herein, the Constitutional rights of Williams were clearly established and it would be clear to a reasonable officer/actor that his/her conduct was unlawful in the situation he/she was confronted.

52. As a result of the violation of Williams' civil rights, he died. Prior to his death he sustained physical injury with tremendous pain and suffering, emotional distress, and nominal damages in an amount to be proven at trial. ALEXANDER as an heir has also experienced her own grief, loss, sorrow and companionship of her son. These damages will be determined at trial but are alleged to exceed One Million Dollars ($1,000,000).

53. The aforementioned acts of the Defendants were the proximate cause of Williams' injuries and death.

54. Plaintiff ALEXANDER brings this wrongful death and survivorship action in her capacity as an heir and Special Administrator of Williams' estate for all damages recoverable under NRS § 41.085 and NRS § 41.100.

55. The acts of Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff seeks punitive damages.

56. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest, including attorney's fees and expert fees pursuant to 42 USC § 1988 and all other applicable law.

## SECOND CLAIM FOR RELIEF

**(Violation of Federal Civil Rights Under 42 U.S.C. § 1983 et. seq. – Fourteenth Amendment)**

57. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-56 as if fully set forth herein.

58. This cause of action is pleaded by Plaintiff ALEXANDER only against the following Defendants in their individual capacities as state actors: Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants.

10

59. The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." The Fourteenth Amendment encompasses a "constitutional right to associate with family members." *Lipscomb By & Through DeFehr v. Simmons*, 884 F.2d 1242, 1244 (9th Cir. 1989). "A decedent's parents and children generally have the right to assert substantive due process claims under the Fourteenth Amendment" for the death of their loved one. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018).

60. Based on the allegations set forth herein, Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants deprived ALEXANDER of her substantive due process rights to associate with Williams.

61. The manner in which the Defendants conducted the search and seizure and killed Williams shocks the conscience and it was deliberately planned in advance to enter the property forcefully without allowing a sufficient time for persons inside the apartment to ascertain the identity of the officers and comply with their requests for admittance.

62. The acts of Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants, which were done in concert, deprived ALEXANDER of her rights, privileges, or immunities secured by the Constitution or laws of the United States.

63. Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants lacked any valid justification or Constitutional exception for their unlawful actions.

64. At the times alleged herein, the Constitutional rights of Williams and ALEXANDER were clearly established and it would be clear to a reasonable officer/actor that his/her conduct was unlawful in the situation he/she was confronted.

65. As a result of the constitutional violations, ALEXANDER has experienced her own grief, loss, sorrow and companionship of her son. These damages will be determined at trial but are alleged to exceed One Million Dollars ($1,000,000).

66. The aforementioned acts of the Defendants were the proximate cause of ALEXANDER's injuries.

67. The acts of Defendants KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff seeks punitive damages.

68. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest, including attorney's fees and expert fees pursuant to 42 USC § 1988 and all other applicable law.

### THIRD CLAIM FOR RELIEF

### (Violations of Nevada Constitution/Constitutional Tort)

69. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-68 as if fully set forth herein.

70. This cause of action is pleaded by Plaintiff against the following Defendants: LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants.

71. The Nevada Constitution Art. I Sec. 18 states that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized." This includes the knock and announce rule and use of excessive force to enter a dwelling.

72. Nevada state law, NRS § 179.055, imposes a knock-and-announce rule on Nevada peace officers executing a warrant and states that they may use force to enter a dwelling only "after notice of authority and purpose, the officer is refused admittance."

73. The Nevada Constitution Art. I Sec. 8 states that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

74. The Nevada Supreme Court has held that there is a private cause of action under the Nevada Const. Art. I Sec. 18 for retrospective monetary relief, a so-called Constitutional Tort. *Mack v. Williams*, 522 P.3d 434, 450 (Nev. 2022). Plaintiff asserts that there is also a cause of action for violation of substantive due process for violation of Nevada Constitution Art. I Sec. 8.

75. At the times alleged in the Complaint, Defendants LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants were state actors or political subdivisions of the State of Nevada, acting under color of law.

76. Defendants LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants did violate the civil rights of the Plaintiff or the decedent under the Nevada Constitution, Art. I Sec. 18 and Nevada law in the following ways, without limitation: Unlawfully entering the apartment and using an unlawful mode of entry by failing to properly knock-and-announce and allow a reasonable time for Williams to ascertain the officer's identities and provide them admittance, shooting and killing Williams, provoking a violent confrontation, and using excessive force to conduct the search and seizure considering the totality of the circumstances.

77. Based on the acts pleaded in the prior Paragraph, Plaintiff ALEXANDER also has a direct cause of action against the Defendants for violation of her substantive due process right to associate with her family member, Williams, which the Defendants violated.

