# EXHIBIT 3

# OFFICE OF INTERNAL OVERSIGHT REVIEW: KEY FINDINGS, CONCLUSIONS, AND/OR RECOMMENDATIONS OF AN OFFICER-INVOLVED SHOOTING: FATAL

**Office of Internal Oversight Review**
**Key Findings, Conclusions, and/or Recommendations of an Officer-Involved Shooting: Fatal**
**3050 South Nellis Boulevard – January 10, 2022**

## Purpose

The purpose of this report is to publish key findings, conclusions, and/or recommendations of the Las Vegas Metropolitan Police Department's (LVMPD) internal review of this incident. A variety of actions can be taken administratively in response to the Department's review of a deadly force incident. The review may reveal no action is required or determine additional training is appropriate for all officers in the workforce, or only for the involved officer(s). The review may reveal the need for changes in Department policies, procedures, or rules. Where departmental rules have been violated, formal discipline may be appropriate. The goal of the review is to improve both individual and Department performance.

## Synopsis of Event

On January 10, 2022, at approximately 0500 hours, LVMPD was involved in a critical incident under LVMPD Event LLV220100037272. The incident occurred at 3050 South Nellis Boulevard, Apartment 1125, Las Vegas, Nevada 89121. This address was located within the LVMPD Southeast Area Command (SEAC); sector beat John Three (J3).

The incident was an officer-involved shooting (OIS). Special Weapons and Tactics (SWAT) Sergeant Russell Backman and SWAT Officers Brice Clements, Alex Gonzales, James Rothenburg, and Kerry Kubla were the involved officers. They discharged their firearms at Isaiah Williams, who was armed with a Glock 22, .40 caliber handgun, equipped with an extended magazine. Williams was struck multiple times and was later pronounced deceased on scene.

Prior to the OIS, officers from the LVMPD SWAT team briefed at an off-site location regarding a search warrant service at 3050 South Nellis Boulevard, Apartment 1125. The service of the search warrant was to further the investigation of a homicide that occurred in the Las Vegas area, under LVMPD Event LLV211000047520, and a gang related shooting that occurred in December 2021, under LVMPD Event LLV211200073272.

After receiving pertinent information about the search warrant and delegating their roles and responsibilities, the SWAT team headed to the apartment complex. Once positioned at apartment 1125, SWAT Sergeant Backman made verbal announcements of their presence. SWAT Sergeant Backman stated, "Occupants of 3050 South Nellis, police department, search warrant! 1125, police department, search warrant! Metro police search warrant! Occupants of 3050 South Nellis, police department, search warrant! 1125, police department, search warrant!"

After SWAT announced their presence, the SWAT team initiated breaching tactics to gain access into the apartment. A SWAT officer began breaching the front door as SWAT Officer Rothenburg and additional SWAT officers were positioned outside of the west window of the apartment, conducting a breach of the window. SWAT Officer Rothenburg held a ballistic shield, which provided cover and concealment from the inside of the apartment.

Once the apartment's door was opened, SWAT officers immediately made entry. Unbeknownst to the SWAT officers, Williams was lying on a couch in the living room, armed with a firearm. Williams immediately began to shoot at the SWAT officers making entry. SWAT Officer Kubla was the first officer to enter the apartment. He was shot multiple times and injured. When shot, SWAT Officer Kubla fell to the ground; however, he was able to discharge his firearm at Williams.

Office of Internal Oversight Review
Key Findings, Conclusions, and/or Recommendations of an Officer-Involved Shooting: Fatal
3050 South Nellis Boulevard – January 10, 2022

SWAT Sergeant Backman and SWAT Officers Clements and Gonzales also entered the apartment. As they entered, Williams continuously fired his handgun toward them. SWAT Sergeant Backman, and SWAT Officers Clements and Gonzales discharged their firearms at Williams. During the exchange of gunfire inside the apartment, SWAT Officer Clements sustained an injury from a bullet fragment.

Williams then fired his handgun at the window where SWAT Officer Rothenburg and other SWAT officers were positioned. The ballistic shield SWAT Officer Rothenburg was holding was struck; however, he was not injured. Simultaneously, SWAT Officer Rothenburg discharged his firearm at Williams.

Williams was struck multiple times by the SWAT officers' gunfire. As additional SWAT officers entered the apartment, Williams stopped discharging his firearm and became unresponsive.

SWAT officers cleared and secured the rest of the apartment and surrounding area. Williams was assessed by medical personnel and pronounced deceased on scene. SWAT Officers Kubla and Clements were removed from the apartment and transported to University Medical Center (UMC).

