**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
  Attorney for Defendants LVMPD, Kerry Kubla, Brice Clements, Alex Gonzales, Russell Backman, James Rothenburg, James Bertuccini and Melanie O'Daniel

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LATIA ALEXANDER, individually as heir of ISAIAH T. WILLIAMS, and in her capacity as Special Administrator of the Estate of ISAIAH T. WILLIAMS,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; KERRY KUBLA, in his individual capacity; BRICE CLEMENTS, in his individual capacity; ALEX GONZALES, in his individual capacity; RUSSELL BACKMAN, in his individual capacity; JAMES ROTHENBURG, in his individual capacity; JAMES BERTUCCINI, in his individual capacity; MELANIE O'DANIEL, in her individual capacity and DOES I-XX, inclusive,<br><br>                    Defendants. | Case Number:<br>2:24-cv-00074-APG-NJK<br><br>**LVMPD DEFENDANTS' RESPONSE REGARDING ORDER ECF NO. 42** |

Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Kerry Kubla, Brice Clements, Alex Gonzales, Russell Backman, James Rothenburg, James Bertuccini and Melanie O'Daniel ("LVMPD Defendants"), by and through their counsel, Marquis Aurbach, hereby file their Response as ordered by the Court in ECF No. 42.

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION AND PROCEDURAL HISTORY

On February 4, 2025, Plaintiffs filed their Motion to File Motion to Modify Stipulated Protective Order Between the Parties and Related Exhibits Under Seal (the "Motion to Seal"). (ECF No. 37). LVMPD Defendants did not oppose the Motion to Seal. On March 21, 2025, this Court ordered the LVMPD Defendants file a supplemental response addressing all relevant standards for sealing and/or redaction.

As demonstrated herein, the relevant standards for sealing and/or redaction favor that LVMPD's Critical Incident Review Team ("CIRT") Report ("CIRT Report) and Tactical Review Board ("TRB") Interoffice Memorandum ("TRB Memo") remain sealed. LVMPD Defendants submit the Declaration of Sheriff McMahill as **Exhibit A** pursuant to the Court's standing order a party designating a document confidential under the parties' Stipulated Protective Order must file a declaration establishing sufficient justification for sealing the document(s) at issue. LVMPD Defendants respectfully request the CIRT Report and TRB Memo attached to Plaintiffs' Motion to Modify Stipulated Protective Order Between the Parties ("Motion to Modify SPO") remain sealed. LVMPD Defendants further request Plaintiffs' citations to the privileged and confidential information within the CIRT Report and TRB Memo within Plaintiffs' Motion to Modify SPO be redacted.

## II. LEGAL STANDARD

### A. LEGAL STANDARD FOR MOTION TO SEAL

The mere designation of a document as confidential pursuant to a stipulated protective order is not sufficient to demonstrate good cause to file a document under seal. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003). Parties seeking to keep secret from the public documents filed in relation to non-dispositive motions must make a "particularized showing" of "good cause." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) (*quoting Foltz*, 331 F.3d at 1135). Non-dispositive motions "are often 'unrelated, or only tangentially related, to the underlying cause of action,'" and, as a result, the public's interest in accessing dispositive materials

1  does "not apply with equal force" to non-dispositive materials. *Id.* at 1179. In light of the
2  weaker public interest in non-dispositive materials, the Ninth Circuit applies the "good
3  cause" standard of Fed. R. Civ. P. 26(c) when parties wish to keep them under seal. *Pintos v.*
4  *Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). Applying the "compelling interest"
5  standard under these circumstances would needlessly "undermine a district court's power to
6  fashion effective protective orders." *Id.* (*citing Foltz*, 331 F.3d at 1135).

7        If the filing to which the sealed record is attached and or the sealed records are
8  "more than tangentially related to the merits of a case," courts apply a "compelling reasons"
9  standard to a motion to seal. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092,
10 1098–1102 (9th Cir. 2016). Courts permit sealing a party's confidential, non-public
11 information when "compelling reasons" in non-disclosure outweigh those favoring public
12 access. *Id.* at 1179. Compelling reasons may exist "when such 'court files might have
13 become a vehicle for improper purposes,' such as the use of records to gratify private spite,
14 promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (*quoting*
15 *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

