UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LATIA ALEXANDER, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, *et al.*,<br><br>    Defendants. | Case No. 2:24-cv-00074-APG-NJK<br><br>**Order**<br><br>[Docket No. 38] |

Pending before the Court is Plaintiffs' motion to modify stipulated protective order. Docket No. 38. Defendants filed a response. Docket No. 41. No reply was filed. *See* Docket. This motion is properly resolved without a hearing. *See* Local Rule 78-1.

**I.   BACKGROUND**

On January 10, 2022, Isaiah Williams was fatally shot during an operation conducted by Defendant Las Vegas Metropolitan Police Department's ("LVMPD") SWAT team. Docket No. 30 at 1. Williams' mother, Plaintiff Latia Alexander, was appointed as Special Administrator of his estate, and she filed this lawsuit on January 9, 2024. Docket No. 1.

On March 12, 2024, the Court entered the parties' stipulated confidentiality agreement and protective order. Docket No. 21. Under the protective order, either party can designate documents disclosed during discovery as "Confidential." *Id*. at 4-5. The designation imposes limitations on how the disclosed documents may be used and who can access them. *Id*. at 6-8. The protective order allows any party to challenge a document's confidentiality designation. *Id*. at 6.

Upon the entry of the protective order, Defendants produced LVMPD's Critical Incident Response Team's ("CIRT") Report, which they designated as confidential. Docket No. 41 at 10.

1

The CIRT report is LVMPD's "internal document tasked with evaluating LVMPD's internal policies, procedures, and training." *Id*. at 3. Plaintiff seeks to modify the protective order to "remove the CIRT [r]eport from the current cloak of the [p]rotective order." Docket No. 38 at 3.

## II.   MEET AND CONFER

"Discovery is supposed to proceed with minimal involvement of the Court." *F.D.I.C. v. Butcher*, 116 F.R.D. 196, 203 (E.D. Tenn. 1986). Counsel must strive to be cooperative, practical, and sensible, and should seek judicial intervention "only in extraordinary situations that implicate truly significant interests." *In re Convergent Techs. Securities Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985). To that end, discovery motions may be filed only after a robust conferral process, which requires personal consultation in the form of in-person, telephonic, or video discussions. *See Cardoza v. Bloomin' Brands, Inc.*, 141 F. Supp. 3d 1137, 1145 (D. Nev. 2015); *see also* Local Rule 26-6(c).

Judges in this District have held that "personal consultation" means the movant must "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *ShuffleMaster, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996). The consultation obligation "promote[s] a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus matters in controversy before judicial resolution is sought." *Nevada Power v. Monsanto*, 151 F.R.D. 118, 120 (D. Nev. 1993). To meet this obligation, parties must "treat the informal negotiation process as a substitute for, and not simply a formalistic prerequisite to, judicial resolution of discovery disputes." *Id*. This is done when the parties "present to each other the merits of their respective positions with the same candor, specificity, and support during the informal negotiations as during the briefing of discovery motions." *Id*. To ensure that parties comply with these requirements, movants must file certifications that "accurately and specifically convey to the court who, where, how, and when the respective parties attempted to personally resolve the discovery dispute." *ShuffleMaster*, 170 F.R.D. at 170.

The parties' stipulated confidentiality agreement and protective order includes:

> A Party that elects to initiate a challenge to a Designating Party's confidentiality designation must do so in good faith and **must begin the process by conferring with counsel** for the Designating Party. The challenging Party must give the Designating Party an opportunity of not less than ten (10) calendar days to review the designated material, to reconsider the circumstances, and, if no change in the designations is offered, to explain in writing the basis for the confidentiality designation…A Party that elects to press a challenge to a confidentiality designation after considering the justification offered by the Designating Party may file and serve a motion.

Docket No. 21 at 6 (emphasis added). In violation of the Court's order and the Local Rules, Plaintiff's motion does not identify a meet-and-confer that took place. *See* Docket No. 38. Accordingly, the Court finds that Plaintiff did not properly meet and confer and, for that reason, the motion is denied. In addition to denying Plaintiff's motion for failure to meet and confer, the Court has also examined the motion on its merits.

