# Exhibit L - LVMPD SWAT Manual (2021) (Selected pages)

LAS VEGAS METROPOLITAN POLICE DEPARTMENT

*Special Weapons and Tactics*



SWAT Section Manual
Revised: December 2021

M. O'Daniel, Lieutenant

LVMPD 001382



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

## CONTENTS

| | | |
|---|---|---|
| 1.0 | Special weapons and tactics | 8 |
| 1.01 | LVMPD SWAT History | 9 |
| 1.02 | SWAT Mission | 13 |
| 1.02.01 | Mission Philosophy | 13 |
| 1.03 | SWAT Vision | 13 |
| 1.04 | SWAT Goals | 13 |
| 1.05 | SWAT Section Strategic Plan | 14 |
| 1.06 | Organizational Chart | 15 |
| 1.07 | SWAT Section Organizational Chart | 16 |
| 2.00 | SWAT Personnel and Position Responsibilities | 17 |
| 2.01 | Personnel | 17 |
| 2.02 | SWAT Personnel Selection | 20 |
| 2.02.01 | Physical Fitness Standards | 21 |
| 2.02.02 | Conditions of Assignment | 22 |
| 2.02.03 | Dismissal | 23 |
| 2.02.04 | Reinstatement | 23 |
| 2.02.05 | Personal Appearance | 23 |
| 2.02.06 | Uniform | 23 |
| 2.02.07 | Outside Employment | 25 |
| 2.02.08 | Recruitment | 25 |
| 3.00 | Operations and Procedures | 25 |
| 3.01 | Team Activation and Command Structure during a SWAT Deployment | 25 |
| 3.02 | SWAT Call-out Emergency Communicator | 26 |
| 3.03 | SWAT Response Protocols: | 26 |
| 3.04 | Call-out Protocols | 27 |
| 3.04.01 | Primary on call Team Leader | 29 |
| 3.04.02 | Secondary On-Call Team Leader | 30 |
| 3.04.03 | Assistant Team Leader | 30 |
| 3.04.04 | Operators | 30 |
| 3.04.05 | Patrol Liaison Officer | 31 |
| 3.04.06 | First SWAT Officer on Scene | 31 |
| 3.04.07 | Recon Team | 32 |

LVMPD 001383



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

3.04.08      Team Members.................................................................................... 32
3.04.09      Sierra Teams ..................................................................................... 32
3.04.10      SWAT Commander Response ............................................................ 33
3.04.11      Post Incident Debrief ......................................................................... 34
3.04.12      After Action Reports........................................................................... 34
3.05         Off Duty Call-outs .............................................................................. 34
3.06         Tactical Philosophy Statements ......................................................... 35
3.06.01      Tactical Advantage ............................................................................ 35
3.06.02      Risk Management ............................................................................... 35
3.06.03      De-escalation Efforts ......................................................................... 35
3.06.04      Hostage Rescue Tactic....................................................................... 36
3.06.05      Room Clearing.................................................................................... 36
3.06.06      Sierra Operations ............................................................................... 36
3.06.07      Breacher Operations .......................................................................... 36
3.06.08      Tactical K9 PSD (Patrol Service Dog) Operations .............................. 37
3.07         Barricaded Subject Incident ............................................................... 37
3.07.01      SWAT Internal Communications Plan.................................................. 37
3.08         Suicidal Subject Incident .................................................................... 38
3.09         Hostage Taker Incident ...................................................................... 38
3.10         Hostage Siege.................................................................................... 39
3.11         Active Assailant .................................................................................. 39
3.12         SWAT Emergency Response .............................................................. 39
3.13         MACTAC ............................................................................................ 39
3.13.01      Counter Assault Team (CAT) Response to a Complex Coordinated Attack 39
3.13.02      Civil Unrest/Riot Response.................................................................. 42
3.14         High Risk Search Warrant Service ...................................................... 42
3.15         Response at High Risk Events / Venues.............................................. 43
3.16         Dignitary Protection............................................................................ 43
3.17         Crime Suppression............................................................................. 43
3.18         Firearm Destruction Detail ................................................................. 43
3.19         Narcotic Destruction Detail ................................................................ 43
3.20         Participation in Community Events ...................................................... 43
3.21         Mutual Aid.......................................................................................... 44
4.00    TRAINING ................................................................................................. 44

LVMPD 001384



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

| | | |
|---|---|---|
| 4.01 | Training Management | 44 |
| 4.01.01 | Firearms | 46 |
| 4.01.02 | Firearms Training/Qualification | 46 |
| 4.01.03 | Defensive Tactics (DT) | 47 |
| 4.01.04 | Reality-Based, Force on Force Training | 47 |
| 4.01.05 | Specialized Cadres and Competencies | 48 |
| 4.01.06 | Sierra Team | 48 |
| 4.01.07 | Breaching | 48 |
| 4.01.08 | Training | 49 |
| 4.01.09 | Failure to Maintain Competencies | 49 |
| 4.02 | SWAT Basic Training Curriculum | 50 |
| 4.03 | New Sergeant Training Program | 50 |
| 4.04 | New Officer Training Program | 53 |
| 4.05 | Interoperability with Department Entities | 57 |
| 4.06 | In-Service Training | 57 |
| 4.07 | Testing and Evaluation (T&E) Process | 57 |
| 4.07.01 | Upon Completion of T&E | 59 |
| 4.08 | Specialty Vehicle Operations Training | 59 |
| 4.09 | Seminar / Conference Training Requests | 60 |
| 4.10 | Ride Along | 60 |
| 5.00 | Equipment | 61 |
| 5.01 | Ballistic vests | 61 |
| 5.02 | Less Lethal Option | 61 |
| 5.04 | Ballistic Helmet | 61 |
| 5.05 | Vehicles and Authorization for use | 61 |
| 5.06 | Specialized Weapons – Individual Issue | 62 |
| 5.07 | Issuance of Department Ammunition and Equipment | 63 |
| 5.08 | Body Worn Camera Procedure | 63 |
| 5.09 | Enhanced SWAT Capabilities | 67 |
| 5.09.01 | Breaching Shotgun | 67 |
| 5.09.02 | Explosive Breaching | 67 |
| 5.09.03 | Heavy Weaponry | 68 |
| 5.09.04 | Semi-Automatic and Automatic Modes of Fire | 68 |
| 5.09.05 | Use of Chemical Agents | 68 |

LVMPD 001385



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

5.09.06      Use of Less Lethal Specialty Munitions ........................................ 68
5.09.07      Use of Noise/Flash Diversionary Devices (NFDD)....................... 69
5.09.08      Rope / Climbing ........................................................................ 69
5.09.09      Sierra Team Precision Rifle ...................................................... 69
5.09.10      Munitions and Weapons Security .............................................. 69
5.10         Specialty Vehicle Operations .................................................... 70
5.10.01      SWAT Vehicles-Specialized (Bear and Bear Cats)................... 70
5.10.02      Specialty Vehicle-Authorization for Use .................................... 71
5.10.03      Specialty Vehicle Maintenance/Service .................................... 71
5.10.04      Tactical Operation Center (TOC) ............................................... 71
5.10.05      Tactical Rescue Vehicle (TRV) ................................................. 71
5.10.06      Raid Van and Suburbans ......................................................... 71
5.11         Inspections ............................................................................... 72
6.00         Administrative Reports .............................................................. 72
6.01         SWAT Section Daily Log ........................................................... 72
6.02         Reporting Overtime / Callout ..................................................... 73
6.03         Facilities Maintenance and Security .......................................... 73
6.04         Semi-annual Report .................................................................. 73
6.05         Range Gate Codes and SWAT House Keys ............................. 74
6.06         Monthly and Quarterly Audit Emails .......................................... 74
6.07         After Action Reports and SWAT Officer's Reports..................... 74
7.00         Crisis Negotiation Team ............................................................ 74
7.01         Crisis Negotiations Team Mission ............................................. 75
7.02         Crisis Negotiation Team Personnel ........................................... 75
7.02.01      SWAT Bureau Commander ....................................................... 75
7.02.02      Crisis Negotiator Team Leader (CNTL) ..................................... 75
7.02.03      Assistant Team Leader .............................................................. 76
7.02.04      SWAT Tactical Negotiations Logistics Coordinator Officer (TNLO) ........... 76
7.02.05      Selection Criteria ...................................................................... 76
7.02.06      Crisis Negotiation Team Member ............................................... 76
7.03         Selection Criteria ...................................................................... 77
7.04         Crisis Negotiation Team Positions and Responsibilities............. 78
7.04.01      Primary Negotiator..................................................................... 78
7.04.02      Secondary Negotiator................................................................. 78

