# Exhibit 9

Exhibit 9

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 2 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 1

1              UNITED STATES DISTRICT COURT

2                  DISTRICT OF NEVADA

3                    * * * * *

4    LATIA ALEXANDER,                )
     individually as heir of         )
5    ISAIAH T. WILLIAMS and in       )
     her capacity as special         )
6    administrator of the Estate     )
     of ISAIAH T. WILLIAMS,          )
7                                     )
           Plaintiff,                )
8                                     )
           vs.                       )          CASE NO.
9                                     )  2:24-cv-00074-APG-NJK
     LAS VEGAS METROPOLITAN          )
10   POLICE DEPARTMENT, a            )
     political subdivision of        )
11   the State of Nevada; KERRY      )
     KUBLA, in his individual        )
12   capacity, et al.,               )
                                      )
13         Defendants.               )
     _____ )

14

15              VIDEOTAPED DEPOSITION OF

16                  REGGIE RADER

17         30(b)(6) for Las Vegas Metropolitan

18                Police Department

19            Taken on February 21, 2025

20                  at 9:08 a.m.

21          By a Certified Court Reporter

22               Las Vegas, Nevada

23

24          Stenographically reported by:
         Heidi K. Konsten, NV CCR 845, RPR
25          JOB NO. 59663 - Firm No. 116F

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 3 of 203
30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 2

 1            Videotaped deposition of REGGIE RADER,

 2     Volume I, stenographically taken at 400 South

 3     Seventh Street, 3rd Floor, Las Vegas, Nevada, on

 4     Friday, February 21, 2025, at 9:08 a.m., before

 5     Heidi K. Konsten, Certified Court Reporter in and

 6     for the State of Nevada.

 7

 8                  APPEARANCES OF COUNSEL

 9     For the Plaintiff:

10            ADAM J. BREEDEN, ESQ.
              Breeden & Associates, PLLC
11            7432 West Sahara Avenue
              Suite 101
12            Las Vegas, Nevada 89117
              (702) 508-9250
13            (702) 508-9365 Fax

14     For the Defendants:

15            CRAIG R. ANDERSON, ESQ.
              Marquis Aurbach
16            10001 Park Run Drive
              Las Vegas, Nevada 89145
17            (702) 382-0711
              (702) 382-5816 Fax
18
       Also present:
19
              Samuel Camacho, Videographer
20

21                  * * * * * *

22

23

24

25

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 4 of 203
30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 3

```
 1                         INDEX

 2                                                    Page

 3    REGGIE RADER

 4    Examination by Mr. Breeden                        5

 5                    *  *  *  *  *

 6

 7                       EXHIBITS

 8    No.                Description              Page

 9    Exhibit 1      Notice of Videotaped            4
                     Deposition
10
      Exhibit 2      January 3, 2023, LVMPD          4
11                   Interoffice Memorandum

12    Exhibit 3      January 31, 2023, LVMPD         4
                     Interoffice Memorandum
13
      Exhibit 4      January 10, 2022, Force         4
14                   Investigation Team Report

15    Exhibit 5      Office of Internal              4
                     Oversight Review Key
16                   Findings, Conclusions,
                     and/or Recommendations of
17                   an Officer-Involved
                     Shooting
18                    *  *  *  *  *

19

20

21

22

23

24

25
```

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 5 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 4

```
 1                    LAS VEGAS, NEVADA
 2                 Friday, February 21, 2025
 3                       9:08 a.m.
 4          DEPOSITION OF REGGIE RADER
 5                  *  *  *  *  *  *
 6              (Exhibits 1 through 5 were
 7              marked.)
 8
 9              THE VIDEOGRAPHER:  Today is
10  February 21st, 2025.  The time is approximately
11  9:08 a.m.  Your court reporter is Heidi Konsten,
12  and I'm your videographer, Samuel Camacho.  We are
13  here on behalf of Lexitas.
14              The witness today is Reggie Rader, a
15  30(b)(6).  And we are here in the case of Latia
16  Alexander, et al., versus Las Vegas Metropolitan
17  Police Department, et al.
18              Will counsel please state your
19  appearances, and the court reporter will
20  administer the oath.
21              MR. BREEDEN:  This is Attorney Adam
22  Breeden for the plaintiff.
23              MR. ANDERSON:  Craig Anderson for the
24  defendants.
25
```

Page 5

```
 1   Whereupon,

 2                       REGGIE RADER,

 3   was called as a witness, and having been first duly

 4   sworn to testify to the truth, was examined and

 5   testified as follows:

 6

 7                       EXAMINATION

 8   BY MR. BREEDEN:

 9        Q    Good morning, sir.  Can you please state

10   your name for the record, and go ahead and spell

11   your name for the court reporter, as well.

12        A    My name is Reggie Rader, R-E-G-G-I-E,

13   Rader, R-A-D-E-R.

14        Q    Okay.  And, Mr. Rader, what's your

15   position currently at the Las Vegas Metropolitan

16   Police Department?

17        A    I am a deputy chief over the homeland

18   security division.

19        Q    Okay.  And you understand that you are

20   here in today's litigation to testify on behalf of

21   Las Vegas Metropolitan Police Department regarding

22   an officer-involved shooting that resulted in the

23   death of Isaiah Williams which occurred on

24   January 10 of 2022; is that correct?

25        A    It is.
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 6

1          Q     All right.  First of all, does Metro

2     expect that its officers will follow Metro's own

3     internal policies, procedures, and training?

4          A     Yes.

5          Q     And does Metro expect its officers and

6     employees to conduct themselves so that they do

7     not infringe on the civil rights of the public?

8          A     Yes.

9          Q     Okay.  Frankly speaking here, in this

10    officer-involved shooting, were mistakes made by

11    Metro in the policy, planning, or execution of

12    this search warrant?

13         A     On the administrative level?

14         Q     On any level.

15         A     Yes.

16         Q     I'll ask you about that in more detail

17    as we go through this deposition, but let me back

18    up a little bit.  First of all, I want to go

19    through the deposition process a little bit with

20    you.

21               Have you ever been deposed before?

22         A     Yes.

23         Q     How many times?

24         A     One time.

25         Q     All right.  I'll ask you about that

Page  7

1    in -- more in just a couple of seconds here.

2              But understand that the oath that was

3    just administered to you by the court reporter is

4    the same oath that you would take in a court of

5    law as if you were in front of a judge and a jury

6    today, and it obligates you to tell the truth

7    under penalty of perjury.

8              Do you understand that?

9         A    I do.

10        Q    Your deposition is being videotaped and

11   your testimony may be read or played for the jury

12   later in this case.

13             Do you understand that?

14        A    I do.

15        Q    The court reporter is taking down

16   everything that's said during today's deposition.

17   Afterwards, she will put everything in a booklet

18   or a transcript form.  You'll have the right to

19   review that transcript and make changes to your

20   testimony if you wish.

21             But I want to caution you that if you

22   make a substantive change in your testimony -- in

23   other words, you say one thing here today and then

24   later you try to change your testimony, I would

25   have the right to comment on the fact that you

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 8

1    tried to later change it.

2              Do you understand that?

3         A    I do.

4         Q    It is important for us to make a good

5    record during today's deposition.  So there's

6    several -- there are several things I will ask you

7    to do for me.

8              First of all, if you don't understand

9    any of my questions, please ask me to repeat or

10   rephrase them, and I'll be happy to do so for you.

11             During today's deposition, you always

12   need to give an audible or out loud or verbal

13   response to my questions, such as a simple "yes"

14   or "no."  Please avoid shaking your head up and

15   down or side to side if you mean yes or no or

16   using slang terms such as "uh-huh" or "huh-uh,"

17   because those sort of nonverbal responses don't

18   show up well, if at all, on the transcript when we

19   go back and look at it.

20             Can you do that for me?

21        A    I can.

22        Q    You've done an excellent job so far for

23   me, but as a general rule during the deposition,

24   try not to speak at the same time anyone else is

25   speaking.  We will all afford you the same



Page 9

1    courtesy.  And one of the reasons why I ask you to

2    do that is because it is very important -- very

3    difficult for the court reporter to accurately

4    take down what two people are saying at the same

5    time.

6              Do you understand that?

7        A    I do.

8        Q    During today's deposition, your attorney

9    may object to one or more of my questions.  I want

10   to explain to you how objections work during the

11   deposition process, because they work a little

12   differently than what you might have seen on TV or

13   in a courtroom.

14             As you can tell today, we do not have a

15   judge present here in this conference room to

16   immediately rule on objections.  So what we do

17   during a deposition, is if I ask a question and

18   the other attorney wants to state an objection,

19   they will do so clearly for the record and state

20   the basis, and then we will still look to you to

21   give your response.  Then later, if the judge

22   needs to go back on the transcript and rule

23   whether your response is admissible, the judge can

24   do so.

25             I explain this to you before we begin,

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 10

1   because this confuses many people when they're new

2   to this process.  They hear deposition [sic], and

3   they think, oh, I'm not supposed to answer

4   because -- they hear an objection, and they think

5   they're not supposed to answer, but generally the

6   opposite is true during a deposition.

7           Do you understand that?

8       A   I do understand.

9       Q   Okay.  Have you consumed any alcoholic

10  beverages in the last 24 hours?

11      A   No.

12      Q   Have you taken any drugs, including

13  prescription medications, in the last 48 hours?

14      A   No.

15      Q   Do you have any sort of medical

16  condition -- an extreme example would be dementia

17  or Alzheimer disease -- that may affect your

18  memory or your ability to testify here today?

19      A   I do not.

20      Q   Okay.  Now, in front of you is

21  Exhibit 1.  Can you please turn to that exhibit.

22          Your deposition here today was requested

23  under Federal Rule of Civil Procedure 30(b)(6).

24  And this is a rule where if a corporate or

25  governmental entity is sued, we can serve a

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 11

1    deposition notice with a list of topics, and then

2    it's up to the entity -- in this case, Las Vegas

3    Metropolitan Police Department -- to produce a

4    witness who can testify as to those topics in a

5    manner that binds Metro.

6            So I did not specifically ask that you

7    be here today, only that a witness as to certain

8    topics be produced.

9            Do you understand that?

10       A    I do.

11       Q    Okay.  Now, looking at Exhibit 1, which

12   is -- it's the deposition notice followed by the

13   list of topics, have you seen that prior to today?

14       A    I have.

15       Q    Okay.  And then I have taken the liberty

16   on Exhibit 1 of highlighting in yellow the topics

17   that I believe you are here to testify regarding

18   today.

19            Will you please take a moment and

20   confirm to me that you are prepared to testify as

21   to those topics in a manner that binds Metro.

22       A    I am prepared for it.

23       Q    Okay.  Now, under Federal Rule of Civil

24   Procedure 30(b)(6), the witness who is produced

25   wouldn't necessarily have to have personal



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 12

1    knowledge about the incident.  But in this

2    particular case, you do have some personal

3    knowledge because you were actually a member of

4    the Tactical Review Board that reviewed this

5    officer-involved shooting; correct?

6         A    Correct.

7         Q    Did you have any other personal

8    involvement in the planning or execution of this

9    search warrant?

10        A    No.

11        Q    All right.  So your first involvement or

12   the first time you heard of this was after it

13   occurred?

14        A    Correct.

15        Q    All right.  I want to sort of know the

16   universe of documents that you have reviewed and

17   people that you have spoken to in order to prepare

18   yourself to testify today.  So let's start with

19   documents.

20             What documents have you reviewed?

21        A    I have reviewed the Critical Incident

22   Review Team findings from the use-of-force board

23   and the Tactical Review Board.  I have reviewed

24   the LVMPD policy on the critical incident review

25   process.  And I reviewed the memorandum and then

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 13

1    the addendum to the memorandum that was the final

2    conclusions of the board that was sent up to the

3    sheriff.

4         Q    Okay.  Have you spoken with anyone else,

5    other than your attorneys, regarding preparation

6    for your testimony or what you intend to testify

7    to here today?

8         A    No.

9         Q    Have you ever spoken to any of the

10   individual officers that have been sued?

11        A    Spoken to them individually?  Yes.

12        Q    Okay.  Was that as part of the Tactical

13   Review Board investigation?

14        A    It was.  And then just in passing, there

15   was conversations, but not -- no questions

16   regarding this, outside of the board, short of

17   just having seen them at work and talked to them.

18   I -- I don't know if I'm answering that correctly.

19        Q    Well, I'll ask you some follow-up

20   questions here more specifically.

21             When is the last time you saw or spoke

22   to Defendant Kerry Kubla?

23        A    Months, if not over a year.

24        Q    Did you speak to him about the fact that

25   you might have to give deposition testimony --



30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 14

```
 1       A    No.

 2       Q    -- in this matter?

 3            When is the last time you spoke to Brice

 4   Clements?

 5       A    I do not remember.  It has been over a

 6   year.

 7       Q    When is the last time you spoke -- saw

 8   or spoke to Alex Gonzales?

 9       A    At the board, maybe.  I don't remember

10   talking to him outside of that.

11       Q    When is the last time you saw or spoke

12   to Russell Backman?

13       A    At least a year, if not more.

14       Q    When is the last time you saw or spoke

15   to James Rothenburg?

16       A    At least over a year.  I'm not --

17   nothing is coming to memory.

18       Q    When is the last time you saw or spoke

19   to James Bertuccini?

20       A    That would, again, be at least a year.

21       Q    When is the last time you saw or spoke

22   to Melanie O'Daniel?

23       A    The last time would have been at this

24   board.  I don't think I've talked to her since.

25       Q    Okay.  Lieutenant O'Daniel is now
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 15

1    retired; correct?

2        A    Correct.

3        Q    And to your knowledge, the other

4    individual officers that we just discussed, are

5    they still employed by Metro?

6        A    I know Sergeant John Scott is retired.

7    I believe all of the other involved officers are

8    still currently employed.

9        Q    All right.  There's been some experts

10   that have been disclosed in this litigation by

11   both sides who have commented on what occurred and

12   prepared reports.

13           Have you reviewed those reports?

14       A    On the other experts?

15       Q    Yes, any -- any expert reports.

16       A    No, I have not.

17       Q    Okay.  And there have been a lot of

18   different depositions taken in this case already

19   before yours, probably -- maybe ten, possibly

20   more.

21           Have you reviewed any of those

22   deposition transcripts?

23       A    I have not.

24       Q    Okay.  Let's talk a little bit about

25   your background and history with the Las Vegas

LEXITAS™

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 17 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 16

1    Metropolitan Police Department, which -- well,

2    before we do that, though, I guess we may be using

3    some acronyms in this case, and I just want to

4    make sure, on the record, you know, I ask you

5    about them and you indicate what they stand for.

6            So TRB, what does that stand for?

7        A    That is the Tactical Review Board.

8        Q    And then CIRT, C-I-R-T, what does that

9    stand for?

10       A    That is the Critical Incident Review

11   Team.

12       Q    And then OIO, what does that stand for?

13       A    The officer -- Office of Internal

14   Oversight.

15       Q    And then OIS?

16       A    That is an officer-involved shooting.

17       Q    Okay.  And then FIT, F-I-T?

18       A    That's a Force Investigations Team.

19       Q    Now, let me ask you some -- some general

20   questions here.

21            What -- what is the association and

22   interplay between TRB, CIRT, OIO, and FIT?

23       A    So they all comprise our critical

24   incident review process.  And our critical

25   incident review process is how the Las Vegas



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 17

1   Metropolitan Police Department, along with the

2   civilian community members, do thorough, in-depth

3   administrative reviews of officer-involved

4   shootings or deadly uses of force.

5            And in there, there are two boards that

6   are comprised of some of the same individuals, but

7   with a little different functions.  So if you want

8   me to break that down, I would be happy to right

9   now.

10       Q    Yeah, go ahead.  And then I will have

11   some other follow-up questions for you.

12       A    So the -- the boards are the

13   Use-of-Force Review Board, and then the other

14   board is the TRB, which is the Tactical Review

15   Board.

16            Now, both of these boards, a CIRT

17   detective will be the one -- the lead case agent

18   that will be presenting their findings of that

19   incident and -- to the board to make their final

20   decisions, which is done by a vote.

21            The Use-of-Force Board is comprised

22   of -- an assistant sheriff is the chair of the

23   board, and that is somebody that is selected by

24   the sheriff to serve in that function.  On the

25   Use-of-Force Board, that chair is not a voting

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 18

 1    member.  They're just there to procedurally make

 2    sure that everything is adhered to and oversee

 3    that board.

 4            The voting members of that board would

 5    be the involved individual officers' bureau

 6    commander, which is the captain rank; another

 7    captain or higher on the department; and a peer

 8    member of equal rank to that individual officer

 9    that used force.

10            So if it was an officer, it would be a

11    peer officer.  If it was a sergeant, it would have

12    to be a sergeant level officer.  And they would be

13    the voting commission members on that board.

14    Additionally, there are four civilian members that

15    are on that board that are all voting members on

16    that board.

17            So they have four civilian members that

18    vote on that use of force versus the three

19    commissions members on that use of force.  And

20    the -- that board, after hearing all of the facts

21    and reviewing the case, would then make their

22    determination by a vote on an administrative

23    approval of the officer-involved shooting, which

24    would mean that everything was fine with that

25    shooting; training and tactics -- or, I'm sorry,

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 19

1    tactics and decision-making, where the use of

2    force was still within LVPD's policy of being

3    objectively reasonable, however, the officers'

4    decisions or tactics implemented may have

5    contributed to the outcome in a different way.

6            And the way I kind of explain that is if

7    an officer is searching somebody for weapons and

8    they recover a knife off this individual and they

9    put that knife on the hood of the patrol car

10   without securing the individual in handcuffs, and

11   the individual breaks free, grabs the knife, turns

12   around and tries to stab the officer and that

13   officer uses deadly force, it's still objectively

14   reasonable force; however, the tactics that he

15   implemented contributed to that.  So that would be

16   an outcome that they could do.

17           There is policy training failure, where

18   the outcome might not have been the desired

19   result; however, there was a training gap or a

20   policy failure that was identified.  And then the

21   final thing they can vote on would be

22   administrative disapproval, where the shooting was

23   not within LVPD policy or -- or training

24   standards.

25           Once that board is concluded, then it



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 20

1    transitions to the Tactical Review Board.  The

2    Tactical Review Board has a lot of the same

3    members.  The only difference being the chair of

4    the board, meaning that assistant sheriff, is now

5    a voting member and still presiding over the

6    board.  There is still the voting member that is

7    the captain of the involved officer that used

8    force.  There is another captain or above that is

9    a voting member on there.

10            There is the peer member that is still

11   there as a voting member, and then there is a

12   tactical expert on those boards that usually comes

13   from ODB, which is the Organizational Development

14   Bureau, and that's just what we call our training

15   section.  So it's usually a lieutenant or a

16   captain assigned to that bureau that can weigh in

17   on some of the training things.

18            The four civilian members that were

19   there for the Use-of-Force Board are still able to

20   be there as observers; however, they are not

21   voting members for the Tactical Review Board.

22       Q    Thank you for that description.

23            Is every officer-involved shooting, by

24   definition, reviewed as part of the critical

25   incident review process?



Page 21

```
 1        A     It is.

 2        Q     And an officer-involved shooting, is the

 3   definition of that any time an officer discharges

 4   his weapon, or would that include times when a

 5   member of the public discharges their weapon at

 6   the officer but the officer doesn't shoot?

 7        A     For us, an officer-involved shooting

 8   would be when the officer is discharging their

 9   weapon.  And the Force Investigative Team would be

10   the ones that are criminally investigating that

11   shooting.

12            They also investigate if deadly force is

13   used against one of our officers.  So that

14   wouldn't be an officer-involved shooting, per se.

15   But if an officer was stabbed, shot, shot at,

16   someone tried to run them over, that would still

17   be investigated by that Force Investigative Team.

18        Q     Okay.  Now, are the -- is the critical

19   incident review process and these different boards

20   that are involved, are those mandated by Nevada or

21   federal law?

22        A     Not that I'm aware of.

23        Q     Okay.  These are internal policies and

24   procedures to Metro?

25        A     They are.
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                     Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 22

1        Q     Are they recommended by any national

2   organizations?

3        A     I'm -- I'm not aware if they're

4   recommended or not.  I do know it's fairly common,

5   like I said, on some of these boards to have other

6   law enforcement agencies observe it so they can

7   try to take that back to their own agencies.

8              And then I'm aware that when we went

9   through a collaborative reform process, there were

10  some recommendations made in the way that we can

11  look into things and our transparency.  And I

12  believe that's what really bred this process for

13  us.  But I don't -- I don't know about a national

14  standard for it.

15       Q     Was there any guide or model that Metro

16  looked to for the formation of its critical

17  incident review process?

18       A     I'm not aware, as when it was created, I

19  wasn't involved in that process.

20       Q     And that was actually going to be my

21  next question.

22             Do you know when the current critical

23  incident review process was adopted?

24       A     I don't.  I sat on the process as a

25  lieutenant when I was in ODB training and also as

Page 23

1    a captain, and that spans back six years now.  So

2    without giving you a date, it would be more than

3    five years, but I don't have an exact date for

4    you.

5        Q    Okay.  And so the critical incident

6    review process consists of multiple boards.

7    There's the Use-of-Force Review Board and the

8    Tactical Review Board, but those share many

9    members?

10       A    Yes.

11       Q    Okay.  And then the -- the FIT report

12   that's produced, which one of those boards

13   produces the FIT report?

14       A    So the boards do not have anything to do

15   with the FIT report.  The boards are

16   administrative and internal reviews of what

17   occurred.  The FIT report is a criminal report

18   done by the investigators investigating the crime

19   of the officer-involved shooting.

20       Q    And so in -- for this officer-involved

21   shooting of Mr. Williams, who prepared the FIT

22   report?  And it's in front of you, if you care to

23   look.  It's Exhibit 4.

24       A    If you'll give me a moment.

25       Q    Sure.  I think it's -- you know, look,



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 24

1    I'll guide you a little bit.  If you look at the

2    first page of it, it looks like it was submitted

3    and approved by Detective Scott Mendoza and

4    Lieutenant Damon Young.

5             Do you see that?

6        A    I do see that.

7        Q    Are those homicide detective and

8    lieutenant?

9        A    No, those are FIT investigative -- Force

10   Investigative Team detectives.

11       Q    Okay.  So the Force Investigative Team

12   that's separate from the Use-of-Force Review Board

13   and the Tactical Review Board?

14       A    Yes.

15       Q    Do they share any members?

16       A    They do not.

17       Q    Is it intentional that they do not share

18   members?

19       A    It is.

20       Q    Similar questions to the CIRT team.  Do

21   they share any members with any of the other teams

22   or boards reviewing an officer-involved shooting?

23       A    Can you say that one more time?  I just

24   want to make sure I understand it.

25       Q    Yeah.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 25

1             The CIRT, does that share any members

2     with any of the other boards or teams that

3     investigate officer-involved shootings?

4         A     No.

5         Q     And that is intentional by design?

6         A     It is.

7         Q     And is the idea that you -- you want

8     multiple people with potential angles or

9     viewpoints looking at an officer-involved

10    shooting?

11        A     Well, it's important, because there's

12    different rights afforded to an individual when

13    they are being looked at criminally versus

14    administratively.  And in a criminal proceeding, a

15    subject being looked at criminally has a right to

16    the Fifth Amendment they can evoke where they

17    don't have to give a statement.

18             On an administrative hearing with an

19    officer, we are able to compel that statement, but

20    that cannot be used against them criminally.  So

21    there's two very deliberate lanes, not only for

22    the protection of the officers, but also where

23    they would end up on a criminal investigation with

24    the FIT team, that ultimately the facts are going

25    to be presented to the DA's office and then the

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page  26

1   determination would be made if any crime has

2   occurred or not.

3           The administrative side, which would be

4   the CIRT side of the house, is going to be where

5   we can examine all of the tactics, procedures, the

6   policies, the management of the incident by

7   supervisors involved was up to standards with our

8   policy and if the best outcomes are reached or

9   other ways we can get better internally so we

10  don't repeat any mistakes that are made.  Or if

11  there are better ways of doing things identified,

12  we can do that to make not only our officers

13  safer, but the community safer as well.

14      Q    Okay.  So let me -- I just want to make

15  sure that I've understood you and state things in

16  kind of a summary manner.

17          The Force Investigation Team is actually

18  a team that is investigating Metro's own officers

19  that were involved in the shooting to determine

20  whether they should be criminally charged; is that

21  correct?

22      A    Correct.

23      Q    All right.  And then does the force --

24  so the Force Investigation Team investigates

25  independently of the CIRT or TRB; correct?

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 27

1        A     Correct.

2        Q     All right.  And is the main reason for

3    that because the officers have certain criminal

4    rights -- for example, the right to remain

5    silent -- in front of the FIT team that they do

6    not for the CIRT team and the TRB?

7        A     Yes.

8        Q     Okay.  Now, you agree that the Force

9    Investigation Team concluded that none of the

10   officers should be criminally charged?

11       A     Correct.

12       Q     Do you agree, though, that what the

13   Force Investigation Team looked at was whether the

14   officers were justified in shooting once they

15   entered the apartment and they were confronted by

16   Mr. Williams, but they did not concern themselves

17   with the initial decision to use a CET entry and

18   the force that that required or the constitutional

19   knock-and-announce principles that plaintiff

20   alleges were violated?

21             That was not part of the FIT team's

22   review, was it?

23       A     It was not.

24       Q     Okay.  Why wasn't it?

25       A     Because the FIT team is looking at the

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 28

1    time of the trigger pull and if that officer was

2    in deadly force and utilized the threshold there,

3    being the subject had the ability, the

4    opportunity, the officers were in imminent

5    jeopardy, and preclusion did not allow them to

6    back up.

7           So the -- to really boil it down simply,

8    the incident as a whole is looked at by the

9    Critical Incident Review Team.  The trigger pull

10   and moment of deadly force is looked at criminally

11   by the Force Investigative Team.

12      Q    Why wouldn't the Force Investigation

13   Team include a broader picture, like the decisions

14   on what force to use; in other words, a CET entry

15   or how long the officers had to wait?  Because

16   those are -- those are constitutional issues as

17   well; right?

18              MR. ANDERSON:  Objection.  Form.

19              Answer.

20              THE WITNESS:  I don't see it that way.

21   I see the -- you know, if you're doing a homicide

22   investigation and somebody, you know, provokes

23   somebody else, you're not looking at all of those

24   things.  You're looking at the time the homicide

25   occurred.



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 29

```
 1            And for us, we really boil it down to
 2    that trigger pull when the officers utilized
 3    deadly force, and all of those other things are
 4    handled administratively.
 5    BY MR. BREEDEN:
 6        Q    Can officers be criminally charged for
 7    violating a member of the public's civil rights
 8    resulting in their death?
 9            MR. ANDERSON:  Objection.  Form.
10            Answer.
11            THE WITNESS:  Can you please say that
12    one more time?
13    BY MR. BREEDEN:
14        Q    Yeah.
15            The question is, you know,
16    hypothetically, can officers be charged if they --
17    criminally if they are found to have violated a
18    person's civil rights such that it caused their
19    death?
20        A    They can.
21        Q    Okay.  And is that under state -- Nevada
22    state law or is that under federal law or is that
23    under both?
24        A    It would be under both.
25        Q    Okay.  So even though the FIT team says,
```

Page 30

1    "Well, at the moment of the trigger pulls, that

2    was justified," it didn't review what happened

3    leading up to those trigger pulls to see if

4    criminal charges were appropriate?

5         A    Correct.

6         Q    Okay.  We kind of jumped around a little

7    bit, because I wanted to ask you about those --

8    well, you know what, we may as well finish this up

9    too.  So we've talked a little bit about TRB and

10   FIT and CIRT.

11              OIO, what is its role and how does --

12   how does it factor into this process?

13        A    The Office of Internal Oversight is part

14   of the -- the full name is Office of Internal

15   Oversight and Constitutional Policing where --

16   where these sections are housed.  And they have a

17   bureau captain over them and then separate section

18   lieutenants and some clerical staff that help with

19   all of the -- the paperwork.

20        Q    Does OIO -- basically what it does, does

21   it just take the CIRT and the TRB reports and put

22   them in a format for public release?

23        A    I -- I think that's an

24   oversimplification.  There's more things that that

25   section is responsible for as well, as well as in

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                     Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 31

1    addition to the deadly uses of force, they review

2    all uses of force to see if there's any patterns

3    or trends, if there's -- for instance, if we have

4    an electronic control device, a TASER, that

5    there's several instances where the officer has

6    been trying to use it and it's not getting the

7    effective compliance that we need, they can look

8    at, is that a training issue?  So there's other

9    things they do besides just compile the findings

10   for those two boards.

11        Q    Do they actually conduct new or

12   additional investigation into officer-involved

13   shootings, or they -- or they just take the

14   investigation that the TRB and the CIRT has

15   already done?

16        A    They take the investigation that CIRT

17   and FIT have already done.

18        Q    Okay.  So they don't do any independent

19   investigation?

20        A    No.

21        Q    Okay.  But they do have the role of --

22   you know, it's in their name -- of ensuring that

23   there's been constitutional policing.  In other

24   words, that officers haven't violated the

25   constitution; right?



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 32

```
 1        A     Right.

 2        Q     Okay.  So let's back up a little bit

 3   here and let's talk about you particularly, your

 4   experience, work history, and education.

 5              So first of all, how long have you lived

 6   in Clark County, Nevada?

 7        A     My whole life.

 8        Q     Okay.  Born and raised.

 9   Congratulations.

10              How long have you worked for the

11   Las Vegas Metropolitan Police Department?

12        A     I'm in my 27th year.

13        Q     Okay.  And when you were originally

14   hired, were you just hired as a patrol officer?

15        A     So I was hired at 18 as a cadet, and

16   that's where you join the police department and

17   you are a civilian and you learn all of the

18   paperwork and all of the codes.  And you are able

19   to do that until you turn 21, because in the state

20   of Nevada, you have to be 21 to be a police

21   officer.

22              And then when you turn 21, you go into

23   the police academy.  So the first three years of

24   my employment was as a civilian doing paperwork

25   and learning the different forms and procedures.
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 33

1    And then at '21, I was -- in the year '21, I went

2    into the police academy and became a police

3    officer.

4              Upon graduating the police academy, I

5    was a patrol officer for a few years and then went

6    to the problem-solving unit, which is kind of a --

7    detectives for the individual area commands.  Then

8    I did four years in the gang crimes bureau, which

9    is an investigative assignment, before promoting

10   to sergeant.

11             As a sergeant, I was assigned to patrol

12   again for a year, then went back to the gang unit

13   for another two years before promoting to

14   lieutenant.

15             And then lieutenant, you -- I would -- I

16   went back to patrol -- kind of every time you

17   promote, you end up going back to patrol for a

18   year -- in the downtown area command.  Then I was

19   an investigative administrative lieutenant for a

20   year in the southwest part of town.

21             Then I went to the Organizational

22   Development Bureau, which is training, and I was

23   the training lieutenant for a little over a year.

24   And then finally went back to the gang crimes

25   bureau as a lieutenant before promoting to



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 34

1   captain.

2           And in 2019 -- the end of 2019, I

3   promoted to captain, where I was a patrol area

4   command captain in the southeast part of town for

5   two years.  And then my third year as a captain, I

6   went back to the Organizational Development

7   Bureau, which oversees training, which is the

8   academy, driver's training, range, everything

9   really comprising training on the department.

10          And then from there, I was appointed to

11  a deputy chief where I was a patrol deputy chief

12  for two years.  And then my current capacity --

13  it's been about seven months -- I got moved over

14  to the homeland security division as the deputy

15  chief.

16      Q    When this officer-involved shooting

17  happened in January of 2022, were you still a

18  captain or were you a deputy chief at that time?

19      A    I was a captain.

20      Q    Okay.  Have you ever worked homicide?

21      A    I have not.

22      Q    Have you ever worked SWAT?

23      A    I have not.

24      Q    Have you ever developed training

25  policies or procedures for SWAT?

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 35

1        A    I have not.

2        Q    Have you ever developed training

3   policies or procedures just for general execution

4   of search warrants?

5        A    I have not.

6        Q    And same question, specifically as to

7   knock-and-announce principles.

8        A    As far as creating policy or training?

9        Q    Yes.  Any policy, procedures, or

10  training that you have developed for

11  knock-and-announce procedures?

12       A    No, I have not.

13       Q    Okay.  Have you ever worked for any

14  other law enforcement organization?

15       A    I have not.

16       Q    In your time in law enforcement, have

17  you ever had any lawsuits filed against you for

18  violation of civil rights?

19       A    I have.

20       Q    Okay.  How many?

21       A    One.

22       Q    Okay.  So who filed that lawsuit?

23       A    It was early 2000s as a patrol officer,

24  and it was a -- I had a use of force involving a

25  TASER where the individual died of excited

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 36

 1    delirium.  And from what I recall, there was a

 2    lawsuit.  I was deposed and then issued summary

 3    judgment.

 4         Q    In your favor?

 5         A    In my favor.

 6         Q    There was no settlement with the family

 7    of the person who died or the plaintiff?

 8         A    Not that I'm aware of.

 9         Q    Okay.  Is that the only other time you

10    have been deposed then?

11         A    It is.

12         Q    Okay.  Do you remember the name of the

13    individual who died?

14         A    William Lomax.

15         Q    Did you receive any discipline from the

16    department as a result of Mr. Lomax's death?

17         A    I did not.

18         Q    Did you receive any retraining or

19    anything of that nature?

20         A    I did not.

21         Q    You have never taken part in a SWAT CET

22    entry then?

23         A    No.

24         Q    Just to -- to very generally discuss

25    some of the structure at the Las Vegas



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 37

1    Metropolitan Police Department, the head -- first

2    of all, the department is considered its own

3    political subdivision under Nevada law; correct?

4        A    I don't know about political

5    subdivision, but I can tell you the structure.  We

6    have an elected sheriff.  So if that would

7    constitute political, because he is an elected

8    political figure, the sheriff of Clark County.

9        Q    Okay.  And then at the time this

10   officer-involved shooting happened, that was Joe

11   Lombardo, who is our current governor; right?

12       A    Correct.

13       Q    And then Sheriff McMahill was an

14   undersheriff at that time -- now Sheriff McMahill?

15       A    He is now Sheriff McMahill.  There -- he

16   left the department for a little while.  He

17   retired and then came back to be the sheriff.  I

18   don't have the exact date that he left the

19   department.  That's something I would have to

20   check on.

21       Q    Well, let's -- I guess I just want to

22   talk more generally from the top down.

