# Exhibit 10

# Exhibit 10

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 2 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 1

1              UNITED STATES DISTRICT COURT

2                  DISTRICT OF NEVADA

3                    * * * * *

4    LATIA ALEXANDER,              )
     individually as heir of       )
5    ISAIAH T. WILLIAMS and in     )
     her capacity as special       )
6    administrator of the Estate   )
     of ISAIAH T. WILLIAMS,        )
7                                  )
          Plaintiff,               )
8                                  )
          vs.                      )        CASE NO.
9                                  ) 2:24-cv-00074-APG-NJK
     LAS VEGAS METROPOLITAN        )
10   POLICE DEPARTMENT, a          )
     political subdivision of      )
11   the State of Nevada; KERRY    )
     KUBLA, in his individual      )
12   capacity, et al.,             )
                                   )
13        Defendants.              )
     _____)

14

15              VIDEOTAPED DEPOSITION OF

16                   ADRIAN BEAS

17        30(b)(6) for Las Vegas Metropolitan

18                Police Department

19            Taken on March 28, 2025

20                 at 9:04 a.m.

21          By a Certified Court Reporter

22              Las Vegas, Nevada

23

24          Stenographically reported by:
          Heidi K. Konsten, NV CCR 845, RPR
25          JOB NO. 60239 - Firm No. 116F

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 3 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 2

1              Videotaped deposition of ADRIAN BEAS,

2    stenographically taken at 400 South Seventh Street,

3    3rd Floor, Las Vegas, Nevada, on Friday, March 28,

4    2025, at 9:04 a.m., before Heidi K. Konsten,

5    Certified Court Reporter in and for the State of

6    Nevada.

7

8              APPEARANCES OF COUNSEL

9    For the Plaintiff:

10           ADAM J. BREEDEN, ESQ.
             Breeden & Associates, PLLC
11           7432 West Sahara Avenue
             Suite 101
12           Las Vegas, Nevada 89117
             (702) 508-9250
13           (702) 508-9365 Fax

14    For the Defendants:

15           CRAIG R. ANDERSON, ESQ.
             Marquis Aurbach
16           10001 Park Run Drive
             Las Vegas, Nevada 89145
17           (702) 382-0711
             (702) 382-5816 Fax

18    Also present:

19           Vance Wharton, Videographer

20

21                 *  *  *  *  *  *

22

23

24

25

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

```
                                                          Page  3

 1                        INDEX

 2                                              Page

 3    ADRIAN BEAS

 4    Examination by Mr. Breeden                  5

 5                    * * * * *

 6

 7                     EXHIBITS

 8    No.                Description          Page

 9    Exhibit 1      Notice of Deposition      11

10    Exhibit 2      SWAT manual excerpt -      98
                     Bates Numbers LVMPD
11                   001490 through LVMPD
                     001491
12
      Exhibit 3      Commission on Peace       114
13                   Officer Standards and
                     Training Performance
14                   Objective Reference
                     Material - Bates Numbers
15                   Williams 000809 through
                     Williams 000810
16
      Exhibit 4      Critical Incident Review  168
17                   Team report excerpts -
                     Bates Numbers LVMPD
18                   004440 through LVMPD
                     004443
19                    * * * * *

20

21

22

23

24

25
```

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 5 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 4

1                    LAS VEGAS, NEVADA

2                   Friday, March 28, 2025

3                       9:04 a.m.

4            DEPOSITION OF ADRIAN BEAS

5                   * * * * * *

6

7            THE VIDEOGRAPHER:  Today is

8    March 28th, 2025.  The time is approximately

9    9:04 a.m.  Your court reporter is Heidi Konsten,

10   and I am your videographer, VN Wharton.  We are

11   here on behalf of Lexitas.

12            The witness today is Lieutenant Adrian

13   Beas as a 30(b)(6) designee for Las Vegas

14   Metropolitan Police Department.  And we are here

15   in the case Latia Alexander, individually, as heir

16   of Isaiah T. Williams and in her capacity as

17   special administrator of the estate of Isaiah T.

18   Williams, plaintiff, versus Las Vegas Metropolitan

19   Police Department, a political subdivision of the

20   State of Nevada, et al., defendants.

21            Will counsel please state your

22   appearances, and the court reporter will

23   administer the oath.

24            MR. BREEDEN:  This is Attorney Adam

25   Breeden on behalf of the plaintiff.

Page 5

```
 1              MR. ANDERSON:  Craig Anderson on

 2    behalf of the defendants and the witness.

 3

 4    Whereupon,

 5                    ADRIAN BEAS,

 6    was called as a witness, and having been first duly

 7    sworn to testify to the truth, was examined and

 8    testified as follows:

 9

10                    EXAMINATION

11    BY MR. BREEDEN:

12         Q    Good morning, sir.

13              Can you please state your name for the

14    court reporter, and go ahead and spell your name

15    as well.

16         A    It's Adrian Beas, A-D-R-I-A-N, B-E-A-S.

17         Q    Okay.  And, sir, are you currently a

18    lieutenant with the Las Vegas Metropolitan Police

19    Department?

20         A    Yes, I am.

21         Q    Okay.  My name is Adam Breeden, and I'm

22    the attorney for Latia Alexander.  She has filed a

23    lawsuit against the Las Vegas Metropolitan Police

24    Department and several of its SWAT officers

25    following a fatal shooting of her son, which
```

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 6

1    occurred on January 10th of 2022.

2            Do you understand the reason why you're

3    here this morning is to give deposition testimony

4    on behalf of the Las Vegas Metropolitan Police

5    Department in that case?

6        A    Yes.

7        Q    Okay.  Have you ever given a deposition

8    before?

9        A    No.

10       Q    Okay.  So given that it's your first

11   time, there's several rules for the deposition, or

12   we sometimes call them admonitions or -- or

13   instructions, regarding how we're going to proceed

14   today so we're on the same page.

15           First of all, understand that the oath

16   that was administered to you by the court reporter

17   is the same oath that you would take in a court of

18   law as if you were in front of a judge and a jury,

19   and it obligates you to tell the truth today under

20   penalty of perjury.

21           Do you understand that?

22       A    Yes.

23       Q    Your deposition is being videotaped

24   today, and that video may be played to the judge

25   or the jury if this matter goes to trial.

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 7

1              Do you understand that?

2      A     Yes.

3      Q     Okay.  The court reporter to my left and

4    your right is taking down everything that's said

5    during today's deposition, all of my questions and

6    your answers and any other comments that are made

7    in the room.  After the deposition is completed,

8    she will put all of those questions and answers in

9    a booklet or transcript form.  You'll actually

10   have the right to review that transcript and make

11   changes to your testimony if you wish.

12              However, I would like to explain to you

13   in advance that if you say one thing here today

14   during your deposition and then later you try to

15   change your testimony in a meaningful or

16   substantive way, as opposed to just correcting a

17   typographical error or something of that nature,

18   that I would have the right to comment on the fact

19   that you said one thing during today's deposition

20   and then later you changed your testimony.

21              Do you understand that?

22   A     Yes.

23   Q     It is very important for us to make a

24   good record today, so there's several things I'll

25   ask you to do for me.  First of all, if you don't

LEXITAS™

Page 8

1    understand any of my questions, please ask me to

2    repeat or rephrase them, and I'll be happy to do

3    so for you.

4           During today's deposition, you need to

5    give an audible or verbal or out-loud response,

6    such as a "Yes" or a "No," as opposed to shaking

7    your head up and down or side to side or using

8    slang terms such as "Uh-huh" or "Huh-uh" if you

9    mean yes or no.

10          The reason I ask you to do that is

11   because those types of nonverbal responses or

12   slang responses, they don't show up well, if at

13   all, on the transcript.  So during today's

14   deposition, it's very common for people the first

15   time they go through this process to say "Huh-uh"

16   or they just shake their head.  I might ask you,

17   "Did you mean yes, or did you mean no?" because I

18   have to have something stated out loud on the

19   record for the court reporter.

20          Do you understand that?

21   A    Yes, I do.

22   Q    Additionally, you've done an excellent

23   job so far, but during today's deposition, as a

24   general rule, we have to avoid speaking at the

25   same time anyone else is speaking.  We'll all

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 9

1   afford you the same courtesy.  One of the reasons

2   we have to do that is it is very difficult for the

3   court reporter to accurately take down what two

4   people are saying at the same time.

5           So even if you believe you know the

6   answer to my question before I've completely

7   finished the sentence, please wait for me to

8   completely finish speaking before you begin your

9   response.

10           Can you do that for me?

11   A    Yes.

12   Q    During today's deposition, your

13   attorney, Mr. Anderson, may make an objection to

14   one or more of my questions.  I want to explain to

15   you how objections work during the deposition

16   process, because they work a little differently

17   than what you may have seen on TV or in a

18   courtroom.

19           During a deposition, you can see we

20   don't have a judge here to immediately rule on

21   objections.  So what we do during a deposition

22   is -- if I ask a question and Mr. Anderson wants

23   to make an objection for some reason, he will

24   state so on the record, and then we will still

25   look to you to give your response.  And then,



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 10

```
 1    later, if a judge needs to go back and look at the

 2    transcript, he or she can do so and make a ruling

 3    at that time based on the transcript whether your

 4    response is admissible.

 5            So I explain that to you because it

 6    confuses many witnesses the first time.  Sometimes

 7    they think they hear an objection so they're not

 8    supposed to respond, but generally the opposite is

 9    true.  If I ask you some question that is truly

10    protected by a privilege or there's some other

11    reason Mr. Anderson thinks you are not legally

12    obligated to respond to it, I'm sure he'll make

13    that very clear.

14            Otherwise, you can essentially ignore

15    the objections and just let Mr. Anderson state

16    them for the record, and then we'll -- we'll

17    continue with your response.

18            Do you understand how objections will

19    work today?

20        A    Yes.

21        Q    Okay.  Have you consumed any alcoholic

22    beverages in the last 24 hours?

23        A    No.

24        Q    Have you taken any drugs -- that would

25    include prescription medications -- within the
```

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 12 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 11

1    last 48 hours?

2        A    No.

3        Q    Do you have any sort of medical

4    condition -- an extreme example would be dementia

5    or Alzheimer's disease -- that may affect your

6    memory or your ability to testify here today?

7        A    I do not.

8        Q    Okay.  Your deposition or this

9    deposition was set today pursuant to Federal Rule

10    of Civil Procedure 30(b)(6), and that's a special

11    rule that says if we have sued a legal entity,

12    like the Las Vegas Metropolitan Police Department,

13    we can serve a list of topics, and then it's up

14    for the department to present a witness who is

15    educated about and can speak about those topics in

16    a manner that binds the police department.

17            So, to be clear on this transcript as we

18    begin, I did not specifically request that you

19    come here today to testify.  You were -- you're

20    being presented on behalf of the police

21    department.  So what we've done is we've taken the

22    deposition notice and we've marked it as

23    Exhibit 1.  I will pass that to you.

24                (Exhibit 1 was identified.)

25



Page 12

1    BY MR. BREEDEN:

2         Q    And on page four of this exhibit,

3    there's a list of topics, and I've highlighted the

4    ones in yellow where you've been designated to

5    testify here today.  So that was a long

6    introduction to this question.

7              But my question is:  Prior to today's

8    deposition, have you reviewed this list of topics?

9         A    I have.

10        Q    And you are aware of the topics you've

11   been designated to testify today?

12        A    Yes.

13        Q    Okay.  What, if anything, did you do to

14   prepare for the deposition?  And when I ask that,

15   I mean, what documents have you reviewed?  What

16   witnesses or defendants have you spoken to?

17   Explain to me what you've done.

18        A    Well, first, Craig Anderson notified me

19   that I was going to do this deposition, so I've

20   met with Craig Anderson on two personal times at

21   his office, probably an hour or two each time.

22   We've had numerous phone calls, texting back and

23   forth regarding this case.

24             I've reviewed the CIRT report reference

25   Mr. Williams and this case.  I've reviewed



Page 13

1    depositions from Lieutenant O'Daniel,

2    Officer Bertuccini, Sergeant Russ Backman, and

3    Detective Roth.  I've read the search warrants

4    related to the Nellis apartment, as well as Jimmy

5    Durante, the residence, and the IAP associated to

6    this.

7              I also reviewed reports regarding

8    Jasmine King case; reviewed past SWAT manuals

9    back -- dated back in 2021 -- prior to 2021, the

10   incident, the SWAT manuals as far as -- and as

11   well as the current SWAT manual; reviewed policy

12   on search warrants as it lies today in our policy.

13       Q    Other than --

14            MR. ANDERSON:  Body-worn camera.

15            THE WITNESS:  Oh, I'm sorry.  Reviewed

16   body-worn camera from multiple angles,

17   Sergeant Russ Backman, Officer Bertuccini, a

18   view -- a couple of different angles, but I

19   reviewed body-worn camera of that incident.

20   BY MR. BREEDEN:

21       Q    Okay.  In preparing for the deposition,

22   did you review any documents or find any documents

23   that you believe had not already been produced in

24   this case?

25       A    I did not.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 14

```
 1      Q      Okay.  And --

 2      A      Can -- can I ask for a tissue?

 3             MR. ANDERSON:  Yeah, tissue.

 4             THE WITNESS:  I'm sorry.

 5             MR. BREEDEN:  Sure.  Well, let's go

 6   off the record briefly.

 7             THE VIDEOGRAPHER:  The time is

 8   9:15 a.m.  We are off the record.

 9             (Whereupon, a recess was taken.)

10             THE VIDEOGRAPHER:  The time is

11   9:17 a.m.  We are on the record.

12   BY MR. BREEDEN:

13      Q      Okay.  So, Lieutenant Beas, we're back

14   on the record now.

15             Other than reviewing other depositions

16   that were taken in this case, did you have any

17   personal conversation with any of the Metro police

18   officers who have been sued individually?

19      A      I have.  Previous to this, back when I

20   took over the SWAT team, I did have conversations

21   regarding this incident.  It's just something you

22   learn from.  So I've spoken with

23   Officer Bertuccini, Officer Jake Warner, Russ

24   Backman.  Those are the three main -- Sergeant

25   Alex Gonzales, Chris Latham.  Those are about the
```

Page 15

1  main ones I can remember that were involved in

2  that incident.  Kerry Kubla -- I mean, obviously.

3  They all work for me.

4      Q    Okay.  And is it fair to say, though,

5  that you had no personal involvement in the

6  planning or execution of this SWAT action on

7  the -- on January 10 of 2022 at the time that it

8  happened?

9      A    I did not.

10     Q    Okay.  Were you on Las Vegas' SWAT team

11  or in the SWAT department at all at that time?

12     A    I was not.

13     Q    Okay.  So -- and we're going to get into

14  your employment here in just a second or two,

15  so --

16         Have you reviewed any expert reports

17  that have been produced in this litigation?

18     A    Other than those reports that I just

19  stated, no other reports.

20     Q    Okay.  And, I mean, just to clarify,

21  there's been police practices experts.  We have

22  produced reports by a Greg Gilbertson, as well as

23  a former Metro SWAT member whose -- whose name,

24  for some reason, I can't come up with right now.

25         MR. ANDERSON:  Tom Milton.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 16

1    BY MR. BREEDEN:

2         Q    Tom Milton.

3              Have you reviewed those reports?

4         A    I did not.

5         Q    Okay.  Do you know Mr. Milton, by the

6    way?

7         A    I do.

8         Q    Okay.  Did you know him personally from

9    his time on the police force?

10        A    I knew him personally from the police

11   force, just from interactions on the department.

12        Q    Okay.  Was he -- would you call him a

13   friend or a personal acquaintance of yours?

14        A    I would say a work acquaintance.

15        Q    Okay.  And then there's been a defense

16   police practices expert also produced.  And,

17   again, for some reason, I can't come up with that

18   gentleman's name.

19             MR. ANDERSON:  Spencer Fomby.

20   BY MR. BREEDEN:

21        Q    Spencer Fomby.

22             Have you reviewed Mr. Fomby's report?

23        A    I did not.

24        Q    Have you spoken to Mr. Fomby?

25        A    I don't know who he is.

LEXITAS™

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 17

```
 1       Q     Okay.  Well, let's -- let's talk a

 2  little bit about your background and experience

 3  with Las Vegas Metro.

 4             First of all, what is your current title

 5  or rank?

 6       A     My current rank is a lieutenant on the

 7  Las Vegas Metropolitan Police Department, and I'm

 8  currently assigned to the SWAT section as the

 9  tactical commander.

10       Q     And are you essentially the second in

11  command at SWAT?

12       A     Yes.  I have a captain who is above me

13  who is the SWAT commander.

14       Q     Okay.  And who is the current captain?

15       A     Hector Cintron, C-I-N-T-R-O-N.

16       Q     How long has Captain Cintron been the

17  SWAT captain?

18       A     I believe he came on around October of

19  last year.

20       Q     And how long have you been the -- would

21  you say it's the -- the tactical lieutenant?

22       A     Tactical commander, yeah.

23       Q     Tactical commander.

24       A     Same -- same thing.

25       Q     How long have you been the tactical
```

Page 18

1    commander or lieutenant, then, at SWAT?

2         A    I took over officially July 8th of 2023.

3         Q    And so let's get a little bit of an idea

4    about your background then.

5              What's the extent of your education?

6         A    I have an associate's degree at the

7    College of Southern Nevada in criminal justice.

8         Q    What year did you obtain that degree?

9         A    I believe it was 2003.

10        Q    Have you lived in Clark County, Nevada,

11   your whole life?

12        A    I have.

13        Q    And when did you first join Las Vegas

14   Metro?

15        A    I joined Las Vegas Metro on July 27th of

16   1998.

17        Q    Have you been continuously employed with

18   Metro since 1998?

19        A    I have.

20        Q    And, you know, we'll just say as an

21   adult -- and I realize that's a little vague, but

22   as an adult, have you always worked as a police

23   officer, or have you held other positions?

24        A    Prior to 1998, I joined the United

25   States Marine Corps in 1994 after graduating high

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 19

1    school.  I served four years in the Marine Corps.

2         Q    Okay.  So I'm just trying to -- to get a

3    timeline here.  It sounds like you graduated high

4    school.  You went into the Marine Corps for four

5    years.  After leaving the Marine Corps, you joined

6    Metro.

7              And then, apparently, while you were

8    employed by Metro, you were also getting a

9    criminal justice degree?

10        A    Yes, I started College of Southern

11   Nevada as a -- already employed with Metro.  In

12   between the United States Marine Corps, I worked

13   at the MGM as a security guard/EMT for two months

14   waiting to get hired on to Metro.

15        Q    When you were in the Marines, were you

16   military police?

17        A    I was a firefighter.

18        Q    When you were first hired by Metro, what

19   department or what assignment did you receive?

20        A    When I started Metro in 1998, after the

21   academy, after field training, I was in patrol.  I

22   finished field training, and I was stationed at

23   Northeast Area Command as a patrol officer.

24        Q    And so it might be easier just -- just

25   for you to explain it, but why don't you give me

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 20

1    an idea of your advancement through the department

2    up until the time that you became a lieutenant for

3    the SWAT team.

4         A    Okay.  Like I said, 1998, graduated the

5    academy in December, started field training, and

6    then I worked patrol officer.  Became an FTO,

7    field training officer, at the Northwest Area

8    Command.  In 2000 -- I believe it was '4, I became

9    a detective in the vice unit.  I was a vice

10   detective.  In 2007, I left the vice unit and went

11   to the surveillance section.

12             In 2008, November 1st, I was promoted to

13   sergeant and worked Bolden Area Command as a

14   graveyard sergeant.  I believe in 2012, I went

15   back to the vice section as a sergeant.  I moved

16   to the -- it was then called career criminal

17   repeat offenders program, which is now called

18   major violators section, as a sergeant in 2014.

19             A couple of years later, 2017, I went to

20   the narcotics section, where I worked the FBI Safe

21   Street gang task force.  Stayed in narcotics until

22   I promoted in 2019 as a lieutenant and became a

23   watch commander in June of 2019.  In February of

24   '20, I was moved to the counterterrorism section

25   as the lieutenant.  In December of '22, I moved

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 21

1    to -- to the major violators section as a

2    lieutenant.  And then in July of '23, I took over

3    as tactical commander of the SWAT team.

4        Q    Who was the prior tactical commander for

5    SWAT that you took over for?

6        A    His name was Lieutenant Joey Herring.

7        Q    Is Lieutenant Herring still with the

8    force?

9        A    He is -- he retired.

10        Q    And then, to your knowledge, prior to

11   Lieutenant Herring, was it Lieutenant O'Daniel who

12   was the SWAT lieutenant tactical commander?

13        A    Yes, she was.

14        Q    Okay.  And Lieutenant O'Daniel also

15   retired; right?

16        A    Yes.

17        Q    When did she retire?

18        A    I believe December -- sometime late '22

19   or early '23.  I believe Joey took over in

20   December of -- or January of '23.

21        Q    Have you ever been sued personally or

22   individually as a result of your employment at

23   Las Vegas Metropolitan Police Department?

24        A    I was taken to -- I don't know if it was

25   sued, but it was a diversity issue.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 22

1         Q      Have you ever had use-of-force

2    complaints made against you?

3         A      No.

4         Q      Did you ever go on the SWAT missions

5    prior to being promoted to tactical commander?

6         A      Starting in May of '23, I started to

7    ride along with SWAT, shadowing Lieutenant Joey

8    Herring.  So I would go on search warrants and

9    callouts, shadowing him as the tactical commander,

10   but not as an operator.

11        Q      Would you do -- I mean, SWAT and major

12   violators probably worked together on occasion.

13               Would you go on SWAT as part of major

14   violators?

15        A      Major violators, when -- sorry, when I

16   was in major violators as a sergeant and as a

17   lieutenant, we were mostly -- I won't say mostly,

18   but we did all the time -- it was either a PC

19   arrest or an arrest warrant for a subject, which

20   is totally opposite of search warrants for the

21   residence to search a place.  But we would deal

22   with SWAT frequently if a suspect or a subject

23   would not leave their residence.

24        Q      Have you ever been one of the SWAT team

25   members in the line, though, so to speak?  In

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 23

1    other words, doing the entry?

2         A    No, I was never an operator.

3         Q    Okay.  And just to talk a little bit

4    about some of the individual defendants, you know

5    Kerry Kubla; correct?

6         A    I do.

7         Q    Is he still on your SWAT team?

8         A    He is.

9         Q    Okay.  Is he someone that you see

10   frequently at work, then?

11        A    I work with Kerry Kubla, I believe,

12   three of his four days.

13        Q    Okay.  And then Officer Brice Clements,

14   is he still on SWAT?

15        A    He is not.

16        Q    Okay.  Why is he not on SWAT any longer?

17        A    I do not know.  He left prior to myself

18   getting up there.

19        Q    Is he still on the force?

20        A    Oh, I'm sorry.  I think Brice promoted

21   out of the SWAT.

22        Q    Okay.  Do you know what department he's

23   with, then?

24        A    He's in patrol.  He's on a patrol squad.

25        Q    Okay.  Is he somebody that you -- you

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 24

1    have spoken to in the past?

2         A    I've said hi to him a few times, and

3    that's about the extent of my talk with him.

4         Q    But he's somebody, if he walked into

5    this room, you would recognize him?

6         A    I would, yes.

7         Q    Okay.  Alex Gonzales -- is

8    Officer Gonzales still on SWAT?

9         A    Yeah, Alex promoted to sergeant, and he

10   is now a team leader on the SWAT team.

11        Q    Okay.  And so he's somebody that you see

12   frequently and work with frequently at work?

13        A    Again, I work with him three days of his

14   four days.

15        Q    Okay.  Russell Backman.

16        A    Russell Backman retired a few months

17   ago, and then Sergeant Alex Gonzales took his

18   spot.

19        Q    Okay.  And so Russell Backman is no

20   longer with the force, but did he retire while he

21   was on SWAT?

22        A    He did.

23        Q    Okay.  So he was somebody, at least for

24   a period of time, you worked with as well?

25        A    Exactly.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 25

1        Q    Okay.  And he's somebody, if he walked

2   in here, you would recognize him?

3        A    I've known Sergeant Russ Backman since

4   we were in vice, detectives together, so I've

5   known him for a long time.

6        Q    Is that more than 15 years, then?

7        A    Yes.

8        Q    Okay.  James Rothenburg -- is

9   Officer Rothenburg still on SWAT?

10       A    He is not.

11       Q    Okay.  When did he depart SWAT?

12       A    I couldn't tell you.  I know he promoted

13   as a sergeant and went back to patrol.

14       Q    Okay.  So he's a patrol sergeant now?

15       A    I do not know where he's located --

16   where his duties are now, but ...

17       Q    Okay.  And then Officer Bertuccini -- is

18   he still on SWAT?

19       A    Yes, he is.

20       Q    Okay.  And is he somebody, then, that --

21   that you work with frequently at Metro?

22       A    Yes.

23       Q    Okay.  And then Lieutenant O'Daniel, my

24   understanding is she's retired now; correct?

25       A    She is.



Page 26

1        Q    Is she somebody, when she worked for the

2    force, you knew her?

3        A    Yes.

4        Q    Okay.  So if she walked in here today,

5    you would recognize her as well?

6        A    Yes.

7        Q    Okay.  Have you had any discussions with

8    her specifically about what happened with either

9    the Jasmine King or the Isaiah Williams matters?

10       A    No, not at all.

11       Q    Okay.  To your knowledge, have any of

12   those individual defendants been disciplined or

13   received any sort of retraining as a result of

14   what happened in Mr. Williams' matter?

15       A    Through the reports that I've read, I do

16   not believe any of them were disciplined

17   internally for this incident.

18       Q    And, in fact, as you just testified,

19   several of them have been promoted, despite the

20   incident; right?

21       A    Yes.

22       Q    As part of your job with Las Vegas

23   Metro, have you testified in court before?

24       A    Yes, I have.

25       Q    How many times?

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 27

 1        A    In front of a jury, at least two times.
 2    Not more than three or four.
 3        Q    Okay.  And those were instances where
 4    you or Metro was not being sued; those are in
 5    association with a criminal investigation?
 6        A    It was.
 7        Q    Okay.  It seems like you remembered two
 8    occasions pretty clearly.
 9             Can you describe those to me?
10        A    The first occasion I remember was my
11    first time.  It was reference a -- a subject that
12    had connected his ex-girlfriend at her home, took
13    her in a vehicle, and it became a vehicle pursuit
14    that went out to Indian Springs and ended in an
15    accident where they rolled over, and he was
16    arrested for kidnapping, and I was the arresting
17    officer.
18        Q    And what's the second occasion you're
19    thinking of?
20        A    The second occasion is when I was a vice
21    detective and we arrested a subject for pandering.
22        Q    Have you ever testified in court
23    relating to a SWAT action?
24        A    No.
25        Q    What involvement do you have with



Page 28

1  training SWAT officers?

2      A    As the tactical commander, I oversee

3  everything from day to day that happens in the --

4  the SWAT section.  As part of the section, we have

5  a -- a squad that's called a training section, and

6  it's led by a sergeant, Sergeant Brett Brosnahan,

7  and three operators.

8          These three operators are senior

9  officers that have shown the ability -- not only

10  the experience and knowledge, but the ability to

11  also teach.  And they are responsible for all

12  training to all of our operators.  And this is --

13  includes SWAT school, weekly training, all of the

14  lesson plans to make sure they're current,

15  teaching lesson plans, and coming up with new

16  training based on new things that we see

17  throughout the year.

18      Q    And do you personally teach any of those

19  classes?

20      A    I do not.

21      Q    Okay.  That's left to Sergeant Brosnahan

22  and others?

23      A    And his team, yes.

24      Q    Okay.  Do you take part, though, in

25  changing or updating the instruction?

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                  Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 29

1       A     Yes.   Since I have been tactical

2    commander, we have created a leadership team.

3    It's composed of the SWAT commander, myself, all

4    four team leaders, all four assistant team

5    leaders, and the training section.

6              If we see that there's a new way of

7    doing things, a new tactic, a new tool, a new

8    piece of equipment, we talk about it as a group,

9    and it's -- through a committee, we either agree

10   to adopt that new tactic, buy that new piece of

11   equipment, or buy that new piece of -- a vehicle

12   or something like that.

13             So myself and the SWAT commander have

14   the final say in if we're going to move that

15   direction.

16      Q     So part of what you do as the tactical

17   commander for SWAT, though, is to review the

18   instruction to make sure it's adequate; right?

19      A     Yes.

20      Q     Okay.   When we talk about standards and

21   training for SWAT, would you agree with me that

22   there are department standards, then there are

23   state or national standards, and then there's

24   constitutional standards?   Do you agree with that?

25      A     As in tactics or in, like, laws?



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 31 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 30

1          Q     Just -- yeah, generally speaking,

2     regarding policies for SWAT and how SWAT actions

3     are to be conducted.

4          A     I could agree with you.

5          Q     Okay.  And you agree with me that all

6     Metro's policies need to comply with the

7     United States Constitution; correct?

8          A     Correct.

9          Q     And they need to comply with the Nevada

10    state constitution as well; right?

11         A     Correct.

12         Q     They need to comply with Nevada state

13    law as well; right?

14         A     Correct.

15         Q     And then there are some national or --

16    or state standards.

17               Are you familiar with Nevada POST?

18         A     I am.

19         Q     Okay.  Would you consider that to be an

20    organization that is reliable in the standards

21    that it's published?

22         A     It oversees our certification as law

23    enforcement officers, so yes.

24         Q     Are Metro's department policies required

25    to comply with POST?



Page 31

1              MR. ANDERSON:  Objection.  Form.

2              Go ahead and answer.

3              THE WITNESS:  I believe -- I don't --

4    I couldn't answer.  I don't know if they have to

5    require to -- everything POST says, because POST

6    is a standard of law enforcement training and

7    standardization, so I do not meet the -- I don't

8    know if they meet the threshold for state law or

9    U.S. law.

10   BY MR. BREEDEN:

11       Q    Yeah.  So let -- so let me phrase it

12   this way.

13              Is it your understanding that Nevada

14   POST, if they publish some sort of a training, is

15   that a recommendation or a requirement that Metro

16   follow that?

17       A    A requirement.

18       Q    Okay.

19       A    As far as training hours.

20       Q    So you think it's -- so you think it's

21   mandatory?

22       A    I don't believe everything that POST

23   publishes is mandatory, but it's a -- it's a

24   threshold.

25       Q    Okay.  Well, what -- what do you mean

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 33 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 32

1    by -- by "threshold"?

2        A    Like --

3        Q    Do you mean that it -- that the

4    department's policies should at least meet POST's

5    policies?

6        A    At least meet the POST policies, yes.

7        Q    Okay.  So I would say, then, that what

8    you're describing is that Metro's policies, in

9    your opinion, should be at least as -- they should

10   require at least as much as Nevada POST, and they

11   can even exceed that.  Is that what you're saying?

12               MR. ANDERSON:  Objection.  Form.

13               Go ahead.

14               THE WITNESS:  Yes.

15   BY MR. BREEDEN:

16       Q    Okay.  And then let's see here.

17               So in terms of constitutional standards,

18   does Metro provide its SWAT officers any

19   instruction on particular court cases and

20   requirements from those decisions?

21       A    In search warrant planning and tactical

22   planning, we do cover some case law that regards

23   to search warrants and U.S. law and -- and state

24   law.

25       Q    Okay.  We're going to talk about some

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 33

1    specific cases a little later in your deposition,

2    but I want to ask you -- you know, you're the SWAT

3    tactical commander -- are you familiar with the

4    United States Supreme Court case of Wilson v.

5    Arkansas?

6         A    I am.

7         Q    Okay.  And so can you generally describe

8    what that case discusses?

9         A    The -- it's a case that kind of cements

10   the knock and announce -- the announcement of the

11   police to the property, the defendant, from a

12   common law to actually a case law -- to give them

13   a reasonable amount of time to submit, given

14   the -- their -- their authority and position of

15   the officers before the search warrant.

16        Q    Is there anything -- well, it's before

17   force can be used to enter when serving a warrant;

18   right?

19        A    Correct.

20        Q    Okay.  And that case actually says that

21   that is a constitutional requirement under the

22   Fourth Amendment; right?

23        A    Yes.

24        Q    Okay.  There's some decisions applying

25   Wilson v. Arkansas from the Ninth Circuit Court of



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 34

1    Appeals.  One of them is United States v.

2    Granville.

3              Are you familiar with that case?

4        A    Not offhand.

5        Q    Okay.  There's another case called

6    United States v. Banks.

7              Are you familiar with that case?

8        A    I am, because it's a -- it's a North

9    Las Vegas case and -- yes, I'm familiar with that.

10       Q    Okay.  And what's your understanding,

11   just to describe it to a layperson, what that case

12   discusses?

13       A    Again, it goes to announcing your

14   authority and purpose prior to making forcible

15   entry.  In U.S. v. Banks, they went on to describe

16   timing of reasonableness for that specific case.

17       Q    Okay.  In the training that's provided

18   to SWAT officers, is Wilson v. Arkansas ever

19   specifically mentioned or cited in the training?

20       A    Yes, and it's also in our policy manual.

21       Q    Okay.  And is United States v. Granville

22   specifically mentioned?

23       A    I don't recall.

24       Q    Is United States v. Banks specifically

25   mentioned?

Page 35

```
 1      A    I don't believe so prior to this
 2  incident.  It has been recently, though.
 3      Q    Okay.  So prior to January 10 of 2022,
 4  to your knowledge, training that Metro gave SWAT
 5  did not specifically include United States v.
 6  Banks?
 7      A    I couldn't be 100 percent, but the
 8  documents that I've been reviewing prior to this
 9  case, I can't find U.S./Banks.
10      Q    Okay.  And just generally speaking,
11  would you agree with me that for Metro to
12  effectively train its SWAT officers on knock and
13  announce, it should be training them on the major
14  court decisions that they have to comply with?
15              MR. ANDERSON:  Objection.  Form.
16              Go ahead and answer.
17              THE WITNESS:  They should be trained
18  on everything that's associated with knock and
19  announce and search warrants, correct.
20  BY MR. BREEDEN:
21      Q    And would you agree with me that, at
22  least in that respect, prior to the incident in
23  this case, Metro failed in that job?
24              MR. ANDERSON:  Objection.  Form.
25              THE WITNESS:  I can't say that they
```

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 36

 1    failed, because -- just because it's not

 2    documented, I can't -- I can't speak to the fact

 3    that it wasn't informally talked about, because it

 4    is a local case and I'm sure the -- the tactical

 5    commander -- well, they would know that and talk

 6    with that.  But I just -- in my research, I could

 7    not find that in previous formal documents.

 8    BY MR. BREEDEN:

 9        Q    Okay.  There's no evidence in writing

10    that there was instruction given; correct?

11        A    Correct.

12        Q    Okay.  And would you agree with me,

13    then, that if it -- in the verbal instruction as

14    well, there was no instruction on those cases,

15    that would be a failure of training?

16               MR. ANDERSON:  Objection.  Form.

17               THE WITNESS:  I don't know if it would

18    be a complete failure of training, as -- as long

19    as they're touching parts that are -- that are

20    critical to the search warrant with U.S. and

21    Nevada state law.

22    BY MR. BREEDEN:

23        Q    Okay.  I'm going to skip around a little

24    bit -- well, look, I don't want to dwell on this

25    subject.



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 37

1            But as you sit here today, you can't

2    tell me any of that training occurred, can you?

3        A    I do know that they discuss in the

4    search warrant planning and tactical planning case

5    law.  I can't find documentation of every single

6    incidence, what they were trained of, but there is

7    lesson plans that cite certain cases, Wilson v.

8    Arkansas being one of them.  I'm sorry, the --

9        Q    Yeah, but -- but you yourself aren't

10   even familiar with United States v. Granville, and

11   you can't find anything in the training materials

12   that specifically mentions United States v. Banks

13   either; correct?

14       A    Prior to this incident, no.

15       Q    Prior to this incident.  Okay.

16           I'm going to skip around in the topics

17   just a little bit here.

18           First of all, when we talk about

19   warrants and how warrants are to be served, we

20   have no-knock warrants and then other warrants,

21   which I guess you could call regular warrants, or

22   knock-and-announce warrants.

23           What -- what term would you use for

24   that?

25       A    For other warrants that are not no-knock

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 38

1   warrants?

2        Q    Correct.

3        A    Well, just to go back a little bit,

4   they're all search warrants in a sense.  They're a

5   search warrant signed by a judge, approved by a

6   district attorney, written by a detective or an

7   officer.  When we get those search warrants, if

8   they specifically requested a no-knock search

9   warrant, that's just a tactic that the SWAT team

10  uses in serving those search warrants.

11            So I would say a no-knock search warrant

12  is -- it's different in a case, because it gives

13  us authority to not knock and announce our

14  presence prior to making forcible entry.  But

15  those would be tactics in serving a search

16  warrant.  So if you're asking specifically about

17  tactics, we do have different tactical options in

18  serving search warrants.

19       Q    Okay.  So one of those tactics is a

20  no-knock warrant; correct?

21       A    Correct.

22       Q    And you agree that the warrant in this

23  particular case was not a no-knock warrant.

24       A    It was not a no-knock warrant, correct.

25       Q    Okay.  So it was a warrant that had to

LEXITAS

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 39

1    be served according to the knock and announce

2    rule?

3         A    Correct.

4         Q    Okay.  And so what does the knock and

5    announce rule actually require of officers?  Like,

6    if you'll just regurgitate for me the -- the legal

7    definition of it.

8         A    Again, prior to making forcible entry,

9    the SWAT officers or officers in general have to

10   announce their presence and authority and purpose

11   to the occupants in that dwelling, and they have

12   to fail to surrender prior to making forcible

13   entry.

14        Q    Okay.  Do you agree with me that one of

15   the requirements of the knock and announce rule is

16   to knock?

17        A    I do not agree with you on that.

18        Q    Do you agree one of the requirements is

19   that the police announce their presence and

20   purpose -- purpose meaning, for example, to serve

21   a search warrant?

22        A    Yes.

23        Q    And then do you agree with me that one

24   of the requirements of knock and announce is that

25   Metro wait a reasonable amount of time for persons



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 41 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 40

1   inside the residence to come to the door,

2   ascertain the officers' identity and purpose, and

3   allow them entry?

4       A    SWAT officers should wait a reasonable

5   amount of time, yes.

6       Q    Okay.  And officers are required to

7   comply with knock and announce before forcefully

8   entering a residence; correct?

9       A    They have to comply with the knock and

10  announce law by reasonably giving them

11  announcements, reasonably giving them time before

12  the forcible entry, yes.

13      Q    Okay.  Based on the court decisions,

14  what is the rationale behind requiring the knock

15  and announce rule?

16          MR. ANDERSON:  Objection.  Form.

17          Go ahead and answer.

18          THE WITNESS:  It goes back to common

19  law of just announcing our presence prior to

20  making forcible entry so they know we have a

21  lawful search warrant.

22  BY MR. BREEDEN:

23      Q    Okay.  Does Metro consider one of the

24  reasons behind that rule to reduce the risk of

25  harm to both the officers and the occupants inside



Page 41

1    the residence when the warrant is served?

2         A    Those are two main factors, and the

3    third would be the citizens around there.

4         Q    Okay.  Are there certain factors -- you

5    know, when we talk about a reasonable amount of

6    time for officers to wait under the knock and

7    announce rule, are there certain factors that

8    affect what the officer should consider to be

9    reasonable?

10        A    Oh, there's several factors.  It could

11   fluctuate your reasonableness of time.

12        Q    Can you explain those factors to me?

13        A    Size of the -- the structure; the area

14   of where it's presented, if it's a tight apartment

15   complex, townhomes, also if it's in a rural area;

16   subjects inside, if you know they could be armed

17   or violent; proximity to citizens; the ability to

18   contain the structure; belief that evidence could

19   be destroyed.  Those are -- those of some of the

20   factors.

21        Q    Okay.  And I don't think -- there's one

22   that I don't think you mentioned, which is the

23   time of day that the warrant is served.

24        A    Oh.

25        Q    Do you --



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 42

 1        A     Time of day could affect reasonableness

 2   of time.

 3        Q     Okay.  You agree with that as well?

 4        A     Yes.

 5        Q     Okay.  And does Metro agree that knock

 6   and announce is required by the Fourth Amendment

 7   to the United States Constitution?

 8        A     Is a requirement by the U.S.

 9   Constitution?

10        Q     Yes.

11        A     Correct, yes.

12        Q     And then are you familiar with NRS

13   Section 179.055?

14        A     I am.  That's the NRS that governs

15   search warrants and the service of search

16   warrants.

17        Q     And so does that Nevada state law also

18   incorporate the knock and announce rule?

19        A     It does.

20        Q     Okay.  And, in fact, it requires -- I'll

21   just read it to you.  It says, quote, "The officer

22   may break open any outer or inner door or window

23   of a house or any part of the house or anything

24   therein to execute the warrant if, after notice of

25   authority and purpose, the officer is refused

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 44 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page  43

1    admittance," end quote.

2            So Nevada state law actually uses the

3    phrase that officers must be "refused admittance."

4            Do you understand that?

5        A    I do.

6        Q    Okay.  And do you believe that

7    requirement under state law, the refusal of

8    admittance, do you believe that is essentially the

9    same as the Fourth Amendment's knock and announce

10   rule, or do you believe that that is a -- is a

11   greater protection?

12           MR. ANDERSON:  Objection.  Form.

13           Go ahead and answer.

14           THE WITNESS:  It's essentially the

15   same, but they just structure it and word it

16   different, the -- or the submitting.

17   BY MR. BREEDEN:

18       Q    Okay.  So it's Metro's position that

19   there's no practical difference between the state

20   law and the federal knock and announce rule?

21       A    The state law is more restrictive than

22   the -- the U.S. law.

23       Q    How is it more restrictive?

24       A    But putting those words in there of

25   actually submitting -- or, I'm sorry, failure



Adrian Beas              Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 44

1    to -- what was the exact --

2        Q    It would be the officer's refused

3    admittance.

4        A    Refused admittance.  The actual verbiage

5    of refused admittance.

6        Q    Okay.  And in Metro's position, what is

7    necessary to establish that the officer has been

8    refused admittance?

9        A    Refused admittance could be many

10   factors.  It could be a suspect looking out a

11   window and not opening the door during the

12   announcements.  It could be you hearing noises

13   inside that you know -- you hear movements.  Or it

14   could simply just be nobody is at the door,

15   opening the door, submitting to your request of --

16       Q    Well, if it just meant nobody was at the

17   door, then that refusal of admittance requirement

18   wouldn't mean anything; right?  That would --

19   under that construction, Metro could just burst

20   through any door where somebody wasn't standing

21   right there to -- to open it.  So it must mean

22   something more than that.

23       A    I believe you still have to give a

24   reasonable amount of announcements, because there

25   could clearly not be anybody home during the

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas            Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 45

1    service of the search warrant and then no door

2    open, but equal to be somebody could be inside

3    fortifying their position or becoming armed or

4    destroying evidence and not opening the door or

5    looking out a window.

6        Q    When we talk about SWAT tactics, what is

7    a CET?

8        A    CET is a controlled entry tactic.

9        Q    And so what -- what does that mean?

10       A    That's essentially -- it's a type of

11   service, a tactic during a search warrant.  It's a

12   dynamic search warrant.  It's where they get

13   information.  Again, it has to fit the criteria

14   based on size, suspects, crime.

15           There's numerous factors that -- if the

16   CET tactic is approved to use.  They establish

17   containment.  They establish the announcing of the

18   search warrant prior to them making forcible entry

19   if that's needed.  And once forcibly -- forcibly

20   entering or a door is opened, an entryway is

21   opened, they flood that structure, and they take

22   it room by room to overwhelm that structure to

23   make it safe for the service of the search

24   warrant.

25       Q    The very concept behind a CET entry is



Page  46

1    that SWAT is supposed to use surprise and

2    overwhelming force in entering the structure;

3    correct?

4        A    Speed, surprise, and overwhelming

5    action, yes.

6        Q    And so given that CET requires speed,

7    surprise, and overwhelming action, whereas the

8    knock and announce rule requires that officers

9    wait a reasonable amount of time after they've

10   announced their presence for somebody to come to

11   the door and allow them entry, does Metro consider

12   CET to be in conflict with the knock and announce

13   rule?

14       A    After this incident, they did see that

15   there was a conflict in the language of the CET

16   based on the reasonableness of time.

17       Q    Okay.  And so it took this incident for

18   Metro to realize that?

19       A    I don't think it was just this incident.

20   It was various incidents throughout the U.S.

21   during that time period, very high profile cases

22   with SWAT and search warrants.  There was a new --

23   I guess a law expert that was hired by Las Vegas

24   Metropolitan Police Department that agreed that it

25   was in conflict and made recommendations, as well

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 47

1    as CIRT recommendations.  The new sheriff, as well

2    as the new director of SWAT, changed that

3    language.

4        Q    Okay.  But it wasn't because the knock

5    and announce rule or how it was defined changed.

6    It's just that Metro had a policy in place, and

7    then, as a result of this incident, it realized

8    it's -- the CET policy was not in compliance with

9    knock and announce; correct?

10                MR. ANDERSON:  Objection.  Form.

11                THE WITNESS:  Yeah, that CET was in

12   place for 20-plus years.  It was a tried and true

13   method of a tactical that -- it was a national

14   standard through National Tactical Officers

15   Association, through numerous SWAT teams that used

16   it on a daily basis, and Las Vegas Metropolitan

17   Police Department used it thousands of times.

18                And, yes, this incident, as well as

19   other incidents that the Metropolitan Police

20   Department was involved in, they took a look at

21   it:  Is there a better way that we can do things?

22   And just like anything in policing, they want to

23   take a look.  It doesn't mean it's a violation of

24   any law.  It's just could we do something better

25   to protect the citizens of Las Vegas, the



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 48

1    officers, and/or the suspects that we deal with.

2                 And at this case, they took a look at,

3    based on recommendations by CIRT and Anthony

4    Bandiero -- I can't -- I don't know if I'm saying

5    his name right -- to change the tactic based on

6    the language that we're using, the speed,

7    surprise, and overwhelming action, to make that a

8    no-knock search warrant.

9    BY MR. BREEDEN:

10        Q    Yeah, so CET should only be used on a

11   no-knock warrant; is that correct?

12                 MR. ANDERSON:  Objection.  Form.

13                 Are you talking about Fourth Amendment

14   or policy?

15                 MR. BREEDEN:  Well, we can break it

16   down.

17   BY MR. BREEDEN:

18        Q    So under department policy, is it true

19   that CET should only be used on a no-knock

20   warrant?

21        A    As it currently sits today, we actually

22   took the -- we call it a dynamic search warrant,

23   but it's essentially the same as a CET.  It can

24   only be used if we have a no-knock search warrant,

25   and that's based on police policy, our



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 49

1    department's policy, not on case law.

2        Q    And so the next question, then, is:  Is

3    it the department's position that under the Fourth

4    Amendment, CET entry as it was being used by Metro

5    conflicted with the knock and announce rule?

6              MR. ANDERSON:  Objection.  Form.

7              Go ahead and answer.

8              THE WITNESS:  I think they could not

9    come to a full agreement.  The -- the CET still

10   complied with the knock and announce rule as far

11   as service of the search warrant.  The tactic,

12   again, was used for 20-plus years.

13             After reviewing this incident, they

14   started looking into national trends, national

15   SWAT teams changing their tactics.  Hundreds of

16   SWAT teams have changed their tactics going away

17   from the CET or dynamic search warrants to a more

18   what we would call "surround and call out" or a

19   modified CET.

20             When that consultant said that the

21   language of speed, surprise, and overwhelming

22   action conflicted with giving reasonable

23   announcements, the department took that and asked

24   us to change it.  But it took, I would say, at

25   least a year after that CIRT report to -- to

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 50

1    finally make that change, and it was through a new

2    director, a new sheriff, and a new tactical

3    commander that it changed.

4    BY MR. BREEDEN:

5        Q    Okay.  So just to sort of summarize

6    here, after this incident, there was an

7    investigation of what occurred and whether there

8    was a failure in policy; correct?

9        A    Correct.

10       Q    Specifically as it pertained to CET

11   entry and whether CET entry complied with state

12   and federal knock and announce requirements;

13   correct?

14       A    Correct.

15       Q    There was a legal consultant who was of

16   the opinion that it did not; correct?

17       A    He stated that the language used in that

18   policy conflicted with the -- the knock and

19   announce reasonableness of time.

20       Q    And then the critical incident review

21   team, or CIRT, came to the same conclusion;

22   correct?

23       A    Yes, but the basis of it is -- is the

24   actual language of speed, surprise, and

25   overwhelming action.  It's not the tactic itself.



Page 51

1        Q    Okay.  Well, speed, surprise, and

2    overwhelming action was used to enter the

3    apartment where Mr. Williams was on January 10th

4    of 2022; correct?

5        A    Correct, the CET was used.

6        Q    Okay.  And then the CIRT findings were

7    also reviewed by the tactical review board or the

8    TRB; correct?

9        A    Correct.

10        Q    And TRB agreed with CIRT's findings;

11    correct?

12        A    Correct.

13        Q    Okay.  And so is Metro today taking a

14    position that, for some reason, the tactical

15    review board and the CIRT review and the CIRT team

16    were incorrect in their conclusions?

17             MR. ANDERSON:  Objection.  Form.

18             THE WITNESS:  What we agreed upon,

19    that the CIRT recommendations that keeping the

20    language of speed, surprise, and overwhelming

21    action, that tactic would be a no-knock search

22    warrant.

23    BY MR. BREEDEN:

24        Q    In the SWAT world, what is a SACO

25    technique?

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 52

1        A    SACO, SACO, surround and call out.

2        Q    Okay.  And so what does that mean, and

3   how is it different from a CET?

4        A    A SACO is, again, another tactic used in

5   service of a search warrant.  If -- if a -- a

6   tactic of CET is not authorized or doesn't fit,

7   based on some of the criteria I spoke about

8   earlier about the size of the property, the

9   suspects, the crime, what we're going after, if we

10  can contain that to protect the officers, the

11  citizens, and the occupants, and we can safely

12  contain that 360 -- we call one, two, three, and

13  four sides -- we can contain all four sides safely

14  without any regards to possibly escape or going

15  into another residence.

16        Simply a surround and call out is just

17  what it kind of says, is we surround it, contain

18  it, and then we start our announcements once it's

19  contained and surrounded.

20        Q    So you're going to surround the area

21  that is the subject of the warrant, and then

22  you're going to make an announcement that says

23  something like "Las Vegas Metropolitan Police.

24  Search warrant.  Please exit the residence."

25        You know, how does it go?

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 53

```
 1        A    It's essentially that.  "Las Vegas
 2   Metropolitan Police Department SWAT team.  We have
 3   a search warrant for resident A, B, C.  Please
 4   come out with your hands up."  It -- there --
 5   there is no clear magical words or dedicated
 6   lines, but that's essentially what we want to say.
 7   We want to announce that we're the Las Vegas
 8   Metropolitan Police Department SWAT team, we have
 9   a search warrant, and what the residence is.
10        Q    Does Metro believe that surround and
11   call out is in conflict with the knock and
12   announce rule?
13        A    No.
14        Q    Can you describe for me all the reasons
15   why surround and call out was not used for the
16   January 10, 2022, incident regarding Mr. Williams
17   and who made that decision as to why surround and
18   call out would not be used?
19        A    Okay.  That's a long question.
20             But just to say, I have never been to
21   that location.  But through all my reading and
22   reports and looking up that address and reading
23   the reports of the -- the recommendation for the
24   use of the CET, I would say, first, the ATL that
25   day comes up with the plans to present to his team
```

LEXITAS

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 55 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 54

1    leader.  The ATL will come up with options.

2           In speaking with now-Sergeant Jacob

3    Warner, he did have both options available.  The

4    best option that he believed was the CET option

5    for the tactical option.

6           He presented that to both Garth Findley

7    and Russ Backman.  I believe Garth Findley was on

8    vacation during the planning process of this, and

9    it was presented to Russ Backman, who then had to

10   get it approved through the tactical commander,

11   Melanie O'Daniel.

12          The reasoning for the CET and not to go

13   to the SACO on that, again, it was a corner

14   building apartment that it was tight to bring in

15   armored vehicles, our BearCats, large vehicles.

16   It had an AMPM -- I don't know the direction, but

17   I'm -- so I'm going to call it the sides that I

18   know.  So the building, on the four side, would be

19   an AMPM with a small wall with some wrought iron

20   gates.

21          And then to the three side would be

22   Nellis, kind of an open main thoroughfare.  And

23   they had a wraparound, a -- the apartment complex.

24          It was a small apartment.  I believe it

25   was a one-bedroom, 750 square feet, if I'm



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 56 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 55

1    correct, somewhere around that range, with

2    suspects that are believed to be armed and have

3    violent priors.

4            Based on all of those factors and the

5    factors, they believed they could not contain it

6    by a surround and call out, given that -- the

7    closeness of neighboring apartments, the violence

8    associated with the crime being investigated, the

9    area itself in general, like I said, the open

10   areas of the AMPM and Nellis Boulevard, we

11   couldn't contain it fully, they -- they decided on

12   the surround and call out, which was ultimately

13   approved by the tactical commander, Melanie

14   O'Daniel.

15       Q    I think you may have misspoken.  I think

16   you meant -- you said they agreed on surround and

17   call out.  I think you meant they agreed on CET.

18       A    I'm sorry.  I apologize.  I -- they

19   agreed on the CET, controlled entry tactic, which

20   was approved by Melanie O'Daniel.  That was

21   briefed to her by Russ Backman.

22       Q    And I want to make a distinguishment

23   here.

24            Is it Metro's position that either CET

25   or SACO was feasible, but CET was preferred, or is



Page 56

1    Metro saying SACO was not even feasible due to

2    certain factors; the only thing we could use here

3    was CET?

4         A    Metro as a whole -- so if you're talking

5    about Metro, the department -- leaves it up to the

6    SWAT section, the tactical commander at the time,

7    to make a decision on what tactic to use.  Again,

8    going back to everything that an ATL had seen on

9    the recon, had seen on the overlay of the maps,

10   based on his training, experience being up there,

11   being an ATL, believed that the CET was a better

12   tactic to use than the -- the SACO.

13        Q    Okay.  So it was -- either one in

14   Metro's position was available for use; it is just

15   that SWAT preferred CET; is that --

16        A    I -- I believe that night, that

17   incident, it was overwhelmingly better for them to

18   use the CET than the SACO based on what they --

19   they believed they had at hand.

20        Q    Okay.  But was SACO a viable option?

21        A    I wouldn't use viable.  I would use an

22   option.

23        Q    Okay.  So it was at least an option, but

24   it was not used?

25        A    Correct.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 57

1        Q      And are you aware that Nevada law
2    actually requires de-escalation techniques?
3        A      Correct.
4        Q      Okay.  De-escalation is the concept that
5    law enforcement should be using the least
6    confrontational option; correct?
7                   MR. ANDERSON:  Objection.  Form.
8                   THE WITNESS:  It's not always the
9    least amount, but in progressions, correct.
10   BY MR. BREEDEN:
11       Q      Okay.  Do you believe that use of the
12   CET is compliant with de-escalation?
13       A      Yes.
14       Q      Okay.  So that would seem to be
15   contradictory, because CET is a much more
16   confrontational.  It involves much more use of
17   force.  It involves speed, surprise, and
18   overwhelming force, versus a SACO.
19                   So why does Metro consider a CET over
20   SACO to be compliant with de-escalation?
21       A      Number one would be safety factors, not
22   only for the occupant inside the residence, the
23   citizens and officers involved.  And
24   de-escalation, again, it doesn't mean you always
25   have to use the lowest amount of force needed,

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 58

1    because sometimes you're presented with a higher

2    level of force and you have to come -- come back

3    with a -- a level of force that is equal to amount

4    to that.

5              The CET, again, the speed, surprise, and

6    overwhelming action is based on taking that

7    structure, once inside, with speed, surprise, and

8    overwhelming actions to make sure that, again, the

9    officers are safe, the citizens are safe in the

10   residence next door, and the occupants.

11             They verbalize their announcements to

12   give a reasonable amount of time.  They use

13   different options prior to hitting the door and

14   verbalizing their announcements all the way

15   through.  So, again, I believe it still complies

16   with de-escalation; it's just not the same as a

17   SACO.  Two separate and distinguished options to

18   use during search warrants.

19       Q    Well, with due respect to you, you talk

20   about the CET being used for safety.  Mr. Williams

21   was shot and killed during this.

22             It certainly didn't ensure his safety,

23   did it?

24                 MR. ANDERSON:  Objection.  Form.

25                 THE WITNESS:  Again, Mr. Williams'

Page 59

1    death is tragic, and that's not what we plan to do

2    when we do the search warrants.  Again, we

3    scrutinize our plans.  They're briefed through an

4    ATL, through a team leader to a tactical

5    commander.  They're briefed to the team.  And none

6    of this -- again, we go through training, we go

7    through the planning phase of the briefing to make

8    it safe.  That is beforehand.

9              Once we made entry, again, tragically,

10   Mr. Williams decided to shoot 18 times at the

11   officers making entry, so ...

12   BY MR. BREEDEN:

13     Q    Does Metro believe that if it had used a

14   SACO instead of a CET, that this incident more

15   likely than not would not have occurred?

16             MR. ANDERSON:  Objection.

17   Speculation.

18             Go ahead and answer.

19             THE WITNESS:  Obviously, a SACO being

20   different in -- in tactics, we would not have

21   Officer Kubla inside that quickly.  I cannot say

22   if Mr. Williams would have come out and used that

23   firearm or once we made entry -- because,

24   eventually, we have to make entry on a SACO --

25   that it still wouldn't have occurred.  But it



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 61 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 60

1    wouldn't have been that same timing.

2    BY MR. BREEDEN:

3        Q    Well, the -- the firefight that occurred

4    that resulted in Mr. Williams' death and -- and

5    you mentioned, you know, the times that he

6    fired -- Mr. Williams was shot 17 times by police.

7            More likely than not, SACO would have

8    avoided that result --

9            MR. ANDERSON:  Objection.

10   Speculation.

11   BY MR. BREEDEN:

12       Q    -- do you agree?

13           MR. ANDERSON:  I'm sorry.  Objection.

14   Speculation.

15           THE WITNESS:  I agree to the point of

16   that incident.  But, again, even in a SACO, we

17   have to make entry at a certain point, so I cannot

18   speculate on whether Mr. Williams would have been

19   inside there and still did that.  But, yes, it

20   wouldn't have happened that way.

21   BY MR. BREEDEN:

22       Q    I want to talk about noise flash

23   diversionary devices.  Sometimes we've been

24   calling them NFDDs for short.

25           Just explain generally what an NFDD is.



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 61

1        A      Again, a NFDD is a low-level use of

2   force option that we have.  We use them

3   predominately on all of our callouts to barricades

4   or hostage situations and search warrants as a

5   means to cause -- they're a couple different

6   purposes.

7              We can use them, again, to alert that we

8   are out there, to get their attention, that there

9   were police.  They're used like -- they're a

10  diversionary device to disorientate, confuse

11  somebody inside a residence to give them that

12  split second pause so we have -- again, we have

13  overwhelming action -- we have the upper hand.  It

14  takes away a -- a visual and auditory just for a

15  slight second, again, to get the upper hand.

16             So it's more of a tactic to give that --

17  give us the tactical advantage.  And when we

18  either have to go in on a hostage situation, a

19  search warrant, that's when we use them, on all

20  operations.

21       Q      So NFDDs come in different kinds, but

22  some of them create a very bright flash; correct?

23       A      We use -- today we use three different

24  kinds of NFDDs, correct.

25       Q      Okay.  But -- and some of them create a



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 62

 1   bright flash; correct?

 2        A    Correct.  I'm sorry.  Yeah.

 3        Q    Have you ever been near one of those

 4   when it -- when the flash went off?

 5        A    Yes.

 6        Q    How long would you say that that affects

 7   your vision?

 8        A    Half a second.  A second.

 9        Q    Half a second?

10        A    If you're -- if you're looking directly

11   at it.  I mean, we try not to -- we train not to

12   look at them.  But it's a bright, quick flash of

13   light.

14        Q    Well, what if you happen to be looking

15   directly at it when it went off, how long do you

16   think that would affect your vision?

17             MR. ANDERSON:  Objection.

18   Speculation.

19             Go ahead.

20             THE WITNESS:  A second or two.

21   BY MR. BREEDEN:

22        Q    And then do you think it would be longer

23   if that went off in a dark environment?  In other

24   words, the room is totally dark and it goes off,

25   versus it was the daytime and it went off.

Page 63

1          Do you think it would affect a person's

2    vision longer if it was deployed in the dark?

3       A    I think, naturally, any light that hits

4    your eyes at dark, it takes you a little longer to

5    refocus, so it doesn't matter how bright.  I

6    mean -- but I would agree, I mean, essentially,

7    any light that gets flashed in your eyes at night

8    is -- takes you a second more to -- or I

9    wouldn't -- I wouldn't give a time, but it's

10   longer at night because you're not used to --

11      Q    Your eyes have to adjust --

12      A    Yes.

13      Q    -- to the sudden brightness and darkness

14   change; right?

15      A    Yes.

16      Q    Okay.  Some of them also give off a

17   pressure wave; right?

18      A    They all do.

19      Q    In other words, you can feel them.

20          Like, if you -- even if you were deaf

21   and blind, you would be able to feel them?

22      A    There is some slight overpressure, yes,

23   caused by the detonation -- ignition of the

24   flash -- or the powder inside.

25      Q    And then they're also designed to make

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 64

1    an audible noise; right?

2        A    Yes.

3        Q    And the noise resembled a gunshot?

4        A    I would say that's true.

5        Q    Okay.  Would you say that laypeople

6    frequently confuse those noises with gunshots?

7               MR. ANDERSON:  Objection.  Form.

8               THE WITNESS:  It could be -- it could

9    be similar to a gunshot noise.

10   BY MR. BREEDEN:

11       Q    Okay.  And, in fact, in this particular

12   case, I don't know if you saw it on the video, but

13   I believe it's Officer Rothenburg or

14   Officer Bertuccini who was even confused.  He

15   heard the nine banger and wasn't sure whether that

16   was gunshots or the nine banger.

17               Were you aware of that?

18       A    I'm aware through reading the reports

19   that there was some -- somebody -- like you said,

20   I believe it was Officer Rothenburg that said that

21   to Officer Bertuccini, and that was reference to

22   the nine bang NFDD, which is different than the 25

23   and the audible.

24       Q    The -- the nine banger and the stun gun,

25   those are designed to mimic gunshots; right?

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 65

 1      A    The stun stick is not.  The -- the nine

 2   banger, due to its rhythmic cycle of the nine

 3   bangs, was built to mimic fire, or some people

 4   believe it's mimicking gunfire.

 5      Q    And --

 6      A    Because of the unusual rhythm of -- it's

 7   not just bang, bang, bang, bang.

 8      Q    And that could have been designed in a

 9   different way.  For example, you could design a

10   device that sounded just like a police siren, and

11   that wouldn't resemble gunfire, and it would still

12   distract people.

13           But the noise flash diversionary devices

14   used for Mr. Williams' case, those resembled

15   gunfire; correct?

16           MR. ANDERSON:  Objection.  Form.

17           Go ahead and answer.

18           THE WITNESS:  Again, they're --

19   they're a high-decibel diversionary device that we

20   use to divert their attention to wherever we're

21   directing our team to enter.  We're not using it

22   to mimic gunfire.

23   BY MR. BREEDEN:

24      Q    But it does sounds like gunfire; right?

25      A    To laypeople, like you said, to some

LEXITAS™

Page 66

1    people, it could.

2         Q    Okay.  And is it Metro's position that

3    deployment of NFDDs is inconsistent with the knock

4    and announce rule?

5         A    No.

6         Q    Well, if the goal of knock and announce

7    is to allow people a reasonable time to come to

8    the door and ascertain that it's police officers

9    and allow them entry, why would Metro, during the

10   time that's supposed to be happening, deploy a

11   noise flash diversionary device that sounds like

12   the person is under gunfire?

13        A    So during the announcements, we won't

14   deploy the NFDDs.  But if we're going to use a

15   tactical option of taking a window or opening a

16   door, the teams may choose to use the NFDDs just

17   as they're entailed to be used as -- to divert

18   their attention away from what they're doing.

19             So in this situation of the CET, they

20   used those -- they used a 25 Def Tec on a stun

21   stick to introduce it into a window and a

22   CTS 9-Bang NFDD on the two side to divert their

23   attention away from them using the manual breach

24   on the front door.

25        Q    If the knock and announce rule requires

LEXITAS™

Page 67

1    giving Mr. Williams time to come to the front door

2    and allow officers entry, why would they be

3    deploying a nine banger across the apartment,

4    outside a window, to distract his attention?

5        A    Again, at that time, after those set of

6    announcements were given, the plan was to manually

7    breach the door and then eventually make entry.

8    If, prior to that announcements, the door would

9    have been opened, they would not -- they would

10   have delayed on making that NFDD.  But at that

11   time, they chose the -- the plan was after those

12   announcements that were given after the insertion

13   of the stun stick, they would begin to manually

14   breach the front door and, once that door is open,

15   make entry.

16           The NFDDs were used to distract -- if

17   somebody was still inside, to divert their

18   attention from either arming themselves or trying

19   to escape while the team is entering.

20       Q    Well, the plan of SWAT that morning was

21   to deploy the -- to break out the rear window and

22   to deploy the stun stick inside the apartment

23   immediately on conclusion of the second

24   announcement; correct?

25       A    I believe that was the plan.  After the

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 69 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 68

1    second announcement, Bertuccini would insert the

2    stun stick in the two-side window and initiate the

3    25.

4         Q    There was no time preplanned into that

5    between the announcement and insertion of the

6    sun -- stun stick for Mr. Williams to get up and

7    come to the door and allow officers inside, was

8    there?

9         A    Still, there was six seconds for him to

10   come to the front door to give him announcements

11   or to give him announcements that we were going to

12   come in and to surrender.

13        Q    So there were -- there were two types of

14   NFDDs used here.  There was what I would call a

15   nine banger and what I would call a stun stick.

16             Can you give me the exact make and model

17   of those two different kinds?

18        A    So -- so the stun stick itself is just

19   the implementation tool that we use to extend the

20   Def Tec 25.  And the Def Tec 25 is just -- it's a

21   12-gram NFDD that we use.  It's roughly around --

22   when it -- when it goes off, it's about 175

23   decibels, and we try to keep it -- the

24   manufacturer says 5 feet away from an individual.

25             The nine bang is a CTS 9-Bang.  I



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 69

1    believe it's 43 grams, and it's got nine different

2    audible sounds, like, that are about 180 decibels.

3         Q    And these are deployed -- you know,

4    they're, like, little canisters, and they have a

5    pin like a grenade that is removed before they --

6         A    Yeah, it's like a smoke canister that

7    you would see.  Again, it's got a pin and a -- and

8    a spindle that comes off, and then it ignites

9    within half a second.

10        Q    Who was the officer that actually

11   deployed the nine banger that morning?

12        A    Officer Chris Latham.

13        Q    Who was the officer that deployed the

14   stun stick and the charge in the stun stick?

15        A    Officer James Bertuccini.

16        Q    And so I know from prior testimony that

17   Officer Bertuccini was to deploy the stun stick

18   and its charge immediately after the second

19   announcement.

20             What was the plan as to when the nine

21   banger was to be deployed?

22        A    I don't recall reading or getting

23   briefed on the plan of the nine banger.  But just

24   knowing what I do now, based on our tactics, is

25   the nine banger would go off the -- Bertuccini's

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 70

1    ignition of his 25.

2        Q    So --

3        A    But they're in succession.

4        Q    Okay.  So you believe, then, that

5    Officer -- I think you said it was Latham.

6        A    Latham.

7        Q    -- that Officer Latham was to deploy the

8    nine banger once the charge of the stun stick was

9    deployed?

10       A    Again, I'm just basing it off what I do

11   know now based on tactics and planning, because

12   reviewing their plan, I seen the draw up of their

13   plan prior to their brief, and next to Latham's

14   name, it says nine bang.

15       Q    Okay.  And -- but you believe, you know,

16   to -- to Metro's knowledge, that the plan was to

17   deploy the nine banger contemporaneously with the

18   stun stick?

19       A    Yes, based on just tactics.  Again, I

20   wasn't at the briefing and I don't have a

21   dictation of the briefing because they're not

22   recorded and there's no -- I'm just basing it off

23   of what I seen on the drawings of the plan.  Based

24   on tactics, it could be -- I believe it was

25   used -- after the 25 was initiated, the nine



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 71

1    banger would go off, or it would be a call by the

2    ATL to say, set the nine bang off.

3            But I don't recall, after watching the

4    body-worn cameras, that there was an actual

5    command to Chris Latham to throw the nine bang.

6    So that's why I base it that it was briefed that

7    he would throw it after the 25.

8        Q    The nine bang, that was deployed before

9    Mr. Williams fired his weapon; correct?

10       A    I believe so.  I -- I would have to

11   review that video again, but I do believe so.  It

12   was after the 25, because there was no gunshots

13   before the 25 or after the 25, and the nine bang

14   went right after the 25.

15       Q    And then do you believe the nine bang

16   was deployed before the officers took their first

17   shots?

18       A    Yes.

19       Q    And do you believe the nine banger had

20   fully deployed all nine shots before Mr. Williams

21   fired any round from his weapon?

22       A    I don't recall based on when I watched

23   the video.  I would have to watch it again and

24   just to hear it, if all of them successfully

25   deployed, all nine, prior to entry and prior to



Page 72

1    the shots being fired.

2          Q    You --

3          A    I'm sorry, I couldn't -- I couldn't

4    answer that.

5          Q    You agree with me that at least some of

6    the deployments of the nine banger occurred before

7    Mr. Williams fired his weapon?

8          A    Yes, I would agree with you on that.

9               THE VIDEOGRAPHER:  Mr. Beas, would you

10   be so kind as to slide your water six inches.

11   Thank you.  Thank you.

12   BY MR. BREEDEN:

13         Q    We're going to transition here into the

14   department's policies regarding knock and announce

15   and how it's supposed to be performed by officers,

16   including SWAT.

17              First of all, what are all of Metro's

18   rules, policies, or procedures concerning knock

19   and announce?  Where -- where are they contained?

20         A    When you first start talking -- when you

21   start talking about search warrants, you have

22   search warrant and prep class, the classes you

23   take to either -- to start authorizing -- or I'm

24   sorry, not authorizing, being the affiant of a

25   search warrant.  You go through training that is

Page 73

1    given by Metro.

2              And in that training, they do talk

3    about, again, Wilson v. Arkansas and some other

4    cases.  And I haven't taken it for probably 15, 20

5    years.  But I -- I would say that a newer case

6    would involve the Banks case and other associated

7    cases with knock and announce.

8              That's when you first start learning

9    that, if not also in the academy, of case law,

10   U.S. constitutional law, and Nevada state law.

11   Prior to a couple of years ago, when SWAT took

12   over all service of the search warrants, some

13   sections were authorized to serve warrants.  When

14   those sections, like, narcotics, vice, gangs, were

15   authorized to serve search warrants, they had to

16   go to a tactical class, a service of search

17   warrant tactical class.  I believe it was a

18   ten-hour case.  And, again, those cases and

19   those -- talking about announcements, the knock

20   and announce, would be given in that class.

21              Now the department has moved to just

22   SWAT.  So, again, when we brief every case, prior

23   to briefing, we talk about how many announcements,

24   how long it's going to take prior to us making

25   entry.  And we base that on the knock and announce



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 75 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                  Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 74

1    state law and the U.S. Constitution.

2        Q    Has there ever been a written or

3    unwritten policy about how many seconds or minutes

4    officers are supposed to wait between the

5    announcements and the use of force to enter the

6    residence?

7        A    In my research, I could not find any

8    written -- and, again, any unwritten.  Because you

9    have to take every case by its singular case,

10   based on what is presented, what intel do you have

11   on that particular search warrant.

12            Because every search warrant is going to

13   be different, so you base reasonableness off --

14   the reasonableness of the time based on the

15   factors that are presented to you.  And in that

16   case, again, I went through tons of factors that

17   were presented to them that when -- moved them to

18   the CET and moved them to what announcements or

19   how many announcements they would give prior to

20   making forcible entry.

21       Q    So there's been some reference in the

22   CIRT report and I believe one of the other

23   witnesses mentioned that at one time there was a

24   ten-second rule.

25            Are you aware of any time or any written



Page 75

1   or unwritten policy or procedure that officers

2   were to wait at least ten seconds before using

3   force after the announcements?

4       A    I mean, there is -- there's different

5   case law that talk about ten seconds or less than

6   ten -- sorry, ten seconds.  There's also case law

7   that talks about 15 to 20 seconds.  I could not

8   look at anything in our SWAT manual, our SWAT

9   lesson plans that specifically state the exact

10  seconds that you would need.  Everything goes back

11  to the reasonableness based on your intel that you

12  have on that search warrant.

13           MR. BREEDEN:  Okay.  I noticed we've

14  been going for about an hour and a half.  Why

15  don't we take a five-minute break.

16           MR. ANDERSON:  Yeah.

17           THE VIDEOGRAPHER:  The time is

18  10:36 a.m.  We are off the record.

19               (Whereupon, a recess was taken.)

20           THE VIDEOGRAPHER:  The time is

21  10:46 a.m.  We are on the record.

22  BY MR. BREEDEN:

23      Q    Okay.  So I want to make sure that I

24  understand your testimony on behalf of Metro

25  regarding the last topic.

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 76

 1              Your testimony is that Metro has never

 2    had any formal or informal policies as to how many

 3    seconds or minutes officers are supposed to wait

 4    between announcements and using force to enter a

 5    residence under the knock and announce rule.

 6              Is that your testimony?

 7        A    That there's a specific amount of time

 8    prior to making forcible entry?

 9        Q    Yes.

10        A    No, there's nothing written.  Again, it

11    goes back to even when you look at all of the case

12    laws, they're different.  And it just -- we base

13    it on you have to make the announcements of the

14    authority and purpose and then give them a

15    reasonable time to come and submit or --

16              Based on the factors of the search

17    warrant that you have, everything in totality is

18    based -- bases your reasonableness of time.  So

19    every search warrant could be -- it will be

20    different about that reasonableness of time.

21        Q    Well, in Metro's opinion, is one second

22    ever reasonable?

23              MR. ANDERSON:  Objection.  Form.

24              THE WITNESS:  Again, I -- I don't

25    believe it would be one second, because then



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 78 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 77

1    you're -- you're touching into the -- almost the

2    no-knocks.  It could be one second if -- based on

3    circumstances that you see once you are

4    presented -- you get up there.  If you see an

5    obvious sign of escape or somebody -- that door is

6    open and somebody visually sees you and your

7    authority, and they're backing up into the

8    residence.  So it could be one second.

9              But we wouldn't say, "Hey, we're only

10    going to give one-second announcements and bang

11    the door."  I mean, everything is on the totality

12    of the circumstances that are presented prior to

13    the event, based on the details, and then, going

14    up to the door, what you see.

15    BY MR. BREEDEN:

16       Q    Well, I want to use the -- the following

17    factual scenario, then, is that there are

18    announcements and then there is literally nothing

19    that is seen or heard inside the residence.

20              Would you agree, on behalf of Metro,

21    that waiting just one second between the

22    announcement and the use of force when there's

23    nothing seen or heard from inside the residence

24    would be unreasonable?

25       A    It would be unreasonable if -- if you



Page 78

```
 1   make that determination prior, saying we're giving

 2   one second and then we're banging the door with --

 3   without having anything presented, any factors.

 4   And, again, it goes back to also what you are

 5   going to -- projected to foresee inside there, if

 6   you're going to expect to encounter armed

 7   individuals or immediate destruction of evidence

 8   or an escape.

 9            So, I mean, I don't know where you're --

10   I mean, I don't know what you're asking about the

11   one second.  We'd never factor in the one second

12   in training.  It's all based on reasonableness --

13   based on state and U.S. laws, the reasonableness

14   of giving our announcements, and then based on is

15   it a CET tactic or is it a SACO tactic, what is

16   going to be the safest for, again, the officers,

17   the citizens around there, and the occupants.

18       Q   Well -- well, let me start this.  Let --

19   let me do it this way.

20            Most people would probably concede that

21   if officers knocked and announced and then waited

22   an hour and there were no activities or anything

23   inside the residence, that, at that point, it

24   would be reasonable for them to use force to

25   enter.  Okay?
```

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 79

 1              So we -- somewhere between zero seconds
 2      and one hour, there's an amount of time that Metro
 3      should likely not consider to be reasonable under
 4      any circumstances.
 5              So what amount of time is that?  Is it
 6      one second?  Two seconds?  Three seconds?
 7                      MR. ANDERSON:  Objection.  Form.
 8              Go ahead.
 9                      THE WITNESS:  Again, it's based on the
10      totality of the incident.  I mean, I can't -- you
11      can't put a time on every single search warrant.
12      You can't say, "This is going be to a one-second
13      search warrant or a five-second."  Obviously,
14      going into the planning, one second would be
15      unreasonableness -- or unreasonable.  But if
16      factors present themselves and you only have one
17      second, it could become reasonable.
18      BY MR. BREEDEN:
19          Q    Okay.
20          A    But there is no -- I'm sorry to cut you
21      off.  But there is no formalized in writing how
22      many seconds you have to wait.  We base it on case
23      law, state and U.S. law, and those cases that we
24      mentioned prior, that every one of them are
25      different in the timings of -- of announcements.

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 81 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 80

1          So the ATL and TL take those factors in

2     based on what they're given and then what they're

3     given at the time of the service of the search

4     warrant.

5          Q    Okay.  Well, even before they got to the

6     site for Mr. Williams' case, they preplanned to

7     use force to break out the back window and deploy

8     the stun stick immediately after the second

9     announcement; correct?

10          A    Correct.

11          Q    So they planned for zero amount of time

12     or maybe as long as one second after the second

13     announcement before they would use force; correct?

14               MR. ANDERSON:  Objection.  Form.

15               THE WITNESS:  The -- the plan for that

16     specific -- specific raid, for that CET was two

17     announcements, and then they would introduce the

18     stun stick to deploy the 25 distract, the NFDD,

19     prior to manually breaching the front door to make

20     entry.

21     BY MR. BREEDEN:

22          Q    And do you agree that -- that that

23     morning, on January 10th of 2022, that the first

24     use of force to enter the premises was the

25     breaking of the window to insert the stun stick?

Page 81

1        A    Yes, that's a low-level use of force and

2    intrusion into the apartment, was the introduction

3    of the stun stick and the 25.

4        Q    And that occurred almost simultaneously,

5    as well, with the first use of the battering

6    device on the front door; correct?

7                MR. ANDERSON:  Objection.  Form.

8                THE WITNESS:  I believe it was three

9    seconds after the -- that initiation of the 25 was

10    the first battering of the manual breach.

11    BY MR. BREEDEN:

12        Q    Okay.  Well, we'll look at the video --

13        A    Yeah.

14        Q    -- to see what it is.  My recollection

15    is it was essentially at the same time, but the

16    video will show.

17        A    Okay.

18        Q    You keep saying in some of your

19    responses that, no, there's no -- there's no

20    policy in writing.

21                Is there any unwritten policy or

22    practice?

23        A    Again, the unwritten would be the

24    planning phases of each particular search warrant

25    and what you have, the -- the structure, the size,

Page 82

1    the occupants, the citizens' safety.  We take that

2    all in account and base it off of how long we want

3    to wait before we use a NFDD or before we want to

4    manually breach to make entry.

5         Q    Okay.  Well, let me -- because you

6    mentioned factors, and you say to -- totality of

7    the circumstances, and that's fair, because that's

8    legal phrasing from case law.

9         A    Uh-huh.

10        Q    Okay?  But let's apply it specifically

11   to Mr. Williams' case, where officers are on both

12   sides of a small apartment at 5:00 in the morning

13   when it is likely people inside are asleep, and as

14   they make the announcements, they hear and see

15   nothing from inside the apartment.

16             What is Metro's position on how long is

17   reasonable for officers to wait until they begin

18   forcefully entering that apartment?

19        A    Again, I don't believe the -- the

20   department has a position on giving the tactical

21   team a specific amount of time to wait.  It -- it

22   depends on the tactic used.  So that night, they

23   used the CET tactic.

24             At -- after the second announcement,

25   which I believe was six seconds, they introduced



Page 83

1    the stun stick and then started manually breaching

2    the front door, still giving announcements as

3    they're doing that.  And then when they finally

4    made entry into the threshold of the apartment,

5    still giving announcements.

6              They based their reasonableness amount

7    of time based on officer safety.  They didn't want

8    to wait a long time out there because they knew

9    there was possibly -- could be armed suspects in

10   there, and the nature of the crime that they

11   were -- that the warrant was for.

12      Q    Well, I don't want to argue with you,

13   but officers could sit behind a BearCat for hours

14   while they did a surround and call out; right?

15   There's no risk to the officers in doing that, is

16   there?

17              MR. ANDERSON:  Objection.  Form.

18              THE WITNESS:  Even in a SACO, we

19   wouldn't wait an hour.  But I agree with you,

20   there's -- the officers are afforded more cover

21   and concealment and safety behind an armored

22   BearCat.  But that -- based on the plan, the

23   armored BearCat could not be used on the one side

24   by the front door on that incident.

25

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 84

1    BY MR. BREEDEN:

2        Q    But several of the officers actually on

3    the ground when this happened had ballistic

4    shields as well; right?

5        A    Yes.  I believe a ballistic shield was

6    used by Officer Rothenburg on the two-side window

7    where the stun stick was used, and I'm sure they

8    had one up -- I believe they did have one up front

9    in front of the door.

10            Again, those ballistic shields are a

11    safety factor that we use.  They provide minimal

12    coverage.  They don't -- those are pistol-rated

13    shields.  They're not as safe as a BearCat, and

14    they don't provide the whole team with coverage.

15       Q    Metro agrees that its own CIRT review,

16    which was agreed by the Tactical Review Board,

17    found that officers had only waited six seconds

18    between the announcement and use of force to enter

19    the apartment.

20            Do you -- do you agree?

21       A    That was the timing of the -- the stun

22    stick, yes.

23       Q    Okay.  And plaintiff actually disputes

24    that number of seconds, the six seconds figure.

25    We think it's less.  Ultimately, a jury may have



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 85

1    to look at it and determine.

2            But even the six seconds, CIRT and TRB

3    both determined that that was not a long enough

4    amount of time to comply with the knock and

5    announce rule.

6            Does Metro acknowledge that?

7                MR. ANDERSON:  Objection.  Form.

8                Go ahead.

9                THE WITNESS:  CIRT had their

10   recommendations.  I believe they said, based on

11   Anthony's recommendation, that it wasn't long

12   enough, but SMEs in there still conflicted with if

13   that was reasonableness or not, the timing for the

14   announcements.

15   BY MR. BREEDEN:

16       Q    But TRB also reviewed that conclusion

17   and upheld it; correct?

18       A    I believe so, yes.

19       Q    And TRB is formed solely of people who

20   are Metro employees, as opposed to outside

21   consultants; correct?

22       A    The TRB, I believe they don't have any

23   outside.  I think it's just the use-of-force

24   board.

25       Q    And TRB unanimously sustained that

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 87 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas            Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 86

1    finding, didn't they?

2        A    I would have to relook at the TRB, but

3    I -- if you're saying that's on the record, then I

4    agree with you.

5        Q    Is Metro in this litigation now going to

6    dispute the findings of CIRT and TRB that SWAT did

7    not allow a reasonable amount of time to comply

8    with the knock and announce rule?

9            MR. ANDERSON:  Objection.  Form.

10           THE WITNESS:  The findings by the CIRT

11   review board and the Tactical Review Board were

12   based on department policy and if they found it

13   reasonableness of six seconds, given those

14   factors.  They ultimately decided that the SWAT

15   six-second announcements was not reasonable based

16   on that incident, but it did not -- again, there's

17   factors when you're talking about department

18   policy, state policy, and U.S. law.

19           At the time of the incident, the SWAT

20   operators, the ATLs, the team leader, and then

21   ultimately the tactical commander, who was not out

22   there, agreed that the two announcements would --

23   equated to the six seconds was adequate enough.

24   BY MR. BREEDEN:

25       Q    Okay.  I want to make sure that I



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 87

1    understand your testimony.

2              Are you saying Metro is now taking a

3    position in this litigation, now it -- that it's

4    been sued, that CIRT and TRB got it wrong?

5              MR. ANDERSON:  Objection.  Form.

6              THE WITNESS:  I don't want to say they

7    got it wrong, but CIRT can come up with

8    recommendations that still can get overturned

9    because it's based on what they believe department

10   policy should be.

11   BY MR. BREEDEN:

12       Q    Well, that's right.  And the board that

13   can overturn them is the Tactical Review Board,

14   and they chose not to on that reasonableness

15   finding; correct?

16       A    Again, I would have -- I -- I read the

17   CIRT review board findings.  I don't recall the

18   Tactical Review Board, but it -- but, again, if

19   you're saying that that's on the record, that's

20   their belief at the time, it was unreasonable.

21       Q    So you're saying that was their belief

22   at the time, that it was unreasonable, that the

23   knock and announce rule had not been complied

24   with.

25              So my question is:  Is Metro now

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 88

1    disputing that conclusion, or do they stand by

2    that earlier conclusion?

3          A     They're not disputing the findings of

4    the CIRT review or the Tactical Review Board.

5    Again, I think when you're talking about

6    reasonableness of -- of time, there's many factors

7    that go into it.  And at the time, that SWAT team

8    that conducted that raid on that mission believed

9    that they were within state and U.S. law to use

10   the six seconds prior to introducing the stun

11   stick.

12         Q     Okay.  And does Metro now acknowledge

13   that that was incorrect and that was an

14   unreasonable amount of time?

15         A     The findings were that, based on that

16   incident, it was an unreasonable amount of time.

17   That's what the CIRT and Tactical Review Board had

18   stated.

19         Q     And -- and that is Metro's position?

20         A     Ultimately, it's Metro's position based

21   on those reports.

22         Q     Okay.  Prior to this incident in January

23   of 2022, Metro's official policies allowed a CET

24   to be used for knock and announce warrants;

25   correct?



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 89

```
 1       A     Correct.

 2       Q     Okay.  And that policy was later

 3   revised; true?

 4       A     It's been revised a couple of times

 5   language wise, but it -- it -- yes, it has been

 6   revised --

 7       Q     Okay.

 8       A     -- several times.

 9       Q     And we'll -- we'll talk about that --

10       A     Okay.

11       Q     -- and the revisions and when and why

12   they occurred.  But I just want to establish for

13   now that, prior to this incident, CET was being

14   used by Metro's SWAT for knock and announce

15   warrants.

16             That's true; correct?

17       A     It's been used for 20-plus years and

18   thousands -- thousands of warrants, yes.

19       Q     Okay.  And at least prior to this

20   incident, it was Metro's policy that NFDDs also

21   complied with knock and announce principles?

22       A     Yes.

23       Q     Okay.  Was it Metro's policy at that

24   time that blind insertion of NFDDs complied with

25   the Fourth Amendment?
```

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 91 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 90

1       A    The blind insertion of it is a
2    procedural policy that -- that when we introduce
3    a -- well, two different factors.  So when we're
4    introducing one into the structure, they want you
5    to visually clear the area to make sure it's not
6    going to go off right in front of somebody's face.
7            In the outside, they want to make sure
8    your -- your area is clear for fire hazards or
9    obstructions like small rocks that could propel.
10   So two different instants, if either it's going to
11   be an outside deployment or inside deployment.
12   But, yes, there is procedural policies in our
13   manual that dictate clearing of the area.
14      Q    Are those also constitutional
15   requirements under the Fourth Amendment?
16             MR. ANDERSON:  Objection.  Form.
17             THE WITNESS:  Of the clearing of the
18   area?
19   BY MR. BREEDEN:
20      Q    Yes.
21      A    I don't believe so.
22      Q    Okay.  So you're the current SWAT
23   tactical commander, and you're in charge of
24   training SWAT on these issues.
25      A    Was that your question?  I'm sorry.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 91

1      Q     Yeah.  I'm sorry.

2      A     Oh.

3      Q     I'm looking at my notes here.

4      A     Okay.

5      Q     So just to -- to restate the question I

6   was about to ask, you believe -- does Metro

7   believe that the Constitution would allow it to

8   simply blindly deploy or throw into a residence an

9   NFDD?

10     A     No, because if we blindly throw it

11  without any control of it, we would have --

12  without visually clearing the inside structure,

13  there could -- it could cause injury to any

14  occupants in there.  That's why the stun stick was

15  used, so we can have control of where that

16  deployment of that 25 was deployed once it was

17  inserted.

18     Q     Now, I've seen the video, you've seen

19  the video of the deployment of the stun stick.

20           Do you agree with me that when that was

21  deployed, when the charge on the stun stick was

22  deployed, officers had no idea who was inside the

23  apartment or where they were in the apartment?

24     A     When Officer Bertuccini inserted the

25  stun stick, he was aware nobody was directly

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 93 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 92

1    behind the window, but I would agree with you that

2    he did not know where Mr. Williams or any other

3    occupant was at inside the structure.

4         Q    Well, there was actually a closed blind

5    there; right?  People could not see inside.

6         A    It was closed prior to the insertion,

7    but when you insert it, there -- there -- you

8    would be able to see that nobody was directly

9    behind it.  But I agree with you that he couldn't

10   see inside that structure to where -- if anybody

11   else was in there.

12        Q    And you agree that deployment of these

13   NFDDs close to somebody's person, that those can

14   potentially harm the person?

15        A    If it's directly next to them based on

16   the -- the fire -- or the -- I don't want to say

17   explosion, but the powder being ignited could burn

18   a person if they're directly next to it, and it's

19   also a more overpressure that could -- it's a

20   higher PSI, more overpressure.

21        Q    It's against department policy to deploy

22   NFDDs too close to a person; right?

23        A    Yes.

24        Q    And what is the amount of inches or feet

25   that the department considers to be too close?



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 93

1       A    In the Def Tec 25, the manufacturer is

2  5 feet.  And that's what we use when we insert and

3  also deploy on the outside.  So we want it to be

4  about 5 feet -- around 5 feet.

5       Q    Are you familiar with the Ninth Circuit

6  case Boyd v. Benton County?

7       A    I don't know it if you -- just off those

8  names, but --

9       Q    Okay.  So in Boyd v. Benton County, the

10 Ninth Circuit wrote, quote, "Given the inherently

11 dangerous nature of the flash-bang device, it

12 cannot be reasonable use of force under the Fourth

13 Amendment to throw it blind into a room occupied

14 by innocent bystanders," end quote.

15      So there is a constitutional requirement

16 that covers NFDDs and how they're deployed.

17      Would you agree with me that

18 Mr. Williams was an innocent bystander in this

19 operation?

20           MR. ANDERSON:  Objection.  Form.

21           THE WITNESS:  He was an occupant

22 inside the structure that was not named in the

23 search warrant, I agree with you.  But, again, the

24 deployment of the 25 was not thrown into the

25 structure where they didn't have control over it,



Page 94

```
 1   so that's -- there's two different -- differences

 2   on the deployment of actually throwing it into an

 3   unknown occupied structure or the stun stick,

 4   where you have control of it and positioning of

 5   it.

 6   BY MR. BREEDEN:

 7        Q    And I want to talk about Metro's

 8   distinction here.  So Metro's official position

 9   is, "We couldn't blindly physically throw an NFDD

10   into a room where we didn't know where people

11   were, but if we had it on a stun stick and we

12   deployed it, we can just deploy it blindly through

13   a window."

14              Is that what Metro's position is?

15              MR. ANDERSON:  Objection to form.

16              THE WITNESS:  Again, it's not blindly

17   throwing it in there.  When he -- when

18   Officer Bertuccini inserted the stun stick into

19   that two-side window, he could tell that there was

20   nobody directly behind that window, and he

21   believed he had the -- a 5-feet distance to

22   anybody that he could see, and it's deployed at

23   the top of the ceiling to give it the most

24   distance away from any occupant that could be in

25   there.
```



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 95

1    BY MR. BREEDEN:

2         Q    Well, and, in fact, Mr. Williams was

3    sleeping right on the other side of the window;

4    right?

5              MR. ANDERSON:  Objection.  Form.

6              THE WITNESS:  He was to the left of

7    the window on the couch, based on what --

8    reviewing the reports.

9    BY MR. BREEDEN:

10        Q    How many feet do you believe he was from

11   that charge when it was deployed?

12        A    I believe he was within the safe

13   distance, beyond the 5 feet.  Because, again,

14   you're deploying it to the top of the ceiling, and

15   he was closer to the ground.

16        Q    So how high were the ceilings?

17        A    I don't know.

18        Q    Was the stun stick actually touching the

19   top of the ceiling?

20        A    In the deployment and planning of the

21   deployment, you want to get it closest to the --

22   the top of the ceiling.  I would have to review

23   photos of the actual inside, and we could see burn

24   marks or something like that that would dictate

25   how close it was to the top of the ceiling.

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 96

1       Q      And then where Mr. Williams' head was --

2    if he had actually been sleeping in a horizontal

3    position, his head would have been at least a

4    couple of feet off the ground.

5            Do you agree?

6       A      If he was sleeping sitting down?

7       Q      Laying down.

8       A      Laying down.  Again, I don't know the

9    distance of the ceiling to Mr. Williams, but,

10   again, it would still be within the recommended

11   distance of the 25, given that -- the 175 decibel

12   and the PSI level.

13      Q      Would Metro concede that if a jury heard

14   this case and felt that the NFDD was deployed

15   within 5 feet of Mr. Williams, that that would

16   violate his constitutional rights?

17              MR. ANDERSON:  Objection.  Form.

18              THE WITNESS:  I don't believe it would

19   violate his constitutional rights.  It's just how

20   much more overpressure or decibel levels that he

21   would succumb to.  Now, if he was directly behind

22   the window and we knew that and we still deployed

23   the 25, that could constitute.

24   BY MR. BREEDEN:

25      Q      Would Metro concede if a jury felt that

LEXITAS™

Page 97

1    the 25 was deployed in less than 5 feet from

2    Mr. Williams, that that would violate department

3    policy?

4                    MR. ANDERSON:  Objection.  Form.

5                    Go ahead.

6                    THE WITNESS:  Again, the recommended

7    distance given by the manufacturer is 5 feet based

8    on decibel and PSI level.  The -- again, going

9    back to clearing directly behind it and the belief

10   that Officer Bertuccini believed he had enough

11   distance from anybody he could see, he believed

12   that he had enough distance to deploy the NFDD.

13   BY MR. BREEDEN:

14       Q    Okay.  Well, whether he believed that or

15   not, if, in fact, he deployed that in less than

16   5 feet from Mr. Williams, that would be against

17   the manufacturer's recommendation; correct?

18       A    Yes.

19       Q    And has Metro adopted the manufacturer's

20   recommendation as its policy as well?

21                   MR. ANDERSON:  Objection.  Form.

22                   THE WITNESS:  We follow the

23   recommendations of the manufacturer to do it -- to

24   deploy it inside a structure, yes --

25                   MR. BREEDEN:  Okay.  Now, I'm going to



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 98

1    hand you something that we'll have marked -- I

2    think this will be Exhibit 2 to today's

3    deposition.

4                   (Exhibit 2 was identified.)

5    BY MR. BREEDEN:

6        Q    Exhibit 2 is an excerpt from Las Vegas

7    Metropolitan Police's SWAT manual, and it's been

8    produced in this litigation as LVMPD1490 and 1491.

9             Have you ever seen this portion of the

10   manual before?

11       A    What -- what year was this?  Because I

12   reviewed the one that was dated prior to this

13   incident, so is this the one that was --

14              MR. ANDERSON:  This is 2021, yeah.

15              THE WITNESS:  2021.  Okay.

16   BY MR. BREEDEN:

17       Q    Yeah, I think this is the one that was

18   in effect when this incident occurred.

19       A    Okay.  Yes, I did review it.

20       Q    Okay.  I will let you know that, you

21   know, there's -- there's probably 20,000 pages of

22   documents that have been produced in this

23   litigation, and this is the only document that I

24   can find that discusses knock and announce and

25   Wilson v. Arkansas and anything that might be



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 99

1   considered training on those subjects.

2              Are you aware of something other than

3   this document that has been used to train SWAT

4   officers on knock and announce principles?

5        A    Yes, I -- again, it goes -- we have a

6   PowerPoint lesson plan on tactical planning and

7   service of search warrants that, again, covers all

8   of these factors.  I would have to review the date

9   again to see if it was -- I believe it was '21.  I

10  just don't know if it was prior to this incident.

11       Q    Okay.  And the -- the topic actually

12  requests that if you are aware of other documents,

13  that you be able to reference the specific Bates

14  number, which is an identifier used for this

15  litigation.

16             I'm sure that you don't have a

17  photographic memory, but are you aware of a

18  specific Bates number for that training you

19  referred to?

20       A    No.

21       Q    Okay.  So will you agree with me that

22  Exhibit 2 by itself is insufficient training as to

23  the knock and announce rule?

24             MR. ANDERSON:  Objection.  Form.

25             THE WITNESS:  Just this document in

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 100

1    and of itself --

2    BY MR. BREEDEN:

3         Q     Yes.

4         A     -- would be not enough --

5         Q     Okay.

6         A     -- documentation.  But this isn't the

7    only training or times that they're taught about

8    in -- in the totality of learning about search

9    warrants, planning them, and serving them.

10        Q     Do you agree that this is the only area

11   of the SWAT manual -- the specific SWAT manual

12   that mentions knock and announce?

13        A     In the SWAT manual?

14        Q     Yes.

15        A     Yes.  And this is under the -- I believe

16   this section is a cutout from the -- the service

17   of search warrants tactical planning.

18        Q     Okay.  And this portion of the SWAT

19   manual, it doesn't mention other applicable,

20   more-detailed cases like the Banks or the

21   Granville case, and it doesn't give any guidance

22   as to the amount of seconds or minutes that's

23   reasonable under those cases.

24             Do you agree with that?

25        A     I do agree with that, that they only

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 101

1    cite the Wilson v. Arkansas.

2        Q    Yeah.

3             Does Metro even provide the Wilson v.

4    Arkansas case to SWAT members so they can actually

5    read the case?

6        A    The -- the whole case in entirety, I

7    couldn't answer that question, but it -- the

8    summary, I believe they should talk about it in

9    the tactical planning service of search warrant

10   class.

11       Q    Okay.  But sitting here today, you have

12   no information that the actual case is provided to

13   officers to read?

14       A    No.

15       Q    Okay.  So, again, we're talking about

16   the policies and procedures which were in effect

17   prior to January 10, 2022.

18            And so, at that time, what was the

19   department's formal or informal policy or practice

20   as to the issue -- the following issue:  When

21   knock and announce is performed when serving a

22   warrant, is there to be an actual physical knock

23   on the door?

24       A    No.

25       Q    So it was Metro's official policy not to



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 103 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 102

1    even attempt a physical knock?

2        A    The policy dictates you have to give

3    announcements, but it doesn't specifically cite

4    that it has to be an actual knock and announce,

5    but as long as you give an announcement of your

6    purpose and authority.

7        Q    Okay.  Was Metro's policy to ever

8    attempt a physical knock?

9        A    Again, citing the -- what is written,

10   there's no policy that says you have to physically

11   knock, because we base it off U.S. and state law

12   where there is no mention of an actual physical

13   knock as long as you still verbalize your

14   authority and purpose.

15       Q    Well, the rule is literally called knock

16   and announce, not knock or announce; right?  But

17   you're telling me that Metro's policy was not to

18   even attempt the knock portion?

19       A    So going to the knock and announce,

20   actually coming from common law going to U.S. law

21   and -- and state law, it doesn't specifically

22   announce in any case law that there is an actual

23   physical knock needed for the announcements.  We

24   based our policy on those factors.

25              If there's an opportunity to make a



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 103

1    knock, the -- the tactical team, when they briefed
2    it, if they thought it was safe to do so, if there
3    was timing, they would do so.  It's -- it's not
4    that they would never do it.  But based on case
5    law, they said -- or they believed just the
6    announcements and the -- announcing their purpose
7    would satisfy the knock and announce.
8        Q    So it was Metro's official policy that
9    the knock did not necessarily have to be
10   performed?
11       A    Correct.
12       Q    And so whose discretion was that left to
13   as to whether the knock would actually be
14   performed?
15       A    It would be up to the assistant team
16   leader who is making the plan, the team leader who
17   reviews it, and the tactical commander that
18   approves it.
19       Q    Now, in Mr. Williams' particular case,
20   you know, I -- I've seen the video, and there's
21   probably at least three officers within 2 or
22   3 feet of the front door when this happens.
23            For this particular operation, why did
24   no one attempt a knock?
25       A    I couldn't tell you why these -- they



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 104

1    planned to not knock on it.  The -- the planning

2    was to give the two announcements prior to the

3    insertion of the stun sticks, and -- and that

4    satisfied the knock and announce part of it.

5          I could not tell you why Jake Warner or

6    Russ Backman or Garth Findley decided not to

7    knock.

8       Q    But Metro acknowledges it was preplanned

9    that there would be no knock?

10      A    Yes.

11      Q    There wasn't any factor that, like, they

12   were planning to knock, and then they got there

13   and they thought, "Oh, it might be dangerous for

14   this reason or that reason to knock, so we're not

15   going to do it"?

16      A    I don't know if they had that in mind.

17   But based on reviewing the documents of the

18   planning phase of this, it was -- the two

19   announcements would satisfy the knock and

20   announce.

21      Q    Does Metro have any policy, training, or

22   guidance to its SWAT officers as to when they

23   should knock?

24      A    There's no guidance to the actual

25   physical knock.  It's just, again, based on the



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 105

1    principles of the knock and announce that we

2    believe that it doesn't have to be a physical

3    knock as long as you give announcements to your

4    authority and purpose.

5         Q    Okay.  At that time, what was the

6    department's formal or informal policy or practice

7    as to the following:  When knock and announce is

8    to be performed on an apartment, should the

9    announcement include the actual apartment number?

10        A    The physical address should always be

11   announced, no matter if it's a residence, a

12   single -- a family residence or an apartment.  You

13   would have to state the actual property of the

14   search warrant.

15        Q    And so for an apartment, that would

16   include the apartment number?

17        A    Correct.

18        Q    Okay.  Do you recall hearing the first

19   and second announcements from Sergeant Backman?

20        A    Yes, I do.

21        Q    Okay.  And do you recall whether the

22   first announcement mentioned the apartment number?

23        A    I believe the first announcement, he

24   said the apartment number at the end of his first

25   phrase and again at the end of the second phrase,



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 106

1    but I do know it was said after -- it wasn't in

2    conjunction with the actual property address off

3    of Nellis, but it was said in that phrase of

4    the -- the announcement.

5         Q    Okay.  Would Metro agree that if the

6    first announcement did not include the apartment

7    number, that that announcement was improperly

8    performed?

9              MR. ANDERSON:  Objection.  Form.

10             THE WITNESS:  It would not be

11   improperly performed, because I still believe the

12   apartment number was given.  It was not given

13   directly with the actual Nellis address, but as

14   long as he got the apartment address out during

15   his announcements, it was -- it would satisfy the

16   announcement.

17   BY MR. BREEDEN:

18        Q    Okay.  Do you recall the apartment

19   number only being mentioned in the second

20   announcement but not the first?

21        A    I believe -- was -- was the apartment

22   1120?

23        Q    1125.

24        A    1125 was stated prior to the second

25   announcement.



Page 107

```
 1      Q     So along with the second announcement?

 2      A     So when he gave his first one -- I would

 3  have to read the exact verbiage, but I believe he

 4  gave the address, and then they had a police

 5  search warrant, and then he said 1125.  And then

 6  he reinstituted that same announcement.

 7      Q     Okay.  Does Metro believe that the first

 8  announcement was properly given?

 9      A     Yes.

10      Q     It believes that the first announcement

11  complied with its own internal policies?

12      A     Yes.

13      Q     Well, hypothetically, if the first

14  announcement didn't include the apartment number,

15  would Metro concede that that announcement was

16  against department policy?

17            MR. ANDERSON:  Objection.  Incomplete

18  hypothetical.

19            Go ahead.

20            THE WITNESS:  Again, as long as Russ

21  Backman got out the apartment number, our -- the

22  purpose to announce is to give them, again, our

23  authority and purpose for being out there.  So

24  Russ Backman did, in this case, give out the --

25  the apartment number, but ...
```

Page 108

1   BY MR. BREEDEN:

2        Q    The question is:  Did he give it out in

3   the first or the second announcement?  And I

4   believe it was the second.

5             Is that your testimony?

6        A    No, I believe it's still within the

7   first announcement.  He just gave the apartment

8   number at the end.  He -- it did -- it was not the

9   number of Nellis, Nellis, apartment this, and then

10  search warrant.  It -- he broke it up.

11       Q    You would agree that, hypothetically, if

12  you just went to the apartment complex and you

13  said, "3050 South Nellis, search warrant," that's

14  not enough information for people in the apartment

15  complex to understand whether their apartment is

16  the subject of the warrant?

17       A    For that specific apartment, no.

18       Q    Okay.  At that time, what was the

19  department's formal or informal policy or practice

20  as to preplanning the use of NFDDs for search

21  warrants?

22       A    Again, the policy to use the NFDDs would

23  be based on the search warrant itself.  And in

24  this case, it was the CET.  The -- the use of the

25  NFDDs were a tactical advantage option.  They used

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 109

1    two different NFDDs, one to insert it into the

2    window and another on the two side, the nine bang,

3    to distract the occupants away from the front

4    door, which they were about to breach.

5         Q    Were -- were NFDDs authorized for the

6    use in any search warrant?

7         A    It would -- based -- again, it would be

8    factors that determine, and then there would be

9    factors when we couldn't use them.

10        Q    Okay.  Who were the people that made the

11   decision on this particular search warrant to use

12   NFDDs?

13        A    So, again, all plans are -- start with

14   the assistant team leader on -- based on what his

15   options are throughout the service of the search

16   warrant.  He briefs it to the team lead, who

17   then -- the tactical commander has to give

18   approval for the insertion of an NFDD but not for

19   the outside implementation of an NFDD.  So in this

20   case, they inserted one, so she had to improve the

21   insertion of the NFDD.

22        Q    So, specifically, you're referring to

23   Lieutenant O'Daniel?

24        A    Yes.

25        Q    And also Sergeant Backman reviewed and



Page 110

1    approved that; correct?

2        A    Sergeant Backman, and I believe

3    ultimately Sergeant Findley as well the day of.

4        Q    Is it Metro's position that the NFDDs

5    were properly deployed on January 10, 2022?

6        A    The -- the insertion -- I believe the

7    CIRT's review said that they could not properly

8    clear the entirety of that structure prior to the

9    insertion, and also there was not enough evidence

10   or presurveillance to say if there was going to be

11   young children or elderly adults that we would

12   want to stay away from.  That was their position.

13       Q    So that was CIRT's position, that the

14   NFDD had been improperly used, and TRB agreed or

15   sustained that conclusion; correct?

16       A    Based on the -- the unknown factors that

17   they cited.

18       Q    And is that Metro's position in this

19   litigation, or is Metro going to disagree with its

20   own CIRT and TRB report?

21            MR. ANDERSON:  Objection.  Can you

22   clarify as to whether you're talking policy or

23   constitution?

24            MR. BREEDEN:  Yeah.  I can ask it --

25            MR. ANDERSON:  Does that make sense?

Page 111

```
 1                MR. BREEDEN:  I can ask it as both.

 2   BY MR. BREEDEN:

 3        Q    So is it Metro's position that insertion

 4   of the NFDDs violated its own policies?

 5        A    So CIRT stated that there was not enough

 6   information on the occupants after reviewing the

 7   facts after the case.  The planning of the

 8   insertion of the NFDDs was based on what they knew

 9   at that time.  Jake Warner, being the ATL, and

10   Sergeant Russ Backman believed they did not have

11   enough intel to tell them that there was going to

12   be those factors of young children or elderly in

13   that structure, so they believed they were well

14   within policy to insert and deploy the 25.

15                CIRT disagreed with that based on there

16   wasn't enough surveillance -- presurveillance to

17   ascertain if there was going to be young kids or

18   elderlies inside that residence.

19        Q    And so does -- does Metro agree, then,

20   that that deployment of NFDDs was against its own

21   policies?

22        A    Based on CIRT's recommendation that

23   there was not enough presurveillance, yes.

24        Q    Okay.  And does Metro believe that, from

25   a constitutional standpoint, that insertion of the
```

Page 112

1    NFDDs was improper?

2        A     Not on a constitutional level.  It was

3    based on the -- the policy of the insertion for --

4    to keep it away from young children and adult --

5    elderly.

6        Q     Okay.  Well -- and, I mean, when you say

7    "young children," would a 19-year-old man fall

8    into the category of people who need to be safe?

9        A     We're -- when we're -- the policy is

10   more for young children that are developing their

11   eardrums, because it's the decibel level, so we're

12   talking about toddler age, small children that are

13   still developing in the -- in the eardrums.

14       Q     But the policy on NFDDs is really for

15   everyone's safety inside; right?  I think it --

16   the case law refers to innocent bystanders.

17       A     So -- so when the -- when you're talking

18   about the innocent occupants inside, it's for the

19   free throwing of a distract.  So we have more of a

20   leverage when we use a stun stick and we can

21   control that deployment.

22             And, again, going back to what the team

23   leaders and ATL believed at that time, was there

24   wasn't any factors that would limit them from

25   introducing the 25, and it was ultimately approved

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 114 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 113

 1    by Lieutenant O'Daniel.

 2        Q    Are you saying, then, it's Metro's

 3    position that if they physically tossed this NFDD

 4    at the ceiling, they couldn't constitutionally do

 5    that, but if they just have it on the end of a

 6    stick and do the same thing, that is permissible?

 7        A    No.  Again, those are both policies that

 8    we try to mitigate injury, so we -- we don't want

 9    to deploy into something that we haven't fully

10    cleared.  So if we went into that room and we

11    could fully see that it was clear and we wanted to

12    deploy the distract, we could freely do that.

13            Now, to insert it into something with

14    closed blinds, if you could clear behind the

15    blinds and -- and you believed at the time, or

16    Officer Bertuccini, that there was nothing within

17    that distance of deploying it on the stun stick,

18    he was within the SWAT policy at the time.

19        Q    And the next topic, I think we've

20    already spoken about this some.

21            But you're saying, at that time, there

22    was no formal or informal policy or practice as to

23    how long in seconds or minutes officers were

24    supposed to wait between the announcement and

25    using force to enter a residence.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 114

1              Is that Metro's position?

2      A    On -- given the exact time before, no.

3      Q    Okay.  I'll hand you what we've marked

4    as Exhibit 3.

5                   (Exhibit 3 was identified.)

6    BY MR. BREEDEN:

7      Q    Just for the record, Exhibit 3 is some

8    guidance from the Nevada Commission on Peace

9    Officers Standing -- Standards and Training, or

10   Nevada POST, and it's been produced in this

11   litigation as Williams 809 and 810.

12             Have you ever seen this document before?

13     A    I have.

14     Q    Okay.  Would you agree with me that

15   somebody who's in charge of tactics and training

16   of SWAT officers should be familiar with POST's

17   guidance on those issues?

18             MR. ANDERSON:  Objection.  Form.

19             THE WITNESS:  Again, our -- our SWAT

20   policy covers state and federal law, and then it

21   comes to -- there's some standards that -- in the

22   POST that not every officer may read every single

23   section of a POST requirement.

24   BY MR. BREEDEN:

25     Q    Well, okay.



Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 115

1              But you would agree with me that if you

2    were in charge of training and running a SWAT team

3    in the state of Nevada, that it would be a good

4    idea to familiarize yourself with what Nevada POST

5    says about that?

6         A    It would be a good standard to know what

7    Nevada POST says on a topic, but you don't -- we

8    won't base everything based on POST.  But your

9    question -- your -- I guess your question was,

10   should persons be -- in the training, be familiar

11   with everything that constitutes our deployment.

12   I would agree with you.

13        Q    Prior to the incident in this case, were

14   officers trained on this Nevada POST guidance

15   about knock and announce?

16        A    Prior to, I couldn't -- can't recall.  I

17   don't -- through my research of looking at the

18   manual and lesson plans, I don't believe that this

19   was instituted in any training prior to this

20   incident.

21        Q    And so Nevada POST, at the bottom of the

22   first page here in a little note, it states that,

23   you know, the time that is considered reasonable

24   is going to depend on the circumstances, but then

25   it says approximately one minute would be

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 116

1    considered in -- safe in most cases.

2             That guidance was never provided to SWAT

3    officers before Mr. Williams' shooting; correct?

4        A    Where -- where -- what paragraph is

5    that?

6        Q    I'm sorry.  It's at the very bottom here

7    in this notes section on the first page.

8        A    Okay.

9        Q    You would agree with me that SWAT

10   officers before the -- Mr. Williams' shooting were

11   never trained on this one-minute standard?

12       A    Correct.

13       Q    Do you think that's a good standard

14   there?  It says, "Approximately one minute would

15   be a safe period in most cases, but it can be

16   less, especially if peace officers know that

17   somebody is aside -- inside and awake."

18            Do you agree with that?

19       A    I don't know who came up with the one

20   minute, because, again, through any case law,

21   state law, there isn't any specific mentioning of

22   you have to wait one minute in most cases, like

23   this refers to.  I don't know who would -- who put

24   this in here, where it originated from, how long

25   it's been in there.

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 117

 1             But, again, I think they're using the

 2    one minute as reasonableness, and then they leave

 3    it open to in most cases.  So -- and then it says,

 4    "But it can be less," so I don't -- again, it's

 5    still ambiguous, because it leaves what's less.

 6        Q    Well, it gives at least some guidance to

 7    officers; right?

 8        A    This POST standard?

 9        Q    Yes.

10        A    It would -- yes, based on that language.

11        Q    And does Metro want to do the bare

12    minimum to comply with the constitutional

13    standards, or does Metro want to do what's safest

14    for its own officers and members of the public?

15             MR. ANDERSON:  Objection.  Form.

16             THE WITNESS:  Again, we base our

17    tactics on every situation.  There could be some

18    situations that we wait one minute.  There would

19    be some situations where we wait six seconds, like

20    this incident was.

21    BY MR. BREEDEN:

22        Q    And the example given here in the Nevada

23    POST for when less time might be appropriate is if

24    peace officers know that someone is inside and

25    awake.

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 118

1          But that was not the case with

2    Mr. Williams; correct?

3        A    Based on what the POST is saying here,

4    if -- if they're giving a factor of less than one

5    minute if someone is inside and awake, I don't

6    know if the operators outside would know that at

7    that time.  They could not know that.

8        Q    Well, yeah, because, in fact, they --

9    they didn't know if -- they didn't know who the

10   occupants were, if any, and they didn't know where

11   they were inside, and they didn't know whether

12   they were asleep or awake.

13          Isn't that all true?

14       A    I would say that's true.

15       Q    Now, knock and announce says that

16   officers have to at least perform the announcement

17   and then wait a reasonable amount of time for

18   somebody to come to the door and provide them

19   admittance.

20          What is Metro's position on whether or

21   not the amount of time is measured from the

22   begin -- beginning of the announcement or the end

23   of the announcement?

24       A    Metro's position would be the -- at the

25   very onset of the first announcement is when the

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 119

1    time starts.

2        Q    Okay.  So if the idea is for the

3    announcement to give somebody an idea of who is

4    outside their door and why they're there, how

5    could somebody know that at the beginning of the

6    announcement before the announcement is completed?

7        A    The -- the announcement -- the beginning

8    of the announcement gives the verbal announcement

9    of authority and purpose, and then it's given

10   throughout the entirety of the search warrant.  So

11   we base our time, again, on the start of the

12   announcements --

13       Q    Okay.

14       A    -- for the reasonableness of time, based

15   on when -- what the tactic is dictating.

16            And then we -- going back to this case,

17   it was a CET, and they planned for the two

18   announcements prior to the introduction -- the

19   introduction of the stun stick and then the manual

20   breach to enter the residence.

21       Q    So I want to give a hypothetical -- a

22   hypothetical fact here to make sure that we're

23   talking about the same thing and we're on the same

24   page.

25       A    Mm-hmm.



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 120

1        Q    I want you to imagine that the
2    announcement maybe was rather long and drawn out
3    and maybe the announcement was, "This is
4    Sergeant Backman of the Las Vegas Metropolitan
5    Police Department.  I am here for 3050 South
6    Nellis Boulevard, Apartment 25.  We are police,
7    and we have a search warrant."  That's the
8    announcement.
9             So it's Metro's position, then, that you
10   would start counting the reasonable amount of time
11   from when the word "this" was said at the
12   beginning of that announcement, versus when the
13   announcement is complete?
14        A    So the reasonable amount of time -- the
15   time that we start is, yes, at the start of the
16   announcements.
17        Q    Okay.  So, in my example -- which is
18   kind of a long announcement, admittedly --
19   theoretically, three or four seconds could go by,
20   and I'm still not even done with the announcement.
21        A    I don't understand the question.
22        Q    Well, Metro is saying -- let's say
23   Metro's policy is, "Well, we're going to do the
24   announcement and wait three seconds before we use
25   force."  If I start to say, "This is

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 121

1  Sergeant Backman of the Las Vegas Metropolitan

2  Police force," and I -- and I say it in a slow

3  manner, three seconds might go by before I've even

4  finished the announcement.

5           And it's Metro's position that that's

6  okay?

7      A    Again, we're going back to -- to

8  constitutional law and state law of

9  reasonableness, the amount of time.  We still

10 are -- don't have any specific guidance that it

11 says you need exactly when to -- to start your

12 counting of your -- of the timing of before or

13 after.  They used the reasonable amount of time at

14 the start, and they used two announcements prior

15 to insertion of the stun stick.

16     Q    Well, they actually used as their

17 trigger the end of the second announcement; right?

18 I mean, it was preplanned that they would break

19 out the back window on the end of the second

20 announcement; right?

21     A    Correct.

22     Q    Okay.  Why wouldn't they have said,

23 "Well, we'll -- we'll preplan at the -- at the

24 beginning of the second announcement"?

25     A    I'm sorry.  I didn't -- the -- why

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 122

1    wouldn't they plan?  I'm sorry.  Can you --

2         Q    Yeah.  Well -- well, the answer seems to

3    me -- and I don't mean to be argumentative.

4         A    No.

5         Q    But they waited for the announcement to

6    end because even they thought it was reasonable

7    that they should wait until at least the

8    announcement was finished.

9              Isn't that what they actually did?

10        A    So the plan that was -- that was briefed

11   was they would give two announcements of the

12   authority and purpose prior to the insertion of

13   the stun stick, prior to them making the manual

14   breach to enter the residence, correct.

15        Q    Okay.  So you're here saying today,

16   well, we would measure that time from the

17   beginning of the announcement, but Metro's own

18   trigger that day or that morning was the end of

19   the second announcement; right?

20        A    The -- the option to deploy the stun

21   stick was -- was a tactical planning at the end of

22   the second announcement.

23        Q    At the time, what were Metro's policies

24   and procedures as to how it determined when

25   warrants were high risk?

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas              Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 123

 1      A    High risk would -- would be the crime

 2   itself, if they're likely to be armed.  There's

 3   some other factors.  I'm just drawing a blank.

 4   I'm sorry.

 5      Q    Well, the crime that they were

 6   investigating -- and, incidentally, as it turned

 7   out, they -- they weren't even investigating the

 8   people who committed this crime.  They had the

 9   wrong suspects, apparently, because they've

10   arrested somebody else for the crime now.  But we

11   were investigating a homicide.

12           Is it Metro's policy or practice that

13   any homicide warrant service is considered high

14   risk?

15      A    If we were going -- so that's -- that's,

16   like, a -- a huge question.  Like, any homicide

17   investigation, it depends what we were going

18   after.  If we were going after documents in a

19   building that would help the detectives in their

20   investigation, could be not deemed high risk

21   because we were going after documents at a

22   different facility.

23           This particular incident, there was

24   belief that there may be a suspect still that they

25   believed was a person of interest that was



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 124

1    involved in the homicide they were investigating

2    that was not accounted for and believed to have

3    been staying at that residence.

4        Q    But I'm -- I'm trying to figure out why

5    the -- the warrant in this particular case was

6    considered high risk.

7             Was it merely because a homicide was

8    being investigated, or were there other factors?

9        A    The factors that it was deemed high risk

10   is because the person that they -- the individuals

11   that they believed were the suspects at the time

12   of the homicide both had violent histories and

13   known to carry weapons, and they did not know if

14   they were going to be inside or not.

15       Q    Now, almost a year prior to

16   Mr. Williams' death, there was another incident on

17   January 5th of 2021 which occurred at 27 East

18   Agate Avenue, and it involved a woman named

19   Jasmine King.

20            Just generally, what -- what occurred

21   during that incident?

22       A    From my reading of the reports -- again,

23   I was not assigned to the SWAT section, but they

24   used a CET on the service of a search warrant.  It

25   stemmed from a sexual assault investigation.  They



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 125

1  utilized an explosive breach of the front door.

2  The explosive breach was initiated and ended up

3  injuring -- severely injuring a female that was

4  behind the door.

5       Q    And that female was Jasmine King?

6       A    Yes.

7       Q    And so, like in Mr. Williams' case,

8  members of SWAT were accused of violating the

9  knock and announce rule and not waiting a

10  reasonable amount of time for somebody to come to

11  the door and provide them admittance; is that

12  true?

13      A    They were deemed at the -- the

14  initiation of the charge was before the reasonable

15  amount of time.  It was -- it was given too early.

16      Q    And, in fact, Ms. King, she was not a

17  suspect in any crime; correct?

18      A    I don't believe so.  She was not named

19  in the --

20      Q    She was an innocent bystander; right?

21      A    Yes.  She was an occupant of the

22  residence.

23      Q    She was inside a residence with

24  children, wasn't she?

25      A    I believe she had one child in there.



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 126

1      Q    And the suspect wasn't even inside, was

2   he?

3      A    No.

4      Q    And Ms. King was actually trying to

5   answer the door to see, you know, police and --

6   and let them inside when this happened; right?

7      A    Yes, after the first announcement.  And,

8   again, it goes back to the ignitiation [sic] of

9   the charge was not properly utilized, which was

10  briefed prior to.  It would be at the second

11  announcement.

12     Q    Do you know how long in seconds between

13  the announcement and when that charge went off was

14  allowed?

15     A    After -- the actual incident itself?

16     Q    Yes.

17     A    The -- it was immediately after the

18  first announcement.

19     Q    So no time?

20     A    I believe there was no time after.

21     Q    Okay.  And Ms. King was significantly

22  injured as a result?

23     A    Yes.

24     Q    Okay.  Do you know, because I -- I only

25  know, like, what's in the public filings, but what

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 127

1    were the extent of her injuries?

2        A    Again, I don't know.  I know -- I

3    believe injury to one of her eyes.

4        Q    Was she permanently blinded?

5        A    I don't know.  I didn't read her medical

6    records.  But I believe she had significant damage

7    to one of her eyes.

8        Q    And that incident, another incident a

9    year prior, where the SWAT team has been accused

10   of failing to abide by the knock and announce

11   rule, that involved many of the same people who

12   are defendants in this case; right?

13       A    I --

14           MR. ANDERSON:  Objection.  Form.

15           Go ahead.

16           THE WITNESS:  I do know Garth Findley

17   was there and James Bertuccini.

18   BY MR. BREEDEN:

19       Q    And Melanie O'Daniel as well; right?

20       A    Correct.  Melanie O'Daniel was the

21   tactical commander.

22       Q    Okay.  And then, ultimately, that case

23   was resolved through a settlement for a

24   substantial amount of money; is that true?

25       A    It was settled.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 128

1        Q    Okay.  In investigating the Jasmine King

2    incident, did Metro determine that officers had

3    violated her civil rights?

4              MR. ANDERSON:  Objection.  Form.

5              THE WITNESS:  They evaluated that the

6    initiation of the -- of the explosive breach was

7    not consistent with the preplanning of the two

8    announcements.

9    BY MR. BREEDEN:

10       Q    Okay.  So, you know, the question,

11   again, just to state it more bluntly:  They found

12   that the complaint that alleged her civil rights

13   had been violated had merit?

14             MR. ANDERSON:  Objection.  Form.

15             THE WITNESS:  Again, I don't think

16   that it was a CIRT process in this incident, so

17   I -- I don't recall reading a report that

18   distinguished otherwise.  I do know that it was

19   brought to court based on her injuries.  But,

20   again, I can't answer to what the findings were,

21   because there wasn't a similar investigation as in

22   Mr. Williams' case.

23   BY MR. BREEDEN:

24       Q    Was there any discipline of any of the

25   SWAT officers involved in the King incident?



Page 129

```
 1        A     I believe Garth Findley received a
 2   contact for failing to wait for the second
 3   announcement to deploy the explosive breach.
 4        Q     Okay.  And Sergeant Findley was actually
 5   the -- was he the team leader or assistant team
 6   leader on Mr. Williams' warrant?
 7        A     He would be a team leader on
 8   Mr. Williams.
 9        Q     Okay.  So Sergeant Williams, the team
10   leader who was physically there and he's supposed
11   to be the one in charge of Mr. Williams' incident,
12   only a year prior, he had been found that he made
13   some policy violations and some errors that
14   resulted in Ms. King's injuries; correct?
15              MR. ANDERSON:  Objection.  Form.
16              Go ahead and answer.
17              THE WITNESS:  Sergeant Findley, yes.
18              MR. ANDERSON:  Just for the record,
19   you said "Sergeant Williams" a couple of times.
20              MR. BREEDEN:  Oh, I'm so sorry.
21              MR. ANDERSON:  Yeah, I know you meant
22   Sergeant Findley.
23              MR. BREEDEN:  Yeah, I meant
24   Sergeant Findley.
25              THE WITNESS:  Sergeant Findley, yes,
```

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 131 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 130

1  he was disciplined at the Jasmine King, referenced

2  the early deployment of the explosive breach, and

3  he was a team leader at the Mr. Williams incident.

4  BY MR. BREEDEN:

5      Q    As a result of the Jasmine King

6  incident, what policies, procedures, or practices

7  were changed at SWAT?

8      A    There were several based on the

9  deployment of the explosive breach.  It was

10 solidified that it would not go prior to the two

11 announcements.  We utilize a technology called the

12 WolffTracker that we deploy prior to hanging an

13 explosive breach charge to kind of tell us if

14 there's movement behind the door of the structure

15 that we're putting the charge on, and I believe it

16 had to be approved at a higher level.

17     Q    Weren't there changes to the SWAT manual

18 about CET and when it could be used?

19     A    I believe there was verbiage changed --

20 I believe there was a word "never" changed, but I

21 don't believe the -- there was much change other

22 than some verbiage of when you could -- I think

23 that was the change for the property.

24     Q    What happened around this time regarding

25 SWAT's policies and procedures as to using CET for



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 131

1    a property-only search warrant?

2        A    I believe the change was there had to

3    be -- when we're talking about property only, it

4    had to be other mitigating factors to use CET, so

5    it had to be the likelihood of the armed -- armed

6    subjects inside.

7        Q    Was CET at any point completely banned

8    for a property-only search warrant?

9        A    CET should not be used for property-only

10   search warrants if you don't have mitigating

11   factors.

12       Q    Okay.  And so what are the mitigating

13   factors?

14       A    You don't have a --

15       Q    I think maybe you mean aggravating

16   factors.

17       A    Or aggravating factors.  The likelihood

18   of suspects being armed, violent -- violent

19   suspects, prior history, stuff like that.

20       Q    And the search warrant regarding the

21   residence where Mr. Williams was ultimately

22   killed, that was a property-only search warrant;

23   right?

24       A    The search warrant for Mr. Williams, it

25   was for the recovery of evidence related to a



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 132

1    homicide, but it also named two -- two individuals

2    who, one was on a monitor, monitoring through

3    CCDC, Clark County Detention Center, so we knew he

4    wasn't at that residence.  And the other suspect

5    who had a violent history, who had been

6    investigated by gangs for an outstanding

7    shooting -- he was wanted in an outstanding

8    shooting -- possible could be in there.  So we

9    still had knowledge that there could be a violent

10   criminal inside that residence, but --

11        Q    Okay.  But the warrant itself was a

12   property-only search warrant?  There was no arrest

13   warrant?

14        A    The -- the -- there was no arrest

15   warrant, and the arrest -- the search warrant did

16   not name a body up to seize.

17        Q    Okay.  So what -- what policy changes,

18   then -- you know, I just want to make sure that

19   we've discussed them all.

20             What are all of the policy changes that

21   happened because of the Jasmine King incident?

22        A    The Jasmine King was more of an

23   explosive breaching policy changing of when we

24   would utilize the explosive breaching, how we

25   would announce explosive breaching.  We added in

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 133

1   factors of staying away from the door, and we

2   added in technology to try to ascertain if there

3   was somebody standing behind the door.  And then

4   the approval process.

5                    MR. BREEDEN:  Let's go off the record

6   for a moment.

7                    THE VIDEOGRAPHER:  The time is

8   12:00 p.m.  We are off the record.

9                    (Whereupon, a recess was taken.)

10                   THE VIDEOGRAPHER:  The time is

11   12:59 p.m.  We are on the record.

12   BY MR. BREEDEN:

13       Q    Okay.  Lieutenant Beas, we're back on

14   the record now, and we want to talk some about

15   Metro's post-incident knock and announce policies.

16                   I'm going to go through some particular

17   subjects, but how have Metro's policies regarding

18   knock and announce and CET service of warrants

19   changed since the Williams shooting incident?

20       A    Again, when CIRT reviewed the case with

21   their legal consultant, they said that some

22   language in the CET policy, specifically the

23   speed, surprise, and overwhelming action, kind of

24   contradicted the reasonableness of time.  They

25   wanted to move the CET option to a no knock.



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 134

 1              And after then-Director Peterson
 2     consulted with them, we changed the policy to a
 3     CET to be only allowed when a no-knock search
 4     warrant is approved, and it has been to be
 5     approved by the captain or director of SWAT.
 6        Q     Even under the policies at the time, if
 7     Metro had sought a no-knock warrant for the search
 8     warrant at the apartment where Mr. Williams was
 9     staying, do you think that would have been
10     approved as a no-knock warrant?
11        A     The -- the detective that was typing
12     it -- this Detective Grimmett that was the affiant
13     of the search warrant would have to ask the court
14     for a no knock.  I don't know what his -- the full
15     investigation of it was, but the severity of
16     crime, if -- I don't know if this one would be
17     just based on the details that were put into this
18     search warrant after reading it.
19        Q     So are you familiar with the case of
20     Breonna Taylor?
21        A     Yes, the national case?
22        Q     Yes.
23        A     Yes.
24        Q     It's a national case, I think out of
25     Kentucky.

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 135

 1        A     Kentucky.

 2        Q     And in that case, there was a lot of

 3   criticism of law enforcement's use of a no-knock

 4   warrant; would you agree?

 5        A     Yes, no knocks were criticized, but I

 6   don't believe Breonna was a no knock, but that

 7   was -- it brought the no-knock search warrants to

 8   light.

 9        Q     And so there had been some changes after

10   that incident to Nevada law in order to limit

11   no-knock warrants; right?

12        A     Yes.

13        Q     Okay.  And at the time the Williams

14   incident occurred, were no-knock warrants very

15   common here, used by Metro?

16        A     No, no-knock warrants have never been

17   really common, and especially here in -- in Metro.

18        Q     Is there sort of a -- an informal policy

19   that they are not to be used?

20        A     No.  I just think the way that the

21   process is for the search warrant -- because a

22   no-knock search warrant would be more of a tactic,

23   and when they -- when the affiant of a section or

24   a bureau that's authoring the -- the search

25   warrant, sometimes they don't meet with SWAT prior

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 136

1    to the implementation of the warrant, so they

2    wouldn't know that we may want a no-knock search

3    warrant because it's not approved -- or it's not

4    requested by us; it would be requested by the

5    detective.

6              I don't see anything that was formal or

7    informal with the department saying they did not

8    want to do them.  They're just very uncommon.

9         Q    When is the last time you, as SWAT

10   tactical commander, have approved a no-knock

11   warrant?

12        A    I have never approved a no-knock

13   warrant.  Or let me back up.  Again, I don't

14   know -- I don't approve the -- the application for

15   a no-knock warrant.  If it came as a warrant to me

16   to approve for the service of it and it said no

17   knock, then I would have to prove that tactic, but

18   I've never had a warrant come to me as a no-knock

19   search warrant.

20        Q    Okay.  Are you aware of the last time

21   SWAT did serve a warrant as a no-knock warrant?

22        A    I can't recall.

23        Q    Would you agree with me that the smaller

24   the amount of time that officers wait between

25   announcements and use of force, the closer it gets



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 137

1    to being, in practical effect, a no-knock warrant?

2        A    I would say they're two distinguished

3    tactics.  The no knock is zero announcements, zero

4    time before manually breaching the door.  And then

5    when you get to the CET or a SACO, the

6    reasonableness of time is based on your incident

7    at the time, your information, your intel that you

8    have.

9        Q    But if I went to serve a warrant and,

10   you know, on my way kicking down the front door, I

11   just said, "Police, search warrant," that's

12   essentially a no-knock warrant, isn't it?

13       A    It would be still an announcement.  The

14   reasonableness of time would be you would have to

15   articulate why you kicked it after really quick

16   announcement.

17       Q    Yeah, there -- that would be sort of

18   token efforts to give the announcement; right?

19       A    Based on your -- your hypothetical, yes.

20       Q    Yeah.

21            And Metro doesn't want token efforts to

22   comply with the law.  They want to comply with the

23   law; right?

24       A    Yes.

25       Q    They want to comply with the

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 138

 1    Constitution and the spirit of the law; correct?

 2        A    Correct.

 3        Q    You indicated that after the Williams

 4    event, the policy on CET was changed then and CET

 5    is now only to be used with the no-knock warrants.

 6             Were there any other changes to policy

 7    that were implemented?

 8        A    Reference to CETs or SACOs or --

 9        Q    CET, SACO, or how knock and announce is

10    performed.

11        A    No.  Other than moving the CET to a no

12    knock, we just have more discussion about

13    reasonableness of time given certain factors.

14    It's still -- we still abide by the same

15    pre-policies prior to it, but now that we -- we

16    have not used a CET post this incident, most -- or

17    I don't want say most -- all of our search

18    warrants have been either that SACO or a modified

19    SACO that gives us more time to announce, just

20    based on how far away we are and the actual tactic

21    of not going in.

22        Q    So if SWAT served the warrant involved

23    in this case today, there would be no dispute,

24    this would simply be served as a SACO?

25        A    It would -- if it was served today, it

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 139

1    probably would be either a SACO, because it was

2    no -- a no-knock search warrant, or a breach and

3    hold, where we would not enter the threshold with

4    bodies.

5        Q    Okay.  And let's talk about some of

6    those other options.

7             First of all, there's a no-knock warrant

8    or -- well, no, I should phrase it this way.

9             There's a CT -- CET entry, which is now

10   reserved only for no-knock warrants; correct?

11       A    Correct.

12       Q    There's SACO.

13            There's an option, if officers don't

14   feel they can safely serve the warrant, to simply

15   not execute the warrant at that moment; right?

16   That's always an option?

17       A    That's always -- that's always been an

18   option, even previously.  If -- if we believe that

19   there's other options for -- to surveil the

20   suspect out and get them into custody, based on

21   probable cause or an arrest warrant, to take them

22   into custody and then now serve that with the

23   suspect away.  That was -- that's an option before

24   and now.

25       Q    And you said there's a breach and hold



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 140

1    option.  So explain what that option is and when

2    that would be used.

3        A    Again, that's another tactic used in

4    service of search warrants where environmental

5    factors and -- that limit our -- unable to contain

6    it safely for the citizens and officers, that we

7    would get up to the threshold and breach a door

8    and/or window to kind of get a foothold into the

9    structure without actually making entry into the

10   structure with bodies.

11            But, again, that's based on size of the

12   structure, the case, what the search warrant is

13   for.  Obviously, you couldn't do it for a

14   3000-square-foot house, because there's no way to

15   have fully contained that house on a breach and

16   hold.  So it's case-by-case basis.

17            But it gives you an option, if you can't

18   properly -- because there's some apartment

19   complexes, townhouses, condominiums that you can't

20   safely SACO it.  That gives them -- operators

21   another tactic without using a dynamic entry.

22       Q    Would -- would breach and hold have been

23   an option for the warrant involved in this case?

24       A    I don't believe the -- the SWAT manual,

25   they trained breach and holds.  Their options were

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 142 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas              Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 141

1    CET or SACO at the time.  There might have been

2    some informal breaching and holding, but I don't

3    know if they trained it and formalized it in

4    the -- or in the SWAT manual.

5        Q    But at least at the time this incident

6    occurred, a breach and hold was at least a --

7    informally could be used?

8        A    I don't believe they trained it as -- to

9    the point where they were implementing that tactic

10   at the time.

11       Q    Okay.  Given that they didn't know who

12   was inside, and I don't even think they knew

13   whether people were inside, why wouldn't they

14   maybe use a breach and hold here so that, you

15   know, people inside would have time to come out

16   willingly?

17       A    Again, I think it goes back to that

18   wasn't a trained tactic that was put into policy

19   or our SWAT manual, and their options that they

20   used at the time were CET or SACO, and those were

21   the ones they trained and were comfortable with

22   and were tried and true methods.

23       Q    Okay.  The Ninth Circuit has listed the

24   time of day that the warrant is served as a factor

25   into how long it is reasonable for officers to



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 142

1    wait between the announcements and the time that

2    they use force to enter a residence to serve a

3    warrant.

4            Metro accepts that as a legal factor to

5    apply here; correct?

6        A    Correct.

7        Q    And is that specifically taught to SWAT

8    officers?

9        A    Yeah, that is in -- it's in the manual.

10   Time of day is a factor in any service of search

11   warrants, along with all of the other facts that

12   we've talked about.

13       Q    And the way the factor applies is that

14   if the time of day is a time where people are

15   likely to be asleep, the amount of time that

16   officers should wait should be longer; is that

17   true?

18       A    Minus any information that -- given a

19   24-hour town, minus any information that the

20   occupants that you're seeking to encounter are not

21   that type of individual that, you know, have that

22   pattern of life.  That's something to factor in,

23   correct.

24       Q    Okay.  And also we have the problem like

25   if these warrants are served when people are



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 143

1    likely to be asleep, like the early hours of the

2    morning, some people sleep naked or in a state of

3    undress that they wouldn't necessarily want to

4    just jump up out of bed and come to the door

5    first.

6              Does Metro acknowledge that?

7        A    Again, that would be factored into the

8    time of day, yes.

9        Q    Okay.  Is -- do you remember the actual

10   facts of the Banks case?

11       A    That he was in the shower at the time of

12   North Las Vegas SWAT serving the search warrant,

13   and he believed he didn't have enough reasonable

14   time to get out of the shower and answer the door.

15       Q    Yeah.  So -- so that -- that factor is

16   literally the factor from Banks, right, that

17   police ought to wait long enough for people to get

18   decent and come to the door; right?

19       A    Again, in that case, I think it -- it --

20   it alluded to the reasonableness of time to -- to

21   announce minus anything -- factors of destruction

22   of evidence, possible escape, and any other

23   factors that they -- that they come into encounter

24   with.

25       Q    And does Metro acknowledge that the six

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 144

1    seconds, then, that was afforded Mr. Williams

2    was -- was not a reasonable amount of time?

3         A    In the CIRT review, they -- they note

4    that -- that the six seconds and the time of day

5    probably wasn't proper.

6         Q    And you're not disputing that finding

7    here today?

8         A    No.

9         Q    Okay.  Another one of the factors that

10   is mentioned in the Banks case is the officer's

11   other observations that would support forced

12   entry.  In Mr. Williams' specific case, and I --

13   I've -- me and my law partners have taken many

14   depositions in this case, and not one witness has

15   testified that they saw or heard anyone moving or

16   doing anything inside the apartment before force

17   was used to enter it.

18            So would you agree with me that that

19   factor, the officer's other observations, that

20   would not support a shorter amount of time?

21        A    The -- going off the statements of the

22   officers that you had deposed, that they said they

23   didn't hear anything or see anything that would

24   speed up that six seconds, again, it goes back to

25   the preplanning of the actual briefing of the



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 145

1    search warrant was the information that there

2    could be occupants in there that were armed with

3    firearms.

4            And they used the two announcements.

5    And, again, we explained the stun stick so they

6    didn't give them time to arm themselves or

7    barricade or do any other factors.

8       Q    Is there any period of time in seconds

9    that Metro considers, per se, meaning in and of

10   itself, not to be a reasonable amount of time to

11   wait?

12      A    Again, it would be -- it would be based

13   on the incident in itself and the factors that

14   the -- the operators, the ATL, the TL see at the

15   time of the service that would factor in, if it

16   would need more time than prior briefings or less

17   time.

18      Q    And, you know, the reason why that

19   factor is there so that if police go to serve the

20   warrant and then, all of a sudden, like, they see

21   somebody peeking behind a curtain with a gun and

22   they say, like, "Oh, it's police; hide," or, "Oh,

23   it's police; jump out the back," then that's --

24   that's the type of factor that would encourage a

25   shorter amount of time; right?



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 146

1        A     Shorter amount of time than was briefed,

2    yes.

3        Q     Yes.

4              And so, even though there could be later

5    changes to what is considered reasonable, is there

6    some amount in seconds that Metro considers, at

7    least at the planning stage, that officers need to

8    wait at least that amount of time?

9        A     Again, there's nothing formally written

10   or within U.S. or state law that -- that mandates

11   a -- a specific time.  Again, it's based on the

12   preplanning of the actual search warrant of what

13   they're -- potentially could encounter, based on

14   the investigation, that the ATLs and TLs come up

15   with their plan of how many announcements.

16             And in this case, they gave two

17   announcements, which was pretty much accepted

18   announcements, prior to making any forcible entry

19   or start the process of entry.

20       Q     Are you aware of any amount of time that

21   the Ninth Circuit Court of Appeals has itself

22   stated it has never upheld entry in a shorter than

23   that amount of seconds as constitutional?

24       A     Ninth Circuit does cite -- in the Banks

25   case, it cites 15 to 20 seconds.  That was that

LEXITAS

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 148 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas            Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 147

1    case specific.  And then there's also cases that

2    less than five seconds is not reasonable.

3         Q    Okay.  Has any Ninth Circuit case ever

4    held that less than ten seconds was reasonable --

5              MR. ANDERSON:  Objection.  Form.

6    BY MR. BREEDEN:

7         Q    -- as far as you are aware?

8         A    Off the -- offhand right now, I know

9    I've read some stuff, but I can't recall the

10   actual case.

11        Q    And in Banks, there was reference to a

12   15- to 20-second delay, and Metro would agree that

13   less than 15 to 20 seconds was used in the

14   Williams matter?  In fact, the -- six seconds is

15   the figure Metro is giving; correct?

16              MR. ANDERSON:  Objection.  Form.

17              THE WITNESS:  So six seconds was the

18   stun stick entry, and then the entry was after

19   that.  So I believe breaking the threshold and

20   entry was after 15 seconds.

21   BY MR. BREEDEN:

22        Q    Okay.  But -- but let's be clear.

23             Metro understands that the first use of

24   force to enter the apartment was when the back

25   window was broken with the stun stick?  Does Metro



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 148

1    agree with that?

2         A    Correct.  Correct.

3         Q    Okay.  Does Metro agree that mistakes

4    were made when the warrant was served on the

5    apartment that Mr. Williams was in?

6              MR. ANDERSON:  Objection.  Form.

7              THE WITNESS:  You would have to be

8    more clear as far as "mistakes."

9              At the service from SWAT or the -- or

10   the search warrant itself?

11   BY MR. BREEDEN:

12        Q    I'm happy to clarify for you, but -- but

13   I want to ask the question very broadly.

14        A    Okay.

15        Q    Okay?

16             Does Metro in this litigation admit that

17   there were any failures of training, policy,

18   planning, or execution regarding this warrant?

19   And, if so, what are they?

20        A    Well, again, the CIRT -- in reading the

21   CIRT report, there was findings, again, going back

22   to the -- sorry -- the verbiage of the CET

23   contradicted that they said reasonableness of

24   time.  That's why it was changed.  I know they

25   said that Melanie O'Daniel's approval of the stun

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 149

```
1    stick was not in line with policy, given that they

2    believed they couldn't clearly see what was behind

3    that window.

4              There was some talks about there wasn't

5    enough surveillance to ascertain who was actually

6    going to be in that residence, if there was going

7    to be young children or older adults and who was

8    in the residence prior.

9         Q    Does --

10        A    So things like that.

11        Q    Does Metro agree there were failures of

12   surveillance?

13        A    They said there should have been more

14   surveillance needed.

15        Q    Yeah.

16             Because when this was actually served,

17   Metro had no idea who was actually in the

18   apartment; right?

19        A    So the surveillance was conducted, and

20   the surveillance team that conducted the

21   surveillance believed that it was too, I guess --

22   I don't want to use the word "dangerous," but they

23   were compromised believing there was too many

24   lookouts.  Believing that this was a dope house

25   for sale, and they had a lot of lookouts, they
```

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 150

1    couldn't use physical surveillance.  There wasn't

2    technology to use based on the -- the layout of

3    the residence.

4           And, yes, they -- they did not know

5    fully who would be in there.  There was knowledge

6    based on the -- the suspected person at the

7    time's, I believe, stepmother that she said that

8    he stayed there, but he was never seen on

9    surveillance.

10    Q    Yeah, so one suspect they were looking

11   for, he was wearing an ankle monitor, so they knew

12   he was not there; right?

13    A    Correct.

14    Q    And the other suspect had never actually

15   been seen there by surveillance; they just had

16   information from his stepmother from some months

17   before that he might be at that apartment?

18    A    That information and then the

19   information that he was involved in a shooting in

20   the same complex, yes.

21    Q    But police surveillance never actually

22   had eyes on him at that apartment at any time, let

23   alone the morning of the shooting; right?

24    A    Correct.

25    Q    Okay.  And Metro does not dispute the



Page 151

1    findings of the CIRT report, that there were

2    failures in surveillance?

3        A    They noted that there was -- there

4    should have been more surveillance done, correct.

5        Q    Does Metro dispute the findings of the

6    CIRT report that the IAPs were improperly handled?

7        A    No.

8        Q    Does Metro dispute the findings of the

9    CIRT report that there was inadequate training in

10   the sense of Sergeant Backman, who had not

11   completed basic SWAT training course at the time

12   this happened?

13           MR. ANDERSON:  Objection.  Form.

14           THE WITNESS:  I believe they did state

15   that he should have been through a SWAT school,

16   but I believe Melanie O'Daniel had offered him

17   some other training, and given his background and

18   experience, he was in that foreposition.

19   BY MR. BREEDEN:

20       Q    Yeah, he had -- he had somewhat of a

21   leading role in this, didn't he?  Like, it was his

22   job to do the announcements; right?

23       A    Correct.

24       Q    And he actually took on a planning role

25   as well with Lieutenant O'Daniel, because the

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 152

1    regular team leader, Sergeant Findley, was on

2    vacation; correct?

3        A    He -- he was -- the initial planning was

4    the ATL, and he gets the -- he approves that

5    planning, and then he briefs it up to

6    Lieutenant O'Daniel, correct.

7        Q    Because Sergeant Backman had not even

8    completed the basic SWAT training course, he

9    wouldn't have even seen Exhibit 2, would he?

10               MR. ANDERSON:  Objection.  Form.

11               THE WITNESS:  No, part of the -- part

12   of his role as a team leader, he should be aware

13   of all section policies, even day one.

14   BY MR. BREEDEN:

15       Q    Well, do you know for a fact that he had

16   seen that, or are you just speculating?

17       A    I don't know for a fact, but I'm just

18   saying, based on any position that you take to --

19   for a new position, you should know what you're

20   entailing, and that's part -- part of that is

21   reading the section manual.

22       Q    But we know, because he hadn't completed

23   the training, he wouldn't have seen any of the

24   PowerPoints used during the basic training and he

25   wouldn't have received any of the verbal



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 153

1    instruction given during the basic training on

2    knock and announce; true?

3        A    Again, I think Melanie O'Daniel stated

4    that he had some training, some one-on-one

5    training, so I don't know what that entailed, if

6    he had to see some PowerPoints or he had to read

7    the manual.  But I know she alluded to that he did

8    have some one-on-one training.  I believe it was

9    40 hours.  But you are correct, he did not go

10   through the full SWAT school, the 120 that was

11   offered at that time.

12       Q    And CIRT had found that

13   Lieutenant O'Daniel's approval of the stun stick

14   and the charge that was in the stun stick was not

15   to department policy.

16           Does Metro dispute that in this

17   litigation?

18       A    No.

19       Q    Okay.  CIRT had found that use of the

20   CET entry was contrary to knock and announce

21   principles.

22           Does Metro dispute that conclusion in

23   this litigation?

24       A    I think the findings were they did not

25   believe it was within the SWAT policy to use the



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 154

1    CET, correct.

2         Q    Okay.  And ultimately, related to that,

3    CIRT concluded that officers had not waited a

4    reasonable amount of time when conducting the --

5    the knock and announce portion of the warrant

6    service.

7              Does Metro dispute that in this

8    litigation?

9         A    I believe that came from the legal

10   consultant and was ultimately put into the report,

11   so, yes, they -- they took that report.

12        Q    Okay.  Metro, in this litigation, is not

13   disputing that?

14        A    No.

15        Q    Is the SWAT manual updated or revised

16   annually?

17        A    I can't say, prior to the -- me taking

18   over, if it was yearly.  The department does want

19   you to review the section manual yearly to see if

20   there needs to be any changes.  There has been,

21   since I've been there, two versions of it, and as

22   we go and implement new -- new pieces of

23   equipment, new tactics, we add in those policies.

24        Q    Okay.  So the version in effect at the

25   time of the search warrant in this case was the

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 155

1    2021 version?

2        A    Yes, it would be the '21 version.

3        Q    And so what are the later versions?  Is

4    it 2022 and 2023?

5        A    I believe '22 it changed.  And then '24

6    was a change, and then we -- it twice changed in

7    '24.  It changed in January and then again in May.

8        Q    Okay.  And would they refer to that,

9    then, as version, like, 1/2024 and version 5/2024?

10   How is that distinguished?

11       A    So they would refer to it as the month

12   that it was changed.  So right now we're 5/24.

13       Q    Okay.  And so how are the -- the later

14   versions of the SWAT manual different?  I know we

15   spoke about the change regarding CET, and that's

16   now reserved for no-knock warrants.

17            What were the other changes?

18       A    We really did a revamp, because, again,

19   when -- in March or so of '23, we had a new

20   director come in, and he wanted to overhaul the

21   whole manual.  So we went page by page.  We took a

22   lot of stuff that didn't need to be in there out.

23            I would have to, I mean, go -- it was a

24   full change.  Nothing in particular, other than

25   the CET language that we're dealing with this.

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 156

1   Dealing with tactics, that was changed to no

2   knock.  And then we added the breach and hold into

3   the manual.

4       Q    And so have there been any changes to

5   knock and announce principles or how knock and

6   announce is supposed to be performed?

7       A    Still we abide by the laws that govern

8   search and -- search warrants and knock and

9   announce, but there's no specific -- we didn't add

10  any specific time that needed to be implemented

11  prior to entry.

12      Q    Did you read Sergeant Findley's

13  deposition?

14      A    I did not.

15      Q    Dr. -- I'm sorry, Sergeant Findley seems

16  to reference that at one point in time, there was

17  something in writing that said at least ten

18  seconds should be allowed for a reasonable amount

19  of time to wait, and that that was changed at some

20  point.

21          Do you have any information about when

22  that changed and who changed it?

23      A    I do not have any recollection of it

24  being in there that I read, but I don't -- I

25  wouldn't be able to answer that if it was in there

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 157

1    and who changed it.

2        Q    So do you have any information as to why

3    it was changed?

4        A    No, sir.

5        Q    Do you have any information as to

6    whether it was changed to allow for longer or

7    shorter waiting times?

8        A    I -- I couldn't under -- I don't know

9    when it was changed or if it was in there, so I

10   couldn't answer that.

11       Q    Okay.  Have any of the department's

12   policies on what constitutes a high-risk warrant

13   changed since the time this warrant was served?

14       A    No.

15       Q    Since the time this warrant has served,

16   has Metro made any effort to relay the information

17   from Nevada POST to SWAT, which suggests that one

18   minute is a safe period to wait in most cases?

19       A    Again, we -- we know that that is in

20   there.  We don't know why it's in there or who put

21   it in there, but, again, we go back off of

22   reasonableness of U.S. Constitution and state law.

23       Q    What position does Metro take in this

24   litigation as to the effect that the NFDD

25   deployments had on Mr. Williams' ability to see



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 158

1    and hear officers?

2                    MR. ANDERSON:  Objection.  Form.

3                    Go ahead.

4                    THE WITNESS:  I can only answer to

5    what the intended use of an NFDD when it's

6    inserted into a structure, what we intend it to

7    cause, and that's to disorientate them and to take

8    his attention away from what we're actually doing.

9    I don't know -- I could not say if that was

10   actually the cause that happened to Mr. Williams.

11   BY MR. BREEDEN:

12       Q    And I think you stated earlier, one of

13   the reasons you deploy an NFDD is to confuse

14   people inside the residence; is that true?

15       A    To stun and disorientate them, yes.  And

16   that's in the sense to take his attention away

17   from the breach at the front door.

18       Q    Do you recall specifically using the

19   word "confuse" earlier in your deposition?

20       A    I don't, but confusion is part of the

21   stun and disorientate them.

22       Q    Okay.  We have retained an expert in

23   this case who has testified that the NFDDs would

24   have impaired Mr. Williams' ability to see

25   officers in his surroundings.

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 159

 1              Does -- does Metro dispute that?

 2      A    At the time that the stun stick was

 3   deployed, there was no officers in there for him

 4   to see, so I -- I don't know what the -- I

 5   couldn't answer if he was -- could not see

 6   officers from the outside where his positioning

 7   was.

 8      Q    And the same expert is prepared to

 9   testify that the NFDDs impaired Mr. Williams'

10   ability to hear officers.

11              Does Metro dispute that?

12      A    No.  Again, that's the intention of the

13   distract, is to momentarily debilitate his vision

14   and hearing.

15      Q    In fact, at least as the officers are --

16   are entering, you know, they're saying things like

17   "Police, search warrant," but that's at the same

18   time the NFDDs are going off; right?

19      A    That's the nine bang at the -- on the

20   outside on the four side -- or the two side.

21      Q    What is Metro's position in this

22   litigation on whether Mr. Williams was impaired by

23   any substance at the time of his death?

24      A    I believe the CIRT report and his

25   toxicology stated that he had marijuana in his

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 161 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 160

1    system that was consistent with smoking it

2    recently.

3         Q    And recreational marijuana is legal;

4    correct?

5         A    Correct.

6         Q    In your experience as a police officer,

7    is it unusual to find people who have smoked

8    marijuana recently?

9         A    To find them -- like, encounter people

10   that had smoked marijuana?

11        Q    Sure.

12        A    No, it wouldn't be unreasonable.

13        Q    You could probably walk down on Fremont

14   Street and smell marijuana on half the people;

15   right?

16        A    Correct.

17        Q    So I say that jokingly, but do you

18   recall, like, the exact nanograms per deciliter

19   that -- of THC in his system that was tested?

20        A    No.  I would have to refer back to the

21   CIRT report, the toxicology.

22        Q    Okay.  Did you -- did you ever review

23   that section of the CIRT report, the toxicology?

24        A    It was in the -- it was in the CIRT

25   report.  I remember seeing it.



Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 161

```
 1       Q    Did -- did you find the levels to be
 2  highly unusual?
 3       A    I don't know levels of intoxication
 4  based on nanograms.  I'm sorry.
 5       Q    Okay.  And you agree there was no
 6  alcohol involved.
 7       A    I don't recall seeing alcohol in --
 8       Q    Okay.
 9       A    -- in the report.
10       Q    Is Metro going to take the position that
11  Mr. Williams' marijuana consumption caused or
12  contributed to this incident at all?
13       A    I don't think that contributed to him
14  firing on officers.
15       Q    Okay.  Are you -- is Metro going to take
16  the position that that caused or contributed to
17  his inability to perceive and -- and react to what
18  was going on around him?
19            MR. ANDERSON:  Objection.  Form.
20            THE WITNESS:  I don't -- it was never
21  in the report that that would keep him from going
22  to the door or submitting or giving him a -- a
23  clear mind frame.
24  BY MR. BREEDEN:
25       Q    Okay.  I have seen two alternate
```

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 163 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 162

1    versions of the SWAT uniform and how lettering

2    appears on the uniform.  One is with bright gold

3    lettering that says SWAT on it, and the other is

4    what I would call a blackout uniform that the SWAT

5    lettering is in black and therefore is much more

6    difficult to see, especially from a distance.

7              In this case, the officers were wearing

8    what I would call the -- the blackout uniforms.

9              Why was that done?

10       A    We call that the subdued patches.  And,

11   again, it's just a tactical advantage.  When we're

12   doing hostage rescues and we have to stealth in or

13   we're doing search warrants where we have to walk

14   up to the front door, we want -- we don't want to

15   be backlit, because those other reflective patches

16   may compromise our positions with people on the

17   four side or the two side or the three side and on

18   the approach.  But it's just mainly for a tactical

19   advantage reason.

20       Q    Okay.  It's to assist in the CET and the

21   surprise and overwhelming response; right?

22       A    It's in totality of just really the

23   tactical advantage of giving us the -- not being

24   seen when we're trying to be stealthy.

25       Q    Well, under knock and announce



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 163

1    principles, part of it is that the person inside

2    the residence has to be afforded an opportunity to

3    come to the door and reasonably ascertain that it

4    is officers at the door with a warrant and -- and

5    provide them entry.

6            Don't you think that that process is

7    more delayed with the blackout or subdued

8    uniforms, as opposed to the bright gold lettering?

9        A    I don't, because the numerous search

10   warrants we have done that we have been able to

11   announce and get people to come to the door

12   doesn't diminish their ability to recognize the

13   verbal announcements that we are the police and we

14   have a search warrant.

15       Q    Well, that assumes that the person heard

16   and understood those instructions; right?

17       A    Yes.

18       Q    What if it was a deaf person?

19       A    They wouldn't have been able to hear us.

20       Q    And what if it was a person who had

21   their hearing impaired like through NFDDs?

22       A    But verbal -- I mean, the subdued

23   patches and the patches that the SWAT officers

24   wear is not -- is not the only thing that

25   announces our presence.  Again, it's the visual



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 164

1    presence, it's the lights, it's the verbalization,

2    NFDDs.  So it's in totality, so it's not one

3    factor that would have recognized us as police

4    officers.

5        Q    Would you agree that when officers

6    actually breached the front door of the apartment

7    and physically went into the apartment, that many

8    of them had lights on the end of their weapons?

9        A    I believe most of them should be

10   carrying lights.  I just don't recall how many

11   had -- had them on, but there was -- there was

12   several of them on.

13       Q    It's essentially like having a little

14   flashlight on the tip of your firearm; right?

15       A    Correct.

16       Q    Okay.  How many of those do you think

17   were shining into Mr. Williams' face as police

18   came through?

19       A    Again, I don't recall the number, but

20   there was flashlights.

21       Q    Multiple lights; right?

22       A    Correct.

23       Q    Okay.  Do you believe those would have

24   impaired Mr. Williams' ability to see the

25   officers?



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 165

```
 1              MR. ANDERSON:  Objection.  Form.

 2              THE WITNESS:  Again, I think with the

 3    number of bodies we had in there and the number of

 4    announcements that were given prior to making

 5    entry and during entry, that's our announcements

 6    for authority and purpose.

 7    BY MR. BREEDEN:

 8        Q    But at the time the shooting occurred,

 9    he was essentially staring into multiple

10    flashlights on his face; right?

11              MR. ANDERSON:  Objection.  Form.

12              THE WITNESS:  I couldn't say what he

13    was staring at at the time that he fired the

14    weapon at the officers.

15    BY MR. BREEDEN:

16        Q    Does Metro think it -- the most likely

17    scenario is that when the announcements were

18    given, Mr. Williams was asleep?

19              MR. ANDERSON:  Objection.  Form.

20              THE WITNESS:  Again, based on the

21    reports, there's no way to know if he was asleep

22    prior to the announcements.  All we can say is he

23    was awake when officers made entry, because he

24    fired on officers.

25
```

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 166

1   BY MR. BREEDEN:

2        Q    Isn't the reason why 5:00 a.m. was

3   chosen for this service of this warrant was

4   because it was a time he would most likely be

5   asleep, or any occupants inside?

6        A    There's -- there's several factors that

7   go into an early morning hit.  Being a

8   multi-family apartment complex, the closeness to

9   Nellis Boulevard, and AMPM, we want to reduce the

10  risk to citizens.  But also, we don't want them

11  staring out the windows at us either as we're

12  making our approach.

13       Q    Okay.  Are you aware that a question

14  similar to that was asked at a press conference of

15  the public relations officer for Metro, and he

16  said that these are served in the early hours of

17  the morning when there's -- people are likely to

18  be asleep or not active inside?

19       A    I don't recall that -- listening to that

20  press conference.

21       Q    Do you agree that that's a factor that

22  Metro considers when they assess what time of day

23  they should serve these warrants?

24       A    I would agree.

25       Q    Is that official policy by Metro?

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 167

1        A    No.

2        Q    So what is Metro's policy as to why it

3   would serve a warrant at 5:00 a.m. versus serving

4   it at noon?

5        A    Again, it goes -- based -- it's -- it's

6   really the safety of the community when you're

7   serving a warrant different times of the day,

8   whether you're going to do it late at night, early

9   in the morning, or during the day.  We want to try

10  to lessen the citizens that are walking around,

11  kids that are going to school, and -- and also a

12  factor of the cover of darkness to give us a

13  better stealth approach to the search warrant.

14             So there's many factors other than just

15  believing that he may be asleep or not as alert as

16  the middle of the day.  Again, it goes to factors

17  to the occupants, what kind of structure it is?

18  Are they -- are they a late-at-night dope sales?

19  Is it we know that they work a 9:00 to 5:00?  So

20  all of those factors go into the determination of

21  when we want to serve the search warrant.

22       Q    Ultimately, no evidence that was sought

23  in the search warrant was found inside the

24  apartment; correct?

25       A    Reading the reports, I don't believe so,

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 168

1    yes.  No, nothing was found.

2         Q    And I referenced it earlier, and I'm not

3    sure if you -- you knew it or not, but, in fact,

4    the -- the two suspects that were considered at

5    that time that might be at the residence, Metro

6    has now arrested individuals completely

7    unassociated with them for the crime.

8              Were you aware of that?

9         A    I'm aware that the two individuals that

10   they identified as the persons of interest that

11   were given to -- by the stepmother that may be

12   involved, based on surveillance video, were not

13   the two individuals that were arrested.

14        Q    Have you seen the surveillance video?

15        A    I've seen pictures of it.

16        Q    It's pretty -- pretty grainy and -- and

17   difficult to make out any particular features.

18             Wouldn't you agree?

19        A    If it wasn't my kid, it would be hard.

20        Q    I'm going to provide you what we'll mark

21   as Exhibit 4.

22             (Exhibit 4 was identified.)

23             THE WITNESS:  Thank you.

24   BY MR. BREEDEN:

25        Q    Exhibit 4 are several pages from the



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 169

1    CIRT report.  It's just an excerpt.  They have

2    been Bates labeled LVMPD4440 through 4443.

3            These are excerpts from the CIRT report

4    that we've been talking about during your

5    deposition, and basically I -- I just want you to

6    take a few seconds to review them and let me know

7    if Metro, in this litigation, is taking any

8    position that the findings and conclusions on

9    these pages are not correct.

10       A    Do you want me to start at the general

11   SWAT approach at the very top?

12       Q    Yes.

13       A    Okay.  Do you want me to read the whole

14   thing?

15       Q    Well, I want you to -- to read it at

16   least to the extent that you're comfortable

17   testifying that Metro does not dispute any of the

18   findings on those pages.

19            And I don't mean to interrupt you, but

20   then my question would be if -- if Metro intends

21   to dispute any of these findings, I need to know

22   what they are and why they are disputing them.

23       A    Okay.

24            So this was the CIRT findings based on

25   our department policy, so --



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 170

1        Q    So, in this litigation, is Metro
2    disputing these findings?
3        A    That they're -- no, on the findings of
4    the policy violations.
5             MR. BREEDEN:  Okay.  I think those are
6    all of my questions.
7             Do you have anything, Mr. Anderson?
8             MR. ANDERSON:  I don't.
9             THE VIDEOGRAPHER:  Okay.  Just
10   briefly, Mr. Anderson, would you like a copy of
11   the video and transcript?
12            MR. ANDERSON:  I do want a copy of the
13   transcript.  I don't need a copy of the video at
14   this time.
15            MR. BREEDEN:  Thank you.
16            MR. ANDERSON:  Unless you want one to
17   remember this day.
18            THE WITNESS:  No.
19            THE VIDEOGRAPHER:  This concludes the
20   deposition of Lieutenant Adrian Beas as a 30(b)(6)
21   designee for Las Vegas Metropolitan Police
22   Department consisting of four clips.  The time is
23   1:53 p.m.  We are off the record.
24        (The deposition concluded at 1:53 p.m.)
25                 *  *  *  *  *

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 172 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 171

1              CERTIFICATE OF COURT REPORTER

2

    STATE OF NEVADA          )
3                            )  ss:
    COUNTY OF CLARK          )

4

5       I, Heidi K. Konsten, Certified Court Reporter

6    licensed by the State of Nevada, do hereby certify

7    that I reported the deposition of ADRIAN BEAS,

8    commencing on March 28, 2025, at 9:04 a.m.

9        Prior to being deposed, the witness was duly

10   sworn by me to testify to the truth.  I thereafter

11   transcribed my said stenographic notes via

12   computer-aided transcription into written form,

13   and that the transcript is a complete, true and

14   accurate transcription and that a request was not

15   made for a review of the transcript.

16       I further certify that I am not a relative,

17   employee or independent contractor of counsel or

18   any party involved in the proceeding, nor a person

19   financially interested in the proceeding, nor do I

20   have any other relationship that may reasonably

21   cause my impartiality to be questioned.

22       IN WITNESS WHEREOF, I have set my hand in my

23   office in the County of Clark, State of Nevada,

24   this April 1, 2025.

25   _____
     Heidi K. Konsten, RPR, CCR No. 845



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 172

1            DECLARATION OF DEPONENT

2            I, ADRIAN BEAS, deponent herein, do

3    hereby declare under penalty of perjury that I have

4    read the within and foregoing transcription of my

5    testimony taken on March 28, 2025, at Las Vegas,

6    Nevada, and that the same is a true record of the

7    testimony given by me at the time and place

8    hereinabove set forth, with the following

9    exceptions:

10

11                    ERRATA SHEET

12    PAGE  LINE   SHOULD READ:         REASON FOR CHANGE:

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____

25

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 174 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas              Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

Page 173

1                           ERRATA SHEET

2     PAGE   LINE    SHOULD READ:          REASON FOR CHANGE:

3     _____

4     _____

5     _____

6     _____

7     _____

8     _____

9     _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21

22

23    Date: _____    _____
                              ADRIAN BEAS
24

25



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 175 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**1**

**1**
11:23,24

**1/2024**
155:9

**10**
15:7 35:3
53:16
101:17
110:5

**100**
35:7

**10:36**
75:18

**10:46**
75:21

**10th**
6:1 51:3
80:23

**1120**
106:22

**1125**
106:23,24
107:5

**12-gram**
68:21

**120**
153:10

**12:00**
133:8

**12:59**
133:11

**1491**
98:8

**15**
25:6 73:4
75:7
146:25
147:13,20

**15-**
147:12

**17**
60:6

**175**
68:22
96:11

**179.055**
42:13

**18**
59:10

**180**
69:2

**19-year-old**
112:7

**1994**
18:25

**1998**
18:16,18,
24 19:20
20:4

**1:53**
170:23,24

**1st**
20:12

**2**

**2**
98:2,4,6
99:22
103:21
152:9

**20**
20:24
73:4 75:7
146:25
147:13

**20,000**
98:21

**20-plus**
47:12

**49:12**
89:17

**20-second**
147:12

**2000**
20:8

**2003**
18:9

**2007**
20:10

**2008**
20:12

**2012**
20:14

**2014**
20:18

**2017**
20:19

**2019**
20:22,23

**2021**
13:9
98:14,15
124:17
155:1

**2022**
6:1 15:7
35:3 51:4
53:16
80:23
88:23
101:17
110:5
155:4

**2023**
18:2
155:4

**21**
99:9
155:2

**22**
20:25
21:18

**155:5**

**23**
21:2,19,
20 22:6
155:19

**24**
10:22
155:5,7

**24-hour**
142:19

**25**
64:22
66:20
68:3,20
70:1,25
71:7,12,
13,14
80:18
81:3,9
91:16
93:1,24
96:11,23
97:1
111:14
112:25
120:6

**27**
124:17

**27th**
18:15

**3**

**3**
103:22
114:4,5,7

**30(b)(6)**
11:10
170:20

**3000-square-foot**
140:14

**3050**

**108:13**
120:5

**360**
52:12

**4**

**4**
20:8
168:21,
22,25

**40**
153:9

**43**
69:1

**4443**
169:2

**48**
11:1

**5**

**5**
68:24
93:2,4
95:13
96:15
97:1,7,16

**5-feet**
94:21

**5/2024**
155:9

**5/24**
155:12

**5:00**
82:12
166:2
167:3,19

**5th**
124:17

**7**

**750**
54:25

**8**

**809**
114:11

**810**
114:11

**8th**
18:2

**9**

**9-bang**
66:22
68:25

**9:00**
167:19

**9:15**
14:8

**9:17**
14:11

**A**

**A-D-R-I-A-N**
5:16

**a.m.**
14:8,11
75:18,21
166:2
167:3

**abide**
127:10
138:14
156:7

**ability**
11:6

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

28:9,10
41:17
157:25
158:24
159:10
163:12
164:24

**able**
63:21
92:8
99:13
156:25
163:10,19

**about**
11:15
14:25
17:2 18:4
23:4 24:3
26:8
29:8,20
32:25
36:3
37:18
38:16
41:5 45:6
48:13
52:7,8
56:5
58:20
60:22
68:22
69:2
72:21
73:3,19,
23 74:3
75:5,7,14
76:20
78:10
86:17
88:5 89:9
91:6 93:4
94:7
100:7,8
101:8,15
109:4
112:12,18
113:20
115:5,15
119:23

130:18
131:3
133:14
138:12
139:5
142:12
149:4
155:15
156:21
169:4

**above**
17:12

**academy**
19:21
20:5 73:9

**accepted**
146:17

**accepts**
142:4

**accident**
27:15

**according**
39:1

**account**
82:2

**accounted**
124:2

**accurately**
9:3

**accused**
125:8
127:9

**acknowledge**
85:6
88:12
143:6,25

**acknowledges**
104:8

**acquaintance**
16:13,14

**across**
67:3

**action**
15:6
27:23
46:5,7
48:7
49:22
50:25
51:2,21
58:6
61:13
133:23

**actions**
30:2 58:8

**active**
166:18

**activities**
78:22

**actual**
44:4
50:24
71:4
95:23
101:12,22
102:4,12,
22 104:24
105:9,13
106:2,13
126:15
138:20
143:9
144:25
146:12
147:10

**actually**
7:9
33:12,20
39:5
43:2,25
48:21
57:2

69:10
84:2,23
92:4 94:2
95:18
96:2
99:11
101:4
102:20
103:13
121:16
122:9
126:4
129:4
140:9
149:5,16,
17
150:14,21
151:24
158:8,10
164:6

**Adam**
5:21

**add**
154:23
156:9

**added**
132:25
133:2
156:2

**Additionally**
8:22

**address**
53:22
105:10
106:2,13,
14 107:4

**adequate**
29:18
86:23

**adjust**
63:11

**administered**
6:16

**admissible**
10:4

**admit**
148:16

**admittance**
43:1,3,8
44:3,4,5,
8,9,17
118:19
125:11

**admittedly**
120:18

**admonitions**
6:12

**adopt**
29:10

**adopted**
97:19

**Adrian**
5:16
170:20

**adult**
18:21,22
112:4

**adults**
110:11
149:7

**advance**
7:13

**advancement**
20:1

**advantage**
61:17
108:25
162:11,
19,23

**affect**
11:5 41:8

42:1
62:16
63:1

**affects**
62:6

**affiant**
72:24
134:12
135:23

**afford**
9:1

**afforded**
83:20
144:1
163:2

**after**
7:7 18:25
19:5,20,
21 42:24
46:9,14
49:13,25
50:6 52:9
67:5,11,
12,25
69:18
70:25
71:3,7,
12,13,14
75:3
80:8,12
81:9
82:24
106:1
111:6,7
121:13
123:18,21
126:7,15,
17,20
134:1,18
135:9
137:15
138:3
147:18,20

**again**
16:17
24:13
34:13

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

39:8
45:13
49:12
52:4
54:13
56:7
57:24
58:5,8,
15,25
59:2,6,9
60:16
61:1,7,
12,15
65:18
67:5 69:7
70:10,19
71:11,23
73:3,18,
22 74:8,
16 76:10,
24 78:4,
16 79:9
81:23
82:19
84:10
86:16
87:16,18
88:5
93:23
94:16
95:13
96:8,10
97:6,8
99:5,7,9
101:15
102:9
104:25
105:25
107:20,22
108:22
109:7,13
112:22
113:7
114:19
116:20
117:1,4,
16 119:11
121:7
124:22
126:8

127:2
128:11,
15,20
133:20
136:13
140:3,11
141:17
143:7,19
144:24
145:5,12
146:9,11
148:20,21
153:3
155:7,18
157:19,21
159:12
162:11
163:25
164:19
165:2,20
167:5,16

**against**
5:23 22:2
92:21
97:16
107:16
111:20

**Agate**
124:18

**age**
112:12

**aggravati
ng**
131:15,17

**ago**
24:17
73:11

**agree**
29:9,21,
24 30:4,5
35:11,21
36:12
38:22
39:14,17,
18,23
42:3,5
60:12,15

63:6
72:5,8
77:20
80:22
83:19
84:20
86:4
91:20
92:1,9,12
93:17,23
96:5
99:21
100:10,
24,25
106:5
108:11
111:19
114:14
115:1,12
116:9,18
135:4
136:23
144:18
147:12
148:1,3
149:11
161:5
164:5
166:21,24
168:18

**agreed**
46:24
51:10,18
55:16,17,
19 84:16
86:22
110:14

**agreement**
49:9

**agrees**
84:15

**ahead**
5:14 31:2
32:13
35:16
40:17
43:13
49:7

59:18
62:19
65:17
79:8 85:8
97:5
107:19
127:15
129:16
158:3

**alcohol**
161:6,7

**alcoholic**
10:21

**alert**
61:7
167:15

**Alex**
14:25
24:7,9,17

**Alexander**
5:22

**all**
6:15 7:5,
8,25
8:13,25
15:3,11
17:4
22:18
26:10
28:11,12,
13 29:3,4
30:5
37:18
38:4
52:13
53:14,21
55:4
58:14
61:3,19
63:18
71:20,24,
25 72:17
73:12
76:11
78:12
82:2 99:7
109:13

118:13
132:19,20
138:17
139:7
142:11
145:20
152:13
161:12
165:22
167:20
170:6

**alleged**
128:12

**allow**
40:3
46:11
66:7,9
67:2 68:7
86:7 91:7
157:6

**allowed**
88:23
126:14
134:3
156:18

**alluded**
143:20
153:7

**almost**
77:1 81:4
124:15

**alone**
150:23

**along**
22:7
107:1
142:11

**already**
13:23
19:11
113:20

**also**
13:7
16:16
19:8

21:14
28:11
34:20
41:15
42:17
51:7
63:16,25
73:9 75:6
78:4
85:16
89:20
90:14
92:19
93:3
109:25
110:9
132:1
142:24
147:1
166:10
167:11

**alternate**
161:25

**always**
18:22
57:8,24
105:10
139:16,17

**Alzheimer
's**
11:5

**ambiguous**
117:5

**Amendment**
33:22
42:6
48:13
49:4
89:25
90:15
93:13

**Amendment
's**
43:9

**amount**
33:13



39:25
40:5 41:5
44:24
46:9
57:9,25
58:3,12
76:7
79:2,5
80:11
82:21
83:6 85:4
86:7
88:14,16
92:24
100:22
118:17,21
120:10,14
121:9,13
125:10,15
127:24
136:24
142:15
144:2,20
145:10,25
146:1,6,
8,20,23
154:4
156:18

**AMPM**
54:16,19
55:10
166:9

**and/or**
48:1
140:8

**Anderson**
9:13,22
10:11,15
12:18,20
13:14
14:3
15:25
16:19
31:1
32:12
35:15,24
36:16
40:16

43:12
47:10
48:12
49:6
51:17
57:7
58:24
59:16
60:9,13
62:17
64:7
65:16
75:16
76:23
79:7
80:14
81:7
83:17
85:7 86:9
87:5
90:16
93:20
94:15
95:5
96:17
97:4,21
98:14
99:24
106:9
107:17
110:21,25
114:18
117:15
127:14
128:4,14
129:15,
18,21
147:5,16
148:6
151:13
152:10
158:2
161:19
165:1,11,
19 170:7,
8,10,12,
16

**angles**
13:16,18

**ankle**
150:11

**announce**
33:10
35:13,19
38:13
39:1,5,
10,15,19,
24 40:7,
10,15
41:7
42:6,18
43:9,20
46:8,12
47:5,9
49:5,10
50:12,19
53:7,12
66:4,6,25
72:14,19
73:7,20,
25 76:5
85:5 86:8
87:23
88:24
89:14,21
98:24
99:4,23
100:12
101:21
102:4,16,
19,22
103:7
104:4,20
105:1,7
107:22
115:15
118:15
125:9
127:10
132:25
133:15,18
138:9,19
143:21
153:2,20
154:5
156:5,6,9
162:25
163:11

**announced**
46:10
78:21
105:11

**announcem
ent**
33:10
52:22
67:24
68:1,5
69:19
77:22
80:9,13
82:24
84:18
102:5
105:9,22,
23 106:4,
6,7,16,
20,25
107:1,6,
8,10,14,
15 108:3,
7 113:24
118:16,
22,23,25
119:3,6,
7,8
120:2,3,
8,12,13,
18,20,24
121:4,17,
20,24
122:5,8,
17,19,22
126:7,11,
13,18
129:3
137:13,
16,18

**announcem
ents**
40:11
44:12,24
49:23
52:18
58:11,14
66:13

67:6,8,12
68:10,11
73:19,23
74:5,18,
19 75:3
76:4,13
77:10,18
78:14
79:25
80:17
82:14
83:2,5
85:14
86:15,22
102:3,23
103:6
104:2,19
105:3,19
106:15
119:12,18
120:16
121:14
122:11
128:8
130:11
136:25
137:3
142:1
145:4
146:15,
17,18
151:22
163:13
165:4,5,
17,22

**announces**
163:25

**announcin
g**
34:13
40:19
45:17
103:6

**annually**
154:16

**another**
34:5
52:4,15

109:2
124:16
127:8
140:3,21
144:9

**answer**
9:6 31:2,
4 35:16
40:17
43:13
49:7
59:18
65:17
72:4
101:7
122:2
126:5
128:20
129:16
143:14
156:25
157:10
158:4
159:5

**answers**
7:6,8

**Anthony**
48:3

**Anthony's**
85:11

**any**
7:6 8:1
10:21,24
11:3
13:22
14:16,17
15:16
23:16
26:7,11,
13,16
28:18
32:18
37:2
42:22,23
44:20
47:24
52:14

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

63:3,7
71:21
74:7,8,25
76:2 78:3
79:4
81:21
85:22
91:11,13
92:2
94:24
100:21
102:22
104:11,21
109:6
112:24
115:19
116:20,21
118:10
121:10
123:13,16
125:17
128:24
131:7
138:6
142:10,
18,19
143:22
145:7,8
146:18,20
147:3
148:17
150:22
152:18,
23,25
154:20
156:4,10,
21,23
157:2,5,
11,16
159:23
166:5
168:17
169:7,17,
21

**anybody**
44:25
92:10
94:22
97:11

**anyone**
8:25
144:15

**anything**
12:13
33:16
37:11
42:23
44:18
47:22
75:8
78:3,22
98:25
136:6
143:21
144:16,23
170:7

**apartment**
13:4
41:14
51:3
54:14,23,
24 67:3,
22 81:2
82:12,15,
18 83:4
84:19
91:23
105:8,9,
12,15,16,
22,24
106:6,12,
14,18,21
107:14,
21,25
108:7,9,
12,14,15,
17 120:6
134:8
140:18
144:16
147:24
148:5
149:18
150:17,22
164:6,7
166:8
167:24

**apartment
s**
55:7

**apologize**
55:18

**apparently**
19:7
123:9

**Appeals**
34:1
146:21

**appears**
162:2

**applicable**
100:19

**application**
136:14

**applies**
142:13

**apply**
82:10
142:5

**applying**
33:24

**approach**
162:18
166:12
167:13
169:11

**appropriate**
117:23

**approval**
109:18
133:4
148:25
153:13

**approve**
136:14,16

**approved**
38:5
45:16
54:10
55:13,20
110:1
112:25
130:16
134:4,5,
10 136:3,
10,12

**approves**
103:18
152:4

**approximately**
115:25
116:14

**area**
19:23
20:7,13
41:13,15
52:20
55:9
90:5,8,
13,18
100:10

**areas**
55:10

**argue**
83:12

**argumentative**
122:3

**Arkansas**
33:5,25
34:18
37:8 73:3
98:25
101:1,4

**arm**
145:6

**armed**
41:16
45:3 55:2

78:6 83:9
123:2
131:5,18
145:2

**arming**
67:18

**armored**
54:15
83:21,23

**around**
17:18
36:23
37:16
41:3 55:1
68:21
78:17
93:4
130:24
161:18
167:10

**arrest**
22:19
132:12,
14,15
139:21

**arrested**
27:16,21
123:10
168:6,13

**arresting**
27:16

**articulate**
137:15

**as**
5:15 6:18
7:16 8:6,
8,23
11:17,22
13:4,10,
11,12
15:22
17:8
18:20,22
19:11,13,
23 20:13,

15,18,22,
25 21:1,
3,22
22:9,10,
13,16
24:24
25:13
26:5,13,
18,22
28:2,4
29:8,16,
25 30:10,
13,22
31:19
32:9,10
36:13,18,
19 37:1
42:3 43:9
46:25
47:1,2,7,
18 48:21,
23 49:4,
10,11
50:10
53:17
56:4
58:16
61:4
66:17
69:20
72:10
76:2
80:12
81:5
82:13
83:2
84:4,13
85:20
97:20
98:8
99:22
100:22
101:20
102:5,13
103:13
104:22
105:3,7
106:13,14
107:20
108:20

110:3,22
111:1
113:22
114:4,11
117:2
121:16
122:24
123:6
126:22
127:19
128:21
130:5,25
134:10
136:9,15,
18,21
138:24
141:8,24
142:4
146:23
147:7
148:8
151:25
152:12
154:21
155:9,11
157:2,5,
24 159:15
160:6
163:8
164:3,17
166:11
167:2,15
168:10,21
170:20

**ascertain**
40:2 66:8
111:17
133:2
149:5
163:3

**aside**
116:17

**ask**
7:25 8:1,
10,16
9:22 10:9
12:14
14:2 33:2

91:6
110:24
111:1
134:13
148:13

**asked**
49:23
166:14

**asking**
38:16
78:10

**asleep**
82:13
118:12
142:15
143:1
165:18,21
166:5,18
167:15

**assault**
124:25

**assess**
166:22

**assigned**
17:8
124:23

**assignment**
19:19

**assist**
162:20

**assistant**
29:4
103:15
109:14
129:5

**associate's**
18:6

**associated**
13:5
35:18
55:8 73:6

**association**
27:5
47:15

**assumes**
163:15

**at**
8:12,24
9:4 10:1,
3 12:20
15:7,11
17:11
18:1,6
19:13,22
20:7
21:22
23:10
24:12,23
25:21
26:10
27:1,12
32:4,6,9,
10 35:21
44:14,16
47:20
48:2
49:24
56:6,19,
23 59:10
60:17
62:11,12,
15 63:4,
7,10
67:5,10
70:20
72:5
74:23
75:2,8
76:11
78:23
80:3
81:12,15
82:12,24
85:1
86:2,19
87:20,22
88:7
89:19,23
91:3 92:3

94:22
96:3
101:18
103:21
105:5,24,
25 108:8,
18 111:9
112:23
113:4,15,
18,21
115:17,21
116:6
117:6
118:6,16,
24 119:5
120:11,15
121:13,23
122:7,21,
23 123:21
124:3,11,
17 125:13
126:10
130:1,3,
7,16
131:7
132:4
134:6,8
135:13
137:7
139:15
141:1,5,
6,10,20
143:11
145:14
146:6,7,8
148:9
150:6,17,
22 151:11
153:11
154:24
156:16,
17,19
158:17
159:2,15,
17,19,23
161:12
163:4
165:8,13,
14
166:11,14

167:3,4,8
168:4,5
169:10,
11,15
170:13,24

**ATL**
53:24
54:1
56:8,11
59:4 71:2
80:1
111:9
112:23
145:14
152:4

**ATLS**
86:20
146:14

**attempt**
102:1,8,
18 103:24

**attention**
61:8
65:20
66:18,23
67:4,18
158:8,16

**attorney**
5:22 9:13
38:6

**audible**
8:5 64:1,
23 69:2

**auditory**
61:14

**authoring**
135:24

**authority**
33:14
34:14
38:13
39:10
42:25
76:14
77:7

102:6,14
105:4
107:23
119:9
122:12
165:6

**authorized**
52:6
73:13,15
109:5

**authorizing**
72:23,24

**available**
54:3
56:14

**Avenue**
124:18

**avoid**
8:24

**avoided**
60:8

**awake**
116:17
117:25
118:5,12
165:23

**aware**
12:10
57:1
64:17,18
74:25
91:25
99:2,12,
17 136:20
146:20
147:7
152:12
166:13
168:8,9

**away**
49:16
61:14
66:18,23

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 181 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

68:24
94:24
109:3
110:12
112:4
133:1
138:20
139:23
158:8,16

**B**

B-E-A-S
5:16

back
10:1
12:22
13:9
14:13,19
20:15
25:13
38:3
40:18
56:8 58:2
75:10
76:11
78:4 80:7
97:9
112:22
119:16
121:7,19
126:8
133:13
136:13
141:17
144:24
145:23
147:24
148:21
157:21
160:20

background
17:2 18:4
151:17

backing
77:7

backlit
162:15

Backman
13:2,17
14:24
24:15,16,
19 25:3
54:7,9
55:21
104:6
105:19
107:21,24
109:25
110:2
111:10
120:4
121:1
151:10
152:7

ballistic
84:3,5,10

Bandiero
48:4

bang
64:22
65:7
68:25
70:14
71:2,5,8,
13,15
77:10
109:2
159:19

banger
64:15,16,
24 65:2
67:3
68:15
69:11,21,
23,25
70:8,17
71:1,19
72:6

banging
78:2

bangs

65:3

Banks
34:6,15,
24 35:6
37:12
73:6
100:20
143:10,16
144:10
146:24
147:11

banned
131:7

bare
117:11

barricade
145:7

barricades
61:3

base
71:6
73:25
74:13
76:12
79:22
82:2
102:11
115:8
117:16
119:11

based
10:3
28:16
40:13
45:14
46:16
48:3,5,25
52:7 55:4
56:10,18
58:6
69:24
70:11,19,
23 71:22
74:10,14
75:11

76:16,18
77:2,13
78:12,13,
14 79:9
80:2
83:6,7,22
85:10
86:12,15
87:9
88:15,20
92:15
95:7 97:7
102:24
103:4
104:17,25
108:23
109:7,14
110:16
111:8,15,
22 112:3
115:8
117:10
118:3
119:14
128:19
130:8
134:17
137:6,19
138:20
139:20
140:11
145:12
146:11,13
150:2,6
152:18
161:4
165:20
167:5
168:12
169:24

bases
76:18

basic
151:11
152:8,24
153:1

basically
169:5

basing
70:10,22

basis
47:16
50:23
140:16

Bates
99:13,18
169:2

battering
81:5,10

Bearcat
83:13,22,
23 84:13

Bearcats
54:15

Beas
5:16
14:13
72:9
133:13
170:20

became
20:2,6,8,
22 27:13

because
8:11,17
9:16 10:5
31:5 34:8
36:1,3
38:12
44:24
47:4
57:15
58:1
59:23
63:10
65:6
70:11,21
71:12
74:8,12
76:25
82:5,7
83:8 87:9
91:10
95:13

98:11
102:11
106:11
112:11
116:20
117:5
118:8
122:6
123:9,21
124:7,10
126:24
128:21
132:21
135:21
136:3
139:1
140:14,18
149:16
151:25
152:7,22
155:18
162:15
163:9
165:23
166:4

become
79:17

becoming
45:3

bed
143:4

before
6:8 9:6,8
26:23
33:15,16
40:7,11
69:5
71:8,13,
16,20
72:6 75:2
80:5,13
82:3
98:10
114:2,12
116:3,10
119:6
120:24
121:3,12



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 182 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

125:14
137:4
139:23
144:16
150:17

**beforehand**
59:8

**begin**
9:8 11:18
67:13
82:17
118:22

**beginning**
118:22
119:5,7
120:12
121:24
122:17

**behalf**
6:4 11:20
75:24
77:20

**behind**
40:14,24
45:25
83:13,21
92:1,9
94:20
96:21
97:9
113:14
125:4
130:14
133:3
145:21
149:2

**belief**
41:18
87:20,21
97:9
123:24

**believe**
9:5 13:23
17:18
18:9

20:8,14
21:18,19
23:11
26:16
31:3,22
35:1
43:6,8,10
44:23
53:10
54:7,24
56:16
57:11
58:15
59:13
64:13,20
65:4
67:25
69:1
70:4,15,
24 71:10,
11,15,19
73:17
74:22
76:25
81:8
82:19,25
84:5,8
85:10,18,
22 87:9
90:21
91:6,7
95:10,12
96:18
99:9
100:15
101:8
105:2,23
106:11,21
107:3,7
108:4,6
110:2,6
111:24
115:18
125:18,25
126:20
127:3,6
129:1
130:15,
19,20,21
131:2

135:6
139:18
140:24
141:8
147:19
150:7
151:14,16
153:8,25
154:9
155:5
159:24
164:9,23
167:25

**believed**
54:4
55:2,5
56:11,19
88:8
94:21
97:10,11,
14 103:5
111:10,13
112:23
113:15
123:25
124:2,11
143:13
149:2,21

**believes**
107:10

**believing**
149:23,24
167:15

**Benton**
93:6,9

**Bertuccini**
13:2,17
14:23
25:17
64:14,21
68:1
69:15,17
91:24
94:18
97:10
113:16

127:17

**Bertuccini's**
69:25

**best**
54:4

**better**
47:21,24
56:11,17
167:13

**between**
19:12
43:19
68:5 74:4
76:4
77:21
79:1
84:18
113:24
126:12
136:24
142:1

**beverages**
10:22

**beyond**
95:13

**binds**
11:16

**bit**
17:2 18:3
23:3
36:24
37:17
38:3

**black**
162:5

**blackout**
162:4,8
163:7

**blank**
123:3

**blind**
63:21
89:24

90:1 92:4
93:13

**blinded**
127:4

**blindly**
91:8,10
94:9,12,
16

**blinds**
113:14,15

**bluntly**
128:11

**board**
51:7,15
84:16
85:24
86:11
87:12,13,
17,18
88:4,17

**bodies**
139:4
140:10
165:3

**body**
132:16

**body-worn**
13:14,16,
19 71:4

**Bolden**
20:13

**booklet**
7:9

**both**
40:25
54:3,6
82:11
85:3
111:1
113:7
124:12

**bottom**
115:21
116:6

**Boulevard**
55:10
120:6
166:9

**Boyd**
93:6,9

**breach**
66:23
67:7,14
81:10
82:4
109:4
119:20
122:14
125:1,2
128:6
129:3
130:2,9,
13 139:2,
25 140:7,
15,22,25
141:6,14
156:2
158:17

**breached**
164:6

**breaching**
80:19
83:1
132:23,
24,25
137:4
141:2

**break**
42:22
48:15
67:21
75:15
80:7
121:18

**breaking**
80:25
147:19

**Breeden**
5:11,21
12:1



30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 13:20 | 158:11 | **brightnes** | 43:15,24 | 8,24 | 19:8,18 |
| 14:5,12 | 161:24 | **s** | 45:2 47:4 | 116:15 | 28:6 |
| 16:1,20 | 165:7,15 | 63:13 | 48:23 | 117:1,4 | 31:10 |
| 31:10 | 166:1 | **bring** | 49:24 | 118:1 | 32:1,15 |
| 32:15 | 168:24 | 54:14 | 50:23 | 122:5,17 | 35:20 |
| 35:20 | 170:5,15 | **broadly** | 53:6,20, | 123:10 | 36:8,22 |
| 36:8,22 | **Breonna** | 148:13 | 21 54:16 | 124:4,23 | 38:5,6 |
| 40:22 | 134:20 | **broke** | 55:25 | 126:25 | 40:10,22 |
| 43:17 | 135:6 | 108:11 | 56:20,23 | 127:6 | 42:6,8 |
| 48:9,15, | **Brett** | **broken** | 57:9 | 128:19 | 43:17 |
| 17 50:4 | 28:6 | 147:25 | 59:25 | 130:20 | 45:22 |
| 51:23 | **Brice** | **Brosnahan** | 60:16,19 | 132:1,10, | 46:23 |
| 57:10 | 23:13,20 | 28:6,21 | 61:21,25 | 11 133:17 | 48:3,9,17 |
| 59:12 | **brief** | **brought** | 62:12 | 134:15 | 49:4 50:4 |
| 60:2,11, | 70:13 | 128:19 | 63:6,9 | 135:5,6 | 51:7,23 |
| 21 62:21 | 73:22 | 135:7 | 64:12 | 136:17 | 55:6,13, |
| 64:10 | **briefed** | **building** | 65:13,24 | 137:9 | 20,21 |
| 65:23 | 55:21 | 54:14,18 | 66:14 | 138:15 | 57:10 |
| 72:12 | 59:3,5 | 123:19 | 67:10 | 140:11,17 | 59:12 |
| 75:13,22 | 69:23 | **built** | 69:23 | 141:2,5 | 60:2,6, |
| 77:15 | 71:6 | 65:3 | 70:3,15 | 147:9,22 | 11,21 |
| 79:18 | 103:1 | **bureau** | 71:3,11 | 148:12 | 62:21 |
| 80:21 | 122:10 | 135:24 | 73:5 77:9 | 149:22 | 63:23 |
| 81:11 | 126:10 | **burn** | 79:15,20, | 150:8,21 | 64:10 |
| 84:1 | 146:1 | 92:17 | 21 81:15 | 151:16 | 65:23 |
| 85:15 | **briefing** | 95:23 | 82:10 | 152:17,22 | 71:1 |
| 86:24 | 59:7 | **burst** | 83:13,19, | 153:7,9 | 72:12,15 |
| 87:11 | 70:20,21 | 44:19 | 22 84:2 | 156:9,24 | 73:1 74:9 |
| 90:19 | 73:23 | **but** | 85:2,12, | 157:21 | 75:22 |
| 94:6 | 144:25 | 8:23 10:8 | 16 86:2, | 158:20 | 77:15 |
| 95:1,9 | **briefings** | 12:7 | 16 87:7, | 159:17 | 79:18 |
| 96:24 | 145:16 | 13:18 | 18 89:5, | 160:17 | 80:21 |
| 97:13,25 | **briefly** | 18:21 | 12 90:12 | 162:18 | 81:11 |
| 98:5,16 | 14:6 | 19:25 | 92:1,7,9, | 163:22 | 83:24 |
| 100:2 | 170:10 | 21:25 | 17 93:8, | 164:11,19 | 84:1,6,16 |
| 106:17 | **briefs** | 22:10,18, | 23 94:11 | 165:8 | 85:15 |
| 108:1 | 109:16 | 21 24:4, | 96:9 | 166:10 | 86:10,24 |
| 110:24 | 152:5 | 20 25:16 | 99:17 | 168:3 | 87:11 |
| 111:1,2 | **bright** | 28:10 | 100:6 | 169:19 | 88:1 |
| 114:6,24 | 61:22 | 31:23 | 101:7,11 | **buy** | 89:14 |
| 117:21 | 62:1,12 | 33:2 35:7 | 102:3,5, | 29:10,11 | 90:19 |
| 127:18 | 63:5 | 36:6 | 16 103:4 | **by** | 93:14 |
| 128:9,23 | 162:2 | 37:1,6,9 | 104:8,17 | 5:11 6:16 | 94:6 |
| 129:20,23 | 163:8 | 38:14 | 106:1,3, | 10:10 | 95:1,9 |
| 130:4 | | | 13,20 | 12:1 | 96:24 |
| 133:5,12 | | | 107:3,25 | 13:20 | 97:7,13 |
| 147:6,21 | | | 109:18 | 14:12 | 98:5,16 |
| 148:11 | | | 112:14 | 15:22 | 99:22 |
| 151:19 | | | 113:5,21 | 16:1,5,20 | 100:2 |
| 152:14 | | | 115:1,7, | | 106:17 |

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 184 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

108:1
111:2
113:1
114:6,24
117:21
120:19
121:3
127:10,18
128:9,23
130:4
132:6
133:12
134:5
135:15
136:4
138:14
147:6,21
148:11
150:15
151:19
152:14
155:21
156:7
158:11
159:22
161:24
165:7,15
166:1,25
168:11,24

**bystander**
93:18
125:20

**bystanders**
93:14
112:16

---

**C**

**C-I-N-T-R-O-N**
17:15

**call**
6:12
16:12
37:21
48:22

49:18
52:1,12,
16 53:11,
15,18
54:17
55:6,12,
17 68:14,
15 71:1
83:14
162:4,8,
10

**called**
20:16,17
28:5 34:5
102:15
130:11

**calling**
60:24

**callouts**
22:9 61:3

**calls**
12:22

**came**
17:18
50:21
116:19
136:15
154:9
164:18

**camera**
13:14,16,
19

**cameras**
71:4

**canister**
69:6

**canisters**
69:4

**cannot**
59:21
60:17
93:12

**captain**
17:12,14,

16,17
134:5

**career**
20:16

**carry**
124:13

**carrying**
164:10

**case**
6:5
12:23,25
13:8,24
14:16
32:22
33:4,8,9,
12,20
34:3,5,7,
9,11,16
35:9,23
36:4 37:4
38:12,23
48:2 49:1
64:12
65:14
73:5,6,9,
18,22
74:9,16
75:5,6
76:11
79:22
80:6
82:8,11
93:6
96:14
100:21
101:4,5,
6,12
102:22
103:4,19
107:24
108:24
109:20
111:7
112:16
115:13
116:20
118:1
119:16

124:5
125:7
127:12,22
128:22
133:20
134:19,
21,24
135:2
138:23
140:12,23
143:10,19
144:10,
12,14
146:16,25
147:1,3,
10 154:25
158:23
162:7

**case-by-case**
140:16

**cases**
32:19
33:1
36:14
37:7
46:21
73:4,7,18
79:23
100:20,23
116:1,15,
22 117:3
147:1
157:18

**category**
112:8

**cause**
61:5
91:13
139:21
158:7,10

**caused**
63:23
161:11,16

**CCDC**
132:3

**ceiling**
94:23
95:14,19,
22,25
96:9
113:4

**ceilings**
95:16

**cements**
33:9

**Center**
132:3

**certain**
37:7
41:4,7
56:2
60:17
138:13

**certainly**
58:22

**certification**
30:22

**CET**
45:7,8,
16,25
46:6,12,
15 47:8,
11 48:10,
19,23
49:4,9,
17,19
50:10,11
51:5
52:3,6
53:24
54:4,12
55:17,19,
24,25
56:3,11,
15,18
57:12,15,
19 58:5,
20 59:14
66:19
74:18

78:15
80:16
82:23
88:23
89:13
108:24
119:17
124:24
130:18,25
131:4,7,9
133:18,
22,25
134:3
137:5
138:4,9,
11,16
139:9
141:1,20
148:22
153:20
154:1
155:15,25
162:20

**CETS**
138:8

**change**
7:15 48:5
49:24
50:1
63:14
130:21,23
131:2
155:6,15,
24

**changed**
7:20
47:2,5
49:16
50:3
130:7,19,
20 133:19
134:2
138:4
148:24
155:6,
7,12
156:1,19,
22 157:1,



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 185 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

3,6,9,13

**changes**
7:11
130:17
132:17,20
135:9
138:6
146:5
154:20
155:17
156:4

**changing**
28:25
49:15
132:23

**charge**
69:14,18
70:8
90:23
91:21
95:11
114:15
115:2
125:14
126:9,13
129:11
130:13,15
153:14

**child**
125:25

**children**
110:11
111:12
112:4,7,
10,12
125:24
149:7

**choose**
66:16

**chose**
67:11
87:14

**chosen**
166:3

**Chris**

14:25
69:12
71:5

**Cintron**
17:15,16

**Circuit**
33:25
93:5,10
141:23
146:21,24
147:3

**circumsta
nces**
77:3,12
79:4 82:7
115:24

**CIRT**
12:24
47:1 48:3
49:25
50:21
51:6,15,
19 74:22
84:15
85:2,9
86:6,10
87:4,7,17
88:4,17
110:20
111:5,15
128:16
133:20
144:3
148:20,21
151:1,6,9
153:12,19
154:3
159:24
160:21,
23,24
169:1,3,
24

**CIRT's**
51:10
110:7,13
111:22

**cite**
37:7
101:1
102:3
146:24

**cited**
34:19
110:17

**cites**
146:25

**citing**
102:9

**citizens**
41:3,17
47:25
52:11
57:23
58:9
78:17
140:6
166:10
167:10

**citizens'**
82:1

**civil**
11:10
128:3,12

**clarify**
15:20
110:22
148:12

**Clark**
18:10
132:3

**class**
72:22
73:16,17,
20 101:10

**classes**
28:19
72:22

**clear**
10:13
11:17

53:5
90:5,8
110:8
113:11,14
147:22
148:8
161:23

**cleared**
113:10

**clearing**
90:13,17
91:12
97:9

**clearly**
27:8
44:25
149:2

**Clements**
23:13

**clips**
170:22

**close**
92:13,22,
25 95:25

**closed**
92:4,6
113:14

**closeness**
55:7
166:8

**closer**
95:15
136:25

**closest**
95:21

**College**
18:7
19:10

**come**
11:19
15:24
16:17
40:1
46:10

49:9 53:4
54:1 58:2
59:22
61:21
66:7 67:1
68:7,10,
12 76:15
87:7
118:18
125:10
136:18
141:15
143:4,18,
23 146:14
155:20
163:3,11

**comes**
53:25
69:8
114:21

**comfortab
le**
141:21
169:16

**coming**
28:15
102:20

**command**
17:11
19:23
20:8,13
71:5

**commander**
17:9,13,
22,23
18:1
20:23
21:3,4,12
22:5,9
28:2
29:2,3,
13,17
33:3 36:5
50:3
54:10
55:13
56:6 59:5

86:21
90:23
103:17
109:17
127:21
136:10

**comment**
7:18

**comments**
7:6

**Commissio
n**
114:8

**committed**
123:8

**committee**
29:9

**common**
8:14
33:12
40:18
102:20
135:15,17

**community**
167:6

**complaint**
128:12

**complaints**
22:2

**complete**
36:18
120:13

**completed**
7:7 119:6
151:11
152:8,22

**completel
y**
9:6,8
131:7
168:6



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 186 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

complex
41:15
54:23
108:12,15
150:20
166:8

complexes
140:19

compliance
47:8

compliant
57:12,20

complied
49:10
50:11
87:23
89:21,24
107:11

complies
58:15

comply
30:6,9,
12,25
35:14
40:7,9
85:4 86:7
117:12
137:22,25

composed
29:3

compromise
162:16

compromised
149:23

concealment
83:21

concede
78:20
96:13,25
107:15

concept
45:25
57:4

concerning
72:18

concluded
154:3
170:24

concludes
170:19

conclusion
50:21
67:23
85:16
88:1,2
110:15
153:22

conclusions
51:16
169:8

condition
11:4

condominiums
140:19

conducted
30:3 88:8
149:19,20

conducting
154:4

conference
166:14,20

conflict
46:12,15,
25 53:11

conflicted
49:5,22

50:18
85:12

confrontational
57:6,16

confuse
61:10
64:6
158:13,19

confused
64:14

confuses
10:6

confusion
158:20

conjunction
106:2

connected
27:12

consider
30:19
40:23
41:8
46:11
57:19
79:3

considered
99:1
115:23
116:1
123:13
124:6
146:5
168:4

considers
92:25
145:9
146:6
166:22

consistent
128:7

160:1

consisting
170:22

constitute
96:23

constitutes
115:11
157:12

constitution
30:7,10
42:7,9
74:1 91:7
110:23
138:1
157:22

constitutional
29:24
32:17
33:21
73:10
90:14
93:15
96:16,19
111:25
112:2
117:12
121:8
146:23

constitutionally
113:4

construction
44:19

consultant
49:20
50:15
133:21
154:10

consultants
85:21

consulted
134:2

consumed
10:21

consumption
161:11

contact
129:2

contain
41:18
52:10,12,
13,17
55:5,11
140:5

contained
52:19
72:19
140:15

containment
45:17

contemporaneously
70:17

continue
10:17

continuously
18:17

contradicted
133:24
148:23

contradictory
57:15

contrary
153:20

contributed
161:12,
13,16

control
91:11,15
93:25
94:4
112:21

controlled
45:8
55:19

conversation
14:17

conversations
14:20

copy
170:10,
12,13

corner
54:13

Corps
18:25
19:1,4,5,
12

correct
23:5
25:24
30:7,8,
11,14
33:19
35:19
36:10,11
37:13
38:2,20,
21,24
39:3 40:8
42:11
46:3 47:9
48:11
50:8,9,
13,14,16,



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 187 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

22 51:4,
5,8,9,11,
12 55:1
56:25
57:3,6,9
61:22,24
62:1,2
65:15
67:24
71:9
80:9,10,
13 81:6
85:17,21
87:15
88:25
89:1,16
97:17
103:11
105:17
110:1,15
116:3,12
118:2
121:21
122:14
125:17
127:20
129:14
138:1,2
139:10,11
142:5,6,
23 147:15
148:2
150:13,24
151:4,23
152:2,6
153:9
154:1
160:4,5,
16
164:15,22
167:24
169:9

**correcting**
7:16

**couch**
95:7

**counterterrorism**
20:24

**counting**
120:10
121:12

**County**
18:10
93:6,9
132:3

**couple**
13:18
20:19
61:5
73:11
89:4 96:4
129:19

**course**
151:11
152:8

**court**
5:14
6:16,17
7:3 8:19
9:3 26:23
27:22
32:19
33:4,25
35:14
40:13
128:19
134:13
146:21

**courtesy**
9:1

**courtroom**
9:18

**cover**
32:22
83:20
167:12

**coverage**
84:12,14

**covers**
93:16

99:7
114:20

**Craig**
12:18,20

**create**
61:22,25

**created**
29:2

**crime**
45:14
52:9 55:8
83:10
123:1,5,
8,10
125:17
134:16
168:7

**criminal**
18:7 19:9
20:16
27:5
132:10

**criteria**
45:13
52:7

**critical**
36:20
50:20

**criticism**
135:3

**criticized**
135:5

**CT**
139:9

**CTS**
66:22
68:25

**current**
13:11
17:4,6,14
28:14
90:22

**currently**
5:17 17:8
48:21

**curtain**
145:21

**custody**
139:20,22

**cut**
79:20

**cutout**
100:16

**cycle**
65:2

———————

**D**

**daily**
47:16

**damage**
127:6

**dangerous**
93:11
104:13
149:22

**dark**
62:23,24
63:2,4

**darkness**
63:13
167:12

**date**
99:8

**dated**
13:9
98:12

**day**
28:3
41:23
42:1
53:25
110:3
122:18
141:24

142:10,14
143:8
144:4
152:13
166:22
167:7,9,
16 170:17

**days**
23:12
24:13,14

**daytime**
62:25

**de-escalation**
57:2,4,
12,20,24
58:16

**deaf**
63:20
163:18

**deal**
22:21
48:1

**dealing**
155:25
156:1

**death**
59:1 60:4
124:16
159:23

**debilitate**
159:13

**December**
20:5,25
21:18,20

**decent**
143:18

**decibel**
96:11,20
97:8
112:11

**decibels**
68:23
69:2

**decided**
55:11
59:10
86:14
104:6

**deciliter**
160:18

**decision**
53:17
56:7
109:11

**decisions**
32:20
33:24
35:14
40:13

**dedicated**
53:5

**deemed**
123:20
124:9
125:13

**Def**
66:20
68:20
93:1

**defendant**
33:11

**defendants**
12:16
23:4
26:12
127:12

**defense**
16:15

**defined**
47:5

**definition**
39:7



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 188 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

degree
18:6,8
19:9

delay
147:12

delayed
67:10
163:7

dementia
11:4

depart
25:11

department
5:19,24
6:5
11:12,14,
16,21
15:11
16:11
17:7
19:19
20:1
21:23
23:22
29:22
30:24
46:24
47:17,20
48:18
49:23
53:2,8
56:5
73:21
82:20
86:12,17
87:9
92:21,25
97:2
107:16
120:5
136:7
153:15
154:18
169:25
170:22

department's
32:4
49:1,3
72:14
101:19
105:6
108:19
157:11

depend
115:24

depends
82:22
123:17

deploy
66:10,14
67:21,22
69:17
70:7,17
80:7,18
91:8
92:21
93:3
94:12
97:12,24
111:14
113:9,12
122:20
129:3
130:12
158:13

deployed
63:2
69:3,11,
13,21
70:9
71:8,16,
20,25
91:16,21,
22 93:16
94:12,22
95:11
96:14,22
97:1,15
110:5
159:3

deploying

67:3
95:14
113:17

deployment
66:3
90:11
91:16,19
92:12
93:24
94:2
95:20,21
111:20
112:21
115:11
130:2,9

deployments
72:6
157:25

deposed
144:22

deposition
6:3,7,11,
23 7:5,7,
14,19
8:4,14,23
9:12,15,
19,21
11:8,9,22
12:8,14,
19 13:21
33:1 98:3
156:13
158:19
169:5
170:20,24

depositions
13:1
14:15
144:14

describe
27:9 33:7
34:11,15

53:14

describing
32:8

design
65:9

designated
12:4,11

designed
63:25
64:25
65:8

designee
170:21

despite
26:19

destroyed
41:19

destroying
45:4

destruction
78:7
143:21

details
77:13
134:17

detective
13:3
20:9,10
27:21
38:6
134:11,12
136:5

detectives
25:4
123:19

Detention
132:3

determination
78:1
167:20

determine
85:1
109:8
128:2

determined
85:3
122:24

detonation
63:23

developing
112:10,13

device
61:10
65:10,19
66:11
81:6
93:11

devices
60:23
65:13

dictate
90:13
95:24

dictates
102:2

dictating
119:15

dictation
70:21

difference
43:19

differences
94:1

different
13:18
38:12,17
43:16
52:3
58:13
59:20
61:5,21,
23 64:22
65:9
68:17
69:1
74:13
75:4
76:12,20
79:25
90:3,10
94:1
109:1
123:22
155:14
167:7

differently
9:16

difficult
9:2 162:6
168:17

diminish
163:12

directing
65:21

direction
29:15
54:16

directly
62:10,15
91:25
92:8,15,
18 94:20
96:21
97:9
106:13

director
47:2 50:2
134:5



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 189 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

155:20

**disagree**
110:19

**disagreed**
111:15

**discipline**
128:24

**disciplined**
26:12,16
130:1

**discretion**
103:12

**discuss**
37:3

**discussed**
132:19

**discusses**
33:8
34:12
98:24

**discussion**
138:12

**discussions**
26:7

**disease**
11:5

**disorientate**
61:10
158:7,15,
21

**dispute**
86:6
138:23
150:25
151:5,8
153:16,22
154:7

159:1,11
169:17,21

**disputes**
84:23

**disputing**
88:1,3
144:6
154:13
169:22
170:2

**distance**
94:21,24
95:13
96:9,11
97:7,11,
12 113:17
162:6

**distinction**
94:8

**distinguished**
58:17
128:18
137:2
155:10

**distinguishment**
55:22

**distract**
65:12
67:4,16
80:18
109:3
112:19
113:12
159:13

**district**
38:6

**diversionary**
60:23
61:10
65:13,19
66:11

**diversity**
21:25

**divert**
65:20
66:17,22
67:17

**document**
98:23
99:3,25
114:12

**documentation**
37:5
100:6

**documented**
36:2

**documents**
12:15
13:22
35:8 36:7
98:22
99:12
104:17
123:18,21

**doing**
23:1 29:7
66:18
83:3,15
144:16
158:8
162:12,13

**done**
8:22
11:21
12:17
120:20
151:4
162:9
163:10

**door**
40:1
42:22
44:11,14,
15,17,20
45:1,4,20

46:11
58:10,13
66:8,16,
24 67:1,
7,8,14
68:7,10
77:5,11,
14 78:2
80:19
81:6
83:2,24
84:9
101:23
103:22
109:4
118:18
119:4
125:1,4,
11 126:5
130:14
133:1,3
137:4,10
140:7
143:4,14,
18 158:17
161:22
162:14
163:3,4,
11 164:6

**dope**
149:24
167:18

**down**
7:4 8:7
9:3 48:16
96:6,7,8
137:10
160:13

**Dr**
156:15

**draw**
70:12

**drawing**
123:3

**drawings**
70:23

**drawn**
120:2

**drugs**
10:24

**due**
56:1
58:19
65:2

**Durante**
13:5

**during**
7:5,14,19
8:4,13,23
9:12,15,
19,21
44:11,25
45:11
46:21
54:8
58:18,21
66:9,13
106:14
124:21
152:24
153:1
165:5
167:9
169:4

**duties**
25:16

**dwell**
36:24

**dwelling**
39:11

**dynamic**
45:12
48:22
49:17
140:21

————————

**E**

**each**
12:21
81:24

**eardrums**
112:11,13

**earlier**
52:8 88:2
158:12,19
168:2

**early**
21:19
125:15
130:2
143:1
166:7,16
167:8

**easier**
19:24

**East**
124:17

**educated**
11:15

**education**
18:5

**effect**
98:18
101:16
137:1
154:24
157:24

**effectively**
35:12

**effort**
157:16

**efforts**
137:18,21

**either**
22:18
26:8 29:9
37:13
55:24
56:13
61:18
67:18
72:23
90:10



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 190 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

138:18
139:1
166:11

**elderlies**
111:18

**elderly**
110:11
111:12
112:5

**else**
8:25
92:11
123:10

**employed**
18:17
19:8,11

**employees**
85:20

**employment**
15:14
21:22

**encounter**
78:6
142:20
143:23
146:13
160:9

**encourage**
145:24

**end**
43:1
93:14
105:24,25
108:8
113:5
118:22
121:17,19
122:6,18,
21 164:8

**ended**
27:14
125:2

**enforcement**
30:23
31:6 57:5

**enforcement's**
135:3

**enough**
85:3,12
86:23
97:10,12
100:4
108:14
110:9
111:5,11,
16,23
143:13,17
149:5

**ensure**
58:22

**entailed**
66:17
153:5

**entailing**
152:20

**enter**
33:17
51:2
65:21
74:5 76:4
78:25
80:24
84:18
113:25
119:20
122:14
139:3
142:2
144:17
147:24

**entering**
40:8
45:20
46:2
67:19
82:18

159:16

**entirety**
101:6
110:8
119:10

**entity**
11:11

**entry**
23:1
34:15
38:14
39:8,13
40:3,12,
20 45:8,
18,25
46:11
49:4
50:11
55:19
59:9,11,
23,24
60:17
66:9
67:2,7,15
71:25
73:25
74:20
76:8
80:20
82:4 83:4
139:9
140:9,21
144:12
146:18,
19,22
147:18,20
153:20
156:11
163:5
165:5,23

**entryway**
45:20

**environment**
62:23

**environmental**
140:4

**equal**
45:2 58:3

**equated**
86:23

**equipment**
29:8,11
154:23

**error**
7:17

**errors**
129:13

**escape**
52:14
67:19
77:5 78:8
143:22

**especially**
116:16
135:17
162:6

**essentially**
10:14
17:10
43:8,14
45:10
48:23
53:1,6
63:6
81:15
137:12
164:13
165:9

**establish**
44:7
45:16,17
89:12

**evaluated**
128:5

**even**
9:5 32:11
37:10
56:1
60:16
63:20
64:14
76:11
80:5
83:18
85:2
101:3
102:1,18
120:20
121:3
122:6
123:7
126:1
134:6
139:18
141:12
146:4
152:7,9,
13

**event**
77:13
138:4

**eventually**
59:24
67:7

**ever**
6:7 21:21
22:1,4,24
27:22
34:18
62:3 74:2
76:22
98:9
102:7
114:12
147:3
160:22

**every**
37:5
73:22
74:9,12
76:19

79:11,24
114:22
117:17

**everyone's**
112:15

**everything**
7:4 28:3
31:5,22
35:18
56:8
75:10
76:17
77:11
115:8,11

**evidence**
36:9
41:18
45:4 78:7
110:9
131:25
143:22
167:22

**ex-girlfriend**
27:12

**exact**
44:1
68:16
75:9
107:3
114:2
160:18

**exactly**
24:25
121:11

**EXAMINATION**
5:10

**example**
11:4
39:20
65:9



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 191 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

117:22
120:17

**exceed**
32:11

**excellent**
8:22

**excerpt**
98:6
169:1

**excerpts**
169:3

**execute**
42:24
139:15

**execution**
15:6
148:18

**exhibit**
11:23,24
12:2
98:2,4,6
99:22
114:4,5,7
152:9
168:21,
22,25

**exit**
52:24

**expect**
78:6

**experienc
e**
17:2
28:10
56:10
151:18
160:6

**expert**
15:16
16:16
46:23
158:22
159:8

**experts**
15:21

**explain**
7:12 9:14
10:5
12:17
19:25
41:12
60:25
140:1

**explained**
145:5

**explosion**
92:17

**explosive**
125:1,2
128:6
129:3
130:2,9,
13
132:23,
24,25

**extend**
68:19

**extent**
18:5 24:3
127:1
169:16

**extreme**
11:4

**eyes**
63:4,7,11
127:3,7
150:22

─────────

**F**

─────────

**face**
90:6
164:17
165:10

**facility**
123:22

**fact**
7:18
26:18
36:2
42:20
64:11
95:2
97:15
118:8
119:22
125:16
147:14
152:15,17
159:15
168:3

**factor**
78:11
84:11
104:11
118:4
141:24
142:4,10,
13,22
143:15,16
144:19
145:15,
19,24
164:3
166:21
167:12

**factored**
143:7

**factors**
41:2,4,7,
10,12,20
44:10
45:15
55:4,5
56:2
57:21
74:15,16
76:16
78:3
79:16
80:1 82:6
86:14,17
88:6 90:3
99:8

102:24
109:8,9
110:16
111:12
112:24
123:3
124:8,9
131:4,11,
13,16,17
133:1
138:13
140:5
143:21,23
144:9
145:7,13
166:6
167:14,
16,20

**facts**
111:7
142:11
143:10

**factual**
77:17

**fail**
39:12

**failed**
35:23
36:1

**failing**
127:10
129:2

**failure**
36:15,18
43:25
50:8

**failures**
148:17
149:11
151:2

**fair**
15:4 82:7

**fall**
112:7

**familiar**
30:17
33:3
34:3,7,9
37:10
42:12
93:5
114:16
115:10
134:19

**familiari
ze**
115:4

**family**
105:12

**far**
8:23
13:10
31:19
49:10
138:20
147:7
148:8

**fatal**
5:25

**FBI**
20:20

**feasible**
55:25
56:1

**features**
168:17

**February**
20:23

**federal**
11:9
43:20
50:12
114:20

**feel**
63:19,21
139:14

**feet**
54:25

68:24
92:24
93:2,4
95:10,13
96:4,15
97:1,7,16
103:22

**felt**
96:14,25

**female**
125:3,5

**few**
24:2,16
169:6

**field**
19:21,22
20:5,7

**figure**
84:24
124:4
147:15

**filed**
5:22

**filings**
126:25

**final**
29:14

**finally**
50:1 83:3

**find**
13:22
35:9 36:7
37:5,11
74:7
98:24
160:7,9
161:1

**finding**
86:1
87:15
144:6

**findings**
51:6,10
86:6,10



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 192 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

87:17
88:3,15
128:20
148:21
151:1,5,8
153:24
169:8,18,
21,24
170:2,3

**Findley**
54:6,7
104:6
110:3
127:16
129:1,4,
17,22,24,
25 152:1
156:15

**Findley's**
156:12

**finish**
9:8

**finished**
9:7 19:22
121:4
122:8

**fire**
65:3 90:8
92:16

**firearm**
59:23
164:14

**firearms**
145:3

**fired**
60:6
71:9,21
72:1,7
165:13,24

**firefight**
60:3

**firefighter**
19:17

**firing**
161:14

**first**
6:10,15
7:25 8:14
10:6
12:18
17:4
18:13
19:18
27:10,11
37:18
53:24
71:16
72:17,20
73:8
80:23
81:5,10
105:18,
22,23,24
106:6,20
107:2,7,
10,13
108:3,7
115:22
116:7
118:25
126:7,18
139:7
143:5
147:23

**fit**
45:13
52:6

**five**
147:2

**five-minute**
75:15

**five-second**
79:13

**flash**
60:22
61:22
62:1,4,12
63:24

65:13
66:11

**flash-bang**
93:11

**flashed**
63:7

**flashlight**
164:14

**flashlights**
164:20
165:10

**flood**
45:21

**fluctuate**
41:11

**follow**
31:16
97:22

**following**
5:25
77:16
101:20
105:7

**Fomby**
16:19,21,
24

**Fomby's**
16:22

**foothold**
140:8

**for**
5:13,22
6:11
7:23,25
8:3,14,19
9:2,7,10,
23 10:16
11:14
12:14
13:21
14:2

15:3,24
16:17
19:4,13,
25 20:2
21:4,5
22:19,20
24:23
25:5
26:1,17
27:16,21
28:11
29:17,21
30:2 31:8
34:16
35:11
37:23,25
39:6,20,
25 41:6
45:23
46:10,17
47:12
49:12
51:14
53:3,14,
15,23
54:5,12
56:14,17
57:22
58:20
60:24
61:14
65:9,14
68:6,9
73:4
75:14
78:16,24
80:6,11,
15,16
82:17
83:11,13
85:13
88:24
89:12,14,
17 90:8
99:14,18
102:23
103:23
104:13
105:15
107:23

108:14,
17,20
109:5,18
112:3,10,
14,18
114:7
117:14,23
118:17
119:2,14,
17 120:5
122:5
123:10
124:2
125:10
127:23
129:2,18
130:23,25
131:8,9,
24,25
132:6
133:6
134:7,14
135:21
136:14,16
139:10,19
140:6,13,
23 141:25
143:17
148:12
149:25
150:11
152:15,
17,19
155:16
156:18
157:6
159:3
162:18
165:6
166:3,15
168:7
170:21

**force**
16:9,11
20:21
21:8
23:19
24:20
26:2

33:17
46:2
57:17,18,
25 58:2,3
61:2 74:5
75:3 76:4
77:22
78:24
80:7,13,
24 81:1
84:18
93:12
113:25
120:25
121:2
136:25
142:2
144:16
147:24

**forced**
144:11

**forcefully**
40:7
82:18

**forcible**
34:14
38:14
39:8,12
40:12,20
45:18
74:20
76:8
146:18

**forcibly**
45:19

**foreposition**
151:18

**foresee**
78:5

**form**
7:9 31:1
32:12
35:15,24
36:16



Case 2:24-cv-00074-APG-NJK     Document 57-11     Filed 05/16/25     Page 193 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

40:16
43:12
47:10
48:12
49:6
51:17
57:7
58:24
64:7
65:16
76:23
79:7
80:14
81:7
83:17
85:7 86:9
87:5
90:16
93:20
94:15
95:5
96:17
97:4,21
99:24
106:9
114:18
117:15
127:14
128:4,14
129:15
147:5,16
148:6
151:13
152:10
158:2
161:19
165:1,11,
19

**formal**
36:7 76:2
101:19
105:6
108:19
113:22
136:6

**formalized**
79:21
141:3

**formally**
146:9

**formed**
85:19

**former**
15:23

**forth**
12:23

**fortifying**
45:3

**found**
84:17
86:12
128:11
129:12
153:12,19
167:23
168:1

**four**
12:2
19:1,4
23:12
24:14
27:2 29:4
52:13
54:18
120:19
159:20
162:17
170:22

**Fourth**
33:22
42:6 43:9
48:13
49:3
89:25
90:15
93:12

**frame**
161:23

**free**
112:19

**freely**
113:12

**Fremont**
160:13

**frequently**
22:22
23:10
24:12
25:21
64:6

**friend**
16:13

**from**
13:1,16
14:22
16:8,10,
11 28:3
32:20
33:11,25
49:17
52:3
66:18,23
67:18
68:24
69:16
71:21
77:23
82:8,15
94:24
95:10
97:1,11,
16 98:6
100:16
102:20
105:19
109:3
110:12
111:24
112:4,24
114:8
116:24
118:21
120:11
122:16
124:22,25
133:1
143:16
148:9
150:16

154:9
157:17
158:8,17
159:6
161:21
162:6
168:25
169:3

**front**
6:18 27:1
66:24
67:1,14
68:10
80:19
81:6
83:2,24
84:8,9
90:6
103:22
109:3
125:1
137:10
158:17
162:14
164:6

**FTO**
20:6

**full**
49:9
134:14
153:10
155:24

**fully**
55:11
71:20
113:9,11
140:15
150:5

---

**G**

**gang**
20:21

**gangs**
73:14
132:6

**Garth**
54:6,7
104:6
127:16
129:1

**gates**
54:20

**gave**
35:4
107:2,4
108:7
146:16

**general**
8:24 39:9
55:9
169:10

**generally**
10:8 30:1
33:7
35:10
60:25
124:20

**gentleman's**
16:18

**get**
15:13
18:3
19:2,14
38:7
45:12
54:10
61:8,15
68:6 77:4
87:8
95:21
137:5
139:20
140:7,8
143:14,17
163:11

**gets**
63:7
136:25
152:4

**getting**
19:8
23:18
69:22

**Gilbertson**
15:22

**give**
6:3 8:5
9:25
19:25
33:12
44:23
58:12
61:11,16,
17 63:9,
16 68:10,
11,16
74:19
76:14
77:10
94:23
100:21
102:2,5
104:2
105:3
107:22,24
108:2
109:17
119:3,21
122:11
137:18
145:6
167:12

**given**
6:7,10
33:13
36:10
46:6 55:6
67:6,12
73:1,20
80:2,3
86:13
93:10
96:11
97:7
106:12
107:8



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 194 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                     Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

114:2
117:22
119:9
125:15
138:13
141:11
142:18
149:1
151:17
153:1
165:4,18
168:11

**gives**
38:12
117:6
119:8
138:19
140:17,20

**giving**
40:10,11
49:22
67:1
78:1,14
82:20
83:2,5
118:4
147:15
161:22
162:23

**go**
5:14 8:15
10:1 14:5
22:4,8,13
31:2
32:13
35:16
38:3
40:17
43:13
49:7
52:25
54:12
59:6,18
61:18
62:19
65:17
69:25
71:1

72:25
73:16
79:8 85:8
88:7 90:6
97:5
107:19
120:19
121:3
127:15
129:16
130:10
133:5,16
145:19
153:9
154:22
155:23
157:21
158:3
166:7
167:20

**goal**
66:6

**goes**
6:25
34:13
40:18
62:24
68:22
75:10
76:11
78:4 99:5
126:8
141:17
144:24
167:5,16

**going**
6:13
12:19
15:13
29:14
32:25
36:23
37:16
49:16
52:9,14,
20,22
54:17
56:8

66:14
68:11
72:13
73:24
74:12
75:14
77:10,13
78:5,6,16
79:12,14
86:5
90:6,10
97:8,25
102:19,20
104:15
110:10,19
111:11,17
112:22
115:24
119:16
120:23
121:7
123:15,
17,18,21
124:14
133:16
138:21
144:21
148:21
149:6
159:18
161:10,
15,18,21
167:8,11
168:20

**gold**
162:2
163:8

**Gonzales**
14:25
24:7,8,17

**good**
5:12 7:24
115:3,6
116:13

**got**
69:1,7
80:5
87:4,7

104:12
106:14
107:21

**govern**
156:7

**governs**
42:14

**graduated**
19:3 20:4

**graduatin
g**
18:25

**grainy**
168:16

**grams**
69:1

**Granville**
34:2,21
37:10
100:21

**graveyard**
20:14

**greater**
43:11

**Greg**
15:22

**grenade**
69:5

**Grimmett**
134:12

**ground**
84:3
95:15
96:4

**group**
29:8

**guard/emt**
19:13

**guess**
37:21
46:23
115:9

149:21

**guidance**
100:21
104:22,24
114:8,17
115:14
116:2
117:6
121:10

**gun**
64:24
145:21

**gunfire**
65:4,11,
15,22,24
66:12

**gunshot**
64:3,9

**gunshots**
64:6,16,
25 71:12

---

**H**

---

**hadn't**
152:22

**half**
62:8,9
69:9
75:14
160:14

**hand**
56:19
61:13,15
98:1
114:3

**handled**
151:6

**hands**
53:4

**hanging**
130:12

**happen**
62:14

**happened**
15:8
26:8,14
60:20
84:3
126:6
130:24
132:21
151:12
158:10

**happening**
66:10

**happens**
28:3
103:22

**happy**
8:2
148:12

**hard**
168:19

**harm**
40:25
92:14

**having**
78:3
164:13

**hazards**
90:8

**he'll**
10:12

**head**
8:7,16
96:1,3

**hear**
10:7
44:13
71:24
82:14
144:23
158:1
159:10
163:19

**heard**
64:15



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 195 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

77:19,23
96:13
144:15
163:15

**hearing**
44:12
105:18
159:14
163:21

**Hector**
17:15

**held**
18:23
147:4

**help**
123:19

**here**
6:3 7:13
9:20
11:6,19
12:5
15:14
19:3 25:2
26:4
32:16
37:1,17
50:6
55:23
56:2
68:14
72:13
91:3 94:8
101:11
115:22
116:6,24
117:22
118:3
119:22
120:5
122:15
135:15,17
141:14
142:5
144:7

**Herring**
21:6,7,11
22:8

**Hey**
77:9

**hi**
24:2

**hide**
145:22

**high**
18:25
19:3
46:21
95:16
122:25
123:1,13,
20 124:6,
9

**high-
decibel**
65:19

**high-risk**
157:12

**higher**
58:1
92:20
130:16

**highlight
ed**
12:3

**highly**
161:2

**hired**
19:14,18
46:23

**histories**
124:12

**history**
131:19
132:5

**hit**
166:7

**hits**
63:3

**hitting**
58:13

**hold**
139:3,25
140:16,22
141:6,14
156:2

**holding**
141:2

**holds**
140:25

**home**
27:12
44:25

**homicide**
123:11,
13,16
124:1,7,
12 132:1

**horizonta
l**
96:2

**hostage**
61:4,18
162:12

**hour**
12:21
75:14
78:22
79:2
83:19

**hours**
10:22
11:1
31:19
83:13
143:1
153:9
166:16

**house**
42:23
140:14,15
149:24

**how**
6:13 9:15
10:18
17:16,20,

25 26:25
30:2
37:19
43:23
47:5
52:3,25
62:6,15
63:5
72:15
73:23,24
74:3,19
76:2
79:21
82:2,16
93:16
95:10,16,
25 96:19
113:23
116:24
119:4
122:24
126:12
132:24
133:17
138:9,20
141:25
146:15
155:10,13
156:5
162:1
164:10,16

**However**
7:12

**huge**
123:16

**Huh-uh**
8:8,15

**Hundreds**
49:15

**hypotheti
cal**
107:18
119:21,22
137:19

**hypotheti
cally**
107:13

108:11

---

**I**

**IAP**
13:5

**IAPS**
151:6

**idea**
18:3 20:1
91:22
115:4
119:2,3
149:17

**identifie
d**
11:24
98:4
114:5
168:10,22

**identifie
r**
99:14

**identity**
40:2

**if**
6:18,25
7:11,13,
25 8:8,12
9:5,22
10:1,9
11:11
12:13
21:24
22:22
24:4 25:1
26:4
29:6,14
31:4,8,14
36:13,17
38:7,16
39:6
41:14,15,
16 42:24
44:16
45:15,19

48:4,24
52:5,9
54:25
56:4
59:13,22
62:10,14,
23 63:2,
20 64:12
66:6,14,
25 67:8,
16 71:24
73:9
77:2,4,25
78:5,21
79:15
85:12
86:3,12
87:18
90:10
91:10
92:10,15,
18 93:7
94:11
96:2,6,
13,21,25
97:15
99:9,10,
12 102:25
103:2
104:16
105:11
106:5
107:13
108:11
110:10
111:17
113:3,5,
10,14
115:1
116:16
117:23
118:4,5,
6,9,10
119:2
120:25
123:2,15,
18 124:13
130:13
131:10
133:2

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 196 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | |
|---|---|---|---|---|
| 134:6,16 | **impaired** | 11,15,20, | 64:11 | 7,15,22, | 19,20,21, |
| 136:15 | 158:24 | 21 20:5, | 65:8 | 24,25 | 23 |
| 137:9 | 159:9,22 | 8,9,10, | 66:19 | 117:3,22 | 158:16, |
| 138:22,25 | 163:21 | 12,14,18, | 68:2,12 | 118:8 | 19,22,25 |
| 139:13,18 | 164:24 | 21,22,23, | 69:14 | 120:17 | 159:3,15, |
| 140:17 | **implement** | 25 21:2, | 70:3 | 121:2 | 21,25 |
| 141:3 | 154:22 | 19 22:6, | 73:2,9,20 | 123:18,19 | 160:6,19, |
| 142:14,25 | **implement** | 16,25 | 74:7,15, | 124:1,5 | 24 161:7, |
| 145:15,19 | **ation** | 23:24 | 21 75:8 | 125:7,16, | 9,21 |
| 148:19 | 68:19 | 24:1 | 76:17,21 | 17,19,25 | 162:5,7, |
| 149:6 | 109:19 | 25:2,4 | 78:11,12 | 126:12,25 | 12,20,22 |
| 153:5 | 136:1 | 26:4,14, | 79:21,25 | 127:12 | 164:2 |
| 154:18,19 | **implement** | 18,23 | 80:1 | 128:1,16, | 165:3 |
| 156:25 | **ed** | 27:1,4, | 81:18,20 | 21,25 | 166:16 |
| 157:9 | 138:7 | 13,14,22 | 82:2,12 | 129:11,14 | 167:9,23 |
| 158:9 | 156:10 | 28:3,24 | 83:9,15, | 132:7,8, | 168:3 |
| 159:5 | **implement** | 29:14,25 | 18 84:9 | 25 133:2, | 169:7 |
| 163:18,20 | **ing** | 30:20 | 85:12 | 22 135:2, | 170:1 |
| 165:21 | 141:9 | 32:8,17, | 86:5 87:3 | 10,17 | |
| 168:3,19 | **important** | 21 33:1 | 88:22 | 137:1 | **inability** |
| 169:7,20 | 7:23 | 34:15,17, | 90:6,7, | 138:21,23 | 161:17 |
| **ignited** | **improper** | 19,20 | 12,23 | 140:3,23 | **inadequat** |
| 92:17 | 112:1 | 35:22,23 | 91:14,23 | 141:3,4 | **e** |
| **ignites** | **improperl** | 36:6,7,9, | 92:11 | 142:9,10, | 151:9 |
| 69:8 | **y** | 13 37:3, | 93:1,9, | 22 143:2, | **inches** |
| **ignitiati** | 106:7,11 | 11,16 | 18,22 | 11,19 | 72:10 |
| **on** | 110:14 | 38:4,10, | 94:17,24 | 144:3,10, | 92:24 |
| 126:8 | 151:6 | 12,15,17, | 95:2,20 | 12,14 | **incidence** |
| **ignition** | **improve** | 22 39:9, | 96:2 | 145:2,8, | 37:6 |
| 63:23 | 109:20 | 11 41:15 | 97:1,15 | 9,13,15 | **incident** |
| 70:1 | **in** | 42:20 | 98:8,18, | 146:6,16, | 13:10,19 |
| **ignore** | 6:5,17,18 | 43:24 | 22 99:25 | 22,24 | 14:21 |
| 10:14 | 7:7,8,13, | 44:6 | 100:8,13 | 147:11, | 15:2 |
| **imagine** | 15 9:17 | 46:2,12, | 101:6,8, | 13,14 | 26:17,20 |
| 120:1 | 10:22 | 15,25 | 16 102:22 | 148:5,16, | 35:2,22 |
| **immediate** | 11:15 | 47:6,8, | 103:19 | 20 149:1, | 37:14,15 |
| 78:7 | 12:4 | 11,20,22 | 104:16 | 6,8,17 | 46:14,17, |
| **immediate** | 13:9,12, | 50:8,17 | 106:1,3, | 150:5,19 | 19 47:7, |
| **ly** | 21,23 | 51:16,24 | 19 107:24 | 151:2,9, | 18 49:13 |
| 9:20 | 14:16 | 52:4 | 108:2,14, | 18,21 | 50:6,20 |
| 67:23 | 15:1,5, | 53:11 | 23 109:6, | 153:14, | 53:16 |
| 69:18 | 11,14,17 | 54:2,14 | 19 110:18 | 16,22 | 56:17 |
| 80:8 | 17:10 | 55:9 | 111:12 | 154:7,12, | 59:14 |
| 126:17 | 18:7,10, | 56:13 | 112:13 | 23,24,25 | 60:16 |
| | 25 19:1, | 57:9 58:9 | 113:23 | 155:6,7, | 79:10 |
| | | 59:20 | 114:10, | 19,20,22, | 83:24 |
| | | 60:4,16 | 15,21 | 24 | 86:16,19 |
| | | 61:18,21 | 115:2,3, | 156:16, | 88:16,22 |
| | | 62:23 | 10,13,19, | 17,24,25 | |
| | | 63:2,7,19 | 22 116:1, | 157:9,18, | |



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 197 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | |
|---|---|---|---|---|
| 89:13,20<br>98:13,18<br>99:10<br>115:13,20<br>117:20<br>123:23<br>124:16,21<br>126:15<br>127:8<br>128:2,16,<br>25 129:11<br>130:3,6<br>132:21<br>133:19<br>135:10,14<br>137:6<br>138:16<br>141:5<br>145:13<br>161:12<br><br>**incidenta<br>lly**<br>123:6<br><br>**incidents**<br>46:20<br>47:19<br><br>**include**<br>10:25<br>35:5<br>105:9,16<br>106:6<br>107:14<br><br>**includes**<br>28:13<br><br>**including**<br>72:16<br><br>**Incomplet<br>e**<br>107:17<br><br>**inconsist<br>ent**<br>66:3<br><br>**incorpora<br>te**<br>42:18 | **incorrect**<br>51:16<br>88:13<br><br>**Indian**<br>27:14<br><br>**indicated**<br>138:3<br><br>**individua<br>l**<br>23:4<br>26:12<br>68:24<br>142:21<br><br>**individua<br>lly**<br>14:18<br>21:22<br><br>**individua<br>ls**<br>78:7<br>124:10<br>132:1<br>168:6,9,<br>13<br><br>**informal**<br>76:2<br>101:19<br>105:6<br>108:19<br>113:22<br>135:18<br>136:7<br>141:2<br><br>**informall<br>y**<br>36:3<br>141:7<br><br>**informati<br>on**<br>45:13<br>101:12<br>108:14<br>111:6<br>137:7<br>142:18,19 | 145:1<br>150:16,<br>18,19<br>156:21<br>157:2,5,<br>16<br><br>**inherentl<br>y**<br>93:10<br><br>**initial**<br>152:3<br><br>**initiate**<br>68:2<br><br>**initiated**<br>70:25<br>125:2<br><br>**initiatio<br>n**<br>81:9<br>125:14<br>128:6<br><br>**injured**<br>126:22<br><br>**injuries**<br>127:1<br>128:19<br>129:14<br><br>**injuring**<br>125:3<br><br>**injury**<br>91:13<br>113:8<br>127:3<br><br>**inner**<br>42:22<br><br>**innocent**<br>93:14,18<br>112:16,18<br>125:20<br><br>**insert**<br>68:1<br>80:25<br>92:7 93:2<br>109:1 | 111:14<br>113:13<br><br>**inserted**<br>91:17,24<br>94:18<br>109:20<br>158:6<br><br>**insertion**<br>67:12<br>68:5<br>89:24<br>90:1 92:6<br>104:3<br>109:18,21<br>110:6,9<br>111:3,8,<br>25 112:3<br>121:15<br>122:12<br><br>**inside**<br>40:1,25<br>41:16<br>44:13<br>45:2<br>57:22<br>58:7<br>59:21<br>60:19<br>61:11<br>63:24<br>67:17,22<br>68:7<br>77:19,23<br>78:5,23<br>82:13,15<br>90:11<br>91:12,22<br>92:3,5,10<br>93:22<br>95:23<br>97:24<br>111:18<br>112:15,18<br>116:17<br>117:24<br>118:5,11<br>124:14<br>125:23 | 126:1,6<br>131:6<br>132:10<br>141:12,<br>13,15<br>144:16<br>158:14<br>163:1<br>166:5,18<br>167:23<br><br>**instances**<br>27:3<br><br>**instants**<br>90:10<br><br>**instead**<br>59:14<br><br>**institute<br>d**<br>115:19<br><br>**instructi<br>on**<br>28:25<br>29:18<br>32:19<br>36:10,13,<br>14 153:1<br><br>**instructi<br>ons**<br>6:13<br>163:16<br><br>**insuffici<br>ent**<br>99:22<br><br>**intel**<br>74:10<br>75:11<br>111:11<br>137:7<br><br>**intend**<br>158:6<br><br>**intended**<br>158:5<br><br>**intends**<br>169:20 | **intention**<br>159:12<br><br>**interacti<br>ons**<br>16:11<br><br>**interest**<br>123:25<br>168:10<br><br>**internal**<br>107:11<br><br>**internall<br>y**<br>26:17<br><br>**interrupt**<br>169:19<br><br>**into**<br>15:13<br>19:4 24:4<br>49:14<br>52:15<br>66:21<br>68:4<br>72:13<br>77:1,7<br>79:14<br>81:2 83:4<br>88:7 90:4<br>91:8<br>93:13,24<br>94:2,10,<br>18 109:1<br>112:8<br>113:9,10,<br>13 134:17<br>139:20,22<br>140:8,9<br>141:18,25<br>143:7,23<br>154:10<br>156:2<br>158:6<br>164:7,17<br>165:9<br>166:7<br>167:20 |



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 198 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                 Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

intoxicat
ion
  161:3
introduce
  66:21
  80:17
  90:2
introduce
d
  82:25
introducing
  88:10
  90:4
  112:25
introduct
ion
  12:6 81:2
  119:18,19
intrusion
  81:2
investiga
ted
  55:8
  124:8
  132:6
investiga
ting
  123:6,7,
  11 124:1
  128:1
investiga
tion
  27:5 50:7
  123:17,20
  124:25
  128:21
  134:15
  146:14
involve
  73:6
involved
  15:1
  47:20

57:23
124:1,18
127:11
128:25
138:22
140:23
150:19
161:6
168:12
involveme
nt
  15:5
  27:25
involves
  57:16,17
iron
  54:19
Isaiah
  26:9
issue
  21:25
  101:20
issues
  90:24
  114:17
it
  6:19 7:23
  9:2 10:5,
  12 11:22
  13:12
  15:4,7
  18:9
  19:3,24,
  25 20:8,
  16 21:11,
  24,25
  22:18
  27:6,7,
  11,13
  29:8
  30:22
  31:11,13
  32:3
  34:11,13
  35:2,13
  36:3,13,

17 38:12,
24,25
39:7
40:18
41:10
42:19,20,
21 43:15,
23 44:2,
10,12,13,
16,21
45:13,22,
23 46:17,
19,20,24
47:4,5,7,
12,13,16,
17,21,23
48:15,18,
21,22,23
49:3,4,24
50:1,3,
10,16,23
52:3,17,
18,25
53:4
54:9,10,
13,14,16,
17,24
55:5,11,
24 56:5,
13,14,17,
23,24
57:16,17,
24 58:15,
22,23
59:8,13,
25 60:19
61:13
62:4,11,
15,22,24,
25 63:1,
2,4,5
64:8,12,
20 65:11,
21,24
66:1,2,21
68:22,23
69:8
70:5,10,
14,22,24
71:1,6,7,

11,23,24
73:4,17
76:10,12,
13,19,25
77:2,8,25
78:4,15,
19,23
79:5,17,
22 81:8,
14,15
82:2,10,
13,21
85:1,11,
17 86:12,
16 87:3,
4,7,18,
20,22
88:7,16
89:5,20,
23 90:1
91:7,10,
11,13,16
92:6,7,9,
18 93:3,
7,11,13,
25 94:2,
4,5,11,
12,17,23
95:11,14,
21,25
96:10,18
97:9,23,
24 98:19
99:5,9,10
100:19,21
101:7,8,
25 102:3,
4,11,21
103:2,4,
8,15,17,
18 104:1,
4,8,13,
15,18
105:2
106:1,3,
10,12,15
107:10
108:2,4,
8,10,24
109:1,7,

16 110:4,
24 111:1,
3 112:2,
4,15,25
113:5,11,
13,17
114:20
115:3,6,
22,25
116:14,
15,24
117:3,4,
5,6,10
119:17
121:2,10,
18 122:6,
24 123:6,
12,17
124:7,9,
18,24
125:15
126:8,10,
17 127:25
128:11,
16,18
130:9,10,
15,18
131:3,5,
24 132:1
134:4,12,
15,18
135:7
136:4,15,
16,25
137:12,
13,15
138:15,25
139:1,8
140:6,13,
17,20
141:3,8,
17,25
143:19,20
144:17,24
145:12,15
146:22,25
148:24
149:21
151:21
152:5

153:8,25
154:18,21
155:2,4,
5,6,7,11,
12,23
156:22,
23,25
157:1,3,
6,9,21
158:6
160:1,7,
12,24,25
161:20
162:3
163:1,3,
18,20
165:16
166:4
167:2,4,
5,8,16,
17,19
168:2,3,
15,19
169:15

it's
  5:16 6:10
  8:14
  11:13
  14:21
  17:21
  28:6
  29:3,9,18
  30:21
  31:20,23
  33:9,16
  34:8,20
  36:1
  38:12
  41:14,15
  43:14,18
  45:10,11,
  12 47:6,
  8,23,24
  48:23
  50:25
  52:18
  53:1 57:8
  58:16
  61:16

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 199 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

62:12
63:9
64:13
65:4,6
66:8
68:20,21,
22 69:1,
6,7 72:15
73:24
78:12
79:9
84:25
85:23
87:3,9
88:20
89:4,17
90:5,10
92:15,18,
19,21
94:16,22
96:19
98:7
103:3
104:25
105:11
108:6
112:11,18
113:2
114:10
116:6,25
117:4
119:9
120:9
121:5
134:24
136:3
138:14
140:16
142:9
145:22,23
146:11
157:20
158:5
162:11,
18,20,22
163:25
164:1,2,
13 167:5
168:16
169:1

**its**
5:24
32:18
35:12
65:2
69:18
74:9
84:15
97:20
104:22
107:11
110:19
111:4,20
117:14

**itself**
50:25
55:9
68:18
99:22
100:1
108:23
123:2
126:15
132:11
145:10,13
146:21
148:10

---

**J**

**Jacob**
54:2

**Jake**
14:23
104:5
111:9

**James**
25:8
69:15
127:17

**January**
6:1 15:7
21:20
35:3 51:3
53:16
80:23
88:22

101:17
110:5
124:17
155:7

**Jasmine**
13:8 26:9
124:19
125:5
128:1
130:1,5
132:21,22

**Jimmy**
13:4

**job**
8:23
26:22
35:23
151:22

**Joey**
21:6,19
22:7

**join**
18:13

**joined**
18:15,24
19:5

**jokingly**
160:17

**judge**
6:18,24
9:20 10:1
38:5

**July**
18:2,15
21:2

**jump**
143:4
145:23

**June**
20:23

**jury**
6:18,25
27:1
84:25

96:13,25

**just**
7:16 8:16
10:15
14:21
15:14,18,
20 16:11
18:20
19:2,24
23:3
26:18
30:1
34:11
35:10
36:1,6
37:17
38:3,9
39:6
40:19
42:21
43:15
44:14,16,
19 46:19
47:6,22,
24 50:5
52:16
53:20
56:14
58:16
60:25
61:14
65:7,10
66:16
68:18,20
69:23
70:10,19,
22 71:24
73:21
76:12
77:21
85:23
89:12
91:5 93:7
94:12
96:19
99:10,25
103:5
104:25
108:7,12

113:5
114:7
123:3
124:20
128:11
129:18
132:18
134:17
135:20
136:8
137:11
138:12,19
143:4
150:15
152:16,17
162:11,
18,22
164:10
167:14
169:1,5
170:9

**justice**
18:7 19:9

---

**K**

---

**keep**
68:23
81:18
112:4
161:21

**keeping**
51:19

**Kentucky**
134:25
135:1

**Kerry**
15:2
23:5,11

**kicked**
137:15

**kicking**
137:10

**kid**
168:19

**kidnapping**
27:16

**kids**
111:17
167:11

**killed**
58:21
131:22

**kind**
33:9
52:17
54:22
72:10
120:18
130:13
133:23
140:8
167:17

**kinds**
61:21,24
68:17

**King**
13:8 26:9
124:19
125:5,16
126:4,21
128:1,25
130:1,5
132:21,22

**King's**
129:14

**knew**
16:10
26:2 83:8
96:22
111:8
132:3
141:12
150:11
168:3

**knock**
33:10
35:12,18
38:13
39:1,4,



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 200 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 15,16,24 | knock- | 24,25 | 169:2 | 20:19 | 157:22 |
| 40:7,9,14 | and- | 127:2,5, | | 33:1 89:2 | lawful |
| 41:6 | announce | 16 | language | 146:4 | 40:21 |
| 42:5,18 | 37:22 | 128:10,18 | 46:15 | 155:3,13 | laws |
| 43:9,20 | | 129:21 | 47:3 48:6 | | 29:25 |
| 46:8,12 | knocked | 132:18 | 49:21 | Latham | 76:12 |
| 47:4,9 | 78:21 | 134:14,16 | 50:17,24 | 14:25 | 78:13 |
| 49:5,10 | knocks | 136:2,14 | 51:20 | 69:12 | 156:7 |
| 50:12,18 | 135:5 | 137:10 | 89:5 | 70:5,6,7 | lawsuit |
| 53:11 | know | 141:3,11, | 117:10 | 71:5 | 5:23 |
| 66:3,6,25 | 9:5 16:5, | 15 142:21 | 133:22 | Latham's | Laying |
| 72:14,18 | 8,25 | 145:18 | 155:25 | 70:13 | 96:7,8 |
| 73:7,19, | 18:20 | 147:8 | large | Latia | layout |
| 25 76:5 | 21:24 | 148:24 | 54:15 | 5:22 | 150:2 |
| 85:4 86:8 | 23:4,17, | 150:4 | Las | law | laypeople |
| 87:23 | 22 25:12, | 152:15, | 5:18,23 | 6:18 | 64:5 |
| 88:24 | 15 31:4,8 | 17,19,22 | 6:4 11:12 | 30:13,22 | 65:25 |
| 89:14,21 | 33:2 | 153:5,7 | 15:10 | 31:6,8,9 | layperson |
| 98:24 | 36:5,17 | 155:14 | 17:3,7 | 32:22,23, | 34:11 |
| 99:4,23 | 37:3 | 157:8,19, | 18:13,15 | 24 33:12 | lead |
| 100:12 | 40:20 | 20 158:9 | 21:23 | 36:21 | 109:16 |
| 101:21,22 | 41:5,16 | 159:4,16 | 26:22 | 37:5 | leader |
| 102:1,4, | 44:13 | 161:3 | 34:9 | 40:10,19 | 24:10 |
| 8,11,13, | 48:4 | 165:21 | 46:23 | 42:17 | 54:1 59:4 |
| 15,16,18, | 52:25 | 167:19 | 47:16,25 | 43:2,7, | 86:20 |
| 19,23 | 54:16,18 | 169:6,21 | 52:23 | 20,21,22 | 103:16 |
| 103:1,7, | 60:5 | knowing | 53:1,7 | 46:23 | 109:14 |
| 9,13,24 | 64:12 | 69:24 | 98:6 | 47:24 | 129:5,6, |
| 104:1,4, | 69:3,16 | knowledge | 120:4 | 49:1 | 7,10 |
| 7,9,12, | 70:11,15 | 21:10 | 121:1 | 57:1,5 | 130:3 |
| 14,19,23, | 78:9,10 | 26:11 | 143:12 | 73:9,10 | 152:1,12 |
| 25 105:1, | 92:2 93:7 | 28:10 | 170:21 | 74:1 | leaders |
| 3,7 | 94:10 | 35:4 | last | 75:5,6 | 29:4,5 |
| 115:15 | 95:17 | 70:16 | 10:22 | 79:23 | 112:23 |
| 118:15 | 96:8 | 132:9 | 11:1 | 82:8 | leadership |
| 125:9 | 98:20,21 | 150:5 | 17:19 | 86:18 | 29:2 |
| 127:10 | 99:10 | known | 75:25 | 88:9 | leading |
| 133:15, | 103:20 | 25:3,5 | 136:9,20 | 102:11, | 151:21 |
| 18,25 | 104:16 | 124:13 | late | 20,21,22 | learn |
| 134:14 | 106:1 | Kubla | 21:18 | 103:5 | 14:22 |
| 135:6 | 115:6,23 | 15:2 | 167:8 | 112:16 | learning |
| 136:17 | 116:16, | 23:5,11 | late-at- | 114:20 | 73:8 |
| 137:3 | 19,23 | 59:21 | night | 116:20,21 | |
| 138:9,12 | 117:24 | | 167:18 | 121:8 | |
| 153:2,20 | 118:6,7, | | later | 135:3,10 | |
| 154:5 | 9,10,11 | **L** | 7:14,20 | 137:22,23 | |
| 156:2,5,8 | 119:5 | | 10:1 | 138:1 | |
| 162:25 | 124:13 | labeled | | 144:13 | |
| | 126:5,12, | | | 146:10 | |



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 201 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

100:8

**least**
24:23
27:1
32:4,6,9,
10 35:22
49:25
56:23
57:5,9
72:5 75:2
89:19
96:3
103:21
117:6
118:16
122:7
141:5,6
146:7,8
156:17
159:15
169:16

**leave**
22:23
117:2

**leaves**
56:5
117:5

**leaving**
19:5

**led**
28:6

**left**
7:3 20:10
23:17
28:21
95:6
103:12

**legal**
11:11
39:6
50:15
82:8
133:21
142:4
154:9
160:3

**legally**
10:11

**less**
75:5
84:25
97:1,15
116:16
117:4,5,
23 118:4
145:16
147:2,4,
13

**lessen**
167:10

**lesson**
28:14,15
37:7 75:9
99:6
115:18

**let**
10:15
31:11
78:18,19
82:5
98:20
126:6
136:13
150:22
169:6

**let's**
14:5 17:1
18:3
32:16
82:10
120:22
133:5
139:5
147:22

**lettering**
162:1,3,5
163:8

**level**
58:2,3
96:12
97:8
112:2,11

130:16

**levels**
96:20
161:1,3

**leverage**
112:20

**lies**
13:12

**lieutenant**
5:18 13:1
14:13
17:6,21
18:1
20:2,22,
25 21:2,
6,7,11,
12,14
22:7,17
25:23
109:23
113:1
133:13
151:25
152:6
153:13
170:20

**life**
18:11
142:22

**light**
62:13
63:3,7
135:8

**lights**
164:1,8,
10,21

**like**
7:12
11:12
19:3 20:4
27:7
29:12,25
32:2 39:5
47:22
52:23

55:9 61:9
63:20
64:19
65:10,24,
25 66:11
69:2,4,5,
6 73:14
90:9
95:24
100:20
104:11
116:22
117:19
123:16
125:7
126:25
131:19
142:24
143:1
145:20,22
149:10
151:21
155:9
159:16
160:9,18
163:21
164:13
170:10

**likelihood**
131:5,17

**likely**
59:15
60:7 79:3
82:13
123:2
142:15
143:1
165:16
166:4,17

**limit**
112:24
135:10
140:5

**line**
22:25
149:1

**lines**
53:6

**list**
11:13
12:3,8

**listed**
141:23

**listening**
166:19

**literally**
77:18
102:15
143:16

**litigation**
15:17
86:5 87:3
98:8,23
99:15
110:19
114:11
148:16
153:17,23
154:8,12
157:24
159:22
169:7
170:1

**little**
9:16 17:2
18:3,21
23:3 33:1
36:23
37:17
38:3 63:4
69:4
115:22
164:13

**lived**
18:10

**local**
36:4

**located**
25:15

**location**
53:21

**long**
12:5
17:16,20,
25 25:5
36:18
53:19
62:6,15
73:24
80:12
82:2,16
83:8
85:3,11
102:5,13
105:3
106:14
107:20
113:23
116:24
120:2,18
126:12
141:25
143:17

**longer**
23:16
24:20
62:22
63:2,4,10
142:16
157:6

**look**
9:25 10:1
36:24
47:20,23
48:2
62:12
75:8
76:11
81:12
85:1

**looking**
44:10
45:5
49:14
53:22
62:10,14
91:3



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 202 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

115:17
150:10

**lookouts**
149:24,25

**lot**
135:2
149:25
155:22

**loud**
8:18

**low-level**
61:1 81:1

**lowest**
57:25

**LVMPD1490**
98:8

**LVMPD4440**
169:2

---

**M**

**made**
7:6 22:2
46:25
53:17
59:9,23
83:4
109:10
129:12
148:4
157:16
165:23

**magical**
53:5

**main**
14:24
15:1 41:2
54:22

**mainly**
162:18

**major**
20:18
21:1
22:11,13,

15,16
35:13

**make**
7:10,23
9:13,23
10:2,12
28:14
29:18
45:23
48:7 50:1
52:22
55:22
56:7 58:8
59:7,24
60:17
63:25
67:7,15
68:16
75:23
76:13
78:1
80:19
82:4,14
86:25
90:5,7
102:25
110:25
119:22
132:18
168:17

**making**
34:14
38:14
39:8,12
40:20
45:18
59:11
67:10
73:24
74:20
76:8
103:16
122:13
140:9
146:18
165:4
166:12

**man**

112:7

**mandates**
146:10

**mandatory**
31:21,23

**manner**
11:16
121:3

**manual**
13:11
34:20
66:23
75:8
81:10
90:13
98:7,10
100:11,
13,19
115:18
119:19
122:13
130:17
140:24
141:4,19
142:9
152:21
153:7
154:15,19
155:14,21
156:3

**manually**
67:6,13
80:19
82:4 83:1
137:4

**manuals**
13:8,10

**manufactu
rer**
68:24
93:1
97:7,23

**manufactu
rer's**
97:17,19

**many**
10:6
26:25
44:9
73:23
74:3,19
76:2
79:22
88:6
95:10
127:11
144:13
146:15
149:23
164:7,10,
16 167:14

**maps**
56:9

**March**
155:19

**marijuana**
159:25
160:3,8,
10,14
161:11

**Marine**
18:25
19:1,4,5,
12

**Marines**
19:15

**mark**
168:20

**marked**
11:22
98:1
114:3

**marks**
95:24

**materials**
37:11

**matter**
6:25
26:14
63:5

105:11
147:14

**matters**
26:9

**maybe**
80:12
120:2,3
131:15
141:14

**me**
7:25 8:1
9:7,10
12:17,18
15:3
17:12
19:25
27:9
29:21
30:5
31:11
35:11,21
36:12
37:2
39:6,14,
23 41:12
53:14
68:16
72:5
78:18,19
82:5
91:20
93:17
99:21
102:17
114:14
115:1
116:9
122:3
136:13,
15,18,23
144:13,18
154:17
169:6,10,
13

**mean**
8:9,17
12:15
15:2,20

22:11
31:25
32:3
44:18,21
45:9
47:23
52:2
57:24
62:11
63:6 75:4
77:11
78:9,10
79:10
112:6
121:18
122:3
131:15
155:23
163:22
169:19

**meaning**
39:20
145:9

**meaningfu
l**
7:15

**means**
61:5

**meant**
44:16
55:16,17
129:21,23

**measure**
122:16

**measured**
118:21

**medical**
11:3
127:5

**medicatio
ns**
10:25

**meet**
31:7,8
32:4,6



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

135:25

**Melanie**
54:11
55:13,20
127:19,20
148:25
151:16
153:3

**member**
15:23

**members**
22:25
101:4
117:14
125:8

**memory**
11:6
99:17

**mention**
100:19
102:12

**mentioned**
34:19,22,
25 41:22
60:5
74:23
79:24
82:6
105:22
106:19
144:10

**mentioning**
116:21

**mentions**
37:12
100:12

**merely**
124:7

**merit**
128:13

**met**
12:20

**method**
47:13

**methods**
141:22

**Metro**
14:17
15:23
17:3
18:14,15,
18 19:6,
8,11,14,
18,20
25:21
26:23
27:4
31:15
32:18
35:4,11,
23 39:25
40:23
42:5
44:19
46:11,18
47:6 49:4
51:13
53:10
56:1,4,5
57:19
59:13
66:9 73:1
75:24
76:1
77:20
79:2
84:15
85:6,20
86:5
87:2,25
88:12
91:6
96:13,25
97:19
101:3
104:8,21
106:5
107:7,15
110:19
111:19,24
117:11,13

120:22
128:2
134:7
135:15,17
137:21
142:4
143:6,25
145:9
146:6
147:12,
15,23,25
148:3,16
149:11,17
150:25
151:5,8
153:16,22
154:7,12
157:16,23
159:1,11
161:10,15
165:16
166:15,
22,25
168:5
169:7,17,
20 170:1

**Metro's**
30:6,24
32:8
43:18
44:6
55:24
56:14
66:2
70:16
72:17
76:21
82:16
88:19,20,
23 89:14,
20,23
94:7,8,14
101:25
102:7,17
103:8
110:4,18
111:3
113:2
114:1

118:20,24
120:9,23
121:5
122:17,23
123:12
133:15,17
159:21
167:2

**Metropoli**
**tan**
5:18,23
6:4 11:12
17:7
21:23
46:24
47:16,19
52:23
53:2,8
98:7
120:4
121:1
170:21

**MGM**
19:13

**middle**
167:16

**military**
19:16

**Milton**
15:25
16:2,5

**mimic**
64:25
65:3,22

**mimicking**
65:4

**mind**
104:16
161:23

**minimal**
84:11

**minimum**
117:12

**minus**

142:18,19
143:21

**minute**
115:25
116:14,
20,22
117:2,18
118:5
157:18

**minutes**
74:3 76:3
100:22
113:23

**mission**
88:8

**missions**
22:4

**misspoken**
55:15

**mistakes**
148:3,8

**mitigate**
113:8

**mitigating**
131:4,10,
12

**Mm-hmm**
119:25

**model**
68:16

**modified**
49:19
138:18

**moment**
133:6
139:15

**momentaril**
**y**
159:13

**money**
127:24

**monitor**
132:2
150:11

**monitoring**
132:2

**month**
155:11

**months**
19:13
24:16
150:16

**more**
9:14 25:6
27:2
43:21,23
44:22
49:17
57:15,16
59:14
60:7
61:16
63:8
83:20
92:19,20
96:20
112:10,19
128:11
132:22
135:22
138:12,19
145:16
148:8
149:13
151:4
162:5
163:7

**more-**
**detailed**
100:20

**morning**
5:12 6:3
67:20
69:11
80:23
82:12
122:18

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 204 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

143:2
150:23
166:7,17
167:9

**most**
78:20
94:23
116:1,15,
22 117:3
138:16,17
157:18
164:9
165:16
166:4

**mostly**
22:17

**move**
29:14
133:25

**moved**
20:15,24,
25 73:21
74:17,18

**movement**
130:14

**movements**
44:13

**moving**
138:11
144:15

**Mr**
5:11
9:13,22
10:11,15
12:1,25
13:14,20
14:3,5,12
15:25
16:1,5,
19,20,22,
24 26:14
31:1,10
32:12,15
35:15,20,
24 36:8,
16,22

40:16,22
43:12,17
47:10
48:9,12,
15,17
49:6 50:4
51:3,17,
23 53:16
57:7,10
58:20,24,
25 59:10,
12,16,22
60:2,4,6,
9,11,13,
18,21
62:17,21
64:7,10
65:14,16,
23 67:1
68:6
71:9,20
72:7,9,12
75:13,16,
22 76:23
77:15
79:7,18
80:6,14,
21 81:7,
11 82:11
83:17
84:1
85:7,15
86:9,24
87:5,11
90:16,19
92:2
93:18,20
94:6,15
95:1,2,5,
9 96:1,9,
15,17,24
97:2,4,
13,16,21,
25 98:5,
14,16
99:24
100:2
103:19
106:9,17
107:17

108:1
110:21,
24,25
111:1,2
114:6,18,
24 116:3,
10
117:15,21
118:2
124:16
125:7
127:14,18
128:4,9,
14,22,23
129:6,8,
11,15,18,
20,21,23
130:3,4
131:21,24
133:5,12
134:8
144:1,12
147:5,6,
16,21
148:5,6,
11
151:13,19
152:10,14
157:25
158:2,10,
11,24
159:9,22
161:11,
19,24
164:17,24
165:1,7,
11,15,18,
19 166:1
168:24
170:5,7,
8,10,12,
15,16

**Ms**
125:16
126:4,21
129:14

**much**
32:10
57:15,16

96:20
130:21
146:17
162:5

**multi-
family**
166:8

**multiple**
13:16
164:21
165:9

**my**
5:21 7:3,
5 8:1
9:6,14
12:7 17:6
24:3
25:23
27:10
36:6
53:21
74:7
81:14
87:25
91:3
115:17
120:17
124:22
137:10
144:13
168:19
169:20
170:6

**myself**
23:17
29:3,13

---

**N**

---

**naked**
143:2

**name**
5:13,14,
21 15:23
16:18
21:6 48:5

70:14
132:16

**named**
93:22
124:18
125:18
132:1

**names**
93:8

**nanograms**
160:18
161:4

**narcotics**
20:20,21
73:14

**national**
29:23
30:15
47:13,14
49:14
134:21,24

**naturally**
63:3

**nature**
7:17
83:10
93:11

**near**
62:3

**necessarily**
103:9
143:3

**necessary**
44:7

**need**
8:4 30:6,
9,12
75:10
112:8
121:11
145:16
146:7
155:22

169:21
170:13

**needed**
45:19
57:25
102:23
149:14
156:10

**needs**
10:1
154:20

**neighboring**
55:7

**Nellis**
13:4
54:22
55:10
106:3,13
108:9,13
120:6
166:9

**Nevada**
18:7,10
19:11
30:9,12,
17 31:13
32:10
36:21
42:17
43:2 57:1
73:10
114:8,10
115:3,4,
7,14,21
117:22
135:10
157:17

**never**
23:2
53:20
76:1
78:11
103:4
116:2,11
130:20
135:16

Case 2:24-cv-00074-APG-NJK   Document 57-11   Filed 05/16/25   Page 205 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

136:12,18
146:22
150:8,14,
21 161:20
**new**
28:15,16
29:6,7,
10,11
46:22
47:1,2
50:1,2
152:19
154:22,23
155:19
**newer**
73:5
**next**
49:2
58:10
70:13
92:15,18
113:19
**NFDD**
60:25
61:1
64:22
66:22
67:10
68:21
80:18
82:3 91:9
94:9
96:14
97:12
109:18,
19,21
110:14
113:3
157:24
158:5,13
**NFDDS**
60:24
61:21,24
66:3,14,
16 67:16
68:14
89:20,24

92:13,22
93:16
108:20,
22,25
109:1,5,
12 110:4
111:4,8,
20 112:1,
14 158:23
159:9,18
163:21
164:2
**night**
56:16
63:7,10
82:22
167:8
**nine**
64:15,16,
22,24
65:1,2
67:3
68:15,25
69:1,11,
20,23,25
70:8,14,
17,25
71:2,5,8,
13,15,19,
20,25
72:6
109:2
159:19
**Ninth**
33:25
93:5,10
141:23
146:21,24
147:3
**no**
6:9 8:6,
9,17
10:23
11:2
15:5,19
22:3 23:2
24:19
26:10

27:24
36:9,14
37:14
43:19
45:1
53:5,13
66:5 68:4
70:22
71:12
76:10
78:22
79:20,21
81:19
83:15
91:10,22
99:20
101:12,
14,24
102:10,12
103:24
104:9,24
105:11
108:6,17
113:7,22
114:2
122:4
126:3,19,
20
132:12,14
133:25
134:14
135:5,6,
16,20
136:16
137:3
138:11,23
139:2,8
140:14
144:8
149:17
151:7
152:11
153:18
154:14
156:1,9
157:4,14
159:3,12
160:12,20
161:5
165:21

167:1,22
168:1
170:3,18
**no-knock**
37:20,25
38:8,11,
20,23,24
48:8,11,
19,24
51:21
134:3,7,
10 135:3,
7,11,14,
16,22
136:2,10,
12,15,18,
21 137:1,
12 138:5
139:2,7,
10 155:16
**no-knocks**
77:2
**nobody**
44:14,16
91:25
92:8
94:20
**noise**
60:22
64:1,3,9
65:13
66:11
**noises**
44:12
64:6
**none**
59:5
**nonverbal**
8:11
**noon**
167:4
**North**
34:8
143:12

**Northeast**
19:23
**Northwest**
20:7
**not**
10:7,11
11:7,18
13:23,25
15:9,12
16:4,23
22:10,23
23:15,16,
17 25:10,
15 26:10,
16 27:2,4
28:9,20
31:7 34:4
35:5
36:1,7
37:25
38:13,23,
24 39:17
44:11,25
45:4 47:8
49:1,8
50:16,25
52:6
53:15,18
54:12
55:5
56:1,24
57:8,21
58:16
59:1,15,
20 60:7
62:11
63:10
65:1,7,21
67:9
70:21
72:24
73:9 74:7
75:7 79:3
83:23
84:13
85:3,13
86:7,15,
16,21
87:14,23

88:3 90:5
92:2,5
93:22,24
94:16
97:15
100:4
101:25
102:16,17
103:3,9
104:1,5,
6,14
106:6,10,
12,20
108:8,14
109:18
110:7,9
111:5,10,
23 112:2
114:22
118:1,7,
21 120:20
123:20
124:2,13,
14,23
125:9,16,
18 126:9
128:7
130:10
131:9
132:16
135:19
136:3,7
138:16,21
139:3,15
142:20
144:2,6,
14,20
145:10
147:2
149:1
150:4,12,
25 151:10
152:7
153:9,14,
24 154:3,
12
156:14,23
158:9
159:5
162:23



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 206 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

163:24
164:2
166:18
167:15
168:2,3,
12 169:9,
17

**note**
115:22
144:3

**noted**
151:3

**notes**
91:3
116:7

**nothing**
76:10
77:18,23
82:15
113:16
146:9
155:24
168:1

**notice**
11:22
42:24

**noticed**
75:13

**notified**
12:18

**November**
20:12

**now**
14:14
15:24
20:17
24:10
25:14,16,
24 69:24
70:11
73:21
86:5
87:2,3,25
88:12
89:13

91:18
96:21
97:25
103:19
113:13
118:15
123:10
124:15
133:14
138:5,15
139:9,22,
24 147:8
155:12,16
168:6

**now-sergeant**
54:2

**NRS**
42:12,14

**number**
57:21
84:24
99:14,18
105:9,16,
22,24
106:7,12,
19
107:14,
21,25
108:8,9
164:19
165:3

**numerous**
12:22
45:15
47:15
163:9

————————

**O**

**O'DANIEL**
13:1
21:11,14
25:23
54:11
55:14,20
109:23

113:1
127:19,20
151:16,25
152:6
153:3

**O'Daniel's**
148:25
153:13

**oath**
6:15,17

**objection**
9:13,23
10:7 31:1
32:12
35:15,24
36:16
40:16
43:12
47:10
48:12
49:6
51:17
57:7
58:24
59:16
60:9,13
62:17
64:7
65:16
76:23
79:7
80:14
81:7
83:17
85:7 86:9
87:5
90:16
93:20
94:15
95:5
96:17
97:4,21
99:24
106:9
107:17
110:21
114:18

117:15
127:14
128:4,14
129:15
147:5,16
148:6
151:13
152:10
158:2
161:19
165:1,11,
19

**objections**
9:15,21
10:15,18

**obligated**
10:12

**obligates**
6:19

**observations**
144:11,19

**obstructions**
90:9

**obtain**
18:8

**obvious**
77:5

**obviously**
15:2
59:19
79:13
140:13

**occasion**
22:12
27:10,18,
20

**occasions**
27:8

**occupant**
57:22
92:3

93:21
94:24
125:21

**occupants**
39:11
40:25
52:11
58:10
78:17
82:1
91:14
109:3
111:6
112:18
118:10
142:20
145:2
166:5
167:17

**occupied**
93:13
94:3

**occurred**
6:1 37:2
50:7
59:15,25
60:3 72:6
81:4
89:12
98:18
124:17,20
135:14
141:6
165:8

**October**
17:18

**of**
5:24,25
6:1,4,15,
17,18,20
7:5,8,17,
25 8:1,11
9:1,14
11:3,10,
13,20
12:2,3,8,
10 13:18,

19 14:17
15:6,7
16:13
17:4,18
18:2,3,5,
7,15
19:10
20:1,19,
23,25
21:2,3,
20,22
22:6,13,
20,24
23:4,12,
21 24:3,
13,24
26:11,13,
16,19,22
27:1,19
28:4,12,
13,18
29:3,6,8,
10,11,16
31:6,14
32:17
33:4,9,
10,13,14,
25 34:1,
16 35:3
36:15,18
37:2,5,6,
8,18
38:19
39:5,7,
14,15,18,
24,25
40:5,19,
23,24
41:5,11,
13,14,19,
23 42:1,
2,15,23,
24 43:7,
24 44:5,
15,17,24
45:1,10,
17,23
46:9,15,
16 47:2,
7,13,17,

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 207 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 23,25 | 24 82:2, | 115:2,3, | 21,22 | 20,22 | 59:21 |
| 49:11,15, | 6,12,21 | 17,21 | 143:1,2, | **off** | 64:13,14, |
| 21 50:5, | 83:4,7,10 | 116:21 | 4,8,10, | 14:6,8 | 20,21 |
| 7,15,19, | 84:2,9, | 117:14 | 11,14,20, | 62:4,15, | 69:10,12, |
| 23,24 | 18,21,24 | 118:4,17, | 21,22 | 23,24,25 | 13,15,17 |
| 51:4,20 | 85:4,19 | 21,22,23, | 144:2,4, | 63:16 | 70:5,7 |
| 52:5,6,7, | 86:6,7, | 25 119:3, | 9,20,21, | 68:22 | 83:7 84:6 |
| 8,17,21 | 13,19 | 5,8,9,10, | 25 145:8, | 69:8,25 | 91:24 |
| 53:23,24 | 88:3,6, | 11,14,19 | 9,10,15, | 70:10,22 | 94:18 |
| 54:8,22 | 14,16,23 | 120:4,10, | 20,24,25 | 71:1,2 | 97:10 |
| 55:4,7,10 | 89:4,18, | 12,14,15, | 146:1,8, | 74:13 | 113:16 |
| 56:9 | 24 90:1, | 18 121:1, | 12,15,19, | 75:18 | 114:22 |
| 57:11,16, | 6,13,17, | 8,9,12, | 20,21,23 | 79:21 | 160:6 |
| 25 58:2, | 23 91:11, | 13,15,17, | 147:23 | 82:2 90:6 | 166:15 |
| 3,12 | 15,16,19 | 19,24 | 148:17, | 93:7 96:4 | |
| 59:6,7,14 | 92:12,24 | 122:11, | 22,23,25 | 102:11 | **officer's** |
| 60:15 | 93:11,12, | 12,17,18, | 149:11,25 | 106:2 | 44:2 |
| 61:1,3, | 24 94:2, | 21 123:25 | 150:2,23 | 126:13 | 144:10,19 |
| 16,22,24, | 4,23 | 124:12, | 151:1,5, | 133:5,8 | |
| 25 62:3, | 95:3,6, | 17,22,24 | 8,10,20 | 144:21 | **officers** |
| 12 63:16, | 14,19,20, | 125:1,8, | 152:11, | 147:8 | 5:24 |
| 23 64:17 | 22,23,25 | 10,14,15, | 12,13,20, | 157:21 | 14:18 |
| 65:2,6 | 96:4,9, | 21 126:8 | 23,25 | 159:18 | 28:1,9 |
| 66:3,6, | 11,15 | 127:1,3, | 153:13,19 | 170:23 | 30:23 |
| 15,19 | 97:23 | 7,10,11, | 154:4,5, | | 32:18 |
| 67:5,13, | 98:9,21 | 24 128:6, | 21,22,25 | **offenders** | 33:15 |
| 20,23 | 99:2,7,8, | 7,24 | 155:14, | 20:17 | 34:18 |
| 68:5,13, | 12,17 | 129:11,19 | 19,22 | | 35:12 |
| 17 69:23 | 100:1,8, | 130:2,5, | 156:19,23 | **offered** | 39:5,9 |
| 70:1,8, | 11,17,18, | 9,13,14, | 157:11, | 151:16 | 40:4,6,25 |
| 12,21,23 | 22 101:9 | 22 131:5, | 21,22 | 153:11 | 41:6 43:3 |
| 71:24 | 102:5,12 | 18,25 | 158:5,12, | | 46:8 |
| 72:5,6, | 103:22 | 132:20, | 20 | **offhand** | 47:14 |
| 17,24 | 104:3,4, | 21,22,23 | 159:12,23 | 34:4 | 48:1 |
| 73:9,11, | 17,18 | 133:1,18, | 160:19,23 | 147:8 | 52:10 |
| 12,16 | 105:1,13, | 23,24 | 161:3 | | 57:23 |
| 74:5,14, | 24,25 | 134:5,13, | 162:1,22, | **office** | 58:9 |
| 16,22,25 | 106:3 | 15,19,24 | 23 163:1 | 12:21 | 59:11 |
| 75:24 | 108:9,16, | 135:2,3, | 164:6,8, | | 66:8 67:2 |
| 76:7,11, | 20,24 | 18,22,23 | 9,12,14, | **officer** | 68:7 |
| 13,16,18, | 109:15, | 136:1,16, | 16 165:3 | 13:2,17 | 71:16 |
| 20 77:5, | 18,19,21 | 20,24,25 | 166:3,14, | 14:23 | 72:15 |
| 12,20,22 | 110:3,8 | 137:6,14, | 16,22 | 18:23 | 74:4 75:1 |
| 78:7,14 | 111:4,7, | 17 138:1, | 167:6,7, | 19:23 | 76:3 |
| 79:2,5, | 8,12,20, | 13,17,21 | 12,16,17, | 20:6,7 | 78:16,21 |
| 10,24,25 | 25 112:3, | 139:5,7 | 20 168:8, | 23:13 | 82:11,17 |
| 80:3,11, | 8,19 | 140:4,8, | 10,15 | 24:8 | 83:13,15, |
| 23,24,25 | 113:5,17 | 11 141:24 | 169:17,21 | 25:9,17 | 20 84:2, |
| 81:1,3,5, | 114:15, | 142:10, | 170:3,6, | 27:17 | 17 91:22 |
| 9,10,18, | 16,23 | 11,14,15, | 10,12,13, | 38:7 41:8 | 99:4 |
| | | | | 42:21,25 | 101:13 |
| | | | | 44:7 | |



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 208 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 103:21 | 11:17,20 | 76:13,16 | 129:6,7 | 56:13 | 79:12 |
| 104:22 | 12:2,20 | 77:2,11, | 130:8,15 | 57:21 | **ones** |
| 113:23 | 13:12 | 13,20 | 132:2 | 62:3 | 12:4 15:1 |
| 114:9,16 | 14:11,14 | 78:12,13, | 133:11,13 | 74:22,23 | 141:21 |
| 115:14 | 15:6,7,10 | 14 79:9, | 134:17 | 76:21,25 | **only** |
| 116:3,10, | 16:9,11 | 11,22 | 137:6,10, | 77:2,8,21 | 28:9 |
| 16 117:7, | 17:6,18 | 80:2,23 | 19 138:4, | 78:2,11 | 48:10,19, |
| 14,24 | 18:15 | 81:6 | 20 139:20 | 79:2,6, | 24 56:2 |
| 118:16 | 19:14 | 82:11,16, | 140:11,15 | 14,16,24 | 57:22 |
| 128:2,25 | 22:4,8, | 20,22 | 145:13 | 80:12 | 77:9 |
| 136:24 | 12,13 | 83:7,22, | 146:11,13 | 83:23 | 79:16 |
| 139:13 | 23:7,14, | 23,24 | 148:4 | 84:8 90:4 | 84:17 |
| 140:6 | 16,19,24 | 84:2,6 | 150:2,6, | 98:12,13, | 98:23 |
| 141:25 | 24:8,10, | 85:10 | 8,22 | 17 103:24 | 100:7,10, |
| 142:8,16 | 21 25:9, | 86:3,12, | 151:24 | 107:2 | 25 106:19 |
| 144:22 | 18 28:16 | 16 87:9, | 152:1,18 | 109:1,20 | 126:24 |
| 146:7 | 32:19 | 14,19 | 153:1 | 115:25 | 129:12 |
| 154:3 | 34:15 | 88:8,15, | 157:12,25 | 116:14, | 131:3 |
| 158:1,25 | 35:12,13, | 21 90:24 | 159:19, | 19,22 | 134:3 |
| 159:3,6, | 18 36:14, | 91:21 | 20,22 | 117:2,18 | 138:5 |
| 10,15 | 24 39:17 | 92:15 | 160:13,14 | 118:4 | 139:10 |
| 161:14 | 40:13 | 93:3 | 161:4,14, | 125:25 | 158:4 |
| 162:7 | 45:14 | 94:2,11 | 18 162:2, | 127:3,7 | 163:24 |
| 163:4,23 | 46:16 | 95:3,7 | 3,16,17 | 129:11 | **onset** |
| 164:4,5, | 47:16 | 97:8 | 164:8,11, | 132:2 | 118:25 |
| 25 | 48:3,5, | 99:1,4,6 | 12,14 | 134:16 | **open** |
| 165:14, | 10,19,25 | 101:23 | 165:10, | 144:9,14 | 42:22 |
| 23,24 | 49:1 51:3 | 102:24 | 20,24 | 150:10 | 44:21 |
| **officers'** | 52:7 | 103:4 | 168:12 | 152:13 | 45:2 |
| 40:2 | 54:7,13, | 104:1,17, | 169:8,18, | 156:16 | 54:22 |
| **official** | 18 55:4, | 25 105:8 | 24 170:3 | 157:17 | 55:9 |
| 88:23 | 11,16,17, | 108:23 | **once** | 158:12 | 67:14 |
| 94:8 | 19 56:7, | 109:2,11, | 45:19 | 162:2 | 77:6 |
| 101:25 | 8,9,10,18 | 14 110:5, | 52:18 | 164:2 | 117:3 |
| 103:8 | 58:6 | 16 111:6, | 58:7 | 170:16 | **opened** |
| 166:25 | 59:24 | 8,15,22 | 59:9,23 | | 45:20,21 |
| **officially** | 60:18 | 112:2,3, | 67:14 | **one-** | 67:9 |
| | 61:3,18, | 14 113:5, | 70:8 77:3 | **bedroom** | **opening** |
| 18:2 | 19 64:12 | 17 114:2, | 91:16 | 54:25 | 44:11,15 |
| **older** | 66:20,22, | 8,17 | **one** | **one-** | 45:4 |
| 149:7 | 24 67:10, | 115:7,8, | 7:13,19 | **minute** | 66:15 |
| **on** | 23 69:23, | 14,24 | 9:1,14 | 116:11 | **operation** |
| 6:1,4,14 | 24 70:11, | 116:7,11 | 22:24 | **one-on-** | 93:19 |
| 7:18 | 19,23,24 | 117:10,17 | 34:1 37:8 | **one** | 103:23 |
| 8:13,18 | 71:22 | 118:3,20 | 38:19 | 153:4,8 | |
| 9:17,20, | 72:8 | 119:11, | 39:14,18, | **one-** | |
| 24 10:3 | 73:25 | 15,23 | 23 40:23 | **second** | |
| | 74:10,11, | 121:19 | 41:21 | 77:10 | |
| | 14 75:11, | 124:16,24 | 52:12 | | |
| | 12,21,24 | 128:19 | | | |

operations
  61:20

operator
  22:10
  23:2

operators
  28:7,8,12
  86:20
  118:6
  140:20
  145:14

opinion
  32:9
  50:16
  76:21

opportunity
  102:25
  163:2

opposed
  7:16 8:6
  85:20
  163:8

opposite
  10:8
  22:20

option
  54:4,5
  56:20,22,
  23 57:6
  61:2
  66:15
  108:25
  122:20
  133:25
  139:13,
  16,18,23
  140:1,17,
  23

options
  38:17
  54:1,3
  58:13,17
  109:15
  139:6,19

140:25
141:19

order
  135:10

organizat
ion
  30:20

originated
  116:24

other
  7:6 10:10
  13:13
  14:15
  15:18,19
  18:23
  23:1
  37:20,25
  47:19
  62:23
  63:19
  73:3,6
  74:22
  92:2 95:3
  99:2,12
  100:19
  123:3
  124:8
  130:21
  131:4
  132:4
  138:6,11
  139:6,19
  142:11
  143:22
  144:11,19
  145:7
  150:14
  151:17
  155:17,24
  162:3,15
  167:14

others
  28:22

otherwise
  10:14
  128:18

ought
  143:17

our
  13:12
  28:12
  30:22
  34:20
  38:13
  40:19
  48:25
  52:18
  54:15
  59:3 61:3
  65:21
  69:24
  75:8
  78:14
  90:12
  102:24
  107:21,22
  114:19
  115:11
  117:16
  119:11
  138:17
  140:5
  141:19
  162:16
  163:25
  165:5
  166:12
  169:25

out
  8:18
  23:21
  27:14
  44:10
  45:5
  49:18
  52:1,16
  53:4,11,
  15,18
  55:6,12,
  17 59:22
  61:8
  67:21
  80:7
  83:8,14
  86:21

106:14
107:21,
23,24
108:2
120:2
121:19
123:7
124:4
134:24
139:20
141:15
143:4,14
145:23
155:22
166:11
168:17

out-loud
  8:5

outer
  42:22

outside
  67:4
  85:20,23
  90:7,11
  93:3
  109:19
  118:6
  119:4
  159:6,20

outstandi
ng
  132:6,7

over
  14:20
  18:2
  21:2,5,19
  27:15
  57:19
  73:12
  93:25
  154:18

overhaul
  155:20

overlay
  56:9

overpress
ure
  63:22
  92:19,20
  96:20

oversee
  28:2

oversees
  30:22

overturn
  87:13

overturne
d
  87:8

overwhelm
  45:22

overwhelm
ing
  46:2,4,7
  48:7
  49:21
  50:25
  51:2,20
  57:18
  58:6,8
  61:13
  133:23
  162:21

overwhelm
ingly
  56:17

own
  84:15
  107:11
  110:20
  111:4,20
  117:14
  122:17

_____
    P
_____

p.m.
  133:8,11
  170:23,24

page
  6:14 12:2
  115:22
  116:7
  119:24
  155:21

pages
  98:21
  168:25
  169:9,18

pandering
  27:21

paragraph
  116:4

part
  22:13
  26:22
  28:4,24
  29:16
  42:23
  104:4
  152:11,20
  158:20
  163:1

particula
r
  32:19
  38:23
  64:11
  74:11
  81:24
  103:19,23
  109:11
  123:23
  124:5
  133:16
  155:24
  168:17

partners
  144:13

parts
  36:19

pass
  11:23

past



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 210 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

13:8 24:1

**patches**
162:10,15
163:23

**patrol**
19:21,23
20:6
23:24
25:13,14

**pattern**
142:22

**pause**
61:12

**PC**
22:18

**peace**
114:8
116:16
117:24

**peeking**
145:21

**penalty**
6:20

**people**
8:14 9:4
65:3,12
66:1,7
78:20
82:13
85:19
92:5
94:10
108:14
109:10
112:8
123:8
127:11
141:13,15
142:14,25
143:2,17
158:14
160:7,9,
14 162:16
163:11
166:17

**per**
145:9
160:18

**perceive**
161:17

**percent**
35:7

**perform**
118:16

**performed**
72:15
101:21
103:10,14
105:8
106:8,11
138:10
156:6

**period**
24:24
46:21
116:15
145:8
157:18

**perjury**
6:20

**permanent**
**ly**
127:4

**permissib**
**le**
113:6

**person**
66:12
92:13,14,
18,22
123:25
124:10
150:6
163:1,15,
18,20

**person's**
63:1

**personal**
12:20

14:17
15:5
16:13

**personall**
**y**
16:8,10
21:21
28:18

**persons**
39:25
115:10
168:10

**pertained**
50:10

**Peterson**
134:1

**phase**
59:7
104:18

**phases**
81:24

**phone**
12:22

**photograp**
**hic**
99:17

**photos**
95:23

**phrase**
31:11
43:3
105:25
106:3
139:8

**phrasing**
82:8

**physical**
101:22
102:1,8,
12,23
104:25
105:2,10
150:1

**physicall**
**y**
94:9
102:10
113:3
129:10
164:7

**pictures**
168:15

**piece**
29:8,10,
11

**pieces**
154:22

**pin**
69:5,7

**pistol-**
**rated**
84:12

**place**
22:21
47:6,12

**plaintiff**
84:23

**plan**
59:1
67:6,11,
20,25
69:20,23
70:12,13,
16,23
80:15
83:22
99:6
103:16
122:1,10
146:15

**planned**
80:11
104:1
119:17

**planning**
15:6
32:21,22
37:4 54:8

59:7
70:11
79:14
81:24
95:20
99:6
100:9,17
101:9
104:1,12,
18 111:7
122:21
146:7
148:18
151:24
152:3,5

**plans**
28:14,15
37:7
53:25
59:3 75:9
109:13
115:18

**played**
6:24

**please**
5:13 8:1
9:7 52:24
53:3

**point**
60:15,17
78:23
131:7
141:9
156:16,20

**police**
5:18,23
6:4
11:12,16,
20 14:17
15:21
16:9,10,
16 17:7
18:22
19:16
21:23
33:11
39:19

46:24
47:17,19
48:25
52:23
53:2,8
60:6 61:9
65:10
66:8
107:4
120:5,6
121:2
126:5
137:11
143:17
145:19,
22,23
150:21
159:17
160:6
163:13
164:3,17
170:21

**Police's**
98:7

**policies**
30:2,6,24
32:4,5,6,
8 72:14,
18 76:2
88:23
90:12
101:16
107:11
111:4,21
113:7
122:23
130:6,25
133:15,17
134:6
152:13
154:23
157:12

**policing**
47:22

**policy**
13:11,12
34:20
47:6,8



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 211 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

48:14,18,
25 49:1
50:8,18
74:3 75:1
81:20,21
86:12,18
87:10
89:2,20,
23 90:2
92:21
97:3,20
101:19,25
102:2,7,
10,17,24
103:8
104:21
105:6
107:16
108:19,22
110:22
111:14
112:3,9,
14
113:18,22
114:20
120:23
123:12
129:13
132:17,
20,23
133:22
134:2
135:18
138:4,6
141:18
148:17
149:1
153:15,25
166:25
167:2
169:25
170:4

**portion**
98:9
100:18
102:18
154:5

**position**
33:14

43:18
44:6 45:3
49:3
51:14
55:24
56:14
66:2
82:16,20
87:3
88:19,20
94:8,14
96:3
110:4,12,
13,18
111:3
113:3
114:1
118:20,24
120:9
121:5
152:18,19
157:23
159:21
161:10,16
169:8

**positioni
ng**
94:4
159:6

**positions**
18:23
162:16

**possible**
132:8
143:22

**possibly**
52:14
83:9

**post**
30:17,25
31:5,14,
22 32:6,
10
114:10,
22,23
115:4,7,
8,14,21

117:8,23
118:3
138:16
157:17

**POST's**
32:4
114:16

**post-
incident**
133:15

**potential
ly**
92:14
146:13

**powder**
63:24
92:17

**Powerpoin
t**
99:6

**Powerpoin
ts**
152:24
153:6

**practical**
43:19
137:1

**practice**
81:22
101:19
105:6
108:19
113:22
123:12

**practices**
15:21
16:16
130:6

**pre-
policies**
138:15

**predomina
tely**

61:3

**preferred**
55:25
56:15

**premises**
80:24

**prep**
72:22

**prepare**
12:14

**prepared**
159:8

**preparing**
13:21

**preplan**
121:23

**preplanne
d**
68:4 80:6
104:8
121:18

**preplannin
g**
108:20
128:7
144:25
146:12

**prescript
ion**
10:25

**presence**
38:14
39:10,19
40:19
46:10
163:25
164:1

**present**
11:14
53:25
79:16

**presented**
11:20

41:14
54:6,9
58:1
74:10,15,
17 77:4,
12 78:3

**press**
166:14,20

**pressure**
63:17

**presurvei
llance**
110:10
111:16,23

**pretty**
27:8
146:17
168:16

**previous**
14:19
36:7

**previousl
y**
139:18

**principle
s**
89:21
99:4
105:1
153:21
156:5
163:1

**prior**
12:7 13:9
18:24
21:4,10
22:5
23:17
34:14
35:1,3,8,
22 37:14,
15 38:14
39:8,12
40:19
45:18

58:13
67:8
69:16
70:13
71:25
73:11,22,
24 74:19
76:8
77:12
78:1
79:24
80:19
88:10,22
89:13,19
92:6
98:12
99:10
101:17
104:2
106:24
110:8
115:13,
16,19
119:18
121:14
122:12,13
124:15
126:10
127:9
129:12
130:10,12
131:19
135:25
138:15
145:16
146:18
149:8
154:17
156:11
165:4,22

**priors**
55:3

**privilege**
10:10

**probable**
139:21

**probably**
12:21



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 212 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

```
22:12                57:9              101:3           put                          really
73:4                 projected         118:18            7:8 79:11       R          112:14
78:20                78:5              125:11           116:23                      135:17
98:21                promoted          163:5            134:17          raid        137:15
103:21               20:12,22          168:20           141:18          80:16       155:18
139:1                22:5             provided          154:10          88:8        162:22
144:5                23:20            34:17             157:20          range       167:6
160:13               24:9             101:12           putting         55:1        rear
problem              25:12            116:2            43:24           rank         67:21
142:24               26:19           proximity        130:15          17:5,6       reason
procedura           propel           41:17                            rather       6:2 8:10
l                   90:9             PSI                     Q         120:2        9:23
90:2,12             proper           92:20                            rationale     10:11
procedure           144:5            96:12            question        40:14        15:24
11:10               properly         97:8             9:6,22          react        16:17
75:1                107:8            public           10:9            161:17       51:14
procedures          110:5,7          117:14           12:6,7         read          104:14
72:18               126:9            126:25           49:2           13:3          145:18
101:16              140:18           166:15           53:19          26:15         162:19
122:24             property         publish          87:25          42:21         166:2
130:6,25           33:11            31:14            90:25          87:16         reasonabl
proceed            52:8             published         91:5           101:5,13      e
6:13               105:13           30:21            101:7          107:3         33:13
process            106:2            publishes        108:2          114:22        39:25
8:15 9:16          130:23           31:23            115:9          127:5         40:4
54:8               131:3            purpose          120:21         147:9         41:5,9
128:16            property-         34:14            123:16         153:6         44:24
133:4             only              39:10,20         128:10         156:12,24     46:9
135:21            131:1,8,          40:2             148:13         169:13,15     49:22
146:19            9,22              42:25            166:13        reading        58:12
163:6             132:12            76:14            169:20         53:21,22      66:7
produced          protect           102:6,14        questions       64:18         76:15,22
13:23             47:25             103:6            7:5,8 8:1       69:22         78:24
15:17,22          52:10             105:4            9:14            124:22        79:3,17
16:16             protected          107:22,23       170:6          128:17        82:17
98:8,22           10:10             119:9           quick           134:18        86:7,15
114:10            protectio          122:12          62:12          148:20        93:12
profile           n                 165:6            137:15         152:21        100:23
46:21             43:11             purposes        quickly         167:25        115:23
program           prove             61:6            59:21          realize        118:17
20:17             136:17           pursuant         quote           18:21         120:10,14
progressi         provide          11:9             42:21          46:18         121:13
ons               32:18            pursuit           43:1          realized       122:6
                  84:11,14         27:13            93:10,14        47:7          125:10,14
                                                                                  141:25
                                                                                  143:13
                                                                                  144:2
                                                                                  145:10
```



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 213 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

146:5
147:2,4
154:4
156:18

**reasonableness**
34:16
41:11
42:1
46:16
50:19
74:13,14
75:11
76:18,20
78:12,13
83:6
85:13
86:13
87:14
88:6
117:2
119:14
121:9
133:24
137:6,14
138:13
143:20
148:23
157:22

**reasonably**
40:10,11
163:3

**reasoning**
54:12

**reasons**
9:1 40:24
53:14
158:13

**recall**
34:23
69:22
71:3,22
87:17
105:18,21
106:18
115:16

128:17
136:22
147:9
158:18
160:18
161:7
164:10,19
166:19

**receive**
19:19

**received**
26:13
129:1
152:25

**recently**
35:2
160:2,8

**recess**
14:9
75:19
133:9

**recognize**
24:5 25:2
26:5
163:12

**recognized**
164:3

**recollection**
81:14
156:23

**recommendation**
31:15
53:23
85:11
97:17,20
111:22

**recommendations**
46:25
47:1 48:3
51:19
85:10

87:8
97:23

**recommended**
96:10
97:6

**recon**
56:9

**record**
7:24 8:19
9:24
10:16
14:6,8,
11,14
75:18,21
86:3
87:19
114:7
129:18
133:5,8,
11,14
170:23

**recorded**
70:22

**records**
127:6

**recovery**
131:25

**recreational**
160:3

**reduce**
40:24
166:9

**refer**
155:8,11
160:20

**reference**
12:24
27:11
64:21
74:21
99:13
138:8
147:11

156:16

**referenced**
130:1
168:2

**referred**
99:19

**referring**
109:22

**refers**
112:16
116:23

**reflective**
162:15

**refocus**
63:5

**refusal**
43:7
44:17

**refused**
42:25
43:3
44:2,4,5,
8,9

**regarding**
6:13
12:23
13:7
14:21
30:2
53:16
72:14
75:25
130:24
131:20
133:17
148:18
155:15

**regards**
32:22
52:14

**regular**
37:21

152:1

**regurgitate**
39:6

**reinstituted**
107:6

**related**
13:4
131:25
154:2

**relating**
27:23

**relations**
166:15

**relay**
157:16

**reliable**
30:20

**relook**
86:2

**remember**
15:1
27:10
143:9
160:25
170:17

**remembered**
27:7

**removed**
69:5

**repeat**
8:2 20:17

**rephrase**
8:2

**report**
12:24
16:22
49:25
74:22
110:20
128:17

148:21
151:1,6,9
154:10,11
159:24
160:21,
23,25
161:9,21
169:1,3

**reporter**
5:14 6:16
7:3 8:19
9:3

**reports**
13:7
15:16,18,
19,22
16:3
26:15
53:22,23
64:18
88:21
95:8
124:22
165:21
167:25

**request**
11:18
44:15

**requested**
38:8
136:4

**requests**
99:12

**require**
31:5
32:10
39:5

**required**
30:24
40:6 42:6

**requirement**
31:15,17
33:21
42:8 43:7
44:17



30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

93:15
114:23

**requirements**
32:20
39:15,18,
24 50:12
90:15

**requires**
42:20
46:6,8
57:2
66:25

**requiring**
40:14

**rescues**
162:12

**research**
36:6 74:7
115:17

**resemble**
65:11

**resembled**
64:3
65:14

**reserved**
139:10
155:16

**residence**
13:5
22:21,23
40:1,8
41:1
52:15,24
53:9
57:22
58:10
61:11
74:6 76:5
77:8,19,
23 78:23
91:8
105:11,12
111:18
113:25

119:20
122:14
124:3
125:22,23
131:21
132:4,10
142:2
149:6,8
150:3
158:14
163:2
168:5

**resident**
53:3

**resolved**
127:23

**respect**
35:22
58:19

**respond**
10:8,12

**response**
8:5 9:9,
25 10:4,
17 162:21

**responses**
8:11,12
81:19

**responsible**
28:11

**restate**
91:5

**restrictive**
43:21,23

**result**
21:22
26:13
47:7 60:8
126:22
130:5

**resulted**
60:4

129:14

**retained**
158:22

**retire**
21:17
24:20

**retired**
21:9,15
24:16
25:24

**retraining**
26:13

**revamp**
155:18

**review**
7:10
13:22
29:17
50:20
51:7,15
71:11
84:15,16
86:11
87:13,17,
18 88:4,
17 95:22
98:19
99:8
110:7
144:3
154:19
160:22
169:6

**reviewed**
12:8,15,
24,25
13:7,8,
11,15,19
15:16
16:3,22
51:7
85:16
98:12
109:25
133:20

**reviewing**
14:15
35:8
49:13
70:12
95:8
104:17
111:6

**reviews**
103:17

**revised**
89:3,4,6
154:15

**revisions**
89:11

**rhythm**
65:6

**rhythmic**
65:2

**ride**
22:7

**right**
7:4,10,18
15:24
21:15
26:20
29:18
30:10,13
33:18,22
44:18,21
48:5
63:14,17
64:1,25
65:24
71:14
83:14
84:4
87:12
90:6
92:5,22
95:3,4
102:16
112:15
117:7
121:17,20
122:19

125:20
126:6
127:12,19
131:23
135:11
137:18,23
139:15
143:16,18
145:25
147:8
149:18
150:12,23
151:22
155:12
159:18
160:15
162:21
163:16
164:14,21
165:10

**rights**
96:16,19
128:3,12

**risk**
40:24
83:15
122:25
123:1,14,
20 124:6,
9 166:10

**rocks**
90:9

**role**
151:21,24
152:12

**rolled**
27:15

**room**
7:7 24:5
45:22
62:24
93:13
94:10
113:10

**Roth**
13:3

**Rothenburg**
25:8,9
64:13,20
84:6

**roughly**
68:21

**round**
71:21

**rule**
8:24 9:20
11:9,11
39:2,5,15
40:15,24
41:7
42:18
43:10,20
46:8,13
47:5
49:5,10
53:12
66:4,25
74:24
76:5 85:5
86:8
87:23
99:23
102:15
125:9
127:11

**rules**
6:11
72:18

**ruling**
10:2

**running**
115:2

**rural**
41:15

**Russ**
13:2,17
14:23
25:3
54:7,9
55:21
104:6

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 215 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

107:20,24
111:10

**Russell**
24:15,16,
19

---

**S**

**SACO**
51:24
52:1,4
54:13
55:25
56:1,12,
18,20
57:18,20
58:17
59:14,19,
24 60:7,
16 78:15
83:18
137:5
138:9,18,
19,24
139:1,12
140:20
141:1,20

**SACOS**
138:8

**safe**
20:20
45:23
58:9 59:8
84:13
95:12
103:2
112:8
116:1,15
157:18

**safely**
52:11,13
139:14
140:6,20

**safest**
78:16
117:13

**safety**
57:21
58:20,22
82:1
83:7,21
84:11
112:15
167:6

**said**
7:4,19
20:4 24:2
49:20
55:9,16
64:19,20
65:25
70:5
85:10
103:5
105:24
106:1,3
107:5
108:13
110:7
120:11
121:22
129:19
133:21
136:16
137:11
139:25
144:22
148:23,25
149:13
150:7
156:17
166:16

**sale**
149:25

**sales**
167:18

**same**
6:14,17
8:25 9:1,
4 17:24
43:9,15
48:23
50:21
58:16

60:1
81:15
107:6
113:6
119:23
127:11
138:14
150:20
159:8,17

**satisfied**
104:4

**satisfy**
103:7
104:19
106:15

**saw**
64:12
144:15

**say**
7:13 8:15
15:4
16:14
17:21
18:20
22:17
29:14
32:7
35:25
38:11
49:24
53:6,20,
24 59:21
62:6
64:4,5
71:2 73:5
77:9
79:12
82:6 87:6
92:16
110:10
112:6
118:14
120:22,25
121:2
137:2
138:17
145:22
154:17

158:9
160:17
165:12,22

**saying**
9:4 32:11
48:4 56:1
78:1
81:18
86:3
87:2,19,
21 113:2,
21 118:3
120:22
122:15
136:7
152:18
159:16

**says**
11:11
31:5
33:20
42:21
52:17,22
68:24
70:14
102:10
115:5,7,
25 116:14
117:3
118:15
121:11
162:3

**scenario**
77:17
165:17

**school**
19:1,4
28:13
151:15
153:10
167:11

**scrutinize**
59:3

**se**
145:9

**search**
13:3,12
22:8,20,
21 32:21,
23 33:15
35:19
36:20
37:4
38:4,5,7,
8,10,11,
15,18
39:21
40:21
42:15
45:1,11,
12,18,23
46:22
48:8,22,
24 49:11,
17 51:21
52:5,24
53:3,9
58:18
59:2
61:4,19
72:21,22,
25 73:12,
15,16
74:11,12
75:12
76:16,19
79:11,13
80:3
81:24
93:23
99:7
100:8,17
101:9
105:14
107:5
108:10,
13,20,23
109:6,11,
15 119:10
120:7
124:24
131:1,8,
10,20,22,
24
132:12,15

134:3,7,
13,18
135:7,21,
22,24
136:2,19
137:11
138:17
139:2
140:4,12
142:10
143:12
145:1
146:12
148:10
154:25
156:8
159:17
162:13
163:9,14
167:13,
21,23

**second**
15:14
17:10
27:18,20
61:12,15
62:8,9,20
63:8
67:23
68:1
69:9,18
76:21,25
77:2,8,21
78:2,11
79:6,14,
17 80:8,
12 82:24
105:19,25
106:19,24
107:1
108:3,4
121:17,
19,24
122:19,22
126:10
129:2

**seconds**
68:9 74:3
75:2,5,6,



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 216 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

7,10 76:3
79:1,6,22
81:9
82:25
84:17,24
85:2
86:13,23
88:10
100:22
113:23
117:19
120:19,24
121:3
126:12
144:1,4,
24 145:8
146:6,23,
25 147:2,
4,13,14,
17,20
156:18
169:6

**section**
17:8
20:11,15,
18,20,24
21:1
28:4,5
29:5
42:13
56:6
100:16
114:23
116:7
124:23
135:23
152:13,21
154:19
160:23

**sections**
73:13,14

**security**
19:13

**see**
9:19 23:9
24:11
28:16
29:6

32:16
46:14
69:7
77:3,4,14
81:14
82:14
92:5,8,10
94:22
95:23
97:11
99:9
113:11
126:5
136:6
144:23
145:14,20
149:2
153:6
154:19
157:25
158:24
159:4,5
162:6
164:24

**seeing**
160:25
161:7

**seeking**
142:20

**seem**
57:14

**seems**
27:7
122:2
156:15

**seen**
9:17
56:8,9
70:12,23
77:19,23
91:18
98:9
103:20
114:12
150:8,15
152:9,16,
23 161:25

162:24
168:14,15

**sees**
77:6

**seize**
132:16

**senior**
28:8

**sense**
38:4
110:25
151:10
158:16

**sentence**
9:7

**separate**
58:17

**sergeant**
13:2,17
14:24
20:13,14,
15,18
22:16
24:9,17
25:3,13,
14 28:6,
21 105:19
109:25
110:2,3
111:10
120:4
121:1
129:4,9,
17,19,22,
24,25
151:10
152:1,7
156:12,15

**serve**
11:13
39:20
73:13,15
136:21
137:9
139:14,22
142:2

145:19
166:23
167:3,21

**served**
19:1
37:19
39:1
41:1,23
138:22,
24,25
141:24
142:25
148:4
149:16
157:13,15
166:16

**service**
42:15
45:1,11,
23 49:11
52:5
73:12,16
80:3 99:7
100:16
101:9
109:15
123:13
124:24
133:18
136:16
140:4
142:10
145:15
148:9
154:6
166:3

**serving**
33:17
38:10,15,
18 100:9
101:21
143:12
167:3,7

**set**
11:9 67:5
71:2

**settled**

127:25

**settlement**
127:23

**several**
5:24 6:11
7:24
26:19
41:10
84:2 89:8
130:8
164:12
166:6
168:25

**severely**
125:3

**severity**
134:15

**sexual**
124:25

**shadowing**
22:7,9

**shake**
8:16

**shaking**
8:6

**sheriff**
47:1 50:2

**shield**
84:5

**shields**
84:4,10,
13

**shining**
164:17

**shoot**
59:10

**shooting**
5:25
116:3,10
132:7,8
133:19
150:19,23

165:8

**short**
60:24

**shorter**
144:20
145:25
146:1,22
157:7

**shot**
58:21
60:6

**shots**
71:17,20
72:1

**show**
8:12
81:16

**shower**
143:11,14

**shown**
28:9

**sic**
126:8

**side**
8:7
54:18,21
66:22
83:23
95:3
109:2
159:20
162:17

**sides**
52:13
54:17
82:12

**sign**
77:5

**signed**
38:5

**significant**
127:6



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 217 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

**significantly**
126:21

**similar**
64:9
128:21
166:14

**simply**
44:14
52:16
91:8
138:24
139:14

**simultaneously**
81:4

**since**
18:18
25:3 29:1
133:19
154:21
157:13,15

**single**
37:5
79:11
105:12
114:22

**singular**
74:9

**sir**
5:12,17
157:4

**siren**
65:10

**sit**
37:1
83:13

**site**
80:6

**sits**
48:21

**sitting**
96:6
101:11

**situation**
61:18
66:19
117:17

**situations**
61:4
117:18,19

**six**
68:9
72:10
82:25
84:17,24
85:2
86:13,23
88:10
117:19
143:25
144:4,24
147:14,17

**six-second**
86:15

**size**
41:13
45:14
52:8
81:25
140:11

**skip**
36:23
37:16

**slang**
8:8,12

**sleep**
143:2

**sleeping**
95:3
96:2,6

**slide**
72:10

**slight**
61:15
63:22

**slow**
121:2

**small**
54:19,24
82:12
90:9
112:12

**smaller**
136:23

**smell**
160:14

**SMES**
85:12

**smoke**
69:6

**smoked**
160:7,10

**smoking**
160:1

**solely**
85:19

**solidified**
130:10

**some**
9:23
10:9,10
15:24
16:17
23:4
30:15
31:14
32:22,25
33:24
41:19
51:14
52:7
54:19
61:22,25
63:16,22
64:19
65:3,25
72:5
73:3,12
74:21

**slang**
81:18
113:20
114:7,21
117:6,17,
19 123:3
129:13
130:22
133:14,
16,21
135:9
139:5
140:18
141:2
143:2
146:6
147:9
149:4
150:16
151:17
153:4,6,8
156:19

**somebody**
23:25
24:4,11,
23 25:1,
20 26:1
44:20
45:2
46:10
61:11
64:19
67:17
77:5,6
114:15
116:17
118:18
119:3,5
123:10
125:10
133:3
145:21

**somebody's**
90:6
92:13

**someone**
23:9
117:24

**something**
118:5

**something**
7:17 8:18
14:21
29:12
44:22
47:24
52:23
95:24
98:1 99:2
113:9,13
142:22
156:17

**sometime**
21:18

**sometimes**
6:12 10:6
58:1
60:23
135:25

**somewhat**
151:20

**somewhere**
55:1 79:1

**son**
5:25

**sorry**
13:15
14:4
22:15
23:20
37:8
43:25
55:18
60:13
62:2
72:3,24
75:6
79:20
90:25
91:1
116:6
121:25
122:1
123:4
129:20

**sort**
148:22
156:15
161:4

**sort**
11:3
26:13
31:14
50:5
135:18
137:17

**sought**
134:7
167:22

**sounded**
65:10

**sounds**
19:3
65:24
66:11
69:2

**South**
108:13
120:5

**Southern**
18:7
19:10

**speak**
11:15
22:25
36:2

**speaking**
8:24,25
9:8 30:1
35:10
54:2

**special**
11:10

**specific**
33:1
34:16
76:7
80:16
82:21
99:13,18
100:11



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 218 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                     Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

108:17
116:21
121:10
144:12
146:11
147:1
156:9,10

**specifica
lly**
11:18
26:8
34:19,22,
24 35:5
37:12
38:8,16
50:10
75:9
82:10
102:3,21
109:22
133:22
142:7
158:18

**speculate**
60:18

**speculati
ng**
152:16

**Speculati
on**
59:17
60:10,14
62:18

**speed**
46:4,6
48:6
49:21
50:24
51:1,20
57:17
58:5,7
133:23
144:24

**spell**
5:14

**Spencer**
16:19,21

**spindle**
69:8

**spirit**
138:1

**split**
61:12

**spoke**
52:7
155:15

**spoken**
12:16
14:22
16:24
24:1
113:20

**spot**
24:18

**Springs**
27:14

**squad**
23:24
28:5

**square**
54:25

**stage**
146:7

**stand**
88:1

**standard**
31:6
47:14
115:6
116:11,13
117:8

**standardi
zation**
31:7

**standards**
29:20,22,
23,24
30:16,20

32:17
114:9,21
117:13

**standing**
44:20
114:9
133:3

**standpoin
t**
111:25

**staring**
165:9,13
166:11

**start**
52:18
72:20,21,
23 73:8
78:18
109:13
119:11
120:10,
15,25
121:11,14
146:19
169:10

**started**
19:10,20
20:5 22:6
49:14
83:1

**Starting**
22:6

**starts**
119:1

**state**
5:13 9:24
10:15
29:23
30:10,12,
16 31:8
32:23
36:21
42:17
43:2,7,
19,21
50:11

73:10
74:1 75:9
78:13
79:23
86:18
88:9
102:11,21
105:13
114:20
115:3
116:21
121:8
128:11
143:2
146:10
151:14
157:22

**stated**
8:18
15:19
50:17
88:18
106:24
111:5
146:22
153:3
158:12
159:25

**statement
s**
144:21

**states**
18:25
19:12
30:7 33:4
34:1,6,
21,24
35:5
37:10,12
42:7
115:22

**stationed**
19:22

**stay**
110:12

**stayed**
20:21

150:8

**staying**
124:3
133:1
134:9

**stealth**
162:12
167:13

**stealthy**
162:24

**stemmed**
124:25

**stepmothe
r**
150:7,16
168:11

**stick**
65:1
66:21
67:13,22
68:2,6,
15,18
69:14,17
70:8,18
80:8,18,
25 81:3
83:1
84:7,22
88:11
91:14,19,
21,25
94:3,11,
18 95:18
112:20
113:6,17
119:19
121:15
122:13,21
145:5
147:18,25
149:1
153:13,14
159:2

**sticks**
104:3

**still**
9:24 21:7
23:7,14,
19 24:8
25:9,18
44:23
49:9
58:15
59:25
60:19
65:11
67:17
68:9
83:2,5
85:12
87:8
96:10,22
102:13
106:11
108:6
112:13
117:5
120:20
121:9
123:24
132:9
137:13
138:14
156:7

**Street**
20:21
160:14

**structure**
41:13,18
43:15
45:21,22
46:2 58:7
81:25
90:4
91:12
92:3,10
93:22,25
94:3
97:24
110:8
111:13
130:14
140:9,10,
12 158:6



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 219 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

167:17

**stuff**
131:19
147:9
155:22

**stun**
64:24
65:1
66:20
67:13,22
68:2,6,
15,18
69:14,17
70:8,18
80:8,18,
25 81:3
83:1
84:7,21
88:10
91:14,19,
21,25
94:3,11,
18 95:18
104:3
112:20
113:17
119:19
121:15
122:13,20
145:5
147:18,25
148:25
153:13,14
158:15,21
159:2

**subdued**
162:10
163:7,22

**subject**
22:19,22
27:11,21
36:25
52:21
108:16

**subjects**
41:16
99:1

131:6
133:17

**submit**
33:13
76:15

**submitting**
43:16,25
44:15
161:22

**substance**
159:23

**substantial**
127:24

**substantive**
7:16

**successfully**
71:24

**succession**
70:3

**succumb**
96:21

**such**
8:6,8

**sudden**
63:13
145:20

**sued**
11:11
14:18
21:21,25
27:4 87:4

**suggests**
157:17

**summarize**
50:5

**summary**
101:8

**sun**
68:6

**support**
144:11,20

**supposed**
10:8 46:1
66:10
72:15
74:4 76:3
113:24
129:10
156:6

**Supreme**
33:4

**sure**
10:12
14:5
28:14
29:18
36:4 58:8
64:15
75:23
84:7
86:25
90:5,7
99:16
119:22
132:18
160:11
168:3

**surprise**
46:1,4,7
48:7
49:21
50:24
51:1,20
57:17
58:5,7
133:23
162:21

**surrender**
39:12
68:12

**surround**
49:18
52:1,16,

17,20
53:10,15,
17 55:6,
12,16
83:14

**surrounded**
52:19

**surroundings**
158:25

**surveil**
139:19

**surveillance**
20:11
111:16
149:5,12,
14,19,20,
21 150:1,
9,15,21
151:2,4
168:12,14

**suspect**
22:22
44:10
123:24
125:17
126:1
132:4
139:20,23
150:10,14

**suspected**
150:6

**suspects**
45:14
48:1 52:9
55:2 83:9
123:9
124:11
131:18,19
168:4

**sustained**
85:25
110:15

**SWAT**
5:24
13:8,10,
11 14:20
15:6,10,
11,23
17:8,11,
13,17
18:1 20:3
21:3,5,12
22:4,7,
11,13,22,
24 23:7,
14,16,21
24:8,10,
21 25:9,
11,18
27:23
28:1,4,13
29:3,13,
17,21
30:2
32:18
33:2
34:18
35:4,12
38:9 39:9
40:4 45:6
46:1,22
47:2,15
49:15,16
51:24
53:2,8
56:6,15
67:20
72:16
73:11,22
75:8
86:6,14,
19 88:7
89:14
90:22,24
98:7 99:3
100:11,
13,18
101:4
104:22
113:18
114:16,19
115:2

116:2,9
124:23
125:8
127:9
128:25
130:7,17
134:5
135:25
136:9,21
138:22
140:24
141:4,19
142:7
143:12
148:9
151:11,15
152:8
153:10,25
154:15
155:14
157:17
162:1,3,4
163:23
169:11

**SWAT's**
130:25

**system**
160:1,19

—————

**T**

**tactic**
29:7,10
38:9
45:8,11,
16 48:5
49:11
50:25
51:21
52:4,6
55:19
56:7,12
61:16
78:15
82:22,23
119:15
135:22
136:17

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 220 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas          Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

```
138:20              117:17          58:19           28:23           104:5           9:17
140:3,21            137:3           60:22           29:2,4          111:11          13:13
141:9,18            154:23          73:2,23         38:9            130:13          14:15
                    156:1           75:5 89:9       50:21                           15:18
tactical                            94:7            51:15           telling         25:6 27:2
  17:9,21,          take            101:8           53:2,8,25         102:17        43:21
  22,23,25            6:17 9:3       133:14         59:4,5                          44:22
  21:3,4,12          28:24          139:5           65:21           ten            56:12,18
  22:5,9             45:21                          67:19             75:2,5,6      59:15
  28:2               47:23          talked          82:21             147:4        60:7
  29:1,16            72:23            36:3           84:14             156:17       64:22
  32:21              73:24           142:12         86:20                          75:5
  33:3 36:4          74:9                            88:7            ten-hour       97:1,15
  37:4               75:15          talking         103:1,15,         73:18        99:2
  38:17              80:1 82:1        48:13         16                              118:4
  47:13,14           139:21          56:4           109:14,16       ten-           130:22
  50:2               152:18          72:20,21       112:22          second         138:11
  51:7,14            157:23          73:19          115:2             74:24        145:16
  54:5,10            158:7,16        86:17          127:9                          146:1,22
  55:13              161:10,15       88:5           129:5,7,9       term           147:2,4,
  56:6 59:4          169:6           101:15         130:3             37:23        13 155:24
  61:17                              110:22         149:20                         167:14
  66:15             taken            112:12,17      152:1,12        terms
  73:16,17           10:24           119:23                           8:8 32:17    Thank
  82:20              11:21           131:3          teams                          72:11
  84:16              14:9,16         169:4           47:15          tested         168:23
  86:11,21           21:24                           49:15,16        160:19        170:15
  87:13,18           73:4           talks            66:16
  88:4,17            75:19            75:7                           testified      that's
  90:23              133:9           149:4          Tec              26:18,23      7:4 11:10
  99:6               144:13                           66:20          27:22         18:21
  100:17                            task             68:20           144:15        24:3
  101:9             takes             20:21          93:1            158:23        28:5,21
  103:1,17           61:14                                                         34:17
  108:25             63:4,8         taught          technique       testify        35:18
  109:17                             100:7            51:25          11:6,19       38:9
  122:21            taking            142:7                          12:5,11       42:14
  127:21             7:4 51:13                      technique       159:9         45:10,19
  136:10             58:6           Taylor          s                              48:25
  162:11,            66:15           134:20           57:2          testifying     53:6,19
  18,23              87:2                                            169:17        59:1
                     154:17         teach           technolog                      61:19
tactics              169:7            28:11,18      y               testimony      64:4
  29:25                                               130:11         6:3 7:11,     66:10
  38:15,17,         talk            teaching         133:2          15,20         71:6 73:8
  19 45:6            17:1 23:3        28:15          150:2           69:16         81:1 82:7
  49:15,16           24:3                                            75:24         86:3
  59:20              29:8,20        team            tell             76:1,6        87:12,19
  69:24              32:25           14:20            6:19           87:1          88:17
  70:11,19,          36:5            15:10           25:12           108:5         89:16
  24 114:15          37:18           20:3 21:3      37:2                           91:14
                     41:5 45:6       22:24          94:19           texting
                                     23:7           103:25           12:22
                                     24:10
                                                    tell             than
```



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 221 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas              Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 93:2 94:1 | 92:15 | 42:12 | **then-** | **therein** | 116:13 |
| 100:22 | 100:9 | 44:17 | **director** | 42:24 | 117:1 |
| 108:13 | 107:22 | 45:1 47:7 | 134:1 | | 128:15 |
| 116:13 | 109:9 | 49:2 | | **these** | 130:22 |
| 118:14 | 111:11 | 50:20 | **theoretic** | 28:8 69:3 | 131:15 |
| 120:7 | 112:24 | 51:6 | **ally** | 90:24 | 134:9,24 |
| 121:5 | 118:18 | 52:18,21 | 120:19 | 92:12 | 135:20 |
| 123:15 | 122:13 | 54:9,21 | | 99:8 | 141:12,17 |
| 135:24 | 125:11 | 62:22 | **there's** | 103:25 | 143:19 |
| 137:11 | 126:6 | 63:25 | 6:11 7:24 | 142:25 | 153:3,24 |
| 139:16, | 132:19 | 67:7 69:8 | 10:10 | 166:16,23 | 158:12 |
| 17,23 | 134:2 | 70:4 | 12:3 | 169:3,9, | 161:13 |
| 140:3,11 | 136:8 | 71:15 | 15:21 | 21 170:2 | 163:6 |
| 142:22 | 139:20,21 | 76:14,25 | 16:15 | | 164:16 |
| 145:23,24 | 140:20 | 77:13,17, | 29:6,23 | **they've** | 165:2,16 |
| 148:24 | 145:6 | 18 78:2, | 33:24 | 46:9 | 170:5 |
| 152:20 | 158:7,15, | 14,21 | 34:5 36:9 | 123:9 | |
| 155:15 | 21 160:9 | 80:2,17 | 41:10,21 | | **thinking** |
| 158:7,16 | 163:5 | 83:1,3 | 43:19 | **thing** | 27:19 |
| 159:12, | 164:8,9, | 86:3,20 | 45:15 | 7:13,19 | |
| 17,19 | 11,12 | 96:1 | 70:22 | 17:24 | **thinks** |
| 165:5 | 166:10 | 104:12 | 74:21 | 56:2 | 10:11 |
| 166:21 | 168:7 | 107:4,5 | 75:4,6 | 113:6 | |
| | 169:6,22 | 108:9 | 76:7,10 | 119:23 | **third** |
| **THC** | | 109:8,17 | 77:22 | 163:24 | 41:3 |
| 160:19 | **themselve** | 111:19 | 79:2 | 169:14 | |
| | **s** | 113:2 | 81:19 | | **this** |
| **them** | 67:18 | 114:20 | 83:15,20 | **things** | 6:3,25 |
| 6:12 8:2 | 79:16 | 115:24 | 86:16 | 7:24 | 8:15 |
| 10:16 | 145:6 | 117:2,3 | 88:6 94:1 | 28:16 | 11:8,17 |
| 26:16,19 | | 118:17 | 98:21 | 29:7 | 12:2,6,8, |
| 33:12 | **then** | 119:9,16, | 102:10,25 | 47:21 | 19,23,25 |
| 34:1 | 7:14,20 | 19 120:9 | 103:20 | 149:10 | 13:6,24 |
| 35:13 | 9:24,25 | 127:22 | 104:24 | 159:16 | 14:16,19, |
| 37:8 | 10:16 | 132:18 | 114:21 | | 21 15:6, |
| 40:3,10, | 11:13 | 133:3 | 123:2 | **think** | 17 24:5 |
| 11 45:18 | 16:15 | 136:17 | 130:14 | 10:7 | 26:17 |
| 46:11 | 18:1,4 | 137:4 | 139:7,9, | 23:20 | 28:12 |
| 56:17 | 19:7 | 138:4 | 12,13,19, | 31:20 | 31:12 |
| 60:24 | 20:6,16 | 139:22 | 25 | 41:21,22 | 35:1,8,23 |
| 61:2,7, | 21:2,10 | 144:1 | 140:14,18 | 46:19 | 36:24 |
| 11,19,22, | 23:10,13, | 145:20,23 | 146:9 | 49:8 | 37:14,15 |
| 25 62:12 | 23 24:17 | 147:1,18 | 147:1 | 55:15,17 | 38:22 |
| 63:16,19, | 25:6,17, | 150:18 | 156:9 | 62:16,22 | 46:14,17, |
| 21 66:9, | 20,23 | 152:5 | 165:21 | 63:1,3 | 19 47:7, |
| 23 71:24 | 29:22,23 | 155:5,6, | 166:6,17 | 70:5 | 18 48:2 |
| 74:17,18 | 30:15 | 7,9 156:2 | 167:14 | 84:25 | 49:13 |
| 76:14 | 32:7,16 | 169:20 | | 85:23 | 50:6 54:8 |
| 78:24 | 36:13 | | **therefore** | 88:5 | 58:21 |
| 79:24 | 37:20 | | 162:5 | 98:2,17 | 59:6,14 |
| 87:13 | 39:23 | | | 112:15 | 64:11 |
| | | | | 113:19 | 66:19 |



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 222 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

78:18,19
79:12
84:3 86:5
87:3
88:22
89:13,19
93:18
96:14
98:2,8,9,
11,12,13,
14,17,18,
22,23
99:3,10,
14,25
100:6,10,
15,16,18
103:22,23
104:14,18
107:24
108:9,24
109:11,19
110:18
113:3,20
114:10,12
115:13,
14,18,19
116:7,11,
23,24
117:8,20
119:16
120:3,11,
25 123:8,
23 124:5
126:6
127:12
128:16
130:24
134:12,
16,17
138:16,
23,24
139:8
140:23
141:5
144:14
146:16
148:16,18
149:16,24
151:12,21
153:16,23

154:7,12,
25 155:25
157:13,
15,23
158:23
159:21
161:12
162:7
166:3
169:7,24
170:1,14,
17,19

**thoroughf
are**
54:22

**those**
7:8 8:11
11:15
14:24,25
15:18
16:3
26:12
27:3,4,9
28:18
32:20
36:14
38:7,10,
15,19
41:2,12,
19 43:24
55:4 62:3
64:6,25
65:14
66:20
67:5,11
68:17
73:14,18,
19 79:23
80:1
84:10,12
86:13
88:21
90:14
92:13
93:7 99:1
100:23
102:24
111:12
113:7

114:17
139:6
141:20
154:23
162:15
163:16
164:16,23
167:20
169:18
170:5

**though**
15:4
22:25
28:24
29:17
35:2
146:4

**thought**
103:2
104:13
122:6

**thousands**
47:17
89:18

**three**
14:24
23:12
24:13
27:2
28:7,8
52:12
54:21
61:23
79:6 81:8
103:21
120:19,24
121:3
162:17

**threshold**
31:8,24
32:1 83:4
139:3
140:7
147:19

**through**
8:15 20:1
26:15

29:9
44:20
47:14,15
50:1
53:21
54:10
58:15
59:3,4,6,
7 64:18
72:25
74:16
94:12
115:17
116:20
127:23
132:2
133:16
151:15
153:10
163:21
164:18
169:2

**throughou
t**
28:17
46:20
109:15
119:10

**throw**
71:5,7
91:8,10
93:13
94:9

**throwing**
94:2,17
112:19

**thrown**
93:24

**tight**
41:14
54:14

**time**
6:11
8:15,25
9:4 10:3,
6 12:21
14:7,10

15:7,11
16:9 20:2
22:18
24:24
25:5
27:11
33:13
39:25
40:5,11
41:6,11,
23 42:1,2
46:9,16,
21 50:19
56:6
58:12
63:9
66:7,10
67:1,5,11
68:4
74:14,23,
25 75:17,
20 76:7,
15,18,20
79:2,5,11
80:3,11
81:15
82:21
83:7,8
85:4
86:7,19
87:20,22
88:6,7,
14,16
89:24
101:18
105:5
108:18
111:9
112:23
113:15,
18,21
114:2
115:23
117:23
118:7,17,
21 119:1,
11,14
120:10,
14,15
121:9,13

122:16,23
124:11
125:10,15
126:19,20
130:24
133:7,10,
24 134:6
135:13
136:9,20,
24 137:4,
6,7,14
138:13,19
141:1,5,
10,15,20,
24 142:1,
10,14,15
143:8,11,
14,20
144:2,4,
20 145:6,
8,10,15,
16,17,25
146:1,8,
11,20
148:24
150:22
151:11
153:11
154:4,25
156:10,
16,19
157:13,15,
23 165:8,
13 166:4,
22 168:5
170:14,22

**time's**
150:7

**timeline**
19:3

**times**
12:20
24:2
26:25
27:1
47:17
59:10



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 223 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

60:5,6
89:4,8
100:7
129:19
157:7
167:7

**timing**
34:16
60:1
84:21
85:13
103:3
121:12

**timings**
79:25

**tip**
164:14

**tissue**
14:2,3

**title**
17:4

**TL**
80:1
145:14

**TLS**
146:14

**to**
6:3,13,
16,19,24,
25 7:3,
10,11,12,
14,16,18,
23,25
8:1,2,4,
6,7,10,
15,18,24
9:2,3,6,
7,13,14,
20,23,25
10:1,5,8,
12 11:6,
9,14,17,
19,23
12:4,6,7,
11,13,16,
17,19

13:4,5,9
14:19
15:4,13,
20 16:24
17:8
18:24
19:2,14,
25 20:11,
12,15,16,
19,24
21:1,10,
24 22:5,
6,21,25
23:3,17
24:1,2,9
25:13
26:11
27:9,14,
23 28:3,
10,12,14,
21 29:10,
14,17,18
30:3,6,9,
12,19,25
31:4,5
32:23,25
33:2,11,
12,13,17
34:11,13,
14,15,18
35:1,3,4,
8,11,14,
22 36:2,
20,23,24
37:14,15,
16,19
38:3,13,
14,25
39:1,8,9,
11,12,16,
20 40:1,
6,9,18,
19,24,25
41:6,8,
12,17
42:7,21,
24 44:1,
7,15,21,
23 45:2,
13,16,18,

22 46:1,
10,12,18
47:22,25
48:5,7
49:9,17,
24,25
50:5,10,
21 51:2
52:10,14,
20,22
53:6,7,
17,20,25
54:6,9,
12,13,14,
17,21
55:2,21,
22 56:1,
5,7,8,12,
17 57:14,
20,25
58:2,3,4,
8,11,13,
17,19
59:1,4,5,
7,10,24
60:15,17,
22 61:3,
5,7,8,10,
11,15,16,
18 62:11,
14 63:4,
8,10,11,
13,21,25
64:9,21,
25 65:2,
3,20,21,
22,25
66:7,10,
14,16,17,
21,22
67:1,4,6,
8,13,16,
17,19,21,
22 68:6,
7,9,10,
11,12,19,
23 69:17,
20,21
70:7,13,
16 71:2,

5,10,23,
24,25
72:10,13,
15,23
73:11,13,
15,16,21,
23,24
74:4,5,9,
12,15,17,
18,19
75:2,7,
11,23
76:2,3,4,
8,11,13,
15 77:10,
12,14,16
78:4,5,6,
16,24
79:3,12,
20,22
80:5,6,7,
18,19,24,
25 81:14
82:3,4,6,
11,17,21
83:8,12,
15 84:18
85:1,4,20
86:2,5,7,
23,25
87:6,14
88:9,10,
22,24
89:12,13,
19 90:5,
6,7,10
91:5,6,7,
13 92:6,
8,10,13,
15,16,18,
21,22,25
93:3,13
94:7,15,
21,23
95:6,14,
15,21,22,
25 96:9,
21 97:9,
12,23,25
98:2,12

99:3,8,9,
10,13,19,
22 100:22
101:4,12,
13,17,20,
22,25
102:2,4,
7,10,17,
19,20,25
103:2,9,
12,13,15
104:1,2,
6,12,14,
15,22,24
105:2,3,
7,8,13
106:24
107:3,22
108:12,
15,20,22
109:1,3,
4,11,16,
17,20,22
110:8,10,
12,19,22
111:11,
14,16,17
112:4,8,
16,22
113:8,9,
11,13,22,
24,25
114:21
115:4,6,
13,16,19,
24 116:2,
22,23
117:3,6,
11,12,13
118:16,18
119:3,16,
18,20,21,
22 120:1,
23,25
121:7,11,
15 122:2,
3,5,12,
13,14,20,
24 123:2
124:2,4,

13,14,15,
23 125:10
126:4,5,
8,10
127:3,7,
10
128:11,
19,20
129:2,3,
11
130:10,
12,13,16,
17,25
131:2,4,
5,25
132:16,18
133:2,14,
16,25
134:2,3,
4,13
135:7,10,
19 136:1,
8,15,16,
17,18
137:1,5,
9,14,18,
21,22,25
138:5,6,
8,11,15,
19
139:14,
19,21
140:5,7,
8,14
141:8,15,
17,25
142:2,4,
7,15,20,
22 143:1,
3,4,14,
17,18,20
144:17,24
145:6,10,
19 146:5,
7,18,25
147:11,
12,13,24
148:7,12,
13,22
149:5,6,

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 224 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

7,22
150:2
151:22
152:5,18
153:6,7,
15,20,25
154:2,17,
19,20
155:8,11,
20,22,23
156:1,4,
6,10,11,
16,19,25
157:2,5,
6,16,17,
18,24,25
158:4,6,
7,10,13,
15,16,24
159:4,8,
10,13
160:7,9,
20 161:1,
10,12,13,
15,16,17,
22 162:6,
12,13,14,
20,24
163:2,3,
8,10,11,
12,19
164:24
165:4,21,
22 166:8,
9,10,14,
17,19
167:2,8,
9,10,11,
12,13,16,
17,19,21
168:11,
17,20
169:5,6,
10,13,15,
16,19,21
170:16

**today**
6:14,19,
24 7:13,

24 10:19
11:6,9,19
12:5,11
13:12
26:4 37:1
48:21
51:13
61:23
101:11
122:15
138:23,25
144:7

**today's**
7:5,19
8:4,13,23
9:12 12:7
98:2

**toddler**
112:12

**together**
22:12
25:4

**token**
137:18,21

**Tom**
15:25
16:2

**tons**
74:16

**too**
92:22,25
125:15
149:21,23

**took**
14:20
18:2
21:2,5,19
24:17
27:12
46:17
47:20
48:2,22
49:23,24
71:16
73:11
151:24

154:11
155:21

**tool**
29:7
68:19

**top**
94:23
95:14,19,
22,25
169:11

**topic**
75:25
99:11
113:19
115:7

**topics**
11:13,15
12:3,8,10
37:16

**tossed**
113:3

**totality**
76:17
77:11
79:10
82:6
100:8
162:22
164:2

**totally**
22:20
62:24

**touching**
36:19
77:1
95:18

**town**
142:19

**townhomes**
41:15

**townhouses**
140:19

**toxicology**
159:25
160:21,23

**tragic**
59:1

**tragically**
59:9

**train**
35:12
62:11
99:3

**trained**
35:17
37:6
115:14
116:11
140:25
141:3,8,
18,21

**training**
19:21,22
20:5,7
28:1,5,
12,13,16
29:5,21
31:6,14,
19 34:17,
19 35:4,
13 36:15,
18 37:2,
11 56:10
59:6
72:25
73:2
78:12
90:24
99:1,18,
22 100:7
104:21
114:9,15
115:2,10,
19 148:17
151:9,11,
17 152:8,
23,24

153:1,4,
5,8

**transcript**
7:9,10
8:13
10:2,3
11:17
170:11,13

**transition**
72:13

**TRB**
51:8,10
85:2,16,
19,22,25
86:2,6
87:4
110:14,20

**trends**
49:14

**trial**
6:25

**tried**
47:12
141:22

**trigger**
121:17
122:18

**true**
10:9
47:12
48:18
64:4
89:3,16
118:13,14
125:12
127:24
141:22
142:17
153:2
158:14

**truly**
10:9

**truth**
6:19

**try**
7:14
62:11
68:23
113:8
133:2
167:9

**trying**
19:2
67:18
124:4
126:4
162:24

**turned**
123:6

**TV**
9:17

**twice**
155:6

**two**
9:3
12:20,21
15:14
19:13
27:1,7
41:2
52:12
58:17
62:20
66:22
68:13,17
79:6
80:16
86:22
90:3,10
94:1
104:2,18
109:1,2
119:17
121:14
122:11
128:7
130:10
132:1
137:2



Case 2:24-cv-00074-APG-NJK   Document 57-11   Filed 05/16/25   Page 225 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

145:4
146:16
154:21
159:20
161:25
162:17
168:4,9,
13

**two-side**
68:2 84:6
94:19

**type**
45:10
142:21
145:24

**types**
8:11
68:13

**typing**
134:11

**typographical**
7:17

---

**U**

**U.S.**
31:9
32:23
34:15
36:20
42:8
43:22
46:20
73:10
74:1
78:13
79:23
86:18
88:9
102:11,20
146:10
157:22

**U.s./
banks.**
35:9

**Uh-huh**
8:8 82:9

**ultimately**
55:12
84:25
86:14,21
88:20
110:3
112:25
127:22
131:21
154:2,10
167:22

**unable**
140:5

**unanimously**
85:25

**unassociated**
168:7

**uncommon**
136:8

**under**
6:19
33:21
41:6 43:7
44:19
48:18
49:3
66:12
76:5 79:3
90:15
93:12
100:15,23
134:6
157:8
162:25

**understand**
6:2,15,21
7:1,21
8:1,20
10:18
43:4

75:24
87:1
108:15
120:21

**understanding**
25:24
31:13
34:10

**understands**
147:23

**understood**
163:16

**undress**
143:3

**uniform**
162:1,2,4

**uniforms**
162:8
163:8

**unit**
20:9,10

**United**
18:24
19:12
30:7 33:4
34:1,6,
21,24
35:5
37:10,12
42:7

**unknown**
94:3
110:16

**Unless**
170:16

**unreasonable**
77:24,25
79:15
87:20,22
88:14,16

160:12

**unreasonableness**
79:15

**until**
20:2,21
82:17
122:7

**unusual**
65:6
160:7
161:2

**unwritten**
74:3,8
75:1
81:21,23

**up**
8:7,12
11:13
15:24
16:17
20:2
23:18
28:15
53:4,22,
25 54:1
56:5,10
68:6
70:12
77:4,7,14
84:8 87:7
103:15
108:10
116:19
125:2
132:16
136:13
140:7
143:4
144:24
146:14
152:5
162:14

**updated**
154:15

**updating**

28:25

**upheld**
85:17
146:22

**upon**
51:18

**upper**
61:13,15

**us**
7:23
38:13
49:24
61:17
73:24
130:13
136:4
138:19
162:23
163:19
164:3
166:11
167:12

**use**
37:23
45:16
46:1
53:24
56:2,7,
12,14,18,
21 57:11,
16,25
58:12,18
61:1,2,7,
19,23
65:20
66:14,16
68:19,21
74:5
77:16,22
78:24
80:7,13,
24 81:1,5
82:3
84:11,18
88:9
93:2,12
108:20,

22,24
109:6,9,
11 112:20
120:24
131:4
135:3
136:25
141:14
142:2
147:23
149:22
150:1,2
153:19,25
158:5

**use-of-
force**
22:1
85:23

**used**
33:17
47:15,17
48:10,19,
24 49:4,
12 50:17
51:2,5
52:4
53:15,18
56:24
58:20
59:13,22
61:9
63:10
65:14
66:17,20
67:16
68:14
70:25
82:22,23
83:23
84:6,7
88:24
89:14,17
91:15
99:3,14
108:25
110:14
121:13,
14,16
124:24



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 226 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

130:18
131:9
135:15,19
138:5,16
140:2,3
141:7,20
144:17
145:4
147:13
152:24

**uses**
38:10
43:2

**using**
8:7 48:6
57:5
65:21
66:23
75:2 76:4
113:25
117:1
130:25
140:21
158:18

**utilize**
130:11
132:24

**utilized**
125:1
126:9

───────

**V**

**vacation**
54:8
152:2

**vague**
18:21

**various**
46:20

**Vegas**
5:18,23
6:4 11:12
17:3,7
18:13,15
21:23

26:22
34:9
46:23
47:16,25
52:23
53:1,7
98:6
120:4
121:1
143:12
170:21

**Vegas'**
15:10

**vehicle**
27:13
29:11

**vehicles**
54:15

**verbal**
8:5 36:13
119:8
152:25
163:13,22

**verbaliza
tion**
164:1

**verbalize**
58:11
102:13

**verbalizi
ng**
58:14

**verbiage**
44:4
107:3
130:19,22
148:22

**version**
154:24
155:1,2,9

**versions**
154:21
155:3,14
162:1

**versus**
57:18
62:25
120:12
167:3

**very**
7:23 8:14
9:2 10:13
45:25
46:21
61:22
116:6
118:25
135:14
136:8
148:13
169:11

**viable**
56:20,21

**vice**
20:9,10,
15 25:4
27:20
73:14

**video**
6:24
64:12
71:11,23
81:12,16
91:18,19
103:20
168:12,14
170:11,13

**VIDEOGRAP
HER**
14:7,10
72:9
75:17,20
133:7,10
170:9,19

**videotape
d**
6:23

**view**
13:18

**violate**
96:16,19
97:2

**violated**
111:4
128:3,13

**violating**
125:8

**violation**
47:23

**violation
s**
129:13
170:4

**violators**
20:18
21:1
22:12,14,
15,16

**violence**
55:7

**violent**
41:17
55:3
124:12
131:18
132:5,9

**vision**
62:7,16
63:2
159:13

**visual**
61:14
163:25

**visually**
77:6 90:5
91:12

───────

**W**

**wait**
9:7 39:25
40:4 41:6
46:9 74:4

75:2 76:3
79:22
82:3,17,
21 83:8,
19 113:24
116:22
117:18,19
118:17
120:24
122:7
129:2
136:24
142:1,16
143:17
145:11
146:8
156:19
157:18

**waited**
78:21
84:17
122:5
154:3

**waiting**
19:14
77:21
125:9
157:7

**walk**
160:13
162:13

**walked**
24:4 25:1
26:4

**walking**
167:10

**wall**
54:19

**want**
9:14 33:2
36:24
47:22
53:6,7
55:22
60:22
75:23

77:16
82:2,3
83:7,12
86:25
87:6
89:12
90:4,7
92:16
93:3 94:7
95:21
110:12
113:8
117:11,13
119:21
120:1
132:18
133:14
136:2,8
137:21,
22,25
138:17
143:3
148:13
149:22
154:18
162:14
166:9,10
167:9,21
169:5,10,
13,15
170:12,16

**wanted**
113:11
132:7
133:25
155:20

**wants**
9:22

**Warner**
14:23
54:3
104:5
111:9

**warrant**
22:19
32:21
33:15,17
36:20



Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 227 of 230

30(b)(6) for Las Vegas Metropolitan Police Department

Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

37:4
38:5,9,
11,16,20,
22,23,24,
25 39:21
40:21
41:1,23
42:24
45:1,11,
12,18,24
48:8,11,
20,22,24
49:11
51:22
52:5,21,
24 53:3,9
61:19
72:22,25
73:17
74:11,12
75:12
76:17,19
79:11,13
80:4
81:24
83:11
93:23
101:9,22
105:14
107:5
108:10,
13,16,23
109:6,11,
16 119:10
120:7
123:13
124:5,24
129:6
131:1,8,
20,22,24
132:11,
12,13,15
134:4,7,
8,10,13,
18 135:4,
21,22,25
136:1,3,
11,13,15,
18,19,21
137:1,9,

11,12
138:22
139:2,7,
14,15,21
140:12,23
141:24
142:3
143:12
145:1,20
146:12
148:4,10,
18 154:5,
25
157:12,
13,15
159:17
163:4,14
166:3
167:3,7,
13,21,23

**warrants**
13:3,12
22:8,20
32:23
35:19
37:19,20,
21,22,25
38:1,4,7,
10,18
42:15,16
46:22
49:17
58:18
59:2 61:4
72:21
73:12,13,
15 88:24
89:15,18
99:7
100:9,17
108:21
122:25
131:10
133:18
135:7,11,
14,16
138:5,18
139:10
140:4

142:11,25
155:16
156:8
162:13
163:10
166:23

**watch**
20:23
71:23

**watched**
71:22

**watching**
71:3

**water**
72:10

**wave**
63:17

**way**
7:16 16:6
29:6
31:12
47:21
58:14
60:20
65:9
78:19
135:20
137:10
139:8
140:14
142:13
165:21

**we**
6:12 8:24
9:2,19,
21,24
11:11,13,
17 14:8,
11 15:21
22:17,18,
21 25:4
27:21
28:4,16
29:2,6,8,
9,20
32:22

37:18,19
38:7,17
40:20
41:5 45:6
47:21,24
48:1,15,
21,22,24
49:18
51:18
52:9,11,
12,13,17,
18 53:2,
6,7,8
55:10
56:2
59:1,2,6,
9,20,23,
24 60:16
61:2,7,
12,13,17,
19,23
62:11
65:19
66:13
68:11,19,
21,23
73:22,23,
25 75:15,
18,21
76:12
77:9
79:1,22,
23 82:1,
2,3 83:18
84:11,25
90:2
91:10,11,
15 93:2,3
94:9,10,
11,12
95:23
96:22
97:22
99:5
102:11,23
105:1
109:9
110:11
112:19,20
113:8,9,

10,11,12
115:7
117:16,
18,19
119:11,16
120:6,7,
15,24
121:9
122:16
123:10,
15,17,18,
21
130:11,12
132:3,8,
23,24,25
133:1,8,
11,14
134:2
136:2
138:12,
14,15,20
139:3,18
140:6
142:24
145:5
152:22
154:22,23
155:6,14,
18,19,21
156:2,7,9
157:19,
20,21
158:6,22
162:10,
12,13,14
163:10,13
165:3,22
166:9,10
167:9,19,
21 170:23

**We'd**
78:11

**we'll**
8:25
10:16
18:20
81:12
89:9 98:1
121:23

168:20

**we're**
6:13,14
14:13
15:13
29:14
32:25
48:6 52:9
53:7
65:20,21
66:14
72:13
77:9
78:1,2
90:3
101:15
104:14
112:9,11
119:22,23
120:23
121:7
130:15
131:3
133:13
155:12,25
158:8
162:11,
13,24
166:11

**we've**
11:21,22
12:22
60:23
75:13
113:19
114:3
132:19
142:12
169:4

**weapon**
71:9,21
72:7
165:14

**weapons**
124:13
164:8

**wear**

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 228 of 230
30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

163:24

**wearing**
150:11
162:7

**weekly**
28:13

**well**
5:15 8:12
12:18
13:4,11
14:5
15:22
17:1
24:24
26:5
30:10,13
31:25
33:16
36:5,14,
24 38:3
42:3
44:16
46:25
47:1,18
48:15
51:1
58:19
60:3
62:14
66:6
67:20
76:21
77:16
78:18
80:5
81:5,12
82:5
83:12
84:4
87:12
90:3 92:4
95:2
97:14,20
102:15
107:13
110:3
111:13
112:6

114:25
117:6
118:8
120:22,23
121:16,23
122:2,16
123:5
127:19
139:8
148:20
151:25
152:15
162:25
163:15
169:15

**went**
19:4
20:10,14,
19 25:13
27:14
34:15
62:4,15,
23,25
71:14
74:16
108:12
113:10
126:13
137:9
155:21
164:7

**what**
9:3,17,21
11:21
12:13,15,
17 17:4
18:8
19:18,19
23:22
26:8,14
27:25
29:16
31:25
32:7,11
33:8
34:11
37:6,23
39:4
40:14

41:8
44:1,6
45:6,9
49:18
50:7
51:18,24
52:2,9,17
53:6,9
56:7,18
59:1
60:25
62:14
66:18
68:14,15
69:20,24
70:10,23
72:17
74:10,18
77:14
78:4,10,
15 79:5
80:2
81:14,25
82:16
87:9
88:17
92:24
93:2
94:14
95:7
98:11
101:18
102:9
105:5
108:18
109:14
111:8
112:22
114:3
115:4,6
116:4
118:3,20
119:15
122:9,23
123:17
124:20
126:25
128:20
130:6,24
131:12

132:17,20
134:14
140:1,12
146:5,12
148:19
149:2
152:19
153:5
155:3,17
157:12,23
158:5,6,8
159:4,21
161:17
162:4,8
163:18,20
165:12
166:22
167:2,17
168:20
169:22

**what's**
18:5
27:18
34:10
117:5,13
126:25

**when**
12:14
14:19
18:13
19:15,18,
20 21:17
22:15
25:11
26:1
27:20
29:20
33:17
37:18
38:7
41:1,5
45:6
49:20
59:2
61:17,19
62:4,15
68:22
69:20
71:22

72:20
73:8,11,
13,22
74:17
76:11
77:22
82:13
83:3 84:3
86:17
88:5
89:11
90:2,3
91:20,21,
24 92:7
93:2
94:17
95:11
98:18
101:20,21
103:1,22
104:22
105:7
107:2
109:9
112:6,9,
17,20
117:23
118:25
119:15
120:11,12
121:11
122:24
126:6,13
130:18,22
131:3
132:23
133:20
134:3
135:23
136:9
137:5
140:1
142:25
147:24
148:4
149:16
154:4
155:19
156:21
157:9

158:5
162:11,24
164:5
165:17,23
166:17,22
167:6,21

**where**
12:4
20:20
25:15,16
27:3,15
41:14
44:20
45:12
51:3
72:19
78:9
82:11
84:7
91:15,23
92:2,10
93:25
94:4,10
96:1
102:12
116:4,24
117:19
118:10
127:9
131:21
134:8
139:3
140:4
141:9
142:14
159:6
162:13

**whereas**
46:7

**whereupon**
14:9
75:19
133:9

**wherever**
65:20

**whether**
10:3

Case 2:24-cv-00074-APG-NJK    Document 57-11    Filed 05/16/25    Page 229 of 230

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

50:7,11
60:18
64:15
97:14
103:13
105:21
108:15
110:22
118:11,20
141:13
157:6
159:22
167:8

**which**
5:25
20:17
22:19
37:21
41:22
55:12,19
64:22
82:25
84:16
99:14
101:16
109:4
120:17
124:17
126:9
139:9
146:17
157:17

**while**
19:7
24:20
67:19
83:14

**who**
11:14
14:18
16:25
17:12,13,
14 21:4,
11 50:15
53:17
54:9
64:14
69:10,13

85:19
86:21
91:22
103:16
109:10,16
112:8
116:19,23
118:9
119:3
123:8
127:11
129:10
132:2,5
141:11
149:5,7,
17 150:5
151:10
156:22
157:1,20
158:23
160:7
163:20

**who's**
114:15

**whole**
18:11
56:4
84:14
101:6
155:21
169:13

**whose**
15:23
103:12

**why**
6:2 19:25
23:16
53:15,17
57:19
66:9 67:2
71:6
75:14
89:11
91:14
103:23,25
104:5
119:4
121:22,25

124:4
137:15
141:13
145:18
148:24
157:2,20
162:9
166:2
167:2
169:22

**Williams**
12:25
26:9 51:3
53:16
58:20
59:10,22
60:6,18
67:1 68:6
71:9,20
72:7 92:2
93:18
95:2
96:9,15
97:2,16
114:11
118:2
129:8,9,
19 130:3
131:21,24
133:19
134:8
135:13
138:3
144:1
147:14
148:5
158:10
159:22
165:18

**Williams'**
26:14
58:25
60:4
65:14
80:6
82:11
96:1
103:19
116:3,10

124:16
125:7
128:22
129:6,11
144:12
157:25
158:24
159:9
161:11
164:17,24

**willingly**
141:16

**Wilson**
33:4,25
34:18
37:7 73:3
98:25
101:1,3

**window**
42:22
44:11
45:5
66:15,21
67:4,21
68:2
80:7,25
84:6 92:1
94:13,19,
20 95:3,7
96:22
109:2
121:19
140:8
147:25
149:3

**windows**
166:11

**wise**
89:5

**wish**
7:11

**with**
5:18
10:17
12:20
14:17,22

15:24
16:17
17:3
18:17
19:11
21:7
22:7,22
23:11,23
24:3,12,
13,20,24
25:21
26:7,8,22
27:5,25
28:15
29:21,24
30:4,5,6,
9,12,17,
25 33:3
34:3,7,9
35:11,14,
18,21
36:6,12,
20 37:10
39:14,17,
23 40:7,9
42:3,12
46:12,22
47:8 48:1
49:5,10,
22 50:11,
18 51:10
53:4,11,
25 54:1,
2,19
55:1,8
57:12,20
58:1,3,7,
16,19
64:6 66:3
70:17
72:5,8
73:7 78:2
81:5
83:12,19
84:14
85:4,12
86:4,8
87:7,24
89:21,24
91:20

92:1,9
93:5,17,
23 99:21
100:24,25
106:2,13
107:1,11
109:13
110:19
111:15
113:13
114:14,16
115:1,4,
11,12
116:9,18,
19 117:12
118:1
120:20
125:23
128:7
133:20
134:2,19
135:25
136:7,23
137:22,25
138:5
139:3,22
140:10
141:21
142:11
143:24
144:18
145:2,21
146:15
147:25
148:1
149:1
151:25
155:25
156:1
160:1
162:2,16
163:4,7
165:2
168:7

**within**
10:25
69:9 88:9
95:12
96:10,15

30(b)(6) for Las Vegas Metropolitan Police Department
Adrian Beas                    Latia Alexander, et al. v. Las Vegas Metropolitan Police Department, et al.

| | | | | | |
|---|---|---|---|---|---|
| 103:21 | 117:16 | 25:21 | 81:13 | 22 26:3, | 154:11 |
| 108:6 | 127:16 | 167:19 | 91:1 | 6,21,24 | 155:2 |
| 111:14 | 128:5,15 | **worked** | 98:14,17 | 28:23 | 158:15 |
| 113:16,18 | 129:17,25 | 18:22 | 101:2 | 29:1,19 | 163:17 |
| 146:10 | 144:14 | 19:12 | 110:24 | 30:23 | 168:1 |
| 153:25 | 147:17 | 20:6,13, | 118:8 | 32:6,14 | 169:12 |
| **without** | 148:7 | 20 22:12, | 122:2 | 33:23 | |
| 52:14 | 151:14 | 24:24 | 129:21,23 | 34:9,20 | **young** |
| 78:3 | 152:11 | 26:1 | 137:17,20 | 39:22 | 110:11 |
| 91:11,12 | 158:4 | **world** | 142:9 | 40:5,12 | 111:12,17 |
| 140:9,21 | 161:20 | 51:24 | 143:15 | 42:4,10, | 112:4,7, |
| **witness** | 165:2,12, | **wraparoun** | 149:15 | 11 46:5 | 10 149:7 |
| 11:14 | 20 168:23 | **d** | 150:10 | 47:18 | **yourself** |
| 13:15 | 170:18 | 54:23 | 151:20 | 50:23 | 37:9 |
| 14:4 31:3 | **witnesses** | **writing** | **year** | 57:13 | 115:4 |
| 32:14 | 10:6 | 36:9 | 17:19 | 60:19 | |
| 35:17,25 | 12:16 | 79:21 | 18:8 | 62:5 | **Z** |
| 36:17 | 74:23 | 81:20 | 28:17 | 63:12,15, | |
| 40:18 | **Wolfftrac** | 156:17 | 49:25 | 22 64:2 | |
| 43:14 | **ker** | **written** | 98:11 | 70:19 | **zero** |
| 47:11 | 130:12 | 38:6 | 124:15 | 71:18 | 79:1 |
| 49:8 | **woman** | 74:2,8,25 | 127:9 | 72:8 76:9 | 80:11 |
| 51:18 | 124:18 | 76:10 | 129:12 | 81:1 | 137:3 |
| 57:8 | **won't** | 102:9 | **yearly** | 84:5,22 | |
| 58:25 | 22:17 | 146:9 | 154:18,19 | 85:18 | |
| 59:19 | 66:13 | **wrong** | **years** | 89:5,18, | |
| 60:15 | 115:8 | 87:4,7 | 19:1,5 | 22 90:12, | |
| 62:20 | **word** | 123:9 | 20:19 | 20 92:23 | |
| 64:8 | 43:15 | **wrote** | 25:6 | 97:18,24 | |
| 65:18 | 120:11 | 93:10 | 47:12 | 98:19 | |
| 76:24 | 130:20 | **wrought** | 49:12 | 99:5 | |
| 79:9 | 149:22 | 54:19 | 73:5,11 | 100:3,14, | |
| 80:15 | 158:19 | | 89:17 | 15 104:10 | |
| 81:8 | **words** | **Y** | **yellow** | 105:20 | |
| 83:18 | 23:1 | | 12:4 | 107:9,12 | |
| 85:9 | 43:24 | **yeah** | **yes** | 109:24 | |
| 86:10 | 53:5 | 14:3 | 5:20 6:6, | 111:23 | |
| 87:6 | 62:24 | 17:22 | 22 7:2,22 | 117:9,10 | |
| 90:17 | 63:19 | 24:9 30:1 | 8:6,9,17, | 120:15 | |
| 93:21 | **work** | 31:11 | 21 9:11 | 125:6,21 | |
| 94:16 | 9:15,16 | 37:9 | 10:20 | 126:7,16, | |
| 95:6 | 10:19 | 47:11 | 12:12 | 23 | |
| 96:18 | 15:3 | 48:10 | 17:12 | 129:17,25 | |
| 97:6,22 | 16:14 | 62:2 69:6 | 19:10 | 134:21, | |
| 98:15 | 23:10,11 | 75:16 | 21:13,16 | 22,23 | |
| 99:25 | 24:12,13 | | 24:6 | 135:5,12 | |
| 106:10 | | | 25:7,19, | 137:19,24 | |
| 107:20 | | | | 143:8 | |
| 114:19 | | | | 146:2,3 | |
| | | | | 150:4,20 | |

