**Marquis Aurbach**
Craig R. Anderson, Esq.
Nevada Bar No. 6882
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
Attorneys for Defendants LVMPD, Kerry Kubla, Brice Clements, Alex Gonzales, Russell Backman, James Rothenburg, James Bertuccini and Melanie O'Daniel

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LATIA ALEXANDER, individually as heir of ISAIAH T. WILLIAMS, and in her capacity as Special Administrator of the Estate of ISAIAH T. WILLIAMS,<br><br>                         Plaintiff,<br><br>        vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of the State of Nevada; KERRY KUBLA, in his individual capacity; BRICE CLEMENTS, in his individual capacity; ALEX GONZALES, in his individual capacity; RUSSELL BACKMAN, in his individual capacity; JAMES ROTHENBURG, in his individual capacity; JAMES BERTUCCINI, in his individual capacity; MELANIE O'DANIEL, in her individual capacity and DOES I-XX, inclusive,<br><br>                         Defendants. | Case Number:<br>2:24-cv-00074-APG-NJK<br><br><br>**DEFENDANT BERTUCCINI'S**<br>**MOTION FOR RECONSIDERATION** |

Defendant James Bertuccini, by and through his attorneys of record, Marquis Aurbach, hereby files his Motion for Reconsideration on this Court's denial of qualified immunity on the excessive force claim against him in the Court's March 2, 2026 Order (1) Granting Defendants' Motion for Summary Judgment in Part, (2) Denying Defendants' Motion for Summary Judgment in Part, and (3) Denying Plaintiffs' Motion for Partial Summary Judgment. ECF No. 76. This Motion is made and based upon the Memorandum of Points & Authorities, the pleadings and papers on file herein and any oral argument allowed by counsel at the time of hearing.

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    INTRODUCTION**

This 42 U.S.C. § 1983 lawsuit involves a fatal officer involved shooting during the service of a high-risk search warrant. After the close of discovery, defendants filed a motion for summary judgment. ECF No. 55. The plaintiff filed a motion for partial summary judgment. ECF No. 57. Both parties filed oppositions, ECF Nos. 64, 66, and replies. ECF Nos. 72, 73. On March 2, 2026, this Court issued a thorough 62-page Order Granting and Denying in Part LVMPD's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment. ECF No. 76 ("the Order").

In this motion, defendant Officer Bertuccini requests this Court reconsider one issue in its Order—the denial of qualified immunity to Officer Bertuccini on the Fourth Amendment excessive force claim against him for his use of a Noise Flash Diversionary Device ("NFDD") on a stun stick. This Court denied Officer Bertuccini qualified immunity finding both that: (1) viewing the facts in the light most favorable to the plaintiff, a reasonable jury could find that Officer Bertuccini's deployment of the NFDD violated a Fourth Amendment  right and (2) the alleged violated right was clearly established by the case of *Boyd v. Benton County*, 374 F.3d 773 (9th Cir. 2004). *See* ECF No. 76 at 16:10-18:4.

Two issues justify reconsideration. First, after this Court filed its Order, the United States Supreme Court issued its decision in *Zorn v. Linton*, 607 U.S. ____, No. 25–297, 2026 WL 795469, at *2 (U.S. Mar. 23, 2026). In *Zorn* the Supreme Court again explained qualified immunity's "clearly established" prong and emphasized the unconstitutionality of a specific use of force must be "beyond debate" and easily understood by the defendant officer. In applying *Zorn* to this case, it is undeniable that this Court applied *Boyd* at "too high a level of generality." According to *Zorn*, "officers receive qualified immunity unless they could have

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct." *See Zorn*, 2026 WL 795469, at *2 (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)). Here, no officer familiar with *Boyd* would have known that under the facts and circumstances of this case that it could be unconstitutional to deploy an NFDD on a stun stick because the stun stick is designed to prevent the exact harm that *Boyd* warns against.