78. The acts of the Defendants LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants, which were done in concert, deprived Williams of his rights, privileges, or immunities secured by the Constitution or laws of the state of Nevada.

79. Defendants LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants lacked any valid justification or Constitutional exception for their unlawful actions.

80. The Nevada Supreme Court has expressly held that there is no qualified immunity for Nevada Constitutional torts.

81. As a result of the violation of Williams' civil rights he died. Prior to his death he sustained physical injury with tremendous pain and suffering, emotional distress, and nominal damages in an amount to be proven at trial. ALEXANDER as an heir has also experienced her own grief, loss, sorrow and companionship of her son. These damages will be determined at trial but are alleged to exceed One Million Dollars ($1,000,000).

82. The aforementioned acts of the Defendants were the proximate cause of Williams' injuries and death.

83. Plaintiff ALEXANDER brings this wrongful death and survivorship action in her capacity as an heir and administrator of Williams' estate for all damages recoverable under NRS § 41.085 and NRS § 41.100.

84. The acts of the Defendants LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the State constitutionally-protected rights of others, therefore Plaintiff seeks punitive damages.

85. Plaintiff specifically pleads to notify the Court that in this action she asserts that Nevada Constitutional Torts are not subject to Nevada's statutory limits on claims against the State found in NRS § 41.035 (monetary limit on damages, bar of punitive damages) because doing so would allow the State to, by statute, limit or bar claims against it which are imposed by the Nevada Constitution.

86. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest.

## FOURTH CAUSE OF ACTION

**(Assault and Battery/Wrongful death and Survivorship)**

87. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-86 as if fully set forth herein.

88. This cause of action is pleaded by Plaintiff ALEXANDER against the following Defendants: LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants.

89. On or about January 10, 2022, Williams was physically contacted by the Defendants in a manner that was harmful or offensive, including being shot at least 17 times.

90. The Defendants intended to contact Williams in an unconsented manner, and did so.

91. As a result of the assault and battery on Williams, he died. Prior to his death he sustained physical injury with tremendous pain and suffering, emotional distress, and in an amount

to be proven at trial. ALEXANDER as an heir has also experienced her own grief, loss, sorrow and companionship of her son. These damages will be determined at trial but are alleged to exceed One Million Dollars ($1,000,000).

92. The aforementioned acts of the Defendants were the proximate cause of Williams' injuries and death.

93. Plaintiff ALEXANDER brings this wrongful death and survivorship action in her capacity as an heir and administrator of Williams' estate for all damages recoverable under NRS § 41.085 and NRS § 41.100.

94. LVMPD was the principal or employer of KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants at the time of the events and, therefore, is vicariously liable for their actions.

95. The acts of the Defendants were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff seeks punitive damages.

96. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest.

**FIFTH CAUSE OF ACTION**

**(Intentional or Negligent Infliction of Emotional Distress-Wrongful Death and Survivorship)**

97. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-96 as if fully set forth herein.

98. This cause of action is brought by Plaintiff against the following Defendants: LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants.

99. Prior to his death, Williams experienced extreme emotional distress as a result of being shot at least 17 times, some to the back of his shoulder, buttocks and back of the legs, from noise flashes needlessly deployed on him, and from being zip tied and placed on the floor while he bled to death.

100. The conduct of the Defendants was extreme and outrageous, meaning it was outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community.

15

101. The Defendants' actions were done intentionally or negligently.

102. As a result of the violation of Williams' civil rights and the acts set forth above, he died. Prior to his death he sustained severe emotional distress, anguish, horror, worry, grief and shock, in an amount to be proven at trial but exceeding One Million Dollars ($1,000,000).

103. The aforementioned acts of the Defendants were the proximate cause of Williams' emotional distress and death.

104. Plaintiff ALEXANDER brings this wrongful death and survivorship action in her capacity as an heir and administrator of Williams' estate for all damages recoverable under NRS § 41.085 and NRS § 41.100.

105. LVMPD was the principal or employer of KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants at the time of the events and, therefore, is vicariously liable for their actions.

106. The acts of the Defendants were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff seeks punitive damages.

107. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest.

## SIXTH CAUSE OF ACTION

**(Negligence- Wrongful Death and Survivorship)**

108. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-107 as if fully set forth herein.

109. This cause of action is pleaded by Plaintiff ALEXANDER against the following Defendants: LVMPD, KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants.

110. Defendants owed a duty of care to Williams to properly execute a warrant on the apartment where he was inside, to lawfully enter the apartment where he was, and to use a lawful mode of entry to enter.

111. This duty of care is established by the United States and the Nevada constitutions, federal and law statutes, LVMPD internal policies and procedures, and other industry standards for

police conduct.