## The Criminal Investigation

LVMPD's Force Investigation Team (FIT) conducted the criminal investigation of this incident. The investigation was submitted to the District Attorney's Office for review. The District Attorney's Office determined that, "no criminal prosecution of the officer or officers involved in the referenced case was appropriate."

For additional information related to the investigation of this incident, please refer to LVMPD's FIT Report and the Clark County District Attorney's Legal Analysis Report and/or the Clark County District Attorney's Decision document.

## LVMPD Administrative Review and Critical Incident Review Process

It is the policy of this Department to provide LVMPD and the community with a thorough review of incidents wherein deadly force was used by Department members. The Critical Incident Review Process (CIRP) includes the participation of citizen board members who reside within the LVMPD jurisdiction, who are not personally affiliated with the Department, who are not related to any of its members, and who have not had prior law enforcement experience.

The CIRP is comprised of two related boards whose sole purpose is to conduct comprehensive administrative review of the tactics utilized by involved Department members as well as decision-making, Department policy, training, supervision, and the use of deadly force.

The Use of Force Review Board (UFRB) consists of commissioned and citizen members. The Critical Incident Review Team (CIRT) presents the facts related to the use of deadly force. The board issues findings regarding the actions of Department members who used, directly ordered, or directly influenced the use of deadly force, whether such force resulted in death or serious injury. The UFRB may choose from one of four findings after hearing the presentation of facts from CIRT. The findings are Administrative Approval, Tactics/Decision-Making, Policy/Training Failure, or Administrative Disapproval.

The Tactical Review Board (TRB) reviews CIRT conclusions. The TRB can validate, overturn, or modify the conclusions regarding the actions of Department members.

Office of Internal Oversight Review
Key Findings, Conclusions, and/or Recommendations of an Officer-Involved Shooting: Fatal
3050 South Nellis Boulevard – January 10, 2022

The matter was heard by the UFRB and TRB on December 8, 2022. Below are the key findings, conclusions, and/or recommendations from the CIRP determined by the UFRB and TRB members and approved by the Sheriff.

## Use of Force Review Board

**UFRB: SWAT Sergeant Russell Backman and SWAT Officers Brice Clements, Alex Gonzales, James Rothenburg, and Kerry Kubla.**
The board's finding was Administrative Approval for the SWAT sergeant and all the SWAT officers. Administrative Approval is defined as: "objectively reasonable force was used under the circumstances, based on the information available to the officer/officers at the time." This finding acknowledges that the use of force was justified and within Department policy.

## Tactical Review Board

**Communication**
Communication can be verbal or non-verbal. It includes electronic transmission or in-person. A review of these recordings can provide valuable evidence of the circumstances surrounding a particular event.

Prior to the OIS, supervisors from SWAT ensured the proper notifications were completed to the dispatcher and SEAC supervisors reference their activity in the area. After the OIS, a SWAT sergeant immediately broadcast over the SEAC radio channel there was an OIS and there was an officer shot.

The SWAT sergeant proceeded to gather resources to the call, to include clearing a route for SWAT Officer Kubla to go to UMC Trauma. Dispatchers and supervisors on three channels, Bolden Area Command (BAC), SEAC, and Downtown Area Command (DTAC) coordinated a safe and successful path for the ambulance transporting SWAT Officer Kubla to UMC Trauma.

- The administrative review determined the radio traffic and communication of all involved supervisors, officers, and dispatchers were within standardized LVMPD tactics, training, and policy.

Once it was broadcast there was an OIS, LVMPD Communications dispatchers and supervisors acted quickly and effectively to gather resources to the call.

- The administrative review determined all LVMPD Communications dispatchers and supervisors involved with this incident were within standardized LVMPD tactics, training, and policy.

**De-escalation**
Policing requires that at times an officer must exercise control of a violent or resisting subject to make an arrest or to protect the officer, other officers, or members of the community from risk of harm. Clearly, not every potential violent confrontation can be de-escalated, but officers do have the ability to impact the direction and the outcome of many situations based on their decision-making and the tactics they choose to employ. As a strategy to diminish the likelihood and the severity of force, officers will attempt to de-escalate confrontations.

Office of Internal Oversight Review
Key Findings, Conclusions, and/or Recommendations of an Officer-Involved Shooting: Fatal
3050 South Nellis Boulevard – January 10, 2022

During CIRT's investigation, it was learned while the search warrant application and affidavit established probable cause, as it was signed and approved by two judges and a Chief Deputy District Attorney; it did not meet the standards outlined within the LVMPD's search warrant policy. The LVMPD detective who drafted the search warrant did not list the specific items sought to be seized and the justification as to why in the narrative of the search warrant. The description of and articulation for items to be seized in the search warrant were vague.

- The administrative review determined the drafting of the search warrant by the LVMPD detective was not within standardized LVMPD tactics, training, and policy.