16     **B.**    **LEGAL STANDARD FOR REDACTION**

17       The Ninth Circuit has made clear that the sealing of entire documents is improper
18 when confidential information can be redacted to leave meaningful information available to
19 the public. *Foltz*, 331 F.3d at 1137. To the extent that a sealing order is permitted, it must be
20 narrowly tailored. *See, e.g., Press-Enterprise Co. v. Superior Court of California*, 464 U.S.
21 501, 513, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (sealing orders should be "limited to
22 information that [is] actually sensitive"). Thus, only the portions of a filing that contain
23 specific reference to confidential documents or information, and exhibits that contain such
24 confidential information, may be filed under seal. *In re Roman Catholic Archbishop of*
25 *Portland*, 661 F.3d 417, 425 (9th Cir. 2011). The United States District Court for the District
26 of Nevada explicitly requires redaction to avoid the disclosure of personal-data identifiers as
27 identified in LR IC 6-1.

28

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  III.  **LEGAL ARGUMENT**

2      A.  **THE COURT IS CORRECT THAT SEALING THE ENTIRETY OF PLAINTIFFS' MOTION TO MODIFY SPO AND ALL EXHIBITS THERETO IS NOT WARRANTED.**

In their Motion to Seal, Plaintiffs asked the Court to allow them to file the entirety of their Motion to Modify SPO, and the exhibits thereto, under seal. (*See* ECF No. 37). As the Court notes, Plaintiffs did not address the exhibits individually or explain why the Motion to Modify SPO should itself be sealed. (ECF No. 42). While LVMPD Defendants did not oppose the Motion, LVMPD Defendants acknowledge good cause and/or compelling reasons do not exist to seal exhibits which have already been released publicly, or to seal the entirety of Plaintiffs' Motion to Modify SPO. LVMPD Defendants neither oppose the unsealing of the moving papers relating to Plaintiffs' Motion to Modify SPO, nor the unsealing of Exhibits 2, 3, 4, or 6 to Plaintiffs' Motion to Modify SPO.

However, LVMPD Defendants submit good cause and compelling reasons exist to seal: (1) the CIRT Report itself, attached as Exhibit 1 to Plaintiffs' Motion to Modify SPO; and (2) the TRB Memo, attached as Exhibit 5 to Plaintiffs' Motion to Modify SPO. As described in the Declaration of Sheriff McMahill, the CIRT Report and documents generated by the TRB are within LVMPD's CIRT process. *See* **Exhibit A**, Declaration of Sheriff McMahill. These documents are protected by the deliberative-process privilege and official information privilege. Good cause and compelling reasons exist for LVMPD's maintaining the confidentiality of its CIRT process its deliberative/predecisional materials relating thereto, as set forth in LVMPD Defendants' Opposition to Plaintiffs' Motion to Modify SPO and further explained herein. In addition, Plaintiffs' citations within the Motion to Modify SPO to the advisory opinions, recommendations, and deliberations within the CIRT Report and TRB Memo should be redacted.

    B.  **GOOD CAUSE EXISTS FOR THE CIRT REPORT AND TRB MEMO TO REMAIN UNDER SEAL.**

The first step for the Court in analyzing a motion to seal is determining whether the materials a party is requesting to be sealed ought be analyzed pursuant to the "good cause"

1  standard of Fed. R. Civ. P. 26(c) or the "compelling reasons" standard enunciated by the
2  Ninth Circuit. Here, the good cause standard applies because Plaintiffs' Motion to Modify
3  SPO is a discovery Motion, and because the CIRT Report and TRB Memo are only
4  tangentially related to Plaintiffs' claims. As set forth in LVMPD Defendants' Opposition to
5  Plaintiff's Motion to Modify SPO, good cause exists to maintain the confidentiality
6  documents generated pursuant to LVMPD's CIRT process.

### 1. The "good cause" standard applies to CIRT Report and TRB Memo.

Two standards govern whether documents should be sealed: a "compelling reasons" standard, which applies to dispositive motions, and a "good cause" standard, which applies to non-dispositive discovery type motions. *Kamakana*, 447 F.3d at 1179; *see also Pintos*, 605 F.3d at 677. The Ninth Circuit has clarified, however, that the key in determining which standard to apply is not whether the proposed sealed documents accompany a dispositive or non-dispositive motion. *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). "Rather, public access will turn on whether the motion is more than tangentially related to the merits of a case." *Id.*