### III.   MOTION TO MODIFY STIPULATED PROTECTIVE ORDER

Generally, the public may access "documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.").

"While courts generally make a finding of good cause before issuing a protective order, a court need not do so" when the parties stipulate to the order. *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). When the protective order was stipulated to, and no party has made a showing of good cause, "the burden of proof remains with the party seeking protection." *Id*. (quotation marks and alterations omitted).

If a party challenges the confidentiality of information produced under a protective order, the Court must conduct a two-step analysis. *Bangert v. Cty. of Placer*, 2019 WL 358518, at *2 (E.D. Cal. Jan. 29, 2019). First, the Court must determine "whether particularized harm will result from disclosure of information to the public." *Id*. (quotation marks omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not

satisfy" this step. *Id*. (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). Second, if the Court determines that such harm will result from disclosure of the discovery information, "it must then balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'" *Id*. (quoting *Phillips*, 307 F.3d at 1211). The Ninth Circuit has "directed courts doing this balancing to consider the factors identified ... in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)." *Id*. (citing *Phillips*, 307 F.3d at 1211). In *Glenmede Trust*, the Third Circuit noted several factors that a district court may consider in determining whether "good cause" exists to continue the protection of the discovery material produced pursuant to a stipulated protective order:

> (1) whether disclosure will violate any privacy interest; (2) whether the information is being sought for legitimate or improper purposes; (3) whether disclosure will cause a party embarrassment; (4) whether the information is important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

56 F.3d at 483 (citations omitted). *Glenmede Trust* also advised that:

> Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of [protective] orders and the unnecessary denial of confidentiality for information that deserves it....

*Id*. (citations omitted). The Court will apply these factors in determining whether the protective order should be modified in order to remove the CIRT's reports "Confidential" designation.

### a. Particularized Harm

Plaintiffs submit that "the public's right to access information about governmental actions, particularly those involving allegations of constitutional violations and law enforcement accountability, outweighs any interests LVMPD may assert over the content of the CIRT [r]eport." Docket No. 38 at 3. Defendants submit that the CIRT report is an "investigatory process that foster[s] candid and forthright evaluation into officer involved shootings so that better policies and training could be created" and that the "CIRT report must be kept confidential

to protect the integrity of the process and assure future critical incident investigators will feel confident their opinions and decisional making process will remain confidential." Docket No. 41 at 13, 16. Thus, Defendants submit, the LVMPD's self-evaluation and any program improvement processes would be chilled by public disclosure of any "internal and deliberative evaluations related to policy and training." *Id*. at 17.

Defendants submit a declaration from Sheriff Kevin McMahill, who states that the CIRT team is an internal review board that investigates LVMPD officer-involved shootings. Docket No. 41 at 24. CIRT's goals are to candidly and objectively evaluate officer-involved shootings in order to evaluate LVMPD's policies, training, and the actual incident, to create and modify current LVMPD policies and trainings. *Id*. Sheriff McMahill states that the "CIRT was created with the understanding that all critical information generated by CIRT would be privileged" and that "[o]fficer participation is mandatory … all participants are assured of the privileged nature of CIRT in order to obtain candid and honest participation." *Id*. at 24-25. Lastly, Sheriff McMahill provides that "CIRT members … are forbidden to disseminate the report. The reason is to ensure that CIRT is candid and honest regarding their evaluation. It is also to assure that CIRT is not concerned with potential legal or internal fallout resulting from any opinions or decisions." *Id*. at 27.

Plaintiffs at no point dispute Defendants' description of the CIRT report. Instead, Plaintiffs baldly assert that Defendants "have not articulated any specific, narrowly tailored interests justifying withholding the CIRT [r]eport, from public view." Docket No. 38 at 17. Further, Plaintiffs submit that "Defendants will be particularly pressed to elucidate a meaningful good cause interest where LVMPD references the CIRT [r]eport in the OIO [r]eport,[1] and purports to summarize it for the public." *Id*. However, Plaintiffs provide no meaningfully developed argument or case law to support their proposition that there is no good cause interest when the discovery material at issue is referenced elsewhere, or even where Defendants have demonstrated that they are going to release the information to the public. Instead, Sheriff

---

[1] LVMPD publicly released an Office of Internal Investigation Oversight Review Report ("OIO report"). Docket No. 38 at 2.