LVMPD 001386



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

| | | |
|---|---|---|
| 7.04.03 | Intelligence Officer(s) | 78 |
| 7.04.04 | Intelligence Coordinator | 78 |
| 7.04.05 | Scribe | 78 |
| 7.04.06 | Search Warrant Officers | 79 |
| 7.04.07 | Patrol Liaison Officer | 79 |
| 7.04.08 | Crisis Negotiation Team Volunteers | 79 |
| 7.04.09 | Volunteer Psychologist/ Psychiatrist | 79 |
| 7.04.10 | Selection Criteria | 79 |
| 7.05 | Uniform | 80 |
| 7.06 | Training | 80 |
| 7.06.01 | Availability for Training Days | 82 |
| 7.07 | Call Out Procedures | 82 |
| 7.07.01 | On Call Status | 82 |
| 7.07.02 | Use of Alcohol | 82 |
| 7.07.03 | Unavailable for Duty | 83 |
| 7.07.04 | Removal from the Team | 83 |
| 7.07.05 | Callout to a Hi-Jacked Plane in Clark County | 84 |
| 7.07.06 | Barricade Operational Guideline | 84 |
| 7.07.07 | HRT Operational Guideline | 85 |
| 8.00 | Sierra Team | 86 |
| 8.01 | Mission | 86 |
| 8.02 | Definitions | 87 |
| 8.03 | Sniper/Observer Role and Responsibilities | 90 |
| 8.04 | Utilization of Deadly Force | 91 |
| 8.05 | Sniper/Observer Directives Governing the Use of Deadly Force | 92 |
| 8.06 | Sniper/Observer Selection | 93 |
| 8.06.01 | Selection Process | 93 |
| 8.07 | Sniper/Observer Status | 95 |
| 8.08 | Data Book | 97 |
| 8.08.01 | Each Data Book will contain the following cards: | 97 |
| 8.08.02 | Zero Confirmation Target | 98 |
| 8.08.03 | Cold Bore Confirmation Target | 98 |
| 8.08.04 | Round Count Log | 98 |
| 8.08.05 | Maintenance Log Cards | 98 |

LVMPD 001387



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

| | | |
|---|---|---|
| 8.09 | Sniper Weapons System (s) | 98 |
| 8.10 | Sniper Weapon System Qualifications | 99 |
| 8.11 | Deployment of Sniper/Observer Team and Reporting Procedures | 100 |
| 8.12 | Sniper/Observer Reporting Procedures | 101 |
| 8.13 | Operational Equipment | 101 |
| 8.14 | Less Lethal Option | 103 |
| 8.15 | American Sniper Association | 103 |
| 8.16 | Other Definitions | 104 |
| 9.00 | Search Warrant Service | 107 |
| 9.01 | Procedure | 108 |
| 9.01.01 | Authorization phase | 111 |
| 9.01.02 | Planning phase | 113 |
| 9.01.03 | Reconnaissance phase | 114 |
| 9.02 | Warrant Service Briefing | 116 |
| 9.03 | Service of Warrant | 117 |
| 9.04 | Tactical Debrief | 118 |
| 10.00 | Breaching | 119 |
| 10.01 | Definitions | 119 |
| 10.02 | Basic Breaching Skill Methods | 125 |
| 10.03 | Advanced Breaching Skill Methods | 125 |
| 10.04 | Breacher | 125 |
| 10.05 | Master Breacher | 125 |
| 10.07 | Operational Master Breacher | 125 |
| 10.08 | Breaching Cadre | 126 |
| 11.00 | Less Lethal | 126 |
| 11.01 | Noise/Flash Distraction Devices (NFDD) | 126 |
| 11.02 | Low Roll Distraction Device | 128 |
| 11.03 | The 4-Gram Distraction Device | 129 |
| 11.04 | The Stinger Grenade | 129 |
| 11.05 | 40mm Aerial Warning/Signaling Munition | 130 |
| 11.06 | Chemical Munitions | 130 |
| 11.07 | Outdoor Chemical Munitions | 133 |
| 11.07.01 | The Triple-Chaser Grenade (Saf-Smoke & CS) | 133 |
| 11.07.02 | Spede-Heat Grenade | 134 |

LVMPD 001388



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

| | | |
|---|---|---|
| 11.07.03 | Riot Control Grenade | 134 |
| 11.07.04 | Han-Ball Rubber Ball Grenade (Saf-Smoke & CS) | 135 |
| 11.07.05 | Colored Smoke Grenades | 135 |
| 11.07.06 | Military Style Maximum Smoke Grenade | 136 |
| 11.07.07 | Saf-Smoke Grenade | 137 |
| 11.07.08 | Pocket Tactical Grenade (Saf-Smoke & CS) | 137 |
| 11.08.00 | Indoor Chemical Munitions | 138 |
| 11.08.01 | OC Vapor Aerosol Grenade | 138 |
| 11.08.02 | The Aerosol Grenade | 138 |
| 11.08.03 | 40mm Ferret Round | 139 |
| 11.08.04 | Tri-Chamber Flameless Grenade (OC & CS) | 140 |
| 11.08.05 | Pepperball Launcher | 141 |
| 11.08.06 | Aerosol Munitions | 141 |
| 11.09.00 | Less Lethal Control Devices | 141 |
| 11.09.01 | Launcher | 142 |
| 11.09.02 | 40mm eXact iMpact Sponge Round | 142 |
| 11.09.03 | 40mm Direct Impact Round | 143 |
| 11.09.04 | 40mm Direct Impact Extended Range Round | 144 |
| 11.09.05 | 40mm Wood Baton Round | 144 |
| 11.09.06 | 40mm Foam Baton | 145 |
| 11.09.07 | 40mm Rubber Baton | 145 |
| 12.0 | Vertical Access and High Angle Operations | 146 |
| APPENDIX | | 151 |

## 1.00   Special weapons and tactics

LVMPD Special Weapons and Tactics exists to preserve peace and conduct rescues in support of the Sheriff of Clark County's obligations as set forth in NRS 248.090 & 092, This is done, in

LVMPD 001389



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

part, through LVMPD SWAT's response to high-risk incidents which exceed the tactical capabilities of first responding law enforcement assets.

The objective of this manual is to codify the day-to-day operations of the Las Vegas Metropolitan Police Department's Special Weapons and Tactics (SWAT) team. The procedures codified in this document are consistent with the department's objectives, policies, procedures, and conform with the best practices and policies recognized by the National Standards set forth from the International Association of Chiefs of Police (IACP) and the National Tactical Officer Association (NTOA).

Each mission may call upon different means for a successful resolution. The guidelines are intended so officers and supervisors assigned to the SWAT section employ their knowledge, skills, and abilities (KSA's) to formulate methods of operation and plans of action for the missions assigned to the section. As the section's technical and tactical skills increase and broaden, guidelines will be amended.

The purpose of this manual is to provide officers assigned to the SWAT section with written guidelines for which they are to operate. As such, this document does not include a standard method for handling all critical incidents to which the section may be assigned.

Officers will maintain their own copies of the manual with updates and changes and are required to know and adhere to the guidelines therein while assigned to the SWAT section.

If an officer becomes aware of a conflict between LVMPD policy, Civil Service rule, or current contract, it is their responsibility to bring it to the attention of SWAT section supervisors. Tactical principles are constantly changing. What is current tactical thinking today may become obsolete tomorrow. As such, this document does not include a standard method for handling all tactical missions which the section may be assigned.

Once a year or as needed the Tactical Commander (TC) will review and make recommendations for any needed changes to this manual. All changes to this manual must be approved by the SWAT Commander.

## 1.01   LVMPD SWAT History

*This section of the policy manual is included only as a historical record and as a way to familiarize new members as to the progression of the Special Weapons and Tactics team within the Metro organization.*

The Las Vegas Metropolitan Police Department Special Weapons and Tactics Section was created in 1974 with the title of 'Tactical Unit' and was more commonly referred to as the 'Back-up Squad'. This 'Squad' was divided into two teams which provided seven-day a week coverage on swing shift.  Each team consisted of a Sergeant and five officers.  The common day was Wednesday and was reserved for training, although training was sparse during the first two years.

LVMPD 001390



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

Initially the officers worked exclusively in uniform, driving marked police vehicles. When off-duty, they put their gear in the trunks of their personal cars. They were on call by means of a home phone or monitoring personal scanners while away from their residences.

The original concept was to provide the Patrol Bureau with a force of officers who could handle a variety of situations without depleting the squads assigned to the areas. Some of the duties were as follows:

- Saturate high crime areas.
- Assist any patrol squad upon request with any unique problem or situation.
- Cut down the robbery rate and 'high fear' street crimes by predicting possible 'hot spots', and by devising methods to cause in progress apprehension of suspects.

The officers deployed numerous methods to achieve these goals, some of which included uniform in black and white, uniform in plain cars, plainclothes, on foot, in alleys, atop buildings, etc. Through trial and error methods and many successes which followed, it became clear that the plainclothes mode was a more successful approach. It was also becoming clear; Patrol officers were contacting the Unit more and more to assist them with problems they could not handle by virtue of their high visibility. These requests included surveillance of stolen vehicles, following suspicious persons on foot or in vehicles, making 'walk-thru' or bar checks for suspicious persons, etc. Tactical missions and search warrant services were a rare occurrence and required the request of a high-ranking officer for the use of the unit. During this period the unit did successfully complete a hostage rescue of Nita Jetland at the Home Savings and Loan located at Maryland Parkway and Karen.

From 1974-1976 the only special equipment issued to the officers were semi-automatic AR-15's. Officers were provided one call-out uniform and expected to purchase needed gear. The majority of the equipment was surplus military items. The AR-15's were maintained in the department armory and could only be released by the order of the Deputy Chief of Patrol. The term SWAT was not used. The section was using a .243 caliber bolt action 700 BDL sniper rifle and changed to a .308 caliber rifle after the home savings and loan incident. On July 4, 1976, the phrases 'Back-Up Squad' and 'Tactical Unit' were eliminated and the true title 'S.W.A.T.' was officially sanctioned.

In 1976 the unit also received fully automatic M-16's which were kept in the armory and were only issued out during training exercises. In addition, the Department had possession of several Smith & Wesson M-76 and MAC 10 sub-machine guns which were also utilized. The M-76's were purchased by the old Clark County Sheriff's Department and the MAC 10's were purchased in 1982.