23            So there's the sheriff?

24       A    Correct.

25       Q    And then below the sheriff, there are

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 38

```
 1   undersheriffs?

 2        A     There is one undersheriff.  And then

 3   there are assistant sheriffs and then deputy

 4   chiefs.  And those are the commission rank

 5   structure for the executive staff.

 6        Q     For SWAT specifically, is the highest

 7   ranking officer within the department assigned

 8   only to SWAT, is that the SWAT captain?

 9        A     Yes.

10        Q     And at the time of this OIS, that was

11   Capital Cole; correct?

12        A     It was.

13        Q     And then the next level below Captain

14   Cole would be SWAT lieutenant; correct?

15        A     Correct.

16        Q     And at this time, that was Lieutenant

17   O'Daniel.

18        A     It was.

19        Q     Is there only one SWAT captain?

20        A     There is only one SWAT captain.

21        Q     Is there only one SWAT lieutenant?

22        A     There is.

23        Q     Everybody below lieutenant is either a

24   SWAT officer or a team leader or assistant team

25   leader; right?
```

Page 39

```
 1        A     Correct.  And then for rank structures,
 2   the team leaders are sergeants.  And then the
 3   assistant team leaders are officers that have been
 4   picked to be assistant team leaders.
 5        Q     Okay.
 6        A     But when you say team leader, it's
 7   the -- the rank is sergeant, which falls right
 8   underneath lieutenant.
 9        Q     As a deputy chief, who is your immediate
10   supervisor?
11        A     An assistant sheriff.
12        Q     Which one specifically?
13        A     Right now, it's Assistant Sheriff Dori
14   Koren.
15        Q     And then as a deputy chief, what are
16   your day-to-day job duties?
17        A     So a deputy chief oversees bureaus.
18   Bureaus are led by captains.  So every deputy
19   chief has three to five bureaus under them where
20   you're overviewing the high level things going on
21   in that -- in that section.
22              So for a patrol deputy chief, you're
23   going to be getting briefed and briefing up on
24   shootings, homicides, vehicle fatalities, large
25   personnel issues.  In my current assignment for
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 40

1    homeland security, we had, you know, a cyber truck

2    bombing that happened here.  That was a big CT

3    investigation.

4            I oversee our counterterrorism division,

5    our special events section -- which you know we do

6    quite a few events here, so I'm usually in the

7    command structure working those events -- our

8    special investigations sections, as well as our

9    airport division.

10           But the -- the deputy chief level is the

11   high level oversight of those bureaus that then

12   provides information to the assistant sheriffs,

13   the undersheriff, and the sheriff on our weekly

14   staff briefings.

15      Q    And you would agree with me that your

16   current assignment -- assignment at homeland

17   security -- that really doesn't relate or

18   associate with SWAT and the officer-involved

19   shooting in this particular case.  It's a

20   different department?

21      A    It is a different department.

22      Q    Okay.  Other than sitting here today

23   during this deposition, have you ever been

24   represented in any other matter by Attorney Craig

25   Anderson or the law firm that he's with, which is

Page 41

1    Marquis Aurbach?

2        A    No.

3        Q    Okay.  The next topic that you've been

4    designated to testify regarding is topic number

5    five, which deals with the Tactical Review Board,

6    its composition, and its findings regarding

7    Mr. William's officer-involved shooting.

8             So marked for this deposition as

9    Exhibit 2 is something which just says at the top

10   left "LVMPD Interoffice Memorandum."

11            Do you see that?

12       A    I do.

13       Q    Okay.  Is this the memorandum with the

14   findings of the Tactical Review Board?

15       A    This is.  And there was an additional

16   attachment to that as well that is Exhibit 3.  But

17   together those two comprise the -- the memorandum

18   that was sent to the sheriff.

19       Q    Okay.  And then the -- the sheriff in

20   this case at that time was Sheriff McMahill?

21       A    Correct.

22       Q    And so the members of the Tactical

23   Review Board, are they all listed there on the

24   first page of Exhibit 2?

25       A    They are.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 42

1      Q    Okay.  I'm just going to read them off.

2  Assistant Sheriff Walsh, Deputy Chief Prosser,

3  Deputy Chief Larkin, Deputy Chief LaRochelle,

4  Captain Rader -- which is you -- Captain Holmes,

5  Sergeant Celaya, Officer Jackson, and then there's

6  a nonvoting secretary, Kellcy Sullivan.

7           Are those the only board members that

8  took part in any consideration of this

9  officer-involved shooting by the TRB?

10     A    Yes.

11     Q    Okay.  And so at the time this

12 memorandum was prepared, CIRT's report was

13 available to the TRB; correct?

14     A    Yes.

15     Q    And is CRB's -- or, I'm sorry.  Is TRB's

16 real purpose just to review the CIRT report to

17 determine what needs to be done at a tactical

18 level?

19     A    What is -- well, their job is twofold.

20 It's to review the CIRT report and all of the

21 recommendations and then to sit through the

22 presentation for the Tactical Review Board and

23 then have the opportunity to ask questions to

24 the -- the presenter and also ask any clarifying

25 questions to the involved officers.



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 43

1      Q    So are you still on the Tactical Review

2   Board?

3      A    No.  I have been, but just

4   situationally.  If -- I have gone back if I've had

5   involved employees that were involved in

6   officer-involved shootings.  But I was on the

7   board this time because I was the captain over the

8   Organizational Development Bureau.

9           So the -- the board's composition

10   changes based on what sections are involved in the

11   officer-involved shooting and then what

12   assignments different department members have.

13      Q    Well, how many officer-involved

14   shootings have you reviewed as part of the TRB?

15      A    As a lieutenant and as a captain and

16   then as a deputy chief, I would say at least ten.

17      Q    Have you ever been on CIRT?

18      A    No.

19      Q    So tell me a little bit about the TRB

20   process.

21           When does it start following an

22   officer-involved shooting?  What type of

23   investigation occurs?  And, you know, what is the

24   ultimate purpose of TRB's review?

25      A    Well, the process starts on the day of

Page 44

1    the officer-involved shooting.  When the -- the

2    Critical Incident Review Team responds to the

3    officer-involved shooting to start gathering all

4    the facts.  And the citizen review board members,

5    while not part of the Tactical Review Board --

6    they're part of the Use-of-Force Review Board --

7    they are actually able to respond to the scene as

8    well and get a scene walk-through so they can have

9    a better frame of reference when that board

10   happens.

11           After the initial officer-involved

12   shooting, they notice the involved employees that

13   they're going to be bringing them in for

14   interviews for the administrative process.  And

15   then over the next several weeks and months, they

16   are conducting their interviews with those

17   involved members, meeting with subject matter

18   experts -- which we call SMEs -- and finding out

19   if the -- what the officers are saying and what

20   they're seeing are in line with the policies and

21   the training that we have as a department.  And

22   that -- that's when it starts.

23           And I forget the rest of your question.

24       Q   Well, yeah, and, you know, I have some

25   follow-up questions here for you.



Page 45

1          But the ultimate goal or end of the TRB

2     process is simply to send a memorandum to the

3     sheriff for the sheriff's review and any further

4     assessment that needs to be done?

5          A    So the ultimate goal is for us to make

6     sure we're doing things the best way to keep our

7     officers and the community safe.  The ultimate

8     goal is to be able to find if there's better ways

9     to do things, if -- if mistakes were made, was

10    there an -- an issue with the supervisory

11    management of that incident?

12         But it's all an administrative, thorough

13    deep dive to see why everything occurred and if

14    there's a better way to do that.

15         Q    For this TRB investigation, was it

16    Assistant Sheriff Andrew Walsh who was in charge?

17         A    Yes, Assistant Sheriff Walsh at the time

18    was the chair.

19         Q    And he actually signed this report, if

20    you look at the last page of it, which is

21    LVMPD 4859.  He's the person who ultimately signed

22    off on this memorandum; correct?

23         A    Correct.

24         Q    Now, is it Assistant Sheriff Walsh who

25    is actually typing up this report, or did some

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                     Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page  46

1    other member of the review board actually draft

2    it, and then Assist Sheriff Walsh simply reviewed

3    it and signed off?

4        A    I don't know -- I couldn't tell you who

5    drafted it.  I know that they have a secretary on

6    the board taking notes, but I -- if I -- my

7    assumption would be that the chair does not draft

8    it.  They review it and then approve it and sign

9    it, but that would be a question for

10   Sheriff Walsh.

11       Q    Okay.  You mentioned that one of the

12   things the TRB does is discuss the issues in the

13   shooting with subject matter experts.

14            In this case, were those the same

15   subject matters experts that the CIRT team

16   consulted?

17       A    Can you -- can you say that again?  I'm

18   getting a little confused on your -- the way you

19   phrased that.

20       Q    Yeah.

21            So if you look in the CIRT report, you

22   know, it lists different subject matter experts.

23   And then you mentioned that TRB also consults

24   subject matter experts.

25            Are those the same subject matter



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 48 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 47

1    experts, or were they different?

2         A    So I think -- I mean, if I said it that

3    way, that was a mischaracterization.  The critical

4    incident review process, the CIRT team gets with

5    all of the subject matter experts when they're

6    coming up with their findings on everything.

7    Those findings are then presented -- the Tactical

8    Review Board itself does not have -- it's really

9    the same thing.  It's the same subject matter

10   experts that are providing the feedback to the

11   CIRT investigation team.

12              And you mentioned before -- I was the

13   captain over our training section; however, never

14   worked SWAT.  So they would bring in subject

15   matter experts that would have that knowledge base

16   on SWAT, because those are special tactics.  But

17   that's all part of the critical incident review

18   process on how they're coming up with their

19   findings.

20        Q    In your opinion, did Metro take the

21   investigation of this officer-involved shooting

22   seriously?

23        A    Yes.

24        Q    In your opinion, did they do a thorough

25   job?



Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 48

1        A      In my opinion, yes, they did.

2        Q      The CIRT report, in particular, is 222

3    pages long.

4               Have you seen any longer CIRT reports in

5    your career?

6        A      Not that I can recall.

7        Q      And the TRB memorandum itself is 34

8    pages.

9               Have you ever seen a longer TRB

10   memorandum?

11       A      I do not recall seeing one longer.

12       Q      Okay.  So when we look at this list here

13   on the first page of the TRB memorandum, which is

14   LVMPD 4826, which one of -- which ones of those

15   board members -- I don't know if I said that

16   right.  Let me rephrase it.

17              Which of these board members are

18   permanent members on the TRB and which were

19   assigned just for this officer-involved shooting?

20       A      The chair is a permanent member.  The

21   deputy chief of professional standards is a

22   permanent member.

23       Q      Hold on.  I'm sorry.  Who is that

24   specifically?

25       A      I'm sorry.  At that time, it would have

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 49

1    been Deputy Chief Jamie Prosser.  So those two are

2    permanent members.

3            Deputy Chief Sasha Larkin was the deputy

4    chief that SWAT was comprised in.  So she was on

5    the board because members in her chain were

6    involved.  Deputy Chief James LaRochelle was a

7    board member because he was over the investigative

8    services division, and one of the things looked at

9    was homicides, so that involved his section.  I

10   was on this board because I was the captain over

11   training.

12           So those are -- those are the ones that

13   get brought in because of the sections involved in

14   the Tactical Review Board.  But the -- the

15   permanent positions would have been -- Assistant

16   Sheriff Andrew Walsh is the chair, and then the

17   professional standards deputy chief Jamie Prosser

18   at the time.

19      Q    But why was Captain Holmes on this

20   board?

21      A    Captain Holmes was on this board because

22   he was the captain over homicide at the time of

23   the incident.

24      Q    And I'm not sure how to pronounce this

25   last name, but why was Sergeant Celaya on the



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 50

1    board?

2        A    You know what, I do not -- I do not know

3    why -- what role Sergeant Celaya had.

4        Q    And then the peer board member was

5    Officer Tremayne Jackson.

6            Do you see that?

7        A    I do see that.

8        Q    And so, what, was Officer Jackson

9    assigned to SWAT or some other department?

10       A    No.  So the way the peer board members

11   work is the -- there's officers that volunteer to

12   be peer board members at different ranks, and then

13   they go through some training on the composition

14   of the board.  But it's really to get somebody at

15   that same level to vote on if what they saw was

16   consistent with the training and tactics.  But I

17   couldn't tell you Officer Tremayne Jackson's

18   background.

19       Q    Well, and the idea of the peer board

20   member is that it will be the same rank as the

21   officers being investigated; right?

22       A    Yes.

23       Q    And so actually the -- it would seem

24   that the highest ranking officer being

25   investigated -- well, frankly, if you look under

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 51

```
 1    there, it says "Officers Involved," and it
 2    includes Captain Cole, Lieutenant O'Daniel.
 3            But Sergeant Backman would have been the
 4    highest ranking sergeant on the scene; right?
 5        A    Right.
 6        Q    And, in fact, he was in charge of the
 7    announcements; right?
 8        A    Correct.
 9        Q    And he actually entered the apartment
10    and discharged his firearm too, didn't he?
11        A    Yes.
12        Q    Why wouldn't there be a sergeant peer
13    board member?
14        A    That may be what Sergeant Celaya was
15    there for.  It's not indicated in the report, and
16    I don't specifically remember if that was what
17    that sergeant's role was on the board or not.
18        Q    So TRB, to get to the point where it
19    produces a 34-page memorandum of its findings or
20    opinions, how many times does it meet?
21        A    With the subject matter experts?
22        Q    Just all -- all board members.
23        A    So the Tactical Review Board members,
24    the board comes together one time for -- for this
25    process.  The case agents, the detectives of the
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 52

 1    Critical Incident Review Team have several

 2    meetings in the months leading up to this board

 3    with the subject matter experts.

 4            As -- as you identified, you know, if

 5    somebody wasn't in SWAT or the peer -- the board

 6    member, you know, if they were in SWAT or not, the

 7    subject matter experts are the ones that are

 8    breaking down if the tactics and decision-making

 9    done fits what their policies and procedures are.

10            So there's a lot of meetings that happen

11    before the board, but the board just meets for one

12    time on the day of the board.

13        Q    And in this case, when I was reviewing

14    the documents produced by Metro, there's an audio

15    recording of a meeting that I think lasted six

16    hours or more.

17            Is that the recording of the one and

18    only TRB board meeting?

19        A    I mean, without hearing it, I -- I know

20    we record the meetings, so if that's what it's

21    labeled, yes.  But there's -- I mean, they record

22    interviews with officers as well.  But the

23    administrative boards are recorded, both the use

24    of force board and the training -- or the Tactical

25    Review Board.



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 53

 1        Q    And do you remember this board meeting
 2   being a six hour or more meeting?
 3        A    It was several years ago.  I remember it
 4   being very long, but I don't remember the exact
 5   time.
 6        Q    Okay.  And do you remember whether
 7   during that meeting, involved persons such as
 8   Lieutenant O'Daniel appeared and -- and testified
 9   in front of the board?
10        A    I do remember Lieutenant O'Daniel being
11   there.  As far as testifying to the board, I don't
12   remember if she was asked any questions or not.
13   And the -- every involved officer is given an
14   opportunity to speak if they want to add
15   something, but they don't always speak.
16             So as far as testimony given, I can't
17   tell you if she did or not that day.  But I do
18   remember seeing her at the board.
19        Q    If officers do choose to speak in front
20   of the board, is it under oath?
21        A    It is under our -- it's not under oath
22   per court terms, but it's under oath for our --
23   our honesty and integrity policy, where if they
24   give any false statements, if they -- if they lie
25   about anything, that can be used for discipline up

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 54

1    to and including termination.

2        Q    When we look at the first page of this

3    memorandum here, which is Exhibit 2, the officers

4    involved there -- and it lists several, you know,

5    officers -- sergeant, lieutenant, captain -- are

6    there any you can recall specifically that

7    declined to appear in front of the board?

8        A    I believe John Scott retired and

9    declined to appear in front of the board.

10       Q    To your recollection, then, did all of

11   the other officers involved appear?

12       A    As far as I can remember, yes.

13       Q    You mentioned earlier in your testimony

14   that one of the things the TRB does is it votes.

15            Do you recall saying that?

16       A    Yes.

17       Q    Are those votes recorded?

18       A    They are.

19       Q    And they would be on the audio recording

20   of the meeting, or are they recorded in some other

21   manner?

22       A    They are recorded and in writing.  When

23   the deliberation occurs -- after the case agent

24   presents the case, questions are able to be asked

25   to the involved officers.  The officers are then

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 56 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 55

1    excused from the room and the recording is turned

2    off, and then the board discusses everything.

3            And then they make their recommendations

4    on a sheet of paper, and they have three different

5    options:  They can validate the findings, they can

6    modify the findings, or they can overturn those

7    findings.

8        Q    And so part of the meeting is

9    audio-recorded.  But for the deliberation part or

10   the voting part, the recording is turned off?

11       A    Yes.

12       Q    But there are written records on how

13   specific board members voted on certain issues?

14       A    Yes.

15       Q    Okay.  And if I wanted to get those,

16   where would those be today?  Who would have

17   custody of them?

18       A    I'm not sure where those are housed.

19       Q    Okay.  Do you recall any of the findings

20   listed in this memorandum as being something other

21   than unanimous by the board?

22       A    I don't recall if they were unanimous or

23   not.  I can tell you, though -- by looking at the

24   report, I can tell you the -- the findings that --

25   that passed or were overturned, because it is by a

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 56

1    majority vote.  But I don't recall if they were

2    all unanimous or not.

3          Q    Okay.  So sitting here today, as we go

4    through them one by one, you will not -- well, I

5    will ask you as we go through whether you have a

6    specific recollection.

7          A    Okay.

8          Q    Now, just another thing, too, about the

9    TRB report.  There are parts of it in red and then

10   parts of it in blue.

11              Why were different colors used?

12         A    So the red indicates the -- the negative

13   conclusions, the blue were the positive

14   conclusions.

15         Q    Okay.  And let's see here.  Turning to

16   page three of the report, which is 4828, 29

17   general conclusions from CIRT were reviewed by

18   TRB; correct?

19         A    Correct.

20         Q    And of those 29, 22 were validated.

21              That means that TRB agreed with CIRT and

22   made no changes; correct?

23         A    Correct.

24         Q    Five were modified, and then two were

25   overturned; correct?



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 57

1        A      Correct.

2        Q      Would you say that overwhelmingly, TRB

3    agreed with the findings and conclusions of the

4    CIRT report?

5        A      Yes.

6        Q      On page two of the report, 4827, I found

7    something unusual here.  If you look, the -- one,

8    two -- third paragraph down, the last sentence, it

9    refers -- it refers to the underlying homicide as

10   being a, quote, gang-related shooting that

11   occurred in December of 2021, end quote.

12            That homicide has never been solved;

13   correct?

14       A      Well, there's the -- it references a

15   homicide and then it references a gang shooting.

16   I believe that homicide has recently been solved.

17   I'm not sure about the gang shooting that -- are

18   we talking about at the time of the board or to

19   this day right now?

20       Q      Well, let's -- let's talk about right

21   now.  So I see here -- you know, thank you for

22   clarifying a little bit, because I may have

23   misunderstood this section.  But let's go back,

24   and we'll talk about the underlying homicide.

25            And that homicide occurred at the Sam's

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 58

1    Town Hotel and casino; correct?

2        A    I believe it was across the street, if

3    memory serves me right.  But in that -- in that

4    area, yes.

5        Q    You believe that homicide was recently

6    solved?

7        A    I believe so.

8        Q    Has there been a conviction?

9        A    I don't know.

10        Q    Has there been an arrest?

11        A    I know an arrest warrant was issued, and

12    I thought that an individual was picked up, but

13    I -- I couldn't tell you for certain.

14        Q    When do you believe that arrest warrant

15    was issued?

16        A    Recently, but I couldn't tell you if

17    that was a month or three months.

18        Q    Was the person arrested any of the

19    suspects who were being investigated when the

20    search warrant that resulted in this

21    officer-involved shooting occurred?

22        A    I'm not sure.

23        Q    Okay.  Do you know if it was Wattsel

24    Rembert?

25        A    I do not.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 59

1      Q      Do you know if it was Corvell Fisher?

2      A      I do not.

3      Q      Do you know if it was Arial Soto?

4      A      I do not.

5      Q      And is it your testimony that you just

6    do not know one way or the other, or you're saying

7    those -- those names, it was not those names?

8      A      It could be those names.  I do not know

9    one way or the other.

10     Q      And so you're saying the gang-related

11   shooting is a shooting separate from the homicide?

12     A      My recollection is, yes, it was a

13   separate thing from the homicide -- or a separate

14   incident.

15     Q      For the gang-related shooting, to your

16   knowledge, has anyone been arrested or convicted?

17     A      I'm not aware of either way.

18     Q      I would like to go through the TRB

19   report and address certain conclusions and then

20   how they were validated, modified, or overturned

21   by TRB.

22     A      Okay.  Am I able to take a quick

23   bathroom break?

24            MR. BREEDEN:  Oh, yeah.  Let's --

25   we've been going an hour and 15 minutes or so.

Page 60

 1    Let's take a 15-minute break.  Perfect.

 2              THE VIDEOGRAPHER:  Going off the

 3    record at 10:15 a.m.

 4              (Whereupon, a recess was taken.)

 5              THE VIDEOGRAPHER:  We're back on the

 6    record.  The time is 10:26 a.m.

 7    BY MR. BREEDEN:

 8        Q    Okay.  Deputy Chief Rader, we took a

 9    short break.  We're back on the record now, and

10    we're getting ready to look over the TRB

11    memorandum or report.

12              I just want to go back, though.  You

13    know, this memorandum is sent to the sheriff, who

14    at that time was Kevin McMahill.

15              And does the sheriff formally respond to

16    this in any way?

17        A    The -- I don't know if the sheriff

18    formally responds.  The sheriff does the -- he

19    gets the report, and then we put out our key

20    findings -- for transparency, that's another one

21    of your exhibits, for reference -- on the things

22    that we've identified and could have done better.

23    I know that part comes out.  But I don't -- I

24    don't understand -- or I'm not aware of a formal

25    response, I guess.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 61

1      Q    Okay.  So, in other words, there's
2  nothing Sheriff McMahill goes through and says
3  agree, disagree?  There's nothing like that?
4      A    Well, he's the sheriff, so if he wanted
5  to do something, he could.  I'm just not aware of
6  what happens when that memo does get to him.
7      Q    Okay.  Also here on Exhibit 2, the front
8  page to the right of Sheriff McMahill's name,
9  there's some handwriting there, and it looks like
10  maybe K3448M, possibly.
11          Do you know what that indicates?
12      A    So that -- for memos, that's -- when
13  somebody gets the memo, that's their sign-off on
14  that memo.  So there is no signature line for him,
15  because it was done up through Assistant Sheriff,
16  at the time, Walsh as the chair of the board.
17          And then that would be the sheriff
18  putting his initial and P number, which is his
19  personnel number, that -- that he has that memo.
20      Q    Okay.  So it's at least verified that
21  Sheriff McMahill saw this?
22      A    Yes.
23      Q    Okay.  Let's talk about -- I want to
24  start by talking about the two conclusions of CIRT
25  which TRB overturned.  So the first one, as I went

Page 62

1    through this report, was Conclusion 5, which

2    begins on page six of the report and -- but most

3    of it is on page seven.  It's very brief -- very

4    brief.

5              So in the TRB report, there's a little

6    strike-through of the conclusion, and that's to

7    indicate that it was overturned or -- or modified

8    by TRB; correct?

9        A    Correct.

10       Q    And so the CIRT conclusion was that

11   homicide's investigation into the underlying

12   murder up to the officer-involved shooting was

13   conducted appropriately and within Metro's

14   standards.  And that was overturned by TRB.

15             Why?

16       A    So on this particular issue, we had a

17   policy for the case management and utilizing the

18   case management system, which is P1, that we were

19   under the impression all of our officers were

20   utilizing that.

21             Well, homicide section was in

22   consultation with the district attorney's office,

23   and their relationship would utilize the P1 system

24   once the case was -- was finished, but while

25   working the case, would do a running OR and then a

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 63

1    very comprehensive final OR.

2              And the DA's liked that for court,

3    because it was -- it allowed for more thorough

4    documentation and information for the homicide

5    report.

6              So that was one of those things where

7    they were doing their own thing that wasn't within

8    policy, but it was at the request of the deputy

9    district attorney's office and in -- with approval

10   of the leadership in homicide.

11        Q    And was failure of homicide to use the

12   P1 system the only reason why that conclusion was

13   overturned?

14        A    To my knowledge, yes.

15        Q    Now, I can probably go through this

16   homicide investigation and pick out a dozen or

17   more criticisms that I have of it.  But, for

18   example, one criticism would be that there seems

19   to have been a failure of intelligence, meaning a

20   failure to know who was actually inside the

21   apartment at the time the warrant was served.

22             But do you consider that to be a

23   homicide issue or a SWAT issue?

24        A    Well, that's something where the two can

25   kind of cross.  And that was one of the things

Page 64

1    that was also discussed on -- on the search

2    warrants for the SWAT service, where the entire

3    chain of the homicide section reviews that, as

4    well as the entire chain of the homicide section

5    reviews that before the SWAT team signs off or

6    goes and executes that search warrant.

7            The homicide investigation is really

8    focused solely on the -- really the who done it,

9    to put it in simple terms, of that investigation.

10   The apprehension phase is -- in this component was

11   going to be completed by the SWAT section.

12           But SWAT also doesn't have the -- the

13   manpower or some of the equipment to do lengthy

14   surveillances, so it couldn't just be put on one

15   or the other.  Some of that responsibility would

16   be on -- a cross section of both.

17       Q    Okay.  So what you're really saying is,

18   hey, some of these issues that Metro identified,

19   they're kind of mixed among the departments.  But

20   the -- the reason why we overturned this

21   particular finding, number five -- or Conclusion

22   Number 5 was because homicide was not using the P1

23   system as they should have?

24       A    I believe that's why that one was

25   overturned.  I -- I remember that being a



Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 65

1    discussion point on the case management component

2    of that.

3        Q    Do you remember whether the decision to

4    overturn Conclusion Number 5 was unanimous?

5        A    I do not.

6        Q    The next one that was overturned is

7    Issue Number 12, which begins on page 14,

8    LVMPD4839.  Now, this conclusion refers to the

9    fact that as officers approached the front door of

10   Apartment 1125 to serve the search warrant, they

11   encountered a reinforced brass wrap on the door.

12   And that creates problems, because their plan is

13   to use a battering device on the door, and the

14   reinforced brass wrap is going to impair that.

15   And this was investigated by CIRT to determine

16   whether a tactical should have been called.

17            And CIRT ultimately concluded that

18   whether that tactical should have been called at

19   that time was a judgment call to be made by SWAT.

20   And CIRT determined that there was a lack of

21   clarity in the lesson plan as to when a tactical

22   call should be utilized.  That conclusion was

23   overturned by TRB.

24            Why was that done?

25       A    So one of the things that we can never

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 66

1    do is really have a policy that covers everything.

2    There has to be -- there really has to be room in

3    there, and what we truly operate off of all of our

4    tactics is a reasonableness standard for officers.

5              And if you say there's a brass wrap on

6    the door, you can't -- or what we didn't want to

7    do is limit the options available to that team,

8    because there still might be a reason to not go

9    tactical and try to breach that door.

10             So the discussion I remember on that

11   point was that while it's easy for -- sitting

12   behind a desk for months after the incident to try

13   to make that determination, when you have a team

14   of officers moving up to a dynamic situation,

15   something that could be a -- a deadly force

16   situation and there's all of the elements out

17   there -- I believe there was a gas station,

18   occupied apartments surrounding this -- you can't

19   overpolicize the ability for that team to make

20   that judgment call.  And the -- to my

21   recollection, that's why that one was overturned.

22        Q    So there was sort of two elements there.

23   One is the issue of whether a tactical should have

24   been called at all.

25             And did TRB believe that a tactical



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 67

1    should have been called at that point when they

2    encountered the brass wrap?

3        A    The discussion I remember having is

4    if -- particularly with this complex, one of the

5    issues in the deliberation was the surround and

6    call out or going up for the -- the controlled

7    entry, is that there was a lot of exposure to the

8    team members just because of the configuration of

9    the apartment.  It butted up against -- there was

10   kind of a weird angle with the wall, so you

11   couldn't really get a BearCat or any of the armor

12   in there.

13            And that was, again, one of those things

14   where you have to allow the boots on the ground,

15   the people that have eyes on that section to be

16   able to make that call, and you can't overpolicize

17   that for fear of inaction when action needs to

18   happen, which could result in officers or civilian

19   members getting killed.

20       Q    Okay.  Well, I understand -- you know,

21   I'm going to talk about the policy issue here in a

22   second.

23            But on the -- sort of the threshold

24   issue, does TRB think a tactical should have been

25   called when the brass wrap was encountered?  What

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 68

1    was the conclusion on that issue?

2          A    That, no, the brass wrap in itself would

3    not make you call a tactical or -- or tell you to

4    press forward.  It would be a judgment call.

5          Q    Now, you would agree that Metro should

6    have policies that are clear to officers; correct?

7          A    I believe -- and in my 27 years of

8    experience, you can give pillars to guide

9    behind -- or to guide you by, and you can't

10   possibly predict every potential scenario, because

11   policing would be very easy if we could.

12              And the officers have to get the

13   training the best way that we can train them, and

14   they have to make those connections by themselves.

15   Because I don't know if this SWAT officer had

16   encountered brass wraps before and there were no

17   issues.  There was a myriad of things that could

18   have played into the decision for them to not call

19   tactical.

20              So, yes, it is very important to have

21   policies, but we'll never be able to policize

22   everything just because we're dealing with the

23   unknown and human nature.  That also highlights

24   the importance of having the Critical Incident

25   Review Team and the Tactical Review Board so we

Page 69

1    can learn about these things and try to have --

2    identify if -- have we been lucky on other

3    incidents, or have we been good and are there

4    better ways to do it?

5            So I agree with your statement that it

6    is important to have clear policies, but I also do

7    not want to overgeneralize that you could have

8    policies for every single thing.

9        Q    So Metro agrees, generally speaking,

10    that the policies -- you know, if you have a

11    choice between multiple ways of wording a policy,

12    the policy that is the clearest for the officers

13    is generally the best choice.

14            But Metro's position on this particular

15    issue was it was just too difficult to draft a new

16    policy that would encompass all issues?

17        A    Not -- I'm not -- I'm not sure what --

18    what you mean by that.

19            We give some latitude to the officers

20    having to make split-second decisions in the

21    moment.  And when you have a team of operators or

22    SWAT folks or officers going up to an unknown

23    threat area and you have to make that call,

24    there's so many different things that could affect

25    it.



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 70

 1          And, you know, you could have a child
 2    playing outside which would change it.  You could
 3    hear something inside that would change it.
 4          So we thought -- my recollection is that
 5    we were not going to put in there, "If this
 6    happens, you'll do this; if this happens, you'll
 7    do that."  It will just be handled in SWAT
 8    training, and they would look at this as a case
 9    review and -- and have those discussions when
10    training.
11       Q    Did TRB, on behalf of Metro, actually
12    consider any specific amended language for that
13    policy?
14       A    Not that I recall.
15       Q    All right.  When Metro, through the TRB,
16    investigated this officer-involved shooting, it
17    found there had been multiple failures of policy
18    and training; correct?
19       A    There were some, yes.
20       Q    I would like to talk about Conclusion
21    Number 2, which begins on page three, LVMPD4828.
22       A    And you said 2?  Conclusion 2?
23       Q    Yes, which begins on page three.
24       A    Okay.
25       Q    Now, this is the conclusion that speaks

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 71

1    about homicide's failure to use the P1 notes,

2    which stands for Premier 1; correct?

3         A    Correct.

4         Q    And that was validated by Metro through

5    the TRB board; correct?

6         A    Correct.

7         Q    Did Metro believe that that made any

8    difference ultimately into how this search warrant

9    was planned or executed?

10        A    No.  This was one of those things that

11   came up with the review.  And it was a policy

12   failure, but I don't remember us saying it had a

13   direct correlation to the officer-involved

14   shooting.

15        Q    And so if homicide isn't using the P1

16   case notes and SWAT, when they're reviewing the

17   IAP or planning the SWAT operation, wants to

18   review the P1 case notes, there simply aren't any

19   to review; correct?

20        A    Well, so the case notes are specific

21   just for that section, so SWAT would not have

22   access to review those case notes.  The pertinent

23   information would be put in the SWAT IAP, and then

24   the search warrant application and affidavit.

25             So that, I don't believe, would have any



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                     Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 72

1    bearing one way or the other, because that's not

2    something that existed then or exists now, where a

3    tactical unit would go review the investigative

4    case notes in the P1 system.

5        Q    So based on Metro's policies, which

6    continue to this day, SWAT, if they wanted to look

7    more in-depth into the underlying investigation --

8    which in this was a homicide -- they would be

9    unable to.  They would only have the information

10   that homicide put on the IAP?

11       A    Yeah, the information in the homicide

12   IAP and the search warrant.  And that's why

13   there's a dual approval process now, where the

14   homicide chain of command up to the captain signs

15   off on that, as well the SWAT captain.  And then

16   if there's questions or -- or concerns, then those

17   sections talk to each other.

18            And if SWAT did have a question about

19   something, they could discuss that.  But the

20   tactical section would not have access to the case

21   notes.

22       Q    Metro, through TRB, did conclude that

23   this had been a failure of tactics, training, and

24   policy; correct?

25       A    Yes.  This was a -- a policy failure,



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 74 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 73

1    because policy stated all detective investigative

2    units would be utilizing P1, and homicide was not.

3        Q    And do you recall whether this was a

4    unanimous conclusion by TRB?

5        A    I do not recall.

6        Q    And what, if any, response by the

7    sheriff or anyone else at Metro occurred as a

8    result of this finding?

9        A    So further discussions were had with the

10   district attorney's office on the need to have the

11   homicide case files done differently than, let's

12   say, a -- a car burglary, just because of the

13   complexities of that case and all of the forensics

14   and multiple interviews that would have to happen.

15   And they elected to policize but keep the process

16   that they were doing.

17            So update it so they were not out of

18   policy and homicide can still be in compliance

19   with what the prosecuting district attorney would

20   want for their -- for their attorneys going

21   forward on that case and in a way that they can

22   still accomplish the same things outside of P1

23   with their rolling officer's reports on all of the

24   investigative steps.

25       Q    So what happened was Metro looked at



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 74

1    this and they said, well, let's just change our

2    policy for homicide so they don't have to use P1?

3         A    Well, no, it was let's see if there's a

4    reason for it.  And that's why we discussed with

5    the district attorney's office on why there is a

6    need and could that still have been facilitated by

7    going through P1.  Which the joint consensus was,

8    no, that actually was a better way of doing things

9    and that's why they were doing it that way.

10        Q    Moving on to Conclusion Number 4, that

11   was validated by Metro through the TRB; correct?

12        A    Correct.

13        Q    And I'm paraphrasing, and if you

14   disagree with this, tell me.  But basically this

15   conclusion was that even though the search warrant

16   that resulted in this officer-involved shooting

17   was approved by a judge, the search warrant was

18   not to Metro's internal policies and standards,

19   because the description of what was to be sought

20   in the search warrant was too vague in some

21   instances; correct?

22        A    Correct.

23        Q    Okay.  For example, clothing was sought,

24   but that wasn't limited to, you know, clothing

25   seen by the suspects or worn by the suspects or

Page 75

1    known to be in possession of the suspects.  And

2    then cellular phones were sought, but virtually

3    everybody has a cellular phone, and there was no

4    cellular phone specifically used.  Like, a

5    cellular phone wasn't the murder weapon in the

6    underlying homicide.

7              And these were failures of policies and

8    procedures in how the search warrants were filled

9    out; correct?

10        A    Correct.

11        Q    All right.  And so as far as Metro's

12   internal policies and procedures are concerned,

13   the search warrant that led to Mr. Williams'

14   shooting never should have even been submitted to

15   a judge for those reasons?

16              MR. ANDERSON:  Objection.  Form.

17              Go ahead.

18              THE WITNESS:  No.  What we're saying,

19   almost like the -- we just talked about with the

20   homicide P1, the homicide P1 mistakes that

21   occurred had no bearing on the end result of the

22   officer-involved shooting.  This was another one

23   of those things where, how can we get better?

24              The warrant was still legal and

25   lawful, having been signed by a judge.  But we

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 76

1    identified that, for best practices, we needed to
2    be adhering to the policy of specifically listing
3    those items to be sought and seized.  So the --
4    the department didn't say it was a bad search
5    warrant, it should have never been served.  It
6    was, it could have been written with more
7    specifics on the items sought to be seized.
8    BY MR. BREEDEN:
9        Q    Well, isn't Metro just saying, look,
10   this warrant was not properly filled out, but a
11   judge didn't catch that?
12                MR. ANDERSON:  Objection.  Form.
13                THE WITNESS:  So what I will say is we
14   hold ourselves to a higher standard in most times
15   than the -- the legal standard that the law
16   allows.  And that's because policies can change
17   quicker than laws can change, and we can control
18   our policies, where we don't obviously create the
19   law.
20                So when we are able to come up with
21   best practices on how to do things -- and this is
22   just one of those areas that we identified where
23   the better practice would have been to be more
24   specific than what he listed, and that's why the
25   board upheld that finding.



Page  77

1    BY MR. BREEDEN:

2         Q    Was that a unanimous finding?

3         A    I do not recall.

4         Q    Do you recall what the response from the

5    sheriff or anyone else at Metro was to this

6    conclusion?

7         A    I do remember we pushed out training for

8    all of the department.  And in the search warrant

9    class and the refresher classes, it is a point of

10   emphasis.

11        Q    I would like to talk next about

12   Conclusion Number 6.  This begins on page seven,

13   LVMPD4832.

14             Were there numerous problems that were

15   found with the IAP and how it was completed?

16        A    Yes.

17        Q    And just for the record, IAP, what does

18   that stand for?

19        A    An IAP is an incident action plan.

20        Q    And an IAP is required to be filled out

21   by SWAT for every SWAT search warrant execution?

22        A    So the incident action plan is filled

23   out by the requesting bureau, and then there's a

24   portion that SWAT will then fill out as well.  So

25   it's done in conjunction, but it originates with,

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 78

1    in this instance, the homicide section.

2        Q    Do you agree with me that at least the

3    portion of the IAP that discusses whether a CET or

4    a SACO should be used, that that should be in

5    SWAT's judgment?

6        A    Yes.

7        Q    Homicide should not be dictating to SWAT

8    whether a CET or a SACO is used; correct?

9        A    Agreed.  I would agree with that.

10       Q    So this conclusion was validated by

11   Metro; correct?

12       A    Correct.

13            And then if -- if I may, so the -- the

14   reason SWAT gets the request and then the captain

15   has to approve it is for that very fact that you

16   mentioned, so a -- I guess you could call it

17   competing interests.

18            A narcotics detective might want a SWAT

19   team to go in there very quickly to recover

20   narcotics before they could be flushed or

21   discarded, but there could be an undue risk to the

22   SWAT team in that instance.  So while the

23   investigating -- or originating entity, in this

24   case being homicide, might want a certain tactic

25   to be used, it's the SWAT team that's going to

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 80 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 79

1    make that determination on how they're going to

2    proceed with that tactic.

3        Q    And ultimately Metro determined, through

4    the TRB, that there had been a policy and training

5    failure regarding use of the IAPs and how they

6    were completed; correct?

7        A    Correct.

8        Q    And so why don't you go back and, just

9    in your own words, summarize for me the ways in

10   which the IAP that led to this -- how this search

11   warrant was executed were policy and training

12   failures.

13       A    So there was a standardized incident

14   action plan that was used, an LVMPD form, and the

15   SWAT captain wanted some additional things in the

16   IAP.  So he had pushed out an updated form to some

17   of the investigative sections that used them a lot

18   to start using.

19            When the initial form was sent over,

20   the -- the wrong form -- or the older form was

21   used; however, that was still the official LVMPD

22   form.  You have the SWAT captain that wanted some

23   additional information and wanted the additional

24   form that was used.

25            This was also compounded by signatures



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 81 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 80

1    needed at the captain level with some COVID

2    exposures, where people were not able to

3    physically be at work because of -- because of

4    contracting COVID.

5            So the IAP got sent to the SWAT

6    Captain Cole and kicked back on three separate

7    occasions where he wanted the additional

8    information.  The initial signatures were

9    obtained, but there was -- I might have the page

10   numbers wrong, but if it was initially a 14-page

11   form, that turned into a 17-page form.  You know,

12   there could be two or three additional forms that

13   needed to be filled out where they were then

14   inserted and given back to Captain Cole.

15           So it still had signatures, but it had

16   the additional information, which led to some

17   misaligned page numbers on there.  And that's why

18   there was confusion and a policy failure on there.

19           And what should have happened is that

20   form was approved and replaced the old department

21   form so everybody would only be using that one

22   instead of a -- kind of a blended approach that

23   happened in this instance.

24       Q    The IAP for this search warrant called

25   for a CET entry, didn't it?



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 81

1        A    My recollection is that that was

2   requested and that was what the SWAT team, after

3   recon, elected to do.

4        Q    It was requested by homicide and

5   approved by SWAT; correct?

6        A    If I remember correctly, yes.

7        Q    And that IAP was rejected three

8   different times before a fourth IAP was approved;

9   correct?

10        A    Correct.

11        Q    One of the issues with the ultimate

12   IAP -- or I should say the different versions of

13   the IAP is that they differed in whether there was

14   an exigent need to serve this warrant; correct?

15        A    Correct.

16        Q    Do you agree with me that whether the

17   warrant should be served in an exigent manner

18   would affect whether a CET or a SACO should be

19   selected?

20        A    Can you say that one more time?

21        Q    Yes.

22             Whether this is exigent service, would

23   that play any role in the determination of whether

24   CET or SACO techniques should be used?

25        A    Yes, that would be a factor.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 82

```
 1      Q    And in every iteration of the IAP except
 2  for the last one, the exigent box was checked no;
 3  correct?
 4      A    Correct.
 5      Q    But then in the final one, somebody
 6  said, "Well, let's check that box yes," and then
 7  they gave a little generic description that says
 8  there's a threat to the community by having these
 9  individuals remain out of custody.
10           Do you believe that was to Metro's
11  policies, standards, and training, the way the
12  exigency box was checked?
13      A    I don't dispute that they believed there
14  was a threat to the community, but I -- I do agree
15  that it wasn't to our standards by utilizing the
16  two different forms and not having another
17  signature, because a captain was out with COVID.
18      Q    Well, just the generic description here
19  that there's a threat to the community by having
20  these individuals remain out of custody, I mean,
21  that could be said for almost any sort of crime or
22  search warrant; correct?
23           MR. ANDERSON:  Objection.  Form.
24           THE WITNESS:  So it may.  But one of
25  the other considerations for the SWAT team is, how
```

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 84 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 83

1    can they safely or as safe as possible serve a

2    search warrant with the environmental factors that

3    are around them?  And that also was one of the

4    things that played into the SWAT team ultimately

5    going with the CET for that service, some of the

6    environmental factors that were there and

7    outlined.

8    BY MR. BREEDEN:

9         Q    It describes as a reason for exigency

10   that the individuals are remaining out of custody.

11   But there wasn't even an arrest warrant here, was

12   there?