Second, in attempting to make this case fit within *Boyd*'s precedent, this Court committed clear error by misstating the "clearly established" law set forth in *Boyd*. In the Order, this Court purports to directly quote *Cuevas v. City of Tulare* (a Ninth Circuit case interpreting *Boyd*) for the proposition that *Boyd*'s precedent applies to any "blind deploy[ment]" of an NFDD, regardless of how the NFDD is inserted to the room. Specifically, the Order reads:

> Under the Fourth Amendment, "*Boyd* . . . established that a flash bang ***cannot be blind deployed*** into a room with innocent bystanders 'absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury.'" *Cuevas v. City of Tulare*, 107 F.4th 894, 900 (9th Cir. 2024) (quoting *Boyd*, 374 F.3d at 779).

ECF No. 76 at 17:3-7 (emphasis added, ellipses in original). Respectfully, the quote is wrong and, therefore, misleading. In truth, *Cuevas* states:

> *Boyd* thus established that a flash bang ***cannot be blindly thrown*** into a room with innocent bystanders "absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury."

*See Cuevas*, 107 F.4th at 900 (quoting *Boyd*, 374 F.3d at 779). The Order's changing of *Boyd's* "clearly established" precedent from "blindly throw[ing]" to "blindly deploy[ing]" is not immaterial or inconsequential. The altering of the quote allows the Court to interpret *Boyd*'s prohibition regarding NFDDs at too high a level of generality and without the specificity that *Zorn* requires. *See also, Sheehan*, 575 U.S. at 613 (2015) ("We have repeatedly told courts—

MARQUIS AURBACH

10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."); *see also generally Slater v. Deasey,* 943 F.3d 898, 904 (9th Cir. 2019) (Collins, J., dissenting from denial of rehearing en banc) (identifying Supreme Court reversals of Ninth Circuit denials of qualified immunity in Fourth Amendment cases)).

For these reasons, Officer Bertuccini respectfully requests this Court reconsider its order denying him qualified immunity on the excessive force claim.

## II.   RELEVANT FACTUAL AND PROCDURAL BACKGROUND

### A.   FACTS RELEVANT TO OFFICER BERTUCCINI'S DEPLOYMENT OF THE NFDD[1]

#### 1.   SWAT creates a plan that involves the use of Noise Flash Diversionary Devices.

On January 10, 2022, LVMPD's SWAT team served the high-risk warrant at 3050 S. Nellis Boulevard, Apt. #1125. Prior to service, the team learned the Apartment was a gang "flophouse" where the occupants were likely armed and dangerous. When SWAT received the assignment to serve the warrant, it knew the following information:

- The warrant was deemed high-risk.

- The warrant involved a violent homicide investigation where the murder weapon was still outstanding.

- The Apartment was a gang "flophouse" where the occupants were likely armed and dangerous.

- Suspect Fisher had social media posts where he brandished firearms.

- Suspect Rembert had recently participated in a shooting in the same 3050 S. Nellis apartment complex where he fired 20 rounds from an MP5 submachine gun.

- Both suspects had significant criminal histories.

- Two neutral magistrates separately agreed to the high-risk nature of the warrant and the appropriateness of the nighttime service.

---

[1] This Court is familiar with the general facts of this case as demonstrated by its summary judgment order. The following facts are those relevant to Officer Bertuccini's use of the NFDD. Generally, the facts are taken from Defendants' Motion for Summary Judgment (ECF No. 55) and are properly authenticated in that Motion.

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

Sgt. Garth Findley was assigned the Team Leader assignment and officer Jacob Werner ("ATL Werner") was named the Assistant Team Leader ("ATL"). Sgt. Russel Backman, a SWAT sergeant in training, assisted with the service planning under Sgt. Findley's supervision. ATL Werner created the service plan and decided to use a Control Entry Tactic ("CET"). A CET is a dynamic entry tactic that is used to lessen risks and enhance officer, citizen, and suspect safety. It is designed to surprise and overwhelm suspects and quickly take them into custody, thereby prevent them from taking up arms, hardening their defensive position, fleeing the premises and possibility endangering others, harming hostages, or destroying evidence. Entry is made after the officers have identified themselves and advised occupants of the search warrant and a lawful right to be on the premises. A CET is allowed under LVMPD policy during the service of a warrant for property if there is a threat of an armed and dangerous subject inside.