112. The Defendant officers breached their duty by negligently performing their search and seizure through negligent tactical conduct preceding their use of deadly force, including failing to confirm the suspect was in the apartment, that he rented or regularly used the apartment, by conducting the raid at 5:00 a.m. in darkness, by deploying distraction devices that would prevent a person from understanding the officers stating their presence and purpose, and by failing to perform a legal knock and announce by not allowing a reasonable opportunity for persons inside the apartment dwelling to ascertain the identity of the officers and comply with the request for admittance prior to using any force to enter a dwelling.

113. As a result of the violation of Williams' civil rights and the acts set forth above, he died. he died. Prior to his death he sustained physical injury with tremendous pain and suffering, emotional distress, and in an amount to be proven at trial. ALEXANDER as an heir has also experienced her own grief, loss, sorrow and companionship of her son. These damages will be determined at trial but are alleged to exceed One Million Dollars ($1,000,000).

114. The aforementioned acts of the Defendants were the proximate cause of Williams' emotional distress and death.

115. Plaintiff ALEXANDER brings this wrongful death and survivorship action in her capacity as an heir and administrator of Williams' estate for all damages recoverable under NRS § 41.085 and NRS § 41.100.

116. LVMPD was the principal or employer of KUBLA, CLEMENTS, GONZALES, BACKMAN, ROTHENBURG, BERTUCCINI and all other DOE Defendants at the time of the events and, therefore, is vicariously liable for their actions.

117. The acts of the Defendants were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff seeks punitive damages.

118. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest.

//

//

**SEVENTH CAUSE OF ACTION**

(*Monell* Claims)

119. Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1-118 as if fully set forth herein.

120. This cause of action is pleaded by Plaintiff ALEXANDER against the following Defendants: LVMPD.

121. This cause of action is pleaded to assert liability of LVMPD pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 S. Ct. 2018 (1978) and 42 U.S.C. § 1983.

122. Williams was deprived of his constitutional rights in violation of the Federal and State Constitutions and he was killed as a result.

123. LVMPD had a policy, practice or custom that caused the Constitutional deprivation.

124. More specifically, LVMPD has a policy, practice or custom of executing search warrants in the early hours of the morning, in the dark, and not abiding by the knock-and-announce requirement, allowing no time for a sleeping person to reasonably ascertain who was at the door and to respond to the officer's request for admittance.

125. This policy, practice or custom is a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity and/or an official with final policymaking authority has ratified these decisions by subordinates.

126. In this case, a superior officer specifically confirmed at a press conference that it was common procedure for LVMPD to execute warrants of this kind in the early morning hours when people are asleep and LVMPD's Force Investigation Team (FIT) investigated Williams' shooting, found it justified and thus ratified the actions of the officers.

127. LVMPD's policy or custom amounted to deliberate indifference to Williams' constitutional rights.

128. LVMPD's policy or custom was the moving force behind the constitutional violation.

129. LVMPD failed to properly screen, train, supervise and/or discipline its attendant and protective personnel.

130. As a result of the violation of Williams' civil rights, he died. Prior to his death he

sustained physical injury with tremendous pain and suffering, emotional distress, and in an amount to be proven at trial. ALEXANDER as an heir has also experienced her own grief, loss, sorrow and companionship of her son. These damages will be determined at trial but are alleged to exceed One Million Dollars ($1,000,000).

131. The aforementioned acts of the Defendants were the proximate cause of Williams' injuries and death.

132. Plaintiff ALEXANDER brings this wrongful death and survivorship action in her capacity as an heir and administrator of Williams' estate for all damages recoverable under NRS § 41.085 and NRS § 41.100.

133. The acts of LVMPD were taken with oppression, fraud or malice and/or their conduct was motivated by evil motive or intent, or involved reckless or callous indifference to the federally protected rights of others, therefore Plaintiff seeks punitive damages.

134. Plaintiff is entitled to attorney's fees, costs of suit, expert fees and interest.

**WHEREFORE**, Plaintiff prays for the following relief:

1. For compensatory damages for physical injury, emotional distress, wrongful death, and nominal damages in an amount to be determined at trial but exceeding $1,000,000;

2. For punitive damages;

3. For reasonable costs, interest and attorney's fees pursuant to 42 USC §§ 1983 and 1988 and all other applicable law;

4. Any further relief the Court deems appropriate.

DATED this 9th day of January, 2024.

BREEDEN & ASSOCIATES, PLLC

**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial in this matter.

DATED this 9th day of January, 2024.

BREEDEN & ASSOCIATES, PLLC

*[signature]*

**ADAM J. BREEDEN, ESQ.**
Nevada Bar No. 008768
7432 W. Sahara Ave., Suite 101
Las Vegas, Nevada 89117
Phone: (702) 819-7770
Fax: (702) 819-7771
Adam@Breedenandassociates.com
*Attorneys for Plaintiff*