After briefing the plan to serve the search warrant, SWAT officers deployed onto the side of two LVMPD armored vehicles (Bearcats), followed by a K9 unit, ambulance, and SWAT Officer Rothenberg's Ford F350. The convoy safely made their way to 3050 South Nellis Boulevard, disembarked from the vehicles, and moved together to the front door of Apartment 1125. All SWAT officers moved to their preplanned positions safely and without issue.

- The administrative review determined SWAT's approach to the door of the apartment was within standardized LVMPD tactics, training, and policy.

The SWAT Section Manual contained verbiage allowing SWAT operators to conduct a controlled entry tactic (CET) for property when there was a threat of an armed and dangerous subject. CIRT determined the CET was not an appropriate tactic for this incident, given the number of unknowns associated with Apartment 1125.

- The administrative review determined SWAT's decision to serve the 3050 South Nellis Boulevard search warrant as a CET, was a policy/training failure and not within standardized LVMPD tactics, training, and policy.

After the OIS, a "tactical" call was implemented from the living room. Immediately, SWAT officers in the apartment started to echo the "tactical" call. Simultaneously, a SWAT officer entered the only bedroom of the apartment and addressed a second subject who ran into and through a Jack and Jill bathroom. The subject continued into the living room and was quickly taken into custody as he ran directly into additional SWAT officers. The only section of the residence which was not cleared or occupied by SWAT was the bathtub and a small section of a small laundry/pantry room, which had an open door; therefore, SWAT cleared and secured the rest of the apartment.

- The administrative review determined it was reasonable for SWAT to clear the remaining areas of the apartment and were within standardized LVMPD tactics, training, and policy.

During the entry of Apartment 1125, SWAT operators entered the residence and were immediately met with gunfire. While they had preplanned entering the apartment, Williams' actions did not allow for specific contact and cover tactics.

- The administrative review determined SWAT Sergeant Backman and SWAT Officers Kubla, Clements, Gonzales and Rothenburg's use of the contact and cover tactic was within standardized LVMPD tactics, training, and policy.

**Office of Internal Oversight Review**
**Key Findings, Conclusions, and/or Recommendations of an Officer-Involved Shooting: Fatal**
**3050 South Nellis Boulevard – January 10, 2022**

During their encounter with Williams, SWAT officers were immediately met with gunfire and had no cover or concealment to retreat to. SWAT Officer Rothenburg, who was outside of the apartment with a ballistic shield, was able to use his shield as cover; however, due to Williams' actions, he was unable to move to another available option of cover or concealment.

- The administrative review determined SWAT Sergeant Backman and SWAT Officers Kubla, Clements, Gonzales, and Rothenburg's use of the cover and concealment tactic was within standardized LVMPD tactics, training, and policy.

**Use of Deadly Force**
It is the policy of this Department that officers hold the highest regard for the dignity and liberty of all persons and place minimal reliance upon the use of force. The Department respects the sanctity of every human life, and the application of deadly force is a measure to be employed in the most extreme circumstances where lesser means of force have failed or could not be reasonably considered.

The Department seeks to manage use of force beyond the Graham v. Connor (1989) standard and its minimum requirements by establishing further parameters for the application of force and to offer explicit direction to officers. Sound judgment, the appropriate exercise of discretion, and the adherence to Department policy will always be the foundation of officer decision-making in the broad range of possible use of force situations.

Officers will only use a level of force that is objectively reasonable to bring an incident or persons under control and to safely accomplish a lawful purpose. An officer's use of force must balance against the level of resistance exhibited by the subject. The level of force administered by an officer must be carefully controlled and should not be more than objectively reasonable to overcome the physical harm threatened.

In a confrontation, an officer will continuously reassess their response and adjust any use of force accordingly based upon the level of resistance encountered. Failure to reassess each application of force can lead to a violation of law and/or policy. The use of force by an officer must be within Department Policy which may be more restrictive than the U.S. Constitution.

When SWAT Sergeant Backman and SWAT Officers Kubla, Clements, Gonzales, and Rothenburg deployed their firearms, the following was known, they were there to serve a lawful search warrant and there was the potential to encounter the homicide suspects who may be armed with firearms.

- The administrative review determined SWAT Sergeant Backman and SWAT Officers Kubla, Clements, Gonzales, and Rothenburg's drawing of their firearms was within standardized LVMPD tactics, training, and policy.

When SWAT Sergeant Backman and SWAT Officers Kubla, Clements, Gonzales, and Rothenburg discharged their weapons, they all had a similar backdrop which consisted of a couch up against a wall, in the corner of the first-floor apartment. Additionally, the trajectory of the officers' rounds was in a downward angle.