Here, Plaintiffs' Motion to Modify SPO is clearly a non-dispositive discovery type motion, as it explicitly relates to whether the Court should modify the parties' protective order relating to discovery materials. Further, while Plaintiffs apparently believe otherwise, LVMPD's CIRT process and LVMPD's internal deliberations relating to its policies and procedures are of minimal relevance to Plaintiffs' claims. As explained in LVMPD Defendants' Opposition to Plaintiffs' Motion to Modify SPO, LVMPD's CIRT process is intended to evaluate critical incidents against LVMPD's policies, procedures, and training. (**Ex. A**, ¶¶3-7). The TRB is part of that process and evaluates the tactics and implementation of LVMPD's policy and training during critical incidents. (*Id.* at ¶34). While the CIRT process exclusively focuses on whether policy violations occurred and whether policy should be modified, for over forty years, courts have uniformly held that policy violations play no role in determining whether a constitutional violation occurred. In §1983 cases,

1 determining whether police officers violated an internal department policy "is not the focus
2 of [the court's] inquiry." *See Case v. Kitsap Cnty. Sheriff's Dept.,* 249 F.3d 921, 929-30 (9th
3 Cir. 2001) (citing *Wilson v. Meeks*, 52 F.3d 1547, 1554 (10th Cir. 1995) (finding qualified
4 immunity; "[V]iolation of a police department regulation is insufficient for liability under
5 §1983.") *see also Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986)
6 ("[A]llegations about the breach of a statute or regulation are simply irrelevant to the
7 question of an official's illegibility for qualified immunity in a suit over the deprivation of a
8 constitutional right."). In short, it is the duty of this court to determine whether the officers
9 violated the Constitution, and any violations of LVMPD's internal policies and procedures
10 play no role in that determination.

11 Accordingly, this Court should apply the "good cause" standard of Fed. R. Civ. P.
12 26(c) in determining whether Plaintiffs' Motion to Modify SPO and the exhibits thereto
13 should remain sealed.

**2. Under the "good cause" standard, the CIRT Report and TRB Memo should remain under seal.**

As explained in the Declaration of Sheriff McMahill, LVMPD's primary internal factual investigation is conducted by FIT. (**Ex. A**, ¶¶8-25). The FIT report is not confidential. The only additional information acquired by CIRT as compared to FIT are compelled statements of involved officers. (*Id.* at ¶27). However, Plaintiffs' Motion to Modify SPO does not request public disclosure of the CIRT Report and/or TRB Memo on account of the compelled statements. The only portions of the CIRT Report and/or the TRB Memo which Plaintiffs have indicated an interest in disclosing publicly are the deliberative and predecisional opinions, recommendations, and conclusions reached during LVMPD's CIRT process relating to LVMPD policy. As illustrated in LVMPD's Opposition to Plaintiffs' Motion to Modify SPO, those opinions, recommendations, and conclusions are plainly protected by the deliberative process privilege and official information privileges, and LVMPD would suffer a particularized harm its CIRT reports and deliberative-process materials generated pursuant to its CIRT process were disclosed publicly. LVMPD

1  Defendants hereby incorporate by reference their legal argument within their Opposition to
2  Plaintiffs' Motion to Modify SPO. For the reasons identified therein, good cause exists to
3  maintain the confidentiality of the CIRT Report, and LVMPD Defendants incorporate those
4  same arguments with respect to the TRB Memo.

5  Therefore, pursuant to the good cause standard of Fed. R. Civ. P. 26(c), the CIRT
6  Report and TRB Memo attached as exhibits to Plaintiffs' Motion to Modify SPO should
7  remain sealed.

### C. EVEN UNDER THE "COMPELLING REASONS" STANDARD, THE CIRT REPORT AND TRB MEMO SHOULD REMAIN UNDER SEAL.

Under the compelling reasons standard, courts permit sealing a party's confidential, non-public information when "compelling reasons" in non-disclosure outweigh those favoring public access. *Id.* at 1179. Compelling reasons may exist "when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* (*quoting Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

Even if the Court determines the heightened "compelling reasons" standard applies to its analysis, the CIRT Report and/or TRB Memo should remain under seal. Plaintiffs' Motion to Modify SPO plainly identifies their intent in public disclosure of the CIRT Report is to publicly disclose LVMPD's internal conclusions and recommendations relating to policy and training changes, which are the crux of LVMPD's deliberative-process privilege and official information privilege interests in the CIRT Report. (Motion to Modify SPO, p.16:20-27, p.18:14-17). Resultantly, Plaintiffs' intended use of the CIRT Report and/or TRB memo is for an improper purpose, attempting to gratify spite, promote public scandal, and potentially prejudice a jury pool against LVMPD Defendants based on privileged information which is part of a process aimed at improving LVMPD's policies, procedures, and training.