McMahill states that "Plaintiffs' assertions that LVMPD generally publicly discloses its CIRT reports are inaccurate. It is LVMPD's policy, custom and practice to maintain the confidentiality of its CIRT reports." Docket No. 41 at 29.

The Court concludes that Defendants have proffered numerous reasons to prevent public disclosure of the CIRT report. The strongest of those relates to Defendants' interest in continuing to conduct accurate confidential investigations into police conduct. Having Defendants' internal confidential processes and analysis widely available to the public may have consequences that would hamper the ability of LVMPD to fully investigate officer-involved shootings. In sum, Defendants have met their burden to show the risk of particularized harm from the public disclosure of the CIRT report.[2]

### b. Balancing Test

Having determined that Defendants have satisfied the first step of the analysis provided by *In Re Roman Catholic Archbishop,* the Court now turns to the factors articulated in *Glenmede Trust.*

### i. Privacy Interests

The first factor inquires whether "disclosure will violate any privacy interests." *Glenmede Trust*, 56 F.3d at 483. Defendants submit that, while the officers who were interviewed as part of the CIRT process do have legitimate privacy interests, the identity of the officers who gave witness interviews is not the basis for the confidentiality of the report. Docket No. 41 at 19. Defendants do not develop their privacy argument any further, and Plaintiffs provide no reply. *See* Docket. The CIRT report contains various officers' perceptions and analyses of the incident underlying this case which do not implicate privacy interests, but the CIRT report reveals personal information about the officers. Docket No. 38-1 at 14-21. Further, the CIRT report contains personal identifying information about additional suspects that were involved. *See id*. at 223. Accordingly, the first factor weighs against public disclosure.

---

[2] Defendants submit that the report is protected by the deliberative-process privilege and the official information privilege. Docket No. 41 at 12. As the Court finds particularized harm, the Court need not address Defendants' privilege arguments.

### ii. Legitimate Purpose for Disclosure, Importance to Public Health and Safety, Promotion of Fairness and Efficiency

The second factor looks at whether the information is sought for a legitimate purpose. *Glenmede Trust*, 56 F.3d at 483. The fourth factor looks at whether "confidentiality is being sought over information important to public health and safety." *Id*. The fifth factor inquires "whether the sharing of information among litigants will promote fairness and efficiency." *Id*. This consideration is related to the public's interest in open proceedings. *Id.* at 484-85. Specifically, "[f]ederal courts should not provide a shield to potential claims by entering broad protective orders that prevent public disclosure of relevant information." *Id.* at 485. As Plaintiff does not address these factors individually and they have overlapping themes and arguments, the Court will consider them together.

Plaintiffs submit that the public has an interest in transparency, that the CIRT report is "essential to understanding the actions of law enforcement officers and assessing the adequacy of LVMPD's internal accountability mechanisms," and that it is "critical to the public's evaluation of whether systemic reforms are necessary to prevent future constitutional violations." Docket No. 38 at 16, 18. Defendants submit that the FIT report[3] and the OIO report "sufficiently inform the public of the relevant events pertaining to the subject incident, including LVMPD's assessment of whether the Defendant officers adhered to or violated LVMD's policies." Docket No. 41 at 19. Defendants further submit that, while the public has an interest in the policies of the police department and the conduct of members of the police department, it is of the "utmost import[ance]" to public health and safety for LVMPD to learn from critical incidents, evaluate current training and policies, and make changes when necessary. *Id*. at 20. Defendants submit that, if the individuals involved with CIRT knew their internal deliberations would be exposed to the public, "it would create a disincentive for them to be frank and critical in their evaluation of the application, misapplication, lapse, or neglect of training, policies, and procedures as [it] relates to critical incidents." *Id.*[4]

---

[3] LVMPD publicly disclosed the Fatal Investigation Team report ("FIT report"). Docket No. 38 at 2.