From 1979-1980 the SWAT Section obtained enough vehicles to outfit one entire on duty team. The on-call team kept the vehicles during the work week, and on the common day of Wednesday the officers would drive to the on-coming team's homes, pick up the officer, and proceed to training. This was required to be conducted prior to the duty day. At the end of the shift on Wednesday the new on-call team would drive the team members, who were on their days off.

LVMPD 001391



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

The officer would store his gear in his home until coming to work the next week. There was a large portion of off duty time spent doing the weekly vehicle swaps.

During this period the teams consisted of seven officers each. The majority of call-outs were handled by these officers, and it was a rarity to receive permission to call in other officers to assist. In 1980 the SWAT section finally obtained pagers for everyone. Officers handed off weapons to the on-coming team.

In 1986 SWAT obtained the Beretta PM12S submachine guns and officers were assigned take-home weapons. Officers did not have assigned vehicles until 1990 when enough vehicles were obtained to outfit the entire section.

By the late 1980's the City and County were starting to see the arrival of the gang trend, and gang violence driven by the arrival of rock cocaine. At the time, there was no department policy requiring units serving search warrants to utilize the SWAT unit. A department policy mandating the use of the unit for certain high-risk warrants was drafted and implemented. During this period officers were tasked with a street narcotics role. Officers conducted mini narcotics unit operations when not assigned to tactical missions. The use of informants, undercover, and CI buys were an expected portion of the SWAT officer's duties.

Search warrant service began to increase. Officers were not provided time for physical training. The team training schedule consisted of three days a month or thirty hours total. As the increase in tactical missions occurred, the need for additional emphasis on the tactical team functions leadership, and items such as Aim points, ballistic helmets, ballistic shields, and tactical gas masks were purchased. Items such as LASH sets, door rams, and light mounted weapons, enabled the unit to better accomplish the mission.

In 1988 the use of Shock Lock and the deployment of distracts was allowed. The building of the tactical training facility was accomplished with no monetary support from the department. The facility was a two-story, multi-room facility that replaced a one room entry training house.

By the 1990's the unit had evolved into a full-time tactical unit with an emphasis on tactical duties. Vehicles were purchased to accomplish the unit's mission. The suburban's, vans, and APC's are examples. By 1990 the section had all new vehicles. The equipment programs had revamped and upgraded the sniper package, pyrotechnic package, and the gas package. Training has been continually upgraded through the years. During the late 1980's and early 1990's four additional officers were added to each team. In 1993 the use of the Tactical Medic program was started. The use of K9 for assistance was also implemented and is now considered routine.

The section is responsible for the administration, training, supervision, and deployment of the Crisis Negotiators Team. The Crisis Negotiators Team is comprised of fourteen officers and civilians who work in various areas of the department. Prior to assignment to the section, the unit functioned under a different chain of command and did not report to the tactical unit.

LVMPD 001392



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

As of 1994, the SWAT Unit's major task has been to serve high risk warrants for the entire department, as well as assisting other law enforcement agencies with their high risk warrants. SWAT executed approximately 200 high risk warrants per year for the five years from 1996-2001. The number of tactical call-outs continued to increase. Another task is training provided to the department. Twenty five percent of SWAT's time is dedicated to internal skills, warrant service tactics, and riot control tactics for over three thousand officers who have attended our in-service and basic training classes.

In 1999 an incident occurred in Colorado known as 'Columbine'. A high school was attacked by two students who were armed with numerous weapons as well as explosives. The incident was neither a barricade nor a hostage crisis. It was a killing spree. Twelve students were killed as well as a teacher. This type of incident became known as an 'Active Shooter'. The section, led by the Training Section, developed a tactical response to this type of event and eventually instructed all department members to respond appropriately and effectively. This training is now standard for all recruits in the academy. Because of a documentary of the SWAT team filmed by the Discovery Channel, numerous agencies from around the country have inquired as to this training and have benefitted from our 'Active Shooter' training videos and lesson plans.

In 2001 an aggressive push to incorporate new technology and update the weapons and tactical equipment utilized by the teams was initiated. This push was carried forward by the SWAT Commander assigned to the unit at the time, as well as the Command Staff of the agency. In the five years from 2002-2007 the unit replaced all of its weaponry to include the Colt Commando M-16/M-4/M1A2, H & K MP5, Glock 17C, AR-10, Accuracy International .308, Barrett 50 caliber, FN303, 37- and 40-millimeter multi-launchers, and the X-26 Taser. The unit also standardized the handgun carried by operators. Prior to 2007 operators carried personally owned handguns of the caliber and brand they preferred (within department policy). The explosive breaching capabilities of the unit were greatly expanded from 2001 and on. The unit has, by informal survey, the most live mission explosive breaches of any police unit in the country. The federal government works closely with the unit to produce training for several agencies around the world.

From 2001-2005 the SWAT Commander made a concentrated effort to add to the technological capabilities of the unit. The unit was able to design and create funding for a mobile Tactical Operations Center which went into service in early 2006. A tactical robot, the Andros V, was delivered at the same time. In the fall of 2005 and again in early 2006, the unit took delivery of the first purpose built tactical Armored Personnel Carriers the Lenco Bear Cats. In early 2007, an additional APC was added, the larger Lenco Bear.

Many changes in the 'tactical package' also took place during this time frame. The unit brought on volunteer psychologists and psychiatrists to respond on call outs. A search warrant writing team was also put together and rolls with the call out teams. The search warrant team is able to save hundreds of man hours because they are able to obtain a warrant for a target location, usually within twenty minutes of their arrival on scene. The use of the TASS (Technical and Surveillance Section) section on call outs was also increased. Now the technology to hear and listen in on the target location rolls with the team on all call outs.

LVMPD 001393



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

Agencies around the country could benefit from the talents, experience, and expertise of the officers in this unit, and it was decided that the unit should host an Intermediate SWAT School. In 2003 the unit hosted its first Intermediate SWAT School and it has been well attended and well received each year.

In the fall of 2005, the unit played host to the National Tactical Officers Association Conference (NTOAC). It was the largest conference to date for the organization. There were over nineteen different training sites utilized with over five hundred of the nation's best tactical officers in attendance. This event placed the unit squarely in the eye of the national tactical community, and our reputation grew as a result.

## 1.02   SWAT Mission

The mission of the Las Vegas Metropolitan Police Department SWAT team, in conjunction with the Crisis Negotiation Team, is to secure the voluntary surrender of individuals in crisis and/or to conduct high-risk operations in support of our department's initiatives.

### 1.02.01      Mission Philosophy

The team's philosophy is to peacefully resolve critical incidents and high-risk situations with no loss of life through managing risk and incorporating intelligence into the tactical decision-making process. Even if this mission is not immediately accomplished, both teams are equipped with the ability to gather crucial intelligence and buy valuable time which will allow for better decision-making and tactical planning.

The Las Vegas Metropolitan Police Department demands that officers hold the highest regard for the dignity and liberty of all persons, and place minimal reliance upon the use of force. The department respects the value of every human life, and the application of deadly force is a measure to be employed only in the most extreme circumstances.

The sanctity of human life is paramount and SWAT officers will make every attempt to preserve life.

While life safety is a priority of SWAT, the specific circumstances will dictate the level of force necessary to adequately protect the public and the officers involved. Resolution of some incidents may require the specific application of various levels of force, up to and including deadly force.

## 1.03   SWAT Vision

The vision of the LVMPD SWAT section is to preserve life through excellence in intelligence-based tactical high-risk operations.

## 1.04   SWAT Goals

The goals of the LVMPD SWAT section are:

LVMPD 001394



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

- Ensure timely and appropriate response to the tactical needs of the community and the department.
- Enhance the effectiveness of SWAT missions through training and tactics.
- Use technology to effectively advance the section.
- Promote a positive image of SWAT through public relations.
- Provide excellent service.
- Render support to the department by providing tactical training at both the basic and in-service levels.

## 1.05    SWAT Section Strategic Plan

Lead through empowerment and accountability

- Determine methods to better delegate tactical decision making to supervisors/designees
- Give SWAT officers the flexibility and authority to research best practices and hold them responsible for the takeaways
- Ensure that commander's intent is executed by the SWAT leadership
- Value our employees and those we serve
- Research and utilize new technologies that enhance tactical operations and officer safety
- Constantly further the overall education of SWAT officers
- Develop supervisors as leaders in addition to subject matter experts
- Focus on methods to enhance response times for callouts on critical incidents
- Develop a succession plan for SWAT Leadership to strengthen continuity of operations
- Recognize the family impact of the SWAT mission and support the officer and the family needs as much as possible
- Focus on improving tactics that value the sanctity of life
- Maintain readiness to respond to the needs of the community that is beyond the capability of a traditional response
- Maximize trust, transparency and communication
- Develop methods to display/demonstrate SWAT operations to key personnel
- Communicate reasons and methodology behind the changes of standard operating procedures
- Develop and enhance community relationships

LVMPD 001395



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

## 1.06 Organizational Chart





**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

**1.07    SWAT Section Organizational Chart**



LVMPD 001397



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

If the SC or TC determine that LVMPD possesses the capacity to mitigate the CCA threat with internal tactical resources and has identified the need to request neither Henderson PD nor NLV PD SWAT to support the ongoing CCA, these teams will be requested to remain on standby to cover tactical team requests in the east and west halves of the Las Vegas Valley on approval of the Sheriff or his/her designee. In order to maintain functional SWAT resources to cover incidents away from Las Vegas Blvd., the following steps will be discharged by our partner agencies as a function of the LVMPD HSD CCA/CAT Protocol:

- Henderson PD SWAT will be requested to monitor and respond to any incidents east of the I15.