13        A    From my -- from my recollection, there

14   was not an arrest warrant.  However, there was PC

15   based off of a family member identifying a

16   suspect.  I also remember there being discussions

17   for the gang shooting that North Las Vegas Police

18   Department had PC to make an arrest as well, but

19   I -- I do not recall that an arrest warrant was

20   active.

21        Q    Okay.  And so the reason for the

22   exigency that was given is that these people need

23   to be taken into custody, but there was no arrest

24   warrant to take them into custody, was there?

25        A    Not that I'm aware of.  But somebody can



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 84

1   still be a danger to the public and can still be

2   arrested on probable cause without an arrest

3   warrant, so I -- I don't think that's universally

4   true.

5       Q    What is Metro's understanding then as to

6   whether -- like, let's say one of the suspects was

7   found at the apartment.

8           Could they have been taken into custody?

9       A    Depending on who the individual was,

10  yes.

11      Q    So you believe that you can just arrest

12  anybody on the street without an arrest warrant as

13  long as somebody at Metro says, well, there was

14  probable cause?

15      A    Of course not.  If the -- the burden to

16  arrest somebody would be probable cause, and

17  there's different ways of doing that.  Probable

18  cause, if fresh, an officer has reason to believe

19  there are takable facts, they would be able to

20  effect that arrest.  Another way of doing that is

21  with an arrest warrant.

22          So it's -- we don't arrest people just

23  for arrest warrants.  We can make an arrest on

24  probable cause as well.

25      Q    Well, if you -- I mean, is there



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 85

1   unfettered discretion, in Metro's opinion, to

2   arrest on probable cause?  Because if that was the

3   standard, why would you ever bother to seek an

4   arrest warrant?  What's the difference between,

5   you know, the line at which Metro thinks an arrest

6   warrant is needed?

7        A    Well, if I'm looking for an individual

8   and I have a search warrant and believe that

9   individual can be inside, and I encounter that

10  individual and have probable cause to make an

11  arrest, I would be able to make that arrest.

12             If I'm looking for an individual or

13  don't know where they're at, another avenue is to

14  obtain an arrest warrant so any officer that

15  encounters that individual would be able to make

16  that arrest.

17       Q    Did Metro conclude that the failure to

18  get an arrest warrant for this IAP was a failure

19  of policies, standards, or training?

20       A    I don't believe so.

21       Q    Was -- were the officers here, were they

22  using a search warrant as a substitute for an

23  arrest warrant?

24       A    I don't believe so.

25       Q    Are you aware that there's some



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 86

1    testimony that SWAT officers were told if they

2    encountered the suspects, they were to arrest

3    them?

4         A    I am not aware if that happened or not.

5         Q    Okay.  If that did occur, would that be

6    against Metro's policies, standards, and training?

7         A    That if SWAT saw an individual, to

8    arrest them?

9         Q    If they were told in the course of

10   executing the search warrant that if they

11   encountered the suspects, they were to arrest

12   them.

13        A    Well, a search warrant -- I think

14   we're -- we're maybe confusing some verbiage here.

15   The search warrant signed by a judge gives us

16   authorization to go into a place and seize that

17   property, that structure, and the people present

18   to make it safe to do so.  SWAT officers don't

19   typically make arrests.

20             They do the tactical clearing of the

21   structure, and then once it is deemed safe, they

22   turn that over to the investigative or originating

23   unit.

24             So could a SWAT officer make an arrest?

25   They could, because they're a commissioned police

LEXITAS™

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 87

1   officer.  But it would be the -- normally it would

2   be the detective or the originating entity that

3   would come over, take over custody of the house

4   from SWAT.  And they would be making any arrests

5   or doing any interviews or continuing their

6   investigation.

7        Q    For the fourth IAP, which is the one

8   that was ultimately approved, there had been

9   signature pages from prior IAPs that were reused

10  even though the IAP had changed; correct?

11       A    Correct.

12       Q    And that's a failure of policies,

13  standards, and training?

14       A    Yes.

15       Q    Also, one of the things that occurred

16  was that the anticipated team leader,

17  Sergeant Findley, he happened to be out of town --

18  I think he was on a hunting trip with his son --

19  when the fourth IAP was drafted.

20            Were you aware of that?

21       A    I'm just aware he was out on vacation.

22  I don't know any of the particulars, but I am

23  aware he was out -- or not working here in town

24  when that did occur.

25       Q    And for that reason, Sergeant Backman

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 89 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 88

1    filled in in his place for that IAP; correct?

2        A    Correct.

3        Q    Is that against policies, standards, and

4    training for Metro?

5            MR. ANDERSON:  What part?

6            MR. BREEDEN:  The part specifically

7    with Sergeant Backman assisting in the IAP.

8            MR. ANDERSON:  Go ahead and answer.

9            THE WITNESS:  No.  And, you know,

10   policing is a 24/7/365 thing that happens.  So we

11   have redundancies and -- and sister squads and

12   other sergeants for a reason, so when days off do

13   occur or if somebody is out on vacation, they

14   would be able to still come in and be the sergeant

15   for that, even if that's not their regular squad

16   that they're overseeing.  There's still a sergeant

17   that's in that section.

18   BY MR. BREEDEN:

19       Q    So -- and we'll talk about this here in

20   a few minutes.

21           Metro did conclude that there had been a

22   failure of training in that Sergeant Backman had

23   not completed the 120-hour SWAT basic training

24   course; correct?

25       A    Correct.



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 90 of 203
30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                  Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 89

1       Q    But Metro did not conclude that it was

2   unacceptable for a SWAT sergeant, who hadn't

3   completed basic training, to assist with

4   completion of the IAP?

5       A    No, not that I'm aware of.

6       Q    So Metro believes that a member of SWAT

7   who has not been completely trained should be

8   assisting in the planning of the operation?

9   That's Metro's position?

10      A    Well, Metro's position was they

11  identified a gap.  And without going to the

12  specific finding, Sergeant Backman, when he went

13  up to the SWAT section, they were only doing the

14  SWAT school one time a year.  And there was

15  additional training that was still given to him,

16  and part of that training was shadowing other

17  supervisors and seeing how that process plays out.

18           So while he did not have the SWAT school

19  with a -- that all of the operators would have

20  had -- that's something that's been rectified --

21  there was nothing prohibiting him from being able

22  to step out and help out another sergeant with the

23  training that he did have up to that point.

24      Q    What did Sheriff McMahill or anyone else

25  at Metro do regarding this conclusion?



Page 90

```
 1        A    I know that as a result of this
 2   conclusion, the SWAT school is offered multiple
 3   times a year.  And when operators and sergeants
 4   are on the list to come up, even if they're not in
 5   the section, they can go through that school.
 6             And then anything more specific than
 7   that, you might want to ask your SWAT SME.  But I
 8   do know it was addressed by the frequency of the
 9   school being offered.  I believe they even
10   extended the time frame of the school, so it even
11   encompasses more hours.  And also getting folks --
12   or selected members up to that school even before
13   they transitioned or transferred to that position.
14        Q    Surely as a peace officer who has been
15   in charge of training officers before, you agree
16   that training has value to officers; right?
17        A    I do.
18        Q    And we train officers because we want
19   them to perform their job in a safe manner;
20   correct?
21        A    Correct.
22        Q    And we train them because they want --
23   we want officers to perform their job in a manner
24   that complies with state and federal law; correct?
25        A    Yes.
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 91

1      Q    All of that is part of training; right?

2      A    It is.

3      Q    And Sergeant Backman didn't have that

4   training when he was on this SWAT operation, did

5   he?

6      A    He did not have the SWAT school, which

7   encompasses a lot of different things.  However,

8   he did have some other institutional training and

9   on-the-job training from his time there.  But

10  he -- all I know that -- today, what occurred

11  there is he did not have the 100 and however many

12  hours of SWAT school when the shooting did occur.

13     Q    And we'll talk about Conclusions 7 and 8

14  next.  They're kind of related, but I guess I'll

15  break it down.

16          Conclusion 7 was that CIRT recognized

17  there were some problems in having a new

18  sergeant -- that would Sergeant Backman --

19  participate in live missions.  But ultimately they

20  concluded that Sergeant Backman's actions had been

21  within LVMPD's tactics, training, and policy, at

22  least what he did in the field.

23          Is that a fair summary?

24     A    Yes.

25     Q    Okay.  So that was validated by Metro

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 92

1    through the TRB; correct?

2        A    Correct.

3        Q    And specifically when it says "Problems

4    surrounding having a new sergeant in SWAT

5    participate in live missions," what problems are

6    being referred to?

7        A    I don't -- I don't recall.  What I take

8    that as is just having a newer SWAT sergeant come

9    up there, but also the situation could be case

10   specific.  If you had a prior SWAT operator that

11   came up and had already been through all of those

12   trainings, then that learning curve would be less.

13   But I don't remember exactly what it's referring

14   to when this says "problems."

15       Q    Were some of the specific problems that

16   he had a role in the planning and the drafting of

17   the IAP?

18       A    Not that I'm aware of.

19       Q    Were some of the problems that even

20   though he was new and had not completed SWAT

21   training, that he was given a lead role, for

22   example, to do the announcements?

23       A    Not that I'm aware of.

24       Q    And was the validation of that

25   conclusion unanimous?

Page 93

1      A      I do not remember if it was or not.

2      Q      Okay.  So let's talk about number eight.

3   This more specifically discusses the failure of

4   Sergeant Backman to complete basic SWAT school

5   prior to this officer-involved shooting.

6              First of all, Sergeant Backman had only

7   been on SWAT for 29 days when this occurred;

8   correct?

9      A      Correct.

10     Q      He had not completed the 120-hour basic

11  SWAT school; correct?

12     A      Correct.

13     Q      And Metro concluded through the TRB that

14  that was a failure of training for Sergeant

15  Backman; correct?

16     A      Correct.

17     Q      Was that a unanimous finding?

18     A      I do not remember.

19     Q      What did Sheriff McMahill or anyone else

20  at Metro do in response to this finding?

21     A      With this finding, like I previously

22  talked about, the SWAT school is offered multiple

23  times a year now.  And if we can predict or

24  forecast projected openings with people retiring

25  or promoting or moving on, we are able to get



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 94

1  those positions -- or the subjects that are going

2  to fill those positions through that SWAT school

3  before they transfer up to the unit or immediately

4  after transferring.

5      Q    The next one I would like to discuss is

6  Conclusion Number 9, which appears on page nine,

7  LVMPD4834.  This is a rather long one, and we're

8  going to spend some time on this one.  But this

9  concerns SWAT's decision to use a CET tactic

10 during this search warrant; correct?

11     A    Correct.

12     Q    Have you heard CET also referred to as

13 dynamic entry?

14     A    I have.

15     Q    Why does Metro use the term "CET" as

16 opposed to "dynamic entry"?

17     A    From my recollection, CET was a term

18 coined by Lieutenant Melton when he was in SWAT,

19 and that -- that name had just stuck from his time

20 there and what he had implemented.

21     Q    Okay.  And ultimately Metro, through the

22 TRB, concluded that the use of CET for this search

23 warrant was a policy and training failure and not

24 to -- not within standardized tactics at Metro;

25 correct?

Page 95

1      A      Correct.

2      Q      So the issue here is whether a CET or a

3   SACO should have been used.

4             We haven't really explained much on the

5   record what SACO is, S-A-C-O.  But can you explain

6   what that stands for?

7      A      A SACO stands for surround and call out.

8      Q      Is it Metro's position that a surround

9   and call out just simply could not have been used

10  for service of this search warrant?

11     A      Can you say that one more time?

12     Q      Is it Metro's position that a surround

13  and call out just simply could not have been used

14  for service of this search warrant?  I'll say, it

15  would seem to me that that's probably not Metro's

16  conclusion, because it concluded that the use of

17  CET was improper.

18            So the only other alternative would be

19  surround and call out; correct?

20            MR. ANDERSON:  Objection.  Form.

21            THE WITNESS:  So the board looked at

22  the CET, and the SWAT team's decision to do that

23  was still reasonable.  But the benefit we have as

24  an administrative board is we're not just going

25  off of a reasonableness -- objectively reasonable

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 96

1    standard.  We're going off of a best practice

2    standard.

3              And the board determined the best

4    practice standard for that -- in that decision

5    would not have been the CET.

6    BY MR. BREEDEN:

7        Q    It would have been a surround and call

8    out?

9        A    A surround and call out or waiting

10   another day, continued surveillance.  There was a

11   few other things, but yes.

12       Q    Okay.  Now, in coming to this conclusion

13   that a CET should not have been used, Metro in the

14   TRB considered recent changes to SWAT's policies

15   and procedures; correct?

16       A    Correct.

17       Q    So shortly before this officer-involved

18   shooting, official policy was, quote, using a

19   controlled entry tactic for the sole purpose of

20   recovering narcotics or property will never be

21   considered as an acceptable practice, end quote.

22              Do you see that?

23       A    I do.

24       Q    And so would you agree with me, under

25   that policy, since this was a property search

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 98 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 97

1   warrant only, that that policy would clearly bar a

2   controlled entry tactic from being used?

3        A    Can you say that one more time, please?

4        Q    Yeah.

5             So this -- the policy, as it existed in

6   February of 2021, was that CET was simply banned

7   for property-only search warrants; correct?

8        A    Correct.

9        Q    All right.  So under the policy as it

10  existed in February of 2021, SWAT should not have

11  done a CET for this search warrant; correct?

12       A    The board found that the CET -- a

13  surround and call out would have been the better

14  approach to serving the search warrant.

15       Q    Well, under the older policy -- and it

16  did change a little bit.  But under the older

17  policy, there was no discretion.  It just -- CET

18  simply could not be used for property-only search

19  warrant; correct?

20       A    Correct.

21       Q    Okay.  Now, that policy changed in

22  September of 2021, just a few months before

23  Mr. Williams' officer-involved shooting; right?

24       A    Correct.

25       Q    And the new policy that was in effect,



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 98

1    it gives a general rule, but then it still gives

2    the example that using a controlled entry tactic

3    for the purpose of recovering narcotics or

4    property will never be considered as an acceptable

5    practice.  It's slightly different language.  Let

6    me just read it.

7              So the policy in effect at the time was,

8    quote, "A CET will not be used when the primary

9    suspect is in custody and there is no articulable

10   information of a threat inside the residence.

11   I.e., a controlled entry tactic will not be used

12   for the sole purpose of recovering narcotics or

13   property and there is an absent threat of an armed

14   and dangerous subject inside," end quote.

15        Q    Is it Metro's position that even under

16   the new policy, CET was banned for property-only

17   search warrants?

18        A    Absent any articulable threat inside the

19   residence, yes.

20        Q    What was the specific articulable threat

21   for Mr. Williams' case?

22        A    I believe they reference that.  We

23   talked about it before being the -- the danger to

24   the public, if I recall correctly.

25        Q    So I'll let you know, my understanding



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 99

1    of the law is that would be an example of a

2    general nonspecific threat, and that that is not

3    sufficient under the law.  I'm just telling you my

4    understanding.  Mr. Anderson may disagree.

5              But that instead you would have to have

6    a specific articulable threat.  In other words,

7    like somebody looked through a window and they saw

8    Mr. Williams there with -- with a gun drawn ready

9    to fire in advance of this happening.  Nothing

10   like that occurred here; right?  No specific

11   articulable threat?

12             MR. ANDERSON:  I will object to the

13   question as, he is correct, I disagree.  I'll

14   sustain that part.

15   BY MR. BREEDEN:

16       Q    Okay.  So he'll -- he will object to my

17   statement of the law.

18             But did -- do you have anything that I

19   would consider to be a specific articulable

20   threat?

21       A    From what I can remember, without having

22   it written out right in front of me, their

23   justification was the violent nature of the

24   events, the citizen source who was a family member

25   identifying that that subject stayed there, the



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 101 of 203
30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader            Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 100

1   challenges for the officers when trying to do

2   surveillance on -- countersurveillance in a

3   hostile environment, coupled with the gas station

4   located right behind there with a small wall with

5   a lot of community exposure, and it being in a

6   multi-family unit complex.  Those are the things

7   I'm remembering, without being able to read it,

8   that all compounded further reason to need to do

9   the CET, to get in there quickly, overwhelm and

10  dominate that residence to safely take anyone in

11  custody.

12       Q    So the policy changed -- in the year

13  prior to Mr. Williams' death, the policy changed

14  from complete ban on CET for a property-only

15  search warrant to, okay, CET is okay under some

16  limited circumstances for a property damage search

17  warrant -- or a property-only search warrant; is

18  that correct?

19       A    Yes.

20       Q    Okay.  Who made that change?

21       A    I don't remember.  I don't recall at

22  this time.

23       Q    Well, if SWAT policies and procedures

24  are to be changed, who would have been in charge

25  of that in 2021?



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 101

```
 1        A     In 2021, I know the chain of command was
 2   Captain Brian Cole, and Deputy Chief Sasha Larkin
 3   would have been the -- the deputy chief over that.
 4             But without talking to them or having
 5   any -- anything written down, I couldn't tell you
 6   specifically who did it or who approved it or how
 7   it was approved.
 8        Q     Well, at that time, the SWAT lieutenant
 9   over tactical for SWAT was Lieutenant O'Daniel;
10   correct?
11        A     Correct.
12        Q     Would you agree with me that if that
13   policy and procedure is to be changed -- and, you
14   know, according to Metro it was -- that
15   Lieutenant O'Daniel and Captain Cole would have to
16   approve that?
17        A     I would assume that, yes.
18        Q     Okay.  What is the process for -- let's
19   just say hypothetically, Lieutenant O'Daniel wants
20   to change an official SWAT policy.
21             What is the process for doing that?
22        A     Recommendation has to be drafted.  It
23   goes up through the chain of command, and then it
24   goes over to our general counsel section that then
25   reviews all of that.  And then there's an approval
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 102

1    process with executive staff members weighing in

2    and approving that before policy change can occur.

3        Q    Would there be memos regarding the

4    policy change and the reasons why?

5        A    I wasn't a part of changing policy then.

6    I know in my current position, I see those now,

7    that those come through and there are memos.

8        Q    Why did that change occur in September

9    of 2021?

10       A    I couldn't tell you.

11       Q    Do you agree that the change made things

12   less safe for the public?

13            MR. ANDERSON:  Objection.  Form.

14            THE WITNESS:  No, I don't think that

15   the change made it less safe.  In discussing what

16   I talked about a little earlier, we have to give

17   some leeway, and the law even allows for officers

18   to be able to make those discretionary judgment

19   calls when they are there in person seeing,

20   smelling, hearing, observing all of those things

21   that would dictate the tactics that they're going

22   to try to implement.

23   BY MR. BREEDEN:

24       Q    Metro, through the TRB, did conclude

25   that there were simply too many unknown factors in

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 103

1    order to justify a CET for service of this

2    warrant; correct?

3         A    Correct.

4         Q    And some of the unknown factors included

5    whether there were children or elderly people or

6    vulnerable individuals inside the apartment;

7    correct?

8         A    Correct.

9         Q    In fact, when the search warrant was

10   served, there was no information of any kind as to

11   who was actually inside; correct?

12        A    Well, information -- there was

13   information based on who stays there, but we had

14   no -- or I'm not aware of any information for, at

15   that moment in time, who would be inside.

16        Q    Yeah.  There hadn't even been any type

17   of surveillance for 11 days before the search

18   warrant was served; correct?

19        A    Correct.

20        Q    All right.  So Metro agreed that CET

21   should not have been authorized for this

22   particular warrant execution.

23             What, if anything, did Sheriff McMahill

24   or anyone else at Metro do regarding that finding?

25        A    That's probably a question better asked

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 104

1    by the SWAT commander that's coming in.  I am

2    aware of the new leadership there and utilizing

3    the surround and call out a lot more frequently.

4    But that would be a question I think better asked

5    of that expert.

6        Q    Okay.  And I -- and I'll ask that

7    individual.

8             But to your knowledge, did the policy

9    change back to CET being banned for a

10   property-only search warrant?

11       A    I'm not aware.

12       Q    Well, let's talk a little bit about

13   Conclusion Number 11 then, which begins on

14   page 12, LVMPD4837.

15            This is a discussion of CET and how CET

16   relates to knock and no-knock warrants; correct?

17       A    Correct.

18       Q    The warrant in this case was a regular

19   or knock-and-announce warrant; right?

20       A    Correct.

21       Q    Okay.  And does Metro acknowledge that a

22   knock-and-announce is part of the Fourth Amendment

23   to the United States Constitution?

24       A    Yes.

25       Q    And does Metro agree that a violation of



Page 105

1    the Fourth Amendment's knock-and-announce

2    principles is, by legal definition, excessive

3    force?

4                    MR. ANDERSON:  Objection.  Form.

5                    Go ahead.

6                    THE WITNESS:  I would say it could be

7    excessive force.

8    BY MR. BREEDEN:

9        Q    Okay.  Does Metro acknowledge that

10   violation -- or let me rephrase.

11                   Does Metro acknowledge that knock and

12   announce is also required by Nevada state law?

13       A    Yes.

14       Q    What position does Metro take regarding

15   whether knock and announce is part of the Nevada

16   Constitution's search and seizure protections?

17                   MR. ANDERSON:  Objection.  Form.

18   BY MR. BREEDEN:

19       Q    In other words, is knock and announce

20   constitutionally required by the Nevada

21   constitution as well?

22       A    Yes.

23       Q    So I will paraphrase here, and if you

24   disagree, let me know.

25                   But CET reviewed what occurred here, and

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 106

1    they concluded that there was a policy and

2    training failure allowing CET entry for

3    knock-and-announce warrants, because the purpose

4    of CET entry is to surprise and overwhelm people

5    who might be inside the structure to be searched,

6    whereas knock and announce requires alerting the

7    people and giving them time to come to the door

8    and allow admittance to the officers.

9              Do you agree that that -- that's what

10   CET concluded?

11             MR. ANDERSON:  Objection.  Form.

12             THE WITNESS:  Can you actually ask

13   that one more time, please?

14   BY MR. BREEDEN:

15       Q    Yeah.  I'm sorry it has to be so long,

16   because we're using a lot of legal terms.  Right?

17   I'll try to put it more in a nutshell or more

18   brief to you.

19             The conclusion of CET was that if

20   officers have to perform knock and announce, that

21   it would be inconsistent with the constitution to

22   do a CET entry, because CET entry requires

23   surprise and overwhelming response, whereas knock

24   and announce, you know, requires something

25   different.



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                  Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 107

 1        A    We did identify and agree with the

 2    conflicting ideologies of those two different

 3    concepts, yes.

 4        Q    So Metro determined that a CET entry is

 5    constitutionally inconsistent with knock and

 6    announce principles?

 7        A    I'm sorry.  One more time.

 8        Q    Yes.

 9             Metro did conclude that CET entry is

10    inconsistent with constitutional knock and

11    announce principles?

12             MR. ANDERSON:  Objection.  Form.

13             THE WITNESS:  The board recognized the

14    difference with CET being more of a dynamic tactic

15    and the knock and announce being a tactic where

16    you're giving an individual time to know you're

17    there and come answer the door.  And that there

18    was -- in using one tactic over the other, they

19    seemed to contradict each other.

20    BY MR. BREEDEN:

21        Q    Okay.  And even further analyzing how

22    knock and announce was used in this case by the

23    officers -- and I'm not saying I agree with this,

24    but the conclusion was that officers had waited

25    only six seconds for Mr. Williams to come to the

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 109 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 108

1    door, ascertain it was police officers with a

2    warrant, and provide them entry.  And the

3    conclusion was six seconds, given the totality of

4    the circumstances, was not an adequate amount of

5    time.

6             Do you agree with that?  We're looking

7    here at page 14, the second paragraph.

8        A    So the -- there were some disagreements

9    on -- on that time.  It was accepted that -- or

10   believed that it was not a no knock -- it did not

11   constitute a no-knock warrant because the

12   advisements were made and knocking did occur;

13   however, the disagreement was the time allowed to

14   that individual to be able to come answer that

15   door.

16            So that's why the board upheld it as a

17   policy failure based on the SWAT manual having

18   those two different options that -- that

19   contradict each other and cause confusion, and

20   that's why the decision was upheld -- or the

21   finding was upheld.

22       Q    Metro, through TRB, agreed or validated

23   both that the decision to use CET for a knock and

24   announce warrant itself was improper, and then

25   also the fact that only -- they only waited six



30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 109

 1  seconds for Mr. Williams to respond was improper;

 2  correct?

 3        A    Correct.

 4        Q    Okay.  Now, was that a unanimous

 5  validation by the TRB?

 6        A    I do not remember.

 7        Q    What, if anything, did Sheriff McMahill

 8  or other members of Metro do as a result of this

 9  finding?

10        A    That would be a question for your SWAT

11  expert that's coming in.

12        Q    Okay.  To your knowledge, you don't know

13  of anything that was done as a result of that

14  finding?

15        A    I do not know.

16             And when there is a natural pause, can

17  we take one more break?

18             MR. BREEDEN:  Yeah, let's take a break

19  here, and then we can -- we'll go off the record

20  at this time.

21             THE VIDEOGRAPHER:  Going off the

22  record at 11:46 a.m.

23                  (Whereupon, a recess was taken.)

24             THE VIDEOGRAPHER:  We're back on the

25  record.  The time is 12:28 p.m.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 110

1    BY MR. BREEDEN:

2         Q    All right.  Deputy Chief Rader, we took

3    a lunch break.  We're back on the record now, and

4    you'll still under oath.

5              I wanted to ask you a question.  During

6    the -- since we were talking about CET entry and

7    knock and announce, are you aware that during the

8    execution of the search warrant, nobody ever

9    physically knocked on the front door of the

10   apartment?

11        A    Well, I know that there was multiple

12   attempts with the ram.  I mean, when officers

13   knock on doors, sometimes I would use my baton.

14   So I think it's a vernacular of knocking with

15   knuckles or your hand or there were knocks on the

16   door with the ram.  But -- so -- I will agree

17   that, yes, no one walked up and knocked with their

18   hand.

19        Q    The first contact with the door was with

20   the battering ram?

21        A    Yes.

22        Q    What -- what is Metro's policy on where

23   or when officers should attempt to physically

24   knock with their hand on the door as part of a

25   knock and announce?

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 111

1        A     I'm not aware that we indicate using

2    your hand or not or clearly spell that out.  I'm

3    not aware that we do.

4        Q     Does Metro have a policy, practice, or

5    procedure that the knock should actually be

6    attempted?

7        A     Well, for -- for what?  In reference to

8    what?

9        Q     On a knock and announce search warrant.

10       A     I know that it says advisements will be

11   made, but I don't know if it physically says or is

12   written down "use your hand or will knock."  I

13   don't -- I can't answer that today on what it says

14   to physically do.

15       Q     Okay.  You can't answer that.

16             Who would be the better person to ask

17   that question?

18       A     The -- I would ask the SWAT expert that.

19       Q     Okay.  I have a similar question.  You

20   know, during the announcement of the search

21   warrant -- this was at an apartment complex, and

22   the original announcement by Sergeant Backman did

23   not provide the apartment number.

24             What is Metro's policy, when knock and

25   announce is performed in an apartment complex, as

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 112

1    to whether the announcement should include the

2    specific apartment number?

3        A    It should include the address and the

4    apartment number.

5        Q    Okay.  I would like to move on here to

6    Issue Number 15, and this is on page 17 of the TRB

7    memorandum.  That's LVMPD4842.

8            So this indicates that public safety

9    statements were recorded on body-worn cameras, and

10   that is contrary to department policy.

11           Is that a fair statement?

12       A    It is.

13       Q    Okay.  And so let's back up a little

14   bit.

15           First of all, what are public safety

16   statements?

17       A    So a public safety statement is

18   something that was contractually negotiated with

19   the bargaining unions for the police officers and

20   the supervisors.  And it has to do with -- we

21   talked a little bit before about an officer being

22   investigated for a crime has the same rights

23   afforded to them as any other person in that

24   position where they could remain silent.  But

25   there's, in this instance, also a need for public

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 113

1    safety to ensure that there's no outstanding

2    individuals, there's no longer a threat.  Did the

3    suspect get away?  Did your rounds go in a certain

4    direction and somebody could have been impacted?

5            So what we came up with, mutually agreed

6    upon, was the public safety statement.  So after

7    an officer-involved shooting, a supervisor will

8    ask a series of questions to the involved officer

9    that they have to answer.  And it's questions on,

10   "Did you discharge your firearm?  Which direction?

11   Is there anyone in need of medical attention?"

12           So it's -- it's -- not community

13   care-taking, but it's something that the officers

14   have to do to provide us some information on if

15   anybody else could be in danger or at least what

16   we're dealing with, without going into the

17   specifics of anything that would infringe up their

18   constitutional rights of -- of pleading the Fifth.

19      Q    So the public safety statements are

20   required by Metro's contact with the -- contract

21   with the police union?

22      A    Yes.

23      Q    And are these public safety statements

24   considered part of a criminal investigation

25   against the officer?

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 114

1        A     I'm not sure.  And I -- I think the way

2    they were formed was so the officer would have to

3    answer it, but wouldn't also incriminate himself

4    if something else were to happen.  So I -- I don't

5    really know how to answer if that would be part of

6    the -- the criminal investigation or not.  I

7    just -- I don't know.

8        Q     Are they available to the FIT team when

9    they prepare their report?

10       A     Yes, it would be available to the FIT

11   team.  So I would say that it -- actually, I can't

12   even answer that.  I don't -- I don't -- I might

13   be confusing with the CIRT and the FIT.  That

14   would be something I couldn't answer you today.  I

15   don't know definitively one way or the other.

16       Q     But the officers, when asked to give a

17   public safety statement, do not have the right to

18   refuse under the bargaining agreement?

19       A     Right.

20       Q     And the questions that they're asked --

21   because I think I've seen these on the video and

22   they're -- are they read off from, like, a piece

23   of paper?

24       A     Yeah.  The supervisors are all issued

25   cards, and they can pull them out so they can say

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 115

1    them exactly verbatim so they're not infringing on

2    any, you know, officer's right to incriminate, but

3    still getting the necessary information that we

4    need as a department, that the community would

5    expect us to get, while investigating that

6    incident.

7        Q    And -- and you may have answered this

8    already.  But do the officers have the ability to

9    refuse to give the public safety statement?

10       A    No, they do not.

11       Q    Well, if they did refuse, would they be

12   terminated?

13       A    It is in policy, so, yes -- well, it

14   would be subject to discipline, which could be

15   progressive discipline, but I don't know where

16   that falls in on our discipline matrix.  But they

17   would be subjected to disciplinary action for not

18   complying.

19       Q    And since these are required by the --

20   or these were invented as part of the bargaining

21   agreement with the police union, under what

22   circumstances are the public safety statements to

23   be made by officers?

24       A    I'm sorry.  Can you say that again?

25       Q    Yeah.  And I'm sorry if it was

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 116

1    confusing.

2              But, you know, what triggers public

3    safety statements to even be asked of officers?

4    For example, is it only officer-involved

5    shootings?  Is it other incidents?

6        A    It is, it's officer-involved shootings,

7    when an officer intentionally discharges their

8    firearm as a use of force.

9        Q    What is the policy regarding how soon

10   after the officer-involved shooting the officers

11   are supposed to be given the public safety

12   statements?

13       A    I don't know the exact time frame, but

14   it's very quickly.  So the -- obviously scene

15   stabilization is the main priority, life, safety.

16   But when the sergeant gets there and the scene is

17   deemed safe, there's no outstanding immediate

18   threats right there in the area, it's supposed to

19   be relatively quickly that the sergeant gets that

20   statement.

21       Q    So ideally, as soon as the scene is

22   secure, the officer should be asked to give a

23   public safety statement on scene?

24       A    Yes.

25       Q    And in this case, the only issue with

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 117

 1    CIRT and TRB was that Metro found that these were

 2    properly given to the officers, but they should

 3    not have been recorded by body-worn camera?

 4         A    Correct.

 5         Q    How should they be recorded then?

 6         A    The supervisor writes down the response.

 7         Q    Well, why not just record them on

 8    body-worn camera?

 9         A    I wasn't part of that negotiation.  I

10    don't know.  I believe it would have to do with

11    the union's agreeing to having the officers

12    cooperate in providing that information.  And I

13    couldn't tell you how we came upon that, but I

14    just know it was something that was mutually

15    agreed upon by the union.  And our policy is to

16    not record it on body-worn camera.

17         Q    Okay.  Because it just seemed a little

18    unusual to me that the answers are to be recorded,

19    but we don't keep a verbatim video copy of the

20    responses.

21              So are you -- are you aware of the exact

22    reason for that, other than it was a negotiation

23    with the union?

24         A    I don't.  From my -- from my time on, I

25    know that sometimes people can maybe do some

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 118

1    excited utterances.  I really don't know the

2    reason or the thought behind that, because it was

3    negotiated before -- long before I was ever in my

4    current position now.

5        Q    And that conclusion was validated by

6    TRB.

7             Did Sheriff McMahill, or anyone else at

8    Metro, take any action as a result of the

9    recording on body-worn camera of the public safety

10   statement?

11       A    Not that I'm aware of.  I just know that

12   it's -- it continues to be our policy and taught

13   in the supervisor schools.

14       Q    Conclusion Number 18 begins on the next

15   page, coincidentally 18 of the TRB memorandum,

16   Las Vegas -- LVMPD4843.  And this refers to the

17   fact that after the shooting, officer -- and I

18   believe the officer's name is pronounced Eshe,

19   E-S-H-E -- that Officer Eshe manipulated

20   Officer Kubla's firearm.

21             What was that about?  What did

22   Officer Eshe do?

23       A    So Officer Kubla was injured

24   significantly in this incident by gunfire.  And in

25   part of the -- securing the scene, you don't want



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 119

1     to leave any firearms that are around.  So

2     Officer Eshe recovered the firearm and didn't want

3     that firearm to be in battery.  If you're slinging

4     a weapon that -- or you don't have a holster for

5     it, you don't want to have an accidental or

6     negligent discharge.

7              So the officer did what we

8     administratively refer to as make safe, where you

9     would remove the magazine or remove the round that

10    is in the chamber.  We don't want to see that

11    happen on an officer-involved shooting, because

12    that does -- you know, that firearm is a piece of

13    evidence.

14             But at the time, it was reasonable, with

15    the totality of the circumstances going on and

16    having to do a down officer rescue and securing

17    another individual inside the apartment, to have a

18    need to make that firearm safe.  So that's why the

19    board agreed with that conclusion, that while not

20    ideal, it was still reasonable that he did that,

21    not knowing that it was used in an

22    officer-involved shooting.

23        Q    Okay.  And Metro, through TRB, agreed or

24    validated that finding?

25        A    Yes.



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 120

```
 1        Q     And was there any action taken by

 2   Sheriff McMahill or anyone else associated with

 3   Metro regarding the manipulation of the firearm?

 4        A     Not that I'm aware of.

 5        Q     Moving on to Conclusion Number 23, CIRT

 6   had recommended that the new 14-page IAP be

 7   distributed to -- I guess a way to phrase this is

 8   just additional department personnel for their

 9   use.

10              Is that fair?

11        A     Right.

12              You're talking about finding 23?

13        Q     Yes.

14        A     Right.  The recommendation was to really

15   formalize this IAP.  So everybody had it.  They

16   would be using the same form.  It would be pushed

17   out on the Internet where forms can be accessed,

18   as well our online training, which is UMLV,

19   University of Metro Las Vegas.  So every single

20   officer, whether they're senior, tenured, a

21   brand-new one, would know the right form to use.

22        Q     And Metro, through TRB, validated or

23   agreed with that; correct?

24        A     Correct.

25        Q     And really the reason why this was
```

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 121

1   recommended is there were problems with the IAP

2   that were identified with the officer-involved

3   shooting; correct?

4        A    There were.

5        Q    Wrong forms were being used; correct?

6        A    I would say outdated forms and the older

7   form.  And I mentioned it earlier, the newer form

8   had not been distributed department-wide, which

9   caused the confusion.  It was still the same form;

10  however, the newer form had additional pages on

11  there, so not out -- or not up-to-date form.

12       Q    Yeah.  And so if officers are using

13  outdated forms, then, by definition, they haven't

14  been trained properly on the correct form; right?

15       A    Yes, there definitely is -- is an issue

16  there.

17       Q    Okay.  I would like to talk next about

18  Conclusion Number 24.  That's on page 19,

19  LVMPD4844.

20            CIRT had recommended and Metro validated

21  a conclusion that phase one of FTEP for sergeants

22  in SWAT be extended to one month.

23            Now, what does that mean, and what is

24  FTEP?

25       A    So FTEP is field training and evaluation

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 123 of 203
30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 122

1    program.  It's something, when somebody gets a new

2    assignment -- it was really for when officers come

3    out of the academy, there's a field training

4    program.  But it can be utilized in instances like

5    this too, where somebody is new to a section, they

6    have a training and evaluation period.

7         Q    And so what was the old period, if not

8    one month?

9         A    I'm not familiar with it.  That might be

10   another question for the SWAT expert coming in.

11        Q    To your knowledge, was there any FTEP

12   period then for people coming onto SWAT?

13        A    I could not tell you yes or no.  I'm

14   unaware of it either way.

15        Q    Okay.  Are you aware of any actions or

16   changes that were made by Sheriff McMahill or

17   other personnel at LVMPD regarding this

18   conclusion?

19        A    Just that they have formalized the FTEP

20   process now for sergeants going to the unit.

21        Q    But was that to your -- and if you don't

22   know, you don't know.

23             But was that actually implemented?

24        A    It was.  But how it was implemented, I

25   would -- again, I would defer to the SWAT



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 124 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 123

1    commander that I believe will be coming in.

2         Q    Okay.  Moving on, same page, Conclusion

3    Number 25, this concluded -- this conclusion was

4    validated or upheld by Metro through TRB; correct?

5         A    Correct.

6         Q    And this recommendation was that the

7    120-hour basic SWAT school should be available and

8    scheduled within two weeks of a SWAT transfer list

9    becoming certified; correct?

10        A    Correct.

11        Q    What was the old standard?

12        A    The old standard was it was offered one

13   time a year.  And if you transferred after that,

14   you would just get on-the-job stuff until the next

15   SWAT school came about.

16        Q    And so at the time the officer-involved

17   shooting with Mr. Williams occurred, when was the

18   one time of year that it was offered?  Like, July?

19        A    If memory serves me correctly, I thought

20   it was March.  That's sticking out to me.  But

21   without looking at it on a piece of paper, I

22   couldn't be positive.

23        Q    Okay.  And our SWAT person may know more

24   about that?

25        A    I think they should.



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 124

1    Q    Okay.  This recommendation was a direct

2    result of the fact that Sergeant Backman had not

3    completed the 120-hour basic SWAT school, was it

4    not?

5    A    It was.

6    Q    And was this recommendation implemented

7    by Metro?

8    A    I believe it was.  And from what I've

9    heard, they've even added hours.  It's over 120

10   hours now.