After discussion, Sgt. Findley, Sgt. Backman, and ATL Werner all agreed a CET entry was the best option. ATL Werner recommended having two sets of NFDDs deployed to assist with surprising and disorienting any individuals inside the Apartment. According to LVMPD policy, NFDDs may be considered whenever the use of a less-lethal diversion would facilitate entry, enable arrest, or potentially reduce the risk of injury. Use of such devices is specifically allowed during high-risk warrant service and situations where the authorizing person deems their use necessary to safely resolve the incident. Sgt. Findley, Sgt. Backman, and ATL Werner all agreed on using a Def Tec 25. NFDD inside the residence and a separate 9-bang distract device outside. LVMPD policy requires officers deploying NFDD's be certified in their application.

Because the plan called for deployment of the Def Tec 25 inside the Apartment, ATL Werner ordered the use a "stun stick." A stun stick is a device that holds an NFDD and allows the officer to control the timing and location of its detonation. The purpose of the stun stick is to ensure the NFDD is *not* blindly thrown into a dwelling as the stick gives the operator direct control of where the actual distract goes. At deployment, the stun stick is inserted into the window and pushed as high as possible to ensure the NFDD is not detonated within the head

or face of people that may be inside the room. Lt. O'Daniel approved both distract devices and the plan in general. With the plan approved, the SWAT team moved to serve the search warrant.

### 2. Officer Bertuccini deploys the NFDD on a stun stick.

ATL Werner assigned Officer Bertuccini the task of deploying the stun stick at the rear of the Apartment. Officer Bertuccini's orders instructed him to deploy the NFDD after Sgt. Backman began his announcements. After the SWAT team positioned itself around the Apartment, Sgt. Backman started the announcements stating:

> Occupants of 3050 South Nellis, police department, search warrant, 1125, police department, search warrant, 1125, Metro police, search warrant.

Simultaneously, every member of the stack began yelling, "Police department, search warrant." Six seconds after the announcements began, Ofc. Bertuccini raked the rear window, breaking it, and inserted the stun stick holding the NFDD. After breaking the window but prior to deploying the NFDD, Ofc. Bertuccini testified he cleared the area by looking for any people, shadows, or toys. Officers are trained five feet is a sufficient distance to safely detonate an NFDD. Confident he was not deploying the NFDD over anyone's person or within five feet of anyone (which he was not), Ofc. Bertuccini *raised the stun stick high to the ceiling and discharged the NFDD*. The NFDD gave the entry team a tactical advantage – especially since the entry team eventually got "hung up on the door." Seconds later, another officer deployed a 9-banger distract outside of the Apartment. There is no evidence decedent was physically harmed by the NFDDs. *Plaintiff's own expert agreed the NFDD was deployed in a reasonable manner and testified "I don't think there is any evidence the stun stick itself caused anyone injury."[2]*

Three seconds after Ofc. Bertuccini deployed the NFDD, Ofc. Hoskins began to strike the door with the ballistic ram. Due to a reinforced metal door wrap, it took Ofc. Hoskins five seconds and several strikes to breach the door. Two seconds after the door was breached, Ofc.

---

[2] *See* Expert Greg Gilbertson Depo. at 66:2-25, ECF No. 55-21.

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

Kubla made entry into the Apartment. In total, almost seventeen seconds elapsed from the time Sgt. Backman began his announcements until the first officer entered the Apartment. Once the officers entered, the decedent greeted them by firing 18 rounds at the officers, striking at least one officer. The SWAT team fired back in self-defense, striking and killing the decedent.