Office of Internal Oversight Review
Key Findings, Conclusions, and/or Recommendations of an Officer-Involved Shooting: Fatal
3050 South Nellis Boulevard – January 10, 2022

- The administrative review determined SWAT Sergeant Backman and SWAT Officers Kubla, Clements, Gonzales, and Rothenburg's assessment of target isolation and backdrop were within standardized LVMPD tactics, training, and policy.

At the time SWAT Sergeant Backman and SWAT Officers Kubla, Clements, Gonzales, and Rothenburg discharged their weapons, Williams (armed with a firearm) actively fired at the officers as they made entry into the apartment.

- The administrative review determined SWAT Sergeant Backman and SWAT Officers Kubla, Clements, Gonzales, and Rothenburg's threat assessments were within standardized LVMPD tactics, training, and policy.

**Incident Management**
Supervisors will possess a thorough knowledge of tactics and ensure that officers under their supervision perform to a standard (in accordance with LVMPD policy and training). The prospect of a favorable outcome is often enhanced when supervisors become involved in the management of the overall response to a potentially violent encounter by coordinating officers' tactical actions.

Supervisors will acknowledge and respond to incidents in a timely manner when officer use of reportable force is probable. Supervisors will also manage the deployment of resources and equipment. In dynamic and highly-charged incidents, supervisors will provide clear direction and communication to officers regarding their positioning and roles. Upon observing substandard officer approaches or flaws in tactical decisions, the supervisor will promptly act to correct any deficiencies.

An Assistant Team Leader (ATL) was assigned by the SWAT sergeant. After being notified of the event, the ATL coordinated the appropriate number of SWAT team members to respond to the scene. The ATL assigned SWAT officers to conduct reconnaissance in the area and assigned roles and responsibilities for each SWAT team member. The ATL and SWAT sergeant conducted the brief to all SWAT Team members the morning of the service of the warrant. Prior to the incident, the ATL developed the tactical plans which were approved by the SWAT lieutenant and SWAT sergeant. Finally, the ATL and SWAT sergeant conducted the brief to all SWAT Team members.

- The administrative review determined the ATL's response to this incident and his management of tactics for all SWAT members as the ATL were within standardized LVMPD tactics, training, and policy.

After the OIS, a SWAT sergeant immediately broadcast shots fired on the SEAC radio channel and there was an officer shot. The SWAT sergeant coordinated with SEAC, DTAC, and BAC to ensure the closure of surface streets to expedite SWAT Officer Kubla's transport to UMC. The SWAT sergeant identified the involved officers and ensured they had monitor officers. A SWAT sergeant read the Public Safety Statement (PSS) to the involved officers.

A SEAC lieutenant immediately responded to the area, took the role of the Incident Commander (IC) and established a Command Post (CP) nearby. The Watch Commander (WC) responded to assist with the incident. All supervisors worked together and managed the scene of the OIS and CP.

**Office of Internal Oversight Review**
**Key Findings, Conclusions, and/or Recommendations of an Officer-Involved Shooting: Fatal**
**3050 South Nellis Boulevard – January 10, 2022**

- The administrative review determined the supervisory response to this incident and the management of the CP and OIS locations were within standardized LVMPD tactics, training, and policy.

After the OIS, a SWAT sergeant assisted with scene management, to include coordinating medical treatment on Officer Kubla and conducting the Public Safety Statement (PSS). When the SWAT sergeant conducted the PSS for the involved officers, his BWC remained on recording the PSS. Per LVMPD policy, the PSS will not be recorded.

- The administrative review determined the SWAT sergeant's recording of the PSS on his BWC was not within standardized LVMPD tactics, training, and policy.

**Additional Key Findings, Conclusions, and/or Recommendations**

Immediately after the OIS, SWAT officers assisted SWAT Officer Kubla out of the apartment. SWAT medical units removed SWAT Officer Kubla's body armor and clothing to evaluate and treat his wounds. A total of three tourniquets were applied to SWAT Officer Kubla. One to each of his arms and one to his right leg, in an attempt to control his bleeding. Once they were able to control his bleeding, SWAT Officer Kubla was moved to an ambulance and transported to UMC.

SWAT Officer Clements, who had identified he had been struck in the arm but the round did not penetrate his skin, stayed on scene until his PSS was concluded. After his PSS, Officer Clements was transported to UMC Trauma to be evaluated for his wounds.

After SWAT Officer Kubla was stabilized, a SWAT medical unit entered Apartment 1125, and evaluated Williams' injuries. After checking for signs of life, it was determined Williams was deceased.

- The administrative review determined the medical response and intervention for Williams, and SWAT Officers Kubla and Clements was within standardized LVMPD tactics, training, and policy.