Notably, the purpose of LVMPD Defendants' disclosure of the CIRT Report and related materials in the first instance was to adhere to prior decisions of this Court finding

MAC: 14687-428 (#5827613.1) 3/24/2025 2:31 PM

1   that LVMPD's CIRT reports are predecisional and protected by the deliberative-process
2   privilege, but that disclosure of privileged portions of LVMPD's CIRT reports was
3   nevertheless justified based on plaintiffs' needs for the materials and in the interest of
4   accurate fact finding. *See Llera, et al. v. Las Vegas Metro Police Dep't.*, 564 F. Supp. 3d
5   914 (D. Nev. 2021); *see also Farmer v. Las Vegas Metro Police Dep't.,* No.
6   218CV00860GMNVCF, 2020 WL 11028818 (D. Nev. Feb. 25, 2020). However, a critical
7   portion of the reasoning underpinning the required disclosure of privileged information in
8   litigation was that LVMPD would be protected by a protective order preventing disclosure
9   of its privileged information to the public generally. *See Llera*, 564 F. Supp. 3d at 920, fn.2
10  (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 664–65 (N.D. Cal. 1987)).

11      As demonstrated at greater length in LVMPD Defendants' Opposition to Plaintiffs'
12  Motion to Modify SPO, courts have consistently recognized the significant interest of police
13  departments in the nondisclosure of privileged internal deliberations relating to the
14  modification and improvement of policies, procedures, and training. In addition, Plaintiffs
15  have not identified a proper purpose for public disclosure of the CIRT Report and/or TRB
16  Memo. Resultantly, compelling reasons exist for the CIRT Report and TRB Memo to
17  remain under seal.

18      **D.    PLAINTIFFS' CITATIONS TO THE OPINIONS,
         RECOMMENDATIONS AND DELIBERATIONS WITHIN THE CIRT
19       REPORT AND TRB MEMO SHOULD BE REDACTED.**

20      LVMPD Defendants have established the good cause and compelling reasons for the
21  CIRT Report and TRB Memo remaining sealed. However, as recognized by the Court,
22  sealing the entirety of Plaintiffs' Motion to Modify SPO is not warranted because the
23  confidential information therein can be redacted. *See Foltz*, 331 F.3d at 1137. For the
24  reasons outlined above, Plaintiffs' citations to the opinions, recommendations, and
25  deliberations within the CIRT Report and TRB Memo within Plaintiffs' Motion to Modify
26  SPO must be redacted. The following redactions would be necessary to protect the
27  privileged and confidential information within the CIRT Report and TRB Memo: (1)
28  Plaintiff's Motion to Modify SPO, p.4:21-27; (2) Plaintiff's Motion to Modify SPO, p.6:23-

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

1  27; (3) Plaintiff's Motion to Modify SPO, pp.7:3 – 9:16; (4) Plaintiff's Motion to Modify SPO, p.12:8-11; and (5) Plaintiff's Motion to Modify SPO p.18:6-7. Good cause and compelling reasons exist to redact the confidential information cited by Plaintiff, as demonstrated herein.

## IV.  CONCLUSION

Based on the foregoing, LVMPD Defendants respectfully request the Court rule that the CIRT Report and TRB Memo remain sealed, and order Plaintiffs' Motion to Modify SPO be redacted as set forth herein prior to being unsealed.

Dated this 24th day of March, 2025.

MARQUIS AURBACH

By: *s/Craig R. Anderson*
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney for Defendants LVMPD, Kerry Kubla, Brice Clements, Alex Gonzales, Russell Backman, James Rothenburg, James Bertuccini and Melanie O'Daniel

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **LVMPD DEFENDANTS' RESPONSE REGARDING ORDER ECF NO. 42** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 24th day of March, 2025.

☒   I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒   I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants: N/A

*s/Sherri Mong*
An employee of Marquis Aurbach

# Exhibit A

# DECLARATION OF KEVIN MCMAHILL

I, Kevin McMahill, do hereby declare:

1. I am currently the duly elected Sheriff of Clark County Nevada. I am the Chief Law Enforcement Officer of the Las Vegas Metropolitan Police Department ("LVMPD") pursuant to NRS §280.121. I have personal knowledge of the facts stated herein, except for those stated on information and belief, and, as to those, I believe them to be true. I am competent to testify as to the facts stated herein in a court of law and will so testify if called upon.