7

While Plaintiffs submit that "transparency should prevail where public accountability is at stake" and that releasing the report is crucial in "assessing the adequacy of LVMPD's internal accountability mechanisms," Docket No. 38 at 17, 18, they do not describe how the CIRT report would help promote their goal of transparency or fairness and efficiency.  For example, Plaintiffs acknowledge that the CIRT report was sent to LVMPD's Tactical Review Board and considered in several policy and procedure changes in relation to the instant incident.  Docket No. 38 at 10. Thus, the public can assess the adequacy of LVMPD's accountability mechanisms through examining the changes that came out of its internal accountability mechanism. Plaintiffs provides no persuasive argument, especially in light of the competing public interest of LVMPD's ability to critically self-evaluate and improve its polices and trainings.  Thus, these factors weigh against disclosure.

### iii. Embarrassment to a Party

The third *Glenmede Trust* factor considers whether disclosure of the information will cause a party embarrassment.  *Glenmede Trust*, 56 F.3d at 483.  Defendants submit that the "people who contribute to policy formulation will be less afraid to offer honest (albeit painful) analyses of current and contemplated policies, and will be less shy about suggesting bold, creative and (sometimes hairbrained) policy alternatives, if they know that their work is not likely to be disclosed to the public." Docket No. 41 at 19.  However, Defendants submit that any potential embarrassment "relating to LVMPD's internal deliberations regarding the potential shortcomings of its polices" is not the basis for the confidentiality of the CIRT report.  *Id.* Plaintiffs provide no reply.  *See* Docket.

---

[4] Many courts in the Circuit have found that the degree to which government self-evaluation and consequent program improvement will be chilled is not enough to weigh against disclosure. *See e.g., Shiflett by & through Davenport v. City of San Leandro*, 2023 WL 4551077, at *3 (N.D. Cal. July 13, 2023); *Williams v. Cnty. of Alameda*, 2013 WL 4608473, at *2 (N.D. Cal. Aug. 28, 2013); *Watson v. Albin*, 2008 WL 1925257, at *2 (N.D. Cal. Apr. 30, 2008) ("[The defendant's] arguments that disclosure would discourage exhaustive internal investigations are unpersuasive. Courts in this district have previously rejected such claims, and there is no reason to depart from that reasoning here.")  However, the case law deals with initial disclosure pursuant to a protective order.  Here, Defendants have already disclosed the CIRT report to Plaintiff.  Plaintiff does not cite to, and the Court cannot find, any case law that has found a police department's internal and self-evaluative document aimed towards improving its policies should not remain confidential pursuant to a protective order.

8

There is, therefore, no apparent information contained in the CIRT report that would embarrass any of the parties. Accordingly, this factor weighs in favor of disclosure.

### iii. Benefit to Public Entity or Official

The sixth factor considered under the *Glenmede Trust* balancing test is "whether a party benefitting from the order of confidentiality is a public entity or official." 56 F.3d at 483. Defendants are LVMPD, a public entity, and officers, who are individuals sued in their official capacities as working for a public entity. Thus, this factor weighs against public disclosure.

### iv. Importance of Issue to the Public

The final factor looks at "whether the case involves issues important to the public." *Glenmede Trust*, 56 F.3d at 483. The CIRT report certainly contains issues that are important to the public. Defendants submit that all of the factual information contained within the report is publicly available through separate reports, as is the information relating to policy changes as a result of the subject incident. Docket No. 41 at 21. Rather than directly addressing the issue, Plaintiffs baldly assert that "the public is entitled to know," that "LVMPD engaged in what can only be described as a public relations campaign coverup" and that the public reports "entirely blame[] Mr. Williams for this incident and conveniently absolve[] LVMPD of all responsibility[.]" Docket No. 38 at 2-3. Plaintiffs further submit that "the OIO [r]eport leaves off key details regarding constitutional violations and instead focuses on more administrative items." *Id.* at 2. However, Plaintiffs provide no argument or case law as to what else the public is "entitled" to know. Thus, this factor weighs against disclosure.

In sum, in balancing the private and public interests, the Court finds that the CIRT report is properly designated confidential and will remain confidential.

## IV. CONCLUSION

Accordingly, Plaintiffs' motion to modify the protective order is **DENIED**. Docket No. 38.

IT IS SO ORDERED.

Dated: March 28, 2025

                                              Nancy J. Koppe
                                              United States Magistrate Judge