- North Las Vegas PD SWAT will be requested to monitor and respond to any incidents west of the I15.

- FBI SWAT will be called upon as necessary to support ongoing tactical operations.

**3.13.02        Civil Unrest/Riot Response**

Response, deployment and the determination to standby will be made by the Tactical/SWAT Commander. The Tactical Commander will oversee all SWAT assets to include SWAT teams from outside jurisdictions. All assets will work in conjunction to provide tactical options to the Incident Commander. All Riot based authorizations will come from the Tactical Commander with regards to chemical munitions and less lethal options.

The Tactical Commander will designate a primary SWAT sergeant to create a blanket event number for the duration of the RIOT. This event will contain all elements of the use of force investigation. The investigation will work in concert with LVMPD Department policy.

**3.14   High Risk Search Warrant Service**

SWAT will execute search warrant services when it is determined that during the service of the warrant, there may be a confrontation involving; the need for a forced entry, a suspect possessing exceptional weaponry, a suspect who has a documented violent history, involving a fortified structure, or other situations that may exist that require specialized personnel, training, and/or equipment. The process delineating SWAT duties related to High Risk Warrant requests can be found in section 9.01 of this manual.

LVMPD department policy 5/200.00 has defined what High-Risk Warrants are:

- Forced entry
- Unknown or violent criminal history associated with persons likely to be present during warrant service
- Likelihood that weapons will be encountered

LVMPD 001423



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

SWAT operators will adhere to department policy and manufactures specifications while deploying specialty impact munitions.

SWAT personnel will adhere to department protocols regarding the application, reporting, and any necessary medical treatment associated with the use of less-lethal devices. Only SWAT personnel who have successfully completed specialized training may employ non-conventional less-lethal control devices that are specific to the SWAT section.

### 5.09.07    Use of Noise/Flash Diversionary Devices (NFDD)

Generally, NFDDs may be considered whenever the use of a less-lethal diversion would facilitate entry, enable arrest, or potentially reduce the risk of injury. Only SWAT personnel who have successfully completed specialized training may employ non-conventional less-lethal control devices that are specific to the SWAT section. Only SWAT personnel who have successfully completed a department-approved training course in the proper use and deployment of Noise/Flash/Diversionary Devices (NFDD) shall be authorized to deploy them during actual operations.

### 5.09.08    Rope / Climbing

A SWAT Team Leader will be assigned to the Rope/Climbing cadre and tasked with the oversight to ensure that all members of the cadre are competent in the skills required to operate in an elevated environment. Rope/Climbing cadre personnel will be responsible for establishing secure anchor points for SWAT personnel, manage ropes, and act as safety officers when SWAT personnel are deployed in elevated positions. Additionally, the Rope/Climbing cadre members will assist safety crew chiefs during aircraft operations involving SWAT deployment via rope suspension.

Search and Rescue will be the primary Rope/Climbing cadre during joint operations with SWAT.

See section 12.0 for Vertical Access/High Angle Operation protocols.

### 5.09.09    Sierra Team Precision Rifle

SWAT personnel specially trained as snipers/observers may employ a precision rifle during SWAT operations. The precision rifle shall be stored in a soft-sided or hard container that adequately protects the optics and/or any other sighting mechanism to avoid disruption of sight alignment to ensure that a "cold" precision shot can be made on demand.

### 5.09.10    Munitions and Weapons Security

Weapons and munitions will not be left unattended. Operators who are found to have left any of these items subject themselves to disciplinary action. No weapons or munitions will be stored in lockers or left in the hangar. Inert munitions can be stored above connex.

LVMPD 001450



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

**Second Focal Plane Scope:** Meaning the second or rear focus lens. The lens image does not change regardless of the magnification of the image being looked at.

**Slant Range:** Is the true range corrected of the angle of the gun to the target when you have an angular degree from the shooter to the target.

**Spin Drift:** Is a byproduct of gyroscopic precession caused by the twist rate of the barrel. As the bullet's velocity slows down, air resistance will begin to affect the bullet at a greater rate and cause the bullet to drift in the direction of the rifling twist of the barrel the bullet was fired from.

**Subsonic Flight Range:** Is the range where the bullet is traveling at velocities less than 1125 feet per second.

**Supersonic Flight Range:** The maximum range at which a projectile is traveling at a velocity greater than 1125 feet per second.

**Target Indicators:** These are things that an individual does or does not do which result in detection by others. They are part overall camouflage and concealment tactics. They include:

- Speed (movement)
- Shine
- Shape
- Silhouettes
- Shadow
- Sound
- Smell
- Electronics

**Temporary Wound Cavity:** The dramatic expansion of soft tissues that results from a projectile's passage through the target.

**Terminal Ballistics:** The study of the behavior and effects of a projectile when it hits its intended target.

**True Range:** The true range to a target is measured in either yards or meters, from the gun to target, regardless of the degree angle from the shooter to the target.

**Vapor Trail:** See bullet trace.

**9.00   Search Warrant Service**

The purpose of this section of the manual is to provide a written guide for search warrant services conducted by SWAT. This is a guide and is not all inclusive. There will be times when some of



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

these procedures will have to be modified depending on the situation. When planning any search warrant service, the sanctity of life must be considered in all phases of planning. Safety must be considered for the public, officers, and suspects.

When it is determined that forced entry during the service of the warrant, or there may be a confrontation involving a suspect possessing exceptional weaponry or who has a documented violent history, or involving a fortified structure, or other situation exist that may require specialized personnel, training, and/or equipment, SWAT will be utilized.

The entity responsible for serving the warrant can contact the SWAT Tactical Commander for advice. That Tactical Commander shall provide the appropriate advice and determine whether SWAT can be deployed in the service of the warrant and advise the entity responsible to submit their request with the appropriate paperwork to SWAT Warrants email.

LVMPD department policy 5/200.00 has defined a High-Risk Warrants as:

- Forced entry.
- Unknown or violent criminal history associated with persons likely to be present during warrant service.
- Likelihood that weapons will be encountered.

The SWAT Commander will participate in a warrant service when the Tactical Commander believes, due to credible intelligence, that the service of the search warrant could present significant officer safety issues. The Tactical Commander will then establish a staging area and provide command and control should the situation change as originally planned.

**9.01    Procedure**

When the service of a warrant is anticipated or planned, department personnel are required to notify SWAT via email at SWATwarrants@lvmpd.com. Included in that email shall contain:

- Application and Affidavit for Search Warrant
- Search Warrant
- SWAT Service Incident Action Plan (IAP) (LVMPD 289D).
- Any special concerns or recommendations

Once the warrant is received, the SWAT Commander or designee will determine if the service meets SWAT criteria for service and/or appropriate use of SWAT resources. The Tactical Commander may also be consulted if needed.

Intelligent mission planning, operational flexibility, discipline, control, mindfulness, and restraint are key components to successful Warrant services. LVMPD SWAT officers are specially trained and equipped to deal with a variety of difficult situations, including those requiring a swift and overwhelming show of force.

LVMPD 001489



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

When the Team Leader and Assistant Team Leader begin to plan for the warrant service, it is imperative that they evaluate all aspects of the mission, including goals, intelligence and legal constraints. A careful and well articulate reconnaissance of the premises to be served must be thorough and complete to allow for better tactical planning. Tactical planning should include, but not limited to:

- Environment around the target location. The surrounding area must be included and factored in to how SWAT will safely secure the premise.
- Citizens that may be in the operational area at the time of the search warrant service must also be factored in the risk assessment. I.E. Multi-unit apartment complex where effective containment cannot be achieved.
- Consideration of all the tactical options and the selection of the safest alternative to successfully complete the mission.
- Flexibility to adjust to circumstances as they evolve.

**Surround and Callout Tactic (SACO)**

When the search warrant service location can be properly contained and the presence of innocent civilians is minimized, a Surround and Callout Tactic (SACO) should be considered. The tactical element will surround and establish containment of the target location before attempting to contact with the occupants. This tactic is to facilitate a subsequent callout of those occupants in a controlled manner to a secured and safe area.

**Control Entry Tactic (CET)**

This tactic can be dynamic in nature and is a viable and time-proven option. LVMPD SWAT should use a CET (Control Entry Tactic) to execute search warrants in those cases to lessen the risks, and to enhance officer, citizen and suspect safety.  The goal of a CET is not to surround and call the subject out to SWAT officers.
This tactic is meant to surprise and overwhelm the suspect(s), and to quickly take them into custody and thereby prevent them from taking up arms, hardening their defensive position, fleeing the premises and possibly endangering others, harming hostages or destroying evidence. A CET utilizes surprise and speed to overwhelm the occupants which can be very effective in de-escalating a possible violent situation.

A CET should be considered when the circumstances associated with the search warrant service dictate that a SACO (Surround and Callout) is not the optimal tactic. Considerations to utilize a CET is based on the anticipated threat expected to be inside the structure at the time of the execution of the search warrant. Other factors include, but are not limited to: size of the structure/ability to dominate the structure; suspect violent tendencies; weapons involved; surrounding environment (unfriendly to large prolonged police presence) etc.

A CET should not be confused with a SACO (Surround and Callout). Officers will make entry after announcements have been given that identify us as police officers and advise the

LVMPD 001490



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

occupants that we have a search warrant and a lawful right to be on the premises. In deciding when to enter the premises, the entry time will be based on the totality of the circumstances to include the following:

- Size and location of the residence
- Location of the officers in relation to the suspect
- Time of day
- Nature of the suspected offense, suspect priors, associated weapons
- Other observations triggering the senses of the officers that reasonably would lead one to believe that immediate entry was necessary. (McClure V. United States 9th cir. 1964)

A CET will not be used when the primary suspect is in custody and there is no articulable information of a threat inside the residence, i.e. a Control Entry Tactic will not be used for the sole purpose of recovering narcotics or property and there is an absent threat of an armed and dangerous subject inside.