11   Q    How many hours is it now?

12   A    I thought the number I heard was 160,

13   but I wouldn't want you to quote me on that.

14   That's another one the SWAT expert would be able

15   to tell you.

16   Q    So the next few we're going to discuss

17   involve situations where the conclusions of CIRT

18   were modified by Metro and the TRB.  So I would

19   like you to look at Conclusion Number 26, which

20   begins on page 19 of the TRB memo, LVMPD4844.

21        And so the recommendation here from CIRT

22   or how it was originally written up was that CIRT

23   recommended that LVMPD recategorize the use of CET

24   to only be utilized when a no-knock search warrant

25   is approved and has judicial preapproval.

Page 125

 1              And really Metro, through the TRB,

 2    agreed with that conclusion.  They just reworded

 3    it a little bit that it should be evaluated and

 4    considered; is that fair?

 5        A    That's fair.

 6        Q    And was that determination by Metro and

 7    the TRB unanimous?

 8        A    I don't remember.

 9        Q    And then was that issue actually

10    evaluated and considered following this

11    recommendation?

12        A    You would have to follow up with the

13    SWAT expert.

14        Q    Do you know if any changes to CET to

15    restrict it to no-knock search warrants only, was

16    that ever implemented?

17        A    I'm not aware if it was or was not.

18        Q    Okay.  A similar issue with Conclusion

19    Number 27.  This was essentially adopted by Metro

20    through the TRB, but, again, modified the language

21    from CIRT to just say that this issue needs to be

22    evaluated as to whether this should occur;

23    correct?

24        A    Correct.

25        Q    In other words, CIRT said it should

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 126

1   occur, and TRB said, well, we should evaluate it

2   further whether it should occur; correct?

3        A    Correct.

4        Q    All right.  And that, again, concerned

5   the knock and announce and the reasonable time to

6   respond requirement; correct?

7        A    It does.

8        Q    Was the validation or modification of

9   this conclusion, was that unanimous by the TRB?

10       A    I do not remember.

11       Q    Are you aware of any time in Metro's

12  history where there was either a formal or

13  informal policy about the number of seconds or

14  minutes that officers should wait after the

15  announcements before using force?

16       A    I'm not aware either way.

17       Q    Okay.  I recently took Team Leader

18  Sergeant Findley's deposition.  And he indicated

19  at one time, Metro SWAT had a policy written right

20  into the policies that said ten seconds was

21  reasonable.

22            Are you -- do you have any knowledge

23  about that?

24       A    I do not.

25       Q    Do you have any knowledge about how the

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 127

1    policy, in terms of the amount of time that

2    officers should wait before using force to enter

3    the premises, has changed in the last ten years?

4         A    I'm not aware.

5         Q    Okay.  Just going to Conclusion 29,

6    which is on page 21 of the memorandum at

7    LVMPD4846, what was the conclusion of SWAT there

8    and what did Metro, through the TRB, validate or

9    modify?

10        A    This had to do with the tools and

11   tactics being utilized, one of those being snipers

12   or stun sticks, the explosive breaching equipment.

13   The CET or surround and call out could be verbally

14   improved on, and the board wanted it --

15   implementing it to if the department should create

16   an approval form for that in a search warrant

17   service, and then determine on the form who

18   approved it and the justification for why they

19   were requesting it and then determine if it should

20   be signed by the -- the assistant team leader, the

21   team leader, to what level that it should go up

22   to.

23             And then also determine if a no-knock

24   search warrant was requested and approved, a

25   deputy chief would need to sign that.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 128

1        Q    And one of the reasons Metro came to

2    this conclusion was there was question in the

3    Williams' officer-involved shooting as to whether

4    NFDDs should have been deployed at all and whether

5    they should have been deployed in the manner that

6    they were; is that fair?

7        A    Yes.

8        Q    Okay.  And specifically there was a

9    question that the NFDD, at least the stun stick,

10   was inserted through a window and deployed

11   essentially blind, without knowing who was on the

12   other side; correct?

13       A    There was some disagreement on that.

14   When we say "blind," the tactic -- from what was

15   explained to us, is you do it in the upper corner

16   of the window and you raise it up into the room to

17   keep it away from anybody's -- at eye level or

18   anybody that would be standing there, because

19   there would really be no reason for somebody to be

20   high up in a room.

21            So blind until the aspect of not being

22   able to see it.  But there's also, like, a

23   rake-and-break component that the SWAT expert

24   would be able to explain better than me.  So I

25   don't know if "blind" would be the right word for

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 129

1    it or not.

2         Q    Okay.  I'll reserve that for the SWAT

3    expert, because I think that's on that person's

4    topics.

5              But was -- regarding Conclusion Number

6    29, was that unanimous by the TRB?

7         A    I don't remember.

8         Q    And are you aware of any changes made by

9    Sheriff McMahill or anyone else as a result of the

10   conclusions in number 29?

11        A    I would not be the one to speak on that.

12   That would be the SWAT expert.

13        Q    Okay.  Because it concerns a specific

14   swat IAP?

15        A    Well, yes.  The board makes the

16   recommendations, and then the implementation of

17   that is done through the chain of command.

18        Q    Right after number 29 it says,

19   "Recommended action," and then highlighted in

20   yellow it says "TBD," which I assume stands for to

21   be determined; correct?

22        A    It does.

23        Q    Why was that left uncompleted in this

24   memorandum?

25        A    I am not sure.

LEXITAS™

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 130

1        Q    Well, whose job was it to make those

2    determinations?

3        A    After the recommendation is made for

4    them to consider implementing that, it would be a

5    group of people in that chain of command to

6    discuss about what the options are and then what

7    level they should go to, but I'm not sure why that

8    is there.

9        Q    Well, was it anticipated that somebody

10   would go back and complete this section of the TRB

11   memorandum?

12       A    I'm not sure.

13       Q    Also, you know, there's sort of another

14   recommendation that was -- was made here that's

15   not -- not really numbered, but I want you to skip

16   to page 33, which is LVMPD4858.

17            In reviewing what happened with this

18   search warrant, did Metro determine that the way

19   these IAPs were submitted and approved was in need

20   of change?

21       A    There's a lot on this page.

22            What are you specifically referencing,

23   sir?

24       Q    Well, specifically, if you look at the

25   second paragraph from the bottom, it talks about

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 131

1    what is called a top-down approval of IAPs.  And

2    it was decided that that was not effective and

3    that IAPs should start with the team leader and

4    then should go upward in the chain of command.

5             In other words, the team leader works on

6    the IAP, then it goes up to Lieutenant O'Daniel

7    and then up to Captain Cole for approval.

8        A    Correct.

9        Q    Do you see that?

10       A    I do see that.

11       Q    Okay.  And so Metro concluded that the

12   top-down method should not be used.

13       A    Correct.

14       Q    And why is that?

15       A    The people with the most information are

16   going to be the assistant team leader and then the

17   team leader.  They're going to be really the ones

18   that are going to build the foundational

19   justification for why they want to do the tactical

20   plan the way that they're doing that.  They're

21   often the ones that have the direct line of

22   communication with the requesting entities,

23   whether -- in this instance, it would be homicide.

24   They're the ones doing a lot of the back and

25   forth.



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 132

1                And then they're the ones able to --

2      with a thorough understanding of what has

3      occurred, being able to fill that out.  And then

4      it goes up to the captain to review the entire

5      plan, the plan in its entirety.

6                Also have the higher levels of

7      leadership, we get -- we don't really -- our hope,

8      as an agency, is the higher up you go, that

9      there's more experience there.  The frequency in

10     which you've done those things, you will have

11     learned from maybe mistakes made in the past, and

12     you could see any potential pitfalls or dangers or

13     unattended consequences to that plan.  So that's

14     why it would be from a ground-up approach all the

15     way up to the captain.

16       Q    And so Metro determined that the

17     top-down approach that was being used was a

18     failure of policy?

19       A    It wasn't ideal, because it's the

20     opposite of what we just talked about.  They might

21     have the -- a summary of what was going to happen

22     or the summary of who they were going after, but

23     then not have all of the specifics all the way

24     down to the ATL.

25                So I don't know if you want to call it a



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 133

1    policy failure or just a better way of doing

2    things, which is the whole intent of the

3    administrative process, and that's what we

4    identify.

5         Q    Well, which did Metro determine it was?

6         A    That it would be better going from the

7    bottom up.

8         Q    But did Metro consider that to be a

9    policy failure or a training failure?

10        A    I believe we just said it was not

11   effective the way it was currently being done.

12   But in policing, there's a lot of different ways

13   to do things.  And that's why we're always trying

14   to evaluate and reevaluate and come up with the

15   best plan to do things.  And when incidents

16   happen, we want to look at them and see if there's

17   takeaways to make ourselves better.

18        Q    Now, the TRB memorandum then sort of

19   turns into discussing the actions of particular

20   officers that were involved.  And Metro, through

21   the TRB, determined that Sergeant Scott had not

22   complied with policies and training; correct?

23        A    Correct.

24             But what page are you on now?

25        Q    Yeah, let me get to that.  It's going to

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 134

1    be Bates Number 4851, page 26 of the report or

2    memorandum.

3            So Sergeant Scott, what was his title or

4    job at the time of this shooting?

5        A    I believe Sergeant Scott was a homicide

6    sergeant.

7        Q    And because he's -- was a homicide

8    sergeant, he was one of the people who had to

9    review and sign off on the IAP; correct?

10       A    Correct.

11       Q    And according to Metro's own

12   investigation, it essentially determined that

13   Sergeant Scott had done so without reading the

14   entire case, including the surveillance logs;

15   correct?

16       A    Correct.

17       Q    And that was a failure or improper by

18   Sergeant Scott; right?

19       A    Yes.

20       Q    And for lack of a better word or to

21   state it differently, maybe I should say, Sergeant

22   Scott just rubber-stamped this IAP without really

23   reviewing it, didn't he?

24       A    Without -- "rubber-stamp" is an

25   all-encompassing word.  I will tell you he did not

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 135

1    do all of the things that we would have expected

2    him to do in his duties for reviewing this.

3        Q    And he might have been disciplined, but

4    he had retired by the time this occurred, the TRB

5    report was final; right?

6        A    That is my understanding.

7        Q    Okay.  And it did go -- or this finding

8    did go into his personnel file though?

9        A    Yes.

10        Q    Because sometimes you have people retire

11    and they come back; right?

12        A    I'm not sure of the labor laws in effect

13    with it.  But I do know if you leave in the middle

14    of an investigation and the investigation is

15    completed, that does go in your file whether

16    you're still working with us or not.

17        Q    And then we see this a lot of places in

18    the memorandum, but again here, under the section

19    about Sergeant Scott, it says "Recommended action

20    to be determined."

21            So who was to determine that recommended

22    action?

23        A    I'm not sure why that was there.

24        Q    Was there any action taken, other than

25    just putting this finding in Sergeant Scott's



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 136

1    personnel file?

2         A    Not that I'm aware of.

3         Q    And then I would like you to look at

4    pages 27 through 33.  And this is where actions

5    and findings as to Lieutenant O'Daniel and Captain

6    Cole are discussed; correct?

7         A    Correct.

8         Q    Now, the findings that are mentioned

9    here, they are identical for those two officers;

10   right?  Take a look at them, because what it looks

11   to me like is there were similar conclusions as to

12   both Lieutenant O'Daniel and Captain Cole, but

13   they're being addressed separately in the TRB

14   report.

15        A    Yes.

16        Q    Okay.  And so Metro, through the TRB,

17   agreed with those findings as to Captain Cole but

18   overturned them as to Lieutenant O'Daniel;

19   correct?

20        A    They agreed with one of the findings

21   with Captain Cole and, you are correct, did not

22   agree with the findings on -- with

23   Lieutenant O'Daniel.

24        Q    Okay.  And really -- and this is at the

25   bottom of page 33.  It was determined by Metro



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 137

1    that Captain Cole should have recognized that

2    there were too many unknown factors and should not

3    have approved the IAP for this warrant; correct?

4        A    Correct.

5        Q    The IAP that included CET entry?

6        A    Correct.

7        Q    And did that also include the fact that

8    NFDDs were to be automatically deployed?

9        A    I'm not aware of that, if that's yes or

10   no.

11       Q    Why were these findings verified or

12   approved by TRB as to Captain Cole but not

13   Lieutenant O'Daniel?

14       A    If memory serves me correct, there

15   were -- Lieutenant O'Daniel was out with COVID and

16   not able to respond or be there.  She was actually

17   in quarantine.  And in that instance, when you

18   lose that middle level of leadership, then it's

19   incumbent upon the captain to take on those

20   responsibilities.

21            And then the captain is the bureau

22   commander and the -- really the final authority in

23   everything that happens.  So because -- my memory

24   was that Lieutenant O'Daniel was out with COVID

25   and quarantined and really not in this, and that

Page 138

1    it then fell on the captain's shoulders.  And then

2    he even admitted that as much in the -- his turn

3    to talk in the Tactical Review Board.

4         Q    Give me just a moment to look at

5    something.

6              Was that a unanimous decision by the

7    TRB, that Captain Cole would be found responsible

8    but not Lieutenant O'Daniel?

9         A    I don't remember.

10        Q    What actions, if anything, were taken

11   against Captain Cole as a result of this finding?

12        A    I'm not sure.

13        Q    Who would know that?

14        A    His chain of command at the time.

15        Q    So you don't know whether he was

16   disciplined or retrained in any way?

17        A    If -- if you can give me one moment.  I

18   believe that was addressed on Exhibit 3, if I can

19   slide over to that.

20        Q    Yeah, so that's a pretty good

21   transition.  So let's look at Exhibit 3 now.  This

22   is a one-page interoffice memorandum that is -- it

23   says, "Subject:  TRB memo addendum."

24             So using this addendum then, what action

25   was taken against Captain Cole?

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 139

 1        A    It says, "Captain Cole's negative

 2    finding was addressed during the Tactical Review

 3    Board."  So his acknowledgment of his failures on

 4    that day were addressed by the board, but I -- I

 5    do not know if any discipline came down from it as

 6    a result of it.  That would have been his chain of

 7    command that would be doing that.

 8        Q    He acknowledged and Metro agreed that he

 9    should not have approved this IAP?

10        A    Correct.

11        Q    One of the recommendations in this

12    addendum is that the Office of Internal Oversight

13    create and maintain a matrix to document and

14    update the status of each recommendation in the

15    TRB memorandum to ensure completion.  And then it

16    says, "Upon completion of the recommendations, the

17    finalized matrix will be attached to this

18    addendum."

19             Do you see that?

20        A    Where is that at?

21        Q    Well, this is on Exhibit 3.  This is the

22    first recommended action.

23        A    Okay.  I do see that.

24        Q    Do OIO ever prepare such a matrix?

25        A    I do not know if they did or not.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 140

1      Q     Have you ever seen it?

2      A     I have not.

3      Q     Would you agree with me that it's not

4   attached to the addendum?

5      A     I do agree.

6      Q     If the OIO matrix was never prepared,

7   would Metro agree that that's another failure in

8   oversight in this case?

9            MR. ANDERSON:  Objection.  Form.

10           Go ahead.

11           THE WITNESS:  It's a recommendation

12   made by Office of Internal Oversight that was put

13   in a memorandum up through the chain of command to

14   the sheriff for recommendation and implementation,

15   but I do not know if that was implemented or not.

16   BY MR. BREEDEN:

17     Q     So we have a longer memorandum dated

18   January 3rd, 2023, and then we have this one-page

19   addendum dated January 31, 2023.

20           This one-page addendum, was that the end

21   of the TRB process?

22     A     For my involvement, the TRB process was

23   the conclusion of that day when the board convened

24   and recommendations were made.  I would not know

25   the -- what happens after that with the chair and

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 141

1    the memo that is -- is sent up.

2        Q    In the TRB records, you know, for this

3    investigation, what documents would exist other

4    than these two memorandums, which are Exhibits 2

5    and 3?  And then we discussed, there's an audio

6    recording of at least part of the TRB board

7    meeting.

8             What other documents or recordings would

9    exist?

10       A    Specific to the TRB?

11       Q    Yes.

12       A    None that I'm aware of.

13       Q    Well, didn't you say that there are some

14   written recordation of the votes?

15       A    They do record the -- the votes.  The

16   members are given the sheets with all of the

17   findings, very similar to the way that you saw it

18   in the red and the blue for the positive and

19   negative outcomes.  And then every member votes on

20   it by checking the boxes and then signs the

21   bottom.  And then those forms are collected, but I

22   don't know what happens to them from there.

23       Q    Okay.  So the last you saw them was when

24   the TRB board meeting occurred?

25       A    Yes.

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 142

 1              MR. BREEDEN:  Were you going to say

 2    something?

 3              MR. ANDERSON:  I was going to say, you

 4    do have them.  You know that; right?

 5              MR. BREEDEN:  Well, I'll look for

 6    them.

 7              MR. ANDERSON:  I can tell you the

 8    Bates stamps.

 9              MR. BREEDEN:  Yeah, please do.

10              MR. ANDERSON:  LVMPD004512 through

11    004773.

12              MR. BREEDEN:  I'll let you know that

13    in preparing for this deposition, I actually

14    noticed that we were missing some of the

15    Bates-labeled documents.

16              MR. ANDERSON:  Okay.

17              MR. BREEDEN:  And I'm going to have to

18    have my staff follow up with you regarding that.

19    I don't know if they were Bates-labeled and never

20    sent to us or they were sent to us and didn't make

21    it into our system.  I haven't determined that.

22    But I will let you know that we noticed we are

23    missing some of the documents.

24              MR. ANDERSON:  Whatever you need.

25

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 143

 1   BY MR. BREEDEN:

 2        Q    Okay.  The next document I would like to

 3   discuss has been labeled Exhibit 5 for this

 4   deposition.  This is the OIO.  It says, "Key

 5   findings, conclusions, or recommendations."

 6             Have you seen this document prior to

 7   today?

 8        A    I have.

 9        Q    Did you take any part in preparing this

10   document personally?

11        A    I did not.

12        Q    Who prepared it?

13        A    I believe it comes out of the Office of

14   Internal Oversight, and then our general counsel

15   looks at it.  And then it is put out on their --

16   their web page.

17        Q    Yeah.  The OIO key findings,

18   conclusions, and recommendations, these are meant

19   to be released to the public; correct?

20        A    Correct.

21        Q    Why is this particular document -- if I

22   were to look up this OIS on Metro's website, why

23   is it not available through the website?

24        A    I was able to have our general counsel

25   pull it up for me yesterday.  I believe it is on

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 144

1    our website.  Well, I know it's on our website,

2    because she was able to navigate it and get that

3    for me yesterday.

4        Q    Okay.  Would you agree with me that this

5    OIO report doesn't mention any of the acknowledged

6    failures by Captain Cole?

7        A    I am aware.

8        Q    Are you aware of any reason why it

9    wouldn't list those important findings?

10       A    Well, this is an administrative process,

11   and much like our other internal investigations,

12   we don't release names.  The names you do see

13   mentioned here are the names of the officers

14   involved in the shooting, because those names have

15   already come out in the FIT report and in the

16   72-hour briefing.

17            And as a part of executive privilege,

18   the sheriff is able to look at things that were

19   discussed in an effort to make ourselves better

20   and be able to critique and criticize things that

21   we did and make internal improvements with that

22   and not put people's names for administrative

23   issues or finding out to the public.

24       Q    In this entire document, does it ever

25   use the phrase "knock and announce"?



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                  Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 145

1          A     I don't know.  I could go through it,

2     but I'm not familiar if it does or not.

3          Q     I'll represent to you when I reviewed

4     it, it doesn't use that term.

5                Don't you think it's an important

6     finding of TRB and CIRT that the officers did not

7     allow a sufficient time after the announcement for

8     Mr. Williams to come to the door?

9          A     I know that the concerns we had and

10    looked at administratively were addressed

11    internally and through policy.  And we have the

12    ability to push out information to the public, and

13    this is what we decided to push out.

14                We don't always get into the specifics

15    of SWAT tactics or police operations, just because

16    this is publicly available and anybody could look

17    at that and it could cause harm to our officers in

18    the future if they had to go do something like

19    that.  So we're very -- I think we're very

20    consistent with the information that we do put out

21    on internal investigations.

22                And this is the same thing where we're

23    going to put out certain findings on there, but we

24    also have the executive privilege and the sheriff

25    is able to address internal administrative issues

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 146

1    internally as well.

2        Q    Why does Metro not release the TRB

3    report or memorandum?

4        A    Because the TRB is an internal document

5    as a result of an administrative process, and we

6    do not release our internal investigations as a

7    police department.

8        Q    Do you agree that some of the

9    information in the TRB memorandum is simply

10   factual information?

11       A    I agree that administrative

12   investigations can contain factual information,

13   much like an internal affairs investigation.  And

14   we do not release those or make those public,

15   because they are part of an administrative process

16   looked at our standard, which is higher than what

17   is required by the law, and allows us to really

18   look at those and see if there is any issues or

19   ways to improve and to be able to do it on a

20   constant basis of a self-assessment and a review.

21            But in being consistent with our other

22   products that we put out, administrative hearings

23   and investigations, the information does not go

24   out to the public, those reports.

25       Q    Why is the FIT report released to the



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 147

1    public then?

2        A    Because the FIT report is a criminal

3    investigation, and criminal investigations are

4    part of public record.  And that is submitted to

5    the district attorney's office.  So that is a

6    completely different thing than an internal

7    administrative board or function.  That's no

8    different than any other criminal report that we

9    do that is subject to public record.

10                MR. BREEDEN:  Just a moment.

11                Okay.  Deputy Chief, thank you for

12    your time here today.  I think those are all of my

13    questions.

14                Mr. Anderson, do you have anything?

15                MR. ANDERSON:  No, I don't have any

16    questions.  Thank you.  My voice is gone.  I

17    didn't say a word and lost my voice.

18                THE WITNESS:  Thank you.

19                THE VIDEOGRAPHER:  This concludes the

20    deposition of Reggie Rader, a 30(b)(6), consisting

21    of one disk.  The time is 1:22 p.m.  We're off the

22    record.

23                THE COURT REPORTER:  Mr. Anderson, do

24    you need a copy of the transcript?

25                MR. ANDERSON:  I do want a copy.

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 148

1    (Whereupon, the deposition

2    concluded at 1:22 p.m.)

3        *  *  *  *  *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 150 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 149

1                    CERTIFICATE OF COURT REPORTER

2
     STATE OF NEVADA        )
3                           )  ss:
     COUNTY OF CLARK        )

4

5          I, Heidi K. Konsten, Certified Court Reporter

6    licensed by the State of Nevada, do hereby certify

7    that I reported the deposition of REGGIE RADER,

8    commencing on February 21, 2025, at 9:08 a.m.

9          Prior to being deposed, the witness was duly

10   sworn by me to testify to the truth.  I thereafter

11   transcribed my said stenographic notes via

12   computer-aided transcription into written form,

13   and that the transcript is a complete, true and

14   accurate transcription and that a request was not

15   made for a review of the transcript.

16         I further certify that I am not a relative,

17   employee or independent contractor of counsel or

18   any party involved in the proceeding, nor a person

19   financially interested in the proceeding, nor do I

20   have any other relationship that may reasonably

21   cause my impartiality to be questioned.

22         IN WITNESS WHEREOF, I have set my hand in my

23   office in the County of Clark, State of Nevada,

24   this March 4, 2025.

25         _____
             Heidi K. Konsten, RPR, CCR No. 845

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 150

1              DECLARATION OF DEPONENT

2              I, REGGIE RADER, deponent herein, do

3    hereby declare under penalty of perjury that I have

4    read the within and foregoing transcription of my

5    testimony taken on February 21, 2025, at Las Vegas,

6    Nevada, and that the same is a true record of the

7    testimony given by me at the time and place

8    hereinabove set forth, with the following

9    exceptions:

10

11                   ERRATA SHEET

12   PAGE  LINE   SHOULD READ:          REASON FOR CHANGE:

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 151

```
 1                        ERRATA SHEET

 2    PAGE   LINE    SHOULD READ:         REASON FOR CHANGE:

 3    _____

 4    _____

 5    _____

 6    _____

 7    _____

 8    _____

 9    _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21

22

23    Date: _____   _____

24                         REGGIE RADER

25
```



30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**0**

004773
142:11

**1**

1
4:6 10:21
11:11,16
71:2

10
5:24

100
91:11

10:15
60:3

10:26
60:6

11
103:17
104:13

1125
65:10

11:46
109:22

12
65:7
104:14

120
124:9

120-hour
88:23
93:10
123:7
124:3

12:28
109:25

14
65:7
108:7

**14-page**
80:10
120:6

15
59:25
112:6

**15-minute**
60:1

160
124:12

17
112:6

**17-page**
80:11

18
32:15
118:14,15

19
121:18
124:20

1:22
147:21

**2**

2
41:9,24
54:3 61:7
70:21,22
141:4

2000s
35:23

2019
34:2

2021
57:11
97:6,10,
22 100:25
101:1
102:9

2022
5:24
34:17

**2023**
140:18,19

**2025**
4:2,10

**21**
4:2
32:19,20,
22 33:1
127:6

**21st**
4:10

**22**
56:20

**222**
48:2

**23**
120:5,12

**24**
10:10
121:18

**24/7/365**
88:10

**25**
123:3

**26**
124:19
134:1

**27**
68:7
125:19
136:4

**27th**
32:12

**29**
56:16,20
93:7
127:5
129:6,10,
18

**3**

3
41:16
138:18,21
139:21
141:5

**30(b)(6)**
4:15
10:23
11:24
147:20

31
140:19

33
130:16
136:4,25

34
48:7

**34-page**
51:19

**3rd**
140:18

**4**

4
23:23
74:10

48
10:13

4826
48:14

4827
57:6

4828
56:16

4851
134:1

4859
45:21

**5**

5
4:6 62:1
64:22
65:4
143:3

**6**

6
77:12

**7**

7
91:13,16

**72-hour**
144:16

**8**

8
91:13

**9**

9
94:6

9:08
4:3,11

**A**

a.m.
4:3,11
60:3,6
109:22

ability
10:18
28:3
66:19
115:8

145:12

able
20:19
25:19
32:18
44:7 45:8
54:24
59:22
67:16
68:21
76:20
80:2
84:19
85:11,15
88:14
89:21
93:25
100:7
102:18
108:14
124:14
128:22,24
132:1,3
137:16
143:24
144:2,18,
20 145:25
146:19

about
6:16,25
12:1
13:24
15:24
16:5
22:13
30:7,9
32:3
34:13
37:4
43:19
53:25
56:8
57:17,18,
20,24
61:23,24
67:21
69:1
70:20
71:1

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 154 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

72:18
75:19
77:11
88:19
91:13
93:2,22
98:23
102:16
104:12
110:6
112:21
118:21
120:12
121:17
123:15,24
126:13,
23,25
130:6,25
132:20
135:19

**above**
20:8

**absent**
98:13,18

**academy**
32:23
33:2,4
34:8
122:3

**acceptable**
96:21
98:4

**accepted**
108:9

**access**
71:22
72:20

**accessed**
120:17

**accidental**
119:5

**accomplish**
73:22

**according**
101:14
134:11

**accurately**
9:3

**acknowledge**
104:21
105:9,11

**acknowledged**
139:8
144:5

**acknowledgment**
139:3

**acronyms**
16:3

**across**
58:2

**action**
67:17
77:19,22
79:14
115:17
118:8
120:1
129:19
135:19,
22,24
138:24
139:22

**actions**
91:20
122:15
133:19
136:4
138:10

**active**
83:20

**actually**
12:3
22:20
26:17
31:11
44:7
45:19,25
46:1
50:23
51:9
63:20
70:11
74:8
103:11
106:12
111:5
114:11
122:23
125:9
137:16
142:13

**Adam**
4:21

**add**
53:14

**added**
124:9

**addendum**
13:1
138:23,24
139:12,18
140:4,19,
20

**addition**
31:1

**additional**
31:12
41:15
79:15,23
80:7,12,
16  89:15
120:8
121:10

**Additionally**

18:14

**address**
59:19
112:3
145:25

**addressed**
90:8
136:13
138:18
139:2,4
145:10

**adequate**
108:4

**adhered**
18:2

**adhering**
76:2

**administer**
4:20

**administered**
7:3

**administrative**
6:13  17:3
18:22
19:22
23:16
25:18
26:3
33:19
44:14
45:12
52:23
95:24
133:3
144:10,22
145:25
146:5,11,
15,22
147:7

**administratively**
25:14

29:4
119:8
145:10

**admissible**
9:23

**admittance**
106:8

**admitted**
138:2

**adopted**
22:23
125:19

**advance**
99:9

**advisements**
108:12
111:10

**affairs**
146:13

**affect**
10:17
69:24
81:18

**affidavit**
71:24

**afford**
8:25

**afforded**
25:12
112:23

**after**
12:12
18:20
44:11
54:23
66:12
81:2  94:4
113:6
116:10
118:17
123:13

126:14
129:18
130:3
132:22
140:25
145:7

**Afterwards**
7:17

**again**
14:20
33:12
46:17
67:13
115:24
122:25
125:20
126:4
135:18

**against**
21:13
25:20
35:17
67:9  86:6
88:3
113:25
138:11,25

**agencies**
22:6,7

**agency**
132:8

**agent**
17:17
54:23

**agents**
51:25

**ago**
53:3

**agree**
27:8,12
40:15
61:3  68:5
69:5
78:2,9
81:16



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

82:14
90:15
96:24
101:12
102:11
104:25
106:9
107:1,23
108:6
110:16
136:22
140:3,5,7
144:4
146:8,11

**agreed**
56:21
57:3 78:9
103:20
108:22
113:5
117:15
119:19,23
120:23
125:2
136:17,20
139:8

**agreeing**
117:11

**agreement**
114:18
115:21

**agrees**
69:9

**ahead**
5:10
17:10
75:17
88:8
105:5
140:10

**airport**
40:9

**alcoholic**
10:9

**alerting**
106:6

**Alex**
14:8

**Alexander**
4:16

**all**
6:1,18,25
8:8,18,25
12:11,15
15:7,9
16:23
18:15,20
26:5,23
27:2
28:23
29:3
30:19
31:2
32:5,17,
18 37:2
41:23
42:20
44:3
45:12
47:5,17
51:22
54:10
56:2
62:19
66:3,16,
24 69:16
70:15
73:1,13,
23 75:11
77:8
89:19
91:1,10
92:11
93:6 97:9
100:8
101:25
102:20
103:20
110:2
112:15
114:24
126:4
128:4
132:14,23
135:1

141:16
147:12

**all-
encompass
ing**
134:25

**alleges**
27:20

**allow**
28:5
67:14
106:8
145:7

**allowed**
63:3
108:13

**allowing**
106:2

**allows**
76:16
102:17
146:17

**almost**
75:19
82:21

**along**
17:1

**already**
15:18
31:15,17
92:11
115:8
144:15

**also**
21:12
22:25
25:22
42:24
46:23
61:7
64:1,12
68:23
69:6
79:25
83:3,16

87:15
90:11
92:9
94:12
105:12
108:25
112:25
114:3
127:23
128:22
130:13
132:6
137:7
145:24

**alternati
ve**
95:18

**always**
8:11
53:15
133:13
145:14

**Alzheimer**
10:17

**amended**
70:12

**Amendment**
25:16
104:22

**Amendment
's**
105:1

**among**
64:19

**amount**
108:4
127:1

**analyzing**
107:21

**Anderson**
4:23
28:18
29:9
40:25
75:16

76:12
82:23
88:5,8
95:20
99:4,12
102:13
105:4,17
106:11
107:12
140:9
142:3,7,
10,16,24
147:14,
15,23,25

**Andrew**
45:16
49:16

**angle**
67:10

**angles**
25:8

**announce**
105:12,
15,19
106:6,20,
24 107:6,
11,15,22
108:24
110:7,25
111:9,25
126:5
144:25

**announcem
ent**
111:20,22
112:1
145:7

**announcem
ents**
51:7
92:22
126:15

**another**
18:6 20:8
33:13
56:8

60:20
75:22
82:16
84:20
85:13
89:22
96:10
119:17
122:10
124:14
130:13
140:7

**answer**
10:3,5
28:19
29:10
88:8
107:17
108:14
111:13,15
113:9
114:3,5,
12,14

**answered**
115:7

**answering**
13:18

**answers**
117:18

**anticipat
ed**
87:16
130:9

**any**
6:14 8:9
10:9,12,
15 12:7
13:9
15:15,21
21:3
22:1,15
24:15,21
25:1,2
26:1,10
31:2,18
35:9,13,
17 36:15,

18 40:24
42:8,24
45:3 48:4
53:12,24
54:6
55:19
58:18
60:16
67:11
70:12
71:7,18,
25 73:6
81:23
82:21
85:14
87:4,5,22
98:18
101:5
103:10,
14,16
112:23
115:2
118:8
119:1
120:1
122:11,15
125:14
126:11,
22,25
129:8
132:12
135:24
138:16
139:5
143:9
144:5,8
146:18
147:8,15

**anybody**
84:12
113:15
128:18
145:16

**anybody's**
128:17

**anyone**
8:24 13:4
59:16

73:7 77:5
89:24
93:19
100:10
103:24
113:11
118:7
120:2
129:9

**anything**
23:14
36:19
53:25
90:6
99:18
101:5
103:23
109:7,13
113:17
138:10
147:14

**apartment**
27:15
51:9
63:21
65:10
67:9 84:7
103:6
110:10
111:21,
23,25
112:2,4
119:17

**apartments**
66:18

**appear**
54:7,9,11

**appearances**
4:19

**appeared**
53:8

**appears**
94:6

**application**
71:24

**appointed**
34:10

**apprehension**
64:10

**approach**
80:22
97:14
132:14,17

**approached**
65:9

**appropriate**
30:4

**appropriately**
62:13

**approval**
18:23
63:9
72:13
101:25
127:16
131:1,7

**approve**
46:8
78:15
101:16

**approved**
24:3
74:17
80:20
81:5,8
87:8
101:6,7
124:25
127:18,24
130:19
137:3,12
139:9

**approving**
102:2

**approximately**
4:10

**area**
33:7,18
34:3 58:4
69:23
116:18

**areas**
76:22

**Arial**
59:3

**armed**
98:13

**armor**
67:11

**around**
19:12
30:6 83:3
119:1

**arrest**
58:10,11,
14 83:11,
14,18,19,
23 84:2,
11,12,16,
20,21,22,
23 85:2,
4,5,11,
14,16,18,
23 86:2,
8,11,24

**arrested**
58:18
59:16
84:2

**arrests**
86:19
87:4

**articulable**
98:9,18,

20 99:6,
11,19

**as**
5:3,5,11
6:17 7:5
8:13,16,
23 9:14
11:4,7,20
13:12
20:11,20,
24 22:18,
24,25
26:13
28:8,16
30:8,25
32:14,15,
24 33:11,
25 34:5,
14 35:6,
8,23
36:16
39:9,15
40:8
41:8,16
43:14,15,
16 44:7,
21 50:20
52:4,22
53:7,11,
16 54:12
55:20
56:3,5
57:9
61:16,25
64:3,4,23
65:9,21
70:8
72:15
73:7
75:11
77:24
83:1,9,18
84:5,12,
13,24
85:22
90:1,14
92:8
94:12,15
95:23

96:21
97:5,9
98:4
99:13
103:10
105:21
108:16
109:8,13
110:24
111:25
112:23
115:4,20
116:8,21
118:8
119:8
120:18
125:22
128:3
129:9
132:8
136:5,11,
17,18
137:12
138:2,11
139:5
144:17
146:1,5,6

**ascertain**
108:1

**ask**
6:16,25
8:6,9
9:1,17
11:6
13:19
16:4,19
30:7
42:23,24
56:5 90:7
104:6
106:12
110:5
111:16,18
113:8

**asked**
53:12
54:24
103:25



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 157 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

104:4
114:16,20
116:3,22

**aspect**
128:21

**assessment**
45:4

**assigned**
20:16
33:11
38:7
48:19
50:9

**assignment**
33:9
39:25
40:16
122:2

**assignments**
43:12

**assist**
46:2 89:3

**assistant**
17:22
20:4
38:3,24
39:3,4,
11,13
40:12
42:2
45:16,17,
24 49:15
61:15
127:20
131:16

**assisting**
88:7 89:8

**associate**
40:18

**associated**

120:2

**association**
16:21

**assume**
101:17
129:20

**assumption**
46:7

**at**
5:15
8:18,19,
24 9:4
11:11
13:17
14:9,13,
16,20,23
21:5,15
24:1
25:9,13,
15 27:13,
25 28:8,
10,23,24
30:1 31:8
32:15
33:1
34:18
36:25
37:9,14
38:10,16
40:16
41:9,20
42:11,17
43:16
45:17,20
48:12,25
49:8,18,
22 50:12,
14 53:18
54:2
55:23
57:18,25
60:3,14
61:16,20
63:8,21
65:18
66:24

67:1 70:8
73:7,25
77:5 78:2
80:1,3
84:7,13
85:5,13
89:25
91:21
93:20
94:24
95:21
98:7
100:21
101:8
103:14,24
108:7
109:20,22
111:21
113:15
118:7
119:14
122:17
123:16,21
124:19
126:19
127:6
128:4,9,
17 130:24
133:16
134:4
136:3,10,
24 138:4,
14,21
139:20
141:6
143:15
144:18
145:10,17
146:16,18

**ATL**
132:24

**attached**
139:17
140:4

**attachment**
41:16

**attempt**
110:23

**attempted**
111:6

**attempts**
110:12

**attention**
113:11

**attorney**
4:21 9:8,
18 40:24
73:19

**attorney's**
62:22
63:9
73:10
74:5
147:5

**attorneys**
13:5
73:20

**audible**
8:12

**audio**
52:14
54:19
141:5

**audio-recorded**
55:9

**Aurbach**
41:1

**authority**
137:22

**authorization**
86:16

**authorized**
103:21

**automatically**
137:8

**available**
42:13
66:7
114:8,10
123:7
143:23
145:16

**avenue**
85:13

**avoid**
8:14

**aware**
21:22
22:3,8,18
36:8
59:17
60:24
61:5
83:25
85:25
86:4
87:20,21,
23 89:5
92:18,23
103:14
104:2,11
110:7
111:1,3
117:21
118:11
120:4
122:15
125:17
126:11,16
127:4
129:8
136:2
137:9
141:12
144:7,8

**away**
113:3
128:17

_____
**B**

**back**
6:17 8:19
9:22 22:7
23:1 28:6
32:2
33:12,16,
17,24
34:6
37:17
43:4
57:23
60:5,9,12
79:8
80:6,14
104:9
109:24
110:3
112:13
130:10
131:24
135:11

**background**
15:25
50:18

**Backman**
14:12
51:3
87:25
88:7,22
89:12
91:3,18
93:4,6,15
111:22
124:2

**Backman's**
91:20

**bad**
76:4

**ban**
100:14

**banned**
97:6



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 158 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