**B.      THIS COURT'S ORDER REGARDING THE NFDD.**

First, in addressing the constitutional violation prong of the qualified immunity analysis, this Court agreed with defendants a jury could find Officer Bertuccini's use of force reasonable.  ECF No. 76 at 12-13. However, the Order also found a reasonable jury could find Officer Bertuccini used excessive force if it concluded he "had no visibility into the apartment, making his deployment mostly 'blind'" because he "did not move closer to the window after he broke it, indicating he did not attempt to scan [the room] beyond the section that breaking the window made visible." *Id.* at 15:3-16 (citing to *Boyd*). The Order concludes: "viewing the facts in the light most favorable to [plaintiff], a reasonable jury could conclude that Officer Bertuccini did not ensure that bystanders . . . were far enough away from the stun stick such that his deployment was unreasonable under *Boyd*." *Id.* at 15:19-22. The Order implicitly agrees that Officer Bertuccini did not indiscriminately throw or toss the NFDD into the room.

Second, in considering the "clearly established" prong of the qualified immunity analysis, this Court's Order relied exclusively upon the *Boyd* case. The Order, claiming to directly quote *Cuevas* summary of *Boyd*'s holding, reads: "*Boyd* . . . established that a flash bang cannot be ***blind deployed*** into a room with innocent bystanders 'absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury." ECF No. 76 at 17:3-7 (emphasis added, ellipses in original).  The Order acknowledges that the *Boyd* officers "*tossed* a flash-bang device into the apartment without looking", *id.* at 17:7-8, but it omits this critical fact from its "clearly established" analysis. In conclusion, the Order reads that "[t]he similarities between the facts of this case and *Boyd* are such that a reasonable officer would know Officer Bertuccini's conduct, viewed

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

in the light most favorable to [the plaintiff], violated the Fourth Amendment." *Id.* at 17:14-17. *Boyd* is the only cited legal authority on the "clearly established" issue.

### III. LEGAL STANDARDS

#### A. MOTION FOR RECONSIDERATION

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient" so long as it has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (citing Fed. R. Civ. P. 54(b)). "Reconsideration is appropriate if the district court is (1) presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law*." Sch. Dist. No. 1J, Multnomah Cnty., Or. V. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); see also LR 59-1(a). Motions for reconsideration must be brought "within a reasonable time." LR 59-1(c).

#### B. QUALIFIED IMMUNITY

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *See District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (citation omitted); *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted). "'A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Zorn* 2026 WL 795469, at *2 (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). On the other hand, "[a] right is not clearly established if existing precedent does not place the constitutional question 'beyond debate.'" *Id.* (quoting *Rivas-Villegas*, 595 U.S. at 5). "To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances ... was held to have violated' the Constitution." *Zorn*, 2026 WL 795469,

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

at *2 (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019) (per curiam) (internal quotation marks omitted). "The relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'" *Id.* (quoting *Wesby*, 583 U.S. at 62–63 (2018). In addition, "[p]rinciples stated generally, such as that 'an officer may not use unreasonable and excessive force,' do not suffice." *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (per curiam)). "In short, officers receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct." *Id.* (quoting *Sheehan*, 575 U.S. at 616.

The first prong of the qualified immunity analysis, "whether a constitutional right was violated ... is a question of fact." *See Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (explaining that under the first prong of the qualified immunity analysis, the court considers whether the facts show a violation of a constitutional right). In contrast, "the 'clearly established' inquiry is a question of law that only a judge can decide." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017); *see also Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

## IV.    LEGAL ARGUMENT

### THIS COURT COMMITTED CLEAR ERROR IN FAILING TO GRANT OFFICER BERTUCCINI QUALIIFIED IMMUNITY.

Although a plaintiff's allegations must satisfy both prongs of the qualified immunity analysis, courts are given discretion to dismiss a claim utilizing either prong. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *George v. Morris*, 736 F.3d 829, 837 (9th Cir. 2013) ("Usually we can start with the second prong of qualified immunity if we think it advantageous."). Here, Officer Bertuccini challenges the Court's denial of qualified immunity under both qualified immunity prongs.