2. This declaration is submitted in support of LVMPD's Opposition to Plaintiff's Motion to Modify Stipulated Protective Order Between the Parties.

## CIRT BACKGROUND

3. LVMPD's Critical Incident Review Team ("CIRT") is an internal review board that investigates LVMPD officer involved shootings and in-custody deaths.

4. The goals of CIRT are to candidly and objectively evaluate officer involved shootings for the purpose of evaluating LVMPD's policies, training and the actual incident.

5. CIRT is tasked with reviewing/investigating officer involved shootings and determining the role that LVMPD policies and/or training played in the shooting. CIRT is tasked with identifying potential problems regarding training, policies, and/or tactics.

6. CIRT's conclusions, criticisms, and opinions are used to create and modify current LVMPD policies and training. In other words, CIRT's primary purpose is to facilitate critical deliberation within LVMPD intended to improve LVMPD's policies, training, and tactics.

7. Due CIRT's important role within LVMPD, CIRT was created with the understanding that all critical information generated by CIRT would be privileged.

## CIRT AND FIT

8. In order to achieve the self-critical goals, CIRT works closely with LVMPD's Force Investigation Team ("FIT"). After an officer involved death, FIT investigates the incident. The following explains the relationship between CIRT and FIT.

9. When an officer involved death occurs, LVMPD has two distinct tracks of review.

10. The first track of review is conducted by FIT. The purpose of FIT is to gather all available information and evidence to assist the District Attorney's Office in determining whether any criminal conduct occurred during the officer involved shooting. In the Isaiah Williams incident Scott Mendoza was the lead FIT investigator.

11. The second track of review is handled by CIRT. The purpose of CIRT is intentionally different from the FIT team.

12. CIRT is a team of full-time LVMPD employees who conduct mandatory investigations into all officer involved shootings. Officer participation with CIRT is mandatory -- not voluntary. Therefore, all participants are assured of the privileged nature of CIRT in order to obtain candid and honest participation. The current LVMPD policy regarding CIRT is found in LVMPD's Policy 5/109.01.

13. Although the FIT and CIRT investigations are distinct and independent, there is commonality between the two investigations.

14. Once an officer involved death occurs, it is the responsibility of any officer on scene to secure the scene and immediately notify LVMPD communications and an immediate supervisor.

15. The first supervisor on scene assumes responsibility as the "incident commander." In this capacity, the first supervisor addresses the most immediate and urgent needs, such as directing medical attention to those who need it and continuing security of the scene. In conjunction, the first supervisor is directed to obtain a "public safety statement" from the involved officers. The Public Safety Statement consists of responses to pre-defined series of questions found in LVMPD Policy 5/109.01.

16. The information acquired in the public safety statement is consistent with the initial objections and responsibilities of the first supervisor: (1) determine the number and identity of those needing medical attention; (2) determine information about suspects who are not accounted for; and (3) gather information necessary to secure the scene for further investigation.

17. While the first supervisor is performing these tasks, LVMPD communications is responsible for notifying personnel who are to respond to the scene. At this point, FIT and CIRT are notified.

18. Once all essential personnel are on scene, an initial briefing is held. Both FIT and CIRT attend the initial briefing.

19. Following the initial briefing, FIT coordinates a walk-through of the scene with the involved officer (the officer is allowed to refuse to participate in the walk-through). If there is more than one officer involved, multiple walk-throughs will be conducted. As noted above, the walk-through is designed to identify locations where physical evidence might be found and to provide FIT investigators with a general understanding of the scene. CIRT does not accompany any walk-through that includes an involved officer. However, CIRT is later briefed and participates in a walk-through with FIT or crime scene analysts.

20. At this point, the responsibilities and protocol of FIT and CIRT differ. FIT continues its investigation through its accumulation in the presentation of its information to the District Attorney's Office. Meanwhile, CIRT's involvement remains solely internal. FIT is required to share all of its information with CIRT. CIRT, on the other hand, is strictly prohibited from sharing compelled information from the involved officers with FIT.