A CET should not be confused with a "No Knock" search warrant service. Announcements will be included on CET search warrant services.

When utilizing a CET, the team leader will ensure that the associated "Knock and Announce" tactic allows for a "reasonable amount of time" based upon the circumstances of the warrant. *(Wilson v Arkansas, 1995, USSC)*

**NO KNOCK SEARCH WARRANT**

No-knock search warrants will only be authorized for felony offenses that involve a significant and imminent threat to public safety and will not be used for the preservation of evidence.

A no-knock search warrant must be approved by the SWAT Commander and Deputy Chief of the Homeland Security Division or designee of equal rank prior to seeking a magistrate's approval.

The search warrant affidavit must:

- Demonstrate that the underlying offense is punishable as a felony and involves a significant and imminent threat to public safety;
- Demonstrate that identifying the presence of the officer before entering the premises is likely to create an imminent threat of substantial bodily harm to the officer or another person;
- Describe the specific facts and circumstances as to why there are no reasonable alternatives to effectuate the search of the place or person other than in the manner prescribed by the no-knock warrant;

LVMPD 001491



## LAS VEGAS METROPOLITAN POLICE DEPARTMENT
### *Special Weapons and Tactics*

- If the no-knock warrant cannot be executed during the day, must include a detailed justification for a night-time service.
- State that the no-knock search warrant will be served under the guidance of an officer(s) trained in the execution of search warrants.

No-knock search warrants will only be served by SWAT. At the time of service, SWAT will ensure that the circumstances which necessitate a no-knock entry as prescribed in the warrant still exist. If the circumstances no longer necessitate a no-knock entry, officers must knock and/or announce themselves prior to service.

All Surround and Callout Tactic and Control Entry Tactic numbers will be tracked by the SWAT Senior LEST.

### 9.01.01    Authorization phase

The SWAT Commander or designee will review all search warrant requests. The review must evaluate the request and determine whether or not the associated circumstances rise to the level of a SWAT service. "The decision to activate a tactical team can constitute excessive force if it is not objectively reasonable in light of the totality of the circumstances…" (McCracken v. Freed).

The courts have determined the deployment of SWAT may constitute excessive force if objectively reasonable factors do not exist. Therefore in an effort to support the LVMPD directive of de-escalation of force, as well as support the LVMPD Policy (5/200.00) that only SWAT will serve warrants deemed to be high risk in nature, the SWAT Captain or designee will make the final determination regarding whether or not SWAT will serve the warrant. This determination will be based upon the following factors, but not limited to:

- Verification of a completed SWAT IAP;
- Evaluation of the severity of crime being investigated;
- Evaluation of the immediate threat posed by the suspect or other occupants to themselves, citizens and officers;
- Evaluation of the likelihood the suspect will attempt to evade or resist and there by pose a threat to arresting Originating Unit Officers and the public;
- Evaluation of the need to immediately apprehend the suspect with the use of SWAT;
- Verification of the need for forced entry;
- Verification of the likelihood of weapons that would preclude other investigative/custody means to be utilized by the Originating Unit;
- Verification of violent or unknown history of occupants that would preclude the Originating Unit from utilizing alternative means of affecting an arrest outside of the premise, without the need of forced entry by SWAT;

LVMPD 001492



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

- Verification, via drive-by reconnaissance, that the premise legal description within the search warrant matches the target location identified within the IAP and the actual premise provided to SWAT by the Originating Unit;
- Verification of due diligence by the Originating Unit to support the belief that the suspect(s) present during the investigation are reasonably expected to be inside the premise at the time of service.
- Verification that the Originating Unit has made reasonable attempts, and documented such, to apprehend the suspect(s) outside of the premise sought to be searched in order to avoid a confrontation between LVMPD SWAT and the suspect(s) within the premise.
- Case law relevant to this process includes but is not limited to:
  - McCracken V. Freed, 2006;
  - Neace v. City of Massilon, 2006;
  - Solis v. City of Columbus, 2004;
  - Taylor v. County of Berks, 2003;
  - Los Angeles County v. Rettele et al., 2007;
  - Michigan v. Summers, 1981;
  - Muehler v. Mena, 2005;
  - Boyd v. Benton County, 2004.

The reviewing SWAT Commander can then do one of the following:
- Approve the request.
- Conditional approval of the request.
- Request additional info or investigative steps in order to solidify the need for a tactical team service.
- Deny the request.

Once the search warrant is approved, the Team Leader or designee notifies the affiant that a SWAT officer will be in contact with them regarding the reconnaissance and search warrant service.

The Team Leader will notify the Tactical Commander of the briefing time and location as well as any aggravating factors which lead the Team Leader to believe that the search warrant service may escalate to a barricade. The Team Leader must also receive approval from the Tactical Commander for the following:

- No-Knock service *(needs Lieutenant, Captain and Deputy Chief approval)*
- Explosive breach
- Controlled Entry Technique
- Planned interior NFDD (stun-stick insertion, etc.).
- Utilization of a Sniper/Observer
- Search Warrant was put down i.e. Detectives took suspect off prior to service, suspect left the location etc.

LVMPD 001493



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

If a SWAT Warrant Service Request is denied, the denial will be noted in the Daily Log by the Team Leader. The Sr. LEST will be cc'd and will file in H drive and log for quarterly reports.

Decision-making by the Team Leader should include the matters of risk assessment and risk management. The more times you are exposed to a potential risk (or create one), the greater the probability of a negative outcome. If the risk is properly assessed and risk is avoided, a successful outcome will be likely.

One of the factors to determine if a warrant is to be classified as a High-Risk service is if it is not feasible to arrest the suspect (s) outside of the target location. Most Las Vegas multi-unit apartment complexes have environmental issues restricting our ability to properly contain them, lack cover and concealment, to protect innocent bystanders in the operation area, and effective suspect control should that suspect opt not to peacefully surrender.

Gross Misdemeanor and Misdemeanor warrants are not normally served by the SWAT Bureau and will be reviewed on a case-by-case basis. They will be considered when the target suspect has a possibility of violence and/or violent history toward police. The layout of the target location will also be taken into consideration when determining service. The SWAT Commander has the final authority in determining this decision.

In the event that it is determined, based on intelligence, that the search warrant location has the higher probability of turning into a Barricaded Subject Incident, the Tactical Commander will participate as the command and control element, ready to assume the duties as Tactical Commander should the service of the search warrant plan change.

**9.01.02      Planning phase**

If the warrant meets SWAT criteria, the Team Leader will then begin the planning process below but not limited to:

- Assign to Assistant Team Leader
- Assign Reconnaissance team to survey the location to be served
- Read the search warrant and all associated paperwork
- The crime alleged and why the items sought to be seized are evidence of the crime.
- Verified there are signatures from the District Attorney and Judge are present on the Affidavit and Search Warrant.
- Probable Cause and nexus between the place to be searched and the items sought.
- The names of persons who can reasonably be expected to be inside the premises at the time the warrant is to be served, with previous arrests for violence, or intelligence stating a propensity for violence.
- Threats of violence toward police made by the suspect (s) to a covert or undercover officer, confidential informant or other witnesses.

LVMPD 001494



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

- The target location is fortified with bars, walls, shrubbery, or guarded by vicious animals or surveillance cameras.
- Likelihood that evidence will be destroyed
- The justification for the use of SWAT during the service/execution of the Search Warrant.
- The nighttime service request and the justification for a nighttime clause, if applicable.

**9.01.03      Reconnaissance phase**

Recon Officers are responsible for the covert scouting of the location (s) of the Search Warrant and collecting any intelligence possible to assist in the safe planning of the Search Warrant service. They will receive a copy of the SWAT IAP, Affidavit, and Search Warrant and check for, but not limited to:

- The crime alleged and why the items sought to be seized are evidence of the crime.
- Verifies there are signatures from the District Attorney and Judge on the Affidavit and Search Warrant.
- Probable Cause and nexus between the place to be searched and the items sought.
- Verify legal description in search warrant affidavit and search warrant ensuring the target location matches the target description. Any discrepancies will be immediately be brought to the attention of the Team Leader.
- The names of persons who can reasonably be expected to be inside the premises at the time the warrant is to be served, with previous arrests for violence, or intelligence stating a propensity for violence.
- Threats of violence toward police made by the suspect(s) to a covert or undercover officer, confidential informant or other witnesses.
- If the target location is fortified with bars, walls, shrubbery, or guarded by vicious animals or surveillance cameras.
- Likelihood that evidence will be destroyed.
- The justification for the use of SWAT during the service/execution of the Search Warrant.
- The nighttime service request and the justification for a night time clause, if applicable.

Recon officers are responsible for the following during the recon, but not limited to:

- Contacting the Affiant to get any applicable information to assist in the planning of the Search Warrant.
- Will physically view the location of the target with the Affiant and have the Affiant confirm the Search Warrant location, unless extenuating circumstances exist. If recon officers are unable to physically confirm the location, they will inform the Team Leader of the situation.
- If the Search Warrant is Telephonic, the Search Warrant Affiant will go with the recon officers and physically point out the target location.