98:16
104:9

**bar**
97:1

**bargaining**
112:19
114:18
115:20

**base**
47:15

**based**
43:10
72:5
83:15
103:13
108:17

**basic**
88:23
89:3
93:4,10
123:7
124:3

**basically**
30:20
74:14

**basis**
9:20
146:20

**Bates**
134:1
142:8

**Bates-labeled**
142:15,19

**bathroom**
59:23

**baton**
110:13

**battering**
65:13
110:20

**battery**

119:3

**Bearcat**
67:11

**bearing**
72:1
75:21

**became**
33:2

**because**
8:17 9:2,
11 10:1,4
12:3
25:11
27:3,25
28:15
30:7
32:19
37:7 43:7
47:16
49:5,7,
10,13,21
55:25
57:22
61:15
63:3
64:22
65:12
66:8 67:8
68:10,15,
22 72:1
73:1,12
74:19
76:16
80:3
82:17
85:2
86:25
90:18,22
95:16
106:3,16,
22 108:11
114:21
117:17
118:2
119:11
128:18
129:3,13
132:19

134:7
135:10
136:10
137:23
144:2,14
145:15
146:4,15
147:2

**becoming**
123:9

**before**
6:21 9:25
15:19
16:2
33:9,13,
25 47:12
52:11
64:5
68:16
78:20
81:8
90:12,15
94:3
96:17
97:22
98:23
102:2
103:17
112:21
118:3
126:15
127:2

**begin**
9:25

**begins**
62:2 65:7
70:21,23
77:12
104:13
118:14
124:20

**behalf**
4:13 5:20
70:11

**behind**
66:12
68:9

100:4
118:2

**believe**
11:17
15:7
22:12
54:8
57:16
58:2,5,7,
14 64:24
66:17,25
68:7
71:7,25
82:10
84:11,18
85:8,20,
24 90:9
98:22
117:10
118:18
123:1
124:8
133:10
134:5
138:18
143:13,25

**believed**
82:13
108:10

**believes**
89:6

**below**
37:25
38:13,23

**benefit**
95:23

**Bertuccini**
14:19

**besides**
31:9

**best**
26:8 45:6
68:13
69:13
76:1,21

96:1,3
133:15

**better**
26:9,11
44:9
45:8,14
60:22
69:4 74:8
75:23
76:23
97:13
103:25
104:4
111:16
128:24
133:1,6,
17 134:20
144:19

**between**
16:22
69:11
85:4

**beverages**
10:10

**big**
40:2

**binds**
11:5,21

**bit**
6:18,19
15:24
24:1
30:7,9
32:2
43:19
57:22
97:16
104:12
112:14,21
125:3

**blended**
80:22

**blind**
128:11,
14,21,25

**blue**
56:10,13
141:18

**board**
12:4,22,
23 13:2,
13,16
14:9,24
16:7
17:13,14,
15,19,21,
23,25
18:3,4,
13,15,16,
20 19:25
20:1,2,4,
6,19,21
23:7,8
24:12,13
41:5,14,
23 42:7,
22 43:2,7
44:4,5,6,
9 46:1,6
47:8
48:15,17
49:5,7,
10,14,20,
21 50:1,
4,10,12,
14,19
51:13,17,
22,23,24
52:2,5,
11,12,18,
24,25
53:1,9,
11,18,20
54:7,9
55:2,13,
21 57:18
61:16
68:25
71:5
76:25
95:21,24
96:3
97:12
107:13

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 159 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

108:16
119:19
127:14
129:15
138:3
139:3,4
140:23
141:6,24
147:7

**board's**
43:9

**boards**
17:5,12,
16 20:12
21:19
22:5
23:6,12,
14,15
24:22
25:2
31:10
52:23

**body-worn**
112:9
117:3,8,
16 118:9

**boil**
28:7 29:1

**bombing**
40:2

**booklet**
7:17

**boots**
67:14

**Born**
32:8

**both**
15:11
17:16
29:23,24
52:23
64:16
108:23
136:12

**bother**
85:3

**bottom**
130:25
133:7
136:25
141:21

**box**
82:2,6,12

**boxes**
141:20

**brand-new**
120:21

**brass**
65:11,14
66:5
67:2,25
68:2,16

**breach**
66:9

**breaching**
127:12

**break**
17:8
59:23
60:1,9
91:15
109:17,18
110:3

**breaking**
52:8

**breaks**
19:11

**bred**
22:12

**Breeden**
4:21,22
5:8 29:5,
13 59:24
60:7 76:8
77:1 83:8
88:6,18
96:6
99:15

102:23
105:8,18
106:14
107:20
109:18
110:1
140:16
142:1,5,
9,12,17
143:1
147:10

**Brian**
101:2

**Brice**
14:3

**brief**
62:3,4
106:18

**briefed**
39:23

**briefing**
39:23
144:16

**briefings**
40:14

**bring**
47:14

**bringing**
44:13

**broader**
28:13

**brought**
49:13

**build**
131:18

**burden**
84:15

**bureau**
18:5
20:14,16
30:17
33:8,22,
25 34:7
43:8

77:23
137:21

**bureaus**
39:17,18,
19 40:11

**burglary**
73:12

**but**
6:17 7:2,
21 8:23
10:5 12:1
13:15
17:6
21:6,15
22:13
23:3,8
25:19,22
26:13
27:16
31:21
37:5 39:6
40:10
41:16
43:3,6
45:1,12
46:6,9
47:16
49:14,19,
25 50:14,
16 51:3
52:11,21,
22 53:4,
15,17,22
55:9,12
56:1
57:23
58:3,12,
16 60:23
62:2,24
63:8,17,
22 64:12,
19 67:23
68:21
69:6,14
71:12
72:19
73:15
74:14,24

75:2,25
76:10
77:25
78:21
80:9,10,
15 82:5,
14,24
83:11,18,
23,25
87:1,22
89:1 90:7
91:9,14,
19 92:9,
13 94:8
95:5,23
96:11
97:16
98:1
99:5,18
101:4
103:13
104:4,8
105:25
107:24
110:16
111:11
112:24
113:13
114:3,16
115:2,8,
15,16
116:2,13,
16 117:2,
13,19
119:14
122:4,21,
23,24
123:20
124:13
125:20
128:22
129:5
130:7,15
132:22
133:8,12,
24 135:3,
13,18
136:12,17
137:12
138:8

139:4
140:15
141:21
142:22
145:2,23
146:21

**butted**
67:9

**by**
5:8 6:10
7:3 11:12
15:5,10
17:20,23
18:22
20:23
21:17,20
22:1
23:18
24:3 25:5
26:6
27:15
28:8,11
29:5,13
39:18
40:24
42:9
52:14
55:21,23,
25 56:4,
17 59:21
60:7
61:24
62:8,14
64:11
65:15,19,
23 68:9,
14 69:18
71:4
73:4,6
74:6,11,
17,25
75:25
76:8
77:1,21,
23 78:10
79:25
81:4,5
82:8,15,
19 83:8



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 160 of 203
30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

86:15
88:18
90:8
91:25
94:18
96:6
99:15
102:23
104:1
105:2,8,
12,18,20
106:14
107:20,22
109:5
110:1
111:22
113:20
115:19,23
117:3,15
118:5,24
120:1
121:13
122:16
123:4
124:7,18
125:6,19
126:9
127:20
129:6,8
134:17
135:4
136:25
137:12
138:6
139:4
140:12,16
141:20
143:1
144:6
146:17

---

**C**

**C-I-R-T**
16:8

**cadet**
32:15

**call**
20:14
44:18
65:19,22
66:20
67:6,16
68:3,4,18
69:23
78:16
95:7,9,
13,19
96:7,9
97:13
104:3
127:13
132:25

**called**
5:3
65:16,18
66:24
67:1,25
80:24
131:1

**calls**
102:19

**Camacho**
4:12

**came**
37:17
71:11
92:11
113:5
117:13
123:15
128:1
139:5

**camera**
117:3,8,
16 118:9

**cameras**
112:9

**cannot**
25:20

**capacity**
34:12

**Capital**
38:11

**captain**
18:6,7
20:7,8,16
23:1
30:17
34:1,3,4,
5,18,19
38:8,13,
19,20
42:4
43:7,15
47:13
49:10,19,
21,22
51:2 54:5
72:14,15
78:14
79:15,22
80:1,6,14
82:17
101:2,15
131:7
132:4,15
136:5,12,
17,21
137:1,12,
19,21
138:7,11,
25 139:1
144:6

**captain's**
138:1

**captains**
39:18

**car**
19:9
73:12

**cards**
114:25

**care**
23:22

**care-
taking**
113:13

**career**
48:5

**case**
4:15 7:12
11:2 12:2
15:18
16:3
17:17
18:21
40:19
41:20
46:14
51:25
52:13
54:23,24
62:17,18,
24,25
65:1 70:8
71:16,18,
20,22
72:4,20
73:11,13,
21 78:24
92:9
98:21
104:18
107:22
116:25
134:14
140:8

**casino**
58:1

**catch**
76:11

**cause**
84:2,14,
16,18,24
85:2,10
108:19
145:17

**caused**
29:18
121:9

**caution**
7:21

**Celaya**

42:5
49:25
50:3
51:14

**cellular**
75:2,3,4,
5

**certain**
11:7 27:3
55:13
58:13
59:19
78:24
113:3
145:23

**certified**
123:9

**CET**
27:17
28:14
36:21
78:3,8
80:25
81:18,24
83:5
94:9,12,
15,17,22
95:2,17,
22 96:5,
13 97:6,
11,12,17
98:8,16
100:9,14,
15 103:1,
20 104:9,
15 105:25
106:2,4,
10,19,22
107:4,9,
14 108:23
110:6
124:23
125:14
127:13
137:5

**chain**
49:5

64:3,4
72:14
101:1,23
129:17
130:5
131:4
138:14
139:6
140:13

**chair**
17:22,25
20:3
45:18
46:7
48:20
49:16
61:16
140:25

**challenge
s**
100:1

**chamber**
119:10

**change**
7:22,24
8:1 70:2,
3 74:1
76:16,17
97:16
100:20
101:20
102:2,4,
8,11,15
104:9
130:20

**changed**
87:10
97:21
100:12,
13,24
101:13
127:3

**changes**
7:19
43:10
56:22
96:14

---



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

122:16
125:14
129:8

**changing**
102:5

**charge**
45:16
51:6
90:15
100:24

**charged**
26:20
27:10
29:6,16

**charges**
30:4

**check**
37:20
82:6

**checked**
82:2,12

**checking**
141:20

**chief**
5:17
34:11,15,
18 39:9,
15,17,19,
22 40:10
42:2,3
43:16
48:21
49:1,3,4,
6,17 60:8
101:2,3
110:2
127:25
147:11

**chiefs**
38:4

**child**
70:1

**children**
103:5

**choice**
69:11,13

**choose**
53:19

**circumsta
nces**
100:16
108:4
115:22
119:15

**CIRT**
16:8,22
17:16
24:20
25:1
26:4,25
27:6
30:10,21
31:14,16
42:16,20
43:17
46:15,21
47:4,11
48:2,4
56:17,21
57:4
61:24
62:10
65:15,17,
20 91:16
114:13
117:1
120:5
121:20
124:17,
21,22
125:21,25
145:6

**CIRT's**
42:12

**citizen**
44:4
99:24

**civil**
6:7 10:23
11:23
29:7,18

35:18

**civilian**
17:2
18:14,17
20:18
32:17,24
67:18

**clarifying**
42:24
57:22

**clarity**
65:21

**Clark**
32:6 37:8

**class**
77:9

**classes**
77:9

**clear**
68:6 69:6

**clearest**
69:12

**clearing**
86:20

**clearly**
9:19 97:1
111:2

**Clements**
14:4

**clerical**
30:18

**clothing**
74:23,24

**codes**
32:18

**coinciden
tally**
118:15

**coined**
94:18

**Cole**
38:11,14
51:2
80:6,14
101:2,15
131:7
136:6,12,
17,21
137:1,12
138:7,11,
25 144:6

**Cole's**
139:1

**collabora
tive**
22:9

**collected**
141:21

**colors**
56:11

**come**
76:20
87:3
88:14
90:4 92:8
102:7
106:7
107:17,25
108:14
122:2
133:14
135:11
144:15
145:8

**comes**
20:12
51:24
60:23
143:13

**coming**
14:17
47:6,18
96:12
104:1
109:11
122:10,12

123:1

**command**
33:18
34:4 40:7
72:14
101:1,23
129:17
130:5
131:4
138:14
139:7
140:13

**commander**
18:6
104:1
123:1
137:22

**commands**
33:7

**comment**
7:25

**commented**
15:11

**commission**
18:13
38:4

**commissioned**
86:25

**commissions**
18:19

**common**
22:4

**communication**
131:22

**community**
17:2
26:13
45:7
82:8,14,
19 100:5

113:12
115:4

**compel**
25:19

**competing**
78:17

**compile**
31:9

**complete**
93:4
100:14
130:10

**completed**
64:11
77:15
79:6
88:23
89:3
92:20
93:10
124:3
135:15

**completely**
89:7
147:6

**completion**
89:4
139:15,16

**complex**
67:4
100:6
111:21,25

**complexities**
73:13

**compliance**
31:7
73:18

**complied**
133:22



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 162 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                        Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

complies
90:24

complying
115:18

component
64:10
65:1
128:23

composition
41:6 43:9
50:13

compounded
79:25
100:8

comprehensive
63:1

comprise
16:23
41:17

comprised
17:6,21
49:4

comprising
34:9

concepts
107:3

concern
27:16

concerned
75:12
126:4

concerns
72:16
94:9
129:13
145:9

conclude
72:22
85:17

88:21
89:1
102:24
107:9

concluded
19:25
27:9
65:17
91:20
93:13
94:22
95:16
106:1,10
123:3
131:11

concludes
147:19

conclusion
62:1,6,10
63:12
64:21
65:4,8,22
68:1
70:20,22,
25 73:4
74:10,15
77:6,12
78:10
89:25
90:2
91:16
92:25
94:6
95:16
96:12
104:13
106:19
107:24
108:3
118:5,14
119:19
120:5
121:18,21
122:18
123:2,3
124:19
125:2,18

126:9
127:5,7
128:2
129:5
140:23

conclusions
13:2
56:13,14,
17 57:3
59:19
61:24
91:13
124:17
129:10
136:11
143:5,18

condition
10:16

conduct
6:6 31:11

conducted
62:13

conducting
44:16

conference
9:15

configuration
67:8

confirm
11:20

conflicting
107:2

confronted
27:15

confused
46:18

confuses
10:1

confusing
86:14
114:13
116:1

confusion
80:18
108:19
121:9

Congratulations
32:9

conjunction
77:25

connections
68:14

consensus
74:7

consequences
132:13

consider
63:22
70:12
99:19
130:4
133:8

consideration
42:8

considerations
82:25

considered
37:2
96:14,21
98:4
113:24
125:4,10

consistent
50:16
145:20
146:21

consisting
147:20

consists
23:6

constant
146:20

constitute
37:7
108:11

constitution
31:25
104:23
105:21
106:21

Constitution's
105:16

constitutional
27:18
28:16
30:15
31:23
107:10
113:18

constitutionally
105:20
107:5

consultation
62:22

consulted
46:16

consults
46:23

consumed
10:9

contact
110:19
113:20

contain
146:12

continue
72:6

continued
96:10

continues
118:12

continuing
87:5

contract
113:20

contracting
80:4

contractually
112:18

contradict
107:19
108:19

contrary
112:10

contributed
19:5,15

control
31:4
76:17

controlled
67:6
96:19



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 163 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

97:2
98:2,11

**convened**
140:23

**conversat
ions**
13:15

**convicted**
59:16

**convictio
n**
58:8

**cooperate**
117:12

**copy**
117:19
147:24,25

**corner**
128:15

**corporate**
10:24

**correct**
5:24
12:5,6,14
15:1,2
26:21,22,
25 27:1,
11 30:5
37:3,12,
24 38:11,
14,15
39:1
41:21
42:13
45:22,23
51:8
56:18,19,
22,23,25
57:1,13
58:1
62:8,9
68:6
70:18
71:2,3,5,
6,19

72:24
74:11,12,
21,22
75:9,10
78:8,11,
12 79:6,7
81:5,9,
10,14,15
82:3,4,22
87:10,11
88:1,2,
24,25
90:20,21,
24 92:1,2
93:8,9,
11,12,15,
16 94:10,
11,25
95:1,19
96:15,16
97:7,8,
11,19,20,
24 99:13
100:18
101:10,11
103:2,3,
7,8,11,
18,19
104:16,
17,20
109:2,3
117:4
120:23,24
121:3,5,
14 123:4,
5,9,10
125:23,24
126:2,3,6
128:12
129:21
131:8,13
133:22,23
134:9,10,
15,16
136:6,7,
19,21
137:3,4,
6,14
139:10
143:19,20

**correctly**
13:18
81:6
98:24
123:19

**correlati
on**
71:13

**Corvell**
59:1

**counsel**
4:18
101:24
143:14,24

**countersu
rveillanc
e**
100:2

**counterte
rrorism**
40:4

**County**
32:6 37:8

**couple**
7:1

**coupled**
100:3

**course**
84:15
86:9
88:24

**court**
4:11,19
5:11 7:3,
4,15 9:3
53:22
63:2
147:23

**courtesy**
9:1

**courtroom**
9:13

**covers**
66:1

**COVID**
80:1,4
82:17
137:15,24

**Craig**
4:23
40:24

**CRB's**
42:15

**create**
76:18
127:15
139:13

**created**
22:18

**creates**
65:12

**creating**
35:8

**crime**
23:18
26:1
82:21
112:22

**crimes**
33:8,24

**criminal**
23:17
25:14,23
27:3 30:4
113:24
114:6
147:2,3,8

**criminall
y**
21:10
25:13,15,
20 26:20
27:10
28:10
29:6,17

**critical**
12:21,24
16:10,23,
24 20:24
21:18
22:16,22
23:5 28:9
44:2
47:3,17
52:1
68:24

**criticism**
63:18

**criticism
s**
63:17

**criticize**
144:20

**critique**
144:20

**cross**
63:25
64:16

**CT**
40:2

**current**
22:22
34:12
37:11
39:25
40:16
102:6
118:4

**currently**
5:15 15:8
133:11

**curve**
92:12

**custody**
55:17
82:9,20
83:10,23,
24 84:8
87:3 98:9
100:11

**cyber**
40:1

---

**D**

---

**DA's**
25:25
63:2

**damage**
100:16

**Damon**
24:4

**danger**
84:1
98:23
113:15

**dangerous**
98:14

**dangers**
132:12

**date**
23:2,3
37:18

**dated**
140:17,19

**day**
43:25
52:12
53:17
57:19
72:6
96:10
139:4
140:23

**day-to-
day**
39:16

**days**
88:12
93:7
103:17

**deadly**
17:4



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 164 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 19:13 | **Defendant** | 44:21 | 5:17 | **determina** | **dictating** |
| 21:12 | 13:22 | 50:9 76:4 | 34:11,14, | **tion** | 78:7 |
| 28:2,10 | **defendants** | 77:8 | 18 38:3 | 18:22 | **died** |
| 29:3 31:1 | | 80:20 | 39:9,15, | 26:1 | 35:25 |
| 66:15 | 4:24 | 83:18 | 17,18,22 | 66:13 | 36:7,13 |
| **dealing** | **defer** | 112:10 | 40:10 | 79:1 | **differed** |
| 68:22 | 122:25 | 115:4 | 42:2,3 | 81:23 | 81:13 |
| 113:16 | **definitel** | 120:8 | 43:16 | 125:6 | **differenc** |
| **deals** | **y** | 127:15 | 48:21 | **determina** | **e** |
| 41:5 | 121:15 | 146:7 | 49:1,3,6, | **tions** | 20:3 71:8 |
| **death** | **definitio** | **departmen** | 17 60:8 | 130:2 | 85:4 |
| 5:23 | **n** | **t-wide** | 63:8 | **determine** | 107:14 |
| 29:8,19 | 20:24 | 121:8 | 101:2,3 | 26:19 | **different** |
| 36:16 | 21:3 | **departmen** | 110:2 | 42:17 | 15:18 |
| 100:13 | 105:2 | **ts** | 127:25 | 65:15 | 17:7 19:5 |
| **December** | 121:13 | 64:19 | 147:11 | 127:17, | 21:19 |
| 57:11 | **definitiv** | **Depending** | **describes** | 19,23 | 25:12 |
| **decided** | **ely** | 84:9 | 83:9 | 130:18 | 32:25 |
| 131:2 | 114:15 | **deployed** | **descripti** | 133:5 | 40:20,21 |
| 145:13 | **deliberat** | 128:4,5, | **on** | 135:21 | 43:12 |
| **decision** | **e** | 10 137:8 | 20:22 | **determine** | 46:22 |
| 27:17 | 25:21 | **deposed** | 74:19 | **d** | 47:1 |
| 65:3 | **deliberat** | 6:21 | 82:7,18 | 65:20 | 50:12 |
| 68:18 | **ion** | 36:2,10 | **design** | 79:3 96:3 | 55:4 |
| 94:9 | 54:23 | **depositio** | 25:5 | 107:4 | 56:11 |
| 95:22 | 55:9 67:5 | **n** | **designate** | 129:21 | 69:24 |
| 96:4 | **delirium** | 4:4 6:17, | **d** | 132:16 | 81:8,12 |
| 108:20,23 | 36:1 | 19 7:10, | 41:4 | 133:21 | 82:16 |
| 138:6 | **dementia** | 16 8:5, | **desired** | 134:12 | 84:17 |
| **decision-** | 10:16 | 11,23 | 19:18 | 135:20 | 91:7 98:5 |
| **making** | **department** | 9:8,11,17 | **desk** | 136:25 | 106:25 |
| 19:1 52:8 | 4:17 | 10:2,6,22 | 66:12 | 142:21 | 107:2 |
| **decisions** | 5:16,21 | 11:1,12 | **detail** | **developed** | 108:18 |
| 17:20 | 11:3 16:1 | 13:25 | 6:16 | 34:24 | 133:12 |
| 19:4 | 17:1 18:7 | 15:22 | **detective** | 35:2,10 | 147:6,8 |
| 28:13 | 32:11,16 | 40:23 | 17:17 | **Developmen** | **different** |
| 69:20 | 34:9 | 41:8 | 24:3,7 | **t** | **ly** |
| **declined** | 36:16 | 126:18 | 73:1 | 20:13 | 9:12 |
| 54:7,9 | 37:1,2, | 142:13 | 78:18 | 33:22 | 73:11 |
| **deemed** | 16,19 | 143:4 | 87:2 | 34:6 43:8 | 134:21 |
| 86:21 | 38:7 | 147:20 | **detectives** | **device** | **difficult** |
| 116:17 | 40:20,21 | **depositio** | 24:10 | 31:4 | 9:3 69:15 |
| **deep** | 43:12 | **ns** | 33:7 | 65:13 | **direct** |
| 45:13 | | 15:18 | 51:25 | **dictate** | 71:13 |
| | | **deputy** | | 102:21 | 124:1 |
| | | | | | 131:21 |



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 165 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

direction
113:4,10

disagree
61:3
74:14
99:4,13
105:24

disagreement
108:13
128:13

disagreements
108:8

disapproval
19:22

discarded
78:21

discharge
113:10
119:6

discharged
51:10

discharges
21:3,5
116:7

discharging
21:8

disciplinary
115:17

discipline
36:15
53:25
115:14,
15,16
139:5

disciplined
135:3
138:16

disclosed
15:10

discretion
85:1
97:17

discretionary
102:18

discuss
36:24
46:12
72:19
94:5
124:16
130:6
143:3

discussed
15:4 64:1
74:4
136:6
141:5
144:19

discusses
55:2 78:3
93:3

discussing
102:15
133:19

discussion
65:1
66:10
67:3
104:15

discussions
70:9 73:9
83:16

disease
10:17

disk
147:21

dispute
82:13

distributed
120:7
121:8

district
62:22
63:9
73:10,19
74:5
147:5

dive
45:13

division
5:18
34:14
40:4,9
49:8

document
139:13
143:2,6,
10,21
144:24
146:4

documentation
63:4

documents
12:16,19,
20 52:14
141:3,8
142:15,23

doing
26:11
28:21
32:24
45:6 63:7
73:16
74:8,9
84:17,20

87:5
89:13
101:21
131:20,24
133:1
139:7

dominate
100:10

done
8:22
17:20
23:18
31:15,17
42:17
45:4 52:9
60:22
61:15
64:8
65:24
73:11
77:25
97:11
109:13
129:17
132:10
133:11
134:13

door
65:9,11,
13 66:6,9
106:7
107:17
108:1,15
110:9,16,
19,24
145:8

doors
110:13

Dori
39:13

down
7:15 8:15
9:4 17:8
28:7 29:1
37:22
52:8 57:8
91:15

101:5
111:12
117:6
119:16
132:24
139:5

downtown
33:18

dozen
63:16

draft
46:1,7
69:15

drafted
46:5
87:19
101:22

drafting
92:16

drawn
99:8

driver's
34:8

drugs
10:12

dual
72:13

duly
5:3

during
7:16 8:5,
11,23
9:8,10,17
10:6
40:23
53:7
94:10
110:5,7
111:20
139:2

duties
39:16
135:2

dynamic
66:14
94:13,16
107:14

---

E

E-S-H-E
118:19

each
72:17
107:19
108:19
139:14

earlier
54:13
102:16
121:7

early
35:23

easy
66:11
68:11

education
32:4

effect
84:20
97:25
98:7
135:12

effective
31:7
131:2
133:11

effort
144:19

eight
93:2

either
38:23
59:17
122:14
126:12,16



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 166 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                     Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

elderly
103:5

elected
37:6,7
73:15
81:3

electronic
31:4

elements
66:16,22

else
8:24 13:4
28:23
73:7 77:5
89:24
93:19
103:24
113:15
114:4
118:7
120:2
129:9

emphasis
77:10

employed
15:5,8

employees
6:6 43:5
44:12

employment
32:24

encompass
69:16

encompasses
90:11
91:7

encounter
85:9

encountered

65:11
67:2,25
68:16
86:2,11

encounters
85:15

end
25:23
33:17
34:2 45:1
57:11
75:21
96:21
98:14
140:20

enforcement
22:6
35:14,16

ensure
113:1
139:15

ensuring
31:22

enter
127:2

entered
27:15
51:9

entire
64:2,4
132:4
134:14
144:24

entirety
132:5

entities
131:22

entity
10:25
11:2
78:23
87:2

entry
27:17
28:14
36:22
67:7
80:25
94:13,16
96:19
97:2
98:2,11
106:2,4,
22 107:4,
9 108:2
110:6
137:5

environment
100:3

environmental
83:2,6

equal
18:8

equipment
64:13
127:12

Eshe
118:18,
19,22
119:2

essentially
125:19
128:11
134:12

et al
4:16,17

evaluate
126:1
133:14

evaluated
125:3,10,
22

evaluation
121:25
122:6

even
29:25
74:15
75:14
83:11
87:10
88:15
90:4,9,
10,12
92:19
98:15
102:17
103:16
107:21
114:12
116:3
124:9
138:2

events
40:5,6,7
99:24

ever
6:21 13:9
34:20,22,
24 35:2,
13,17
40:23
43:17
48:9 85:3
110:8
118:3
125:16
139:24
140:1
144:24

every
20:23
33:16
39:18
53:13
68:10
69:8
77:21
82:1

120:19
141:19

everybody
38:23
75:3
80:21
120:15

everything
7:16,17
18:2,24
34:8
45:13
47:6 55:2
66:1
68:22
137:23

evidence
119:13

evoke
25:16

exact
23:3
37:18
53:4
116:13
117:21

exactly
92:13
115:1

EXAMINATION
5:7

examine
26:5

examined
5:4

example
10:16
27:4
63:18
74:23
92:22
98:2 99:1
116:4

excellent
8:22

except
82:1

excessive
105:2,7

excited
35:25
118:1

excused
55:1

executed
71:9
79:11

executes
64:6

executing
86:10

execution
6:11 12:8
35:3
77:21
103:22
110:8

executive
38:5
102:1
144:17
145:24

exhibit
10:21
11:11,16
23:23
41:9,16,
24 54:3
61:7
138:18,21
139:21
143:3

exhibits
4:6 60:21
141:4

exigency
82:12



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 167 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

83:9,22

**exigent**
81:14,17,
22 82:2

**exist**
141:3,9

**existed**
72:2
97:5,10

**exists**
72:2

**expect**
6:2,5
115:5

**expected**
135:1

**experienc
e**
32:4 68:8
132:9

**expert**
15:15
20:12
104:5
109:11
111:18
122:10
124:14
125:13
128:23
129:3,12

**experts**
15:9,14
44:18
46:13,15,
22,24
47:1,5,
10,15
51:21
52:3,7

**explain**
9:10,25
19:6 95:5
128:24

**explained**
95:4
128:15

**explosive**
127:12

**exposure**
67:7
100:5

**exposures**
80:2

**extended**
90:10
121:22

**extreme**
10:16

**eye**
128:17

**eyes**
67:15

───────────

**F**

───────────

**F-I-T**
16:17

**facilitat
ed**
74:6

**fact**
7:25
13:24
51:6 65:9
78:15
103:9
108:25
118:17
124:2
137:7

**factor**
30:12
81:25

**factors**
83:2,6
102:25

103:4
137:2

**facts**
18:20
25:24
44:4
84:19

**factual**
146:10,12

**failure**
19:17,20
63:11,19,
20 71:1,
12 72:23,
25 79:5
80:18
85:17,18
87:12
88:22
93:3,14
94:23
106:2
108:17
132:18
133:1,9
134:17
140:7

**failures**
70:17
75:7
79:12
139:3
144:6

**fair**
91:23
112:11
120:10
125:4,5
128:6

**fairly**
22:4

**falls**
39:7
115:16

**false**
53:24

**familiar**
122:9
145:2

**family**
36:6
83:15
99:24

**far**
8:22 35:8
53:11,16
54:12
75:11

**fatalitie
s**
39:24

**favor**
36:4,5

**fear**
67:17

**February**
4:2,10
97:6,10

**federal**
10:23
11:23
21:21
29:22
90:24

**feedback**
47:10

**fell**
138:1

**few**
33:5 40:6
88:20
96:11
97:22
124:16

**field**
91:22
121:25
122:3

**Fifth**
25:16

113:18

**figure**
37:8

**file**
135:8,15
136:1

**filed**
35:17,22

**files**
73:11

**fill**
77:24
94:2
132:3

**filled**
75:8
76:10
77:20,22
80:13
88:1

**final**
13:1
17:19
19:21
63:1 82:5
135:5
137:22

**finalized**
139:17

**finally**
33:24

**find**
45:8

**finding**
44:18
64:21
73:8
76:25
77:2
89:12
93:17,20,
21 103:24
108:21
109:9,14

119:24
120:12
135:7,25
138:11
139:2
144:23
145:6

**findings**
12:22
17:18
31:9
41:6,14
47:6,7,19
51:19
55:5,6,7,
19,24
57:3
60:20
136:5,8,
17,20,22
137:11
141:17
143:5,17
144:9
145:23

**Findley**
87:17

**Findley's**
126:18

**fine**
18:24

**finish**
30:8

**finished**
62:24

**fire**
99:9

**firearm**
51:10
113:10
116:8
118:20
119:2,3,
12,18
120:3



30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| **firearms**<br>119:1<br><br>**firm**<br>40:25<br><br>**first**<br>5:3 6:1,<br>18 8:8<br>12:11,12<br>24:2<br>32:5,23<br>37:1<br>41:24<br>48:13<br>54:2<br>61:25<br>93:6<br>110:19<br>112:15<br>139:22<br><br>**Fisher**<br>59:1<br><br>**FIT**<br>16:17,22<br>23:11,13,<br>15,17,21<br>24:9<br>25:24<br>27:5,21,<br>25 29:25<br>30:10<br>31:17<br>114:8,10,<br>13 144:15<br>146:25<br>147:2<br><br>**fits**<br>52:9<br><br>**five**<br>23:3<br>39:19<br>41:5<br>56:24<br>64:21<br><br>**flushed**<br>78:20 | **focused**<br>64:8<br><br>**folks**<br>69:22<br>90:11<br><br>**follow**<br>6:2<br>125:12<br>142:18<br><br>**follow-up**<br>13:19<br>17:11<br>44:25<br><br>**followed**<br>11:12<br><br>**following**<br>43:21<br>125:10<br><br>**follows**<br>5:5<br><br>**for**<br>4:22,23<br>5:10,11<br>7:11 8:4,<br>7,10,20,<br>22 9:3,19<br>11:22<br>13:6<br>16:5,6,9,<br>12 17:11<br>19:7<br>20:19,21,<br>22 21:7<br>22:12,14,<br>16 23:3,<br>20 25:21<br>27:2,4,6<br>29:1,6<br>30:22,25<br>31:3,10<br>32:10<br>33:5,7,<br>12,13,17,<br>19,23<br>34:4,12,<br>25 35:3, | 10,13,17<br>37:16<br>38:5,6<br>39:1,22,<br>25 41:8<br>42:22<br>44:13,14,<br>25 45:3,<br>5,15 46:9<br>48:19<br>51:15,24<br>52:11<br>53:22,25<br>55:9<br>57:21<br>58:13<br>59:15<br>60:20,21<br>61:12,14<br>62:17<br>63:2,3,4,<br>17 64:2<br>66:4,11,<br>12,19<br>67:6,17<br>68:18<br>69:8,12<br>70:12<br>71:2,21<br>73:20<br>74:2,4,23<br>75:15<br>76:1<br>77:7,17,<br>18,21<br>78:15<br>79:9<br>80:24,25<br>82:2,21,<br>25 83:5,<br>9,17,21<br>84:23<br>85:7,12,<br>18,22<br>87:7,25<br>88:1,4,<br>12,15<br>89:2<br>92:21<br>93:7,14 | 94:22<br>95:6,7,<br>10,14<br>96:4,19<br>97:7,11,<br>18 98:3,<br>12,16,21<br>100:1,14,<br>16 101:9,<br>18,21<br>102:12,17<br>103:1,14,<br>17,21<br>104:9<br>106:2<br>107:25<br>108:23<br>109:1,10<br>111:7<br>112:19,<br>22,25<br>115:17<br>116:4<br>117:22<br>119:4<br>120:8<br>121:21<br>122:2,10,<br>12,20<br>127:16,18<br>128:19,25<br>129:2,20<br>130:3<br>131:7,19<br>134:20<br>135:2<br>136:9<br>137:3<br>140:14,22<br>141:2,18<br>142:5,13<br>143:3,25<br>144:3,22<br>145:7<br>147:11<br><br>**force**<br>16:18<br>17:4<br>18:9,18, | 19 19:2,<br>13,14<br>20:8<br>21:9,12,<br>17 24:9,<br>11 26:17,<br>23,24<br>27:8,13,<br>18 28:2,<br>10,11,12,<br>14 29:3<br>31:1,2<br>35:24<br>52:24<br>66:15<br>105:3,7<br>116:8<br>126:15<br>127:2<br><br>**forecast**<br>93:24<br><br>**forensics**<br>73:13<br><br>**forget**<br>44:23<br><br>**form**<br>7:18<br>28:18<br>29:9<br>75:16<br>76:12<br>79:14,16,<br>19,20,22,<br>24 80:11,<br>20,21<br>82:23<br>95:20<br>102:13<br>105:4,17<br>106:11<br>107:12<br>120:16,21<br>121:7,9,<br>10,11,14<br>127:16,17<br>140:9<br><br>**formal** | 60:24<br>126:12<br><br>**formalize**<br>120:15<br><br>**formalize<br>d**<br>122:19<br><br>**formally**<br>60:15,18<br><br>**format**<br>30:22<br><br>**formation**<br>22:16<br><br>**formed**<br>114:2<br><br>**forms**<br>32:25<br>80:12<br>82:16<br>120:17<br>121:5,6,<br>13 141:21<br><br>**forth**<br>131:25<br><br>**forward**<br>68:4<br>73:21<br><br>**found**<br>29:17<br>57:6<br>70:17<br>77:15<br>84:7<br>97:12<br>117:1<br>138:7<br><br>**foundatio<br>nal**<br>131:18<br><br>**four**<br>18:14,17<br>20:18<br>33:8 |

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| **fourth** | 128:14,17 | **gap** | **gets** | 6:17,18 | 70:5 |
| 81:8 | 130:25 | 19:19 | 47:4 | 8:19 9:22 | 73:20 |
| 87:7,19 | 132:11,14 | 89:11 | 60:19 | 17:10 | 74:7 |
| 104:22 | 133:6 | | 61:13 | 32:22 | 78:25 |
| 105:1 | 139:5 | **gas** | 78:14 | 50:13 | 79:1 83:5 |
| | 141:22 | 66:17 | 116:16,19 | 56:3,5 | 89:11 |
| **frame** | | 100:3 | 122:1 | 57:23 | 94:1,8 |
| 44:9 | **front** | | | 59:18 | 95:24 |
| 90:10 | 7:5 10:20 | **gathering** | **getting** | 60:12 | 96:1 |
| 116:13 | 23:22 | 44:3 | 31:6 | 63:15 | 102:21 |
| | 27:5 | | 39:23 | 66:8 72:3 | 109:21 |
| **frankly** | 53:9,19 | **gave** | 46:18 | 75:17 | 113:16 |
| 6:9 50:25 | 54:7,9 | 82:7 | 60:10 | 78:19 | 119:15 |
| | 61:7 65:9 | | 67:19 | 79:8 | 122:20 |
| **free** | 99:22 | **general** | 90:11 | 86:16 | 124:16 |
| 19:11 | 110:9 | 8:23 | 115:3 | 88:8 90:5 | 127:5 |
| | | 16:19 | | 105:5 | 131:16, |
| **frequency** | **FTEP** | 35:3 | **give** | 109:19 | 17,18 |
| 90:8 | 121:21, | 56:17 | 8:12 9:21 | 113:3 | 132:21,22 |
| 132:9 | 24,25 | 98:1 99:2 | 13:25 | 127:21 | 133:6,25 |
| | 122:11,19 | 101:24 | 23:24 | 130:7,10 | 142:1,3, |
| **frequentl** | | 143:14,24 | 25:17 | 131:4 | 17 145:23 |
| **y** | **full** | | 53:24 | 132:8 | |
| 104:3 | 30:14 | **generally** | 68:8 | 135:7,8, | **gone** |
| | | 10:5 | 69:19 | 15 140:10 | 43:4 |
| **fresh** | **function** | 36:24 | 102:16 | 145:1,18 | 147:16 |
| 84:18 | 17:24 | 37:22 | 114:16 | 146:23 | |
| | 147:7 | 69:9,13 | 115:9 | | **Gonzales** |
| **Friday** | | | 116:22 | **goal** | 14:8 |
| 4:2 | **functions** | **generic** | 138:4,17 | 45:1,5,8 | |
| | 17:7 | 82:7,18 | | | **good** |
| **from** | | | **given** | **goes** | 5:9 8:4 |
| 12:22 | **further** | **get** | 53:13,16 | 61:2 64:6 | 69:3 |
| 20:13 | 45:3 73:9 | 26:9 44:8 | 80:14 | 101:23,24 | 138:20 |
| 24:12 | 100:8 | 49:13 | 83:22 | 131:6 | |
| 34:10 | 107:21 | 50:14 | 89:15 | 132:4 | **got** |
| 36:1,15 | 126:2 | 51:18 | 92:21 | | 34:13 |
| 37:22 | | 55:15 | 108:3 | **going** | 80:5 |
| 55:1 | **future** | 61:6 | 116:11 | 22:20 | |
| 56:17 | 145:18 | 67:11 | 117:2 | 25:24 | **governmen** |
| 59:11,13 | | 68:12 | 141:16 | 26:4 | **tal** |
| 77:4 | ———— | 75:23 | | 33:17 | 10:25 |
| 83:13 | **G** | 85:18 | **gives** | 39:20,23 | |
| 87:4,9 | | 93:25 | 86:15 | 42:1 | **governor** |
| 89:21 | ———— | 100:9 | 98:1 | 44:13 | 37:11 |
| 91:9 | **gang** | 113:3 | | 59:25 | |
| 94:17,19 | 33:8,12, | 115:5 | **giving** | 60:2 | **grabs** |
| 97:2 | 24 57:15, | 123:14 | 23:2 | 64:11 | 19:11 |
| 99:21 | 17 83:17 | 132:7 | 106:7 | 65:14 | |
| 100:14 | | 133:25 | 107:16 | 67:6,21 | **graduatin** |
| 114:22 | **gang-** | 144:2 | | 69:22 | **g** |
| 117:24 | **related** | 145:14 | **go** | | 33:4 |
| 124:8,21 | 57:10 | | 5:10 | | |
| 125:21 | 59:10,15 | | | | |