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

### A.     FOURTH AMENDMENT LAW REGARDING NFDD DEPLOYMENTS.

In denying Officer Bertuccini qualified immunity, this Court found "[t]he similarities between the facts of this case and *Boyd* are such that a reasonable officer would know Officer Bertuccin's conduct, viewed in the light most favorable to [plaintiff], violated the Fourth Amendment." ECF No. 17 at 17:14-16. Indeed, it appears *Boyd* is one of, if not the, seminal case on the deployment of NFDDs in the country. Therefore, the following examines *Boyd* and its progeny.

In *Boyd*, officers executed a search warrant where they believed "five to eight people," including an "armed robbery suspect," may have been located. 374 F.3d at 777. The officers planned to deploy a flash-bang, a type of NFDD, "against the apartment's front wall and near the door" to minimize the risk to the apartment's potential occupants. *Id.* When executing the search warrant, an officer arbitrarily threw the flash-bang inside of the apartment "without looking." *Id.* The "tossed" flash-bang "came to rest" near the plaintiff, who was sleeping near the front door. The plaintiff was injured and sued the officers for using excessive force. *Id.* at 777-78. The district court granted summary judgment to the officers, finding that a Fourth Amendment violation may have occurred, but the law was not clearly established. *Id.* at 778. The Ninth Circuit affirmed, granting the officer qualified immunity. *Id.* at 784. However, the court clearly established the law for future NFDD cases. The court found that although safety risks existed, they "cannot have reasonably caused the officers to believe that it was *appropriate to toss*, without either looking or sounding a warning," a flash-bang into the apartment. *Id.* at 779 (emphasis added). The court held "given the inherently dangerous nature of the flash-bang device, it cannot be a reasonable use of force under the Fourth Amendment to **throw it** 'blind' into a room occupied by innocent bystanders absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury. *Id.* (emphasis added).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

*Boyd*'s holding is straight-forward. An officer familiar with *Boyd*[3] would recognize the case prohibits an officer from indiscriminately and blindly *throwing* an NFDD into a room; once the NFDD is released, the risk of injury to innocent bystanders increases because the officer loses control over both the location and timing of the NFDD detonation. When discussing reasonableness, the *Boyd* Court intentionally used the word "throw", *Boyd*, 374 F.3d at 779, and never used the words "blind deploy." Thus, *Boyd*'s obvious concern was a blind and uncontrolled release of the NFDD into a room. Importantly, *Boyd* did not involve a stick or similar device that allows officers to control the timing and location of the detonation.

Cases interpreting *Boyd* support Officer Bertuccini's interpretation. *See e.g., Cuevas*, 107 F.4th at 900 (*"Boyd* thus established that a flash bang ***cannot be blindly thrown*** into a room with innocent bystanders "absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury." (emphasis added)); *Taylor v. City of Middletown*, 436 F.Supp.2d 377, 384 (D. Conn. 2006) (*Boyd* "concluded that 'given the inherently dangerous nature of the flash-bang device, it cannot be a reasonable use of force under the Fourth Amendment to ***throw it 'blind'*** into a room occupied by innocent bystanders absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury." (emphasis added); *Flournoy v. Colbenson*, 37 F.Supp.3d 971, 978 (N.D. Ill. 2014) ("Based on the pre-existing case law, it was clearly established … ***that throwing a flash bang device blindly*** into an apartment … is an unreasonable use of force." (Emphasis added); *Ernst v. City of Eugene*, 903 F.Supp.2d 1172, 1182 (D. Or. 2012) (summarizing *Boyd*'s prohibition: " 'blindly' ***throwing*** a flash-bang device into any part of a residence is an unconstitutional use of excessive force" (emphasis added); *Z.J. v. Kansas City Bd. of Police Comm'nrs*, 931 F.3d 672, 684 (8th Cir. 2019) (citing to *Boyd's* prohibition "to ***throw*** [a flash-bang grenade] 'blind' into a room . . ." (emphasis added)); *Tervesi v. Torreso*, 764 F.3d 217, 238, 241 (2nd Cir. 2014) (Citing to *Boyd* and other cases supporting the proposition that ***throwing*** the flash-bang blindly causes the Fourth Amendment

---

[3] Discovery established that LVMPD officers are directly trained on *Boyd* and its prohibitions.