21. The critical differences between the FIT and CIRT procedures are two-fold. First, the purpose and objective of the FIT process is to gather information necessary to determine whether any conduct of an officer involved in the shooting constitutes a criminal act.

22. Second, given the criminal nature of the FIT process, the officers are afforded the right to decline to submit to an interview.

23. The purpose and objective of the CIRT process is to evaluate the application, misapplication, lapse or neglect of training, policies and procedures in order to determine whether modifications of any internal rules or practices are required.

24. On the contrary, given the administrative nature of the CIRT process, the involved officers in a shooting are compelled to submit themselves to an interview as they are in the best position to assist in the improvement of internal procedures.

25. Once FIT's investigation is complete, it turns the FIT report and accompanying evidence to the District Attorney's Office for review. The District Attorney then determines whether criminal charges are necessary and it holds a Fatality Review Board to make its findings public.

26. CIRT does not complete its report until after the District Attorney has issued its finding. The reason is because the criminal case takes precedence over any civil actions or administrative actions.

27. In this case, CIRT had access to all of the information obtained by FIT. In addition, CIRT had access to the witness statements compelled by CIRT. Thus, the primary evidentiary difference between FIT and CIRT investigation are the compelled statements.

28. Once the criminal investigation and CIRT investigations are complete, CIRT creates its CIRT Report.

29. The purpose of the CIRT Report is to report the facts of the in-custody death and then analyze the facts for potential tactical errors, policy violations, or general areas where improvements can be made. In addition, the CIRT Report identifies tactics and policies that were correctly applied.

30. CIRT members are assured of the privileged nature of the reports and are forbidden to disseminate the report. The reason is to ensure that CIRT is candid and honest regarding their evaluation. It is also to assure that CIRT is not concerned with potential legal or internal fallout resulting from any opinions or decisions. In short, the goal of the CIRT report is to candidly, honestly, and openly evaluate LVMPD's policies, training, tactics, and procedures with respect to a specific event. CIRT then makes recommendations for future actions with respect to policies, training, or procedures.

## CRITICAL INCIDENT REVIEW PROCESS

31. After a CIRT report is completed, the matter is then moved to the Critical Incident Review Process ("CIRP").

32. CIRP is conducted in two-parts. The first part is the Use of Force Review Board. This Use of Force Review Board only involves the officer(s) that actually used force.

33. The Use of Force Review Board is comprised of commissioned officers and civilians. Tactical and policy issues are not discussed during the use of force review.

34. After the Use of Force Review Board, the second part of the Use of Force Review Board is the Tactical Review Board. The Tactical Review Board involves commissioned personnel and two citizens who evaluate the tactics and implementation of policy and training during the officer involved shooting. The Tactical Review Board evaluates the performance of any officer involved with the officer involved shooting.

35. The involved officers are mandated to attend CIRP. In addition, each involved officer is allowed to view the CIRT Report. **The officers do not receive a copy.**

36. CIRP does not create any reports.

37. Other than being disclosed under a Stipulated Protective Order in this litigation, the CIRT Report created in the Isaiah Williams matter has been kept confidential since its creation and finalization.

38. I have personally reviewed the report. The report analyzes the event and evaluates current training and policies. The report contains conclusions regarding the involved officers' compliance with LVMPD policies, and also recommends changes to both policy and training.

39. Once CIRP is complete, a CONFIDENTIAL interoffice memorandum is completed by both the Tactical Review Board and Use for Force Board chairperson. The memorandum is provided to me. The memorandum contains a brief factual summary and a summary of the board findings. I review the memorandum and then accept or reject to the board's recommendations.

40. The CIRT Report and Interoffice Memorandums are maintained as confidential. Once all matters related to the incident have concluded, LVMPD publishes a summary including adopted policies, training changes and other adopted recommendations. However, the process in reaching those decisions have been kept confidential to protect the integrity of the process and assure that future critical incident investigators will feel confident that their opinions and decisional making process will remain confidential.

MAC: 14687-428 (#5782192.1)

41.  Plaintiffs' assertions that LVMPD generally publicly discloses its CIRT reports are inaccurate. It is LVMPD's policy, custom and practice to maintain the confidentiality of its CIRT reports, which contain LVMPD's internal deliberations relating to policy, training, and officer discipline.

42.  I declare under penalty of perjury, under the laws of the State of Nevada (NRS 53.045), that the foregoing is true and correct.

Dated this ___ day of February, 2025.

_____
Kevin McMahill