LVMPD 001495



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

- Recon officers should be covert, dress in plain clothes and use undercover vehicles whenever applicable to not comprise the investigation and safety of officers.
- Recon officers are responsible for ingress and egress routes to the target. They should make sure that all routes are accessible and will not compromise the safety of officers and the service of the Search Warrant.
- Recon officers will attempt to obtain any applicable information for deployment of a Sierra team to provide valuable intelligence as SWAT officers approach the location to be search. This Sierra team will also be in a position for provide over watch for SWAT officers or innocent citizens that maybe in the operational area.
- They will also look for any obstructions that may need to be breached.
- Recon officers should consider locations for containment officers, detectives or patrol officers for outer containment. Recon officers should consider any innocent civilians in the area and try to reduce any threat to them. Recon officers should look for any cameras, vicious animals, sign children, schools, lookouts, etc., access the appropriate vehicles and equipment that will be employed. All of this information needs to be reported to the Team Leader and Assistant Team Leader to assist in the planning.
- Recon officers will report to the Team Leader and Assistant Team Leader with all of the information they have collected.
- Contact dispatch and request a SWAT event number.
- Fill out the Recon Check Sheet and insure all applicable sections are complete and provide any pertinent information regarding officer, civilian, or suspect safety.
- Create overhead view of the target to include the location of known windows and doors, obstacles, cameras, hazards, landscaping and compass direction etc.
- Map of ingress and egress routes for all personnel.

ATL will perform the following but not limited to:

- Meets with recon officers and discuss best options for serving Search Warrant.
- Suggests the safest tactics to serve the Search Warrant for the public, officers and suspect(s) to the Team Leader.
- Determines what method(s) will be used to approach the target.
- Determines what vehicles will be needed.
- Assign appropriate equipment needed for service of the Search Warrant
- Ensures less lethal plans are in place and approved by the Team Leader
- Has arrest teams if appropriate.
- Contact medical personnel and plans for any injuries to civilians, officers and suspect(s).
- Writes down all planning information for officers to see during the briefing.
- Briefs and obtains approval of plan from the Team Leader
- Provides an After Actions Report within 10 days of warrant service to Team Leader.

Team Leader will perform the following, but not limited to:



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

- Notifies SWAT officers of time and location of briefing.
- Oversees planning of the search warrant service.
- Makes sure that appropriate use of force is being applied.
- Make sure no department and/or SWAT policies are being violated.
- All applicable laws are being adhered to.
- Request support personnel if needed such as K9, Tac Medic, Additional SWAT Officers, air unit etc.
- Briefs Tactical Commander on warrant
- Obtains authorization from Tactical Commander for specific tactics as delineated in 9.01.01.

Team Leader will ensure a written plan is in place depending on, but not limited to:

- Size of target
- Required manpower/Span of Control
- Fortifications
- Suspect criminal history
- Propensity for violence
- Suspect weapons
- Surveillance cameras
- Dogs
- Specific threats against police officers
- Gang member status
- Potential hostages
- Environmental factors
- Necessity for SW being served at that particular moment
- The option of waiting for suspect to leave the premise to be searched prior to service of warrant
- The need for Control Entry Tactic / Surround and Callout Tactic
- The need for explosive breach
- The need for sniper deployment
- Ensures an adequate containment strategy is in place depending on the complexity of the mission
- Reviews and approves, modifies or disapproves of Assistant Team Leader After Action Report within 10 days of receiving it

**9.02   Warrant Service Briefing**

Team Leader

LVMPD 001497



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

Will ensure all those participating in the search warrant service are present and back-brief respective roles/assignments. Will conduct inspections of equipment and oversee all aspects of briefing. Will communicate briefing time and location to the Tactical Commander.

Assistant Team Leader

- Conducts briefing to inform all personnel involved with the Search Warrant service of their responsibilities.
- When briefing Search Warrants that involve Child Sex Offenders, includes the tactics for a suicide by cop and a single gunshot heard from inside the dwelling.
- Ensures Recon officers give Intel of the target location and/or suspects.
- At the end of briefing gives all officers an opportunity to ask any questions before the service of the search warrant.
- Makes sure all officers understand their responsibilities during the execution of the Search Warrant.
- Has officers equip themselves appropriately with Personal Protection Equipment.
- Load all equipment into vehicles.
- Give appropriate time for snipers, containment officers, and pertinent support personnel, to get into position.
- Conduct communication checks.
- Update any information with dispatch if needed.
- Has officers equip themselves appropriately with Personal Protection Equipment.
- Load all equipment into vehicles.
- Give appropriate time for snipers, containment officers, and pertinent support personnel, to get into position.
- Conduct communication checks.
- Update any information with dispatch if needed.

Tactical Commander

When appropriate to participate, will do the following:

- Attend briefing;
- Brief plan for events that might occur outside the norm of the warrant service;
- Coordinate with resources on the outer perimeter.
- Attend debriefing.

**9.03   Service of Warrant**

Team Leader

LVMPD 001498



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

- Is responsible for the service of the Search Warrant and will supervise all aspects of the service.
- Announces over the radio prior to departing the brief location, to activate BWCs.
- Ensures appropriate announcements are made before service of search warrant.
- Ensures documentation/photos are done of any damages.
- Announces over the air to turn off BWC when mission is complete.
- Notifies the Tactical Commander of any issues, injuries, use of force, vehicle accidents and situations that may rise that immediate steps need to be taken and notifications need to be made.

Assistant Team Leader

- Ensures all officers arrive to their predetermined locations.
- Make any adjustments for public, officer and suspect safety.
- Uses appropriate force to take any suspects into custody.
- Make sure the area is safe and secure.
- Has recon officers document any damage, layout of the structure and evidence in plain sight.
- Has recon officers document any injuries to suspect(s) while taken into custody.
- Photographs all damage, injuries and evidence.
- Turn scene over to Affiant.
- Document the officer taking control of the scene.
- Makes sure all equipment is accounted for.

Tactical Commander

- May establish and stage in pre-designated staging area.
- Will provide command and control for any situations that arise outside the normal service of warrant.

**9.04  Tactical Debrief**

Tactical debriefs are a review and critical critique of the actions taken or not taken and thoughts by all personnel involved during a tactical operation or high-risk police encounter to include the lessons learned. A debrief following a tactical operation or a high-risk police encounter is essential and will be mandatory because it serves as an invaluable source in determining lessons learned from the incident so that good performance continues, satisfactory performance improves, and poor performance is not replicated.

- Should be conducted in a timely manner after any SWAT operation.
- Rank and/or seniority should not be considered when critiquing each other in the tactical debrief.
- All comments by officers will be in conformance with the departments ICARE values
- The highest rank supervisor will conclude the tactical debrief.

LVMPD 001499



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

---

- Team Leader will forward any failures to the Tactical Commander and Training Section Sergeant for follow-up and to ensure corrective/remedial training is accomplished.

## 10.00 Breaching

The LVMPD recognizes the significance of a comprehensive breaching program comprised of all reasonable methods of forced entry suitable for tactical operations. The main objective of the program is to provide the best suited breaching options based on mission objectives, target analysis, tactics, and overall risk assessment.

To achieve this objective, the program has adopted, developed, and is committed to maintaining a high level of professional capability in the seven fundamental breaching disciplines: Manual, Mechanical, Ballistic, Thermal, Hydraulic, Explosive, and Vehicle- Assisted breaching. In support of these disciplines, the SWAT section possesses, maintains, and routinely updates the necessary breaching tools, equipment, and related skill sets. The Breaching Cadre Team Leader in coordination with the Training Cadre Team Leader will ensure that all essential Breaching skills are trained to proficiency. For a matrix of the associated skillsets as identified through best practice consistent with ATF standards for law enforcement breaching, see the LVMPD SWAT Breaching Manual.

As a crucial component of nearly every tactical operation, breaching is separated into two skills levels: Basic and Advanced.

## 10.01  Definitions

**Manual Breaching:** The use of any tool/s which utilize manual physical power to achieve their main breaching function. Such tools include but are not limited to: impacting, prying, leveraging, raking-and-braking, and cutting tools.

Authorized Personnel- All LVMPD SWAT officers and sergeants

Initial Certification- 8 hours consisting of:

- 3 hours classroom presentation
- 5 hours practical applications
- Written test – passing score 80% or above
- Practical test – Pass or Fail
- Minimum in-service training per year – 4 hours
- Requalification per year – 1

**Mechanical Breaching:** The use of any tool/s or equipment which utilize motorized machine power to achieve their main breaching function. Such tools include but are not limited to gas operated Quickie/ K12/ Rescue saws, chain saws, and battery operated Sawzall and/ or Cut-off saws, Kinetic Breaching Tool.

LVMPD 001500



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

Authorized personnel- Operational and certified LVMPD SWAT Master Breachers Initial Certification- Any certification course which consists of:

- At least 24 hours in length or longer
- Includes a comprehensive written curriculum, a copy of which is retained by the participant
- Curriculum consists of both academic/ classroom session/s and practical/ hands on portions. Both must be geared toward tactical operation and instruct participant in the applicability and deployment of such tools in a Law Enforcement Tactical Environment.
- Written test – passing score 80% or above
- Practical test – Pass or Fail

Kinetic Breaching Tool

Authorized personnel-All Operational Master Breachers
- Initial Certification - 2 hours consisting of:
- 1-hour classroom presentation
- 1-hour practical application or to proficiency

**In Service Training**

In-service training

- Quickie/ K12/ Rescue saw to proficiency
- Kinetic Breaching Tool (Initial Cert – 2 hours) practical applications to proficiency
- Chainsaw to proficiency
- Battery operated Sawzall or Cut-off saw to proficiency
- Requalification per year – 1 time per tool

**Ballistic Breaching:** The use of a firearm loaded with specialized munitions which are designed specifically for and are suitable for compromising specific targets in a manner which is deemed reasonable and safe for citizens, officers, and suspects. Such firearms and munitions include 12 gauge shotguns and 12 gauge frangible munitions.