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 170 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader              Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

ground
   67:14

ground-up
   132:14

group
   130:5

guess
   16:2
   37:21
   60:25
   78:16
   91:14
   120:7

guide
   22:15
   24:1
   68:8,9

gun
   99:8

gunfire
   118:24

---

**H**

hadn't
   89:2
   103:16

hand
   110:15,
   18,24
   111:2,12

handcuffs
   19:10

handled
   29:4 70:7

handwriti
ng
   61:9

happen
   52:10
   67:18
   73:14
   114:4

119:11
132:21
133:16

happened
   30:2
   34:17
   37:10
   40:2
   73:25
   80:19,23
   86:4
   87:17
   130:17

happening
   99:9

happens
   44:10
   61:6 70:6
   88:10
   137:23
   140:25
   141:22

happy
   8:10 17:8

harm
   145:17

having
   5:3 13:17
   67:3
   68:24
   69:20
   75:25
   82:8,16,
   19 91:17
   92:4,8
   99:21
   101:4
   108:17
   117:11
   119:16

he'll
   99:16

head
   8:14 37:1

hear

10:2,4
70:3

heard
   12:12
   94:12
   124:9,12

hearing
   18:20
   25:18
   52:19
   102:20

hearings
   146:22

Heidi
   4:11

help
   30:18
   89:22

here
   4:13,15
   5:20 6:9
   7:1,23
   9:15
   10:18,22
   11:7,17
   13:7,20
   16:20
   32:3
   40:2,6,22
   44:25
   48:12
   54:3
   56:3,15
   57:7,21
   61:7
   67:21
   82:18
   83:11
   85:21
   86:14
   87:23
   88:19
   95:2
   99:10
   105:23,25
   108:7
   109:19

112:5
124:21
130:14
135:18
136:9
144:13
147:12

hey
   64:18

high
   39:20
   40:11
   128:20

higher
   18:7
   76:14
   132:6,8
   146:16

highest
   38:6
   50:24
   51:4

highlight
ed
   129:19

highlight
ing
   11:16

highlights
   68:23

himself
   114:3

hired
   32:14,15

history
   15:25
   32:4
   126:12

hold
   48:23
   76:14

Holmes
   42:4

49:19,21

holster
   119:4

homeland
   5:17
   34:14
   40:1,16

homicide
   24:7
   28:21,24
   34:20
   49:22
   57:9,12,
   15,16,24,
   25 58:5
   59:11,13
   62:21
   63:4,10,
   11,16,23
   64:3,4,7,
   22 71:15
   72:8,10,
   11,14
   73:2,11,
   18 74:2
   75:6,20
   78:1,7,24
   81:4
   131:23
   134:5,7

homicide'
s
   62:11
   71:1

homicides
   39:24
   49:9

honesty
   53:23

hood
   19:9

hope
   132:7

hostile
   100:3

Hotel
   58:1

hour
   53:2
   59:25

hours
   10:10,13
   52:16
   90:11
   91:12
   124:9,10,
   11

house
   26:4 87:3

housed
   30:16
   55:18

how
   6:23 9:10
   16:25
   28:15
   30:11,12
   32:5,10
   35:20
   43:13
   47:18
   49:24
   51:20
   55:12
   59:20
   71:8
   75:8,23
   76:21
   77:15
   79:1,5,10
   82:25
   89:17
   101:6
   104:15
   107:21
   114:5
   116:9
   117:5,13
   122:24
   124:11,22
   126:25



Case 2:24-cv-00074-APG-NJK   Document 57-10   Filed 05/16/25   Page 171 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**however**
19:3,14,
19 20:20
47:13
79:21
83:14
91:7,11
108:13
121:10

**huh-uh**
8:16

**human**
68:23

**hunting**
87:18

**hypotheti
cally**
29:16
101:19

---

**I**

---

**I.e.**
98:11

**IAP**
71:17,23
72:10,12
77:15,17,
19,20
78:3
79:10,16
80:5,24
81:7,8,
12,13
82:1
85:18
87:7,10,
19 88:1,7
89:4
92:17
120:6,15
121:1
129:14
131:6
134:9,22
137:3,5

139:9

**IAPS**
79:5 87:9
130:19
131:1,3

**idea**
25:7
50:19

**ideal**
119:20
132:19

**ideally**
116:21

**identical**
136:9

**identifie
d**
19:20
26:11
52:4
60:22
64:18
76:1,22
89:11
121:2

**identify**
69:2
107:1
133:4

**identifyi
ng**
83:15
99:25

**ideologie
s**
107:2

**if**
7:5,20,21
8:8,15,18
9:17,21
10:24
13:18,23
14:13
17:7

18:10,11
19:6
21:12,15
22:3
23:22,24
24:1
26:1,8,10
28:1,21
29:16,17
30:3
31:2,3
37:6 43:4
44:19
45:8,9,
13,19
46:6,21
47:2
48:15
50:15,25
51:16
52:4,6,8,
20 53:12,
14,17,19,
23,24
55:15,22
56:1 57:7
58:2,16,
23 59:1,3
60:17
61:4 66:5
67:4
68:11,15
69:2,10
70:5,6
71:15
72:6,16,
18 73:6
74:3,13
78:13
80:10
81:6
84:15,18,
25 85:2,
7,12
86:1,4,5,
7,9,10
88:13,15
90:4
92:10
93:1,23

98:24
100:23
101:12
103:23
105:23
106:19
109:7
111:11
113:14
114:4,5
115:11,25
119:3
121:12
122:7,21
123:13,19
125:14,17
127:15,
19,23
128:25
130:24
132:25
133:16
135:13
137:9,14
138:10,
17,18
139:5,25
140:6,15
142:19
143:21
145:2,18
146:18

**immediate**
39:9
116:17

**immediate
ly**
9:16 94:3

**imminent**
28:4

**impacted**
113:4

**impair**
65:14

**implement**
102:22

**implement
ation**
129:16
140:14

**implement
ed**
19:4,15
94:20
122:23,24
124:6
125:16
140:15

**implement
ing**
127:15
130:4

**importanc
e**
68:24

**important**
8:4 9:2
25:11
68:20
69:6
144:9
145:5

**impressio
n**
62:19

**improper**
95:17
108:24
109:1
134:17

**improve**
146:19

**improved**
127:14

**improveme
nts**
144:21

**in**
4:15
5:20,22

6:9,11,16
7:1,4,5,
12,17,22
9:13,15
10:10,13,
20 11:2,
4,16,21
12:1,8,17
13:14
14:2
15:10,18
16:3
17:5,24
19:5,10
20:16
22:10,19,
25 23:20,
22 25:14
26:15,19
27:5,14
28:2,4,14
29:8
30:22,25
31:22,23
32:6,12,
19 33:1,
8,18,20
34:2,4,17
35:16
36:4,5,21
39:21,25
40:6,19,
24 41:19
42:8
43:5,10
44:13,20
45:16
46:12,14,
21 47:14,
20,24
48:1,2,4
49:4,5,13
51:6,15
52:2,5,6,
13 53:9,
19 54:7,
9,13,20,
22 55:20
56:9,10
57:11



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 172 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

58:3,20
60:16
61:1
62:5,21
63:9,10
64:9,10
65:21
66:2
67:5,12,
18,21
68:2,7
69:20
70:5,7
71:23
72:4,8,11
73:18,21
74:16,20
75:1,5,8
76:14
77:8,25
78:1,4,
19,22,23
79:9,15
80:23
81:13,17,
23 82:1,5
85:1 86:9
87:23
88:1,7,
14,17,19,
22 89:8
90:4,15,
19,23
91:17,19,
22 92:4,
5,16
93:20
94:18
96:4,12,
13 97:5,
10,21,25
98:7,9
99:6,9,22
100:2,5,
9,10,12,
24,25
101:1
102:1,6,
8,15,19,
25 103:9,

15 104:1,
18 105:19
106:17
107:18,22
109:11
111:7,25
112:23,25
113:3,11,
15
115:13,16
116:18,25
117:12
118:3,13,
24 119:3,
10,21
121:22
122:4,10
123:1
125:25
126:11
127:1,3,
16 128:2,
5,15,20
129:10,
19,23
130:5,17,
19 131:4,
5,23
132:5,9,
11 133:12
135:2,12,
13,15,17,
25 136:13
137:17,
22,25
138:2,3,
16
139:11,14
140:7,8,
13 141:2,
18 142:13
143:9
144:14,
15,19,24
145:17
146:9,21

**in-depth**
17:2 72:7

**inaction**
67:17

**incident**
12:1,21,
24 16:10,
24,25
17:19
20:25
21:19
22:17,23
23:5 26:6
28:8,9
44:2
45:11
47:4,17
49:23
52:1
59:14
66:12
68:24
77:19,22
79:13
115:6
118:24

**incidents**
69:3
116:5
133:15

**include**
21:4
28:13
112:1,3
137:7

**included**
103:4
137:5

**includes**
51:2

**including**
10:12
54:1
134:14

**inconsist
ent**
106:21
107:5,10

**incrimina
te**
114:3
115:2

**incumbent**
137:19

**independe
nt**
31:18

**independe
ntly**
26:25

**indicate**
16:5 62:7
111:1

**indicated**
51:15
126:18

**indicates**
56:12
61:11
112:8

**individua
l**
13:10
15:4
18:5,8
19:8,10,
11 25:12
33:7
35:25
36:13
58:12
84:9
85:7,9,
10,12,15
86:7
104:7
107:16
108:14
119:17

**individua
lly**
13:11

**individua
ls**
17:6
82:9,20
83:10
103:6
113:2

**informal**
126:13

**informati
on**
40:12
63:4
71:23
72:9,11
79:23
80:8,16
98:10
103:10,
12,13,14
113:14
115:3
117:12
131:15
145:12,20
146:9,10,
12,23

**infringe**
6:7
113:17

**infringin
g**
115:1

**initial**
27:17
44:11
61:18
79:19
80:8

**initially**
80:10

**injured**
118:23

**inserted**
80:14

128:10

**inside**
63:20
70:3 85:9
98:10,14,
18 103:6,
11,15
106:5
119:17

**instance**
31:3
78:1,22
80:23
112:25
131:23
137:17

**instances**
31:5
74:21
122:4

**instead**
80:22
99:5

**instituti
onal**
91:8

**integrity**
53:23

**intellige
nce**
63:19

**intend**
13:6

**intent**
133:2

**intention
al**
24:17
25:5

**intention
ally**
116:7

**interests**

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 78:17 | 86:16 | 63:16 | 133:20 | 9:2 11:22 | 70:2,3,7, |
| **internal** | 113:16 | 64:7,9 | 144:14 | 12:12 | 16 71:11, |
| 6:3 16:13 | 126:20 | 72:7 87:6 | **involveme** | 13:14 | 12 73:17 |
| 21:23 | 128:16 | 113:24 | **nt** | 14:5 | 74:3,4,9 |
| 23:16 | 133:19 | 114:6 | 12:8,11 | 18:10,11 | 76:4,5,6 |
| 30:13,14 | 135:8 | 134:12 | 140:22 | 19:25 | 77:9,15, |
| 74:18 | 142:21 | 135:14 | **involving** | 21:1 | 25 78:15, |
| 75:12 | 145:14 | 141:3 | 35:24 | 22:6,14, | 16 80:10, |
| 139:12 | **invented** | 146:13 | **Isaiah** | 18 23:2 | 15,25 |
| 140:12 | 115:20 | 147:3 | 5:23 | 24:2,17, | 81:4 |
| 143:14 | **investiga** | **investiga** | **issue** | 19,24 | 82:15,24 |
| 144:11,21 | **te** | **tions** | 31:8 | 25:6 | 83:9 |
| 145:21,25 | 21:12 | 16:18 | 45:10 | 27:22,23, | 86:18,21 |
| 146:4,6, | 25:3 | 40:8 | 62:16 | 24 28:7, | 87:1 89:1 |
| 13 147:6 | **investiga** | 144:11 | 63:23 | 20 29:1, | 90:8,10 |
| **internall** | **ted** | 145:21 | 65:7 | 18,24 | 91:2,15 |
| **y** | 21:17 | 146:6,12, | 66:23 | 30:2,12, | 92:3 93:1 |
| 26:9 | 50:21,25 | 23 147:3 | 67:21,24 | 20,21 | 95:8,12, |
| 145:11 | 58:19 | **investiga** | 68:1 | 31:6 | 14,16 |
| 146:1 | 65:15 | **tive** | 69:15 | 35:23,24 | 96:7 |
| **Internet** | 70:16 | 21:9,17 | 95:2 | 36:11 | 97:5,9, |
| 120:17 | 112:22 | 24:9,10, | 112:6 | 38:12,18 | 15,17 |
| **interoffi** | **investiga** | 11 28:11 | 116:25 | 40:21 | 98:1,6, |
| **ce** | **tes** | 33:9,19 | 121:15 | 43:21 | 15,23 |
| 41:10 | 26:24 | 49:7 72:3 | 125:9,18, | 44:22 | 99:22 |
| 138:22 | **investiga** | 73:1,24 | 21 | 45:15,20, | 100:5,7 |
| **interplay** | **ting** | 79:17 | **issued** | 24 46:2, | 101:6,7, |
| 16:22 | 21:10 | 86:22 | 36:2 | 3,5,8,9, | 14,22,23 |
| **interview** | 23:18 | **investiga** | 58:11,15 | 22 47:2 | 102:15 |
| **s** | 26:18 | **tors** | 114:24 | 48:16,25 | 105:6 |
| 44:14,16 | 78:23 | 23:18 | **issues** | 50:20,23 | 106:15, |
| 52:22 | 115:5 | **involve** | 28:16 | 51:1,18, | 17,21 |
| 73:14 | **investiga** | 124:17 | 39:25 | 20 52:19 | 108:1,9, |
| 87:5 | **tion** | **involved** | 46:12 | 53:3,20, | 10,16 |
| **into** | 13:13 | 15:7 18:5 | 55:13 | 21 54:4, | 111:10, |
| 22:11 | 25:23 | 20:7 | 64:18 | 14 55:25 | 11,13 |
| 30:12 | 26:17,24 | 21:20 | 67:5 | 56:9,10 | 112:3,12, |
| 31:12 | 27:9,13 | 22:19 | 68:17 | 57:8,9, | 20 114:3, |
| 32:22 | 28:12,22 | 26:7,19 | 69:16 | 14,15 | 10,11 |
| 33:2 | 31:12,14, | 42:25 | 81:11 | 58:2,23 | 115:13,25 |
| 62:11 | 16,19 | 43:5,10 | 144:23 | 59:1,3,5, | 116:4,5,6 |
| 68:18 | 40:3 | 44:12,17 | 145:25 | 7,8,12 | 117:10, |
| 71:8 72:7 | 43:23 | 49:6,9,13 | 146:18 | 61:9,15 | 14,16,17, |
| 80:11 | 45:15 | 51:1 | **it** | 62:3,7 | 22 118:2, |
| 83:4,23, | 47:11,21 | 53:7,13 | 5:25 7:6 | 63:3,8,17 | 12 119:5, |
| 24 84:8 | 62:11 | 54:4,11, | 8:1,4,19 | 64:8,9,14 | 14,20,21 |
| | | 25 113:8 | | 67:9 | 120:15,16 |
| | | | | 68:4,20 | 121:7,9 |
| | | | | 69:4,5, | 122:2,4, |
| | | | | 15,25 | 9,14,24 |

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 174 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

123:12,
18,20,21
124:3,5,
8,11,22
125:3,15,
17,25
126:1,2,7
127:14,
15,18,19,
21
128:15,
16,17,22
129:1,13,
18,20,22
130:1,4,
9,25
131:2,6,
23 132:4,
14,19,25
133:5,6,
10,11
134:12,
21,23
135:7,13,
19
136:10,25
138:1,22
139:1,5,
6,15
140:1
141:17,20
142:21
143:4,12,
13,15,23,
25 144:2,
8,24
145:1,2,
4,17
146:19

**it's**
11:2,12
19:13
20:15
22:4
23:22,23,
25 25:11
31:6,22
34:13
39:6,13

40:19
42:20
45:12
47:8,9
50:14
51:15
52:20
53:21,22
61:20
62:3
66:11
77:25
78:25
84:22
92:13
98:5
110:14
113:9,12,
13 116:6,
14,18
118:12
122:1
124:9
132:19
133:25
137:18
140:3,11
144:1
145:5

**items**
76:3,7

**iteration**
82:1

**its**
6:2,5
22:16
30:11
37:2 41:6
51:19
132:5

**itself**
47:8 48:7
68:2
108:24

---
**J**
---

**Jackson**
42:5
50:5,8

**Jackson's**
50:17

**James**
14:15,19
49:6

**Jamie**
49:1,17

**January**
5:24
34:17
140:18,19

**jeopardy**
28:5

**job**
8:22
39:16
42:19
47:25
90:19,23
130:1
134:4

**Joe**
37:10

**John**
15:6 54:8

**join**
32:16

**joint**
74:7

**judge**
7:5 9:15,
21,23
74:17
75:15,25
76:11
86:15

**judgment**
36:3

65:19
66:20
68:4 78:5
102:18

**judicial**
124:25

**July**
123:18

**jumped**
30:6

**jury**
7:5,11

**just**
7:1,3
13:14,17
15:4 16:3
18:1
20:14
24:23
26:14
30:21
31:9,13
32:14
35:3
36:24
37:21
41:9
42:1,16
43:3
48:19
51:22
52:11
56:8 59:5
60:12
61:5
64:14
67:8
68:22
69:15
70:7
71:21
73:12
74:1
75:19
76:9,22
77:17
79:8

82:18
84:11,22
87:21
92:8
94:19
95:9,13,
24 97:17,
22 98:6
99:3
101:19
114:7
117:7,14,
17 118:11
120:8
122:19
123:14
125:2,21
127:5
132:20
133:1,10
134:22
135:25
138:4
145:15
147:10

**justifica
tion**
99:23
127:18
131:19

**justified**
27:14
30:2

**justify**
103:1

---
**K**
---

**K3448m**
61:10

**keep**
45:6
73:15
117:19
128:17

**Kellcy**

42:6

**Kerry**
13:22

**Kevin**
60:14

**key**
60:19
143:4,17

**kicked**
80:6

**killed**
67:19

**kind**
19:6
26:16
30:6
33:6,16
63:25
64:19
67:10
80:22
91:14
103:10

**knife**
19:8,9,11

**knock**
104:16
105:11,
15,19
106:6,20,
23 107:5,
10,15,22
108:10,23
110:7,13,
24,25
111:5,9,
12,24
126:5
144:25

**knock-
and-
announce**
27:19
35:7,11
104:19,22



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 175 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

105:1
106:3

**knocked**
110:9,17

**knocking**
108:12
110:14

**knocks**
110:15

**know**
12:15
13:18
15:6 16:4
22:4,13,
22 23:25
28:21,22
29:15
30:8
31:22
37:4
40:1,5
43:23
44:24
46:4,5,22
48:15
50:2
52:4,6,19
54:4
57:21
58:9,11,
23 59:1,
3,6,8
60:13,17,
23 61:11
63:20
67:20
68:15
69:10
70:1
74:24
80:11
85:5,13
87:22
88:9
90:1,8
91:10
98:25
101:1,14

102:6
105:24
106:24
107:16
109:12,15
110:11
111:10,
11,20
114:5,7,
15 115:2,
15 116:2,
13
117:10,
14,25
118:1,11
119:12
120:21
122:22
123:23
125:14
128:25
130:13
132:25
135:13
138:13,15
139:5,25
140:15,24
141:2,22
142:4,12,
19,22
144:1
145:1,9

**knowing**
119:21
128:11

**knowledge**
12:1,3
15:3
47:15
59:16
63:14
104:8
109:12
122:11
126:22,25

**known**
75:1

**knuckles**
110:15

**Konsten**
4:11

**Koren**
39:14

**Kubla**
13:22
118:23

**Kubla's**
118:20

---

**L**

**labeled**
52:21
143:3

**labor**
135:12

**lack**
65:20
134:20

**lanes**
25:21

**language**
70:12
98:5
125:20

**large**
39:24

**Larkin**
42:3 49:3
101:2

**Larochelle**
42:3 49:6

**Las**
4:1,16
5:15,21
11:2
15:25
16:25
32:11

36:25
83:17
118:16
120:19

**last**
10:10,13
13:21
14:3,7,
11,14,18,
21,23
45:20
49:25
57:8 82:2
127:3
141:23

**lasted**
52:15

**later**
7:12,24
8:1 9:21

**Latia**
4:15

**latitude**
69:19

**law**
7:5 21:21
22:6
29:22
35:14,16
37:3
40:25
76:15,19
90:24
99:1,3,17
102:17
105:12
146:17

**lawful**
75:25

**laws**
76:17
135:12

**lawsuit**
35:22
36:2

**lawsuits**
35:17

**lead**
17:17
92:21

**leader**
38:24,25
39:6
87:16
126:17
127:20,21
131:3,5,
16,17

**leaders**
39:2,3,4

**leadership**
63:10
104:2
132:7
137:18

**leading**
30:3 52:2

**learn**
32:17
69:1

**learned**
132:11

**learning**
32:25
92:12

**least**
14:13,16,
20 43:16
61:20
78:2
91:22
113:15
128:9
141:6

**leave**
119:1
135:13

**led**

39:18
75:13
79:10
80:16

**leeway**
102:17

**left**
37:16,18
41:10
129:23

**legal**
75:24
76:15
105:2
106:16

**lengthy**
64:13

**less**
92:12
102:12,15

**lesson**
65:21

**let**
6:17
16:19
26:14
48:16
98:5,25
105:10,24
133:25
142:12,22

**let's**
12:18
15:24
32:2,3
37:21
56:15
57:20,23
59:24
60:1
61:23
73:11
74:1,3
82:6 84:6
93:2
101:18

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 176 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

104:12
109:18
112:13
138:21

**level**
6:13,14
18:12
38:13
39:20
40:10,11
42:18
50:15
80:1
127:21
128:17
130:7
137:18

**levels**
132:6

**Lexitas**
4:13

**liberty**
11:15

**lie**
53:24

**lieutenant**
14:25
20:15
22:25
24:4,8
33:14,15,
19,23,25
38:14,16,
21,23
39:8
43:15
51:2
53:8,10
54:5
94:18
101:8,9,
15,19
131:6
136:5,12,
18,23
137:13,

15,24
138:8

**lieutenants**
30:18

**life**
32:7
116:15

**like**
22:5 24:2
28:13
59:18
61:3,9
70:20
75:4,19
77:11
84:6
93:21
94:5
99:7,10
112:5
114:22
121:17
122:4
123:18
124:19
128:22
136:3,11
143:2
144:11
145:18
146:13

**liked**
63:2

**limit**
66:7

**limited**
74:24
100:16

**line**
44:20
61:14
85:5
131:21

**list**
11:1,13

48:12
90:4
123:8
144:9

**listed**
41:23
55:20
76:24

**listing**
76:2

**lists**
46:22
54:4

**litigation**
5:20
15:10

**little**
6:18,19
9:11
15:24
17:7 24:1
30:6,9
32:2
33:23
37:16
43:19
46:18
57:22
62:5 82:7
97:16
102:16
104:12
112:13,21
117:17
125:3

**live**
91:19
92:5

**lived**
32:5

**located**
100:4

**logs**
134:14

**Lomax**
36:14

**Lomax's**
36:16

**Lombardo**
37:11

**long**
28:15
32:5,10
48:3 53:4
84:13
94:7
106:15
118:3

**longer**
48:4,9,11
113:2
140:17

**look**
8:19 9:20
22:11
23:23,25
24:1 31:7
45:20
46:21
48:12
50:25
54:2 57:7
60:10
70:8 72:6
76:9
124:19
130:24
133:16
136:3,10
138:4,21
142:5
143:22
144:18
145:16
146:18

**looked**
22:16
25:13,15
27:13
28:8,10
49:8

73:25
95:21
99:7
145:10
146:16

**looking**
11:11
25:9
27:25
28:23,24
55:23
85:7,12
108:6
123:21

**looks**
24:2 61:9
136:10
143:15

**lose**
137:18

**lost**
147:17

**lot**
15:17
20:2
52:10
67:7
79:17
91:7
100:5
104:3
106:16
130:21
131:24
133:12
135:17

**loud**
8:12

**lucky**
69:2

**lunch**
110:3

**LVMPD**
12:24
41:10

45:21
48:14
79:14,21
122:17
124:23

**LVMPD's**
91:21

**LVMPD004512**
142:10

**LVMPD4828**
70:21

**LVMPD4832**
77:13

**LVMPD4834**
94:7

**LVMPD4837**
104:14

**LVMPD4839**
65:8

**LVMPD4842**
112:7

**LVMPD4843**
118:16

**LVMPD4844**
121:19
124:20

**LVMPD4846**
127:7

**LVMPD4858**
130:16

**LVPD**
19:23

**LVPD's**
19:2

_____

**M**

_____

**made**
6:10
22:10
26:1,10



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 177 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

45:9
56:22
65:19
71:7
100:20
102:11,15
108:12
111:11
115:23
122:16
129:8
130:3,14
132:11
140:12,24

**magazine**
119:9

**main**
27:2
116:15

**maintain**
139:13

**majority**
56:1

**make**
7:19,22
8:4 16:4
17:19
18:1,21
24:24
26:12,14
45:5 55:3
66:13,19
67:16
68:3,14
69:20,23
79:1
83:18
84:23
85:10,11,
15 86:18,
19,24
102:18
119:8,18
130:1
133:17
142:20
144:19,21

146:14

**makes**
129:15

**making**
87:4

**management**
26:6
45:11
62:17,18
65:1

**mandated**
21:20

**manipulated**
118:19

**manipulation**
120:3

**manner**
11:5,21
26:16
54:21
81:17
90:19,23
128:5

**manpower**
64:13

**manual**
108:17

**many**
6:23 10:1
23:8
35:20
43:13
51:20
69:24
91:11
102:25
124:11
137:2

**March**
123:20

**marked**
4:7 41:8

**Marquis**
41:1

**matrix**
115:16
139:13,
17,24
140:6

**matter**
14:2
40:24
44:17
46:13,22,
24,25
47:5,9,15
51:21
52:3,7

**matters**
46:15

**maybe**
14:9
15:19
61:10
86:14
117:25
132:11
134:21

**Mcmahill**
37:13,14,
15 41:20
60:14
61:2,21
89:24
93:19
103:23
109:7
118:7
120:2
122:16
129:9

**Mcmahill's**
61:8

**me**
6:17 8:7,

9,20,23
11:20
16:19
17:8
23:24
26:14
40:15
43:19
48:16
58:3
74:14
78:2 79:9
81:16
95:15
96:24
98:6
99:22
101:12
105:10,24
117:18
123:19,20
124:13
128:24
133:25
136:11
137:14
138:4,17
140:3
143:25
144:3,4

**mean**
8:15
18:24
47:2
52:19,21
69:18
82:20
84:25
110:12
121:23

**meaning**
20:4
63:19

**means**
56:21

**meant**
143:18

**medical**
10:15
113:11

**medications**
10:13

**meet**
51:20

**meeting**
44:17
52:15,18
53:1,2,7
54:20
55:8
141:7,24

**meetings**
52:2,10,
20

**meets**
52:11

**Melanie**
14:22

**Melton**
94:18

**member**
12:3
18:1,8
20:5,6,9,
10,11
21:5 29:7
46:1
48:20,22
49:7
50:4,20
51:13
52:6
83:15
89:6
99:24
141:19

**members**
17:2
18:4,13,
14,15,17,
19 20:3,

18,21
23:9
24:15,18,
21 25:1
41:22
42:7
43:12
44:4,17
48:15,17,
18 49:2,5
50:10,12
51:22,23
55:13
67:8,19
90:12
102:1
109:8
141:16

**memo**
61:6,13,
14,19
124:20
138:23
141:1

**memorandum**
12:25
13:1
41:10,13,
17 42:12
45:2,22
48:7,10,
13 51:19
54:3
55:20
60:11,13
112:7
118:15
127:6
129:24
130:11
133:18
134:2
135:18
138:22
139:15
140:13,17
146:3,9



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 178 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**memorandums**
141:4

**memory**
10:18
14:17
58:3
123:19
137:14,23

**memos**
61:12
102:3,7

**Mendoza**
24:3

**mention**
144:5

**mentioned**
46:11,23
47:12
54:13
78:16
121:7
136:8
144:13

**method**
131:12

**Metro**
6:1,5,11
11:5,21
15:5
21:24
22:15
47:20
52:14
64:18
68:5 69:9
70:11,15
71:4,7
72:22
73:7,25
74:11
76:9 77:5
78:11
79:3
84:13
85:5,17

88:4,21
89:1,6,25
91:25
93:13,20
94:15,21,
24 96:13
101:14
102:24
103:20,24
104:21,25
105:9,11,
14 107:4,
9 108:22
109:8
111:4
117:1
118:8
119:23
120:3,19,
22 121:20
123:4
124:7,18
125:1,6,
19 126:19
127:8
128:1
130:18
131:11
132:16
133:5,8,
20
136:16,25
139:8
140:7
146:2

**Metro's**
6:2 26:18
62:13
69:14
72:5
74:18
75:11
82:10
84:5 85:1
86:6
89:9,10
95:8,12,
15 98:15
110:22

111:24
113:20
126:11
134:11
143:22

**Metropolitan**
4:16
5:15,21
11:3 16:1
17:1
32:11
37:1

**middle**
135:13
137:18

**minutes**
59:25
88:20
126:14

**misaligned**
80:17

**mischaracterization**
47:3

**missing**
142:14,23

**missions**
91:19
92:5

**mistakes**
6:10
26:10
45:9
75:20
132:11

**misunderstood**
57:23

**mixed**
64:19

**model**
22:15

**modification**
126:8

**modified**
56:24
59:20
62:7
124:18
125:20

**modify**
55:6
127:9

**moment**
11:19
23:24
28:10
30:1
69:21
103:15
138:4,17
147:10

**month**
58:17
121:22
122:8

**months**
13:23
34:13
44:15
52:2
58:17
66:12
97:22

**more**
6:16 7:1
9:9 13:20
14:13
15:20
23:2
24:23
29:12
30:24
37:22
52:16

53:2
63:3,17
72:7
76:6,23
81:20
90:6,11
93:3
95:11
97:3
104:3
106:13,17
107:7,14
109:17
123:23
132:9

**morning**
5:9

**most**
62:2
76:14
131:15

**move**
112:5

**moved**
34:13

**moving**
66:14
74:10
93:25
120:5
123:2

**Mr**
4:21,23
5:8,14
23:21
27:16
28:18
29:5,9,13
36:16
41:7
59:24
60:7
75:13,16
76:8,12
77:1
82:23
83:8

88:5,6,8,
18 95:20
96:6
97:23
98:21
99:4,8,
12,15
100:13
102:13,23
105:4,8,
17,18
106:11,14
107:12,
20,25
109:1,18
110:1
123:17
140:9,16
142:1,3,
5,7,9,10,
12,16,17,
24 143:1
145:8
147:10,
14,15,23,
25

**much**
95:4
138:2
144:11
146:13

**multi-family**
100:6

**multiple**
23:6 25:8
69:11
70:17
73:14
90:2
93:22
110:11

**murder**
62:12
75:5

**mutually**
113:5



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 179 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

117:14

**my**
5:12 8:9,
13 9:9
22:20
32:7,12,
24 34:5,
12 36:5
39:25
46:6 48:1
59:12
63:14
66:20
68:7 70:4
81:1
83:13
94:17
98:25
99:3,16
102:6
110:13
117:24
118:3
135:6
137:23
140:22
142:18
147:12,
16,17

**myriad**
68:17

———

**N**

**name**
5:10,11,
12 30:14
31:22
36:12
49:25
61:8
94:19
118:18

**names**
59:7,8
144:12,
13,14,22

**narcotics**
78:18,20
96:20
98:3,12

**national**
22:1,13

**natural**
109:16

**nature**
36:19
68:23
99:23

**navigate**
144:2

**necessarily**
11:25

**necessary**
115:3

**need**
8:12 31:7
73:10
74:6
81:14
83:22
100:8
112:25
113:11
115:4
119:18
127:25
130:19
142:24
147:24

**needed**
76:1
80:1,13
85:6

**needs**
9:22
42:17
45:4
67:17
125:21

**negative**
56:12
139:1
141:19

**negligent**
119:6

**negotiated**
112:18
118:3

**negotiation**
117:9,22

**Nevada**
4:1 21:20
29:21
32:6,20
37:3
105:12,
15,20

**never**
36:21
47:13
57:12
65:25
68:21
75:14
76:5
96:20
98:4
140:6
142:19

**new**
10:1
31:11
69:15
91:17
92:4,20
97:25
98:16
104:2
120:6
122:1,5

**newer**
92:8
121:7,10

**next**
22:21
38:13
41:3
44:15
65:6
77:11
91:14
94:5
118:14
121:17
123:14
124:16
143:2

**NFDD**
128:9

**NFDDS**
128:4
137:8

**nine**
94:6

**no**
8:14,15
10:11,14
12:10
13:8,15
14:1
15:16
24:9 25:4
31:20
35:12
36:6,23
41:2
43:3,18
50:10
56:22
61:14
68:2,16
71:10
74:3,8
75:3,18,
21 82:2
83:23
88:9 89:5
97:17
98:9
99:10
102:14

103:10,14
108:10
110:17
113:1,2
115:10
116:17
122:13
128:19
137:10
147:7,15

**no-knock**
104:16
108:11
124:24
125:15
127:23

**nobody**
110:8

**none**
27:9
141:12

**nonspecific**
99:2

**nonverbal**
8:17

**nonvoting**
42:6

**normally**
87:1

**North**
83:17

**not**
6:7 8:24
9:14
10:3,5,19
11:6
13:15,23
14:5,13,
16 15:16,
23 17:25
19:18,23
20:20
21:22
22:3,4,18

23:14
24:16,17
25:21
26:2,12
27:6,16,
21,23
28:5,23
31:6
34:21,23
35:1,5,
12,15
36:8,17,
20 44:5
46:7 47:8
48:6,11
49:24
50:2
51:15,17
52:6
53:12,17,
21 55:18,
23 56:2,4
57:17
58:22,25
59:2,4,6,
7,8,17
60:24
61:5
64:22
65:5 66:8
68:3,18
69:7,17
70:5,14
71:21
72:1,20
73:2,5,17
74:18
76:10
77:3 78:7
80:2
82:16
83:14,19,
25 84:15
86:4
87:23
88:15,23
89:1,5,7,
18 90:4
91:6,11
92:18,20,



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 180 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

23 93:1,
10,18
94:23,24
95:9,13,
15,24
96:5,13
97:10,18
98:8,11
99:2
103:14,21
104:11
107:23
108:4,10
109:6,15
111:1,2,
3,23
113:12
114:1,6,
17 115:1,
10,17
117:3,7,
16 118:11
119:19,21
120:4
121:8,11
122:7,9,
13 124:2,
4 125:17
126:10,
16,24
127:4
128:21
129:1,11,
25 130:7,
12,15
131:2,12
132:23
133:10,21
134:25
135:12,
16,23
136:2,21
137:2,9,
12,16,25
138:8,12
139:5,9,
25 140:2,
3,15,24
143:11,23
144:22

145:2,6
146:2,6,
14,23

**notes**
46:6
71:1,16,
18,20,22
72:4,21

**nothing**
14:17
61:2,3
89:21
99:9

**notice**
11:1,12
44:12

**noticed**
142:14,22

**now**
10:20
11:11,23
14:25
16:19
17:9,16
20:4
21:18
23:1 27:8
37:14,15
39:13
45:24
56:8
57:19,21
60:9
63:15
65:8 68:5
70:25
72:2,13
93:23
96:12
97:21
102:6
109:4
110:3
118:4
121:23
122:20
124:10,11

133:18,24
136:8
138:21

**number**
41:4
61:18,19
64:21,22
65:4,7
70:21
74:10
77:12
93:2 94:6
104:13
111:23
112:2,4,6
118:14
120:5
121:18
123:3
124:12,19
125:19
126:13
129:5,10,
18 134:1

**numbered**
130:15

**numbers**
80:10,17

**numerous**
77:14

**nutshell**
106:17

---

O

**O'DANIEL**
14:22,25
38:17
51:2
53:8,10
101:9,15,
19 131:6
136:5,12,
18,23
137:13,
15,24
138:8

**oath**
4:20 7:2,
4 53:20,
21,22
110:4

**object**
9:9
99:12,16

**objection**
9:18 10:4
28:18
29:9
75:16
76:12
82:23
95:20
102:13
105:4,17
106:11
107:12
140:9

**objection
s**
9:10,16

**objective
ly**
19:3,13
95:25

**obligates**
7:6

**observe**
22:6

**observers**
20:20

**observing**
102:20

**obtain**
85:14

**obtained**
80:9

**obviously**
76:18
116:14

**occasions**
80:7

**occupied**
66:18

**occur**
86:5
87:24
88:13
91:12
102:2,8
108:12
125:22
126:1,2

**occurred**
5:23
12:13
15:11
23:17
26:2
28:25
45:13
57:11,25
58:21
73:7
75:21
87:15
91:10
93:7
99:10
105:25
123:17
132:3
135:4
141:24