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

issue); *Dukes v. Deaton*, 852 F.3d 1035, 1043 (11th Cir. 2006) ("Our sister circuits have held that an officer's failure to perform a visual inspection **before throwing** a flashbang into an area weighs against reasonableness." (Emphasis added)); *Estate of Escobedo v. Bender*, 600 F.3d 770, 785-86 (7th Cir. 2010) (finding that *Boyd* and other cases clearly established "that **throwing** a flash bang device blindly into an apartment . . . is an unreasonable use of force" (emphasis added)).

In sum, *Boyd* prohibits an officer from blindly *throwing* an explosive device into a dark room. The reasoning behind *Boyd*'s holding is obvious: courts do not want SWAT officers blindly throwing explosive devices into rooms because the officers cannot control the device once it leaves their hands and location and timing of the detonation becomes arbitrary, hence increasing the risk of unintended injury. There is no case law prohibiting the insertion of an NFDD into a room that is attached to a device that allows an officer to control both the timing and location of the detonation. Thus, any officer familiar with *Boyd* would believe that using a stun stick protects the officer from *Boyd*'s clear holding.

### B. QUALIFIED IMMUNITY PRONG #1: OFFICER BERTUCCINI REASONABLY DEPLOYED THE NFDD.

The first prong of the qualified immunity analysis asks whether any evidence exists that a constitutional violation occurred. *Lal*, 746 F.3d at 1116. Here, Officer Bertuccini acted in complete compliance with *Boyd* as he did not blindly and indiscriminately throw the NFDD into the apartment. First, Officer Bertuccini inserted the NFDD into the room on a stun stick that allowed him to control both the timing and location of the NFDD's detonation. Second, he visually cleared[4] the immediate area where he intended to detonate the NFDD. Third, Officer Bertuccini raised the NFDD to ceiling height, ensuring that even if an unknown/unseen individual was in the area, the risk of injury was significantly reduced. Fourth, once satisfied that no individuals were underneath the ceiling-high NFDD, he

---

[4] In viewing the facts in the light most favorable to plaintiff, the Court describes Officer Bertuccini's visual observations as "mostly 'blind'" with "no visibility into *most* of the department." ECF No. 76 at 15:3-5. It is undisputed he cleared the detonation area which is what primarily matters under *Boyd*.

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

detonated the device. Thus, Officer Bertuccini did just as *Boyd* requires as he "careful[ly] consider[ed] alternatives and appropriate measures to reduce the risk of injury." *See Boyd*, 374 F.3d at 779. Indeed, an officer familiar with *Boyd* would readily agree that the use of the stun stick NFDD at ceiling level remedies the concerns identified by *Boyd.*

Finally, the reasonableness of Officer Bertuccini's actions is best explained by *plaintiff's* own SWAT expert, Gregory Gilbertson. Gilbertson, although unfamiliar with stun sticks[5], agreed standard training and practice suggests that deployment of an NFDD at least five feet from a person is "very reasonable" and that Officer Bertuccin complied with industry standards.[6] Naturally, defendants' expert agreed. Thus, there is no competent evidence even suggesting that Officer Bertuccini acted unreasonably and qualified immunity should have been granted under the first prong of the qualified immunity analysis.

### C.  QUALIFIED IMMUNITY PRONG #2: THE COURT INCORRECTLY APPLIED THE "CLEARLY ESTABLISHED" PRONG OF QUALIFIED IMMUNITY BY MISSTATING *BOYD'*S HOLDING AND INTERPRETING *BOYD* AT TOO HIGH A LEVEL OF GENERALITY.