Authorized personnel- All LVMPD SWAT officers and sergeants

Initial Certification- 8 hours consisting of:

- 3 hours classroom presentation
- 5 hours practical applications
- Written test – passing score 80% or above
- Practical test – Pass or Fail

LVMPD 001501



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

In-service training

- Breaching Shotgun manipulation and marksmanship - to proficiency
- Target Analysis and Ammo Selection- to proficiency

Requalification per year – 2

**Thermal Breaching**: The use of a device or tool which is capable of producing and introducing a high degree of external heat to specific target material thereby compromising/breaching them. Such tools include an exothermic torch operating on O2 gas.

Authorized personnel- Operational and certified LVMPD SWAT Master Breachers

Initial Certification- Any certification course which consists of:

- At least 24 hours in length or longer
- Includes a comprehensive written curriculum, a copy of which is retained by the participant
- Curriculum consists of both academic/ classroom session/s and practical/ hands on portions. Both must be geared toward tactical operational and instruct the participant in the applicability and deployment of such tools in a Law Enforcement Tactical Environment.
- Written test – passing score 80% or above
- Practical test – Pass or Fail

In-service training

- Exothermic Torch- basic assembly, maintenance, and safety procedures - to proficiency
- Cutting procedures- target analysis and troubleshooting - to proficiency
- Requalification per year – 1

**Hydraulic Breaching**: The use of a devices or tools which utilize incompressible liquids such as oil to exert force on a target thereby compromising/breaching it. Such tools include manual and electrohydraulic breaching tools.

Authorized personnel- Operational and certified LVMPD SWAT Master Breachers

Initial Certification- Any certification course which consist of:

- At least 24 hours in length or longer
- Includes a comprehensive written curriculum, a copy of which is retained by the participant

LVMPD 001502



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

- Curriculum consists of both academic/ classroom session/s and practical/ hands on portions. Both must be geared toward tactical operational and instruct the participant in the applicability and deployment of such tools in a Law Enforcement Tactical Environment.
- Written test – passing score 80% or above
- Practical test – Pass or Fail

In-service training

- Manual Hydraulic - to proficiency
- Electrohydraulic - to proficiency
- Requalification per year – 1

**Explosive Breaching**: The use of explosive devices, constructed of both explosive and non-explosive materials, to successfully gain entry into an intended target. Such devices are deployed in a manner which is consistent with the overall mission objectives of the LVMPD SWAT Breaching Program and the Section.

Authorized personnel-Operational and certified LVMPD SWAT Master Breachers

Initial Certification- Any certification course which consists of:

- At least 48 hours in length or longer
- Includes a comprehensive written curriculum, a copy of which is retained by the participant
- Curriculum consists of both academic/ classroom session/s and practical/ hands on portions. Both must be geared toward tactical operational and instruct the participant in the applicability and deployment of such tools in a Law Enforcement Tactical Environment.
- Written test – passing score 80% or above
- Practical test – Pass or Fail

In-service training

- Mathematical Calculations - to proficiency
- Charge Construction - to proficiency
- Target Analysis - to proficiency
- Misfire Procedures - to proficiency
- Explosive Handling and Safety - to proficiency
- Non-LVMPD training once every 2 – 3 years (not including Recertification.)
- Requalification per year – 4
- Recertification – Once every 5 years

LVMPD 001503

---

**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

**Vehicle-Assisted Breaching**: The use of a specialized vehicle equipped with appropriate reinforcement and tools and/ or machines suitable of pushing and pulling various targets in a specific, intentional, and methodical manner thereby compromising/ breaching them.

Authorized personnel- All LVMPD SWAT officers and sergeants

Initial Certification- 4 hours- consisting of:

- 1 hours classroom presentation
- 3 hours practical applications
- Written test – passing score 80% or above
- Practical test – Pass or Fail

In-service

- Target-Pulling utilizing a hook - to proficiency
- Target-Pulling utilizing a winch - to proficiency
- Target Pushing - to proficiency
- Requalification per year – 1

The following additional training is provided to and by the LVMPD SWAT Breaching cadre in support of one or more breaching skills, methods, or operational needs. This training consists:

Target Analysis: The knowledge and expertise required to properly identify various breaching targets, understand their general construction, identify their inherent weaknesses, and recognize the way/s by which to exploit these factors in the most operationally feasible manner thereby achieving the desired mission and objective/s.

Authorized personnel- Operational and certified LVMPD SWAT Master Breachers

Initial Certification- Provided as a part of each method of breaching certification course.

In-service training

- Doors – to proficiency
- Rollup Doors - to proficiency
- Windows - to proficiency
- Walls - to proficiency
- Fences and yard access gates - to proficiency
- Requalification per year – 1

Explosive Handlers: A term used to describe any LVMPD SWAT officer who receives proper training in the safe handling and transportation of the specific types of high explosives used by LVMPD SWAT Master Breachers for the purpose of conducting explosive breaching. Such an

Page | 123



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

officer needs these basic skills since he is likely to operate and/or interact with LVMPD SWAT Master Breachers on a regular basis and may be tasked with assisting in the performance of simple handling and transportation tasks.

Certified explosive handers are not taught or otherwise certified to carry explosives on a routine basis nor are they authorized in the use of any high explosives for the purpose of breaching or conducting Controlled Detonation Procedures (CDP) for Pyrotechnic Diversionary Devices.

Authorized personnel- All LVMPD SWAT officers and sergeants

Initial Certification- 8 hours- consisting of:

- 3 hours classroom presentation
- 5 hours practical applications
- Written test – passing score 80% or above
- Practical test – Pass or Fail

In-service training per year to proficiency

Requalification per year – 1

Controlled Detonation Procedures (CDP) for Pyrotechnic Diversionary Devices: Any controlled and deliberate procedure intended to facilitate the safe disposal of any pyrotechnic divisionary device which has failed to detonate as intended during training or live operations. This procedure provides field expedient methods which take into consideration the sensitive nature of these unexploded devices, the environment in which they were deployed, and the safety of citizens and officers.

Authorized personnel- Operational and certified LVMPD SWAT Master Breachers

Initial Certification- Provided upon becoming an Operational Master Breacher and a member of the Breaching Cadre.

- 1 hour classroom
- Field demonstration and hands-on applications
- Written test – passing score 80% or above
- Practical test – Pass or Fail

Minimum in-service training per year – 2 hours total

- Classroom – 1 hour
- Hands-on live range practical – to proficiency
- Requalification per year – 1

LVMPD 001505



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

Explosive Breaching will be authorized by the Tactical Commander, SWAT Commander or Back-up Tactical Commander

- This would provide officers with the tactical advantage prior to entry.
- Using this tool would aid the team in preventing the loss of lives.

Anytime an explosive breach is approved, the Tactical Commander must be able to justify the use based upon the information available. The primary breacher on the scene is responsible for briefing the Team Leader who will brief the Tactical Commander on the size, type, and potential results of the breach as well as the contingency plan should there be a failure.

Explosive Breaching is Prohibited on Search Warrants in which children are identified and/or present unless approved through the chain of command up to the Deputy Chief.

### 10.02 Basic Breaching Skill Methods

Skills or methods which are relatively simple, require minimal training time, and are used routinely. These include Manual, Ballistic, and Vehicle-Assisted Breaching. Instruction and training in Basic Breaching Skills and Methods is provided to all LVMPD SWAT Operators and Basic Breaching skills are used by all operators in the section.

### 10.03 Advanced Breaching Skill Methods

Skills and methods which are relatively more complex, require extensive and dedicated training, and are not used on a regular basis. Advanced skills include Mechanical, Thermal, Hydraulic, and Explosive Breaching. Advanced Breaching Skills are restricted to certified and operational members of the LVMPD SWAT Breaching Cadre who bear the title of Master Breachers.

The following define the breaching positions and capabilities established in the LVMPD SWAT section:

### 10.04 Breacher

The term applies to any LVMPD SWAT operator who has successfully completed the required number of training hours and is certified to use all Basic Breaching Skills and Methods to include Manual, Ballistic, and Vehicle-Assisted Breaching.

### 10.05 Master Breacher

An LVMPD SWAT officer who has successfully completed a recognized certification course and is skilled in the use of both Basic and Advanced Breaching Skills/ Methods to include Manual, Mechanical, Ballistic, Thermal, Hydraulic, Explosive, and Vehicle- Assisted Breaching.

### 10.07 Operational Master Breacher

LVMPD 001506



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

An LVMPD SWAT officer who has successfully completed a recognized certification course and fulfills the following criteria:

- Is required to attend breaching cadre in-service training and successfully pass all requalification.
- Possesses the necessary experience to perform and/ or utilize all Advanced Breaching Skills and Methods.
- Is assigned the vehicle and equipment commonly issued to Operational Master Breachers.
- Is tasked with instructing other team members in all Basic Breaching Skills and Methods and selected curricula pertaining to Advanced Breaching Skills and Methods.

**10.08 Breaching Cadre**

A group of certified and operational Master Breachers consisting of members from both Silver and teams and one Training Section Coordinator.

**Responsibilities**

The breaching program and its operational members, who are certified Master Breachers, are solely responsible for assuring that all initial certifications, required training, and scheduled qualifications pertaining to each discipline, are met by each member of the section and breaching cadre.