**occurs**
43:23
54:23

**ODB**
20:13
22:25

**of**
4:4,13,15
5:20,23,
24 6:1,7,
11,18
7:1,4,5,7
8:8,9,17

9:1,9
10:15,20,
23 11:1,
13,16,23
12:3,8,
12,15,16
13:2,9,
12,16
14:10
15:7,17,
21 16:13
17:3,4,6,
16,18,22
18:4,8,
18,19,20,
23 19:1,
2,6,9
20:2,3,7,
17,24
21:3,5,
13,22
22:5,16
23:6,12,
16,19,21,
22 24:2,
21 25:2,
22 26:4,
5,6,11,
16,25
27:5,9,21
28:1,10,
23 29:3,7
30:1,6,
13,14,19
31:1,2,
21,22
32:5,17,
18,20,23
33:6,16,
20 34:2,
4,17
35:4,18,
24,25
36:7,8,
12,16,19,
25 37:2,8
38:10
40:11
41:14,22,
24 42:8,

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

20 43:14,
22,24,25
44:5,6,9,
23 45:1,
11,20
46:1,11
47:5,17,
21 48:13,
14,17,21
49:8,13,
22 50:14,
19 51:6,
19,25
52:10,12,
15,17,24
53:9,20
54:2,7,9,
10,14,20
55:4,8,
17,19
56:9,10,
16,20
57:3,6,
11,18
58:18
59:17
60:21,24
61:5,8,
16,24
62:2,3,6,
19 63:6,
8,10,11,
17,19,25
64:3,4,9,
13,15,16,
18,19
65:2,9,
20,25
66:3,14,
16,22,23
67:4,7,8,
10,11,13,
17,23
68:7,17,
24 69:11,
21 70:11,
17 71:10
72:14,23
73:8,12,
13,17,22,

23 74:8,
19 75:1,
7,21,23
76:2,22
77:8,9
78:3
79:5,17
80:3,22
81:11,12,
23 82:1,
9,20,21,
24 83:3,
5,10,15,
25 84:6,
15,17,20
85:19
86:9,20
87:3,12,
15,17,20,
22 88:22
89:4,5,6,
8,16,19
90:1,8,
10,15
91:1,7,
12,14
92:11,15,
16,18,19,
23,24
93:3,6,14
94:22
95:10,14,
16,25
96:1,19
97:6,10,
22 98:3,
10,12,13
99:1,9,
17,22,23
100:5,25
101:1,23,
25 102:5,
9,20
103:1,4,
10,14,17
104:2,5,
15,22,25
105:15
106:4,16,
19 107:2,

14 108:3,
4 109:8,
13 110:8,
9,14,24
111:20
112:6,15
113:8,11,
17,18,24
114:5,23
115:20
116:3,8
117:9,19,
21 118:8,
9,11,15,
25
119:12,15
120:3,4,
19 121:21
122:3,14,
15 123:8,
18,21
124:2,17,
20,23
126:8,11,
13 127:1,
6,7,11
128:1,16,
21 129:8,
9,16,17
130:5,10,
13,20
131:1,4,
21,24
132:2,6,
18,20,21,
22,23
133:1,2,
12,18,19
134:1,4,
8,20
135:1,12,
14,17
136:2,20,
25 137:9,
18
138:11,14
139:3,6,
11,12,14,
16
140:12,

13,21,23
141:6,12,
14,16
142:14,23
143:13
144:5,8,
13,17
145:6,15
146:5,8,
15,20
147:4,12,
20,21,24

**off**
19:8 42:1
45:22
46:3
55:2,10
60:2 64:5
66:3
72:15
83:15
88:12
95:25
96:1
109:19,21
114:22
134:9
147:21

**offered**
90:2,9
93:22
123:12,18

**office**
16:13
25:25
30:13,14
62:22
63:9
73:10
74:5
139:12
140:12
143:13
147:5

**officer**
16:13
18:8,10,
11,12

19:7,12,
13 20:7
21:3,6,8,
15 25:19
28:1 31:5
32:14,21
33:3,5
35:23
38:7,24
42:5
50:5,8,
17,24
53:13
68:15
84:18
85:14
86:24
87:1
90:14
112:21
113:8,25
114:2
116:7,22
118:17,
19,20,22,
23 119:2,
7,16
120:20

**officer's**
73:23
115:2
118:18

**officer-
involved**
5:22 6:10
12:5
16:16
17:3
18:23
20:23
21:2,7,14
23:19,20
24:22
25:3,9
31:12
34:16
37:10
40:18
41:7 42:9

43:6,11,
13,22
44:1,3,11
47:21
48:19
58:21
62:12
70:16
71:13
74:16
75:22
93:5
96:17
97:23
113:7
116:4,6,
10
119:11,22
121:2
123:16
128:3

**officers**
6:2,5
13:10
15:4,7
21:13
25:22
26:12,18
27:3,10,
14 28:4,
15 29:2,
6,16
31:24
39:3
42:25
44:19
45:7
50:11,21
51:1
52:22
53:19
54:3,5,
11,25
62:19
65:9
66:4,14
67:18
68:6,12
69:12,19,

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 182 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

22 85:21
86:1,18
90:15,16,
18,23
100:1
102:17
106:8,20
107:23,24
108:1
110:12,23
112:19
113:13
114:16
115:8,23
116:3,10
117:2,11
121:12
122:2
126:14
127:2
133:20
136:9
144:13
145:6,17

**officers'**
18:5 19:3

**official**
79:21
96:18
101:20

**often**
131:21

**OIO**
16:12,22
30:11,20
139:24
140:6
143:4,17
144:5

**OIS**
16:15
38:10
143:22

**old**
80:20
122:7
123:11,12

**older**
79:20
97:15,16
121:6

**on**
4:13
5:20,23
6:7,13,14
7:25 8:18
9:12,16,
22 11:16
12:24
15:11,14
16:4
17:24
18:7,13,
15,18,19,
22 19:9,
21 20:9,
12,17
22:5,24
25:18,23
28:14
34:9
37:20
39:20,23
40:13
41:23
43:1,6,
10,17,25
45:22
46:5,18
47:6,16,
18 48:13,
18,23
49:4,10,
19,21,25
50:13,15
51:4,17
52:12
54:19
55:4,12,
13 57:6
60:5,9,21
61:7,13
62:2,3,16
64:1,8,
14,16
65:1,7,

11,13
66:5,10
67:14,15,
23 68:1
69:2,14
70:11,21,
23 72:5,
10,15
73:10,21,
23 74:5,
10 75:21
76:7,21
77:12
79:1
80:6,17,
18 84:2,
9,12,23
85:2
87:18,21
88:13
90:4 91:4
93:7,25
94:6,8
95:4
100:2,14
103:13
104:13
108:9,17
109:24
110:3,9,
13,15,22,
24 111:9,
13 112:5,
6,9
113:9,14
114:21
115:1,16
116:23
117:7,16,
24 118:9,
14
119:11,15
120:5,17
121:10,
14,18
123:2,21
124:13,20
127:6,14,
17
128:11,13

129:3,11
130:21
131:5
133:24
134:9
136:22
137:19
138:1,18
139:3,21
141:19
143:15,
22,25
144:1
145:21,23
146:19

**on-the-
job**
91:9
123:14

**once**
19:25
27:14
62:24
86:21

**one**
6:24 7:23
9:1,9
17:17
21:13
23:12
24:23
29:12
35:21
38:2,19,
20,21
39:12
46:11
48:11,14
49:8
51:24
52:11,17
54:14
56:4 57:7
59:6,9
60:20
61:25
63:6,18,
25 64:14,

24 65:6,
25 66:21,
23 67:4,
13 71:10
72:1
75:22
76:22
80:21
81:11,20
82:2,5,24
83:3 84:6
87:7,15
89:14
94:5,7,8
95:11
97:3
106:13
107:7,18
109:17
110:17
114:15
120:21
121:21,22
122:8
123:12,18
124:14
126:19
127:11
128:1
129:11
134:8
136:20
138:17
139:11
147:21

**one-page**
138:22
140:18,20

**ones**
21:10
48:14
49:12
52:7
131:17,
21,24
132:1

**online**
120:18

**only**
11:7 20:3
25:21
26:12
36:9
38:8,19,
20,21
42:7
52:18
63:12
72:9
80:21
89:13
93:6
95:18
97:1
107:25
108:25
116:4,25
124:24
125:15

**onto**
122:12

**openings**
93:24

**operate**
66:3

**operation**
71:17
89:8 91:4

**operations**
145:15

**operator**
92:10

**operators**
69:21
89:19
90:3

**opinion**
47:20,24
48:1 85:1

**opinions**
51:20



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 183 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**opportunity**
28:4
42:23
53:14

**opposed**
94:16

**opposite**
10:6
132:20

**options**
55:5 66:7
108:18
130:6

**order**
12:17
103:1

**organization**
35:14

**Organizational**
20:13
33:21
34:6 43:8

**organizations**
22:2

**original**
111:22

**originally**
32:13
124:22

**originates**
77:25

**originating**
78:23
86:22
87:2

**other**
7:23 9:18
12:7 13:5
15:3,7,14
17:11,13
22:5
24:21
25:2 26:9
28:14
29:3
31:8,23
35:14
36:9
40:22,24
46:1 50:9
54:11,20
55:20
59:6,9
61:1
64:15
69:2
72:1,17
82:25
88:12
89:16
91:8
95:18
96:11
99:6
105:19
107:18,19
108:19
109:8
112:23
114:15
116:5
117:22
122:17
125:25
128:12
131:5
135:24
141:3,8
144:11
146:21
147:8

**our**
16:23,24
20:14

21:13
22:11
26:7,12
37:11
40:4,5,7,
8,13 45:6
47:13
53:21,22,
23 60:19
62:19
66:3 74:1
76:18
82:15
101:24
115:16
117:15
118:12
120:18
123:23
132:7
142:21
143:14,24
144:1,11
145:17
146:6,16,
21

**ourselves**
76:14
133:17
144:19

**out**
8:12
44:18
60:19,23
63:16
66:16
67:6
73:17
75:9
76:10
77:7,20,
23,24
79:16
80:13
82:9,17,
20 83:10
87:17,21,
23 88:13
89:17,22

95:7,9,
13,19
96:8,9
97:13
99:22
104:3
111:2
114:25
120:17
121:11
122:3
123:20
127:13
132:3
137:15,24
143:13,15
144:15,23
145:12,
13,20,23
146:22,24

**outcome**
19:5,16,
18

**outcomes**
26:8
141:19

**outdated**
121:6,13

**outlined**
83:7

**outside**
13:16
14:10
70:2
73:22

**outstanding**
113:1
116:17

**over**
5:17
13:23
14:5,16
20:5
21:16
30:17

33:23
34:13
43:7
44:15
47:13
49:7,10,
22 60:10
79:19
86:22
87:3
101:3,9,
24 107:18
124:9
138:19

**overgeneralize**
69:7

**overpolicize**
66:19
67:16

**oversee**
18:2 40:4

**overseeing**
88:16

**oversees**
34:7
39:17

**oversight**
16:14
30:13,15
40:11
139:12
140:8,12
143:14

**oversimplification**
30:24

**overturn**
55:6 65:4

**overturned**
55:25
56:25

59:20
61:25
62:7,14
63:13
64:20,25
65:6,23
66:21
136:18

**overviewing**
39:20

**overwhelm**
100:9
106:4

**overwhelming**
106:23

**overwhelmingly**
57:2

**own**
6:2 22:7
26:18
37:2 63:7
79:9
134:11

_____

**P**

**p.m.**
109:25
147:21

**P1**
62:18,23
63:12
64:22
71:1,15,
18 72:4
73:2,22
74:2,7
75:20

**page**
24:2
41:24
45:20



Case 2:24-cv-00074-APG-NJK   Document 57-10   Filed 05/16/25   Page 184 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

48:13
54:2
56:16
57:6  61:8
62:2,3
65:7
70:21,23
77:12
80:9,17
94:6
104:14
108:7
112:6
118:15
121:18
123:2
124:20
127:6
130:16,21
133:24
134:1
136:25
143:16

**pages**
48:3,8
87:9
121:10
136:4

**paper**
55:4
114:23
123:21

**paperwork**
30:19
32:18,24

**paragraph**
57:8
108:7
130:25

**paraphrase**
105:23

**paraphrasing**
74:13

**part**
13:12
20:24
27:21
30:13
33:20
34:4
36:21
42:8
43:14
44:5,6
47:17
55:8,9,10
60:23
88:5,6
89:16
91:1
99:14
102:5
104:22
105:15
110:24
113:24
114:5
115:20
117:9
118:25
141:6
143:9
144:17
146:15
147:4

**participate**
91:19
92:5

**particular**
12:2
40:19
48:2
62:16
64:21
69:14
103:22
133:19
143:21

**particularly**
32:3  67:4

**particulars**
87:22

**parts**
56:9,10

**passed**
55:25

**passing**
13:14

**past**
132:11

**patrol**
19:5
32:14
33:5,11,
16,17
34:3,11
35:23
39:22

**patterns**
31:2

**pause**
109:16

**PC**
83:14,18

**peace**
90:14

**peer**
18:7,11
20:10
50:4,10,
12,19
51:12
52:5

**penalty**
7:7

**people**
9:4  10:1
12:17
25:8

67:15
80:2
83:22
84:22
86:17
93:24
103:5
106:4,7
117:25
122:12
130:5
131:15
134:8
135:10

**people's**
144:22

**per**
21:14
53:22

**Perfect**
60:1

**perform**
90:19,23
106:20

**performed**
111:25

**period**
122:6,7,
12

**perjury**
7:7

**permanent**
48:18,20,
22  49:2,
15

**person**
36:7
45:21
58:18
102:19
111:16
112:23
123:23

**person's**
29:18

129:3

**personal**
11:25
12:2,7

**personally**
143:10

**personnel**
39:25
61:19
120:8
122:17
135:8
136:1

**persons**
53:7

**pertinent**
71:22

**phase**
64:10
121:21

**phone**
75:3,4,5

**phones**
75:2

**phrase**
120:7
144:25

**phrased**
46:19

**physically**
80:3
110:9,23
111:11,14

**pick**
63:16

**picked**
39:4
58:12

**picture**
28:13

**piece**
114:22
119:12
123:21

**pillars**
68:8

**pitfalls**
132:12

**place**
86:16
88:1

**places**
135:17

**plaintiff**
4:22
27:19
36:7

**plan**
65:12,21
77:19,22
79:14
131:20
132:5,13
133:15

**planned**
71:9

**planning**
6:11  12:8
71:17
89:8
92:16

**play**
81:23

**played**
7:11
68:18
83:4

**playing**
70:2

**plays**
89:17

**pleading**
113:18



Case 2:24-cv-00074-APG-NJK   Document 57-10   Filed 05/16/25   Page 185 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**please**
4:18 5:9
8:9,14
10:21
11:19
29:11
97:3
106:13
142:9

**point**
51:18
65:1
66:11
67:1 77:9
89:23

**police**
4:17
5:16,21
11:3 16:1
17:1
32:11,16,
20,23
33:2,4
37:1
83:17
86:25
108:1
112:19
113:21
115:21
145:15
146:7

**policies**
6:3 21:23
26:6
34:25
35:3
44:20
52:9
68:6,21
69:6,8,10
72:5
74:18
75:7,12
76:16,18
82:11
85:19
86:6

87:12
88:3
96:14
100:23
126:20
133:22

**policing**
30:15
31:23
68:11
88:10
133:12

**policize**
68:21
73:15

**policy**
6:11
12:24
19:2,17,
20,23
26:8
35:8,9
53:23
62:17
63:8 66:1
67:21
69:11,12,
16 70:13,
17 71:11
72:24,25
73:1,18
74:2 76:2
79:4,11
80:18
91:21
94:23
96:18,25
97:1,5,9,
15,17,21,
25 98:7,
16
100:12,13
101:13,20
102:2,4,5
104:8
106:1
108:17
110:22

111:4,24
112:10
115:13
116:9
117:15
118:12
126:13,19
127:1
132:18
133:1,9
145:11

**political**
37:3,4,7,
8

**portion**
77:24
78:3

**position**
5:15
69:14
89:9,10
90:13
95:8,12
98:15
102:6
105:14
112:24
118:4

**positions**
49:15
94:1,2

**positive**
56:13
123:22
141:18

**possession**
75:1

**possible**
83:1

**possibly**
15:19
61:10
68:10

**potential**

25:8
68:10
132:12

**practice**
76:23
96:1,4,21
98:5
111:4

**practices**
76:1,21

**preapproval**
124:25

**preclusion**
28:5

**predict**
68:10
93:23

**Premier**
71:2

**premises**
127:3

**preparation**
13:5

**prepare**
12:17
114:9
139:24

**prepared**
11:20,22
15:12
23:21
42:12
140:6
143:12

**preparing**
142:13
143:9

**prescription**
10:13

**present**
9:15
86:17

**presentation**
42:22

**presented**
25:25
47:7

**presenter**
42:24

**presenting**
17:18

**presents**
54:24

**presiding**
20:5

**press**
68:4

**pretty**
138:20

**previously**
93:21

**primary**
98:8

**principles**
27:19
35:7
105:2
107:6,11

**prior**
11:13
87:9
92:10
93:5
100:13
143:6

**priority**
116:15

**privilege**
144:17
145:24

**probable**
84:2,14,
16,17,24
85:2,10

**probably**
15:19
63:15
95:15
103:25

**problem-solving**
33:6

**problems**
65:12
77:14
91:17
92:3,5,
14,15,19
121:1

**procedurally**
18:1

**procedure**
10:23
11:24
101:13
111:5

**procedures**
6:3 21:24
26:5
32:25
34:25
35:3,9,11
52:9
75:8,12
96:15
100:23

**proceed**
79:2



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 186 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**proceeding**
25:14

**process**
6:19 9:11
10:2
12:25
16:24,25
20:25
21:19
22:9,12,
17,19,23,
24 23:6
30:12
43:20,25
44:14
45:2
47:4,18
51:25
72:13
73:15
89:17
101:18,21
102:1
122:20
133:3
140:21,22
144:10
146:5,15

**produce**
11:3

**produced**
11:8,24
23:12
52:14

**produces**
23:13
51:19

**products**
146:22

**professional**
48:21
49:17

**program**
122:1,4

**progressive**
115:15

**prohibiting**
89:21

**projected**
93:24

**promote**
33:17

**promoted**
34:3

**promoting**
33:9,13,
25 93:25

**pronounce**
49:24

**pronounced**
118:18

**properly**
76:10
117:2
121:14

**property**
86:17
96:20,25
98:4,13
100:16

**property-only**
97:7,18
98:16
100:14,17
104:10

**prosecuting**
73:19

**Prosser**
42:2
49:1,17

**protection**
25:22

**protections**
105:16

**provide**
108:2
111:23
113:14

**provides**
40:12

**providing**
47:10
117:12

**provokes**
28:22

**public**
6:7 21:5
30:22
84:1
98:24
102:12
112:8,15,
17,25
113:6,19,
23 114:17
115:9,22
116:2,11,
23 118:9
143:19
144:23
145:12
146:14,24
147:1,4,9

**public's**
29:7

**publicly**
145:16

**pull**
28:1,9
29:2
114:25
143:25

**pulls**
30:1,3

**purpose**
42:16
43:24
96:19
98:3,12
106:3

**push**
145:12,13

**pushed**
77:7
79:16
120:16

**put**
7:17 19:9
30:21
60:19
64:9,14
70:5
71:23
72:10
106:17
140:12
143:15
144:22
145:20,23
146:22

**putting**
61:18
135:25

---

**Q**

---

**quarantine**
137:17

**quarantined**
137:25

**question**
9:17
22:21
29:15
35:6

44:23
46:9
72:18
99:13
103:25
104:4
109:10
110:5
111:17,19
122:10
128:2,9

**questions**
8:9,13
9:9
13:15,20
16:20
17:11
24:20
42:23,25
44:25
53:12
54:24
72:16
113:8,9
114:20
147:13,16

**quick**
59:22

**quicker**
76:17

**quickly**
78:19
100:9
116:14,19

**quite**
40:6

**quote**
57:10,11
96:18,21
98:8,14
124:13

---

**R**

---

**R-A-D-E-R**
5:13

**R-E-G-G-I-E**
5:12

**Rader**
4:4,14
5:2,12,
13,14
42:4 60:8
110:2
147:20

**raise**
128:16

**raised**
32:8

**rake-and-break**
128:23

**ram**
110:12,
16,20

**range**
34:8

**rank**
18:6,8
38:4
39:1,7
50:20

**ranking**
38:7
50:24
51:4

**ranks**
50:12

**rather**
94:7

**reached**
26:8

**read**
7:11 42:1
98:6
100:7
114:22

**reading**



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 187 of 203

30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

134:13

**ready**
60:10
99:8

**real**
42:16

**really**
22:12
28:7 29:1
34:9
40:17
47:8
50:14
64:7,8,17
66:1,2
67:11
95:4
114:5
118:1
120:14,25
122:2
125:1
128:19
130:15
131:17
132:7
134:22
136:24
137:22,25
146:17

**reason**
27:2
63:12
64:20
66:8 74:4
78:14
83:9,21
84:18
87:25
88:12
100:8
117:22
118:2
120:25
128:19
144:8

**reasonable**
19:3,14
95:23,25
119:14,20
126:5,21

**reasonableness**
66:4
95:25

**reasons**
9:1 75:15
102:4
128:1

**recall**
36:1
48:6,11
54:6,15
55:19,22
56:1
70:14
73:3,5
77:3,4
83:19
92:7
98:24
100:21

**recategorize**
124:23

**receive**
36:15,18

**recent**
96:14

**recently**
57:16
58:5,16
126:17

**recess**
60:4
109:23

**recognized**
91:16
107:13

137:1

**recollection**
54:10
56:6
59:12
66:21
70:4 81:1
83:13
94:17

**recommendation**
101:22
120:14
123:6
124:1,6,
21 125:11
130:3,14
139:14
140:11,14

**recommendations**
22:10
42:21
55:3
129:16
139:11,16
140:24
143:5,18

**recommended**
22:1,4
120:6
121:1,20
124:23
129:19
135:19,21
139:22

**recon**
81:3

**record**
5:10 8:5
9:19 16:4
52:20,21
60:3,6,9
77:17

95:5
109:19,
22,25
110:3
117:7,16
141:15
147:4,9,
22

**recordation**
141:14

**recorded**
52:23
54:17,20,
22 112:9
117:3,5,
18

**recording**
52:15,17
54:19
55:1,10
118:9
141:6

**recordings**
141:8

**records**
55:12
141:2

**recover**
19:8
78:19

**recovered**
119:2

**recovering**
96:20
98:3,12

**rectified**
89:20

**red**
56:9,12
141:18

**redundancies**
88:11

**reevaluate**
133:14

**refer**
119:8

**reference**
44:9
60:21
98:22
111:7

**references**
57:14,15

**referencing**
130:22

**referred**
92:6
94:12

**referring**
92:13

**refers**
57:9 65:8
118:16

**reform**
22:9

**refresher**
77:9

**refuse**
114:18
115:9,11

**regarding**
5:21
11:17
13:5,16
41:4,6
79:5
89:25
102:3
103:24

105:14
116:9
120:3
122:17
129:5
142:18

**Reggie**
4:4,14
5:2,12
147:20

**regular**
88:15
104:18

**reinforced**
65:11,14

**rejected**
81:7

**relate**
40:17

**related**
91:14

**relates**
104:16

**relationship**
62:23

**relatively**
116:19

**release**
30:22
144:12
146:2,6,
14

**released**
143:19
146:25

**remain**
27:4
82:9,20
112:24

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 188 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader            Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**remaining**
83:10

**Rembert**
58:24

**remember**
14:5,9
36:12
51:16
53:1,3,4,
6,10,12,
18 54:12
64:25
65:3
66:10
67:3
71:12
77:7 81:6
83:16
92:13
93:1,18
99:21
100:21
109:6
125:8
126:10
129:7
138:9

**remembering**
100:7

**remove**
119:9

**repeat**
8:9 26:10

**rephrase**
8:10
48:16
105:10

**replaced**
80:20

**report**
23:11,13,
15,17,22
42:12,16,
20 45:19,
25 46:21

48:2
51:15
55:24
56:9,16
57:4,6
59:19
60:11,19
62:1,2,5
63:5
114:9
134:1
135:5
136:14
144:5,15
146:3,25
147:2,8

**reporter**
4:11,19
5:11 7:3,
15 9:3
147:23

**reports**
15:12,13,
15 30:21
48:4
73:23
146:24

**represent**
145:3

**represented**
40:24

**request**
63:8
78:14

**requested**
10:22
81:2,4
127:24

**requesting**
77:23
127:19
131:22

**required**
27:18

77:20
105:12,20
113:20
115:19
146:17

**requirement**
126:6

**requires**
106:6,22,
24

**rescue**
119:16

**reserve**
129:2

**residence**
98:10,19
100:10

**respond**
44:7
60:15
109:1
126:6
137:16

**responds**
44:2
60:18

**response**
8:13
9:21,23
60:25
73:6 77:4
93:20
106:23
117:6

**responses**
8:17
117:20

**responsibilities**
137:20

**responsibility**
64:15

**responsible**
30:25
138:7

**rest**
44:23

**restrict**
125:15

**result**
19:19
36:16
67:18
73:8
75:21
90:1
109:8,13
118:8
124:2
129:9
138:11
139:6
146:5

**resulted**
5:22
58:20
74:16

**resulting**
29:8

**retire**
135:10

**retired**
15:1,6
37:17
54:8
135:4

**retiring**
93:24

**retrained**
138:16

**retraining**
36:18

**reused**
87:9

**review**
7:19
12:4,22,
23,24
13:13
16:7,10,
24,25
17:13,14
20:1,2,
21,25
21:19
22:17,23
23:6,7,8
24:12,13
27:22
28:9 30:2
31:1
41:5,14,
23 42:16,
20,22
43:1,24
44:2,4,5,
6 45:3
46:1,8
47:4,8,17
49:14
51:23
52:1,25
68:25
70:9
71:11,18,
19,22
72:3
132:4
134:9
138:3
139:2
146:20

**reviewed**
12:4,16,
20,21,23,
25 15:13,
21 20:24
43:14
46:2
56:17
105:25
145:3

**reviewing**
18:21
24:22
52:13
71:16
130:17
134:23
135:2

**reviews**
17:3
23:16
64:3,5
101:25

**reworded**
125:2

**right**
6:1,25
7:18,25
12:11,15
15:9 17:8
25:15
26:23
27:2,4
28:17
31:25
32:1
37:11
38:25
39:7,13
48:16
50:21
51:4,5,7
57:19,20
58:3 61:8
70:15
75:11
90:16
91:1
97:9,23
99:10,22
100:4
103:20
104:19
106:16
110:2
114:17,19
115:2
116:18

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 189 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

120:11,
14,21
121:14
126:4,19
128:25
129:18
134:18
135:5,11
136:10
142:4

**rights**
6:7 25:12
27:4
29:7,18
35:18
112:22
113:18

**risk**
78:21

**role**
30:11
31:21
50:3
51:17
81:23
92:16,21

**rolling**
73:23

**room**
9:15 55:1
66:2
128:16,20

**Rothenburg**
14:15

**round**
119:9

**rounds**
113:3

**rubber-stamp**
134:24

**rubber-stamped**

134:22

**rule**
8:23
9:16,22
10:23,24
11:23
98:1

**run**
21:16

**running**
62:25

**Russell**
14:12

---

**S**

**S-A-C-O**
95:5

**SACO**
78:4,8
81:18,24
95:3,5,7

**safe**
45:7 83:1
86:18,21
90:19
102:12,15
116:17
119:8,18

**safely**
83:1
100:10

**safer**
26:13

**safety**
112:8,15,
17 113:1,
6,19,23
114:17
115:9,22
116:3,11,
15,23
118:9

**said**
7:16 22:5
47:2
48:15
70:22
74:1
82:6,21
125:25
126:1,20
133:10

**Sam's**
57:25

**same**
7:4 8:24,
25 9:4
17:6 20:2
35:6
46:14,25
47:9
50:15,20
73:22
112:22
120:16
121:9
123:2
145:22

**Samuel**
4:12

**Sasha**
49:1
101:2

**sat**
22:24

**saw**
13:21
14:7,11,
14,18,21
50:15
61:21
86:7 99:7
141:17,23

**say**
7:23
24:23
29:11
39:6

43:16
46:17
57:2 66:5
73:12
76:4,13
81:12,20
84:6
95:11,14
97:3
101:19
105:6
114:11,25
115:24
121:6
125:21
128:14
134:21
141:13
142:1,3
147:17

**saying**
9:4 44:19
54:15
59:6,10
64:17
71:12
75:18
76:9
107:23

**says**
29:25
41:9 51:1
61:2 82:7
84:13
92:3,14
111:10,
11,13
129:18,20
135:19
138:23
139:1,16
143:4

**scenario**
68:10

**scene**
44:7,8
51:4
116:14,

16,21,23
118:25

**scheduled**
123:8

**school**
89:14,18
90:2,5,9,
10,12
91:6,12
93:4,11,
22 94:2
123:7,15
124:3

**schools**
118:13

**Scott**
15:6 24:3
54:8
133:21
134:3,5,
13,18,22
135:19

**Scott's**
135:25

**se**
21:14

**search**
6:12 12:9
35:4
58:20
64:1,6
65:10
71:8,24
72:12
74:15,17,
20 75:8,
13 76:4
77:8,21
79:10
80:24
82:22
83:2
85:8,22
86:10,13,
15 94:10,
22 95:10,

14 96:25
97:7,11,
14,18
98:17
100:15,
16,17
103:9,17
104:10
105:16
110:8
111:9,20
124:24
125:15
127:16,24
130:18

**searched**
106:5

**searching**
19:7

**second**
67:22
108:7
130:25

**seconds**
7:1
107:25
108:3
109:1
126:13,20

**secretary**
42:6 46:5

**section**
20:15
30:17,25
39:21
40:5
47:13
49:9
57:23
62:21
64:3,4,
11,16
67:15
71:21
72:20
78:1
88:17



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 190 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

89:13
90:5
101:24
122:5
130:10
135:18

**sections**
30:16
40:8
43:10
49:13
72:17
79:17

**secure**
116:22

**securing**
19:10
118:25
119:16

**security**
5:18
34:14
40:1,17

**see**
24:5,6
28:20,21
30:3 31:2
41:11
45:13
50:6,7
56:15
57:21
74:3
96:22
102:6
119:10
128:22
131:9,10
132:12
133:16
135:17
139:19,23
144:12
146:18

**seeing**
44:20
48:11

53:18
89:17
102:19

**seek**
85:3

**seem**
50:23
95:15

**seemed**
107:19
117:17

**seems**
63:18

**seen**
9:12
11:13
13:17
48:4,9
74:25
114:21
140:1
143:6

**seize**
86:16

**seized**
76:3,7

**seizure**
105:16

**selected**
17:23
81:19
90:12

**self-
assessmen
t**
146:20

**send**
45:2

**senior**
120:20

**sent**
13:2
41:18

60:13
79:19
80:5
141:1
142:20

**sentence**
57:8

**separate**
24:12
30:17
59:11,13
80:6

**separatel
y**
136:13

**September**
97:22
102:8

**sergeant**
15:6
18:11,12
33:10,11
39:7 42:5
49:25
50:3
51:3,4,
12,14
54:5
87:17,25
88:7,14,
16,22
89:2,12,
22 91:3,
18,20
92:4,8
93:4,6,14
111:22
116:16,19
124:2
126:18
133:21
134:3,5,
6,8,13,
18,21
135:19,25

**sergeant'
s**
51:17

**sergeants**
39:2
88:12
90:3
121:21
122:20

**series**
113:8

**seriously**
47:22

**serve**
10:25
17:24
65:10
81:14
83:1

**served**
63:21
76:5
81:17
103:10,18

**serves**
58:3
123:19
137:14

**service**
64:2
81:22
83:5
95:10,14
103:1
127:17

**services**
49:8

**serving**
97:14

**settlemen
t**
36:6

**seven**
34:13

62:3
77:12

**several**
8:6 31:5
44:15
52:1 53:3
54:4

**shadowing**
89:16

**shaking**
8:14

**share**
23:8
24:15,17,
21 25:1

**sheet**
55:4

**sheets**
141:16

**sheriff**
13:3
17:22,24
20:4
37:6,8,
13,14,15,
17,23,25
39:11,13
40:13
41:18,19,
20 42:2
45:3,16,
17,24
46:2,10
49:16
60:13,15,
17,18
61:2,4,8,
15,17,21
73:7 77:5
89:24
93:19
103:23
109:7
118:7
120:2
122:16

129:9
140:14
144:18
145:24

**sheriff's**
45:3

**sheriffs**
38:3
40:12

**shoot**
21:6

**shooting**
5:22 6:10
12:5
16:16
18:23,25
19:22
20:23
21:2,7,
11,14
23:19,21
24:22
25:10
26:19
27:14
34:16
37:10
40:19
41:7 42:9
43:11,22
44:1,3,12
46:13
47:21
48:19
57:10,15,
17 58:21
59:11,15
62:12
70:16
71:14
74:16
75:14,22
83:17
91:12
93:5
96:18
97:23
113:7



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

116:10
118:17
119:11,22
121:3
123:17
128:3
134:4
144:14

**shootings**
17:4 25:3
31:13
39:24
43:6,14
116:5,6

**short**
13:16
60:9

**shortly**
96:17

**shot**
21:15

**shoulders**
138:1

**show**
8:18

**sic**
10:2

**side**
8:15
26:3,4
128:12

**sides**
15:11

**sign**
46:8
127:25
134:9

**sign-off**
61:13

**signature**
61:14
82:17
87:9

**signatures**
79:25
80:8,15

**signed**
45:19,21
46:3
75:25
86:15
127:20

**significantly**
118:24

**signs**
64:5
72:14
141:20

**silent**
27:5
112:24

**similar**
24:20
111:19
125:18
136:11
141:17

**simple**
8:13 64:9

**simply**
28:7 45:2
46:2
71:18
95:9,13
97:6,18
102:25
146:9

**since**
14:24
96:25
110:6
115:19

**single**
69:8
120:19

**sir**
5:9
130:23

**sister**
88:11

**sit**
42:21

**sitting**
40:22
56:3
66:11

**situation**
66:14,16
92:9

**situationally**
43:4

**situations**
124:17

**six**
23:1
52:15
53:2 62:2
107:25
108:3,25

**skip**
130:15

**slang**
8:16

**slide**
138:19

**slightly**
98:5

**slinging**
119:3

**small**
100:4

**SME**
90:7

**smelling**
102:20

**SMES**
44:18

**snipers**
127:11

**sole**
96:19
98:12

**solely**
64:8

**solved**
57:12,16
58:6

**some**
12:2
13:19
15:9
16:3,19
17:6,11
20:17
22:5,10
30:18
36:25
44:24
45:25
50:9,13
54:20
61:9
64:13,15,
18 69:19
70:19
74:20
79:15,16,
22 80:1,
16 83:5
85:25
86:14
91:8,17
92:15,19
94:8
100:15
102:17
103:4
108:8
113:14
117:25
128:13
141:13

142:14,23
146:8

**somebody**
17:23
19:7
28:22,23
50:14
52:5
61:13
82:5
83:25
84:13,16
88:13
99:7
113:4
122:1,5
128:19
130:9

**someone**
21:16

**something**
37:19
41:9
53:15
55:20
57:7 61:5
63:24
66:15
70:3
72:2,19
89:20
106:24
112:18
113:13
114:4,14
117:14
122:1
138:5
142:2
145:18

**sometimes**
110:13
117:25
135:10

**son**
87:18

**soon**
116:9,21

**sorry**
18:25
42:15
48:23,25
106:15
107:7
115:24,25

**sort**
8:17
10:15
12:15
66:22
67:23
82:21
130:13
133:18

**Soto**
59:3

**sought**
74:19,23
75:2
76:3,7

**source**
99:24

**southeast**
34:4

**southwest**
33:20

**spans**
23:1

**speak**
8:24
13:24
53:14,15,
19 129:11

**speaking**
6:9 8:25
69:9

**speaks**
70:25

**special**
40:5,8



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 192 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

```
    47:16            21              74:18           112:9,16         110:4          subjected
                                     82:11,15        113:19,23        115:3          115:17
specific          spoken            85:19           115:22           119:20         subjects
  55:13             12:17           86:6            116:3,12         121:9            94:1
  56:6              13:4,9,11       87:13                            135:16
  70:12                             88:3           States                           submitted
  71:20           squad                             104:23          street           24:2
  76:24             88:15           standing                         58:2            75:14
  89:12                             128:18        station            84:12           130:19
  90:6            squads                            66:17                             147:4
  92:10,15          88:11           stands          100:3           strike-
  98:20                             71:2                             through        substantiv
  99:6,10,        stab              95:6,7        status             62:6           e
  19 112:2          19:12           129:20          139:14                           7:22
  129:13                                                            structure
  141:10          stabbed           start        stayed             36:25          substitute
                    21:15           12:18           99:25           37:5 38:5       85:22
specifical                          43:21                           40:7
lly               stabiliza         44:3         stays              86:17,21       such
  11:6            tion              61:24           103:13          106:5            8:13,16
  13:20             116:15          79:18                                            29:18
  35:6 38:6                         131:3        step              structures        53:7
  39:12           staff                            89:22            39:1             139:24
  48:24             30:18           starts
  51:16             38:5            43:25        steps             stuck            sued
  54:6 75:4         40:14           44:22          73:24            94:19            10:25
  76:2 88:6         102:1                                                            13:10
  92:3 93:3         142:18          state        stick            stuff
  101:6                             4:18 5:9       128:9            123:14          sufficient
  128:8           stamps            9:18,19                                          99:3
  130:22,24         142:8           26:15        sticking         stun              145:7
                                    29:21,22       123:20          127:12
specifics         stand             32:19                          128:9           Sullivan
  76:7              16:5,6,9,       90:24        sticks                              42:6
  113:17            12 77:18        105:12         127:12         subdivisi
  132:23                            134:21                        on               summarize
  145:14          standard                       still             37:3,5           79:9
                    22:14           stated         9:20
spell               66:4            73:1           15:5,8         subject          summary
  5:10              76:14,15                       19:2,13         25:15            26:16
  111:2             85:3           statement       20:5,6,        28:3             36:2
                    96:1,2,4        25:17,19       10,19          44:17            91:23
spend               123:11,12       69:5           21:16          46:13,15,        132:21,22
  94:8              146:16          99:17          34:17          22,24,25
                                    112:11,17      43:1 66:8      47:5,9,14       superviso
split-            standardi         113:6          73:18,22       51:21           r
second            zed               114:17         74:6           52:3,7           39:10
  69:20             79:13           115:9          75:24          98:14            113:7
                    94:24           116:20,23      79:21          99:25            117:6
spoke                               118:10         80:15          115:14           118:13
  13:21           standards                        84:1           138:23
  14:3,7,8,         19:24          statement       88:14,16       147:9
  11,14,18,         26:7           s               89:15
                    48:21           53:24          95:23
                    49:17                           98:1
                    62:14
```