In addressing the "clearly established" prong, this Court found the *Boyd* provided the requisite "clearly established" law. Setting forth the force that *Boyd* allegedly prohibits, the Order purports to directly quote *Cuevas v. City of Tulare's* summary of *Boyd*'s holding:

> Under the Fourth Amendment, *"Boyd . . .* established that a flash bang cannot be ***blind deployed*** into a room with innocent bystanders 'absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury." *Cuevas v. City of Tulare*, 107 F.4th 894, 900 (9th Cir. 2024) (quoting *Boyd*, 374 F.3d at 779).

ECF No. 17:3-6 (emphasis added). The Order implies that *Boyd* and *Cuevas* establish it is excessive for an officer to perform a "mostly"[7] "blind deploy[ment]" of an NFDD. This interpretation does not accurately state *Boyd*'s holding. In truth, *Cuevas* interpreted *Boyd* to

---

[5] *See* Expert Greg Gilbertson Depo. at 62:19-64:13, ECF No. 55-21.

[6] *Id*. at 66:2-25, ECF No. 55-21.

[7] ECF No. 76 at 15:3-5.

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

forbid "blindly thow[ing]" an NFDD indiscriminately into a room. *Cuevas*, 107 F.4th at 900. In changing "blind" to "mostly blind" and "throw" to "deploy" the Court's Order inappropriately expands *Boyd* and adds requirements that would have been unknown to Officer Bertuccini.

In *Cuevas*, a non-NFDD case, police attempted a traffic stop involving three suspects. *Cuevas*, 107 F.4th at 896-97. The suspects led police on a high-speed felony chase, involving an exchange of gunfire where the police incidentally shot an innocent passenger *Id.* The *Cuevas* plaintiffs cited *Boyd* in support of their excessive force claim. *Id.* at 899-900. The Ninth Circuit analyzed *Boyd* and noted the "*Boyd* officers deployed the flash bang ***indiscriminately*** by throwing it into a building, meaning that they did not know whether they would be affecting the suspect they were seeking to arrest." *Id.* at 900. The *Cuevas* Court, contrary to this Court's Order, reads: "*Boyd* thus established that a flash bang ***cannot be blindly thrown*** into a room with innocent bystanders 'absent a strong governmental interest, careful consideration of alternatives and appropriate measures to reduce the risk of injury." *Id.* at 900 (emphasis added) (quoting *Boyd*, 374 F.3d at 779). Therefore, according to *Cuevas*, *Boyd* prohibits an officer from "indiscriminately" and "blindly throw[ing]" an NFDD into a dark room where the officer cannot control the location or timing of the detonation because it unnecessarily increases the risk of harm to innocent bystanders. Other cases support the interpretation that an uncontrolled throwing of an explosive device is needed to trigger *Boyd*. *See supra Flournoy*; *Ernest; Z.J. v. Kansas City Bd. of Police Comm'nrs*; *Tervesi*; *Dukes*; *Estate of Escobedo*.

The Order's misquoting of *Cuevas* and expansion of *Boyd* to include "mostly blind" "deploy[ments]" is not immaterial or harmless. And even if this Court's expansion of *Boyd* is correct, applying this new standard to Officer Bertuccini is unfair and violates the Supreme

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

Court's qualified immunity standards because Officer Bertuccini was not provided fair notice of this new interpretation. As the Supreme Court recently reiterated in *Zorn*, "officers receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct." *Id.* (quoting *Sheehan*, 575 U.S. 600, 616 (2015)). Here, an officer who has "read" *Boyd* and its progeny "beforehand" would only have "known" it was excessive to indiscriminately and blindly throw an NFDD into dark room. *Zorn*, 2026 WL 795469, at *2. Prior to this Court's Order, no officer could guess that *Boyd*'s prohibition applied to any "mostly" "blind deploy[ment]" as all existing case law only prohibited "blind throwing."