**Requirements**

The following requirements must be met by all active LVMPD SWAT officers and Sergeants who are or may be tasked with utilizing Basic Breaching Skills during the course of their duties, whether in training or live operations.

**11.00 Less Lethal**

The SWAT section uses a variety of different devices to accomplish the tactical mission of the section. Various vendors are used, and the section constantly updates and evaluates new devices. SWAT personnel will be given training and certification in the use of devices by trained personnel prior to being issued or using such devices. Initial training is given during Basic SWAT School. Officers who will be assigned as instructors will attend an accredited certification course. All officers will receive sustainment training biannually.

**11.01 Noise/Flash Distraction Devices (NFDD)**

Diversionary devices are designed to gain compliance, distract or disorient an individual. Commonly referred to as "flash bangs", these products are generally non-fragmenting canisters

Page | 126



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

that emit a very loud report, a bright light, and an over-pressure wave. The combination of these effects produces a physiological or sensory overload that can temporarily stun an individual. These products are generally hand deployed, but can be thrown, launched or staged. Diversionary Devices are generally recognized as products that produce a dB or decibel rating of 175dB or less. All the NFDD in the SWAT section meet this requirement.

**Justification for Use**

Diversionary devices may be considered whenever the use of a less lethality diversion would facilitate a tactical entry, enable an arrest, and would reduce the risk of injury to police officers, innocent civilians, and suspects.

The following list of circumstances may justify the use of diversionary devices and shall include, but are not limited to:

- Barricaded Subject Incidents
- Hostage Taker Incident
- Suicidal Subject Incidents
- High risk Warrant Services
- Arrest of violent, mentally deranged persons
- Those under extreme influence of alcohol or drugs, which are prone to violence, and it is believed this diversion will facilitate the arrest.
- Violent riotous crowds
- Situations wherein the authorizing person deems their use necessary to safely resolve the incident

**Deployment Considerations**

Prior to deploying NFDD's, personnel shall consider available intelligence information and circumstances. This intelligence information should include the presence of children, elderly persons, innocent individuals, and the risk of injury occurring to those not involved in the arrest. The authorizing officer should consider circumstances which may dictate that an exterior deployment is preferable to deployment in the interior of the structure, the location of deployment, the type of structure where the device is being deployed, etc.

Whenever possible the device shall only be deployed when area is visibly cleared. These devices shall not be deployed solely for the prevention of evidence destruction. It should only be considered when tactics dictate.

Because NFDD's and like devices have the potential to ignite flammable material, a portable fire extinguisher shall be readily accessible whenever devices are deployed. Officers deploying flash/sound devices will wear gloves (preferably fire retardant gloves), and a ballistic helmet with face shield and/or eye protection.

LVMPD 001508



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

After deployment, equipment related to the distract deployment will be recovered prior to securing the scene. In the case of a failed detonation, proper disposal protocols for the particular type and kind of distract will be followed.

**Authorization for Use**

Only personnel who have successfully completed an LVMPD SWAT approved training course in the proper use and deployment of these NFDD's shall be authorized to carry and deploy them during actual operations.

At the direction of the Team Leader and/or the Assistant Team Leader team members will carry NFDD's based on their assignment for their mission.

Because NFDD's are tracked by the Bureau of Alcohol, Tobacco, and Firearms, all members will ensure the serial numbers of distracts issued them are recorded with date and name in the munitions log.

Because of the specialized nature of these devices and the training required to properly deploy them, their use shall be restricted to trained personnel from the LVMPD SWAT during tactical missions and/or training.

Except in extreme emergencies, NFDD's and similar devices shall not be used without prior authorization from the Team Leader or Tactical Commander. In the absence of the Team Leader or Tactical Commander the Assistant Team Leader may authorize their use.

**Reporting and Review Process**

The authorizing officer shall review the use of each situation wherein a NFDD's or similar device is utilized and ensure its use was according to SWAT guidelines, the device functioned properly, and the appropriate reports were completed. In the case of a failed detonation, a copy of the report will be forwarded to the Tactical Commander who will track the incident for reporting purposes to the manufacturer.

**11.02  Low Roll Distraction Device**

The 12-Gram/4 Gram incorporates an M201A1 type fuze with Hex design steel body. This is a reloadable or non-reloadable version of the 8933 Low Roll Distraction Device Body, which is designed to reduce rolling, fit in tactical pockets easily and deliver the safest and most effective stimuli in the industry. The Distraction Device unit should only be deployed in areas that have been visually observed to be clear of potential hazards.

It is recommended that the immediate area for deployment be visually affirmed to be clear of personnel and that the device is delivered so that the ports are free from obstruction. If the bottom port is obstructed by an object or wall, the device body may move. The cleared area for deployment should be 5 - 6 feet around which the device is expected to come to rest.

LVMPD 001509



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

**The 12-Gram Command Initiated Reload**

Used in conjunction with the reloadable Distraction Device body, is most commonly used in tactical situations by Law Enforcement and Corrections and was designed for instantaneous and remote initiation. It is well suited for either staging with the optional staging (holding) device or for operations utilizing bang poles. Some assembly, optional equipment, and additional training are required. These types of deployments allow the bottom port to be positioned to focus the pressure (blast) wave towards or away from a target area.

The 12-Gram Command Initiated Reload produces a loud report, brilliant flash, and short heat duration. It contains no separating sub-munitions, and does not eject any particles or fragments. It also supplies the necessary level of over-pressure to achieve the desired distraction effect in dynamic situations.

The Command Initiated Distraction Device unit should only be deployed in areas that have been visually observed to be clear of potential hazards and are to only be used when properly inserted and tightened into the Distraction Device body. Do not discharge the reload without the use of the Distraction Device body. The Distraction Device body is made from steel and is designed and tested for 25 deployments of any of the Defense Technology reloads.

CAUTION: DO NOT cut the Thermo Tube lead prior to splicing additional lengths of Thermo Tube. The Thermo Tube lead has been protected from moisture with a plastic nipple that is to be removed at the time of splicing.

**11.03  The 4-Gram Distraction Device**

Reload incorporates an M201A1 type fuze that was designed for use with the Distraction Device reloadable steel body. The 4-Gram reloads are only to be used when properly inserted and tightened into the Distraction Device body. Do not discharge the reload without the use of the body. The Distraction Device unit should only be deployed in areas that have been visually observed to be clear of potential hazards. The 4-Gram reload has a charge tube diameter of 0.78, and on overall length of 2.95 in. The device produces a medium report and flash.

**11.04  The Stinger Grenade**

Is a combination Less Lethal Impact Munitions and Distraction Device® that may incorporate optional CS or OC laden powder, if desired. The Stinger® Grenade is a maximum effect device as it delivers up to four stimuli for psychological and physiological effect: rubber pellets, light, sound, and optional chemical agent or OC.

The Stinger Grenade has an initial 1.5 second delay that initiates fuze assembly separation, followed by another 0.5 second delay before the function of the device. The blast is sufficient to project the rubber balls and optional chemical agent in a 50 foot radius.

LVMPD 001510



**LAS VEGAS METROPOLITAN POLICE DEPARTMENT**
*Special Weapons and Tactics*

The Stinger Grenade is most widely used as a crowd management tool by law enforcement and corrections in indoor and outdoor operations. However, as with any pyrotechnic device, firefighting equipment should be available. It has also proven successful in tactical operations.

As a pain compliance, distraction and disorientation device for crowd management, it may be hand thrown or launched in the general direction of the crowd. It may be deployed for ground bursts or aerial bursts at the discretion of the operator. It is generally reserved as a last selection when chemical agents and less lethal impact munitions have not resolved the disorder or routed the crowd. It has been used quite successfully for several years in correctional and jail facilities against non-compliant or riotous inmates.

**11.05  40mm Aerial Warning/Signaling Munition**

Are designed to produce 170 dB of sound, and 5 million candelas of light. Each munition is manufactured to deflagrate at a set distance and altitude and has the option of marking or irritant payloads. These distances are 100, 200, and 300 meters from the point of origin. Launched from a 40mm platform, these munitions give the operator the ability to engage people, vehicles or vessels from a safe stand-off position.

These munitions have significant impact within different environments. In a maritime theater, they would be used to contact vessels, and determine the intentions of the crew. In open waters, the flash and sound are easily observable at great distances. For checkpoint operations, the munitions can be directed towards approaching vehicles to provide a less lethal response against potential threats. When directed over the heads of crowds, the Aerial Warning/Signaling Munitions are effective in directing the movement of crowds.

The 40mm Aerial Warning/Signaling Munitions are designed to travel to their respective distances and deflagrate 20 feet above target when the launcher is held at a 15 degree elevation angle. Each munition has a tactile reference on the nose of the cone to indicate the designated distance for that particular round. None of the 40mm Aerial Warning/Signaling Munitions are regulated by ATF.

These projectiles are designed for outdoor use and have fire-producing capability. They are not intended for barricade penetration. Do not fire directly at personnel, as serious injury or death may result.

**11.06  Chemical Munitions**

To minimize injury to suspects, officers, and others or to avoid property damage, the use of chemical agents, such as tear gas, may be necessary in circumstances where a serious danger to life and property exists and other methods of control or apprehension would be ineffective or more dangerous. These less-lethal devices give SWAT the means to subdue and arrest potentially dangerous individuals with less chance of injury or death to suspects, innocent bystanders, or themselves. Impact munitions can help law enforcement officers effectively resolve potentially violent encounters in which deadly force might otherwise be used.

LVMPD 001511