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 193 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**supervisors**
26:7
89:17
112:20
114:24

**supervisory**
45:10

**supposed**
10:3,5
116:11,18

**sure**
16:4 18:2
23:25
24:24
26:15
45:6
49:24
55:18
57:17
58:22
69:17
114:1
129:25
130:7,12
135:12,23
138:12

**Surely**
90:14

**surprise**
106:4,23

**surround**
67:5
95:7,8,
12,19
96:7,9
97:13
104:3
127:13

**surrounding**
66:18
92:4

**surveillance**
96:10
100:2
103:17
134:14

**surveillances**
64:14

**suspect**
83:16
98:9
113:3

**suspects**
58:19
74:25
75:1 84:6
86:2,11

**sustain**
99:14

**swat**
34:22,25
36:21
38:6,8,
14,19,20,
21,24
40:18
47:14,16
49:4 50:9
52:5,6
63:23
64:2,5,
11,12
65:19
68:15
69:22
70:7
71:16,17,
21,23
72:6,15,
18 77:21,
24 78:7,
14,18,22,
25 79:15,
22 80:5
81:2,5
82:25

83:4
86:1,7,
18,24
87:4
88:23
89:2,6,
13,14,18
90:2,7
91:4,6,12
92:4,8,
10,20
93:4,7,
11,22
94:2,18
95:22
97:10
100:23
101:8,9,
20 104:1
108:17
109:10
111:18
121:22
122:10,
12,25
123:7,8,
15,23
124:3,14
125:13
126:19
127:7
128:23
129:2,12,
14 145:15

**SWAT's**
78:5 94:9
96:14

**sworn**
5:4

**system**
62:18,23
63:12
64:23
72:4
142:21

---

**T**

**tactic**
78:24
79:2 94:9
96:19
97:2
98:2,11
107:14,
15,18
128:14

**tactical**
12:4,23
13:12
16:7
17:14
20:1,2,
12,21
23:8
24:13
41:5,14,
22 42:17,
22 43:1
44:5 47:7
49:14
51:23
52:24
65:16,18,
21 66:9,
23,25
67:24
68:3,19,
25 72:3,
20 86:20
101:9
131:19
138:3
139:2

**tactics**
18:25
19:1,4,14
26:5
47:16
50:16
52:8 66:4
72:23
91:21

94:24
102:21
127:11
145:15

**takable**
84:19

**take**
7:4 9:4
11:19
22:7
30:21
31:13,16
47:20
59:22
60:1
83:24
87:3 92:7
100:10
105:14
109:17,18
118:8
136:10
137:19
143:9

**takeaways**
133:17

**taken**
10:12
11:15
15:18
36:21
60:4
83:23
84:8
109:23
120:1
135:24
138:10,25

**taking**
7:15 46:6

**talk**
15:24
32:3
37:22
57:20,24
61:23
67:21

70:20
72:17
77:11
88:19
91:13
93:2
104:12
121:17
138:3

**talked**
13:17
14:24
30:9
75:19
93:22
98:23
102:16
112:21
132:20

**talking**
14:10
57:18
61:24
101:4
110:6
120:12

**talks**
130:25

**TASER**
31:4
35:25

**taught**
118:12

**TBD**
129:20

**team**
12:22
16:11,18
21:9,17
24:10,11,
20 25:24
26:17,18,
24 27:5,
6,9,13,25
28:9,11,
13 29:25



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 194 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

38:24
39:2,3,4,
6 44:2
46:15
47:4,11
52:1 64:5
66:7,13,
19 67:8
68:25
69:21
78:19,22,
25 81:2
82:25
83:4
87:16
114:8,11
126:17
127:20,21
131:3,5,
16,17

**team's**
27:21
95:22

**teams**
24:21
25:2

**techniques**
81:24

**tell**
7:6 9:14
37:5
43:19
46:4
50:17
53:17
55:23,24
58:13,16
68:3
74:14
101:5
102:10
117:13
122:13
124:15
134:25
142:7

**telling**
99:3

**ten**
15:19
43:16
126:20
127:3

**tenured**
120:20

**term**
94:15,17
145:4

**terminated**
115:12

**termination**
54:1

**terms**
8:16
53:22
64:9
106:16
127:1

**testified**
5:5 53:8

**testify**
5:4,20
10:18
11:4,17,
20 12:18
13:6 41:4

**testifying**
53:11

**testimony**
7:11,20,
22,24
13:6,25
53:16
54:13
59:5 86:1

**than**
9:12 13:5

23:2
40:22
55:21
73:11
76:15,17,
24 90:6
117:22
128:24
135:24
141:4
146:16
147:6,8

**thank**
20:22
57:21
147:11,
16,18

**that's**
7:16
16:18
20:14
22:12
23:12
24:12
30:23
32:16
37:19
44:22
47:17
52:20
60:20
61:12,13
62:6
63:24
64:24
66:21
72:1,12
74:4,9
76:16,24
78:25
80:17
84:3
87:12
88:15,17
89:9,20
95:15
103:25
104:1
106:9

108:16,20
109:11
112:7
119:18
121:18
123:20
124:14
125:5
129:3
130:14
132:13
133:3,13
137:9
138:20
140:7
147:7

**them**
8:10
13:11,17
16:5
21:16
25:20
28:5
30:17,22
39:19
42:1
44:13
55:17
56:4
68:13,18
79:17
83:3,24
86:3,8,12
90:19,22
101:4
106:7
108:2
112:23
114:25
115:1
117:7
130:4
133:16
136:10,18
141:22,23
142:4,6

**themselves**
6:6 27:16

68:14

**then**
7:23
9:20,21
11:1,15
12:25
13:14
16:8,12,
15,17
17:10,13
18:21
19:20,25
20:11
22:8
23:11
25:25
26:23
30:17
32:22
33:1,5,7,
12,15,18,
21,24
34:5,10,
12 36:2,
10,22
37:9,13,
17,25
38:2,3,13
39:1,2,15
40:11
41:19
42:5,21,
23 43:11,
16 44:15
46:2,8,23
47:7
49:16
50:4,12
54:10,25
55:2,3
56:9,24
57:15
59:19
60:19
61:17
62:25
71:23
72:2,15,
16 75:2

77:23,24
78:13,14
80:13
82:5,6
84:5
86:21
90:6
92:12
98:1
101:23,
24,25
102:5
104:13
108:24
109:19
117:5
121:13
122:12
125:9
127:17,
19,23
129:16,19
130:6
131:4,6,
7,16
132:1,3,
23 133:18
135:17
136:3
137:18,21
138:1,24
139:15
140:18
141:5,19,
20,21
143:14,15
147:1

**there's**
8:5 15:9
23:7
25:11,21
30:24
31:2,3,5,
8,23
37:23
42:5
45:8,14
50:11
52:10,14,



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 195 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

21 57:14
61:1,3,9
62:5
66:5,16
69:24
72:13,16
74:3
77:23
82:8,19
84:17
85:25
88:16
101:25
112:25
113:1,2
116:17
122:3
128:22
130:13,21
132:9
133:12,16
141:5

**these**
17:16
21:19,23
22:5
30:16
48:17
64:18
69:1 75:7
82:8,20
83:22
113:23
114:21
115:19,20
117:1
130:19
137:11
141:4
143:18

**they've**
124:9

**thing**
7:23
19:21
47:9 56:8
59:13
63:7 69:8

88:10
145:22
147:6

**things**
8:6 20:17
22:11
26:11,15
28:24
29:3
30:24
31:9
39:20
45:6,9
46:12
49:8
54:14
60:21
63:6,25
65:25
67:13
68:17
69:1,24
71:10
73:22
74:8
75:23
76:21
79:15
83:4
87:15
91:7
96:11
100:6
102:11,20
132:10
133:2,13,
15 135:1
144:18,20

**think**
10:3,4
14:24
23:25
30:23
47:2
52:15
67:24
84:3
86:13
87:18

102:14
104:4
110:14
114:1,21
123:25
129:3
145:5,19
147:12

**thinks**
85:5

**third**
34:5 57:8

**this**
4:21 6:9,
12,17
7:12
9:15,25
10:1,2,24
11:2
12:1,4,8,
12 13:16
14:2,23
15:10,18
16:3 19:8
22:12
23:20
30:8,12
34:16
37:9
38:10,16
40:19,23
41:8,13,
15,20
42:8,11
43:7
45:15,19,
22,25
46:14
47:21
48:12,19
49:10,19,
21,24
51:24
52:2,13
53:1 54:2
55:20
57:19,23
58:20

60:13,16
61:21
62:1,16
63:15
64:10,20
65:8,15
66:18
67:4
68:15
69:14
70:5,6,8,
16,25
71:8,10
72:6,8,
23,25
73:3,8
74:1,14,
16 75:22
76:10,21
77:5,12
78:1,10,
23 79:10,
25 80:23,
24 81:14,
22 85:18
88:19
89:25
90:1 91:4
92:14
93:3,5,7,
20,21
94:7,8,
10,22
95:10,14
96:12,17,
25 97:5,
11 99:9
100:22
103:1,21
104:15,18
107:22,23
109:8,20
111:21
112:6,8,
25 115:7
116:25
118:16,24
120:7,15,
25 122:5,
17 123:3,

6 124:1,6
125:10,
19,21,22
126:9
127:10
128:2
129:23
130:10,
17,21
131:23
134:4,22
135:2,4,
7,17,25
136:4,24
137:3,25
138:11,
21,24
139:9,11,
17,21
140:8,18,
20 141:2
142:13
143:3,4,
6,9,21,22
144:4,10,
24
145:13,
16,22
147:19

**thorough**
17:2
45:12
47:24
63:3
132:2

**those**
8:17
11:4,21
15:13,21
20:12
21:20
23:8,12
24:7,9
28:16,23
29:3
30:3,7
31:10
38:4
40:7,11

41:17
42:7
44:16
46:14,25
47:7,16
48:14
49:1,12
54:17
55:6,15,
16,18
56:20
59:7,8
63:6
67:13
68:14
70:9
71:10,22
72:16
75:15,23
76:3,22
92:11
94:1,2
100:6
102:6,7,
18,20
107:2
108:18
127:11
130:1
132:10
136:9,17
137:19
141:21
144:9,14
146:14,
18,24
147:12

**though**
16:2
27:12
29:25
55:23
60:12
74:15
87:10
92:20
135:8

**thought**
58:12



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 196 of 203
30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

70:4
118:2
123:19
124:12

**threat**
69:23
82:8,14,
19 98:10,
13,18,20
99:2,6,
11,20
113:2

**threats**
116:18

**three**
18:18
32:23
39:19
55:4
56:16
58:17
70:21,23
80:6,12
81:7

**threshold**
28:2
67:23

**through**
4:6 6:17,
19 22:9
42:21
50:13
56:4,5
59:18
61:2,15
62:1
63:15
70:15
71:4
72:22
74:7,11
79:3 90:5
92:1,11
93:13
94:2,21
99:7
101:23

102:7,24
108:22
119:23
120:22
123:4
125:1,20
127:8
128:10
129:17
133:20
136:4,16
140:13
142:10
143:23
145:1,11

**time**
4:10 6:24
8:24 9:5
12:12
13:21
14:3,7,
11,14,18,
21,23
21:3
24:23
28:1,24
29:12
33:16
34:18
35:16
36:9
37:9,14
38:10,16
41:20
42:11
43:7
45:17
48:25
49:18,22
51:24
52:12
53:5
57:18
60:6,14
61:16
63:21
65:19
81:20
89:14

90:10
91:9
94:8,19
95:11
97:3 98:7
100:22
101:8
103:15
106:7,13
107:7,16
108:5,9,
13
109:20,25
116:13
117:24
119:14
123:13,
16,18
126:5,11,
19 127:1
134:4
135:4
138:14
145:7
147:12,21

**times**
6:23 21:4
51:20
76:14
81:8 90:3
93:23

**title**
134:3

**to**
5:4,20
6:6,18
7:3,6,18,
19,21,24,
25 8:1,4,
7,9,10,
12,13,15,
24 9:1,3,
9,10,15,
18,20,22,
25 10:2,
3,5,18,21
11:2,3,4,
7,13,17,

20,21,25
12:15,17,
18 13:1,
2,6,7,9,
11,17,22,
24,25
14:3,8,
10,12,15,
17,19,22,
24 15:3
16:3
17:8,19,
24 18:1,
2,8,12
19:5,12,
15 20:1,
16,19
21:16,24
22:5,7,
16,20
23:14,22
24:20,24
25:12,15,
17,19,25
26:4,7,
12,14,19
27:4,17
28:5,7,
14,15
29:1,17
30:3,7
31:1,2,6
32:19,20
33:6,10,
11,12,13,
16,17,21,
24,25
34:3,6,
10,14
35:6
36:24
37:17,19,
21 38:8
39:4,19,
23 40:12
41:4,16,
18 42:1,
13,16,17,
20,21,23,
25 44:2,

3,7,13
45:2,4,5,
6,8,9,13,
14 47:10
49:24
50:9,11,
14,15
51:18
52:2
53:11,14,
19 54:1,
7,9,10,
24,25
55:15
56:15
57:9,18
59:15,18,
22 60:10,
12,13,15
61:5,6,8,
23 62:6,
12 63:11,
14,19,20,
22 64:9,
11,13
65:3,8,
10,13,14,
15,19,21
66:2,6,7,
8,9,12,
13,14,19,
20 67:7,
14,15,16,
17,21
68:3,6,8,
9,12,14,
18,20,21
69:1,4,6,
7,15,19,
20,22,23
70:5,20
71:1,13,
17,19,22
72:6,9,
14,17,20
73:10,14,
15 74:2,
10,18,19,
24 75:1,
13,14

76:1,2,3,
7,14,20,
21,23
77:5,11,
20 78:7,
15,19,21,
25 79:1,
10,16,18
80:2,5,
13,14,16
81:3,14
82:8,10,
14,15,19
83:18,23,
24 84:1,
5,15,18,
19 85:1,
3,10,11,
13,15,17
86:2,7,
11,16,18,
22 87:17
88:14
89:3,11,
13,15,22,
23 90:4,
7,12,13,
16,19,23
92:6,14,
22 93:4,
5,20,25
94:2,3,5,
8,9,12,
16,24
95:15,22
96:12,14
97:14
98:23
99:5,9,
12,16,19
100:1,7,
8,9,10,
13,15,24
101:4,13,
14,15,20,
22,24
102:16,
18,22
103:1,10
104:8,9,



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 197 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader              Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

16,23
106:4,5,
7,8,15,
17,18,20,
21
107:16,
19,25
108:13,
14,23
109:1,12
110:5,23
111:7,14,
16 112:1,
5,10,20,
23 113:1,
8,9,14
114:2,4,
5,8,10,
16,17
115:2,5,
8,9,14,
17,22
116:3,11,
18,22
117:2,10,
11,15,18
118:12,16
119:1,3,
5,8,10,
16,17,18
120:5,7,
14,21
121:17,22
122:5,11,
20,21,25
123:20
124:13,
15,16,19,
24
125:12,
14,15,21,
22 126:5
127:2,5,
10,15,21,
22,25
128:1,3,
15,16,19,
22,24
129:11,20
130:1,4,

5,7,15,16
131:6,7,
16,17,18,
19 132:1,
3,4,13,
15,21,24,
25 133:8,
13,14,15,
16,17,25
134:8,11,
20 135:2,
20,21
136:3,5,
11,17,18
137:8,12,
16,19
138:3,4,
19
139:13,
15,17
140:4,13
141:10,
17,22
142:1,3,
17,20
143:2,6,
19,22,24
144:2,18,
19,20,23
145:3,8,
12,13,17,
18,23,25
146:17,
19,24,25
147:4,9

**today**
4:9,14
7:6,23
9:14
10:18,22
11:7,13,
18 12:18
13:7
40:22
55:16
56:3
91:10
111:13
114:14

143:7
147:12
**today's**
5:20 7:16
8:5,11
9:8
**together**
41:17
51:24
**told**
86:1,9
**too**
30:9
51:10
56:8
69:15
74:20
102:25
122:5
137:2
**took**
42:8 60:8
110:2
126:17
**tools**
127:10
**top**
37:22
41:9
**top-down**
131:1,12
132:17
**topic**
41:3,4
**topics**
11:1,4,8,
13,16,21
129:4
**totality**
108:3
119:15
**town**
33:20
34:4 58:1

87:17,23
**train**
68:13
90:18,22
**trained**
89:7
121:14
**training**
6:3 18:25
19:17,19,
23 20:14,
17 22:25
31:8
33:22,23
34:7,8,9,
24 35:2,
8,10
44:21
47:13
49:11
50:13,16
52:24
68:13
70:8,10,
18 72:23
77:7
79:4,11
82:11
85:19
86:6
87:13
88:4,22,
23 89:3,
15,16,23
90:15,16
91:1,4,8,
9,21
92:21
93:14
94:23
106:2
120:18
121:25
122:3,6
133:9,22
**trainings**
92:12

**transcrip
t**
7:18,19
8:18 9:22
147:24
**transcrip
ts**
15:22
**transfer**
94:3
123:8
**transferr
ed**
90:13
123:13
**transferr
ing**
94:4
**transitio
n**
138:21
**transitio
ned**
90:13
**transitio
ns**
20:1
**transpare
ncy**
22:11
60:20
**TRB**
16:6,22
17:14
26:25
27:6
30:9,21
31:14
42:9,13
43:14,19
45:1,15
46:12,23
48:7,9,
13,18

51:18
52:18
54:14
56:9,18,
21 57:2
59:18,21
60:10
61:25
62:5,8,14
65:23
66:25
67:24
70:11,15
71:5
72:22
73:4
74:11
79:4 92:1
93:13
94:22
96:14
102:24
108:22
109:5
112:6
117:1
118:6,15
119:23
120:22
123:4
124:18,20
125:1,7,
20 126:1,
9 127:8
129:6
130:10
133:18,21
135:4
136:13,16
137:12
138:7,23
139:15
140:21,22
141:2,6,
10,24
145:6
146:2,4,9

**TRB's**
42:15

Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 198 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

43:24

**Tremayne**
50:5,17

**trends**
31:3

**tried**
8:1 21:16

**tries**
19:12

**trigger**
28:1,9
29:2
30:1,3

**triggers**
116:2

**trip**
87:18

**truck**
40:1

**true**
10:6 84:4

**truly**
66:3

**truth**
5:4 7:6

**try**
7:24 8:24
22:7
66:9,12
69:1
102:22
106:17

**trying**
31:6
100:1
133:13

**turn**
10:21
32:19,22
86:22
138:2

**turned**
55:1,10

80:11

**Turning**
56:15

**turns**
19:11
133:19

**TV**
9:12

**two**
9:4 17:5
25:21
31:10
33:13
34:5,12
41:17
49:1
56:24
57:6,8
61:24
63:24
66:22
80:12
82:16
107:2
108:18
123:8
136:9
141:4

**twofold**
42:19

**type**
43:22
103:16

**typically**
86:19

**typing**
45:25

———————

**U**

———————

**uh-huh**
8:16

**ultimate**
43:24
45:1,5,7

81:11

**ultimately**
25:24
45:21
65:17
71:8 79:3
83:4 87:8
91:19
94:21

**UMLV**
120:18

**unable**
72:9

**unacceptable**
89:2

**unanimous**
55:21,22
56:2 65:4
73:4 77:2
92:25
93:17
109:4
125:7
126:9
129:6
138:6

**unattended**
132:13

**unaware**
122:14

**uncompleted**
129:23

**under**
7:7 10:23
11:23
29:21,22,
23,24
37:3
39:19
50:25
53:20,21,

22 62:19
96:24
97:9,15,
16 98:15
99:3
100:15
110:4
114:18
115:21
135:18

**underlying**
57:9,24
62:11
72:7 75:6

**underneath**
39:8

**undersheriff**
37:14
38:2
40:13

**undersheriffs**
38:1

**understand**
5:19 7:2,
8,13 8:2,
8 9:6
10:7,8
11:9
24:24
60:24
67:20

**understanding**
84:5
98:25
99:4
132:2
135:6

**understood**

26:15

**undue**
78:21

**unfettered**
85:1

**union**
113:21
115:21
117:15,23

**union's**
117:11

**unions**
112:19

**unit**
33:6,12
72:3
86:23
94:3
100:6
122:20

**United**
104:23

**units**
73:2

**universally**
84:3

**universe**
12:16

**University**
120:19

**unknown**
68:23
69:22
102:25
103:4
137:2

**until**
32:19
123:14
128:21

**unusual**
57:7
117:18

**up**
6:18
8:14,18
11:2 13:2
25:23
26:7 28:6
30:3,8
32:2
33:17
39:23
45:25
47:6,18
52:2
53:25
58:12
61:15
62:12
66:14
67:6,9
69:22
71:11
72:14
76:20
89:13,23
90:4,12
92:9,11
94:3
101:23
110:17
112:13
113:5,17
124:22
125:12
127:21
128:16,20
131:6,7
132:4,8,
15 133:7,
14 140:13
141:1
142:18
143:22,25

**up-to-date**
121:11



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 199 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**update**
73:17
139:14

**updated**
79:16

**upheld**
76:25
108:16,
20,21
123:4

**upon**
33:4
113:6
117:13,15
137:19
139:16

**upper**
128:15

**upward**
131:4

**us**
8:4 21:7
22:13
29:1 45:5
71:12
86:15
113:14
115:5
128:15
135:16
142:20
146:17

**use**
18:18,19
19:1
27:17
28:14
31:6
35:24
52:23
63:11
65:13
71:1 74:2
79:5
94:9,15,
22 95:16

108:23
110:13
111:12
116:8
120:9,21
124:23
144:25
145:4

**use-of-force**
12:22
17:13,21,
25 20:19
23:7
24:12
44:6

**used**
18:9 20:7
21:13
25:20
53:25
56:11
75:4
78:4,8,25
79:14,17,
21,24
81:24
95:3,9,13
96:13
97:2,18
98:8,11
107:22
119:21
121:5
131:12
132:17

**uses**
17:4
19:13
31:1,2

**using**
8:16 16:2
64:22
71:15
79:18
80:21
85:22
96:18

98:2
106:16
107:18
111:1
120:16
121:12
126:15
127:2
138:24

**usually**
20:12,15
40:6

**utilize**
62:23

**utilized**
28:2 29:2
65:22
122:4
124:24
127:11

**utilizing**
62:17,20
73:2
82:15
104:2

**utterances**
118:1

―――――――

**V**

―――――――

**vacation**
87:21
88:13

**vague**
74:20

**validate**
55:5
127:8

**validated**
56:20
59:20
71:4
74:11
78:10

91:25
108:22
118:5
119:24
120:22
121:20
123:4

**validation**
92:24
109:5
126:8

**value**
90:16

**Vegas**
4:1,16
5:15,21
11:2
15:25
16:25
32:11
36:25
83:17
118:16
120:19

**vehicle**
39:24

**verbal**
8:12

**verbally**
127:13

**verbatim**
115:1
117:19

**verbiage**
86:14

**verified**
61:20
137:11

**vernacular**
110:14

**versions**
81:12

**versus**
4:16
18:18
25:13

**very**
9:2 25:21
36:24
53:4 62:3
63:1
68:11,20
78:15,19
116:14
141:17
145:19

**video**
114:21
117:19

**videographer**
4:9,12
60:2,5
109:21,24
147:19

**videotaped**
7:10

**viewpoints**
25:9

**violated**
27:20
29:17
31:24

**violating**
29:7

**violation**
35:18
104:25
105:10

**violent**
99:23

**virtually**
75:2

**voice**
147:16,17

**volunteer**
50:11

**vote**
17:20
18:18,22
19:21
50:15
56:1

**voted**
55:13

**votes**
54:14,17
141:14,
15,19

**voting**
17:25
18:4,13,
15 20:5,
6,9,11,21
55:10

**vulnerable**
103:6

―――――――

**W**

―――――――

**wait**
28:15
126:14
127:2

**waited**
107:24
108:25

**waiting**
96:9

**walk-through**
44:8

**walked**
110:17

**wall**



30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 67:10 | 20 63:21 | 19:5,6 | 40:1,5 | 13,14,20, | **weeks** |
| 100:4 | 64:6 | 22:10 | 44:18,21 | 23 146:5, | 44:15 |
| | 65:10 | 28:20 | 48:12 | 14,22 | 123:8 |
| **Walsh** | 71:8,24 | 45:6,14 | 52:20 | 147:8 | |
| 42:2 | 72:12 | 46:18 | 54:2 | | **weigh** |
| 45:16,17, | 74:15,17, | 47:3 | 56:3,5 | **we'll** | 20:16 |
| 24 46:2, | 20 75:13, | 50:10 | 57:18 | 57:24 | |
| 10 49:16 | 24 76:5, | 59:6,9,17 | 60:8,19 | 68:21 | **weighing** |
| 61:16 | 10 77:8, | 60:16 | 62:16,18 | 88:19 | 102:1 |
| | 21 79:11 | 68:13 | 64:20 | 91:13 | |
| **want** | 80:24 | 72:1 | 65:25 | 109:19 | **weird** |
| 6:18 7:21 | 81:14,17 | 73:21 | 66:3,6 | | 67:10 |
| 9:9 12:15 | 82:22 | 74:8,9 | 68:11,13, | **we're** | |
| 16:3 17:7 | 83:2,11, | 82:11 | 25 69:2, | 45:6 | **well** |
| 24:24 | 14,19,24 | 84:20 | 3,19 | 60:5,9,10 | 5:11 8:18 |
| 25:7 | 84:3,12, | 114:1,15 | 70:4,5 | 68:22 | 13:19 |
| 26:14 | 21 85:4, | 120:7 | 74:4 | 75:18 | 16:1 |
| 37:21 | 6,8,14, | 122:14 | 75:19,23, | 86:14 | 25:11 |
| 53:14 | 18,22,23 | 126:16 | 25 76:1, | 94:7 | 26:13 |
| 60:12 | 86:10,13, | 130:18 | 13,17,18, | 95:24 | 28:17 |
| 61:23 | 15 94:10, | 131:20 | 20,22 | 96:1 | 30:1,8,25 |
| 66:6 69:7 | 23 95:10, | 132:15,23 | 77:7 | 106:16 | 37:21 |
| 73:20 | 14 97:1, | 133:1,11 | 84:22,23 | 108:6 | 40:8 |
| 78:18,24 | 11,14,19 | 138:16 | 88:10 | 109:24 | 41:16 |
| 90:7,18, | 100:15,17 | 141:17 | 90:18,22, | 110:3 | 42:19 |
| 22,23 | 103:2,9, | | 23 93:23, | 113:16 | 43:13,25 |
| 118:25 | 18,22 | **ways** | 25 95:4, | 124:16 | 44:8,24 |
| 119:2,5, | 104:10, | 26:9,11 | 23 98:22 | 133:13 | 50:19,25 |
| 10 124:13 | 18,19 | 45:8 | 102:16 | 145:19,22 | 52:22 |
| 130:15 | 108:2,11, | 69:4,11 | 103:13 | 147:21 | 56:4 |
| 131:19 | 24 110:8 | 79:9 | 107:1 | | 57:14,20 |
| 132:25 | 111:9,21 | 84:17 | 109:17,19 | **we've** | 61:4 |
| 133:16 | 124:24 | 133:12 | 110:2,6 | 30:9 | 62:21 |
| 147:25 | 127:16,24 | 146:19 | 111:1,3 | 59:25 | 63:24 |
| | 130:18 | | 112:20 | 60:22 | 64:4 |
| **wanted** | 137:3 | **we** | 113:5 | | 67:20 |
| 30:7 | | 4:12,15 | 115:3 | **weapon** | 71:20 |
| 55:15 | **warrants** | 6:17 | 117:13,19 | 21:4,5,9 | 72:15 |
| 61:4 72:6 | 35:4 64:2 | 8:18,25 | 119:7,10 | 75:5 | 74:1,3 |
| 79:15,22, | 75:8 | 9:14,16, | 126:1 | 119:4 | 76:9 |
| 23 80:7 | 84:23 | 20,25 | 128:14 | | 77:24 |
| 110:5 | 97:7 | 10:25 | 132:7,20 | **weapons** | 82:6,18 |
| 127:14 | 98:17 | 15:4 16:2 | 133:3,10, | 19:7 | 83:18 |
| | 104:16 | 20:14 | 16 135:1, | | 84:13,24, |
| **wants** | 106:3 | 22:8,10 | 17 | **web** | 25 85:7 |
| 9:18 | 125:15 | 25:19 | 140:17,18 | 143:16 | 86:13 |
| 71:17 | | 26:5,9,12 | 141:5 | | 89:10 |
| 101:19 | **Wattsel** | 29:1 | 142:14,22 | **website** | 97:15 |
| | 58:23 | 30:6,8 | 144:12,21 | 143:22,23 | 100:23 |
| **warrant** | | 31:3,7 | 145:9,11, | 144:1 | 101:8 |
| 6:12 12:9 | **way** | 37:5 | | | 103:12 |
| 58:11,14, | | | | **weekly** | 104:12 |
| | | | | 40:13 | |



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 201 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 105:21 | 69:17,18 | **what's** | 116:7,16 | 109:23 | 23 71:2 |
| 110:11 | 73:6,19, | 5:14 85:4 | 122:1,2 | **whether** | 72:5,8 |
| 111:7 | 25 74:19 | **Whatever** | 123:17 | 9:23 | 74:7 |
| 115:11,13 | 75:18 | 142:24 | 124:24 | 26:20 | 79:10 |
| 117:7 | 76:13,24 | **when** | 128:14 | 27:13 | 80:16 |
| 120:18 | 77:4,17 | 8:18 10:1 | 133:15 | 53:6 56:5 | 85:5 87:7 |
| 126:1 | 80:19 | 13:21 | 137:17 | 65:3,16, | 91:6 94:6 |
| 129:15 | 81:2 84:5 | 14:3,7, | 140:23 | 18 66:23 | 104:13 |
| 130:1,9, | 88:5 | 11,14,18, | 141:23 | 73:3 | 113:10 |
| 24 133:5 | 89:24 | 21 21:4,8 | 145:3 | 78:3,8 | 115:14 |
| 139:21 | 91:10,22 | 22:8,18, | **where** | 81:13,16, | 120:18 |
| 141:13 | 92:5,7,13 | 22,25 | 10:24 | 18,22,23 | 121:8 |
| 142:5 | 93:19 | 25:12 | 19:1,17, | 84:6 95:2 | 124:19 |
| 144:1,10 | 94:20 | 29:2 | 22 25:16, | 103:5 | 127:6 |
| 146:1 | 95:5,6 | 32:13,22 | 22 26:4 | 105:15 | 129:20 |
| **went** | 98:20 | 34:16 | 30:15,16 | 112:1 | 130:10 |
| 22:8 | 99:21 | 39:6 | 31:5 | 120:20 | 132:10 |
| 33:1,5, | 101:18,21 | 43:21 | 32:16 | 125:22 | 133:2,5 |
| 12,16,21, | 102:15 | 44:1,9,22 | 34:3,11 | 126:2 | 141:4 |
| 24 34:6 | 103:23 | 47:5 | 35:25 | 128:3,4 | 146:16 |
| 61:25 | 105:14,25 | 48:12 | 39:19 | 131:23 | **while** |
| 89:12 | 106:9 | 52:13 | 51:18 | 135:15 | 37:16 |
| **what** | 109:7 | 54:2,22 | 53:23 | 138:15 | 44:5 |
| 9:4,12,16 | 110:22 | 58:14,19 | 55:16,18 | **which** | 62:24 |
| 12:20 | 111:7,8, | 61:6,12 | 63:6,24 | 5:23 | 66:11 |
| 13:6 | 13,24 | 65:21 | 64:2 | 11:11 | 78:22 |
| 15:11 | 112:15 | 66:13 | 67:14 | 16:1 | 89:18 |
| 16:5,6,8, | 113:5,15 | 67:1,17, | 72:2,13 | 17:14,20 | 115:5 |
| 12,21 | 115:21 | 25 69:21 | 75:23 | 18:6,23 | 119:19 |
| 20:14 | 116:2,9 | 70:9,15 | 76:18,22 | 20:13 | **who** |
| 22:12 | 118:21 | 71:16 | 80:2,7,13 | 23:12 | 11:4,24 |
| 23:16 | 119:7 | 76:20 | 85:13 | 26:3 | 15:11 |
| 27:12 | 121:23 | 79:19 | 107:15 | 33:6,8,22 | 23:21 |
| 28:14 | 122:7 | 87:19,24 | 110:22 | 34:7 | 35:22 |
| 30:2,8, | 123:11 | 88:12 | 112:24 | 39:7,12 | 36:7,13 |
| 11,20 | 124:8 | 89:12 | 115:15 | 40:5,25 | 37:11 |
| 36:1 | 127:7,8, | 90:3 | 119:8 | 41:5,9 | 39:9 |
| 39:15 | 21 128:14 | 91:4,12 | 120:17 | 42:4 | 45:16,21, |
| 42:17,19 | 130:6,17, | 92:3,14 | 122:5 | 44:18 | 24 46:4 |
| 43:10,11, | 22 131:1 | 93:7 | 124:17 | 45:20 | 48:23 |
| 22,23 | 132:2,20, | 94:18 | 126:12 | 48:13,14, | 55:16 |
| 44:19 | 21 133:3, | 98:8 | 136:4 | 17,18 | 58:19 |
| 50:2,3,8, | 24 134:3 | 100:1 | 139:20 | 54:3 | 60:13 |
| 15 51:14, | 136:10 | 102:19 | 145:22 | 56:16 | 63:20 |
| 16 52:9, | 138:10,24 | 103:9 | **whereas** | 61:18,25 | 64:8 84:9 |
| 20 61:6, | 140:25 | 109:16 | 106:6,23 | 62:1,18 | 89:2,7 |
| 11 64:17 | 141:3,8, | 110:12,23 | **whereupon** | 65:7 | 90:14 |
| 66:3,6 | 22 145:13 | 111:24 | 5:1 60:4 | 67:18 | 99:24 |
| 67:25 | 146:16 | 114:8,16 | | 70:2,21, | 100:20,24 |



Case 2:24-cv-00074-APG-NJK    Document 57-10    Filed 05/16/25    Page 202 of 203

30(b)(6) for Las Vegas Metropolitan Police Department
Reggie Rader                     Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

101:6
103:11,
13,15
106:5
111:16
127:17
128:11
132:22
134:8
135:21
138:13
143:12

**whole**
28:8 32:7
133:2

**whose**
130:1

**why**
9:1 27:24
28:12
45:13
49:19,25
50:3
51:12
56:11
62:15
63:12
64:20,24
65:24
66:21
72:12
74:4,5,9
76:24
79:8
80:17
85:3
94:15
102:4,8
108:16,20
117:7
119:18
120:25
127:18
129:23
130:7
131:14,19
132:14
133:13

135:23
137:11
143:21,22
144:8
146:2,25

**William**
36:14

**William's**
41:7

**Williams**
5:23
23:21
27:16
99:8
107:25
109:1
123:17
145:8

**Williams'**
75:13
97:23
98:21
100:13
128:3

**window**
99:7
128:10,16

**wish**
7:20

**with**
6:19 11:1
12:18
13:4
15:25
17:1,7
18:24
23:15
24:21
25:2,8,
18,23
26:7
27:17
30:18
36:6
40:15,18,
25 41:5,

13 44:16,
17,20
45:10
46:13
47:4,6,18
50:16
51:21
52:3,22
56:21
57:3
62:22
63:9
67:4,10
68:22
69:5
71:11
73:9,19,
23 74:4,
14 75:19
76:6,20
77:15,25
78:2,9
79:2 80:1
81:11,16
82:17
83:2,5
84:21
87:18
88:7
89:3,19,
22 90:24
93:21,24
96:24
99:8
100:3,4
101:12
102:1
106:21
107:1,5,
10,14,23
108:1,6
110:12,
14,16,17,
19,24
112:18,20
113:5,16,
20,21
114:13
115:21
116:25

117:10,23
119:14,19
120:2,23
121:1,2
122:9
123:17
125:2,12,
18 127:10
130:17
131:3,15,
22 132:2
133:14,22
135:13,16
136:17,
20,21,22
137:15,24
140:3,25
141:16
142:18
144:4,21
145:20
146:21

**within**
19:2,23
38:7
62:13
63:7
91:21
94:24
123:8

**without**
19:10
23:2
52:19
84:2,12
89:11
99:21
100:7
101:4
113:16
123:21
128:11
134:13,
22,24

**witness**
4:14 5:3
11:4,7,24
28:20

29:11
75:18
76:13
82:24
88:9
95:21
102:14
105:6
106:12
107:13
140:11
147:18

**word**
128:25
134:20,25
147:17

**wording**
69:11

**words**
7:23
28:14
31:24
61:1 79:9
99:6
105:19
125:25
131:5

**work**
9:10,11
13:17
32:4
50:11
80:3

**worked**
32:10
34:20,22
35:13
47:14

**working**
40:7
62:25
87:23
135:16

**works**
131:5

**worn**
74:25

**wrap**
65:11,14
66:5
67:2,25
68:2

**wraps**
68:16

**writes**
117:6

**writing**
54:22

**written**
55:12
76:6
99:22
101:5
111:12
124:22
126:19
141:14

**wrong**
79:20
80:10
121:5

———————

Y

**yeah**
17:10
24:25
29:14
44:24
46:20
59:24
72:11
97:4
103:16
106:15
109:18
114:24
115:25
121:12
133:25
138:20



30(b)(6) for Las Vegas Metropolitan Police Department

Reggie Rader                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

142:9
143:17

**year**
13:23
14:6,13,
16,20
32:12
33:1,12,
18,20,23
34:5
89:14
90:3
93:23
100:12
123:13,18

**years**
23:1,3
32:23
33:5,8,13
34:5,12
53:3 68:7
127:3

**yellow**
11:16
129:20

**yes**
6:4,8,15,
22 8:13,
15 13:11
15:15
23:10
24:14
27:7 35:9
38:9
42:10,14
45:17
47:23
48:1
50:22
51:11
52:21
54:12,16
55:11,14
57:5 58:4
59:12
61:22
63:14
68:20

70:19,23
72:25
77:16
78:6
81:6,21,
25 82:6
84:10
87:14
90:25
91:24
96:11
98:19
100:19
101:17
104:24
105:13,22
107:3,8
110:17,21
113:22
114:10
115:13
116:24
119:25
120:13
121:15
122:13
128:7
129:15
134:19
135:9
136:15
137:9
141:11,25

**yesterday**
143:25
144:3

**Young**
24:4

**yourself**
12:18