This case and *Boyd* are clearly distinguishable and the differences between the two cases "leap from the page." *See Kisela*, 584 U.S. at 107 (citing *Sheehan*, 575 U.S. at 614). First, Officer Bertuccini did not throw the NFDD indiscriminately into the room. Rather, he utilized a stun stick device that allowed him to systematically insert the NFDD into the room and permitted him to control both the location and timing of the detonation. Second, he did not toss the NFDD into a room where it would detonate on the ground where people could be present. Instead, he pushed the NFDD to ceiling height to ensure that detonation would likely occur at such a level that even if an unknown person were close by, injury was not likely to occur. Third, Officer Bertuccini did not "blindly" deploy the NFDD. Rather, he moved the blinds aside and cleared his immediate area knowing that was the exact area where the NFDD would deploy. Fourth, Officer Bertuccini maintained control over the NFDD and purposedly chose the location and time of the detonation. In sum, Officer Bertuccini did not deploy the NFDD in an uncontrolled manner that needlessly increased the risk of injury, but rather in a controlled and systematic matter that considered alternatives and took appropriate measures to reduce the risk of injury. *See Cuevas,* 107 F.4th at 900 (quoting *Boyd*, 374 F.3d at 779).

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX:  (702) 382-5816

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

The Order's changing of *Cuevas's* phrase "blindly thrown" to "blind deployed" in stating *Boyd*'s "clearly established" law literally elides critical differences between the two cases. The inaccurate quote generalizes *Boyd'*s much more specific holding that the NFDD must be "indiscriminately" "thrown" into a room blindly. *See Cuevas*, 107 F.4ᵗʰ at 900. Given these significant distinctions, *Boyd* cannot be described as "'squarely govern[ing]' the specific facts at issue." *Zorn*, 2026 WL 795469, at \*2 (quoting *Kisela,* 584 U.S. 100, 105 (2018) (per curiam). The fact the Order mischaracterizes *Cuevas's* summary of *Boyd*'s rule, makes clear that *Boyd* is not analogous to this case.

Therefore, Officer Bertuccini is entitled to qualified immunity under the "clearly established" prong of the qualified immunity analysis. At the least, the circumstances here fall into "the hazy border between excessive and acceptable force" given these additional considerations not present in *Boyd*. *Kisela*, 584 U.S. at 105 (internal quotation and citations omitted). An officer who has a strong governmental interest in using an NFDD, considers alternatives, and takes measures to reduce the risk of injury is not "plainly incompetent" or "knowingly violat[ing] the law." *Ashcroft v. al-Kidd,* 563 U.S. 731, 743 (2011) (internal citation and quotation omitted).

### D.    SUMMATION

In *Zorn,* the Supreme Court stresses the requirement that officers receive fair notice of the law governing their behavior. Here, Officer Bertuccini's use of the stun stick took him outside of *Boyd*'s purview as it allowed him to systematically and safely detonate the NFDD without blindly and indiscriminately throwing it into the room in a manner that stripped him of control over the NFDD. Plaintiff's own expert does not criticize Officer Bertuccini, and it is presumed that the expert is capable of spotting plain incompetence or an intentional violation of the law. Therefore, this Court should reconsider its denial of qualified immunity to Officer Bertuccini and grant him the same.

**MARQUIS AURBACH**
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

**V.    CONCLUSION**

Based upon the above, the defendants request that the court grant the instant Motion for Reconsideration and thus grant the defendants qualified immunity on the plaintiff's Fourth Amendment NFDD claim.

Dated this 6th day of April, 2026.

MARQUIS AURBACH

By:/s/ Craig R. Anderson
    Craig R. Anderson, Esq.
    Nevada Bar No. 6882
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    Attorneys for Defendants LVMPD, Kerry
    Kubla, Brice Clements, Alex Gonzales,
    Russell Backman, James Rothenburg,
    James Bertuccini and Melanie O'Daniel

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **DEFENDANTS' MOTION FOR RECONSIDERATION** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 6th day of April, 2026.

☒   I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

☒   I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

N/A

/s/ Krista Busch
An employee of Marquis Aurbach

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711  FAX: (702) 382-5816

MAC: 14687-428 (#6328541.1) 4/6/2026 11:25 AM